IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: ) | |
| ) | CHAPTER 11 |
| **TEHUM CARE SERVICES, INC.,** ) | |
| ) | Case No. 23-90086 (CML) |
| ) | |
| **Debtor.** ) | |

**JAMES HYMAN'S RESPONSE TO DEBTOR'S EMGERGENCY MOTION TO EXTEND AND ENFORCE THE AUTOMATIC STAY (DOCKET NO. 7)**

**I.     Introduction**

James Hyman is the former CEO of a company known as "Valitas Health Services, Inc." Pursuant to his employment agreement, he is a current stockholder in both CHS TX, Inc. and Corizon Health, Inc. n/k/a Tehum Care Services, Inc. (the "Debtor"). The Debtor is the successor-in-interest to Valitas Health Services, Inc. as result of a divisional merger. The Debtor was allocated Mr. Hyman's employment agreement in the divisional merger. (*See* Agreement and Plan of Divisional Merger, attached as **Exhibit 1**.) However, the sole *assets* of Debtor to which it has pointed are $1 million in cash (it is unclear how much of this money remains) and an alleged "funding agreement" with M2 LoanCo, LLC, which is a Florida company that was formed in 2020, dissolved when Mr. Hyman's lawsuit was filed, and then reinstated only thereafter. (*See* **Exhibit 2**.) To date, Debtor has not disclosed a copy of that alleged funding agreement.[1]

---

[1] Significantly, if the funding agreement is sufficient to cover the Debtor's liabilities (which is unclear based on the proof in the record), courts have found there is no basis to extend to the stay to claims against non-debtors, even where there is an absolute indemnity obligation on the part of the debtor. *See, e.g.*, *3M Occupational Safety LLC v. Those Parties Listed on Appendix A to the Complaint (In re Aearo Techs. LLC)*, 642 B.R. 891, 907 (Bankr. S.D. Ind. 2022).

1

James Hyman was served with the Debtor's instant emergency motion because he has a pending arbitration and pending lawsuit, both in Tennessee. (*See* Third Amended Arbitration Demand, **Exhibit 3**; Complaint, **Exhibit 4**.) After Valitas Health Services, Inc. failed to pay him over $1 million due under his employment agreement, Mr. Hyman initiated an arbitration against the Debtor in Tennessee, as required by his employment agreement.[2] Anticipating the instant bankruptcy, he also filed a lawsuit in the Middle District of Tennessee (1) against various affiliates of the Debtor, alleging a violation of Tennessee's Uniform Fraudulent Transfer Act, seeking a declaration that the divisional merger is invalid, and seeking a declaration that YesCare Corp., Valitas Intermediate Holdings, Inc., and/or CHS TX, Inc. were the alter egos of Valitas Health Services, Inc.; and (2) alleging breach of fiduciary duty, tortious interference, promissory fraud, and civil conspiracy against various individual directors of the entities at issue.

The Debtor's emergency motion must be denied for four reasons. First, under Tennessee law, which governs Mr. Hyman's claims, an alter ego or veil piercing claim belongs to the creditor, not the debtor. Debtor's position that Mr. Hyman's alter ego, fraudulent transfer, and similar claims belong to Debtor is based on the faulty conclusion that Texas law governs Mr. Hyman's claims. It does not. Therefore, Mr. Hyman is entitled to pursue those claims in the Tennessee lawsuit.

Second, with respect to CHS TX, Inc. and the individual defendants in Mr. Hyman's lawsuit, the Debtor has failed to sustain its burden to show that they are entitled to indemnification, much less "absolute indemnification," sufficient to justify an exception to the general rule that the bankruptcy stay is inapplicable to non-debtor parties. With only vague, conclusory statements and

---

[2] Mr. Hyman does not dispute that the stay applies to the claims against Debtor in the arbitration.

no evidence,[3] Debtor is asking this Court to take the "extraordinary" step of enjoining hundreds of lawsuits across the country, including Mr. Hyman's Tennessee lawsuit. The Debtor has not sustained its burden to show that this Court should take this "unusual" step. In short, there has been no showing that allow Mr. Hyman to pursue his lawsuit and arbitration against *non-debtor parties* will in any way jeopardize or even affect the Debtor's bankruptcy estate.

Third, courts have held that the "unusual situation" exception, which is used to extend the automatic stay to claims against non-debtors, does not apply to breach of fiduciary duty claims like the ones at issue.

