IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EILEEN A. MCNAMARA, as Administrator of the ESTATE OF JONATHAN GLEAVES, JR.,** | : | **CIVIL ACTION** |
| Plaintiff, | : | No. _____ |
| v. | : | **JURY TRIAL DEMANDED** |
| **CITY OF PHILADELPHIA; CORIZON HEALTH; GERALD SLORY; ELIZABETH BRADLEY; LALITHA TRIVIKRAM; MATU GAYE; JOHN DOE(S),** | : | |
| Defendants. | : | |

# COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is a civil rights survival and wrongful death action brought under 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the defendants' deliberate indifference and negligence in failing to ensure necessary emergency treatment for 33-year-old Jonathan Gleaves, Jr., while he was suffering the medical consequences of drug intoxication. As a result of the defendants' failure to ensure appropriate protective measures, Mr. Gleaves died less than 24 hours after he was admitted to the Philadelphia Department of Prisons. Plaintiff Elaine A. McNamara now seeks on behalf of Mr. Gleaves's estate and heirs damages for the substantial pain and suffering, financial losses, and loss of life caused by the defendants' conduct.

## II. JURISDICTION

2. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## III.  PARTIES

3. Jonathan Gleaves, Jr. ("Mr. Gleaves"), who was at all times relevant to this Complaint a resident of Philadelphia, Pennsylvania, died on September 21, 2018.  At the time of his death, he was 33 years old.

4. Plaintiff Elaine A. McNamara, (hereinafter, "plaintiff" or "Ms. McNamara") is the mother-in-law of Mr. Gleaves.  On March 26, 2019, plaintiff was appointed as the Administrator of the Estate of Jonathan Gleaves, Jr., by the Office of the Register of Wills of Philadelphia County.  Plaintiff brings this action in her capacity as Administrator of the Estate and for the benefit of Mr. Gleaves's heirs.

5. Defendant City of Philadelphia is a municipal government entity in the Commonwealth of Pennsylvania, which manages and oversees the Philadelphia Department of Prisons.

6. Defendant Corizon Health, with a principal place of business in Brentwood, Tennessee, was, at all times relevant to this Complaint, the holder of a contract to provide medical services at the Philadelphia Department of Prisons.

7. At all times relevant to this Complaint, defendant Gerald Slory was employed by the Philadelphia Department of Prisons as a Correctional Officer assigned to the Curran-Fromhold Correctional Facility.

8. At all times relevant to this Complaint, defendant Elizabeth Bradley was employed as a physician by defendant Corizon Health and assigned to provide medical services at the Curran-Fromhold Correctional Facility.

9. At all times relevant to this Complaint, defendant Lalitha Trivikram was employed as a physician by defendant Corizon Health and assigned to provide medical services at the Curran-Fromhold Correctional Facility.

10. At all times relevant to this Complaint, defendant Matu Gaye was employed as a registered nurse by defendant Corizon Health and assigned to provide medical services at the Curran-Fromhold Correctional Facility.

11. At all times relevant to this Complaint, defendants John Doe(s) were employed by defendant City of Philadelphia and/or defendant Corizon Health and are, where appropriate, identified by their employer ("Corizon Doe(s)" or "City Doe(s)"). Plaintiff does not currently know the identity of these defendants but will seek leave to amend this Complaint to properly name the defendants after the completion of preliminary discovery.

12. At all times relevant to this Complaint, all defendants acted under color of state law.

13. At all times relevant to this Complaint, defendants Bradley, Trivikram, Gaye, and Corizon Doe(s) were acting as agents, servants, and/or employees of defendant Corizon Health, were acting within the scope and course of their employment, and were acting under the direct control and supervision of defendant Corizon Health.

14. At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Mr. Gleaves.

3

## IV.  FACTUAL ALLEGATIONS

15. In the evening of September 19, 2018, Jonathan Gleaves, Jr., was taken into custody by Philadelphia police on a warrant related to minor drug possession charges.

