Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) ) | |
| **Plaintiffs,** | ) | **Case No. 22BA-CV01701-01** |
| **v.** | ) ) | **Division 4** |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** | ) ) ) ) | |
| **Defendants.** | ) | |

**DEFENDANT TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC'S SUGGESTIONS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................iii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 1

    A.    Corizon's Contracts With The Missouri Department Of Corrections ("MDOC") And Plaintiffs ..................................................................... 1

    B.    Corizon's Dire Financial Condition And Plan To File For Chapter 11 Bankruptcy ............................................................................................ 2

    C.    The Diligence Process .......................................................................... 3

    D.    The Transaction .................................................................................... 4

        i.    The Combination Merger ........................................................... 4

        ii.    The Divisional Merger .............................................................. 5

    E.    Corizon Today ...................................................................................... 6

LEGAL STANDARD .................................................................................................... 6

    1.    Preliminary Injunction Standard ............................................................. 6

    2.    Standard For The Appointment Of A Receiver ....................................... 8

ARGUMENT ................................................................................................................ 8

I.    THE COURT SHOULD DENY PLAINTIFFS' UNPRECEDENTED REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF AGAINST CORIZON. .......................... 8

    A.    Applying Governing Texas Law, Plaintiffs Do Not Have A Fair Likelihood Of  Success On The Merits Of Their Fraudulent Transfer Claims. ................................................................................................... 9

        1.    Texas law governs the divisional merger ................................. 9

        2.    Fraudulent transfer claims ...................................................... 10

    B.    Plaintiffs Face No Irreparable Harm As This Is A Simple Alleged Breach of Contract Case That Can Be Remedied In Full By Monetary Damages. ......... 11

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

C.    Granting Plaintiffs' Requested Injunctive Relief Pre-Judgment Is
Premature And Will Cause Severe Harm To Corizon. ........................................ 15

D.    Public Interest Considerations Weigh Strongly In Favor Of Denying
Plaintiffs' Motion for Preliminary Injunction. ...................................................... 18

CONCLUSION ................................................................................................................. 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*A.O.A. v. Rennert*,
   350 F. Supp. 3d 818 (E.D. Mo. 2018) ................................................................... 10

*BancorpSouth Bank v. Hall*,
   No. 6:10-CV-03390-DGK, 2011 WL 529971 (W.D. Mo. Feb. 7, 2011) .............. 14

*Barrett v. Claycomb*,
   705 F.3d 315 (8th Cir. 2013) .......................................................................... 7, 9

*Caballo Coal Co. v. Ind. Mich. Power Co.*,
   No. 4:01-CV-1558CAS, 2002 WL 32727070 (E.D. Mo. Jan. 10, 2002), *aff'd*,
   305 F.3d 796 (8th Cir. 2002) ............................................................................ 12

*CDI Energy Servs., Inc. v. W. River Pumps, Inc.*,
   567 F.3d 398 (8th Cir. 2009) .............................................................................. 7

*State ex rel. Chicago Cardinals Football Club, Inc. v. Nangle*,
   369 S.W.2d 167 (Mo. 1963) ............................................................................. 18

*CitiMortgage, Inc. v. Just Mortg., Inc.*,
   No. 4:09 CV 1909 DDN, 2013 WL 6538680 (E.D. Mo. Dec. 13, 2013) ............... 14

*Cook v. McElwain*,
   432 S.W.3d 286 (Mo. Ct. App. 2014) .................................................................. 8

*CTS Corp. v. Dynamics Corp.*,
   481 U.S. 69 (1987) ........................................................................................... 19

*State ex rel. Dir. of Revenue v. Gabbert*,
   925 S.W.2d 838 (Mo. 1996) ....................................................................... 6, 7, 8

*Doe v. Phillips*,
   259 S.W.3d 34 (Mo. Ct. App. 2008) .................................................................... 8

*State ex rel. Gardner v. Stelzer*,
   568 S.W.3d 48 (Mo. Ct. App. 2019) .................................................................. 13

*Gelco Corp. v. Coniston Partners*,
   811 F.2d 414 (8th Cir. 1987) .............................................................................. 7

*Konopasek v. Konopasek*,
   No. SD 37388, 2022 WL 4178971 (Mo. Ct. App. Sept. 13, 2022), *reh'g
   and/or transfer denied* (Sept. 26, 2022) ............................................................ 10

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

*Mgmt. Registry, Inc. v. A.W. Cos., Inc.*,
  920 F.3d 1181 (8th Cir. 2019) ........................................................................ *passim*

*Miller v. Ziegler*,
  582 F. Supp. 3d 640 (W.D. Mo. 2022) ..................................................................12, 13

*Minana v. Monroe*,
  467 S.W.3d 901 (Mo. Ct. App. 2015) .......................................................................12

*State ex rel. Minn. Mut. Life Ins. Co. v. Denton*,
  129 S.W. 709 (Mo. 1910) ..........................................................................................18

*MPAY Inc. v. Erie Custom Comput. Apps., Inc.*,
  970 F.3d 1010 (8th Cir. 2020) ...................................................................................13

*Nat'l Rejectors, Inc. v. Trieman*,
  409 S.W.2d 1 (Mo. 1966) (en banc) ..........................................................................17

*Phelps-Roper v. Nixon*,
  509 F.3d 480 (8th Cir. 2007) .......................................................................................7

*Plastronics Socket Partners, Ltd. v. Don Weon Hwang*,
  2019 WL 1009404 (E.D. Tex. Feb. 13, 2019) ............................................................11

*Riegel v. Jungerman*,
  597 S.W.3d 695 (Mo. Ct. App. 2019)...........................................................8, 15, 16

