IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____
                                   )
In re:                                        )        Chapter 11
                                        )
TEHUM CARE SERVICES, INC.,      )        Case No. 23-90086 (CML)
                                        )
                Debtor.        )
                                        )

**OBJECTION TO TEHUM CARE SERVICES, INC.'S EMERGENCY MOTION TO EXTEND AND ENFORCE THE AUTOMATIC STAY**

       Corizon Health, Inc. (now Tehum Care Services, Inc.) ("Debtor" or "Corizon Health") and Non-Debtors YesCare Corp. and CHS TX, Inc. are attempting to use this bankruptcy litigation as a last-minute escape chute out of state court, fearful of what the Missouri state court will do should it be permitted to rule on Plaintiffs' Motion for Preliminary Injunction. But Corizon Health has failed to meet its burden establishing its interests are inextricably intertwined with YesCare and CHS TX such that a case against those non-debtor entities is in essence a case against Corizon Health. Nor has Corizon Health satisfied its burden to establish that Plaintiffs' claims against YesCare and CHS TX, including Plaintiffs' common law fraud and conspiracy claims, are in any way property of Corizon Health's estate. At this juncture, Corizon Health's bid to enjoin third party causes of action involving non-debtors fails. For these reasons and those fully discussed herein, Plaintiffs respectfully request this Court decline that invitation and reject Corizon Health's request for extension of the automatic stay.

## LEGAL STANDARD

The automatic stay provision is not absolute. *Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986). Ordinarily, the automatic stay under § 362 does not apply to actions against a nondebtor. *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 722 (S.D. Tex. 2010). The party invoking the stay has the burden to show that it is applicable. *Id.* at 723 (citing 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 43:4 (3d ed. Supp. 2010) (noting that in bankruptcy court proceedings, "the party seeking to extend the stay will bear the burden to show that 'unusual circumstances' exist warranting such an extension of the stay to a nondebtor")). The Fifth Circuit has repeatedly made clear that "[s]ection 362 is rarely, however, a valid basis on which to stay actions against non-debtors." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001)); *see also In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987) (observing that courts have recognized the stay may apply to actions against nonbankrupt defendants in only "very limited situations").

YesCare Corp. ("YesCare") and CHS TX, Inc. ("CHS TX") are not parties to the bankruptcy. Nonetheless, Debtor requests this Court extend the automatic stay to Non-Debtors. This effort fails for the following reasons.

## ARGUMENT

**I.    Corizon Health's Attempt to Misuse This Court's Equitable Powers Should Be Rejected.**

The Curators of the University of Missouri and Capital Region Medical Center ("Plaintiffs") provided healthcare services to Missouri inmates pursuant to a Hospital Services Agreement with Corizon, LLC. Corizon, LLC refused to pay Plaintiffs the funds it received for Plaintiffs' services from the Missouri Department of Corrections ("MDOC"), repeatedly

2

representing to Plaintiffs that the MDOC had paid Corizon, LLC. Discovery revealed that was false—to be sure, Corizon, LLC had $22.3 million in unsecured funds.[1] After months of unsuccessful attempts to recoup funds, Plaintiffs told Corizon, LLC they were ready to take action: in a second demand letter served on April 19, 2022, Plaintiffs told Corizon, LLC that they would sue, if not paid within seven business days. After receipt of this letter, YesCare Corp. and Corizon, LLC's directors promptly executed a series of fraudulent transactions intended to thwart Plaintiffs from accessing substantial assets in Corizon, LLC's possession by substantively consolidating Corizon, LLC with four other "Corizon" entities and then funneling Corizon, LLC's assets to YesCare through an abuse of the Texas Business Organizations Code's Divisional Merger Statute.

