DAVIDOFF HUTCHER & CITRON LLP
*Proposed Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| FIFTEEN TWENTY SIX FIFTY SECOND LLC, | Case No. 21-22397(RDD) |
| Debtor. | |

-------------------------------------------------------------x

## DECLARATION OF ISAAC LEFKOWITZ PURSUANT TO
## LOCAL BANKRUPTCY RULE 1007-2

ISAAC LEFKOWITZ, under penalties of perjury, hereby declares and states as follows:

1. I am the CEO of the above captioned debtor (the "Debtor") and its sole member and I submit this Declaration pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

## PART I
## BACKGROUND

2. In June 2001, my wife, Bluma Lefkowitz ("Bluma"), acquired title to a multi-family residential property located at 1526 52nd Street, Brooklyn, New York 11219 (the "Property").

3. The Property consists of a six-story, two family building in the Borough Park section of Brooklyn.

4. In October 2006, Bluma transferred 50% of her undivided interest in the property to Tova Greenbaum ("Tova") pursuant to a duly recorded deed with the City of New York.

1

5. From 2006-2014, the deed to the Property remained titled in Bluma and Tova as tenants in common.

6. In 2014, I 100% owned and operated a company called Vetcare Health, In. ("Vetcare"). In March 2014, Vetcare and I negotiated a business loan for Vetcare with a long time business associate of mine named Sender a/k/a Alexander Ashkenazi ("Sender"), wherein Sender agreed to lend Vetcare $1,000,000.00.

7. Loan documents were prepared and executed between for Vetcare and Sender. As further consideration for making the loan, the parties agreed that the Property would serve as "unofficial" additional collateral for repayment of the $1 million loan. To that end, a contract of sale and deed for the Property were drafted to be held in escrow and only, in the event of default, to be finalized, notarized and delivered to Sender.

8. The unofficial contract of sale provided for a "purchase price" of $2,400,000, with a down payment of $560,000. The contract of sale and deed were delivered to Sender's attorney, Norman Seidenfled ("Seidenfeld") to be held in escrow pending default or repayment of the loan which would require a return of the contract of sale and deed to Bluma.

9. At this time, Sender also requested that Bluma permit his supposed charitable entity, Mesamche Lev-Viyoel Moishe Inc., to occupy the Property on a month to month basis. No lease was executed. However, Sender agreed that he would cover the maintenance of the Property, including the debt service on the outstanding mortgage on the Property currently held by Arvest Central Mortgage Company ("Arvest") in the approximate current outstanding amount of $1,100.000.

10. Only after permitting this entity to occupy the Property did I learn that the so-called charitable entity was a sham corporation that were merely a conduit for and alter ego of Sender!

11. During the entire term of the Vetcare loan obligation, Vetcare remained current with all payments and obligations under the loan agreement with Sender.

12. On July 9, 2014, Sender formed an entity known as 1526 52nd LLC (the "LLC"). According to the incorporation documents, Bluma was designated as agent for service of process, using her home address for such process.

13. Upon information and belief, the members of the LLC were to be Bluma, Tova and Rivka Ashkenazi ("Rivka"), the wife of Sender.

14. Upon learning of the formation of the LLC, Bluma and Tova, as majority members, voted to dissolve the LLC.

15. I subsequently discovered that, unbeknownst to either myself, Bluma or Tova, on July 28, 2014 Sender had the deed that was supposed to be held in escrow released from escrow, completed and notarized by Seidenfeld, despite the fact that (a) neither Bluma or Tova ever met or appeared before him to have their signatures notarized and (b) July 28th was a day of observance for religious Jews such as myself, Bluma and Tova.

16. It was then discovered that Sender caused the deed conveying the Property form Bluma and Tova to the LLC to be recorded by the City of New York on August 1, 2014, despite the fact that (1) the Sender loan was never in default, (2) the majority members of the LLC has already voted to dissolve the LLC and have the deed and contract returned and (3) the LLC paid no consideration for transfer – either under the purported contract of sale or otherwise.

17. In the State Court Action (defined below), Rivka, without any actual knowledge, alleged, on behalf of Sender, that the first $560,000 loan installment made to Vetcare was actually the down payment under the alleged contract of sale that was placed in escrow as additional security for the Vetcare loan. Of course this is a falsehood, as the $560,000 represented the first

3

loan advance under the $1 million loan facility.

18. In fact, no consideration was ever given by the LLC or any other parties on its behalf for the recordation of the deed for the Property by the LLC.

19. As for the Vetcare loan, it was paid back in full and on time. Sender even executed a Loan Repayment Acknowledgement which is part of the file of the State Court Action.

20. Upon discovering of Sender's (and his attorney's) misconduct in connection with the completion, notarization and recording of the deed, Bluma and Tova, acting as majority members of the LLC, on June 26, 2018 executed a deed for the Property from the LLC back to Bluma, which deed was recorded on July 11, 2018.

21. Thereafter a corrective deed was recorded on behalf of Bluma on August 29, 2018.

22. On July 31, 2018 the LLC was dissolved pursuant to the vote of the majority members referred to above.

23. 4 days prior to its dissolution, the LLC commenced an action in Supreme Court, Kings County encaptioned *1526 52nd LLC v. Bluma Lefkowitz* under Index No. 515379/2018 (the "State Court Action").

24. In the State Court Action, the LLC sought to quiet title to the Property and declare the deed transferring the Property back to Bluma as void, claiming that the "purchase price" under the placeholder contract of sale was paid in full by virtue of deeming the $560,000 loan made by Sender to Vetcare as a down payment, and that Rivka (a) assumed the existing first mortgage on the Property and (b) paid Bluma the balance of the $2,025,000 so called purchase price. This is completely false on all fours. As set forth above, the $560,000 was in fact a loan to Vetcare which was repaid in full and on time by 2015. No assumption of mortgage documentation exists nor could have without the express written consent of the mortgagor and Bluma which doesn't exist. And no

4

additional sale proceeds were ever paid to Bluma or any other party – *not a single penny*.

