UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

In re:

Chapter 11

SUFFERN PARTNERS, LLC

Case no. 21-22280(SHL)

Debtor.

-----------------------------------------------------------------------X

### OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY'S OBJECTION TO CLAIM NO. 15-1 OF DG REALTY MANAGEMENT LLC

TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:

Old Republic National Title Insurance Company ("ORNTIC") hereby files its objection (the "Objection") to the claim filed by DG Realty Management LLC ("DG Realty") designated Claim No. 15-1 on the Claims Register in this case (the "Claim") against the above-captioned debtor ("Suffern"). This Objection is filed pursuant to Section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of the Objection ORNTIC respectfully represents as follows:

### BACKGROUND

1.      Suffern filed a petition for relief under chapter 11 of the Bankruptcy Code on May 16, 2021.

2.      On June 1, 2021, ORNTIC filed an unsecured claim for $1,578,555.40 for misappropriation of constructive trust funds in this chapter 11 case.

3.      On June 18, 2021, Suffern, Hahn & Hessen LLP ("H&H"), Stephen J. Grable, Gilbert Backenroth (both partners at H&H), Isaac Lefkowitz (CEO of Suffern), and

ORNTIC entered into an Amended Stipulation of Settlement fixing ORNTIC's claim as "fixed and allowed as a non-priority, general unsecured claim in the reduced amount of One Million Two Hundred and Fifty Thousand Dollars ($1,250,000.00)" (the "Settlement Amount"). The settlement stipulation included a caveat that ORNTIC may maintain its claim if it receives less than the full Settlement Amount. Significantly, the Amended Stipulation of Settlement was approved by the Court on June 29, 2021, (*see, ECF Doc No. 74*).

4.      Thereafter, on July 22, 2021, DG Realty filed a proof of claim in the amount of $5,066,834.03 for "Monies owed per Loan Agreement and Managed Services."

5.      ORNTIC hereby objects to DG Realty's  proof of claim. As set forth in detail below, DG Realty's claim appears to be an arrangement between insiders made for the sole purpose of frustrating ORNTIC's rightful claim by seeking to dissipate the funds that otherwise might be available to pay ORNTIC.

### JURISDICTION

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

7.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Objection is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rule 3007.

### RELIEF REQUESTED

8.      ORNTIC seeks entry of an order dismissing and/or disallowing DG Realty's claim, in whole or in part, to the extent determined by the Court to be without merit.

## BASIS FOR RELIEF REQUESTED

9.       As set forth below, DG Realty's proof of claim in excess of five million ($5,000,000.00) dollars is simply another layer in this multi-layered, on-going fraud, filed, upon information and belief, to cheat ORNTIC of its already reduced  share of the funds, pursuant to the Amended Stipulation of Settlement, available to be distributed out of this proceeding. ORNTIC agreed to reduce its rightful claim of $1,578,555.40 by more than $328,000 only to later learn that Suffern and DG Realty apparently schemed to cheat ORNTIC of this reduced amount.

10.      As set forth below, ORNTIC issued a policy of title insurance to Suffern upon Suffern's purchase of the three parcels or real property in Rockland County from RS Old Mill Rd, LLC. ORNTIC's involvement in this action results from two separate title claims submitted by Suffern to ORNTIC stemming: first, from the transaction from RS Old Mill, LLC to RS Old Mill **Rd.** LLC; and second, from the transaction from RS Old Mill **Rd**, LLC into Suffern.

## A.      The Initial Transaction

11.      RS Old Mill, LLC purchased the three parcels of real property for $18 million (from Novartis Corporation) while it was under supervision of the Bankruptcy Court in a chapter 11 proceeding (Case No.: 17-22218- rdd). While RS Old Mill, LLC did obtain approval of the Bankruptcy Court for its purchase of the three parcels, it neither sought nor obtained approval from the court, when on the same day, it turned around and sold the three parcels for $30 million to RS Old Mill **Rd**, LLC, in an insider transaction.

12.      This transfer was an insider, no-consideration transfer as: (i) RS Old Mill, LLC's sole member Yehuda Salamon is the brother-in-law of the principal of the purchaser, RS Old Mill **Rd**, LLC, Avrohom Kaufman: (ii) the sale price was inflated by sixty (60%) percent

3

despite the fact that the sale was effectuated on the same day as the transaction from Novartis

Corporation into RS Old Mill, LLC; and (iii) the sale was conducted without approval of the

Bankruptcy Court, despite the fact that Yehuda Salamon and RS Old Mill, LLC knew they

needed Bankruptcy Court approval, having just obtained the Court's approval for its purchase of

the three parcels in the first instance.

13.     Remarkably, in March of 2019, RS Old Mill, LLC commenced an

adversary proceeding within its own bankruptcy case (In re: RS Old Mill, LLC, case no. 17-

22218) commenced in the United States Bankruptcy Court for the Southern District of New York

(under docket no. 19-08243-rdd), seeking to vacate the no-consideration transfer from itself to

RS Old Mill **Rd**, LLC on the basis that it had never obtained approval from the Bankruptcy

Court for the sale.

