IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TEHUM CARE SERVICES, INC.,[1] | ) Case No. 23-90086 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**DEBTOR'S OBJECTION TO
ALTON BROWN'S MOTION FOR RELIEF FROM STAY**
[Relates to Docket No. 430]

The above-captioned debtor and debtor in possession (the "Debtor"), for its objection (the "Objection") to *Alton Brown's Motion for Limited Relief from the Automatic Stay* [Docket No. 430] (the "Motion") filed by Alton Brown ("Movant"), respectfully represents as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

3. The Debtor provided correctional healthcare services across the United States.[2] In May 2022, the Debtor effectuated a divisional merger pursuant to the Texas Business

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] In further support of this Objection, the Debtor relies on the *Declaration of Russell A. Perry in Support of Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, filed on March 15, 2023 [Docket No. 186].

4858-7911-8944

Organizations Code in which (among other things) assets and liabilities were allocated between CHS TX, Inc. and the Debtor. The Debtor spent the second half of 2022 attempting to settle and satisfy its allocated liabilities, but ongoing litigation and associated costs have made such efforts impractical. Through this chapter 11 process, the Debtor aims to maximize the value of its estate and propose a chapter 11 plan that, to the best of the Debtor's ability, provides meaningful recoveries for creditors and other stakeholders.

4. On February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case. On March 2, 2023, the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 77], as amended on March 6, 2023 [Docket No. 145].

**Responses to Allegations**

5. The Debtor admits the allegations contained in paragraph 1 of the Motion.

6. The Debtor admits the allegations contained in paragraph 2 of the Motion.

7. The Debtor admits the allegations contained in paragraph 3 of the Motion.

8. The Debtor admits the allegations contained in paragraph 4 of the Motion.

9. The Debtor admits the allegations contained in paragraph 5 of the Motion.

10. Except for the hyperbole, the Debtor admits the allegations contained in paragraph 6 of the Motion.

11. The Debtor admits the allegations contained in paragraph 7 of the Motion.

12. On information and belief, the Debtor admits the allegations contained in paragraph 8 of the Motion.

13. The Debtor admits the allegations contained in paragraph 9 of the Motion, however the Debtor denies that the relief requested in the Motion should be granted.

14. The Debtor is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 10 of the Motion, and therefore denies same.

15. The Debtor admits the allegations contained in paragraph 11 of the Motion, however the Debtor denies that the relief requested in the Motion should be granted.

16. The Debtor admits the allegations contained in paragraph 12 of the Motion, however the Debtor denies that the relief requested in the Motion should be granted.

17. The Debtor admits the allegations contained in paragraph 13 of the Motion.

18. The Debtor admits the allegations contained in paragraph 14 of the Motion.

19. The Debtor admits the allegations contained in paragraph 15 of the Motion.

20. The Debtor admits that its insurance carrier has been paying the attorneys' fees of defense counsel in the underlying litigation with the Movant, but defense costs under the subject insurance policy reduces the aggregate coverages. The Debtor is without sufficient information or knowledge to admit or deny the remaining allegations contained in paragraph 16 of the Motion, and therefore denies same.

21. In response to the allegations contained in paragraph 17 of the Motion, the Debtor admits that the email exchanges between counsel for the Movant and Debtor are attached as Exhibit C to the Motion.

22. The Debtor admits the allegations contained in paragraph 18 of the Motion.

23. The Debtor admits the allegations contained in paragraph 19 of the Motion.

24. The Debtor does not believe that it is required to admit or deny the assertions contained in paragraph 20 of the Motion. However, to the extent the Debtor is required to admit or deny such assertions, the Debtor denies same.

25. The Debtor admits the allegations contained in paragraph 26 of the Motion.

26. The Debtor does not believe that it is required to admit or deny the assertions contained in paragraphs 21 through 36 of the Motion. However, to the extent the Debtor is required to admit or deny such assertions, the Debtor denies same.

27. The Debtor admits the allegations contained in paragraph 37 of the Motion.

28. The Debtor does not believe that it is required to admit or deny the request for relief contained in the prayer to the Motion. To the extent the Debtor is required to admit or deny same, the Debtor denies that any of the relief requested in the Motion should be granted.

