**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TEHUM CARE SERVICES, INC.,[1] | ) | Case No. 23-90086 (CML) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S OBJECTION TO**
**ALFRED VELA'S MOTION TO APPROVE**
**LITIGATION SETTLEMENT AND AUTHORIZE PAYOUT**
**[Relates to Docket No. 708]**

The above-captioned debtor and debtor in possession (the "Debtor"), for its objection (the "Objection") to the *Non-Party Alfred Vela's Motion to Approve Litigation Settlement and Authorize Payout* [Docket No. 708] (the "Motion") filed by Alfred Vela ("Movant"), respectfully represents as follows:

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

3.      The Debtor provided correctional healthcare services across the United States.[2]  In May 2022, the Debtor effectuated a divisional merger pursuant to the Texas Business

---

[1] The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] In further support of this Objection, the Debtor relies on the *Declaration of Russell A. Perry in Support of Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition*

Organizations Code in which (among other things) assets and liabilities were allocated between CHS TX, Inc. and the Debtor (the "Divisional Merger").  The Debtor spent the second half of 2022 attempting to settle and satisfy its allocated liabilities, but ongoing litigation and associated costs have made such efforts impractical.  Through this chapter 11 process, the Debtor aims to maximize the value of its estate and propose a chapter 11 plan that, to the best of the Debtor's ability, provides meaningful recoveries for creditors and other stakeholders.

4.      On February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An application for the appointment of a trustee is currently pending before this Court.  On March 2, 2023, the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 77], as amended on March 6, 2023 [Docket No. 145].

**Responses to Allegations**

5.      The Debtor admits Movant made the allegations contained in paragraph 1 of the Motion.

6.      The Debtor admits that negotiations occurred prior to the Petition Date for a potential resolution of pending litigation with Movant.  The Debtor denies that it agreed to any settlement subsequent to the Petition Date.  The Debtor is without sufficient information or knowledge to admit or deny the remaining allegations contained in paragraph 2 of the Motion, and therefore denies same.

---

*Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief,* filed on March 15, 2023 [Docket No. 186].

4895-2205-0414

7.      The Debtor admits that it is no longer a party in the underlying litigation. Specifically, the Debtor was dismissed from the litigation with prejudice by order of the U.S. District Court entered on June 22, 2022.  Debtor admits that the proposed settlement funding will erode insurance policy proceeds under the Debtor's insurance policies that Debtor believes are property of its bankruptcy estate.  The Debtor is without sufficient information or knowledge to admit or deny the remaining allegations contained in paragraph 3 of the Motion, and therefore denies same.

8.      The Debtor is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 4 of the Motion, and therefore denies same.

9.      The Debtor does not believe it is required to admit or deny the allegations contained in paragraph 5 of the Motion.  However, to the extent the Debtor is required to admit or deny such assertions, the Debtor denies same.

10.      The Debtor does not believe it is required to admit or deny the allegations contained in the prayer of the Motion.  However, to the extent the Debtor is required to admit or deny such assertions, the Debtor denies same.

## Summary of Objection

11.      The Motion should be denied for several reasons.  *First*, the Motion should be denied because the Movant is seeking relief that the Movant is not entitled to.  It appears that the Movant is seeking to consummate an alleged settlement that the Debtor has not agreed to.  The Debtor does not consent to the spending of proceeds of one of its insurance policies.  The Movant cites no statute, rule or case authorities in support of the relief requested because none exists.  If the Movant desires to file a motion to modify the automatic stay to authorize the insurance carrier to disburse proceeds of Debtor's insurance policy, the Movant can do so at a later date and the Debtor will correspondingly respond at that time.

4895-2205-0414

12.     *Second*, as the Court is aware, mediation is currently scheduled for July 2023 with one of the Debtor's insurance carriers.  This Court, the Debtor and other parties in interest will likely have a better perspective on where this bankruptcy case is headed after the conclusion of the mediation.  At a minimum, the Court should deny the Motion at this stage of the bankruptcy case.

