IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TEHUM CARE SERVICES, INC.,[1] | ) Case No. 23-90086 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**DEBTOR'S OBJECTION TO MOTION FOR LIMITED
RELIEF FROM THE AUTOMATIC STAY BY REUBEN CORTES INDIVIDUALLY
AND AS CLASS REPRESENTATIVE, AND HEARN LAW, PLC. AS CLASS COUNSEL
IN CORTES, ET AL., V. JOSH TEWALT, ET AL., PENDING IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF IDAHO, CASE NO. 1:18 -cv-00001-BLW**
[Relates to Docket No. 715]

The above-captioned debtor and debtor in possession (the "Debtor"), for its objection (the "Objection") to the *Motion for Limited Relief From the Automatic Stay by Reuben Cortes Individually and as Class Representative, and Hearn Law, PLC. as Class Counsel in Cortes, et al., v. Josh Tewalt, et al., Pending in the United States District Court for the District of Idaho, Case No. 1:18 -cv-00001-BLW* [Docket No. 715] (the "Motion") filed by certain Idaho Department of Correction inmates (collectively, the "Movants"), respectfully represents as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

4876-0190-8847

## Background

3. The Debtor provided correctional healthcare services across the United States.[2] In May 2022, the Debtor effectuated a divisional merger pursuant to the Texas Business Organizations Code in which (among other things) assets and liabilities were allocated between CHS TX, Inc. and the Debtor. Through this chapter 11 process, the Debtor aims to maximize the value of its estate and propose a chapter 11 plan that, to the best of the Debtor's ability, provides meaningful recoveries for creditors and other stakeholders.

4. On February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case. On March 2, 2023, the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 77], as amended on March 6, 2023 [Docket No. 145].

## Responses to Allegations

5. The Debtor admits the allegations contained in paragraph 1 of the Motion.

6. The Debtor admits the allegations contained in paragraph 2 of the Motion.

7. The Debtor admits the allegations contained in paragraph 3 of the Motion.

8. The Debtor admits that the relevant basis for the requested relief are contained in paragraph 4 of the Motion, but denies that cause exists to grant the Motion.

---

[2] In further support of this Objection, the Debtor relies on the *Declaration of Russell A. Perry in Support of Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, filed on March 15, 2023 [Docket No. 186].

9. The Debtor asserts that the record in the underlying litigation speaks for itself. To the extent a further response is required, the Debtor is without sufficient information or knowledge to admit or deny the allegations contained in paragraphs 5 through 14 of the Motion and therefore denies same.

10. The Debtor admits that it is no longer the contracted health care provider for the Idaho Department of Corrections ("IDOC"), and that the settlement documents are accurately quoted in paragraph 15 of the Motion. The Debtor denies that the three cited provisions of the settlement documents are the only provisions of the agreement relevant to the Debtor and the relief requested in the Motion. The Debtor does not believe it is required to admit or deny the remaining assertions of paragraph 15, however, to the extent the Debtor is required to admit or deny such assertions, the Debtor denies same.

11. The Debtor admits that there may be a possible indemnification claim by the IDOC against the Debtor.[3] The Debtor denies the remaining allegations in paragraph 16 of the Motion.

12. The Debtor does not believe it is required to admit or deny the allegations contained in paragraph 17 of the Motion. However, to the extent the Debtor is required to admit or deny such assertions, the Debtor denies same.

13. The Debtor does not believe it is required to admit or deny the assertions contained in paragraphs 18 through 23 of the Motion. However, to the extent the Debtor is required to admit or deny such assertions, the Debtor denies that Movants are entitled to any of the relief requested in the Motion.

14. The Debtor denies the assertions in paragraph 24 of the Motion.

15. The Debtor denies the assertions in paragraph 25 of the Motion.

---

[3] The Debtor reserves all rights, claims and defenses that may exist respecting any claim that may be asserted by IDOC.

4876-0190-8847

16. The Debtor admits that the Idaho case was not included in Adversary Proceeding No. 23-03049. The Debtor denies the remaining assertions in paragraph 26 of the Motion.

17. The Debtor denies the assertions in paragraph 27 of the Motion.

18. The Debtor denies the assertions in paragraph 28 of the Motion.

19. The Debtor denies the assertions in paragraph 29 of the Motion.

20. The Debtor does not believe it is required to admit or deny the assertions contained in the prayer to the Motion. To the extent the Debtor is required to admit or deny such assertions, the Debtor denies that the Movants are entitled to any of the relief requested to the Motion.