Finally, at a minimum, there is no evidence that Perigrove, LLC is entitled to indemnification from the Debtor or otherwise entitled to a stay of the claims against it. Therefore, Mr. Hyman should be allowed to continue to pursue his claim against that entity.

## II.   Analysis

### A.   *Under Tennessee Law, an Alter Ego Claim is Not the Property of the Debtor.*

Debtor argues, "The Lawsuits against the Non-Debtor Affiliates assert some variation of alter ego/veil piercing, successor liability, and/or fraudulent transfer claims. Each such claim is property of the Debtor's estate and thus subject to the automatic stay." (D.E. 7 at 13.) The "Non-Debtor Affiliates" that are defendants in Mr. Hyman's case are (1) CHS TX, Inc., (2) YesCare Corp., and (3) Valitas Intermediate Holdings, Inc. (**Exhibit 4**.)

Although the Fifth Circuit holds that an alter ego claim is the property of the Debtor, that is not the case under Sixth Circuit precedent since, under Tennessee law, alter ego or veil piercing claims are brought for the benefit of third parties, not the debtor. *See, e.g.*, *Regions Bank v. JP*

---

[3] An "argument of counsel is not evidence . . . ." *United States v. Thomas*, 627 F.3d 146, 158 (5th Cir. 2010).

*Realty Partners, Ltd.*, 912 F. Supp. 2d 604, 615-17 (M.D. Tenn. 2012). Whether a particular cause of action is available to the debtor, and thus constitutes "property of the estate," is determined by state law. *See, e.g.*, *Butner v. United States*, 440 U.S. 48 (1979). Additionally, "obligations of a debtor to a creditor arise 'out of tort or contract or other relationships created under applicable law,' which is the law of the states." *PNK (Lake Charles), L.L.C. v. Cypresswood Land Partners I*, No. H-10-CV-224, 2010 U.S. Dist. LEXIS 145816, at *13 (S.D. Tex. Sep. 21, 2010) (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)). The Texas Supreme Court has adopted Section 187 of the Restatement (Second) of Conflict of Laws, "which determines choice of law where there is an applicable contractual choice of law provision." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990). In general, a court will respect the parties' contractual choice of substantive law in a conflict of law case pursuant to the "party autonomy" rule. *Id.* at 677; *see also PNK*, 2010 U.S. Dist. LEXIS 145816, at *13-14, *27-28 (holding Louisiana choice of law provision governed in Texas bankruptcy).

Here, in Mr. Hyman's Employment Agreement, which is the basis of his lawsuit and arbitration, the parties expressly agreed that the agreement was governed by Tennessee law. Paragraph 13 of that agreement provides: "This Agreement and the legal relations thus created between the parties hereto shall be governed by and construed under and in accordance with the laws of the State of Tennessee, without regard to its conflicts of law principles." (**Exhibit 5**.) Paragraph 3 of that agreement provides, "Notwithstanding the foregoing, the Company has the right to request that the Executive relocate the Executive's principal place of employment to the Company's Brentwood, Tennessee headquarters." (*Id.*) Notices to Valitas (predecessor to the Debtor) were to go to Brentwood, Tennessee. (*Id.* ¶ 11.) Therefore, Tennessee law governs, and Mr. Hyman's alter ego and similar claims belong to him, not the Debtor.

There is another reason why Tennessee law applies—Texas has no connection to Mr. Hyman's lawsuit or arbitration. The Fifth Circuit stated that, "when disposition of a federal question requires reference to state law, federal courts are not bound by the forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy." *In re Matter of James F. Crist*, 632 F.2d 1226, 1229 (5th Cir. 1980). Generally, the determination of which state's law should apply "requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts [to] best accommodate the equities among the parties to the policies of those states." *Matter of Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984).

Neither Debtor nor any of its affiliates had any connection to Texas before the 2022 divisional merger. Instead, the Debtor and its affiliates, including Mr. Hyman's former employer, transferred their corporate existence to Texas solely to facilitate (and immediately prior to) the divisional merger in a transparent attempt to leave creditors with little to no remedy.[4] The Debtor and all other relevant entities have their principal place of business at the same location in Brentwood, Tennessee, and always have. (*See* Collective **Exhibit 6**; *see also* Voluntary Petition of Debtor, D.E. 3 at 1; Contact | Yescare, https://www.yescarecorp.com/contact (last visited Feb. 21, 2023).) The only reason Texas is connected to Mr. Hyman's lawsuit is because the Debtor and its affiliates decided to employ the Texas Two-Step *after* Mr. Hyman resigned. (*See generally* Compl., **Exhibit 4**.)