16. In the afternoon of September 20, 2018, Mr. Gleaves was admitted to Curran-Fromhold Correctional Facility ("CFCF"), the main intake facility for men in the Philadelphia Department of Prisons.

17. On arrival, Mr. Gleaves informed correctional and medical staff that he had struggled with substance abuse and that he had been a frequent user of heroin, fentanyl, and Xanax.

18. As of September 2018, the City of Philadelphia and Corizon Health were aware that persons incarcerated in the Philadelphia Department of Prisons frequently experienced substance abuse problems, and, further, that these problems could result in serious medical consequences, including death.

19. Accordingly, as of September 2018, the City of Philadelphia and Corizon Health were aware that persons with substance abuse issues who were admitted to Philadelphia Department of Prisons facilities required close and frequent monitoring in order to ensure timely intervention in the event of a serious and dangerous medical condition.

20. In the evening of September 20, 2018, Mr. Gleaves had a medical intake appointment with defendants Elizabeth Bradley, MD, and Matu Gaye, RN.

21. In that appointment, Mr. Gleaves gave Bradley and Gaye a specific account of his substance abuse history, including his regular daily usage of heroin, Xanax, and fentanyl.

22. As a result, Bradley and Gaye were aware that Mr. Gleaves was at risk of serious medical consequences or death and that appropriate monitoring was required.

4

23. Despite that knowledge, Bradley and Gaye failed to order any monitoring of Mr. Gleaves's medical condition.

24. To the extent Bradley and Gaye's directives did require medical monitoring of Mr. Gleaves, defendant John Doe(s) were responsible for the failure to carry out such monitoring.

25. After his medical appointment, in the early morning hours of September 21, 2018, Mr. Gleaves was assigned to a cell in the quarantine unit of CFCF.

26. The quarantine unit is a location specifically designed for the housing of people newly admitted to the facility.

27. The City of Philadelphia was aware that persons housed in the quarantine unit have an elevated risk of experiencing serious medical conditions and that this risk is especially pronounced for those persons with substance abuse issues who have experienced a sudden stoppage of regular usage due to arrest and imprisonment.

28. Accordingly, the City of Philadelphia was aware that it was necessary to ensure close monitoring of persons housed in the quarantine unit.

29. Despite that knowledge, in September 2018, the City of Philadelphia failed to provide for such monitoring in at least two different respects.

30. First, the City failed to ensure that cells in the quarantine unit had working alarm buttons—that is, buttons persons housed in a cell could press to alert officers to an emergency situation.

31. To the extent cells did have working alarm buttons, the City failed to ensure that correctional officers were advised of their duty to respond to alerts from the pressing of such buttons.

32. Second, the City failed to ensure that its officers conducted regular tours of the housing unit to assess the health and safety of persons housed in that unit.

33. The cell that Mr. Gleaves was placed in on September 21, 2018, was occupied by another person, T.T.

34. Within a few hours, T.T. noticed that Mr. Gleaves appeared to be suffering from serious medical consequences related to his substance abuse issues, including vomiting and diarrhea. T.T. observed that Mr. Gleaves appeared to be experiencing severe pain and discomfort, as he was constantly moaning.

35. Eventually, T.T. observed that Mr. Gleaves grew quiet and was making no sounds whatsoever.

36. After observing Mr. Gleaves, T.T. grew concerned about his medical condition.

37. T.T. pressed the alarm button in the cell.

38. During the early morning hours of September 21, 2018, defendants Slory and City Doe(s) were assigned to monitor persons housed in the quarantine unit at CFCF.

39. When T.T. pressed the alarm button in the cell he shared with Mr. Gleaves, defendants Slory and City Doe(s) were not alerted to the emergency situation because they had turned off the alarm system.

40. Alternatively, defendants Slory and City Doe(s) failed to respond to the alarm initiated by T.T. because they followed a practice of ignoring requests for emergency assistance.

41. In addition to failing to respond to the alarm, defendants Slory and City Doe(s) failed to adhere to their responsibility to conduct regular tours of the quarantine housing unit.