*Rodriguez v. Lawns of Distinction, Ltd.*,
  No. 4:07-MC-447CAS, 2008 WL 4552973 (E.D. Mo. Oct. 7, 2008) .......................14

*Rucker v. Fowler*,
  233 S.W.2d 809 (Mo. Ct. App. 1950) .......................................................................12

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.*,
  459 F. Supp. 3d 1228 (W.D. Mo. 2020) ......................................................................7

*Shafer v. Home Trading Co.*,
  52 S.W.2d 462 (Mo. Ct. App. 1932)..........................................................................14

*SI03, Inc. v. Musclegen Rsch., Inc.*,
  No. 1:16-CV-274 RLW, 2021 WL 765293 (E.D. Mo. Feb. 26, 2021).........................7

*Sidway v. Missouri Land & Live-Stock Co.*,
  101 F. 481 (C.C.W.D. Mo. 1900) ..............................................................................18

*Simplex Paper Corp. v. Standard Corrugated Box Co.*,
  97 S.W.2d 862 (Mo. Ct. App. 1936)..........................................................................12

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

*Stockdale v. Stockdale*,
    2009 WL 2151159 (E.D. Mo. July 16, 2009) ........................................................................14

*Watkins Inc. v. Lewis*,
    346 F.3d 841 (8th Cir. 2003) .............................................................................................12

*Yellow Mfg. Acceptance Corp. v. Am. Taxicabs*,
    130 S.W.2d 601 (Mo. 1939) ..............................................................................................15

**Statutes**

6 Del. C. § 18-217(b)–(c) ..............................................................................................................20

15 Pa. Cons. Stat. Ann. § 361 ......................................................................................................20

Ariz. Rev. Stat. § 29-2601 ............................................................................................................20

Mo. Rev. Stat. § 351.582 ................................................................................................................9

Mo. Rev. Stat. § 428.039.1(3)(b) .................................................................................................16

Mo. Rev. Stat. § 428.054 ..............................................................................................................18

Tex. Bus. Orgs. Code Ann. § 1.002(55)(A) ...........................................................................10, 11

Tex. Bus. Orgs. Code Ann. § 10.003 ...........................................................................................10

Tex. Bus. Orgs. Code Ann. § 10.008(a)(2)(C) .............................................................................11

**Other Authorities**

17A Fletcher Cyc. Corp. § 8554 ...................................................................................................17

Mo. R. Civ. P. 55.26 .......................................................................................................................1

Restatement (Second) of Conflicts of Laws § 302 cmt. g (1971) ................................................10

Restatement (Second) of Conflicts of Laws § 302 cmt. a (1971) ..................................................9

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon"), pursuant to Missouri Rule of Civil Procedure 55.26, provides the following Suggestions in Support of its Opposition to Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center's ("Plaintiffs") Motion for Preliminary Injunction.

## INTRODUCTION

Plaintiffs—two unliquidated litigation claimants in a breach of contract action—have filed this Motion for Preliminary Injunction seeking unprecedented injunctive relief.  Indeed, Corizon is not aware of (and Plaintiffs have not pointed to) a single case where a Missouri court has **ever** fashioned equitable relief quite like what Plaintiffs suggest.  In reality, Plaintiffs' Motion for Preliminary Injunction is a bald attempt to invalidate decades-old corporate law of another state (Texas), including the corporate restructuring transaction conducted by Corizon to create value for unsecured creditors like Plaintiffs. While devoting **39 pages** to hearsay storytelling, Plaintiffs fail to satisfy the four well-known factors considered in assessing whether to grant the extraordinary relief of a preliminary injunction.  For these reasons and those explained in more detail below, Plaintiffs' Motion for Preliminary Injunction should be denied.

## FACTUAL BACKGROUND

### A.    Corizon's Contracts With The Missouri Department Of Corrections ("MDOC") And Plaintiffs

1.    Until May 5, 2022, Corizon was a nationwide provider of correctional healthcare, providing services in states such as Missouri.  *See* Corizon's Am. Answer to Pls.' Am. Pet. at ¶ 3.

2.    Corizon previously entered into an agreement with the MDOC whereby Corizon would provide, or arrange for the provision of, healthcare services to certain inmates and detainees under the control of the MDOC.  *See id.* at ¶ 16.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

3.       Plaintiffs and Corizon, LLC (a Corizon affiliate) entered into a Hospital Service Agreement (the "Agreement") on November 1, 2016, whereby Plaintiffs agreed to provide healthcare services to Corizon's patients, and Corizon would reimburse Plaintiffs for their services upon receipt of timely submitted claims. *See* Pls.' Am. Pet., Ex. 1, Agreement.  The Agreement was between Plaintiffs, on the one hand, and Corizon, LLC, on the other, "acting for itself or on behalf of any/all/other affiliated companies." *Id.* at 34.  The Agreement, which remained in effect through November 2021, predates the formation of Defendants CHS TX, Inc. and YesCare Corp, and does not bind those entities. *See* Pls.' Am. Pet. at ¶ 4 (noting that YesCare Corp. "is a Texas for-profit corporation formed on January 26, 2022"); ¶ 5 (noting that CHS TX, Inc. "is a Texas for-profit corporation formed on May 3, 2022").

4.       On April 19, 2022, Plaintiffs sent a demand letter to Corizon requesting payment for what they claim is over $12,000,000 in unpaid services. *See id.* at ¶ 85.

5.       Corizon admits that it was *billed* $11,174,465.50 by Plaintiffs under the Agreement but disputes that $11,14,465.50 is the correct amount *owed* to Plaintiffs pursuant to the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. Plaintiffs and Corizon have not yet engaged in or performed an audit of the remaining claims. *See e.g.*, *id.* at ¶ 46–47; 248; 261; 277; 288.