Indeed, on the seventh business day after Plaintiffs' demand letter, April 28, 2022, Corizon Health filed its Certificates of Conversion and Certificates of Formation with the Texas Secretary of State. Then, Corizon Health and YesCare worked over the weekend to tie up the loose ends. On Sunday, May 1, 2022, Corizon Health and YesCare: (1) held board meetings in which YesCare adopted bylaws and appointed directors, (2) executed the agreement and plan of combination merger (combining Corizon Health, Inc., Valitas Health Services, Inc., Corizon, LLC, and Corizon Health of New Jersey, LLC): and (3) executed the Agreement and Plan of Divisional Merger (creating CHS TX, Inc. (later bought by YesCare) and the new Corizon Health, Inc.).

Plaintiffs have vigorously pursued Corizon Health, YesCare Corp., and CHS TX, Inc. in Missouri state court to recover damages from these three entities' fraudulent conspiracy. The state court litigation culminated in a 60-page Motion for Preliminary Injunction against YesCare Corp. and CHS TX, which detailed actions taken by the directors of YesCare and Corizon Health to move substantial assets from Corizon, LLC to curtail Plaintiffs from receiving their fair share of

---

[1] Doc. 75-3 (Pls' Reply ISO Mot. for Prelim Inj.) p. 19.

Corizon, LLC's assets in an eventual bankruptcy. Plaintiffs' support for the Motion was marshalled through a court-ordered expedited discovery process, fueled by the threat that YesCare and CHS TX would shelter their assets out of Plaintiffs' reach. The Motion sought injunctive relief against YesCare and CHS TX only—both non-debtors.[2]

On February 9, 2023, Boone County Circuit Court Judge Josh Devine held a half-day hearing on Plaintiffs' Motion for Preliminary Injunction and YesCare and CHS TX's Motion to Dismiss. After denying YesCare and CHS TX's Motion to Dismiss from the bench, the Court held an evidentiary hearing on Plaintiffs' 60-page Motion for Preliminary Injunction.

YesCare and CHS TX, for their part, largely did not deny the facts presented in Plaintiffs' Motion—rather, they bemoaned that their conduct was lawful and threatened, if the court dared to enter an order on Plaintiffs' Motion, to stop paying their employees, stop providing care to the nearly 50,000 inmates in their charge, and to file for bankruptcy. At the hearing's end, Judge Devine ordered Plaintiffs to submit a proposed order by the next day, Friday, at close-of-business.[3]

Spooked by the prospects of what was coming next, Defendants colluded to keep their fate out of the court's hands. While Plaintiffs prepared a proposed order, Defendants schemed to send Corizon Health (insolvent since at least May 2022) to bankruptcy to invent a basis to move Plaintiffs' otherwise-unremovable case to federal court before a ruling could issue.

But with Friday's 5:00 p.m. deadline less than 36 hours away, Defendants needed time; time they could only secure with Plaintiffs' cooperation. So, on Thursday evening, shortly after the hearing, Defendants initiated sham settlement discussions with Plaintiffs, quadrupling their last settlement offer. And by Friday afternoon, Defendants led Plaintiffs to believe they agreed to a

---

[2] *See* **Ex. 1**, Proposed Order.
[3] Case No. 22BA-CV-1701-01, Docket ("Parties granted leave of up to and including 2-10-23 at 5:00 p.m. to file any proposed orders regarding the preliminary injunction motion").

4

settlement amount, with a term sheet in process. Having lured Plaintiffs into believing the false prospect of settlement by Friday afternoon, Corizon Health, YesCare, CHS TX's counsel repeatedly warned Plaintiffs' counsel that submitting their proposed order by close-of-business would "blow up" settlement discussions and pled with Plaintiffs to seek an extension until Monday close-of-business to do so. Defendants promised, in exchange, to provide Plaintiffs revisions to a proposed term sheet before that time. Believing these negotiations to be genuine, Plaintiffs asked for—and received—an extension from Judge Devine until Monday based on the parties' agreement.[4] But Defendants had no intention of settling.