25. The LLC also filed a lis pendens against the Property in connection with the State Court Action.

26. [Prior/subsequent] to the commencement of the State Court Action, Bluma brought a holdover proceeding against Rivka and Sender (the "Holdover Action"), who was served with a proper 30 days' notice to quit and failed to honor the month to month arrangement described above and continued to fail to do so for over 4 years!

27. The State Court has now consolidated the Holdover Action with the State Court Action and has denied all dispositive motions in both cases, leaving the parties suspect to protracted discovery, delay, cost and uncertainty.

28. The Property was always intended to be a legacy for our children. As part of our estate planning, on June 30, 2021, Bluma transferred her interest in the Property to the Debtor by quit claim deed.

29. Meanwhile the Property, due in part to Sender and Rivka' continuing holdover possession and litigation activity, is not generating any income and cannot be sold or refinanced absent disposition of the pending litigation.

30. I am the sole member and officer of the Debtor. My goal is to either quickly resolve or have this Court efficiently adjudicate this long standing dispute with the Ashkenazis, market and sell the Property through a Chapter 11 plan and pay all legitimate creditors in full with a hope to preserve the significant equity in the Property for our children after payment of all legitimate claims and interests in the property from the proceeds of sale to be realized and conducted though a thorough and Court approved marketing and auction sale process designed to maximize the value of the Property, which has an approximate fair market value of $4,000,000.

.

31. The Debtor will simultaneous with the sale and marketing process, attempt to promptly resolve or adjudicate any claims or interests asserted by Ashkenazi parties.

32. The Debtor therefore submits that the filing of the Chapter 11 case was necessary to preserve the value of the estate and maximize a return to its legitimate creditors.

33. The needs and interests of the Debtor's creditors will best be served by the continued possession of its property and management of its affairs as a debtor-in-possession under Chapter 11 until a plan can be formulated and presented to creditors.

## PART II
### INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

34. In addition to the foregoing, S.D.N.Y. Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

35. The Debtor owns the Property located at 1526 52nd Street, Brooklyn, New York 11219. The Property is a six-store, 2 family building. The circumstances leading to the Chapter 11 filing are described in detail above.

**Local Rule 1007-2(a)(2)**

36. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

**Local Rule 1007-2(a)(3)**

37. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

38. A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in §101(31) of the Bankruptcy Code is annexed hereto as **Schedule I**.

**Local Rule 1007-2(a)(5)**

39. A schedule of the Debtor's 5 largest secured creditors is annexed hereto as **Schedule II**.

**Local Rule 1007-2(a)(6)**

40. A summary of the Debtor's assets and liabilities is annexed hereto as **Schedule III.**

**Local Rule 1007-2(a)(7)**

41. There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

42. None of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor.

**Local Rule 1007-2(a)(9)**

43. The Debtor utilizes office space at 351 Spook Rock Road, Suffern, New York 10901.

**Local Rule 1007-2(a)(10)**

44. The Debtor's substantial assets are the Property. The Debtor's books and records are located at the Debtor's office at 351 Spook Rock Road, Suffern, New York 10901.

**Local Rule 1007-2(a)(11)**

45. A list of lawsuits pending and involving the Debtor are annexed hereto as **Schedule IV**.

**Local Rule 1007-2(a)(12)**

46. The Debtor is currently managed by Isaac Lefkowitz as CEO.

**Local Rule 1007-2(b)(1) and (2)**

47. The Debtor currently has no employees.

48. The Debtor's estimated gross weekly payroll and payments to managers, members, and directors for the thirty (30) day period following the Chapter 11 petition is 0.

49. The Debtor's estimated payroll to non-manager/non-insider employees for the thirty (30) day period following the Chapter 11 petition is approximately $0.

**Local Rule 1007-2(b)(3)**

50. A schedule, for the 30-day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees is annexed as **Schedule V**.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: July 7, 2021

*/s/ Isaac Lefkowitz*
Isaac Lefkowitz

# SCHEDULE I

## 20 LARGEST UNSECURED CREDITORS

NONE

## SCHEDULE II

DEBTOR'S FIVE LARGEST SECURED CREDITORS

Arvest Central Mortgage Company     $1,120,144.12
801 John Barrow,, Suite 1
Little Rock, AR 72205

## SCHEDULE III

### SUMMARY OF ASSETS AND LIABILITIES

ASSETS:

| | |
|---|---|
| Land and Building | $4,000,000 |
| Claims against Holdover Tenant | $700,000 |
| Claims against Ashkenazis | unknown |
| | |
| TOTAL ASSETS: | $4,700,000 |

LIABILITIES:

| | |
|---|---|
| Mortgage Payable | $1,120,144.12 |
| RE Taxes Payable | $18,676.60 |
| | |
| TOTAL LIABILITIES: | $1,138,820.72 |

## SCHEDULE IV

<u>LIST OF LITIGATION</u>

*1526 52nd LLC v. Lefkowitz*, Supreme Court, Kings County, Index No. 515379/2018

*Lefkowitz v. Ashkenazi*, Consolidated with above action.

## SCHEDULE V

### 30 DAY ESTIMATED INCOME AND EXPENSES

INCOME: $0

EXPENSES:

| | |
|---|---|
| RE Taxes (Pro Rated) | $1,500 |
| Insurance (Pro Rated) | $266.66 |
| Water/Sewer | $500 |
| Utilities | $1,000 |
| Maintenance | $500 |
| | |
| TOTAL EXPENSES | $3,766.66 |