B.     **Debtor's First Title Claim**

14.     On September 6, 2017, ORNTIC through its limited policy-issuing title

agent Riverside Abstract, issued owner's title policy no. OX-11894013 (the "Policy") insuring

Suffern's fee interest in the Premises in the amount of $30,000,000 subject to

the exceptions, conditions and exclusions in the Policy.

15.     The threat to Suffern's title triggered by RS Old Mill, LLC's adversary

proceeding, set forth in paragraph 13 above, generated the first title claim submitted by Suffern

to ORNTIC.

16.     This first title claim was resolved through a settlement agreement reached

after RS Old Mill, LLC's Chapter 11 case was converted to a Chapter 7 (*see*, order filed under

CM/ECF 102 in In re: RS Old Mill, LLC, case no. 17-22218) between Suffern and the Chapter 7

Trustee (the "Settlement Agreement").

4

17.    The Settlement Agreement provided that the sale from RS Old Mill, LLC into RS Old Mill **Rd**, LLC would be authorized *nunc pro tunc* in exchange for the deposit of $2.5 million into a claim fund with the Chapter 7 Trustee to satisfy all approved claims and allowed administrative expenses of RS Old Mill, LLC's bankruptcy estate (the "Claim Fund"). (*See, CM/ECF 253*, In re: RS Old Mill, LLC case no. 17-22218).

18.    The Claim Fund was to be deposited in a separate account, maintained by the Trustee and any portion of the Claim Fund not expended to satisfy allowed claims would be refunded to Suffern c/o its counsel H&H (the "Claim Refund").

19.    To create the Claim Fund, an agreement was reached between ORNTIC, Suffern and H&H that $2 million would be deposited by ORNTIC and $500,000 deposited by Suffern into the Claim Fund, with the understanding that ORNTIC would be paid its portion of the Claim Refund.

20.    H&H, through its member attorneys Stephen Grable and Gilbert Backenroth, agreed to act as escrow agents; under an explicit agreement made with ORNTIC representative Maria Filippelli, that ORNTIC would be paid its portion of the Claim Refund.

21.    In reliance on the representation from H&H, Stephen Grable and Gilbert Backenroth, ORNTIC subsequently wired $2 million into H&H's Iola account which funds were in turn was paid (along with Suffern's $500,000) into the Claim Fund; again, deposited on the basis of the representation from the attorneys at H&H that ORNTIC would receive its portion of the Claim Refund.

22.    Remarkably, H&H and its attorneys Gilbert Backenroth and Stephen Grable have denied any agreement with ORNTIC to repay ORNTIC its share of the Claim

5

Refund. Instead, H&H seemingly took the position that ORNTIC simply gave Suffern $2 million as some type of a gift.

23. The implementation of the Settlement Agreement resolved Suffern's first title claim.

24. However, Suffern's failure to pay ORNTIC its share of the Claim Refund, as set forth below, forms the basis of ORTIC's proof of claim in the within Chapter 11.

**C.    The Resolution Of The Claim Fund/Dispute Over The Claim Refund**

25. In early August 2020, the parties learned that the Chapter 7 Trustee planned to issue the Claim Refund by check payable to Suffern and deliver that check to H&H.

26. In anticipation of receiving that check attorney Gilbert Backenroth of H&H provided ORNTIC with a draft escrow agreement which acknowledged that both ORNTIC and Debtor each retained the right to a refund based on the amounts each contributed to the Claim Fund.

27. However, the efforts to reach an agreement as to escrow terms could not be concluded and, upon information and belief, on or about August 26, 2020, Messrs. Grable and Backenroth requested counsel for the Chapter 7 Trustee Holly Holecek, Esq., to cause the Claim Refund check to be issued to the Iola account of H&H and not to Suffern directly.

28. Significantly, if, in fact, H&H did not act as escrow agents for the $2 million and there was no agreement to repay ORNTIC, there would have been no reason for Messrs. Backenroth and Grable to request the check be issued to their Iola account and not to Suffern directly.  Chapter 7 Trustee Holly Holecek, Esq. advised Messrs. Backenroth and Grable she would not issue the Claim Refund to H&H's Iola account.

29. In September 2020, the Chapter 7 Trustee delivered to Gilbert Backenroth and Stephen Grable **a check payable to Suffern** in the amount of $1,984,483.86 representing the

6

Claim Refund ("Claim Refund Check"). $1,484,483.86 of said monies represents a partial refund

of ORNTIC's $2 million previously deposited into escrow with H&H under the agreement and

representation that ORNTIC would be repaid its portion of the Claim Refund.

30.     Over the objection of ORNTIC, Gilbert Backenroth and Stephen Grable

delivered the Claim Refund Check to Suffern, which then deposited the Claim Refund Check

into its account and refused to pay ORNTIC any of the funds it received.  Suffern received the

Claim Refund check with actual or, at a minimum, imputed notice of the agreement between its

counsel, Messrs. Grable and Backenroth, (as escrow agents and as counsel for Suffern) to pay

ORNTIC its portion of the Claim Refund.