## Summary of Objection

29. The Motion should be denied for several reasons. *First*, if the Court were to grant the relief requested in the Motion, the Debtor has grave concerns that this Court, and this bankruptcy estate, will see an onslaught of similar motions filed by other prisoners (or their representatives) seeking to modify the automatic stay to pursue their respective litigation all over the country. This bankruptcy estate will be overrun with stay motions. If granted, the bankruptcy estate will likely incur an overwhelming amount of administrative expenses for counsel to respond to the stay motions, to the detriment of all creditors of this bankruptcy estate.

30. *Second*, the Debtor's bankruptcy case has been pending for only approximately three months. At the current time, it appears that the Debtor's insurance policy that may cover the Movant's claim has a $1 million per claim maximum coverage with $2 million maximum aggregate coverage for all claims. Attorneys' fees and expenses incurred reduce the coverages. At

4858-7911-8944

the present time, the Debtor is not aware of the net insurance coverage that may be available relating to the Movant's claim, after taking into account attorneys' fees and expenses incurred. Additionally, another claim/lawsuit is currently pending that may be covered by the same insurance policy. That claim is pending in the suit styled *Paris L. James v. David Varano et al.*, in the United States District Court for the Middle District of Pennsylvania under Case No. 14-01951 (the "James Litigation"). The plaintiff is seeking damages against former employees of the Debtor and other named defendants.[3] The District Court dismissed the James Litigation by orders of the Court entered on March 23, 2018, and January 21, 2020. The Third Circuit Court of Appeals recently affirmed in part, vacated in part, and remanded the matter back to the District Court by an opinion issued on January 17, 2023, and mandate issued on February 8, 2023. Due to the very recent partial reversal and remand of the prior dismissal, the Debtor is still gathering facts and analyzing potential next steps relating to the James Litigation. The Debtor asserts that in light of the current status of the Movant's litigation and the James Litigation, modifying the automatic stay as requested by the Movant is inequitable and not in the best interests of the Debtor, the Debtor's bankruptcy estate, or the Debtor's creditors.

31. *Third*, based upon the certificate of service attached to the Motion, it was not served on all of the other litigants in the underlying litigation pending in the state of Pennsylvania. The other litigants have not received notice and an opportunity to object to the relief requested in the Motion. Therefore, the Motion should be denied without prejudice.

## Objection to the Motion

32. The Debtor incorporates by reference the objections contained above.

---

[3] The Debtor is still seeking additional information to determine the scope, if any, of its indemnity obligations owing to its former employees respecting the James Litigation, and the Debtor reserves all rights.

33. The Debtor's bankruptcy case has been pending for only approximately three months. As of the Petition Date, the Debtor was a party to hundreds of lawsuits around the country. The Debtor and its professionals have been working diligently to get up to speed on the vast number of pending lawsuits and have commenced the process of formulating a strategy to move this chapter 11 case forward to maximize value for creditors. As an example, the Debtor commenced the adversary proceeding styled *Tehum Care Services, Inc. v. Those Parties Listed in Appendix A to the Complaint*, on March 23, 2023, under Adversary Proceeding No. 23-03049, seeking *inter alia*, a determination of the scope of the automatic stay in various litigation and an extension of the automatic stay in certain litigation. The Debtor has grave concerns that modifying the automatic stay as requested by the Movant will open a floodgate of similar motions by other plaintiffs that would overwhelm the Debtor with litigation in numerous forums and threaten the Debtor's attempt to formulate a chapter 11 plan that will provide an equitable recovery for the benefit of all creditors. At this early stage of the Debtor's bankruptcy case, the Debtor opposes modification of the automatic stay as requested, as it would allow the Movant to win the "race to the courthouse."

34. The injunction contained in section 362 of the Bankruptcy Code is self-executing, *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008), and constitutes a fundamental debtor protection that, together with other provisions of the Bankruptcy Code, provides a debtor with a "breathing spell" that is essential to a successful chapter 11 process. *Halo Wireless, Inc. v. Alenco Commc'ns, Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581, 586 (5th Cir. 2012) (internal quotations omitted); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1146 (5th Cir. 1987); *see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code,

§ 362(a), has been described as one of the fundamental debtor protections provided by the bankruptcy laws." (citation and internal quotation marks omitted)). *See Commonwealth Oil Refining Co. v. EPA (In re Commonwealth Oil Refining Co.),* 805 F.2d 1175, 1182 (5th Cir. 1986) ("The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." (citation omitted)).