13.     *Third*, the Debtor's bankruptcy case has been pending for only approximately five months.  At the current time, it appears that there is no remaining SIR under the insurance policy potentially covering the Movant's claim.  However, based upon the information currently available to the Debtor, it appears that there is a possibility that total claims against the subject insurance policy may exceed available insurance coverage.[3]  There are seven lawsuits pending that may implicate the applicable insurance policy, and five tort claim notices by additional potential plaintiffs.  At this point in time, the Debtor cannot be certain that the total claims against the insurance policy will not exceed total coverage.  Granting the relief requested by the Movant will allow the Movant to potentially "win the race to the courthouse."  The Debtor asserts that such result is inequitable and not in the best interests of the Debtor, the Debtor's bankruptcy estate, or the Debtor's creditors as a whole.

14.     *Fourth*, based upon the certificate of service attached to the Motion, it was not served on all of the other litigants in the underlying litigation pending in the state of Indiana.  The other litigants have not received notice and an opportunity to object to the relief requested in the Motion.  Therefore, the Motion should be denied without prejudice.  Further, the Motion does not have a form of proposed order attached for review and potential objection by the Debtor and other parties.

---

[3] Debtor makes no admission as to the amount of actual remaining applicable policy proceeds nor the total claims asserted against those policy proceeds.  The numbers are fluid due to changing circumstances.  The Debtor reserves all rights, claims, causes of action and defenses respecting the Debtor's insurance policies and all claims asserted against the Debtor and its insurance policies.

4895-2205-0414

**Objection to the Motion**

15.     The Debtor incorporates by reference the objections contained above.

16.     The Debtor's bankruptcy case has been pending for approximately five months.  As of the Petition Date, the Debtor was a party to hundreds of lawsuits around the country.  The Debtor and its professionals have been working diligently to get up to speed on the vast number of pending lawsuits and have commenced the process of formulating a strategy to move this chapter 11 case forward to maximize value for creditors.  As an example, the Debtor commenced the adversary proceeding styled *Tehum Care Services, Inc. v. Those Parties Listed in Appendix A to the Complaint*, on March 23, 2023, under Adversary Proceeding No. 23-03049, seeking *inter alia*, a determination of the scope of the automatic stay in various litigation and an extension of the automatic stay in certain litigation.

17.     The Debtor has grave concerns that granting the relief requested by the Movant will open a floodgate of similar motions by other plaintiffs seeking to get to insurance proceeds before other creditors and threaten the Debtor's attempt to formulate a chapter 11 plan that will provide an equitable recovery for the benefit of all creditors.  At this stage of the Debtor's bankruptcy case, the Debtor opposes the relief requested by the Movant.  Additionally, the Court recently entered an order establishing a process for the Debtor and other parties to engage in a mediation process to try to move this bankruptcy case forward for the benefit of all creditors.

18.     The injunction contained in section 362 of the Bankruptcy Code is self-executing, *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008), and constitutes a fundamental debtor protection that, together with other provisions of the Bankruptcy Code, provides a debtor with a "breathing spell" that is essential to a successful chapter 11 process.  *Halo Wireless, Inc. v. Alenco Commc'ns, Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581, 586 (5th Cir.

2012) (internal quotations omitted); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1146 (5th Cir. 1987); *see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as one of the fundamental debtor protections provided by the bankruptcy laws." (citation and internal quotation marks omitted)).  *See Commonwealth Oil Refining Co. v. EPA (In re Commonwealth Oil Refining Co.),* 805 F.2d 1175, 1182 (5th Cir. 1986) ("The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." (citation omitted)).

19.     The Movant can show no undue harm in denying the relief requested in the Motion, at least at this stage of the Debtor's bankruptcy case.  In fact, granting the relief requested by the Movant would allow Movant to attempt to get to the subject insurance policy proceeds ahead of other similarly situated creditors, which may result in Movant getting a disproportionate distribution.