## Summary of Objection

21. The Movants seek relief from the automatic stay to (a) permit the Idaho District Court to consider a prepetition settlement agreement and, assuming the Idaho District Court approves the agreement, (b)(i) petition the Idaho District Court for attorneys' fees and costs and (ii) dismiss claims against the Debtor.

22. However, the Debtor is a party to an indemnification agreement with the IDOC related to the underlying lawsuit (the "Indemnification Agreement"). Counsel for IDOC in this chapter 11 proceeding has expressed to Debtor's counsel that IDOC believes it holds indemnification rights against the Debtor under the Indemnification Agreement.[4] Because the prepetition settlement agreement requires the IDOC to pay tens of millions of dollars, permitting the district court litigation to proceed may result in a very significant fixed indemnification claim filed against the Debtor's estate.

23. Furthermore, no insurance is available to fund the Debtor's defense costs in the district court. It is unclear whether the Debtor will be required to file documents or appear in the

---

[4] The Debtor reserves all rights to challenge the alleged indemnification rights and claims.

4876-0190-8847

district court to support the settlement or protect its rights. The Debtor's estate should not bear these costs to the detriment of the Debtor's creditors.

24. Modifying the stay as requested may result in an indemnification claim and would likely require the Debtor to expend real dollars and devote scarce time and attention to the Idaho litigation while the Debtor is highly focused on formulating and confirming a chapter 11 plan. Conversely, maintaining the automatic stay will *temporarily* continue the pause of litigation that can negatively impact the Debtor's estate while the Debtor works to confirm a chapter 11 plan. The automatic stay will lift upon the effective date of such plan, and the district court litigation may then resume subject to the terms and restrictions of a confirmed plan.

25. Additionally, as the Court is aware, mediation is currently scheduled for July 2023 at least with certain lenders and other parties related to the Debtor, at least one of the Debtor's insurance carriers, and the defendants in Adversary Proceeding No. 23-03049. This Court, the Debtor, and other parties in interest will likely have a better perspective on where this bankruptcy case is headed after the conclusion of the mediation. At a minimum, the Court should deny the Motion at this stage of the bankruptcy case.

## Objection to the Motion

26. The Debtor incorporates by reference the objections contained above.

27. The injunction contained in section 362 of the Bankruptcy Code is self-executing, *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008), and constitutes a fundamental debtor protection that, together with other provisions of the Bankruptcy Code, provides a debtor with a "breathing spell" that is essential to a successful chapter 11 process. *Halo Wireless, Inc. v. Alenco Commc'ns, Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581, 586 (5th Cir. 2012) (internal quotations omitted); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I.*

*Acquisition, Inc.)*, 817 F.2d 1142, 1146 (5th Cir. 1987); *see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as one of the fundamental debtor protections provided by the bankruptcy laws." (citation and internal quotation marks omitted)). *See Commonwealth Oil Refining Co. v. EPA (In re Commonwealth Oil Refining Co.),* 805 F.2d 1175, 1182 (5th Cir. 1986) ("The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." (citation omitted)).

28. The Movants have failed to show cause to lift the automatic stay. As mentioned above, lifting the stay could subject the Debtor's estate to a significant indemnification claim by the IDOC, potential attorneys' fees and expenses in supporting the prepetition settlement in the district court and protecting the Debtor's rights in that litigation, and will detract from the Debtor's efforts to efficiently formulate and confirm a chapter 11 plan and exit these chapter 11 cases.

29. On April 8, 2021, the Debtor entered into an *Indemnification and Hold Harmless Agreement*, attached hereto as **Exhibit A**, under which it "promise[d] to indemnify, defend, and hold harmless the State of Idaho, Idaho Board of Correction, Idaho Department of Correction (IDOC), and the IDOC's officers, agents, and employees…from and against any and all liability, claims, damages, losses, expenses, actions, attorney fees and costs, and lawsuits related to the money damages claims asserted or brought" in the Idaho District Court lawsuit. Indemnification Agreement at 1. The Indemnification Agreement further provides:

> Corizon's indemnification, defense and hold harmless liabilities described herein shall apply regardless of any allegations that a claim or suit stems from or is attributable in whole or in part to any act or omission by the IDOC and/or any of the other Indemnitees. Corizon shall, upon request, defend IDOC in any suit asserting claims covered by this obligation to indemnify…Further, Corizon shall pay any costs that may be incurred by the IDOC in enforcing this obligation to indemnify, including any reasonable attorney fees…This Indemnification and Hold Harmless

>      Agreement applies to damages claims brought by any of the named individual Plaintiffs arising out of the same nucleus of operative facts as the claims in the Lawsuit, but does not apply to any injunctive claims in the Lawsuit.