---

[4] This "Texas Two-Step" has been labeled as a "bait-and-switch bankruptcy maneuver." Durbin, *Senate and House Dems Object to Johnson & Johnson Bankruptcy Maneuver, Demand Answers, Committee on the Judiciary*, https://www.judiciary.senate.gov/press/dem/releases/durbin-senate-and-house-dems-object-to- johnson-and-johnson-bankruptcy-maneuver-demand-answers (last visited Nov. 28, 2022).

Therefore, Tennessee law governs, and, as such, the Debtor does not own any of Mr. Hyman's claims, including, without limitation, his alter ego and fraudulent transfer claims.

### B. The Debtor Has Not Shown that the Non-Debtors are Entitled to Absolute Indemnification.

The Debtor next argues that the automatic stay should extend to certain individuals and entities to whom the Debtor allegedly owes indemnification obligations. Though not named in its motion, it appears Debtor is referring to CHS TX, Inc.,[5] Sara Tirschwell, Scott King, Abraham Goldberger, Yitzchok "Isaac" Lefkowitz, and David Gefner, all of which are defendants in the Tennessee lawsuit. Debtor's argument is specious. Thus, even if the Court were to conclude that the Debtor owns Mr. Hyman's alter ego and similar claims, for the reasons discussed below, Mr. Hyman's other claims are not subject to the stay.

"By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors." *Reliant Energy Servs. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003). Further, "section 362 is rarely, however, a valid basis on which to stay actions against non-debtors." *Id.* However,

> an exception to this general rule does exist, and a bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where [1] "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and [2] that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

*Id.* Thus, as the Debtor acknowledges in its emergency motion, the protections afforded by the automatic stay may be extended to non-debtors "where the debtor and non-debtor parties can be

---

[5] Although YesCare Corp. and Valitas Intermediate Holdings, Inc. are defendants in Mr. Hyman's lawsuit, the Debtor has not argued that it has any obligation to indemnify those entities.

considered to share a unitary interest, or where claims asserted against the non-debtor parties are property of the debtor's estate." (D.E. 7 at 10.)[6]

"While courts have been willing to find unusual circumstances when a contractual agreement provides the nondebtor defendant with *absolute* immunity, stays have *not* been extended when the agreement provides for merely the *possibility* of indemnity." *Baechel v. Republic Storage Sys., LLC*, No. 5:16-cv-1403, 2018 U.S. Dist. LEXIS 39164, at *8-9 (N.D. Ohio Mar. 9, 2018) (emphasis added);[7] *see also Plastech Holding Corp. v. WM GreenTech Auto. Corp.*, No. 17-2122, 2018 U.S. App. LEXIS 16915, at *1-2 (6th Cir. June 21, 2018) (noting exception applies "when the non-debtor defendant is entitled to absolute indemnity by the debtor"). The Debtor acknowledges this problem but tries to sidestep it by claiming, without support, "there seems to be little ground (if any) to dispute the Debtor's indemnification obligations to the Non-Debtor Indemnified Parties." (D.E. 7 at 13.)

Debtor's sole "evidence" cited in support of the absolute indemnification exception is (1) a *portion* of an indemnification clause from the bylaws of Tehum Care Services, Inc. (D.E. 7 at 7), and (2) the indemnification obligation owed by Debtor to CHS TX, Inc. under the Agreement and

---

[6] As discussed below, this exception does not apply to fiduciary duty claims.

[7] (citing *Compare Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc.*, No. 09-0249-WS-N, 2009 U.S. Dist. LEXIS 67926, 2009 WL 2413664, at *2 (S.D. Ala. Aug. 3, 2009) (indemnity agreement between debtors and its officers constituted unusual circumstances to warrant extending stay to nondebtor officer defendants); *Edwards v. McElliotts Trucking, LLC*, No. 3:16-1879, 2017 U.S. Dist. LEXIS 190348, 2017 WL 5559921, at *3 (S.D. W.Va. Nov. 17, 2017) (existence of indemnity agreement between debtor and nondebtor defendant meant that there was more than the "mere possibility of indemnification") (citation omitted); *Martin v. Fifth Third Bank, Inc.*, No. 1:11-CV-00182-JHM, 2012 U.S. Dist. LEXIS 73174, 2012 WL 1906506, at *8 (W.D. Ky. May 25, 2012) (indemnity agreement with debtor did not constitute unusual circumstances where indemnification was not available upon a finding of willful misconduct); *Al-Shara v. Wal-Mart Stores, Inc.*, No. 11-CV-14954, 2012 U.S. Dist. LEXIS 47228, 2012 WL 1119339, at *4-5 (E.D. Mich. Apr. 3, 2012) (finding no unusual circumstances where defendant merely presented a standard-fare indemnity agreement).