42. As a result, Mr. Gleaves was left in his cell suffering from a medical emergency without necessary medical intervention.

6

43. At approximately 7:00 a.m. on September 21, 2018, defendants Slory and City Doe(s) completed their shift. A new shift of officers entered the unit.

44. Within a few minutes of the start of the 7:00 a.m. shift, an officer walked by Mr. Gleaves's cell and noticed that he was lying naked on his bunk and not moving.

45. When the officer entered the cell, she saw that Mr. Gleaves had a white foamy substance surrounding his mouth.

46. Mr. Gleaves was awake and could respond to stimuli, but he could not speak.

47. It was obvious that Mr. Gleaves was suffering from a serious medical condition and that he needed emergency medical treatment.

48. The officers summoned medical attention for Mr. Gleaves.

49. The medical response to the medical emergency was directed by defendant Lalitha Trivikram, MD and Corizon Doe(s).

50. While understanding the severity of the situation, defendants Trivikram and Corizon Doe(s) failed to ensure immediate medical intervention for Mr. Gleaves.

51. The delay in care for Mr. Gleaves increased the risk to his health and safety and increased the severity of his medical situation.

52. Mr. Gleaves was later that morning transferred to Nazareth Hospital and then to Hahnemann University Hospital.

53. On arrival, diagnostic testing showed that Mr. Gleaves had suffered an apparent stroke-like condition which, given his substance abuse, was likely caused by his ingestion of drugs.

54. Despite medical intervention, Mr. Gleaves's condition worsened substantially.

7

55. Shortly after 1:00 pm Mr. Gleaves's heart stopped and he could not be revived. He was pronounced dead at 1:05 pm.

56. An autopsy was conducted and concluded that Mr. Gleaves' death was caused by "drug intoxication."

57. Mr. Gleaves's death could and would have been prevented had there been earlier intervention to address his serious medical consequences after he was placed in his cell in the early morning hours of September 21, 2018.

58. The delay in intervention for Mr. Gleaves was the direct and proximate result of the actions and inactions, with deliberate indifference, of defendants Slory, Bradley, Trivikram, Gaye, and Doe(s).

59. The failures of these defendants to act in such a way as to ensure appropriate intervention for Mr. Gleaves were due to the failure of defendants City of Philadelphia and Corizon Health, with deliberate indifference, to establish appropriate policies, practices, procedures, and training regarding the protection of persons admitted to the Philadelphia Department of Prisons facilities with substance abuse issues.

60. At all relevant times, all defendants were aware of Mr. Gleaves's serious medical needs and failed, with deliberate indifference, to ensure that Mr. Gleaves received needed evaluation and treatment.

61. In the alternative, defendants made an intentional decision with regard to Mr. Gleaves's medical care which placed Mr. Gleaves at substantial risk of suffering serious harm. These defendants did not take reasonable available measures to abate that risk, even though a reasonable correctional officer and/or nurse in the circumstances would have appreciated the

8

high degree of risk involved, thereby making the consequences of the defendants' conduct obvious.

62. At all times relevant to this Complaint, the conduct of all defendants was in willful, reckless, and callous disregard of Mr. Gleaves's rights under federal and state law.

63. As a direct and proximate result of the conduct of all defendants, Mr. Gleaves experienced enormous physical and emotional pain and suffering.

64. As a direct and proximate result of the conduct of all defendants, Mr. Gleaves was caused to lose the enjoyment of his life and was also caused to suffer complete loss of earnings and earning capacity.

## V. WRONGFUL DEATH AND SURVIVAL ACTIONS

65. Plaintiff, as Administrator of the Estate of Jonathan Gleaves, Jr., brings this action on behalf of Mr. Gleaves's heirs under the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301.

66. Mr. Gleaves's heirs under the Wrongful Death Act are:

 a. Mr. Gleaves's wife, J.M.,

 b. His 16-year-old son, J.G., who resides with his mother, J.M.,

 c. His 11-year-old son, J.G., who resides with his mother, J.M., and

 d. His 5-year-old daughter, J.G., who resides with her mother, J.M.,

67. Mr. Gleaves did not bring an action against defendants for damages for the injuries causing his death during his lifetime.