**B.       Corizon's Dire Financial Condition And Plan To File For Chapter 11 Bankruptcy**

6.       By the end of 2021, Corizon's financial situation was dire, and it was headed toward an almost certain bankruptcy: Its financial position had worsened in recent years due to revenue declines, margin compression, and deteriorating liquidity; it was operating in a significant negative working capital position due to its debt obligations; and it faced increased exposure to professional liability claims (indeed, hundreds) to the tune of an estimated $88 million in total exposure.  *See*

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

*e.g.*, Pls.' Mot. for Prelim. Inj., Ex. 28, Plan of Divisional Merger, at § 4.01(b)(RL) (detailing the hundreds of lawsuits filed against Corizon); Feb. 23, 2022 Presentation to Board of Directors of Corizon Health, Inc. and Valitas Health Services, Inc., attached as **Exhibit A**, at 11601–02.

7.    Given Corizon's financial position, it did not have the financial wherewithal to satisfy its defaulted secured debt, let alone its unsecured debt and litigation claims.  In other words, Corizon's unsecured creditors like Plaintiffs were likely going to receive no compensation.  *See* Feb. 23, 2022 Presentation to Board of Directors of Corizon Health, Inc. and Valitas Health Services, Inc., **Ex. A**, at 11602.

8.    In early 2022, Corizon's Board, with the help of counsel, began considering restructuring alternatives other than bankruptcy.  *See id.*  One restructuring alternative was a divisional merger under the Texas Business Organizations Code ("TBOC")—a decades-old statutory framework that allows one or more corporate entities to merge into one or more surviving or new legal entities and re-allocate assets and liabilities among the resulting entities in a manner that is binding on creditors.

C.    **The Diligence Process**

9.    To ensure that a divisional merger was a viable and fair path forward, on February 8, 2022, Corizon engaged independent financial firm, FTI Capital Advisors, LLC ("FTI"), to render a fairness opinion on the proposed divisional merger.[1]  *See* Pls.' Mot. for Prelim. Inj., Ex. 18, Fairness Analysis Pertaining to the Proposed Transaction to the Board of Directors of Corizon Health, Inc., at 384 (noting that the engagement letter for the fairness opinion was dated February 8, 2022); *id.* at 390 (same).  FTI conducted widescale due diligence, including, but not limited to,

---

[1] Corizon engaged FTI on February 8, 2022, **more than two months before** Plaintiffs sent their demand letter to Corizon.  *See* Pls.' Am. Pet. at ¶ 85.  Any assertion that Corizon underwent the divisional merger in response to Plaintiffs' demand for payment is unfounded and inaccurate.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

a review and analysis of Corizon's financial history and contingent liabilities.  *Id.* at 394.  FTI ultimately reached the conclusion that the proposed divisional merger provided Corizon's unsecured creditors with access to equal or greater value than not completing the merger (*i.e.*, a bankruptcy), a conclusion that was supported by the availability of a $15,000,00 M2 LoanCo, LLC funding agreement (the "Funding Agreement").  *Id.* at 394, 398–404.

10.    FTI again confirmed the fairness of the divisional merger in a May 1, 2022, Fairness Opinion sent to Corizon's Board of Directors.  *See* Pls.' Mot. for Prelim. Inj., Ex. 23, FTI Fairness Opinion, at 23 ("[W]e are of the opinion that the Transaction is fair, from a financial point of view, to the RemainCo Unsecured Creditors as compared to a scenario in which the Transaction does not occur and instead there is a Restructuring.").

**D.    The Transaction[2]**

**i.    *The Combination Merger***

11.    In Spring of 2022, Corizon and several of its affiliates, including Corizon, LLC (formerly a Missouri limited liability company), Valitás Health Services, Inc. ("Valitas") (formerly a Delaware corporation), and Corizon Health of New Jersey, LLC ("Corizon NJ") (formerly a New Jersey limited liability company) (collectively, the "Company") began to take steps to execute a corporate reorganization (the "2022 Corporate Restructuring").  The 2022 Corporate Restructuring was effectuated through two merger transactions under the TBOC: A Combination Merger and a Divisional Merger.  The following steps comprised the Combination Merger:

a.    On April 28, 2022, Corizon (previously incorporated in Delaware) converted to a Texas corporation.

---

[2] Corizon largely incorporates by reference the history of the Combination Merger and Divisional Merger from Plaintiffs' Amended Petition and CHS TX, Inc. and YesCare Corp.'s Motion to Dismiss.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

b.      Each of Corizon, Corizon, LLC, Valitas, and Corizon NJ merged pursuant to a plan of combination merger under Texas law (the "Combination Merger").

c.      Corizon filed the Certificate of Combination Merger with the Texas Secretary of State on May 2, 2022, and the Combination Merger became effective on May 5, 2022.

d.      Corizon was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the merged entities.  The other entities ceased to exist.

See CHS TX, Inc. and YesCare Corp.'s Mot. to Dismiss, at 5–6.

### ii.    *The Divisional Merger*

12.     Corizon then underwent a by-the-book divisional merger.  *See generally* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger (containing Corizon 167-page plan to consummate the entirely lawful divisional merger under Texas law).

13.     The following steps comprised the Divisional Merger:

a.      Corizon drafted the Plan of Merger, which provided that CHS TX, Inc. would be formed and documented which assets and liabilities were to remain with Corizon and which were to be allocated to CHS TX, Inc.[3]

b.      The approved Plan of Merger was in writing and included all information required by the TBOC.