Having bought more time, Defendants worked quickly. On Saturday, Corizon Health counsel requested—and Plaintiffs sent—a copy of the proposed order under the guise of settlement talks.[5] And on Monday morning, while Defendants continued to have settlement talks with Plaintiffs, Corizon Health held a "special meeting" Monday of its board (of one man—Isaac Lefkowitz), in which it employed bankruptcy counsel, employed a chief restructuring officer, and sanctioned the bankruptcy.[6] Instead of providing term sheet revisions to Plaintiffs Monday afternoon as promised, Corizon Health abruptly filed for Chapter 11 bankruptcy in this Court. On the heels of that bankruptcy filing, Corizon Health removed the entire action, including the claims against non-debtors. Now, Corizon Health seeks an expansive and extraordinary ruling from this Court extending the automatic stay to Plaintiffs' claims against non-debtors YesCare and CHS TX.

---

[4] *See* **Ex. 2, Ex. 3, Correspondence with Boone County Court.**
[5] **Ex. 4, Correspondence with Corizon Health counsel.**
[6] Voluntary Petition for Non-Individuals Filing for Bankruptcy, Case No. 23-90086, Doc. 1 at 6-8. The Petition had to be subsequently amended because Corizon Health mis-stated its own name. *Id.* at 1 (stating its prior name was "Corizon Health Services, Inc." instead of "Corizon Health, Inc." and "Corizon, LLC").

5

One thing is clear: a desire to upend the state court's authority to act in Plaintiffs' case motivated Defendants' procedural jockeying. Indeed, this is just one of a series of litigation tactics intended to frustrate Plaintiffs from pursuing their claims—including the very tactics that warranted Plaintiffs' Motion for Preliminary Injunction in the first place.

That Debtor's bankruptcy proceeding was intended to frustrate Plaintiffs is plain from the fact that Debtor cites, and plainly mischaracterize, Plaintiffs' case in an attempt to support their Emergency Motion to Extend the Stay. Specifically, Debtor claims Plaintiffs' case "sought appointment of a receiver over the Debtor," which is demonstrably false. Doc. 7 at ¶ 4; *see* Ex. 1, Proposed Order at 22 (requesting "a Receiver be appointed of Defendants CHS TX and YesCare Corp."). Further, Debtor mischaracterizes Plaintiffs' requested injunctive relief as seeking to "vest the receiver with the right to pursue an essential unwinding of the Divisional Merger;" this issue is also demonstrably false. Doc. 7 at ¶ 4; Ex. 1, Proposed Order, at 22-23 (requesting appointment of a receiver limited to assets having a fair market value of $13,000,000, unless YesCare and CHS TX posted an injunction bond in ten days, in which case the receivership request rescinded).

But bankruptcy courts are courts of equity; and the purpose of chapter 11 reorganization is to assist financially distressed businesses with breathing space in which to return to a viable state; not to allow non-parties to find shelter from potentially adverse state court rulings where the day of reckoning for their acts of misconduct is at hand. *See, e.g.*, *Furness v. Lilienfield*, 35 B.R. 1006, 1012 (D. Md. 1983). Corizon Health's apparent attempt to misuse its Chapter 11 case despite have no assets, no business, and plainly no potentially viable business flouts the equitable principles underlying bankruptcy relief. Faced with such conduct, it is within this Court's sound discretion to deny Corizon Health's request. Doing otherwise, here, would furnish a haven of repose for one accused and called to account by a court of competent jurisdiction. *See id.*

> II. **The Claims Against Non-Debtors Are Not Inextricably Intertwined with Claims Against Debtors By Way of The Indemnification Agreement.**

Debtor claims that the claims against the Non-Debtors "are in effect and reality against the Debtor," based on the conclusion that "any claim or final resolution against the Non-Debtor Indemnified Parties will automatically result in indemnification liability for the Debtor and indemnification claims asserted against the Debtor in this chapter 11 case." Doc. 7. at ¶ 30.