31.     Suffern refused to pay ORNTIC its $1,484,483.86, which represented

ORNTIC's portion of the Claim Refund. Significantly, this amount demanded by ORNTIC

accounts for Suffern being paid the full amount of its $500,000 contribution to the Claim Fund,

not even seeking any proration of the contribution amounts.

**D.     Suffern's Second Title Claim**

32.     In or about April 2021, RS Old Mills Rd LLC ("Rd") commenced action

against Suffern in Rockland County Supreme Court (the "Rd Action").  Rd sought to set aside

title in Suffern on the basis that Suffern failed to pay the agreed upon consideration of $30

million.  As such, the claim was excluded from coverage under the title policy issued by

ORNTIC to Suffern.  The exclusion states, in pertinent part, that ORNTIC had no obligation to

defend or indemnify Suffern for any loss or damage "created, suffered, assumed or agreed to" by

Suffern, or any loss or damage resulting from the failure to pay value for the title.

33.     The Rd Action caused Suffern to file this Chapter 11 proceeding. Old

Republic initially filed a proof of claim for $1,578,555 which was disputed by the Debtor. Old

Republic agreed to fix its claim at $1,250,000 with the Debtor, which agreement was approved by the Court on June 30, 2021. (Ecf. No. 79).

34.    Thereafter, on July 22, 2021, DG Realty Management, LLC filed a proof of claim in the amount of $5,066,834.03. This claim was not disputed by the Debtor. A copy of the  DG Realty Management proof of claim is annexed as Exhibit A. Mr. Lefkowitz, the principal of Suffern is a business associate with the principal David Gefner of DG Realty Management. Mr. Lefkowitz testified at the meeting of the creditors that DG Realty never paid any monies to directly to the Debtor.

### E.    Objections To DG Realty's Proof Of Claim

35.    In reviewing DG Realty's claim it appears: (i) $500,000 was allegedly advanced to Suffern as a loan which, upon information and belief, was in reality consideration for the March 2019 assignment to Isaac Lefkowitz of the membership interest in Suffern; (ii) there is a $40,000 payment to David Gefner on May 15, 2019 which, upon information and DG Realty's management agreement with Suffern  dated December 2018 is an arrangement between insiders; and (iii) there are $750.000 in "management fees' to DG Realty, however, DG Realty's management agreement with Suffern (Goldie Reisman) dated December 2018 is an arrangement between insiders.

### F.    Old Republic Sought Discovery Of The Debtor On DG Realty's Proof Of Claim

36.    On July 22, 2021, ORNTIC filed a Notice of Presentment seeking entry of an order pursuant to Rule 2004 directing the production of documents by and the examination of Debtor by Isaac Lefkowitz (*see, CM/ECF Doc No. 108).*

37.    Thereafter on the representation of counsel for the Debtor that the issues raised in the discovery demands could be resolved between the parties pursuant to an agreement

8

to subordinate DG Realty's claim to ORNTIC's claim., on August 6, 2021, your affirmant wrote the Court requesting the Court not sign the order pending this potential resolution (*see, CM/ECF Doc No. 125*).

38.     Despite the fact that the parties verbally agreed that DG Realty's claim would be subordinated to ORNTIC's claim, and the requested discovery rendered moot, on October 13, 2021, Debtor's counsel and counsel for DG Realty refused to sign an agreement memorializing the subordination of DG Realty's claim as agreed.  Debtor's counsel claimed the subordination agreement was unnecessary because there are sufficient monies on account to pay one hundred (100%) percent of ORNTIC's claim.

39.     As a result, on October 13, 2021, ORNTIC filed a Certificate of No Objection (*see, CM/ECF Doc. No. 171*) requesting that the Court sign the proposed order previously submitted with the Rule 2004 application.

40.     Given the history of ORNTIC relying upon the representations made by Suffern's counsel that the Claim Refund would be returned to ORNTIC, when it was not, but instead converted by Suffern, an oral representation that ORNTIC will be paid one hundred (100%) percent of its claim, is not sufficient.

41.     ORNTIC has requested and requires the deposition of Isaac Lefkowitz and document discovery  to supplement this Objection.  Once a Rule 2004 order is signed, this will occur and ORNTIC intends to supplement its objection.

## CONCLUSION

WHEREFORE, ORNTIC respectfully requests that this Court enter an order disallowing DG Realty's claim in whole or in part, to the extent determined by the Court to be without merit.

Dated: New York, New York
      October 18, 2021

                    **BUTLER, FITZGERALD, FIVESON
                     & McCARTHY**
                    A Professional Corporation
                    *Attorneys for Defendant*
                    *Old Republic National Title Insurance Company*

                    By:  *S/ David K. Fiveson*
                         David K. Fiveson, Esq.
                    A Principal of the Firm
                    9 East 45th Street, Ninth Floor
                    New York, New York 10017
                    dfiveson@bffmlaw.com
                    (212) 615-2200