35. The Movant can show no undue harm in denying the relief requested in the Motion, at least at this early stage of the Debtor's bankruptcy case. Modifying the stay as requested would (a) further erode the Debtor's interest in the subject insurance policy because of the additional attorneys' fees and related expenses that would be incurred, and (b) cause a distraction from efforts to try to create a mechanism to benefit all creditors of this bankruptcy estate (including the Movant). Additionally, the Debtor needs more time to gather more information to determine the possible consequences of the James Litigation on the Movant's litigation and the effect on the bankruptcy estate allowing the litigation to proceed.

36. Furthermore, as the First Circuit noted, if an insurance policy "is too small to satisfy several potential plaintiffs[,]" then lifting the stay

> [c]ould start a race to the courthouse. . . . Such a race could mean unfair results as between potential plaintiffs; it could also prevent a bankruptcy court from marshalling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the Debtor's estate.

*Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 560 (1st Cir. 1986).

37. The Debtor is currently aware of two claims have been made under the applicable insurance policy. At this stage of the Debtor's bankruptcy case, the Debtor does not yet know if there will be sufficient insurance proceeds from the applicable policies to cover all such claims. Courts routinely decline to grant stay relief to one claimant where the available insurance coverage is inadequate to compensate other similarly situated claimants. *See In re Davis*, 730 F.2d

176, 185 (5th Cir. 1984) (affirming the bankruptcy court's decision to keep stay in place because "intact insurance coverage [i]s a bulwark against erosion of the estate"); *see also In re Sunland, Inc.*, 508 B.R. 739, 744 (D.N.M. 2014) ("The Court finds that, under the circumstances, [the movant] could only proceed with its lawsuit at the expense of other [plaintiffs]. This would be contrary to the purpose of the automatic stay, which is to provide for equality of distribution among creditors and 'to protect creditors by averting a scramble for the debtor's assets.'" (quoting *Garden v. Cent. Neb. Housing Corp.*, 719 F.3d 899, 9110 (8th Cir. 2013)).

38. Moreover, although the proceeds of liability insurance policies are typically not property of the estate, in the Fifth Circuit the proceeds are nonetheless property of the estate where such proceeds will be insufficient to cover all claims that have been asserted. *See Martinez v. OGA Charters, L.L.C. (In re OGA Charters, L.C.C.)*, 901 F.3d 599, 604 (5th Cir. 2018) ("We now make official what our cases have long contemplated: In the 'limited circumstances,' as here, where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate. Here, over $400 million in related claims threaten the debtor's estate over and above the $5 million policy limit, giving rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible." (citations omitted)).

39. The Debtor's insurance policies and the underlying proceeds are expected to be a lynchpin of Debtor's chapter 11 plan, and one of the key ways the Debtor intends to maximize value and make equitable distributions to creditors. The Movant can show no undue harm in denying the relief requested in the Motion, at least at this stage of Debtor's bankruptcy case.

## Reservation of Rights

40. Due to the current uncertainty regarding potential insurance coverage that may be available to the Debtor regarding the litigation, the additional time needed by the Debtor to gather more information regarding the James Litigation, and the potential effect modifying the stay as

requested by the Movant would have on the James Litigation, the Debtor reserves the right to amend its objection to the Motion at a later date.

WHEREFORE, the Debtor requests that the Court deny the Motion and grant such other and further relief and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 15th day of May, 2023.

        **GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Aaron M. Kaufman
    Texas Bar No. 24060067
    Lydia R. Webb
    Texas Bar No. 24083758
    Amber M. Carson
    Texas Bar No. 24075610
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7127
Facsimile:   (713) 986-5966
Email:       jbrookner@grayreed.com
             akaufman@grayreed.com
             lwebb@grayreed.com
             acarson@grayreed.com

-and-

    Micheal W. Bishop
    Texas Bar No. 02354860
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:   (214) 953-1332
Email:       mbishop@grayreed.com

*Counsel to the Debtor
and Debtor in Possession*

## Certificate of Service

I certify that on May 15, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties authorized to receive electronic notice in this case.

*/s/ Jason S. Brookner*
Jason S. Brookner