20.     Furthermore, as the First Circuit noted, if an insurance policy "is too small to satisfy several potential plaintiffs[,]" then lifting the stay

> [c]ould start a race to the courthouse. . . . Such a race could mean unfair results as between potential plaintiffs; it could also prevent a bankruptcy court from marshalling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the Debtor's estate.

*Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 560 (1st Cir. 1986).

21.     As set forth above, several claims have been made under the applicable insurance policy.  At this stage of the Debtor's bankruptcy case, the Debtor believes that there may not be sufficient insurance proceeds from the applicable policies to cover all such claims, especially after factoring in attorneys' fees that may need to be paid, but it is not clear at this point.  Courts routinely decline to grant stay relief to one claimant where the available insurance coverage is

6

inadequate to compensate other similarly situated claimants. *See In re Davis*, 730 F.2d 176, 185 (5th Cir. 1984) (affirming the bankruptcy court's decision to keep stay in place because "intact insurance coverage [i]s a bulwark against erosion of the estate"); *see also In re Sunland, Inc.*, 508 B.R. 739, 744 (D.N.M. 2014) ("The Court finds that, under the circumstances, [the movant] could only proceed with its lawsuit at the expense of other [plaintiffs]. This would be contrary to the purpose of the automatic stay, which is to provide for equality of distribution among creditors and 'to protect creditors by averting a scramble for the debtor's assets.'" (quoting *Garden v. Cent. Neb. Housing Corp.*, 719 F.3d 899, 9110 (8th Cir. 2013)).

22.     Moreover, although the proceeds of liability insurance policies are typically not property of the estate, in the Fifth Circuit the proceeds are nonetheless property of the estate where such proceeds will be insufficient to cover all claims that have been asserted. *See Martinez v. OGA Charters, L.L.C. (In re OGA Charters, L.C.C.)*, 901 F.3d 599, 604 (5th Cir. 2018) ("We now make official what our cases have long contemplated: In the 'limited circumstances,' as here, where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate. Here, over $400 million in related claims threaten the debtor's estate over and above the $5 million policy limit, giving rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible." (citations omitted)).

23.     The Debtor's insurance policies and the underlying proceeds are expected to be a lynchpin of Debtor's chapter 11 plan, a significant factor in the Debtor's forthcoming global mediation, and one of the key ways the Debtor intends to maximize value and make equitable distributions to creditors. The Movant can show no undue harm in denying the relief requested in the Motion, at least at this stage of Debtor's bankruptcy case.

4895-2205-0414

## **Reservation of Rights**

24.     Due to the current uncertainty regarding potential insurance coverage that may be available to the Debtor regarding the litigation, the Debtor reserves the right to amend its objection to the Motion at a later date.

WHEREFORE, the Debtor requests that the Court deny the Motion and grant such other and further relief and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 13th day of July, 2023.

**GRAY REED**

By:   _/s/ Jason S. Brookner_
    Jason S. Brookner
    Texas Bar No. 24033684
    Aaron M. Kaufman
    Texas Bar No. 24060067
    Lydia R. Webb
    Texas Bar No. 24083758
    Amber M. Carson
    Texas Bar No. 24075610
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:    (713) 986-7127
Facsimile:    (713) 986-5966
Email:         jbrookner@grayreed.com
           akaufman@grayreed.com
           lwebb@grayreed.com
           acarson@grayreed.com

-and-

    Micheal W. Bishop
    Texas Bar No. 02354860
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:    (214) 954-4135
Facsimile:    (214) 953-1332
Email:         mbishop@grayreed.com

_Counsel to the Debtor_
_and Debtor in Possession_

8

4895-2205-0414

### <u>Certificate of Service</u>

I certify that on July 13, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties authorized to receive electronic notice in this case.

*/s/ Jason S. Brookner*

Jason S. Brookner

4895-2205-0414