Indemnification Agreement at 1–2.

30.     In the Motion, the Movants state that their requested relief will not "adversely effect[] or otherwise prejudice[] the rights of Tehum/Corizon with regard to any indemnity claim IDOC may wish to assert" in this chapter 11 case. Motion ¶ 16. However, the Movants overlook that the requested relief could cause the IDOC's indemnification claim to ripen into a fixed claim that is not subject to disallowance.

31.     Under section 502(e)(1)(B), a claim may be disallowed if: "(i) the debtor is co-liable with the claimant; (ii) the claim is contingent; and (iii) the claim is for 'reimbursement or contribution.'" *In re Alta Mesa Res., Inc.*, No. 19-35133, 2022 WL 17984306, at *3 (Bankr. S.D. Tex. Dec. 28, 2022) (Isgur, J.); see 11 U.S.C. § 502(e)(1)(B). A claim for "reimbursement or contribution" includes indemnification claims. *In re Alta Mesa Res., Inc.*, No. 19-35133, 2022 WL 17984306, at *3 (citation omitted); *Sorenson v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 146 B.R. 92, 96 (S.D.N.Y. 1992); *In re Pacor, Inc.*, 110 B.R. 686, 690–91 (E.D. Pa. 1990); *In re Vectrix Bus. Sols., Inc.*, No. 01-35656 SAF-11, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. Sept. 1, 2005); *In re Wedtech Corp.*, 85 B.R. 285, 289 (Bankr. S.D.N.Y. 1988) ("[T]he concept of reimbursement includes indemnity.").

32.     An indemnification claim is "contingent" until it is actually paid to a third party. *In re Alta Mesa Res., Inc.*, No. 19-35133, 2022 WL 17984306, at *3 (citing *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 617 (Bankr. S.D. Tex. 2004)); see also H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977); S. Rep. No. 95–989, 95th Cong., 2d Sess. 65 (1978), reprinted in 1978 U.S.C.C.A.N. 5851, 6310 ("Subsection (e)...requires disallowance of the claim for reimbursement

7

or contribution of a codebtor, surety or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full.").

33. Until fixed, the IDOC's indemnification claim is subject to disallowance under section 502(e)(1)(B). However, if the Motion is granted, the IDOC's indemnification claim could become fixed and no longer subject to disallowance. Such claim would affect the denominator in the distribution equation by potentially substantially increasing the amount of allowed claims to be paid through a chapter 11 plan, diluting the recovery to the Debtor's creditors. Further, even though the Debtor is confident that it would prevail in such litigation, the IDOC may assert that its purported indemnity claim is a postpetition administrative expense claim. Granting an administrative expense claim to IDOC would be disastrous for this bankruptcy estate.

34. Furthermore, the insurance policy relating to this claim contains a large outstanding self-insured retention ("SIR"), thereby effectively leaving the Debtor without insurance until that SIR is satisfied. The relevant policy is Lexington 6797914 and has over $1.8 million in SIR remaining. If the Debtor is required to support the settlement or protect its rights in the District Court, any related costs will be borne by the Debtor's estate. Such costs will reduce the amount of funds available to distribute to the Debtor's creditors under a chapter 11 plan.

35. Additionally, the Court recently entered an order establishing a process for the Debtor and other parties to engage in a mediation process to try to move this bankruptcy case forward for the benefit of all creditors. Allowing non-bankruptcy litigation to proceed has the risk of distracting the Debtor and its professionals from the more global reorganization process.

36. In contrast to the harm that the Debtor and its estate would face if the Motion were granted, the only potential harm faced by the Movants is delay. Mere delay as a result of an injunction issued until bankruptcy proceedings are resolved is not a significant harm. *See Lazarus*

*Burnam Assocs. v. Nat'l Westminster Bank USA (In re Lazarus Burnam Assocs.)*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); *Am. Film Techs., Inc. v. Taritero (In re Am. Film Techs)*, 175 B.R. 847, 849 (Bankr. D. Del. 1994).