Plan of Divisional Merger (**Exhibit 1** hereto). The bylaws are not attached as an exhibit and Mr. Hyman does not have a copy. Because Debtor only quotes only portions of the indemnification clause, it is unclear what the conditions of indemnification are and whether it is absolute or conditional. For this reason alone, Debtor has not sustained its burden to show the absolute indemnification exception applies as it pertains to the bylaws. *See Nat'l Oilwell Varco, L.P. v. Mud King Prods.*, No. 4:12-3120, 2013 U.S. Dist. LEXIS 66152, at *9 (S.D. Tex. May 9, 2013) ("The burden to show that the stay is applicable to a non-debtor is on the party invoking the stay.").

Even if the indemnification obligation in the bylaws were absolute, looking to the language cited by Debtor, there is no evidence that the indemnity obligation has been triggered. There is no evidence that Mr. Hyman's claims against Tirschwell, King, Lefkowitz, Gefner, and Goldberger arise "by reason of the fact that the person (1) is or was a director or officer of the [Debtor]; or (2) while a director of the [Debtor], is or was serving at the request of the [Debtor] as a partner, director, officer, venturer, proprietor, trustee, employee, administrator, or agent of another entity, organization . . . ." (D.E.7 at 7.) To the contrary, Mr. Hyman's breach of fiduciary duty claims against Sara Tirschwell, Scott King, Yitzchok "Isaac" Lefkowitz, David Gefner, and Abraham Goldberger are based upon those individuals' breach of fiduciary duty to Mr. Hyman as a creditor in their roles as directors of *Valitas Health Services, Inc.*, not as directors of *Debtor*, which was not formed until long after Mr. Hyman's employment ended. (*See* Compl. ¶ 107 *et* seq.; *see also* **Exhibit 6**.) Additionally, Mr. Hyman has sued (1) Tirschwell, King, Lefkowitz, Gefner, and Goldberger for aiding and abetting one another in their aforementioned breaches of fiduciary duty; (2) Perigrove, LLC (discussed below), Lefkowitz and Gefner for tortious interference with his employment contract separate and apart from their roles as directors of Debtor occurring before the Debtor was formed; (3) Perigrove, LLC, Lefkowitz, and King for promissory fraud separate

8

and apart from their roles as directors of Debtor; and (4) Lefkowitz and King for civil conspiracy (outside the scope of their duties for Debtor). (**Exhibit 4** at pp. 27-32.)[8] None of these claims trigger the indemnity clause in the bylaws because all of these claims pertain to misconduct that occurred months before the Debtor was formed (and months before Valitas Health Services, Inc. was merged into the Debtor).

With respect to CHS TX, Inc., although paragraph 11 of the Agreement and Plan of Divisional Merger requires the Debtor to indemnify CHS TX, Inc. for losses suffered or incurred "to the extent such Losses arise from or relate to" the Debtor's assets and liabilities, this obligation only applies "[f]rom and after the Effective Time," which was May 1, 2022. Then, paragraph 12 contains a broad mutual release. Specifically, CHS TX, Inc. released the Debtor

> from all demands, actions, causes of action, suits, accounts, covenants, contracts and Losses whatsoever of every name and nature, both in law and in equity, arising out of, in connection with or related to events, circumstances or actions taken or not taken by [Debtor] or [its subsidiaries and its and their respective past, present or future directors, shareholders, managers, members, officers, employees, consultants, financial advisors, counsel, accountants, and other agents] or otherwise in connection with the ownership or operation of any of the Combination Merger Entities [Debtor and Valitas Health Services, Inc., among others] and their respective subsidiaries, in each case, at or prior to the Effective Time [May 1, 2022]; *provided, however*, that the foregoing releases shall not, and shall not be construed to, release any obligations of any person or entity under this Plan (including the allocation of liabilities hereunder or the indemnification obligations set forth in paragraph 11(a)) or any document, instrument or agreement executed to implement this Plan. [CHS TX, Inc.] shall not make, and [CHS TX, Inc.] shall not permit any [CHS TX, Inc.] Indemnified Parties to make, and [CHS TX, Inc.] covenants never to, and to cause [CHS TX, Inc.] Indemnified Parties not to, assert or voluntarily assist any person or entity in asserting any claim or demand, or commence any action asserting any claim or demand, including any claim for contribution or indemnification, against any of the [Debtor] Releasees with respect to any liabilities released pursuant to this Section 12(b).