68. Mr. Gleaves's heirs have, by reason of Mr. Gleaves's death, suffered pecuniary loss, and have or will incur expenses for the costs of Mr. Gleaves's funeral, the costs of Mr. Gleaves's headstone, and the costs of administering Mr. Gleaves's estate.

69. Mr. Gleaves's heirs have, by reason of Mr. Gleaves's death, suffered further pecuniary loss including expected contributions and financial support from Mr. Gleaves for food, clothing, shelter, medical care, education, entertainment, recreation and gifts.

70. Plaintiff also brings this action on behalf of the Estate of Jonathan Gleaves, Jr., under the Pennsylvania Survival Statute, 42 Pa. C.S. § 8302, under which all claims Mr. Gleaves would have been able to bring had he survived may be brought by Mr. Gleaves's estate.

71. Mr. Gleaves's estate has, by reason of Mr. Gleaves's death, suffered pecuniary loss, and has or will incur expenses for the costs of Mr. Gleaves's funeral, the costs of Mr. Gleaves's headstone, and the costs of administering Mr. Gleaves's estate.

72. As a direct and proximate result of the conduct of all defendants, Mr. Gleaves experienced extraordinary physical and emotional pain and suffering before his death, and, as a result of his death, suffered complete loss of earnings and earnings capacity.

73. Plaintiff, via this survival action, seeks damages for these harms caused to Mr. Gleaves.

## VI. CLAIMS FOR RELIEF

### COUNT I
**Plaintiff v. Defendants Slory, Bradley, Trivikram, Gaye, and Doe(s)**
**Federal Constitutional Claims**

74. Defendants Slory, Bradley, Trivikram, Gaye, and Doe(s) were deliberately indifferent to Mr. Gleaves's serious medical needs and thereby violated Mr. Gleaves's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Gleaves's right to due process of law under the Fourteenth Amendment to the United States Constitution.

## COUNT II
### Plaintiff v. Defendants City of Philadelphia and Corizon Health
### Federal Constitutional Claims

75. The violations of Mr. Gleaves's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendants City of Philadelphia and Corizon Health, which have, with deliberate indifference, failed to establish policies, practices, procedures and training regarding the protection of persons with substance abuse issues admitted to Philadelphia Department of Prisons facilities.

## COUNT III
### Plaintiff v. Defendants Bradley, Trivikram, Gaye, Doe(s) and Corizon Health
### State Law Negligence Claims

76. Defendants Bradley, Trivikram, Gaye, and Doe(s) had a duty to comply with generally accepted medical standards of care in their medical treatment of Mr. Gleaves.

77. Defendant Corizon Health had a duty to establish policies, practices and procedures to ensure that persons in the position of Mr. Gleaves received proper monitoring and emergency treatment

78. Defendants Bradley, Trivikram, Gaye, and Doe(s) violated their respective duties of care to Mr. Gleaves.

79. The defendants' violation of their duty of care to Mr. Gleaves was a direct and proximate cause and a substantial factor in bringing about Mr. Gleaves's damages as outlined above, and, as a result, defendants are liable to plaintiff.

80. Because defendants Bradley, Trivikram, Gaye, and Doe(s) were acting as agents, servants, and/or employees of defendant Corizon Health, and because these individual defendants were acting within the scope and course of their employment, and under the direct

11

control and supervision of defendant Corizon Health, defendant Corizon Health is, likewise, liable to plaintiff on the basis of *respondeat superior* liability.

## VI. REQUESTED RELIEF

**Wherefore**, plaintiff respectfully requests:

A.   Compensatory damages as to all defendants;

B.   Punitive damages as to defendants Corizon Health, Slory, Bradley, Trivikram, Gaye, Doe(s);

C.   Reasonable attorney's fees and costs;

D.   Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING,
  FEINBERG & LIN LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)
jfeinberg@krlawphila.com

*Counsel for Plaintiff*