---

[3] As part of the divisional merger, Corizon was allocated and remained vested with all inactive and expired customer contracts, as well as all liabilities related to such contracts.  *See* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger, Schedule 3.01(b); Schedule 4.01(b).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

> c.    Corizon filed the Certificate of Merger and Certificate of Formation for CHS TX, Inc. with the Texas Secretary of State on May 3, 2022, and the Divisional Merger became effective on May 5, 2022.
>
> d.    On May 11, 2022, the Texas Secretary of State approved and accepted the Certificate of Merger and Certificate of Formation for CHS TX, Inc. effective as of May 5, 2022.

*See* CHS TX, Inc. and YesCare Corp.'s Mot. to Dismiss at 7.

14.    After the Divisional Merger became effective, CHS TX, Inc. was acquired by YesCare Corp., and the Transaction was complete.  *Id.*

**E.    Corizon Today**

15.    Corizon is actively winding down its business as it is no longer an active entity with any active contracts.  As part of the wind down process and since the effective date of the Divisional Merger, Corizon has resolved numerous claims made by its unsecured creditors.

<u>**LEGAL STANDARD**</u>

**1.    Preliminary Injunction Standard**

A preliminary injunction is an "extraordinary remedy."  *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (internal quotation omitted); *see also State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. 1996) ("It is the movant's obligation to justify the court's exercise of such an extraordinary remedy.").  "When considering a motion for a preliminary injunction, a court should weigh 'the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest.'"  *State ex rel. Dir. of Revenue*, 925 S.W.2d at 839 (quoting *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994)).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

A likelihood of success on the merits "is the most significant" preliminary injunction factor. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (internal quotation omitted). "To that end, 'the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied.'" *Id.* (quoting *CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009)). To demonstrate a likelihood of success on the merits, a movant must show that its "prospects for success is *sufficiently likely* to support the kind of relief it requests." *Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228, 1244 (W.D. Mo. 2020). In other words, a movant needs to show "a fair chance of prevailing" based on the record before the court. *See id.*; *Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007). To that point, movants face a higher degree of difficulty in obtaining injunctive relief absent full and robust discovery as the evidence offered is often "slim" and "based in part on speculation." *SI03, Inc. v. Musclegen Rsch., Inc.*, No. 1:16-CV-274 RLW, 2021 WL 765293, at *5 (E.D. Mo. Feb. 26, 2021).

But even if a movant demonstrates a likelihood of success on the merits, this warrants a preliminary injunction only "if there is a risk of irreparable harm and the balance of the factors support an injunction." *CDI Energy*, 567 F.3d at 402. Indeed, the "failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see id.* at 420 ("Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted.").

Ultimately, "[w]hether an injunction should be granted is a matter of the trial court's discretion in balancing the equities." *Doe v. Phillips*, 259 S.W.3d 34, 36 (Mo. Ct. App. 2008). In determining whether to exercise its discretion to issue a preliminary injunction, courts should,

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

however, keep in mind the purpose of a preliminary injunction, which is only "to preserve the status quo until the trial court adjudicates the merits of the claim[s]." *See Cook v. McElwain*, 432 S.W.3d 286, 292 (Mo. Ct. App. 2014).

### 2.    Standard For The Appointment Of A Receiver

Like a preliminary injunction, appointing a receiver is an "extraordinary remedy." *Riegel v. Jungerman*, 597 S.W.3d 695, 708 (Mo. Ct. App. 2019).  The power to appoint a receiver is within the sound discretion of the trial court. *Id.* at 702.  Still, before judgment against a defendant, a court should appoint a receiver "only in highly unusual and compelling circumstances." *Id.* at 708.

### **ARGUMENT**

## I.    THE COURT SHOULD DENY PLAINTIFFS' UNPRECEDENTED REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF AGAINST CORIZON.

Plaintiffs have failed to meet the high burden for the issuance of the "extraordinary remedy" of a preliminary injunction.  *See Mgmt. Registry, Inc.*, 920 F.3d at 1183 (internal quotation omitted); *see also State ex rel. Dir. of Revenue*, 925 S.W.2d at 839 ("It is the movant's obligation to justify the court's exercise of such an extraordinary remedy.").  Plaintiffs have not demonstrated a likelihood of success on the merits of their fraudulent transfer claims.  Moreover, Plaintiffs have not—and indeed cannot—establish irreparable harm in this breach of contract action.  In addition, Plaintiffs have entirely failed to address the harm that will come to Corizon should their premature pre-judgment request for injunctive relief be granted.  Finally, Plaintiffs fail to demonstrate that granting an injunction against Corizon, which would indeed harm Corizon's unsecured creditors and the legitimate public interests of the state of Texas, is in the public interest.  For these reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

**A.    Applying Governing Texas Law, Plaintiffs Do Not Have A Fair Likelihood Of Success On The Merits Of Their Fraudulent Transfer Claims.**

Plaintiffs have not satisfied their burden of demonstrating a likelihood of success on the merits of their fraudulent transfer claims, and this alone "strongly suggests" that Plaintiffs' request for injunctive relief vis a vis Corizon should be denied.  *See Barrett*, 705 F.3d at 320.[4]