Indemnity agreements are construed under the normal rules of contract construction. *Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 423 (Tex. 2000). Principles of contract law require courts to ascertain and give effect to the intentions of the parties as expressed within the four corners of the agreement. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.,* 389 S.W.3d 802, 805 (Tex. 2012); *Ideal Lease Serv., Inc. v. Amoco Prod. Co., Inc.,* 662 S.W.2d 951, 953 (Tex. 1983). It is the objective, not subjective, intent of the parties that controls, and the instrument alone is considered to express that intent. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731 (Tex. 1981).

> A. **The Plain Language of the Indemnification Provision Does Not Provide "Absolute Immunity," Nor Does it Contemplate Coverage for Non-Debtor's Own Fault.**

In making this argument Debtor relies primarily on *H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986). Mot. at ¶ 29; *Id.* at Section A. But a plain reading of the indemnification provisions Debtor cites reveals that no mandate of "absolute immunity" exists between Debtor and any relevant non-debtor. Specifically, the indemnification provision states:

> RemainCo shall indemnify, defend, and hold harmless NewCo and its affiliates (other than RemainCo and its subsidiaries) and its and their respective officers, directors, shareholders, members, partners, members, employees, successors, and permitted assigns (collectively, the "**NewCo Indemnified Parties**") from and against, and reimburse and NewCo Indemnified Party for, any and all losses, damages, costs, expenses, taxes, liabilities, obligations, penalties, fines, claims of any kind (including reasonable attorneys' fees) (collectively, "<u>Losses</u>"), suffered or incurred, or that may be suffered or incurred, by such NewCo Indemnified Party to

7

the extent such Losses arise from or relate to the RemainCo Liabilities or RemainCo Assets."

**Doc. 63-1**, Agreement and Plan of Divisional Merger, at p. 4, ¶ 11(a).

Plainly, this provision does not contemplate the fraud, intentional torts, negligence, or other fault of any relevant non-debtor. At bottom, debtor asks this Court for a finding that YesCare and CHS TX would be entitled to "absolute indemnity" from Debtor for their independent fraud to Plaintiffs based on an indemnity provision that contains no mention of such a scenario; this is a premise that finds no support in Texas law, and the plain language of the provisions Debtor cites renders *A.H. Robins*, and the remaining cases Debtor cites, inapposite.

In *A.H. Robins*, for example, the Fourth Circuit noted an automatic stay may extend to a non-debtor where such party was "entitled to *absolute indemnity* by the debtor on account of *any judgment* that might result against them in the case." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (emphasis added). Here, no such obligation exists; debtor seeks to stretch its own indemnity obligation much too far.

And while the Fifth Circuit recognized *A.H. Robin's* exception in *Arnold v. Garlock*, it declined to extend to that case because no claim of a formal tie or contractual indemnification had been made to create an identity of interests between the debtor and the nondebtor. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) (rejecting argument that nonbankrupt asbestos codefendant facing the same allegations as bankrupt codefendant was entitled to stay); *see also Reliant Energy*, 349 F.3d at 825 (discussing *A.H. Robins* and *Arnold*). Similarly, in *Reliant Energy*, the Fifth Circuit overturned the district court's extension of a § 362 stay to Enron Canada in a breach of contract dispute involving four other bankrupt Enron parties facing similar allegations because there was no finding of a "formal tie or contractual identification . . . to create an identity of interests." *Reliant Energy*, 349 F.3d at 825. The Fifth Circuit found *A.H. Robins*

8

inapplicable because the meaning of the at-issue contract arguably creating that identity of interests was "ambiguous. *Id.* at 825. Thus, the Fifth Circuit remanded the case to the district court to reconsider the issue, explaining: "[s]hould the district court find that the Netting Agreement imposes no obligation upon Enron Canada to cover the debts of the other Enron parties, then the bankruptcy stay issue will become moot." *Id.*