37. At least at this stage of the Debtor's bankruptcy case, the Debtor opposes modification of the automatic stay as requested and respectfully submits that cause to modify the stay has not been satisfied.

WHEREFORE, the Debtor requests that the Court deny the Motion and grant such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 14th day of July, 2023.

                                                    **GRAY REED**

By: */s/ Jason S. Brookner*
     Jason S. Brookner
     Texas Bar No. 24033684
     Micheal W. Bishop
     Texas Bar No. 02354860
     Aaron M. Kaufman
     Texas Bar No. 24060067
     Lydia R. Webb
     Texas Bar No. 24083758
     Amber M. Carson
     Texas Bar No. 24075610
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7127
Facsimile:   (713) 986-5966
Email:       jbrookner@grayreed.com
              mbishop@grayreed.com
              akaufman@grayreed.com
              lwebb@grayreed.com
              acarson@grayreed.com

*Counsel to the Debtor*
*and Debtor in Possession*

4876-0190-8847

## Certificate of Service

  I certify that on July 14, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties authorized to receive electronic notice in this case.

                 */s/ Jason S. Brookner*
                 Jason S. Brookner

**Exhibit A**

**<u>Indemnification and Hold Harmless Agreement</u>**

## **INDEMNIFICATION AND HOLD HARMLESS AGREEMENT**

For due and good consideration, which Indemnitor Corizon, LLC ("Corizon") hereby acknowledges, Corizon hereby promises to indemnify, defend, and hold harmless the State of Idaho, Idaho Board of Correction, Idaho Department of Correction (IDOC), and the IDOC's officers, agents, and employees (collectively, the "Indemnitees"), from and against any and all liability, claims, damages, losses, expenses, actions, attorney fees and costs, and lawsuits related to the money damages claims asserted or brought by any of the eighty-eight (88) named individual Plaintiffs in *Turney, et al. v. Atencio, et al.* Case No. 1:18-cv-00001-BLW ("Lawsuit"), filed in the United States District Court for the District of Idaho, arising out of the same nucleus of operative facts as the claims in said Lawsuit or that could have been brought in said Lawsuit as relates to said nucleus of operative facts. Corizon's indemnification, defense and hold harmless liabilities described herein shall apply regardless of any allegations that a claim or suit stems from or is attributable in whole or in part to any act or omission by the IDOC and/or any of the other Indemnitees. Corizon shall, upon request, defend IDOC in any suit asserting claims covered by this obligation to indemnify. Any legal defense provided by Corizon shall be free of substantial conflicts of interest (or the conflicts of interests may be waived), even if retention of separate legal counsel is necessary, and any attorney appointed must first qualify as and be appointed by the Attorney General of the State of Idaho as a Special Deputy Attorney General pursuant to Idaho Code §§ 67-1401(13) and 67-1409(1). Further, Corizon shall pay any costs that may be incurred by the IDOC in enforcing this obligation to indemnify, including any reasonable attorney fees. IDOC must approve all settlement offers and agreements made and shall have the option to attend all settlement and other alternative dispute resolution proceedings. Corizon shall add and maintain Indemnitees as additional insureds under all commercial general liability insurance, automobile liability insurance, and commercial umbrella or excess policies, further including without limitation for tail coverage, carried at any

1

time for purposes of Corizon business operations in the State of Idaho. This Indemnification and Hold Harmless Agreement applies to damages claims brought by any of the named individual Plaintiffs arising out of the same nucleus of operative facts as the claims in the Lawsuit, but does not apply to any injunctive claims in the Lawsuit.

Finally, Corizon understands and agrees that the obligations set forth in this Indemnification and Hold Harmless Agreement are separate, not in conflict with, and in addition to the obligations set forth in the Healthcare Services for Adult Idaho Offenders contract between Corizon and the state of Idaho identified in Contract Purchase Order No. CPO02617, as amended, including but not limited to the obligations set forth in Sections 6.14–6.24 of the Request for Proposal dated July 30, 2013. Furthermore, all duties and obligations of Corizon hereunder shall be binding upon Corizon's successors and assigns; provided, however, that any assignment by Corizon shall be subject to IDOC's prior review and approval.

**SO AGREED:**

DATED: <u>April 8, 2021</u>

CORIZON, LLC

*/s/ J. Scott King*

SCOTT KING
Chief Legal Officer