---

[8] Contrary to the nature of these claims, Debtor falsely argues that "there are no distinct direct claims asserted against the Non- Debtor Affiliates in any of the Lawsuits—each claim is derivative, and inextricably relies upon the Debtor's alleged prepetition acts." (D.E. 7 at 11.)

(**Exhibit 1**.) Therefore, CHS TX, Inc. released the Debtor from any claims "arising out of, in connection with or related to events, circumstances or actions taken or not taken by" the Debtor related to the ownership or operation of the Debtor or Valitas Health Services, Inc. (Mr. Hyman's former employer) that accrued on or before May 1, 2022 (subject, of course, to future indemnity obligations) and covenanted not to bring suit for such claims, including indemnification claims. Because Mr. Hyman's claim against CHS TX, Inc. in the Tennessee lawsuit relates to the operation of Debtor and/or Valitas Health Services, Inc. from before May 1, 2022 (*see* Compl.), CHS TX, Inc. has no indemnity claim against the Debtor. It voluntarily released any such claim as part of the divisional merger. The reason for this release is clear—to ensure the division of assets and liabilities did not bleed over from one entity to the next through indemnity claims.

Thus, the Debtor has proffered no evidence that CHS TX, Inc., YesCare Corp., Valitas Intermediate Holdings, Inc., Tirschwell, King, Lefkowitz, or Gefner are entitled to indemnification from the Debtor, much less absolute indemnity. *See, e.g.*, C.H. Robinson Co. v. Paris & Sons, Inc., 180 F. Supp. 2d 1002, 1018 (N.D. Iowa 2001) ("the mere existence of a contractual obligation to indemnify the non-debtor codefendant is probably insufficient to invoke the narrow exception").

### C. The "Unusual Situation" Exception Does Not Apply to Breach of Fiduciary Duty Claims.

As discussed above, courts use the "unusual situation" exception to extend the stay to claims against non-debtors. However, significantly, the "unusual situation" exception does not apply to breach of fiduciary duty claims.

As one district court has explained there is a "limitation on the 'unusual situation' exception":

> in situations where a codefendant is independently liable as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon

> his own breach of a duty, then the protection afforded a debtor under the automatic stay would clearly not extend to such nondebtor.

*Thomson Kernaghan & Co. v. Glob. Intellicom, Inc.*, 99 CIV. 3005 (DLC), 99 CIV. 3015 (DLC), 2000 U.S. Dist. LEXIS 6650, at *46 (S.D.N.Y. May 17, 2000) (quoting *In re Metal Ctr., Inc.*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983)).[9] This is because "the liability of the nondebtor is [not] imputed to the debtor by operation of law" in breach of fiduciary duty cases and the findings of the court adjudicating the breach of fiduciary duty claim would not "be binding upon the debtor's estate." *In re Metal Ctr., Inc.*, 31 B.R. at 462. Thus, where

> the claims against [the corporate officer] are not derivative of his status as [officer], but rather are premised upon [the corporate officer's] own conduct, including an alleged breach of his fiduciary duty and misrepresentations made by [the officer] himself, a stay is not warranted on these grounds.

*Thomson Kernaghan & Co*, 2000 U.S. Dist. LEXIS 6650, at *47. And, in such cases, "**the existence of [a] potential claim for indemnification from [the debtor] [does not] rise to the level of unusual circumstances necessary for an extension of the stay**." *Id.* (emphasis added).[10] Thus, "Where, as here, claims are premised on breaches of fiduciary duties that are not merely derivative of the defendant's job with the debtor, **the defendant who owes to the plaintiff the relevant fiduciary duties, not the debtor, is the real party in interest**." *Stanford v. Foamex L.P.*, No. 07-

---

[9] *See also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (noting stay is not extended to non-debtors "where the third-party defendant was ;independently liable as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of duty.'") (quoting *In Re Metal Center*, 31 Bankr. 458 (D. Conn. 1983)).