**1.    Texas law governs the divisional merger.**

As an initial, threshold matter, Plaintiffs' conclusion that the divisional merger at issue in this case constitutes a "fraudulent transfer" proceeds from their conclusory presumption that Missouri law governs the analysis of the internal affairs of a Texas corporation.  Not so.  Under Missouri's own well-established choice-of-law principles, enshrined in statute, Missouri law may not "regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state."  Mo. Rev. Stat. § 351.582; *see also* Restatement (Second) of Conflicts of Laws § 302 cmt. a (1971) (describing "mergers, consolidations and reorganizations" as the type of matters typically governed by the law of the state of incorporation).  Plaintiffs cite no Missouri case—and Corizon is aware of none—in which a court has discarded this long-recognized doctrine and analyzed lawful corporate transactions (and any "transfers" that occurred as part of such transactions) with total disregard for the law of the state of incorporation of the corporation(s) at issue.[5]  *See* Restatement (Second) of Conflicts of Laws § 302 cmt. g (1971) ("[T]he local law of

---

[4] In arguing the likelihood of success on the merits, Plaintiffs only address their fraudulent transfer claims (*see* Pls.' Mot. for Prelim. Inj. at 41–45) and successor liability claims (*see id.* at 45–53).  Plaintiffs' successor liability claims (Counts III, IV, V, VI) are asserted against Defendants CHS TX, Inc. and YesCare, Corp., not Corizon. As such, Corizon will assess the likelihood of success on the merits of the fraudulent transfer claims only.  Plaintiffs do not address their likelihood of success on the merits of their remaining (and primary) claims: Breach of Contract (Count I) and Breach of the Covenant of Good Faith and Fair Dealing (Count II).

[5] *A.O.A. v. Rennert*, the sole Missouri case cited by Plaintiffs (*see* Pls.' Mot. for Prelim. Inj. at 47), does not apply here.  It concerned alter-ego claims involving a Peruvian corporation, and had nothing to do with a merger or other similar transaction conducted under the laws of another state.  *See* 350 F. Supp. 3d 818, 836 (E.D. Mo. 2018).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

the state of incorporation has been applied almost invariably to determine issues involving matters that are peculiar to corporations.").

Texas law governs when assessing the divisional merger at issue and whether, as part of that divisional merger, a "transfer" occurred. Plaintiffs make no effort to even address Texas law as part of their Motion for Preliminary Injunction, let alone demonstrate how they have *any* chance of success on their fraudulent transfer claims. *See* Pls.' Mot. for Prelim. Inj. at 41–45.

## 2.    Fraudulent transfer claims

Despite boldly claiming that they have a high likelihood of success on the merits of their MUFTA claims against Corizon (*see id.* at 46), Plaintiffs ignore one glaring red flag that dooms their fraudulent transfer claims: there was no "transfer" of assets between Corizon, on the one hand, and CHS TX, Inc. and YesCare, Corp., on the other.  While it goes without saying, "[a] fundamental requirement of the MUFTA statutory scheme is that the alleged fraud involve a 'transfer.'"  *Konopasek v. Konopasek*, No. SD 37388, 2022 WL 4178971, at *3 (Mo. Ct. App. Sept. 13, 2022), *reh'g and/or transfer denied* (Sept. 26, 2022) (dismissing fraudulent transfer claim where there was no "transfer").  Where there is no "transfer," the additional elements of a MUFTA claims (*i.e.*, the "badges of fraud" that Plaintiffs belabor) are moot.  *See id.* at *4.

Under relevant Texas law, one form of "merger" is the divisional merger whereby one or more corporate entities merges into one or more surviving or new legal entities and re-allocates assets and liabilities (via a plan of merger) among the resulting entities in a manner that is binding on creditors.  *See* Tex. Bus. Orgs. Code Ann. § 1.002(55)(A); Tex. Bus. Orgs. Code Ann. § 10.003; *see also* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger (outlining this "allocation" of assets and liabilities with respect to the divisional merger at issue).  When a "merger"—which by statutory definition includes a Tex. Bus. Orgs. Code Ann. § 1.002(55)(A) divisional merger—takes effect, all rights, title, and interests to property owned by each organization that is a party to the merger

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

is "allocated to and vested" in "one or more surviving or new organizations as provided in the plan of merger **without… any transfer or assignment having occurred**." Tex. Bus. Orgs. Code Ann. § 10.008(a)(2)(C); *Plastronics Socket Partners, Ltd. v. Don Weon Hwang*, 2019 WL 1009404, at *2–4 (E.D. Tex. Feb. 13, 2019) (holding that a patent that was allocated and vested in a separate entity as part of a divisive merger did not violate a provision in a patent ownership agreement prohibiting transfers without consent as, under the TBOC, an allocation of interests through a divisive merger does not constitute a transfer).

Here, Corizon—faced with no other option than filing Chapter 11 bankruptcy—underwent a by-the-book divisional merger. *See generally* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger. As part of this divisional merger, Corizon was allocated and remained vested with all inactive and expired customer contracts, as well as all liabilities related to such contracts. *See id.* at Schedule 3.01(b); Schedule 4.01(b). In return, Corizon was released from nearly $100 million of senior secured debt; those secured debt obligations were allocated to CHS TX, Inc. *See id.* at 326; Schedule 4.01(a). Moreover, as part of the divisional merger, Corizon was allocated $1 million in cash, as well as the right to draw on the $15 million Funding Agreement with M2 LoanCo, $11 million of which was earmarked for creditors of Corizon. *See id.* at Schedule 3.01(b). These allocations *did not*, as a matter of Texas law, constitute a transfer or assignment. *See* Tex. Bus. Orgs. Code Ann. § 10.008(a)(2)(C). Without the necessary predicate "transfer," Plaintiffs' fraudulent transfer claims against Corizon will fail.

### B.    Plaintiffs Face No Irreparable Harm As This Is A Simple Alleged Breach of Contract Case That Can Be Remedied In Full By Monetary Damages.