Finally, debtor's reliance on *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010) also fails. In that case the Southern District of Texas was clear: there "is no basis to extend the § 362 stay to the nondebtor defendants." *Id.* at 723 (explaining "[t]he Fifth Circuit has stated that a § 362 stay should extend to nonbankrupt codefendants only when there is a formal or contractual relationship between the debtor and nondebtors such that a judgment against one would in effect be a judgment against the other"). The Southern District reiterated that "the presence of identical allegations against the debtor and nondebtor defendants *are an insufficient ground* to extend the stay to the nondebtors." *Id.* at 724 (emphasis added). Instead, "[t]here must be an *actual*, as opposed to an alleged or potential, identity of interests, such that a judgment against the nonbankrupt parties would *in fact* be a judgment against the bankrupt party." *Id.* at 724 (emphasis added). Because the defendants had not "carried their burden" in this respect, the court declined to extend the bankruptcy stay to nondebtors. *Id.*

So too, here. That a limited indemnification provision purportedly exists between Debtor and some Non-Debtors does not render a broadly-reaching automatic stay appropriate as to all claims nationwide against YesCare, CHS TX, or any other non-debtors involved in suits or claims related to Debtor. Indeed, the plain language of the indemnification provision fails to expressly cover the very entities Debtor now seeks to sweep under the rug of its automatic stay.

9

### B. The Plain Language of the Indemnification Provision Does Not Unambiguously Cover YesCare Corp.

The four corners of the indemnification provision purportedly extend to "NewCo and its affiliates." **Doc. 63-1**, Agreement and Plan of Divisional Merger, ¶ 11(a). While "NewCo" is defined as "CHS TX, Inc.," (*Id.* at Recitals), the vaguely-stated "affiliates" is not. *See id.* This is fatal to Debtor's attempts to apply the indemnification provision to YesCare. *See, e.g.*, *AK FortySeven Recs., Ltd. Co. v. Bahamas Ministry of Tourism*, 2018 WL 8755881, at *8 (S.D. Tex. Sept. 28, 2018) ("The Court may not search beyond the four corners of the parties' written agreement to determine the parties' intent in defining the third-party beneficiary group") (citing *Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins.*, 924 F.2d 1347, 1352 (5th Cir. 1991)); *Maddox*, 361 S.W.3d at 758-59 (declining to find third-party beneficiary status when, among other things, "the group composition could change on a daily or hourly basis").

### C. Texas Law Renders the Indemnification Unenforceable by Debtor Against YesCare and CHS TX, Mooting Debtor's Argument.

An indemnification provision is a "risk shifting provision" that, in the context of relieving a party for its own fault, is "considered extraordinary." *Hamblin v. Lamont*, 433 S.W.3d 51, 54 (Tex. App.—San Antonio 2013, pet. denied). Indemnification for an indemnitee's own fault, of any form, is "an exception to usual business practices" and "involve[s] an extraordinary shifting of the risk and may have great financial impact on the parties." *Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe Railway Co.*, 890 S.W.2d 455, 458 (Tex. 1994) (internal quotation marks omitted).

Accordingly, Texas courts "place great restrictions on a party's ability to exculpate itself" for responsibility for its own fault. *Hamblin*, 433 S.W.3d at 55. As a rule of contract interpretation, to be enforceable to transferring damages resulting "from any form of the indemnitee's fault," the

indemnification provision must provide "fair notice" of the intent to do so. *JetPay ISO Servs., LLC v. Integrated Merch. All.*, Inc., 2015 WL 13118144, at *3 (N.D. Tex. Mar. 16, 2015); *Martin K. Eby Construction Co., Inc. v. OneBeacon Ins. Co.*, 2015 WL 437749, at *4 (10th Cir. Feb. 3, 2015) (applying the Texas fair notice rule to claims of fraud); *Hamblin*, 433 S.W.3d at 53, 57 (holding the express negligence rule extended to intentional torts, which there included misappropriation of trade secrets, conversion, tortious interference with existing contracts, unjust enrichment, and conspiracy). First adopted as the "express negligence" doctrine, the "fair notice" rule provides that a party seeking indemnity for the consequences of its own fault must express such intent in specific terms within the four corners of the document. *JetPay ISO Servs., LLC v. Integrated Merch. All.*, Inc., 2015 WL 13118144, at *3 (N.D. Tex. Mar. 16, 2015). Indeed, the "same public policy concerns" associated with "extraordinary risk-shifting" in a negligence-context "apply with equal or greater force" to intentional torts. *Hamblin*, 433 S.W.3d at 57. Against this backdrop, the fair notice doctrine provides that references to liabilities or claims in general will not suffice; instead, the language must specifically refer to liability pertaining to the party's own fault to be enforceable. *See Dresser Industries, Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 507-09 (Tex. 1993). This is a rule of contract interpretation—a failure to comply renders the indemnification provision unenforceable as to fault-based claims against the indemnitee. *See id.*