[10] *See also Wolf Fin. Grp., Inc. v. Hughes Constr. Co. (In re Wolf Fin. Grp., Inc.)*, Chapter 11, 94 B 44009/44010(JLG) Jointly Administered Adv. Proc. No. 94-8884A, 1994 Bankr. LEXIS 2350, at *16 (Bankr. S.D.N.Y. Dec. 15, 1994) ("In limited instances, courts have extended § 362 to stay prosecution of civil actions against officers and/or employees of a chapter 11 debtor. In each case, the non-debtor has been inextricably involved in the debtor-in-possession's reorganization efforts and the courts have found that continued prosecution of the action would undermine the debtor-in-possession's ability to reorganize by distracting that person from the process.").

4225, 2009 U.S. Dist. LEXIS 32405, at *10-12 (E.D. Pa. Apr. 15, 2009) (emphasis added); *see Reliant Energy*, 349 F.3d at 825 (holding the automatic stay should be extended when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.").

For example, in *CAE Indus., Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 33 (S.D.N.Y. 1990)

> The claims against Bilzerian are based upon his individual activity while he was CEO, Chairman and Director of Singer, and after, continuing to the present date. . . . . The [indemnity] agreement, unlike Singer's bylaws, does not contain a "good faith" requirement, and expands the coverage to actions taken by Bilzerian that are "related to" as well as "by reason of" his position at Singer. The agreement provides that Bilzerian is not absolutely entitled to indemnity but, rather, can only be entitled to indemnification after review and determination by independent parties. The court held in In re All Seasons Resorts, Inc., 79 Bankr. 901, 904 (Bankr. C.D. Calif. 1987):
>
> Although there is a closeness between debtor and co-defendants by reason of their officer and agent status and their right to indemnification pursuant to debtor's by-laws, the magnitude of the harm to debtor if no stay is in force does not approach the scope of the potential injuries besetting the debtors in Robins and Johns-Manville.
>
> [*34] This court believes the continuation of this action as against Bilzerian will have no material effect upon Singer's reorganization effort. . . .
>
> In the absence of evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant, such as Bilzerian.

*Id.* at *33-34; *see also In re Zilkha Biomass Selma, LLC*, No. 21-20043-JCO, 2021 Bankr. LEXIS 2532, at *6-7 (Bankr. S.D. Ala. Sep. 14, 2021) ("Despite the plain language of §362, some courts have liberalized its application and extended stay protection to non-debtors in rare instances involving unusual circumstances. Such extraordinary relief requires such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant.

12

Courts granting such relief, normally only do so when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.") (citations omitted) (citing *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282 (2d Cir. 2003)).

### D. At a Minimum, there is No Evidence that Perigrove, LLC is Entitled to Indemnification from Debtor.

Although unclear, it appears the Debtor may be seeking to have the stay extended to Perigrove, LLC, which is another defendant in Mr. Hyman's Tennessee lawsuit. However, there is no evidence that Perigrove is the alter ego of the Debtor (nor is there any allegation that this is the case) or that it is entitled to indemnification from the Debtor. (**Exhibit 4**.) Therefore, at a minimum, the stay should not be extended to Perigrove, LLC.

### III. Conclusion

For the foregoing reasons, Mr. Hyman respectfully requests that the Debtor's emergency motion be denied.

### Local Rule 9013-1(g)(1) Certification

Undersigned counsel certifies that he conferred with counsel for Debtor regarding the emergency motion and they were unable to resolve this matter. Although the Debtor's emergency motion seems to apply to all claims and defendants in Mr. Hyman's lawsuit, counsel for the Debtor has represented that the instant motion does not seek a stay with respect to Perigrove, LLC or Valitas Intermediate Holdings, Inc. (**Exhibit 7**.) Therefore, it appears there is no dispute that the motion should be denied with respect to Mr. Hyman's claims against Perigrove, LLC and Valitas Intermediate Holdings, Inc.

Respectfully submitted,

KAY GRIFFIN, PLLC


s/ Michael A. Johnson
Michael A. Johnson (TN Bar No. 30210)
222 Second Avenue North, Suite 340-M
Nashville, Tennessee 37201
615-742-4800
mjohnson@kaygriffin.com

Brian Berger (Tex. Bar No. 24089985)
2110 W. Slaughter Lane
Ste 107-679
Austin, TX 78748
737-301-8400
brian.berger@kaygriffin.com

*Attorneys for James E. Hyman*

## CERTIFICATE OF SERVICE

I certify that on March 1, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

s/ Michael A. Johnson
Michael A. Johnson