Plaintiffs' Motion for Preliminary Injunction should also be denied as to Corizon as Plaintiffs have failed to demonstrate or allege irreparable harm. This alone is an independently sufficient ground upon which to deny Plaintiffs' request for injunctive relief, including the

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

appointment of a receiver. *See Rucker v. Fowler*, 233 S.W.2d 809, 814 (Mo. Ct. App. 1950); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *see also Simplex Paper Corp. v. Standard Corrugated Box Co.*, 97 S.W.2d 862, 866 (Mo. Ct. App. 1936) ("It seems to be supported by the great weight of the authorities that, before a court may be clothed with jurisdiction to appoint a receiver, it must first appear that the plaintiff has no adequate remedy at law and, absent such a showing, the court is without jurisdiction to appoint a receiver.").

"Irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct." *Minana v. Monroe*, 467 S.W.3d 901, 907 (Mo. Ct. App. 2015) (internal quotations omitted). It follows then that quantifiable losses, such as losses based on a purported breach of contract, are *not* irreparable. *See Mgmt Registry, Inc.*, 920 F.3d at 1183 (affirming denial of preliminary injunction where facts presented the "opposite" of irreparable harm—"that an award of money damages would fully compensate [movant] because its losses were quantifiable"); *Miller v. Ziegler*, 582 F. Supp. 3d 640, 647 (W.D. Mo. 2022) (finding there to be no irreparable harm where governing contract at issue could be used to calculate monetary remedy owed to movant if succsessul on claims); *Caballo Coal Co. v. Ind. Mich. Power Co.*, No. 4:01-CV-1558CAS, 2002 WL 32727070, at *7 (E.D. Mo. Jan. 10, 2002), *aff'd*, 305 F.3d 796 (8th Cir. 2002)) (finding there to be no irreparable harm in breach of contract action where movant could and did in fact already "calculate[] damages for the next five-year contract period, should [movant] prevail on the merits")). In a similar vein, harm is not irreparable where a plaintiff—by its own admission—monetizes the value of its harm as part of the pleadings. *See, e.g.*, *MPAY Inc. v. Erie Custom Comput. Apps., Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (confirming that movant's losses were quantifiable, and thus *not* irreparable, where movant's "own admission" provided a numerical damages estimate of $580,000/year).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Here, there can be no doubt that Plaintiffs face *no* irreparable harm absent injunctive relief against Corizon.  This action—despite Plaintiffs' best efforts to frame this dispute as more—is a breach of contract action.  *See* Pls.' Pet. ¶¶ 35–50 (asserting claims for breach of contract and breach of the covenant of good faith and fair dealing only); Pls.' Am. Pet. ¶¶ 15–47; 134–48.  Just like virtually all run of the mill breach of contract actions, Plaintiffs have an adequate remedy at law—money damages.  Similar to *Miller*, Plaintiffs can easily quantify their alleged harm by looking to the Contract that they allege Corizon breached.  *See* 582 F. Supp. 3d at 647.  Indeed, Plaintiffs already did so by ***repeatedly quantifying their purported damages through the pleadings***.  *See, e.g.*, Pls.' Am. Pet. ¶ 85 (explaining that on April 19, 2022, Plaintiffs' counsel sent Corizon a "Demand for Payment of Amounts Due and Owing under the Hospital Services Agreement, demanding the $12 million owed."); *id.* ¶ 279 (noting "the approximately $12 million owed to Plaintiffs"); *id.* ¶ 293 (same).

This inescapable conclusion fares no different in light of Plaintiffs' unsupported concerns that Corizon will engage in "additional transfers" and that without a preliminary injunction it "could make it difficult…for Plaintiffs to recover at the conclusion of the litigation."  *See* Pls.' Mot. for Prelim. Inj. at 55.  In Missouri, "one seeking injunctive relief on grounds of irreparable damage and lack of adequate remedy at law must plead irreparable injury and inadequate legal remedy as traversable facts, not mere conclusions."  *State ex rel. Gardner v. Stelzer*, 568 S.W.3d 48, 51 (Mo. Ct. App. 2019) (internal quotations omitted).  That Plaintiffs *may* have difficulty later collecting a judgment—a judgment that Plaintiffs (who are unsecured creditors) have in no way yet obtained[6]— is the type of unsupported "remote future injury" that cannot, as a matter of law,

---

[6] Plaintiffs are putting the cart before the horse.  Plaintiffs are unsecured creditors seeking to obtain a judgment against Corizon and, as such, have "no rights to property or right to judgment." *Stockdale*, 2009 WL 2151159, at *3 (doubting the propriety of issuing an injunction against a

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

support the "dramatic and drastic power of injunctive force."  *See Stockdale v. Stockdale*, 2009 WL 2151159 at *2 (E.D. Mo. July 16, 2009) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1981)); *Shafer v. Home Trading Co.*, 52 S.W.2d 462, 464 (Mo. Ct. App. 1932) (noting that appointing a receiver is "drastic" option which "should only be invoked when all other remedies fail").  And despite Plaintiffs' best efforts, none of the case law upon which Plaintiffs rely (*see* Mot. for Prelim. Inj. at 55) changes this conclusion.  *See, e.g.*, *Rodriguez v. Lawns of Distinction, Ltd.*, No. 4:07-MC-447CAS, 2008 WL 4552973, at *1 (E.D. Mo. Oct. 7, 2008) (presenting distinguishable facts where movant had previously obtained a MUFTA judgment against party it sought to enjoin from transferring assets); *CitiMortgage, Inc. v. Just Mortg., Inc.*, No. 4:09 CV 1909 DDN, 2013 WL 6538680, at *2 (E.D. Mo. Dec. 13, 2013) (presenting distinguishable facts where movant had previously obtained a MUFTA judgment that it could not collect upon against party it sought to enjoin from transferring assets); *BancorpSouth Bank v. Hall*, No. 6:10-CV-03390-DGK, 2011 WL 529971, at *6 (W.D. Mo. Feb. 7, 2011) (presenting distinguishable facts where movant was a secured creditor who sought preliminary injunction as to avoid disposal of class of preferred shares by conclusion of litigation).