Here, the indemnification provision failed to set out in specific terms any intent to cover the purported indemnitees ("NewCo and its affiliates") for their own fault-based conduct. *See, e.g.*, *Ethyl Corp.*, 725 S.W.2d at 708 (emphasis added) (rejecting Ethyl's argument that the inclusion of language indemnifying against "any loss" and "as a result of operations growing out of the performance of this contract" expressed the parties' intent for Daniel Construction to indemnify Ethyl for the consequences of Ethyl's own negligence).

That argument failing, all that remains is YesCare, CHS TX, and Corizon Health's relationship to each other. But the mere fact that each may be related to the other "does not entitle" YesCare and CHS TX to the protections of the automatic stay. *R. Hassell Builders, Inc. v. Texan Floor Serv., Ltd.*, 546 S.W.3d 816, 826-27 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *In re Chugach Forest Prods.*, 23 F.3d at 246 (stating that automatic stay does not stay actions against corporate affiliates of debtor); *In re Pegasus Funds TFN Trading Partners, LP*, 345 S.W.3d 175, 177 (Tex. App.—Dallas 2011, no pet.) (stating that protections of automatic stay do not extend to non-debtor simply because of non-debtor's relationship to debtor); *see also SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008) ("Creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace. We have never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances.")).

### III. Plaintiffs' Claims Against Non-Debtors Do Not Seek To Recover Property of the Estate.

In contending that it is entitled to extend the automatic stay to Plaintiffs' claims against YesCare and CHS TX, Corizon Health also argues that Plaintiffs' claims seek the recovery of property of the bankruptcy estate, even though YesCare and CHS TX are not the bankruptcy debtor. "The filing of a chapter 11 petition creates an estate comprised of all the debtor's property, including 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009) (quoting 11 U.S.C. § 541(a)(1)). The phrase "all legal and equitable interests," includes all "rights of action as bestowed by either federal or state law." *In re S.I. Acquisition, Inc.*, 817 F.2d at 1149. "Whether a particular state cause of action belongs to the estate depends on whether

under applicable state law the debtor could have raised the claim as of the commencement of the case." *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994).

This, in turn, requires consideration of "the nature of the injury for which relief is sought" and "the relationship between the debtor and the injury." *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008). If a cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and will not be part of the bankruptcy estate. *Id.* However, "[i]f a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Educators Grp. Health Trust*, 25 F.3d at 1284. Further, "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 585 (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 753 (5th Cir. 1995) ("Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy [for purposes of finding bankruptcy jurisdiction].")).

The Fifth Circuit has determined in multiple cases that claims sounding in fraud and conspiracy to commit fraud belong solely to the creditor. *See, e.g.*, *Educators Grp. Health Trust*, 25 F.3d at 1285-86 (finding claims belonging to creditors where "the defendants intentionally misrepresented *to them* the financial situation of [the debtor]"); *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 585-86 (holding the bondholders "allege an injury that is not merely derivative of an injury to" the debtor, including for conspiracy to defraud and aiding and abetting fraud); *see also In re Today's Destiny, Inc.*, 2007 WL 2028111, at *10 (Bankr. S.D. Tex. July 6, 2007)

(determining that claims of fraud did not belong to the estate because the debtor did not suffer direct damages).