Simply put, a preliminary injunction—especially a preliminary injunction of the magnitude proposed by Plaintiffs—is an "extraordinary remedy."  *See Mgmt. Registry, Inc.*, 920 F.3d at 1183.  Plaintiffs have failed to satisfy their obligation of justifying the court's exercise of fashioning such an extraordinary remedy as the threat of irreparable harm is, as made clear by the less-than one-page Plaintiffs devote to it in their Motion for Preliminary Injunction (*see generally* Pls.' Mot. for Prelim. Inj. at 55), non-existent.

---

defendant at risk of insolvency from transferring assets as "an unsecured credit has no rights to property prior to judgment").

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

## C.    Granting Plaintiffs' Requested Injunctive Relief Pre-Judgment Is Premature And Will Cause Severe Harm To Corizon.

When balancing the equities, the harm to Corizon weighs against granting Plaintiffs their requested injunctive relief.  Again, both preliminary injunctions and the appointment of a receiver are extraordinary remedies.[7]  At bottom, Plaintiffs seek to freeze Defendants' assets.  Such a remedy is extraordinary, yet Plaintiffs devote just one paragraph of their 63-page, 84 exhibit Motion for Preliminary Injunction to grappling with the harm posed to Corizon or the other Defendants.  *See* Pls.' Mot. for Prelim. Inj. at 55–56.[8]

To start, the harm to Corizon must be considered in the context of this litigation's procedural posture.  At this point, Plaintiffs have obtained ***no judgment*** against Corizon.  Under Missouri common law, courts will not appoint a receiver pre-judgment when the defendant lacks meaningful remaining assets to be managed.  *See Yellow Mfg. Acceptance Corp. v. Am. Taxicabs*, 130 S.W.2d 601, 610 (Mo. 1939) (affirming the refusal of the lower court to appoint a receiver where there was no judgment yet obtained against the corporate directors and the corporation at issue did not have remaining assets to be managed).   Such is the case here for Corizon—an entity that is currently winding down and that has no judgment against it.

True, the MUFTA allows a pre-judgment appointment of a receiver.  *See* Mo. Rev. Stat. § 428.039.1(3)(b); *Riegel*, 597 S.W.3d at 708.  But those limited instances where Missouri courts

---

[7] Before appointing a receiver under MUFTA, Missouri courts have ordered briefing and a hearing on the issue separate from other motions.  *See Riegel*, 597 S.W.3d at 706.  If the Court does not reject outright Plaintiffs' request for the appointment of a receiver, Corizon requests full briefing and a hearing on the issue.

[8] This is an interesting approach in light of *Mgmt. Registry, Inc.* where the Eighth Circuit Court of Appeals admonished a movant who "devoted most of its memorandum accompanying its preliminary-injunction motion to chronicling the [defendants'] alleged misdeeds, regardless of their relevance to the motion," in lieu of explaining how the movant satisfied the preliminary injunction factors.  *See* 920 F.3d at 1184.  The court criticized this approach, and noted that it was not the court's responsibility to "try to then connect the dots between [movant's] allegations and its legal theories."  *Id.*

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

have appointed a receiver pre-judgment, such as *Riegel*, are, in all respects, materially distinct from this case. In *Riegel*, the individual-defendant was the alleged sole owner of other named defendant organizations operating as his alter ego. *See id.* at 699. The petition did not criticize a perfectly appropriate divisional merger (as is the case here), but that the individual-defendant moved money around from bank accounts, trusts, and deposits to various organizations he owned to avoid paying a $5,750,000 judgment against him from a different case—a wrongful death case where the individual-defendant allegedly murdered a lawyer who secured a judgment against him. *See id.* at 698–99. Against that backdrop, plaintiff petitioned for the appointment of a pre-judgment receiver. *Id.* at 700. After separate briefing and oral argument, the trial court found that "the facts presented show the existence of conduct on the part of Defendants which constitutes a *great emergency* and places this matter in an *urgent posture* sufficient to require and justify the appointment of a receiver immediately to take charge of, manage, preserve, and protect the assets of the [d]efendants." *Id.* at 701 (emphasis added). In confirming the appointment, the Missouri Court of Appeals court recognized that "the appointment of a receiver over a civil defendant's property, during the pendency of litigation, is an extraordinary remedy which should be employed *only in high unusual and compelling circumstances*." *Id.* at 708 (emphasis added). A defendant who murdered the last lawyer to secure a judgment against him and who was transferring assets among his own companies is a highly unusual and compelling circumstance. A healthcare company undergoing a lawful divisional merger under Texas law is not.

Further, the relief sought by Plaintiffs is overly broad. Missouri courts have long recognized the "necessity that an injunction clearly and specifically describe the acts and things enjoined." *Nat'l Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 18 (Mo. 1966) (en banc). Plaintiffs' vague and broad request falls far short of this standard. Plaintiffs do not delineate which

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Defendants and which assets should be overseen by a receiver (*see, e.g.*, Pls.' Mot. for Prelim. Inj. at 56). In effect, their requested relief—appointing a receiver to take charge of all of the Defendants' assets—would be taking charge of the organizations as a whole. This kitchen sink approach is beyond the bounds of sound discretion.