Significantly, the Fifth Circuit has "neither held nor implied that a cause of action belongs to the estate simply because it could be brought by many creditors, as opposed to only one." *Educators Grp. Health Trust*, 25 F.3d at 1285, n.4 ("Interpreting *S.I. Acquisitions* to stand for this [] proposition would violate the well-established rule that trustees have no standing to bring personal claims of creditors.") (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 433-34 (1972)).

Plaintiffs have asserted common law fraud and conspiracy claims against YesCare and CHS TX, which are live in the Missouri action. In fact, the Boone County Circuit Court recently denied YesCare and CHS TX's motion to dismiss these claims. Explained above, these common law claims, governed by Missouri law, involve harm unique to Plaintiffs because, among other things, Plaintiffs' debtor (Corizon, LLC) had $22.3 million in assets that YesCare and CHS TX took out of their reach. To be sure, Corizon, LLC operated in principally in Missouri. By substantively consolidating Corizon, LLC with the other Corizon entities, Corizon Health uniquely prejudiced Plaintiffs, as creditors of Corizon, LLC, because Corizon, LLC had unique assets available to it from which Plaintiffs were entitled to claim. Now that those entities are consolidated, Plaintiffs have been uniquely prejudiced compared to creditors of Corizon Health's other consolidated entities, because now *all* of Corizon Health, Inc., Corizon, LLC, Corizon of New Jersey, and Valitas Health Services, Inc.'s creditors may attempt to lay claim to the assets that were previously uniquely available to Corizon, LLC. While Plaintiffs do not currently have the benefit of seeing Debtor's schedules, it appears that the majority of tort claims against Debtor are

14

in Arizona and New Jersey, not Missouri—Debtor has made no showing that those, among other, creditors, were defrauded by the same debtor.

### IV. Corizon Health Has Failed to Make the Required Showing for Entry of an Interim Injunction.

"[T]he legislative history of § 105 makes clear that stays under that section are granted only under the usual rules for the issuance of an injunction." *Matter of Zale Corp.,* 62 F.3d 746, 765 (5th Cir. 1995) (citing *Commonwealth Oil Ref. Co. v. U.S.E.P.A. (In re Commonwealth Oil Ref. Co.),* 805 F.2d 1175, 1188–89 (5th Cir. 1986)); *In re Eagle–Picher Indus., Inc.,* 963 F.2d 855, 858 (6th Cir. 1992) ("When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a bankruptcy court must consider the traditional factors governing preliminary injunctions issued pursuant to Federal Rule of Civil Procedure 65.").

The four prerequisites to the issuance of a preliminary injunction are: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest. *Matter of Zale Corp.*, 62 F.3d at 765. Debtor has failed to address any of these factors.

### CONCLUSION

For the foregoing reasons, The Curators of the University of Missouri and Capital Region Medical Center respectfully request this Court deny Debtor's emergency motion.

### LOCAL RULE 9013-1(G)(1) CERTIFICATION

Undersigned counsel certifies that he conferred with counsel for Debtor by email regarding the emergency motion. The parties were unable to reach agreement to resolve this matter.

15

March 2, 2023                                   Respectfully submitted,


                                                      */s/ Ethan M. Lange*
                                                     Ethan M. Lange
                                                     Texas Bar No. 24064150
                                                     SD Tex. Bar No. 1179878
                                                     **STUEVE SIEGEL HANSON LLP**
                                                     460 Nichols Road, Suite 200
                                                   Kansas City, MO 64112
                                                   Telephone: (816) 714-7100
                                                   Facsimile: (816) 714-7101
                                                   lange@stuevesiegel.com

                                                   **COUNSEL FOR THE CURATORS OF THE UNIVERSITY OF MISSOURI AND CAPITAL REGION MEDICAL CENTER**


### CERTIFICATE OF SERVICE

     I hereby certify that on March 2, 2023 a true and correct copy of the foregoing document was filed electronically with the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, which electronically sent notice of the foregoing document to all parties authorized to receive electronic notice in this case.

                                                   */s/ Ethan M. Lange*
                                                   Ethan M. Lange