Last, but of equal importance, it is unlikely that the Court even has the power to appoint a receiver over an out-of-state entity like Corizon. In general, "[c]ourts will not interfere to regulate the internal affairs of a foreign corporation and will not appoint a receiver for a foreign corporation where to do so would amount to interference with its internal affairs." 17A Fletcher Cyc. Corp. § 8554. Relevant here:

> A state court will not examine the affairs of a corporation created by another state and appoint a receiver to take possession of and to administer all its assets under the direction of the court pendente lite, since a court of equity never decrees what it cannot compel to be performed, and if a receiver for a foreign corporation were appointed, the receiver would have no power outside of the state in which the court was sitting.

*Id.* (footnotes omitted). Missouri courts have long held the same:

> A court of equity never does a vain act; it never decrees what it cannot compel to be performed. ***If this were a domestic corporation*** the court could… appoint a receiver, if it deemed proper, to take possession of all its assets and administer the same under the direction of the court pendente lite, and if the corporation or its officers should refuse to surrender its books or assets, there would be sufficient executive power forthcoming at the call of the court to enforce its decrees. But the commissioner or the receiver in such case is but the representative of the court. He is, while he keeps within his decree, pro hac vice the court. Where he goes the court goes, and what he does the court does. ***Can the circuit court in this case…go to Minnesota and take charge of the affairs of this corporation there?*** If the corporation should refuse to turn over its books to the commissioner or its money to the receiver, what could the court do? ***A court has no right to put itself in a position where its orders may be treated with contempt…***

*State ex rel. Minn. Mut. Life Ins. Co. v. Denton*, 129 S.W. 709, 712 (Mo. 1910) (emphasis added);

*see also State ex rel. Chicago Cardinals Football Club, Inc. v. Nangle*, 369 S.W.2d 167, 171 (Mo. 1963) ("The attempt here is not to appoint a receiver to preserve a specific asset of the estate

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

located in Missouri but to appoint a receiver to operate the business of an Illinois corporation in which decedent was a stockholder."); *Sidway v. Missouri Land & Live-Stock Co.*, 101 F. 481, 483–84 (C.C.W.D. Mo. 1900) ("[I]n the absence of a statute conferring such jurisdiction the settled rules of equity seem to answer the question [whether to appoint a receiver over an out of state corporation] in the negative.").

The MUFTA does not confer the power to appoint a receiver over an out-of-state corporation. Especially when the receiver would take charge of all of a corporation's assets—in effect, taking control of the corporation. Instead, MUFTA retains "the principles of law and equity" absent an explicit displacement. *See* Mo. Rev. Stat. § 428.054. Those principles of law and equity prohibit the appointment of a receiver to take charge of an out-of-state corporation—not just for Corizon in this instance, but also all other out-of-state corporations who may consider doing business in Missouri.

### D.   Public Interest Considerations Weigh Strongly In Favor Of Denying Plaintiffs' Motion for Preliminary Injunction.

Finally, the public interest would not be served by granting the injunction Plaintiffs seek against Corizon. Plaintiffs' argument to the contrary—contained in a single sentence in their 63-page, 84 exhibit Motion for Preliminary Injunction—is that "the public has a legitimate interest in ensuring that debtors are not allowed to frustrate legitimate collection efforts by creditors." Pls.' Mot. for Prelim. Inj. at 56. On this point, Corizon agrees.

Indeed, a key purpose of the divisional merger transaction was to protect unsecured creditors—like Plaintiffs—who, absent the divisional merger, would have had no recourse as the keys to Corizon would have been turned to a bankruptcy trustee. The fairness of the divisional merger transaction, including its benefits to unsecured creditors, was thoroughly assessed by independent financial advisors, including as part of a fairness opinion. *See* Pls.' Mot. for Prelim.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Inj., Ex. 18, Presentation to Corizon Health, Inc. on Fairness Analysis Pertaining to Proposed Transaction; Pls.' Mot. for Prelim. Inj., Ex. 23, FTI Capital Advisor's Fairness Opinion.  Those independent financial advisors determined that a divisional merger—the exact transaction that Plaintiffs criticize—was the fairest, most value-maximizing path forward.  *See id.*  Only after Corizon's Board determined that it was in the best interests of Corizon Health, its shareholders, and its creditors, did the Board approve the divisional merger transaction.  *See* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger, Recitals.  And the fruits of that decision are apparent in the various settlements Corizon has reached with its unsecured creditors since the divisional merger—money that those unsecured creditors would likely not have otherwise been paid if Corizon proceeded with a bankruptcy.

But the public interest considerations do not stop there.   Texas's legitimate public interest—long recognized by the Supreme Court—in "promoting stable relationships among parties involved in the corporations it charters" through the enforcement of its corporate laws must also be considered.  *CTS Corp. v. Dynamics Corp.,* 481 U.S. 69, 91 (1987).  The relief Plaintiffs seek as part their Motion for Preliminary Injunction—effectively, allowing a creditor from one state to upend a sophisticated transaction lawfully conducted under the laws of another state— would hardly serve that interest.  It would extinguish it.[9]

## CONCLUSION

For the foregoing reasons, Defendants request this Court to deny Plaintiffs' Motion for Preliminary Injunction as to Corizon.

**Dated:**  January 20, 2023

---

[9] To be sure, there is more on the line in this case than the corporate laws of Texas, which is but one of several states with statutory provisions allowing divisional mergers.  *See, e.g.*, 15 Pa. Cons. Stat. Ann. § 361; Ariz. Rev. Stat. § 29-2601; 6 Del. C. § 18-217(b)–(c).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Respectfully submitted,

 /s/   R. Thomas Warburton
R. Thomas Warburton (MO Bar No. 65477)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
205.521.8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a Corizon
Health, Inc.*

20