CONTINUED SECTION 341 MEETING OF CREDITORS

BANKRUPTCY CASE OF TEHUM CARE SERVICES, INC.

CASE NO. 23-90086

JULY 21, 2023

_____

**APPEARANCES:**     Andrew Jimenez, Trustee
Aaron Kaufman, Attorney (Counsel for Debtor)
Isaac Lefkowitz, (for Debtor)
Russell Perry, Chief Restructuring Officer, (for Ankura)
Ian Cross, Attorney (for William Kelly and Kochise Jackson)
Nick Zluticky, Attorney (Official Committee of Unsecured Creditors)
Parrish Collins, Attorney (for the Estate of April Trugillo, personal Rep. for
Eugenio Mathis)
Val Early, Attorney (for Tracey Gissom)

| | |
|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE:        Good afternoon, today is July |
| 2 | 21st, 2023, the time is 1 p.m. |
| 3 | Central Standard Time.  Ah, we are |
| 4 | here on the Continued Section 341 |
| 5 | Meeting of Creditors in the |
| 6 | bankruptcy case of Tehum Care |
| 7 | Services, Inc., Case No. 23-90086 |
| 8 | pending before the United States |
| 9 | Bankruptcy Court for the Southern |
| 10 | District of Texas. |
| 11 | My name is Andrew Jimenez, I am an |
| 12 | attorney for the United States |
| 13 | Department of Justice, and I |
| 14 | represent the United States |
| 15 | Trustee. |
| 16 | Ah, for the record this meeting is |
| 17 | being digitally recorded, the U.S. |
| 18 | Trustee's recording is the only |
| 19 | authorized recording; nobody else |
| 20 | should be recording this meeting. |
| 21 | Um, will counsel for the debtor |
| 22 | identify himself, please? |
| 23 | AARON KAUFMAN:        Yes.  Ah, for the record, Aaron |
| 24 | Kaufman of Gray Reed for the |
| 25 | debtor.  And do you want me to |

| | |
|---|---|
| 1 | introduce the debtor |
| 2 | representatives here on the line? |
| 3 | ANDREW JIMENEZ, TRUSTEE: Yes, go ahead, please. |
| 4 | AARON KAUFMAN: Okay.  Ah, on the line for the |
| 5 | debtor is ah, the debtor's |
| 6 | director, Isaac Lefkowitz, and the |
| 7 | debtor's Chief Restructuring |
| 8 | Officer, Russell Perry of Ankura. |
| 9 | ANDREW JIMENEZ, TRUSTEE: Okay.  So, at this -- at this |
| 10 | time, we're gonna take um, we're |
| 11 | gonna swear ah -- ah, the |
| 12 | witnesses.  We'll start with Mr. |
| 13 | ah, Lefkowitz.  Mr. Lefkowitz, |
| 14 | could you please raise your right |
| 15 | hand? |
| 16 | ISAAC LEFKOWITZ: Yes. |
| 17 | ANDREW JIMENEZ, TRUSTEE: Could you -- could you please |
| 18 | state your full name for the |
| 19 | record. |
| 20 | ISAAC LEFKOWITZ: Isaac Lefkowitz. |
| 21 | ANDREW JIMENEZ, TRUSTEE: Do you swear or affirm that the |
| 22 | testimony you are about to give is |
| 23 | the truth, the whole truth, and |
| 24 | nothing but the truth? |
| 25 | ISAAC LEFKOWITZ: I affirm. |

| | | |
|---|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: | Ah, Mr. Perry, could you please |
| 2 | | raise your right hand and tell me |
| 3 | | when you're ready. |
| 4 | RUSSELL PERRY: | Ah, I'm ready. |
| 5 | ANDREW JIMENEZ, TRUSTEE: | 'Kay.  Could you please state your |
| 6 | | full name for the record? |
| 7 | RUSSELL PERRY: | Ah, Russell Perry. |
| 8 | ANDREW JIMENEZ, TRUSTEE: | Do you swear or affirm that the |
| 9 | | testimony you're about to give is |
| 10 | | the truth, the whole truth, and |
| 11 | | nothing but the truth? |
| 12 | RUSSELL PERRY: | I do. |
| 13 | ANDREW JIMENEZ, TRUSTEE: | So, since this meeting of |
| 14 | | creditors is being conducted |
| 15 | | telephonically, um, I can't do |
| 16 | | what I would normally do, which is |
| 17 | | to check the ah, identifications |
| 18 | | of the witnesses. So, Mr. Kaufman, |
| 19 | | as an Officer of the Court, can |
| 20 | | you please confirm that the |
| 21 | | individuals on -- on the phone are |
| 22 | | indeed who they claim to be. |
| 23 | AARON KAUFMAN: | I can confirm that, yes. |
| 24 | ANDREW JIMENEZ, TRUSTEE: | Thank you, Mr. Kaufman.  Um, we |
| 25 | | have ah -- a several ah, ah, |

1    creditors ah, on the call.  Ah, I

2    will give all the creditors

3    present the opportunity to ask

4    questions.  I just ask you to

5    please ah, wait until - - until I

6    call you ah, to ask your

7    questions. So, anyone, who is not

8    um, answering questions at this

9    point, ah, would you please ah,

10   mute your phone that way ah, you

11   will help us reduce background

12   noise.

13   So, during this call, are we --

14   ah, I will be using the term

15   "debtor" and when I say, debtor, I

16   am referencing Tehum Care

17   Services, Inc. formerly doing

18   business as Corizon ah, Healthcare

19   Services, Inc.

20   Um, so Mr. Lefkowitz, on July 19,

21   2023, the debtor filed a second

22   amended Schedule A/B in Docket No.

23   810.  And a second amended

24   Statement of Financial Affairs ah,

25   Docket No. 811.

| | | |
|---|---|---|
| 1 | | Mr. Lefkowitz, did you review the |
| 2 | | second amended Schedule A/B of |
| 3 | | Docket No. 810? |
| 4 | ISAAC LEFKOWITZ: | Yes, I did. |
| 5 | ANDREW JIMENEZ, TRUSTEE: | Are the changes to the second |
| 6 | | amended Schedule A/B true and |
| 7 | | correct to the best of your |
| 8 | | knowledge and belief? |
| 9 | ISAAC LEFKOWITZ: | Yes, it is. |
| 10 | ANDREW JIMENEZ, TRUSTEE: | Did you review the amended |
| 11 | | Statement -- the second amended |
| 12 | | Statement of Financial Affairs of |
| 13 | | Docket No. 811? |
| 14 | ISAAC LEFKOWITZ: | Yes, I did. |
| 15 | ANDREW JIMENEZ, TRUSTEE: | Are the changes to the second |
| 16 | | amended Statement of Financial |
| 17 | | Affairs true and correct to the |
| 18 | | best of your knowledge and belief? |
| 19 | ISAAC LEFKOWITZ: | Yes, it is. |
| 20 | ANDREW JIMENEZ, TRUSTEE: | At this time, are there any |
| 21 | | changes or amendments that you |
| 22 | | wish to make on the petition |
| 23 | | schedules or Statement of |
| 24 | | Financial Affairs? |
| 25 | ISAAC LEFKOWITZ: | Not at this time. |

| | | |
|---|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: | Okay.  And I just wanna confirm |
| 2 | | that the signature that appears on |
| 3 | | the ah, -- on the second amended |
| 4 | | Schedule A/B of Docket No. 810 is |
| 5 | | your signature; correct? |
| 6 | ISAAC LEFKOWITZ: | Yes. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | And -- the signature on the second |
| 8 | | amended Statement of Financial |
| 9 | | Affairs on Docket No. 811 that is |
| 10 | | your signature; correct? |
| 11 | ISAAC LEFKOWITZ: | Correct. |
| 12 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, I'm -- I'm -- I wanna |
| 13 | | ask some questions regarding |
| 14 | | notice and ah, for these |
| 15 | | questions, if -- if -- ah, I'm |
| 16 | | gonna start with Mr. Lefkowitz, |
| 17 | | but Mr. Russell, if you think you |
| 18 | | have something to add, just let me |
| 19 | | know and I will give you the |
| 20 | | opportunity to ah, to an -- to |
| 21 | | answer, as well. |
| 22 | | Um, for the Notice of the Bar |
| 23 | | Date, ah, can you walk us through |
| 24 | | what records or how the debtor |
| 25 | | ascertained information ah, |

| | |
|---|---|
| 1 | specifically for prisoners ah, to |
| 2 | notice those parties? |
| 3 ISAAC LEFKOWITZ: | This question ah, address to me or |
| 4 | to Counsel? |
| 5 ANDREW JIMENEZ, TRUSTEE: | No.  It's -- it's for you, Mr. |
| 6 | Lefkowitz. |
| 7 ISAAC LEFKOWITZ: | Um, it's -- pulled from the |
| 8 | records off the server. |
| 9 ANDREW JIMENEZ, TRUSTEE: | What -- what server are you |
| 10 | referring to? |
| 11 ISAAC LEFKOWITZ: | The server of the debtor. |
| 12 ANDREW JIMENEZ, TRUSTEE: | So, to -- to date, ah, is it your |
| 13 | understanding that prisoners that |
| 14 | filed grievances to the extent |
| 15 | that the debtor can obtain the -- |
| 16 | their mailing information ah, was |
| 17 | served with notice of the claims |
| 18 | Bar Date? |
| 19 ISAAC LEFKOWITZ: | (STAMMERS) -- we basically |
| 20 | instructed Counsel to comply with |
| 21 | the law on how to notice creditors |
| 22 | that's incarcerated. |
| 23 ANDREW JIMENEZ, TRUSTEE: | I'm -- I'm -- I'm not sure that |
| 24 | answers my question.  So, let me - |
| 25 | - let me repeat it.  Is it your |

| | | |
|---|---|---|
| 1 | | understanding -- |
| 2 | ISAAC LEFKOWITZ: | Okay. |
| 3 | ANDREW JIMENEZ, TRUSTEE: | -- that prisoners that file |
| 4 | | grievances were served with -- |
| 5 | ISAAC LEFKOWITZ: | (CROSSTALK) -- grievances. |
| 6 | ANDREW JIMENEZ, TRUSTEE: | -- notice of the claims Bar Date? |
| 7 | ISAAC LEFKOWITZ: | Um, (INAUDIBLE), I don't know |
| 8 | | exactly the process, but we -- you |
| 9 | | know, we have a servicing company |
| 10 | | we provided all the information of |
| 11 | | the clients (INAUDIBLE) the |
| 12 | | debtor, and whatever the service |
| 13 | | company, you know, did according |
| 14 | | to the rules. |
| 15 | ANDREW JIMENEZ, TRUSTEE: | Do you know if, the -- notices |
| 16 | | were sent out to prisoners that |
| 17 | | may have filed grievances, but not |
| 18 | | filed lawsuits against the debtor? |
| 19 | ISAAC LEFKOWITZ: | I'm not sure if the notices were |
| 20 | | actually mailed to, you know, the |
| 21 | | addresses, but what I do know is |
| 22 | | we -- we publicized it in the |
| 23 | | major publications nationwide and |
| 24 | | The New York Times and The Wall |
| 25 | | Street Journal, so ah, notices has |

| | |
|---|---|
| 1 | been given. |
| 2 | AARON KAUFMAN:        Mr. -- Mr. Jimenez, this Aaron |
| 3 |                      Kaufman.  I sent you and Mr. Wynn, |
| 4 |                      the -- the list of ah, claimants |
| 5 |                      to (INAUDIBLE) notified, ah, at |
| 6 |                      least the one that's on the |
| 7 |                      docket. I can -- I'm happy to send |
| 8 |                      you the unredacted version, if |
| 9 |                      that's what you're looking for. |
| 10 |                      And I think what Mr. Lefkowitz is |
| 11 |                      trying to say is, now, he -- he |
| 12 |                      instructed counsel to ah, comply |
| 13 |                      with the, you know, the |
| 14 |                      (INAUDIBLE) Standards to give |
| 15 |                      notice, actual notice to creditors |
| 16 |                      so the debtor can reasonably |
| 17 |                      ascertain their -- their addresses |
| 18 |                      and -- that's what we did working |
| 19 |                      with KCC. |
| 20 | ANDREW JIMENEZ, TRUSTEE:   So, Mr. Lefkowitz, um, did -- does |
| 21 |                      the debtor have the addresses of |
| 22 |                      ah, prisoners that -- that have |
| 23 |                      filed grievances against the |
| 24 |                      debtor? |
| 25 | ISAAC LEFKOWITZ:      Um, (INAUDIBLE) pending -- |

```
 1                                        depending of the age and the date
 2                                        of the grievance.  Ah, some folks
 3                                        file grievances while their still
 4                                        an inmate, and then now, they're
 5                                        discharged.  So, we no longer have
 6                                        their address, we only have the
 7                                        clients of the debtor, which is
 8                                        certain states and or certain
 9                                        cities, and they probably have the
10                                        further, you know, locations and
11                                        addresses of, you know, the
12                                        released inmate.  Ah, but I'm not
13                                        certain that, you know, all
14                                        addresses that we have is the
15                                        perfect, up-to-date address.
16  ANDREW JIMENEZ, TRUSTEE:    Okay.  But can you confirm if the
17                                        debtor has sent Notice of the Bar
18                                        Date to the addresses that you --
19                                        you do have on file?
20  ISAAC LEFKOWITZ:            Um, the ones that we reasonably
21                                        ascertain, yes.  And that was all
22                                        done through KCC.
23  ANDREW JIMENEZ, TRUSTEE:    So, that would be -- that would be
24                                        -- that would be found on the
25                                        various Certificates of Service
```

| | | |
|---|---|---|
| 1 | | that the claims agent filed? |
| 2 | ISAAC LEFKOWITZ: | Correct. |
| 3 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Can you identify what are |
| 4 | | um, in the -- in the docket where |
| 5 | | those certificates of services -- |
| 6 | | of service were filed? |
| 7 | AARON KAUFMAN: | Ah, Mr. Jimenez, there -- there's |
| 8 | | a handful of them and I'm happy to |
| 9 | | that.  I don't -- I doubt Mr. |
| 10 | | Lefkowitz -- |
| 11 | ANDREW JIMENEZ, TRUSTEE: | So -- this -- this is Mr. Kaufman? |
| 12 | AARON KAUFMAN: | -- you know, the docket numbers. |
| 13 | ANDREW JIMENEZ, TRUSTEE: | This is Mr. Kaufman? |
| 14 | AARON KAUFMAN: | Yes, sorry. |
| 15 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, Mr. Kaufman, just -- |
| 16 | | just ah, please remember  that |
| 17 | | we're trying -- this is being con |
| 18 | | -- conducted telephonically, so |
| 19 | | whenever you speak or someone |
| 20 | | speak, please state your name for |
| 21 | | the record.  That way ah, we can - |
| 22 | | - |
| 23 | AARON KAUFMAN: | Understand. |
| 24 | ANDREW JIMENEZ, TRUSTEE: | -- have a clear record of -- of |
| 25 | | who is speaking.  Ah, so, I |

| | |
|---|---|
| 1 | understand.  Mr. Kaufman, if -- if |
| 2 | you know the answer can you please |
| 3 | share it with us?  If -- if you |
| 4 | don't know it, just -- just -- |
| 5 | just tell me -- just tell me so. |
| 6 | AARON KAUFMAN:   Sure.  So, this is Aaron Kaufman, |
| 7 | I'll -- I'll pause and let Mr. |
| 8 | Lefkowitz answer, if he knows. |
| 9 | ISAAC LEFKOWITZ:   So again um, I don't -- I don't |
| 10 | follow the actual docket or the |
| 11 | docket numbers.  We instructed |
| 12 | counsel to do exactly, you know, |
| 13 | what the -- what the law requires |
| 14 | to notice the creditors and -- and |
| 15 | far as I know, it all has been |
| 16 | accomplished ah, through the |
| 17 | services of KCC. |
| 18 | ANDREW JIMENEZ, TRUSTEE:   Okay.  So -- have -- have you -- |
| 19 | have you -- have you verified ah, |
| 20 | or some of your professionals, |
| 21 | have they verified that for you? |
| 22 | ISAAC LEFKOWITZ:   Um -- it was confirmed -- |
| 23 | AARON KAUFMAN:   This is Aaron Kaufman, I --I |
| 24 | verified it and I think I've sent |
| 25 | it to you, Mr. Jimenez. |

| | | |
|---|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Mr. -- Mr. Kaufman, I -- I |
| 2 | | appreciate your trying to help, |
| 3 | | but please let the -- the witness |
| 4 | | answer -- answer the questions. |
| 5 | | If -- if I need any further |
| 6 | | information from you, I will make |
| 7 | | sure to reach out to you. |
| 8 | | So, Mr. -- Mr. -- Mr. Lefkowitz, |
| 9 | | you just said a moment ago, that |
| 10 | | you -- you were certain that K -- |
| 11 | | KCC had complied with that.  So, |
| 12 | | my question is, have you had |
| 13 | | someone verified that for you? |
| 14 | ISAAC LEFKOWITZ: | It was -- it was confirmed to me |
| 15 | | by counsel that it has been |
| 16 | | verified. |
| 17 | ANDREW JIMENEZ, TRUSTEE: | Can you confirm that there is no |
| 18 | | subset of creditors including |
| 19 | | prisoners that the debtor has |
| 20 | | ascertained mailing -- mailing |
| 21 | | information, but service of the |
| 22 | | Bar Date Notice was withheld? |
| 23 | ISAAC LEFKOWITZ: | (INAUDIBLE)that is confirmed. |
| 24 | ANDREW JIMENEZ, TRUSTEE: | Are you -- are you not aware of |
| 25 | | any other groups that needed to be |

| | | |
|---|---|---|
| 1 | | served of the Bar Date Notice at |
| 2 | | this time? |
| 3 | ISAAC LEFKOWITZ: | Correct. |
| 4 | ANDREW JIMENEZ, TRUSTEE: | Have you reviewed the Proof of |
| 5 | | Claims in this case? |
| 6 | ISAAC LEFKOWITZ: | Yes. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | Did the debtor receive proof -- |
| 8 | | Proof of Claims from inmates that |
| 9 | | initiated grievances, but not |
| 10 | | lawsuits? |
| 11 | ISAAC LEFKOWITZ: | Correct. |
| 12 | ANDREW JIMENEZ, TRUSTEE: | So, it's -- what is -- what is |
| 13 | | your answer? |
| 14 | ISAAC LEFKOWITZ: | The answer is yes, we -- we |
| 15 | | receive all kinds of letters, you |
| 16 | | know, call it a claim, call it a |
| 17 | | Notice to a Claim.  But we do have |
| 18 | | what we call a claim, but not a |
| 19 | | lawsuit from (CUTOUT) (INAUDIBLE). |
| 20 | ANDREW JIMENEZ, TRUSTEE: | Okay.  And -- and my question was |
| 21 | | specifically about folks that are |
| 22 | | incarcerated, but haven't filed a |
| 23 | | lawsuit have they filed a Proof of |
| 24 | | Claim in this bankruptcy case? |
| 25 | ISAAC LEFKOWITZ: | I'm not aware of any. |

| | | |
|---|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, Mr. Lefkowitz, I'm |
| 2 | | going to ask you some questions |
| 3 | | regarding the amended ah, Schedule |
| 4 | | A, A/B, ah, in Docket No. 810. |
| 5 | | Ah, let me know when you have the |
| 6 | | document in front of you. |
| 7 | ISAAC LEFKOWITZ: | Okay.  What page number? |
| 8 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Um, so, first let's |
| 9 | | (INAUDIBLE) the debtor made |
| 10 | | changes to the answer to question |
| 11 | | No. ah, 73 in Schedule A/B, which |
| 12 | | is about -- which asks about |
| 13 | | interests and insurance policies |
| 14 | | and annuities.  Ah, so the answer |
| 15 | | is in page 194 out of um, 202. |
| 16 | ISAAC LEFKOWITZ: | 194? |
| 17 | ANDREW JIMENEZ, TRUSTEE: | 194 of 202. |
| 18 | ISAAC LEFKOWITZ: | Hang on a second. |
| 19 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, you see that the answer |
| 20 | | of -- in question 73 makes |
| 21 | | reference to a Schedule A/B, 73 |
| 22 | | attachment.  Do you see that? |
| 23 | ISAAC LEFKOWITZ: | One second, my -- my computer |
| 24 | | froze, (MUMBLES).  Just one |
| 25 | | second.  (PAUSES).  Okay, I got |

| 1 | | it. |
|---|---|---|
| 2 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, you see that the answer |
| 3 | | to question 73 makes reference to |
| 4 | | an attachment, a Schedule A/B, 73 |
| 5 | | attachment.  Um -- |
| 6 | ISAAC LEFKOWITZ: | Correct. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | -- so that attachment um, I |
| 8 | | believe starts in page 198.  And |
| 9 | | let me know when you there. |
| 10 | ISAAC LEFKOWITZ: | (CUTOUT) there. |
| 11 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, we have a spreadsheet |
| 12 | | here and ah, it has ah, various |
| 13 | | columns um, can you please explain |
| 14 | | what is represented in -- under |
| 15 | | the column titled, Per Claim SIR? |
| 16 | ISAAC LEFKOWITZ: | SIR? |
| 17 | ANDREW JIMENEZ, TRUSTEE: | Correct. |
| 18 | ISAAC LEFKOWITZ: | Um, SIR is ah, is an insurance |
| 19 | | lingo of Self-Insured Retention. |
| 20 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, what -- what -- what is |
| 21 | | it -- what is represented under |
| 22 | | that column? |
| 23 | ISAAC LEFKOWITZ: | Um, -- |
| 24 | RUSSELL PERRY: | (STAMMERS) -- yeah, I'm sorry. |
| 25 | | Mr. Jimenez, this is Russell |

| | |
|---|---|
| 1 | Perry.  I ah, took a um, f -- |
| 2 | fairly ah, lead role in preparing |
| 3 | this schedule.  Um, if -- you |
| 4 | know, if you allow -- I'm happy to |
| 5 | answer your question that relates |
| 6 | to this schedule. |
| 7 | ANDREW JIMENEZ, TRUSTEE:    Sure.  Let -- let's -- let's wait |
| 8 | -- let's -- let Mr. Lefkowitz ah, |
| 9 | answer that question, and then |
| 10 | I'll move -- I'll -- I'll give you |
| 11 | the opportunity. |
| 12 | RUSSELL PERRY:    Sure. |
| 13 | ANDREW JIMENEZ, TRUSTEE:    Okay. |
| 14 | RUSSELL PERRY:    Sure. |
| 15 | ISAAC LEFKOWITZ:    Mr. Jimenez, which column you're |
| 16 | referring to? |
| 17 | ANDREW JIMENEZ, TRUSTEE:    Um, the column titled -- |
| 18 | ISAAC LEFKOWITZ:    Third Claim SIR? |
| 19 | ANDREW JIMENEZ, TRUSTEE:    -- Third Claim SIR. |
| 20 | ISAAC LEFKOWITZ:    Right.  So, these are -- these are |
| 21 | numbers that come off the policy. |
| 22 | These are policy information. |
| 23 | ANDREW JIMENEZ, TRUSTEE:    Okay.  So, what -- what -- what |
| 24 | does that mean, the Per Claim SIR? |
| 25 | Well, what does that mean?  Help |

| | | |
|---|---|---|
| 1 | | me understand that. |
| 2 | ISAAC LEFKOWITZ: | Um, -- so for instance on the |
| 3 | | first one, it says American |
| 4 | | Fidelity. |
| 5 | ANDREW JIMENEZ, TRUSTEE: | Okay. |
| 6 | ISAAC LEFKOWITZ: | -- 375,000. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | Yes. |
| 8 | ISAAC LEFKOWITZ: | So, the Self-Insured Retention |
| 9 | | under that policy is 375,000.  So |
| 10 | | the, so, per claim, the exposure |
| 11 | | is $375,000.  But there's a per |
| 12 | | claim and then there's an |
| 13 | | aggregate of the next column, |
| 14 | | which is total per year. |
| 15 | ANDREW JIMENEZ, TRUSTEE: | And -- and what is the aggregate |
| 16 | | SIR represent? |
| 17 | ISAAC LEFKOWITZ: | Total -- total on the annual |
| 18 | | policy. |
| 19 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Mr. -- |
| 20 | ISAAC LEFKOWITZ: | So -- |
| 21 | ANDREW JIMENEZ, TRUSTEE: | -- yeah, go ahead.  Sorry, to |
| 22 | | interrupt you. |
| 23 | ISAAC LEFKOWITZ: | -- so, let's say on -- on -- on |
| 24 | | the second line item, it says |
| 25 | | aggregate and SIR 15 million, of |

|   |   |
|---|---|
| 1 | | the first 15 million is from the |
| 2 | | policyholder.  Every dollar above |
| 3 | | 15, the insurance company |
| 4 | | (INAUDIBLE). |
| 5 | ANDREW JIMENEZ, TRUSTEE: | Mr. Perry, is there anything you - |
| 6 | | - ah, you wish to add? |
| 7 | RUSSELL PERRY: | No, no, that's ah, that's perfect. |
| 8 | | He ah, Mr. Lefkowitz explained the |
| 9 | | per claim SIR and the aggregate |
| 10 | | SIR correctly. |
| 11 | ANDREW JIMENEZ, TRUSTEE: | Okay. So, if -- if I understood |
| 12 | | correctly, um, from that per claim |
| 13 | | SIR and I'm -- I'm going to use as |
| 14 | | an example um, applied Medical |
| 15 | | Legal Solutions Risk Retention |
| 16 | | Group ah, because that -- that |
| 17 | | policy has numbers under both |
| 18 | | columns, the per claim SIR and the |
| 19 | | aggregate SIR.  So, if I |
| 20 | | understood correctly, if you get a |
| 21 | | claim under that policy for per |
| 22 | | claim SIR, the first million |
| 23 | | dollars comes out of the pocket of |
| 24 | | the debtor, and anything above 1 |
| 25 | | million is paid by the insurance? |

| | | |
|---|---|---|
| 1 | ISAAC LEFKOWITZ: | That's correct. |
| 2 | ANDREW JIMENEZ, TRUSTEE: | Okay.  And then aggregate SIR ah, |
| 3 | | is the same concept only on the |
| 4 | | aggregate.  So, it will be fifth - |
| 5 | | - anything above 15 million -- the |
| 6 | | first 15 million dollars are paid |
| 7 | | by the debtor and anything above |
| 8 | | that is paid by the insurance |
| 9 | | company; is that correct? |
| 10 | ISAAC LEFKOWITZ: | Correct; perfect. |
| 11 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Um, so are -- are you aware |
| 12 | | that the debtor recently filed a |
| 13 | | motion on Docket No. 802 for an |
| 14 | | Order Establishing Procedures for |
| 15 | | the resolution of certain claims |
| 16 | | that involve insurance policies of |
| 17 | | ah, Lone Star Alliance, Inc. ah, |
| 18 | | in Arizona?  Um, are you aware of |
| 19 | | that motion? |
| 20 | ISAAC LEFKOWITZ: | Right. |
| 21 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, if you -- if -- if -- |
| 22 | | I'm still in Docket No. 810.  If |
| 23 | | you go to page 200 and we're still |
| 24 | | in the same attachment for A/B 73. |
| 25 | | Ah, towards the second half of the |

|    |                          |                                      |
|----|--------------------------|--------------------------------------|
| 1  |                          | -- the bottom half of the -- of      |
| 2  |                          | the page, there is a bunch of ah,    |
| 3  |                          | insurance policies for Lone Star     |
| 4  |                          | Alliance.  So, my question is --     |
| 5  | ISAAC LEFKOWITZ:         | Right.                               |
| 6  | ANDREW JIMENEZ, TRUSTEE: | -- are this insurance policies       |
| 7  |                          | that are related to the motion in    |
| 8  |                          | Docket No. 802 for the procedures    |
| 9  |                          | for the resolution of certain        |
| 10 |                          | claims?                              |
| 11 | ISAAC LEFKOWITZ:         | Yes, sir.                            |
| 12 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, if -- if we go to the     |
| 13 |                          | first -- the -- the first            |
| 14 |                          | insurance -- insurance policy for    |
| 15 |                          | Lone Star Alliance.  Um, and just    |
| 16 |                          | -- just -- just to make sure that    |
| 17 |                          | we're on the same page, ah, page     |
| 18 |                          | 200 and I'm referring to account     |
| 19 |                          | No. 4-100092.                        |
| 20 | ISAAC LEFKOWITZ:         | Ah, Mr. Hernandez [SIC], I'm not     |
| 21 |                          | sure that I'm fully ah,              |
| 22 |                          | knowledgeable in all the details     |
| 23 |                          | of these policies.  What I do know   |
| 24 |                          | is that we're in active mediation    |
| 25 |                          | with these carriers from a           |

| | |
|---|---|
| 1 | (INAUDIBLE), which is happening as |
| 2 | we speak.  So, I'm not sure that I |
| 3 | can drill down on actual details |
| 4 | of the schedule. |
| 5 | ANDREW JIMENEZ, TRUSTEE:    Okay.  But just -- just wait for |
| 6 | my questions and then you can give |
| 7 | me your answer. |
| 8 | ISAAC LEFKOWITZ:            Sure. |
| 9 | ANDREW JIMENEZ, TRUSTEE:    Okay.  So, can you tell me -- and |
| 10 | -- and, you know, let's use for |
| 11 | example that first Lone Star |
| 12 | Alliance ah, ah, policy.  Ah, it - |
| 13 | - under the column of Per Claim |
| 14 | Limit, it states 1 million |
| 15 | dollars.  Um, what -- what does |
| 16 | that mean? |
| 17 | ISAAC LEFKOWITZ:            Pretty much what I said before. |
| 18 | That under that policy, the per- |
| 19 | claim limit is one million.  So, |
| 20 | Jane Doe files a claim or gets |
| 21 | vindicated in trial on appeal |
| 22 | (INAUDIBLE) 1.1 million, the first |
| 23 | million is the debtor's |
| 24 | responsibility and $100,000 is |
| 25 | Lone Star's (MUMBLES). |

| | |
|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: |
| | Okay.  And then, the aggregate |
| 2 | limit is -- can you explain what |
| 3 | is the aggregate limit?  In this |
| 4 | case, it's 22 million dollars. |
| 5 | ISAAC LEFKOWITZ: |
| | Total -- total aggregate per |
| 6 | policy period.  So, if we |
| 7 | exhausted the 22 million dollars, |
| 8 | um, I mean, (CUTTING OUT)kicks in |
| 9 | by the insurance company. |
| 10 | ANDREW JIMENEZ, TRUSTEE: |
| | Okay.  So, what would be the |
| 11 | difference between the aggregate |
| 12 | SIR and the -- and the aggregate |
| 13 | limit?  Under this policy ah, it's |
| 14 | -- it's two different numbers. |
| 15 | The aggregate SIR is 18 million |
| 16 | and the aggregate limit is 22 |
| 17 | million.  What is the difference |
| 18 | between those two numbers? |
| 19 | ISAAC LEFKOWITZ: |
| | Um, I'm not certain, maybe Russell |
| 20 | can jump in on that.  It's -- |
| 21 | (CUTTING OUT)(MUMBLES). |
| 22 | ANDREW JIMENEZ, TRUSTEE: |
| | Okay.  Mr. Perry?  Do you know the |
| 23 | answer? |
| 24 | RUSSELL PERRY: |
| | Sure, sure.  Yeah.  So, Mr. |
| 25 | Jimenez, your question is -- so I |

| | |
|---|---|
| 1 | | make sure I understand -- what's |
| 2 | | the difference between aggregate |
| 3 | | SIR and aggregate limit? |
| 4 | ANDREW JIMENEZ, TRUSTEE: | Correct. |
| 5 | RUSSELL PERRY: | To make sure I understand that -- |
| 6 | | that's your question. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | Yes, correct. |
| 8 | RUSSELL PERRY: | Okay.  So, an aggregate SIR, okay, |
| 9 | | is the total Self-Insured |
| 10 | | Retention amount required to be |
| 11 | | paid before, okay, the policy |
| 12 | | reaches any type of -- a -- |
| 13 | | ability to -- to make a payment, |
| 14 | | okay?  Or to reach any of the |
| 15 | | insurance proceeds.  If the SIR, |
| 16 | | the aggregate SIR, is otherwise |
| 17 | | satisfied for that specific policy |
| 18 | | and I don't know if you're -- |
| 19 | | referencing, you know, one policy |
| 20 | | or just in general, but if an |
| 21 | | aggregate SIR is satisfied, then |
| 22 | | the aggregate limit comes into |
| 23 | | play, which means that is the |
| 24 | | total amount that the insurance |
| 25 | | carrier or the policy would |

```
1                              provide for on the payment of

2                              claims.  So, it's a step-one,

3                              step-two type process.  Step one,

4                              the aggregate SIR has to be

5                              satisfied, step two, the insurance

6                              proceeds are now available, and

7                              the total amount of proceeds are

8                              governed by the aggregate limit.

9   ANDREW JIMENEZ, TRUSTEE:   Okay.  So, and -- and following as

10                             an example that -- that Lone Star

11                             Alliance policy, it says that the

12                             aggregate limit is 22 million.

13                             So, that's -- that's the --

14  RUSSELL PERRY:             Uh-huh.

15  ANDREW JIMENEZ, TRUSTEE:   -- total amount that the insurance

16                             policy will pay after the 18

17                             million aggregate SIR is

18                             satisfied.

19  RUSSELL PERRY:             Ah, that is what the policy calls

20                             for, that is correct.  That's not

21                             a reflection of what may be

22                             remaining or what the policy is

23                             today, but is what the face

24                             numbers on the policy represent;

25                             that is correct.
```

| | | |
|---|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Um, and how does -- I'm |
| 2 | | trying to understand, how does |
| 3 | | that play in the -- the procedures |
| 4 | | for the resolution of certain |
| 5 | | claims, as -- as filed in Docket |
| 6 | | No. 802? |
| 7 | AARON KAUFMAN: | So -- ah, Mr. Jimenez, this is |
| 8 | | Aaron Kaufman.  I -- I want to |
| 9 | | avoid at this 341 Meeting getting |
| 10 | | into the -- the rush now behind |
| 11 | | this settlement motion that's |
| 12 | | pending.  Ah, that's -- that's ah, |
| 13 | | a contested hearing that's ongoing |
| 14 | | before the Court.  Ah, I'm not |
| 15 | | aware of any open objections. |
| 16 | | Still a lot of time for parties to |
| 17 | | reach out to us and we're hoping, |
| 18 | | we can resolve any objections. |
| 19 | ANDREW JIMENEZ, TRUSTEE: | Yeah, but that's -- that's -- |
| 20 | AARON KAUFMAN: | Ah, but ah, Mr. Lefkowitz at this |
| 21 | | point that this was actively |
| 22 | | negotiated in a -- in a |
| 23 | | confidential mediation.  So, I |
| 24 | | wanna keep those discussions |
| 25 | | confidential. |

| | | |
|---|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: | No.  I understand that, but that's |
| 2 | | not -- that's not my question, Mr. |
| 3 | | Kaufman.  So, what I'm trying to |
| 4 | | understand -- |
| 5 | AARON KAUFMAN: | Ah, -- a -- apologies.  If -- if |
| 6 | | you wouldn't mind clarifying. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | -- sure.  Ah, my question is how |
| 8 | | does -- how does these policies |
| 9 | | limits, you know, are going to -- |
| 10 | | for example, okay?  Let's -- let's |
| 11 | | take a step back.  What is the |
| 12 | | limit that ah, is going to be |
| 13 | | available under that -- under |
| 14 | | those procedures?  Should -- can - |
| 15 | | - can -- |
| 16 | AARON KAUFMAN: | Can you clarify which procedures |
| 17 | | you're talking about (INAUDIBLE)? |
| 18 | ANDREW JIMENEZ, TRUSTEE: | Dock -- ah, for the motion on the |
| 19 | | Docket 802, which relates to the - |
| 20 | | - to the Lone Star Alliance ah, |
| 21 | | insurance policy. |
| 22 | AARON KAUFMAN: | I -- I would -- I'm gonna ask that |
| 23 | | we move along and -- and focus on |
| 24 | | what's in the schedules and |
| 25 | | statements here, not in the |

| | | |
|---|---|---|
| 1 | | procedures -- |
| 2 | ANDREW JIMENEZ, TRUSTEE: | But -- |
| 3 | AARON KAUFMAN: | -- that are a separate motion. |
| 4 | ANDREW JIMENEZ, TRUSTEE: | -- the -- my question is about the |
| 5 | | schedules.  We have here on the |
| 6 | | schedules ah, the -- the Lone Star |
| 7 | | Alliance and I'm trying to |
| 8 | | understand what are the limits and |
| 9 | | how -- how is this going to ah, be |
| 10 | | used under those procedures. |
| 11 | RUSSELL PERRY: | Yeah -- yeah, um, Mr. Jimenez, |
| 12 | | this -- this is um, Russell Perry. |
| 13 | | The policies in the -- the |
| 14 | | underlying insurance policies |
| 15 | | aren't being altered, aren't being |
| 16 | | otherwise modified, they aren't |
| 17 | | being otherwise divorced from the |
| 18 | | numbers that were -- that we |
| 19 | | provided for in the schedules, |
| 20 | | 'kay.  The SIRs on a per claim |
| 21 | | basis, on an aggregate basis, the |
| 22 | | per claim limit or the aggregate |
| 23 | | limits will all -- apply to the |
| 24 | | procedures that are ah, you know, |
| 25 | | filed within the motion that will |

```
 1                         be in front of Judge Lopez in --
 2                         in due time.  So, there is no
 3                         modification of the policy.  The
 4                         only thing that will be important
 5                         for the procedures will be whether
 6                         or not the SIRs have already been
 7                         exhausted or there is a potential
 8                         exhaustion that could occur and
 9                         whether or not there is remaining
10                         amounts under the policy that
11                         would, of course, you know, ah,
12                         you know, max out at the aggregate
13                         limit.  These are just numbers of
14                         the policies, which is what we
15                         were asked to schedule.  We have
16                         substantially, you know, ah, you -
17                         - you know, a very comprehensive
18                         analysis that we've shared with,
19                         you know, most if not all the
20                         creditors that have requested it
21                         that provide for more substantial
22                         information with respect to what
23                         SIRs are remaining to be satisfied
24                         what are satisfied, and what
25                         limits are remaining under the
```

```
 1                              policies.  So, you know, I don't -
 2                              - I'm not telling you it's apples
 3                              and oranges, but what was
 4                              scheduled in here are the face
 5                              value, the numbers on the policies
 6                              what the -- ah, motion relates to
 7                              is the current state of the
 8                              insurance policy, and the
 9                              procedures in which could be um,
10                              you know, implemented in order to
11                              potentially um, ah -- you know,
12                              ah, receive any recoveries under
13                              those policies.  So, I -- I'm also
14                              not sure exactly what your
15                              question is, but the procedures
16                              are very clear, they lay out the
17                              claim's resolution procedures in
18                              paragraph nine of the motion that
19                              you're referring to.  What's here
20                              in the schedules is just the face
21                              amount of those policies.  So,
22                              there are certain policies that
23                              the motion relates to in this
24                              schedule by which these SIRs and
25                              aggregate limits, and per-claim
```

| | |
|---|---|
| | limits will continue to relate to. |
| | It's just a matter of what the |
| | value of the policy is and what |
| | are the procedures in order to get |
| | to those. |
| ANDREW JIMENEZ, TRUSTEE: | Okay. To the extent that the |
| | debtor is required to ah, come up |
| | with a payment for the SIR, how |
| | will the -- how will the debtor |
| | pay for that? |
| RUSSELL PERRY: | That hasn't been determined. |
| ANDREW JIMENEZ, TRUSTEE: | Have you explored possibilities of |
| | how -- how to fund those SIRs? |
| AARON KAUFMAN: | Mr. Jimenez, you're going beyond |
| | what's in the schedules here.  Can |
| | you just focus on what's in the |
| | schedules? |
| ANDREW JIMENEZ, TRUSTEE: | Mr. Lefkowitz, ah, -- Mr. Russell, |
| | ah, Mr. Perry, do you have an |
| | answer? |
| RUSSELL PERRY: | Yeah.  I -- there -- there have |
| | been discussions around potential |
| | ways in which to satisfy SIRs. |
| | Most of those discussions occurred |
| | under a confidential manner with |

| | |
|---|---|
| 1 | Judge Jones in mediation.  So, I - |
| 2 | - I'm not sure I have the liberty |
| 3 | to answer that.  But if you're |
| 4 | asking if we have had any |
| 5 | conversations amongst the debtor |
| 6 | team and the mediator with respect |
| 7 | to a potential path to satisfy |
| 8 | SIRs, yes, discussions have |
| 9 | certainly occurred. |
| 10 | ANDREW JIMENEZ, TRUSTEE:    Okay.  Mr. Lefkowitz, I'm going to |
| 11 | ask you questions about the |
| 12 | amended state -- Statement of |
| 13 | Financial Affairs on Docket No. |
| 14 | 811.  Um, let me know when you |
| 15 | have the document in front of you. |
| 16 | ISAAC LEFKOWITZ:         Yes. |
| 17 | ANDREW JIMENEZ, TRUSTEE:    Okay.  So, I'm going to if you -- |
| 18 | if you go to page 191 of two -- of |
| 19 | 225. |
| 20 | ISAAC LEFKOWITZ:         Say that again, one what? |
| 21 | ANDREW JIMENEZ, TRUSTEE:    191 of 225. |
| 22 | ISAAC LEFKOWITZ:         (MUMBLES). Yes. |
| 23 | ANDREW JIMENEZ, TRUSTEE:    Okay.  So here, you -- ah, the |
| 24 | debtor changed the answer to the |
| 25 | question on -- on question No. 13. |

| | | |
|---|---|---|
| 1 | | And the answer provides makes a |
| 2 | | reference to a SOFA 13 attachment. |
| 3 | ISAAC LEFKOWITZ: | Right. |
| 4 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, let's go to that |
| 5 | | attachment, I think that |
| 6 | | attachment starts at page 220 of |
| 7 | | 225. |
| 8 | ISAAC LEFKOWITZ: | Yeah, I got it. |
| 9 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So ah -- question 13 ask |
| 10 | | about transfers not already listed |
| 11 | | on -- on -- on this statement. |
| 12 | | And here we have a list of -- of |
| 13 | | transfers.  So, let's start with |
| 14 | | ah, can you please tell me what is |
| 15 | | ah, AmerisourceBergen? |
| 16 | ISAAC LEFKOWITZ: | AmerisourceBergen. |
| 17 | | AmerisourceBergen is ah, one of |
| 18 | | the largest, ah, pharmaceutical |
| 19 | | wholesalers in the country. |
| 20 | ANDREW JIMENEZ, TRUSTEE: | What -- those transfers, what was |
| 21 | | the purpose of those transfers to |
| 22 | | AmerisourceBergen? |
| 23 | ISAAC LEFKOWITZ: | Those were ah, invoices that the |
| 24 | | debtor incurred or -- out the a, |
| 25 | | Michigan contract for |

| | |
|---|---|
| 1 | pharmaceuticals for inmates. |
| 2 ANDREW JIMENEZ, TRUSTEE: | And the relationship with ah, |
| 3 | AmerisourceBergen is -- is ah, |
| 4 | identified as a vendor.  Um, |
| 5 | that's the only connection or |
| 6 | relationship ah, ah, with the |
| 7 | debtor? |
| 8 ISAAC LEFKOWITZ: | Correct. |
| 9 ANDREW JIMENEZ, TRUSTEE: | Do -- do you ah, individually, do |
| 10 | you have any connection with or |
| 11 | relationship with |
| 12 | AmerisourceBergen? |
| 13 ISAAC LEFKOWITZ: | No. |
| 14 AARON KAUFMAN: | Mr. Jimenez, this Aaron Kaufman. |
| 15 | Can -- you just clarify what you |
| 16 | mean by relationship with |
| 17 | AmerisourceBergen -- |
| 18 ANDREW JIMENEZ, TRUSTEE: | Yes.  And then -- |
| 19 AARON KAUFMAN: | -- then we might -- |
| 20 ANDREW JIMENEZ, TRUSTEE: | -- for example -- |
| 21 AARON KAUFMAN: | -- um, an ownership interest or -- |
| 22 ANDREW JIMENEZ, TRUSTEE: | -- have -- have -- have you been |
| 23 | an officer or director or |
| 24 | shareholder or an employee of |
| 25 | AmerisourceBergen? |

| | | |
|---|---|---|
| 1 | ISAAC LEFKOWITZ: | No. |
| 2 | ANDREW JIMENEZ, TRUSTEE: | And have you had any -- |
| 3 | ISAAC LEFKOWITZ: | AmerisourceBer -- |
| 4 | ANDREW JIMENEZ, TRUSTEE: | Go ahead; I'm sorry. |
| 5 | ISAAC LEFKOWITZ: | Amerisource -- AmerisourceBergen |
| 6 | | is a public company known as ABC. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | And of those connections that, you |
| 8 | | know, those --- those examples |
| 9 | | that I -- ex -- just described to |
| 10 | | you of officer, director, |
| 11 | | shareholder, employee, manager, |
| 12 | | have you -- have you had any of |
| 13 | | those connections with Amerisource |
| 14 | | in the past? |
| 15 | ISAAC LEFKOWITZ: | None. |
| 16 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Um, can you tell us um, |
| 17 | | what is DG Realty? |
| 18 | ISAAC LEFKOWITZ: | DG Realty is ah, a company ah, |
| 19 | | that is related same principals |
| 20 | | (INAUDIBLE) DG Realty are |
| 21 | | principals of grandfather |
| 22 | | companies of the debtor. |
| 23 | ANDREW JIMENEZ, TRUSTEE: | Okay.  So, I guess, that -- that |
| 24 | | answer -- my next question was um, |
| 25 | | DG Realty is identified as an |

| | |
|---|---|
| 1 | | affiliate of the debtor and I |
| 2 | | wanted you to explain what is the |
| 3 | | connection between DG Realty and |
| 4 | | the debtor. |
| 5 | ISAAC LEFKOWITZ: | So, the prince -- principals, who |
| 6 | | own DG Realty also are equity |
| 7 | | owners of entities that are equity |
| 8 | | holders of the debtor. |
| 9 | ANDREW JIMENEZ, TRUSTEE: | Can you ah -- what are those -- |
| 10 | | what are those entities that DG |
| 11 | | Realty has an equity interest that |
| 12 | | in turn are equity owners of the |
| 13 | | debtor? |
| 14 | ISAAC LEFKOWITZ: | Oh, you misunderstand -- stood me, |
| 15 | | ah, Mr. Hernandez [SIC].  So, DG |
| 16 | | Realty is not an equity owner of |
| 17 | | any entity of the debtor.  I'm |
| 18 | | saying we call it affiliate |
| 19 | | because some of the same |
| 20 | | principals are members of the same |
| 21 | | entity. |
| 22 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Um, -- okay.  I thought |
| 23 | | you said a moment ago that DG |
| 24 | | Realty had equity interest in |
| 25 | | other entities that in turn were - |

```
1                              -- had equity interest on the
2                              debtor.
3    ISAAC LEFKOWITZ:          That's not correct.
4    ANDREW JIMENEZ, TRUSTEE:  What were um, this transfer to DG
5                              Realty; what was the purpose of
6                              those transfers?
7    ISAAC LEFKOWITZ:          So, DG Realty made a 7 1/2 million
8                              dollar loan to the debtor, and the
9                              debtor paid it back.
10   ANDREW JIMENEZ, TRUSTEE:  When was that loan made to the
11                             debtor?
12   ISAAC LEFKOWITZ:          On the same day.
13   ANDREW JIMENEZ, TRUSTEE:  On -- what -- what same date are
14                             you referring to?
15   ISAAC LEFKOWITZ:          12-27-21.
16   ANDREW JIMENEZ, TRUSTEE:  So, you're saying that DG Realty
17                             loan on -- on -- on December 27,
18                             20 -- 2021 loaned 7 -- $7,500,000
19                             to the debtor and the debtor
20                             repaid on the same date?
21   ISAAC LEFKOWITZ:          Correct.
22   ANDREW JIMENEZ, TRUSTEE:  And what was the purpose of that
23                             loan?
24   ISAAC LEFKOWITZ:          (INAUDIBLE) -- the debtor at that
25                             point was named Corizon um, they
```

| | |
|---|---|
| 1 | were gonna use it as a bond |
| 2 | collateral for some contracting. |
| 3 | But then it all got (INAUDIBLE) |
| 4 | and they sent the money back. |
| 5 | ANDREW JIMENEZ, TRUSTEE: | Mr. Lefkowitz, are you an officer, |
| 6 | director, manager, shareholder, or |
| 7 | shareholder of DG Realty? |
| 8 | ISAAC LEFKOWITZ: | No. |
| 9 | ANDREW JIMENEZ, TRUSTEE: | Have you had any of those |
| 10 | connections in the past? |
| 11 | ISAAC LEFKOWITZ: | No. |
| 12 | ANDREW JIMENEZ, TRUSTEE: | Do you have any -- any other kind |
| 13 | of connection or relationship with |
| 14 | DG Realty? |
| 15 | ISAAC LEFKOWITZ: | I know the folks from DG Realty. |
| 16 | ANDREW JIMENEZ, TRUSTEE: | And do you have any relationship |
| 17 | with the folks from DG Realty? |
| 18 | ISAAC LEFKOWITZ: | (INAUDIBLE) enough that ah, we |
| 19 | needed $7,500,000 for collateral |
| 20 | to pick up a phone and get the |
| 21 | loan done.  But then once we |
| 22 | decided we don't need it, we |
| 23 | returned the money. |
| 24 | ANDREW JIMENEZ, TRUSTEE: | In the -- in the -- in this list, |
| 25 | you also, the debtor also |

| | |
|---|---|
| 1 | disclosed ah, transfers to |
| 2 | Perigrove.  What is Perigrove? |
| 3 ISAAC LEFKOWITZ: | Perigrove is the same -- same |
| 4 | case, the principals of Perigrove |
| 5 | have an equity interest in |
| 6 | entities that ultimately own the |
| 7 | debtor.  And this too, was a loan |
| 8 | to the debtor; this is a payment |
| 9 | back. |
| 10 ANDREW JIMENEZ, TRUSTEE: | What was -- what was that loan |
| 11 | used for? |
| 12 ISAAC LEFKOWITZ: | Ah, cash operations.  To float |
| 13 | their cash. |
| 14 ANDREW JIMENEZ, TRUSTEE: | Can you please repeat that? |
| 15 ISAAC LEFKOWITZ: | The debtor needed cash to float |
| 16 | their cash flow.  The Perigrove |
| 17 | loaned them money and the Per -- |
| 18 | and the debtor paid it back. |
| 19 | Twice, once for 5 million and once |
| 20 | for 1 million. |
| 21 ANDREW JIMENEZ, TRUSTEE: | Do you have any relationship or |
| 22 | connection with Perigrove? |
| 23 ISAAC LEFKOWITZ: | I'm a director of Perigrove. |
| 24 ANDREW JIMENEZ, TRUSTEE: | Since when? |
| 25 ISAAC LEFKOWITZ: | I don't know the exact date, but - |

| | | |
|---|---|---|
| 1 | | - the last few years. |
| 2 | ANDREW JIMENEZ, TRUSTEE: | When you say last few years, what |
| 3 | | -- what does that mean?  2020? |
| 4 | | 2021? |
| 5 | ISAAC LEFKOWITZ: | Mm -- right about 2019, 2020; |
| 6 | | correct. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | In this -- in this attachment um, |
| 8 | | the debtor also list Pharmacorr as |
| 9 | | an affiliate.  What is Pharmacorr, |
| 10 | | LLC? |
| 11 | ISAAC LEFKOWITZ: | Pharmacorr is ah, (INAUDIBLE) |
| 12 | | pharmacy that provides |
| 13 | | pharmaceuticals, prescription |
| 14 | | pharmaceuticals to incarcerated |
| 15 | | inmates. |
| 16 | ANDREW JIMENEZ, TRUSTEE: | And can you explain the |
| 17 | | relationship with the debtor of |
| 18 | | Pharmacorr with the debtor? |
| 19 | ISAAC LEFKOWITZ: | It's a vendor. Pharmacorr is a |
| 20 | | vendor to the debtor. |
| 21 | ANDREW JIMENEZ, TRUSTEE: | Pharmacorr is not an affiliate of |
| 22 | | the debtor? |
| 23 | ISAAC LEFKOWITZ: | It is an affiliate, but also a |
| 24 | | vendor. |
| 25 | ANDREW JIMENEZ, TRUSTEE: | Okay. |

| 1 | ISAAC LEFKOWITZ: | Pharmacorr sells to the debtor, |
| 2 | | pharmaceuticals. |
| 3 | ANDREW JIMENEZ, TRUSTEE: | Okay.  Explain to me how |
| 4 | | Pharmacorr is an affiliate of the |
| 5 | | debtor. |
| 6 | ISAAC LEFKOWITZ: | Principals and the Pharmacorr may |
| 7 | | also have an equity position in |
| 8 | | the entities that ultimately are |
| 9 | | equity holders in the debtor. |
| 10 | ANDREW JIMENEZ, TRUSTEE: | Can you please name the principals |
| 11 | | that have an equity ah, interest |
| 12 | | on the debtor? |
| 13 | ISAAC LEFKOWITZ: | The principals in which entity? |
| 14 | ANDREW JIMENEZ, TRUSTEE: | Pharmacorr. |
| 15 | ISAAC LEFKOWITZ: | Ah, Abraham Goldberger and David |
| 16 | | Gefner. |
| 17 | ANDREW JIMENEZ, TRUSTEE: | Abraham, what is -- Abraham's last |
| 18 | | name? |
| 19 | ISAAC LEFKOWITZ: | Gold -- Goldberger. |
| 20 | ANDREW JIMENEZ, TRUSTEE: | And then the other individual you |
| 21 | | name was David? |
| 22 | ISAAC LEFKOWITZ: | David Gefner. |
| 23 | ANDREW JIMENEZ, TRUSTEE: | What are the names of the |
| 24 | | principals in Perigrove that have |
| 25 | | an equity interest on the debtor? |

| | | |
|---|---|---|
| 1 | ISAAC LEFKOWITZ: | Same individuals. |
| 2 | ANDREW JIMENEZ, TRUSTEE: | Abraham Goldberger and David |
| 3 | | Gefner? |
| 4 | ISAAC LEFKOWITZ: | Correct.  They don't have equity |
| 5 | | in the debtor, they have equity in |
| 6 | | -- entities, which ultimately |
| 7 | | these entities are equity holders |
| 8 | | in the debtor. |
| 9 | ANDREW JIMENEZ, TRUSTEE: | 'Kay.  What are the name of the |
| 10 | | principals of the DG Realty that |
| 11 | | have equity interest on entities |
| 12 | | that own the debtor? |
| 13 | ISAAC LEFKOWITZ: | Same individuals. |
| 14 | ANDREW JIMENEZ, TRUSTEE: | Abraham Goldberger and David |
| 15 | | Gefner? |
| 16 | ISAAC LEFKOWITZ: | Right. |
| 17 | ANDREW JIMENEZ, TRUSTEE: | And then you also list ah, M2 |
| 18 | | LoanCo ah, and buyers transfers to |
| 19 | | M2 LoanCo.  Ah, what was -- what |
| 20 | | were the -- the -- what was the |
| 21 | | purpose of those transfers to M2 |
| 22 | | LoanCo? |
| 23 | ISAAC LEFKOWITZ: | M2 LoanCo is a secured lender to |
| 24 | | the debtor.  Or was a secured |
| 25 | | lender to the debtor. |

| | |
|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: Um, before -- let me go back ah, |
| 2 | one moment.  Are you -- we're |
| 3 | going back to Pharmacorr.  Are you |
| 4 | an officer, director, manager, |
| 5 | shareholder of Pharmacorr? |
| 6 | ISAAC LEFKOWITZ: I'm a director. |
| 7 | ANDREW JIMENEZ, TRUSTEE: Since when? |
| 8 | ISAAC LEFKOWITZ: Since ah, December of '21. |
| 9 | ANDREW JIMENEZ, TRUSTEE: So, going back to M2 LoanCo, um, |
| 10 | those transfers -- so -- those |
| 11 | transfers, what was the purpose of |
| 12 | those transfers?  Was it to ah, |
| 13 | repay a loan? |
| 14 | ISAAC LEFKOWITZ: Some of it was repayment, some of |
| 15 | it was -- was interest payments, |
| 16 | some of it were fees.  I don't |
| 17 | have the details in front of me. |
| 18 | But it was all related to the |
| 19 | loan. |
| 20 | ANDREW JIMENEZ, TRUSTEE: And what were those loans used |
| 21 | for? |
| 22 | ISAAC LEFKOWITZ: For the cash operations for the |
| 23 | debtor. |
| 24 | ANDREW JIMENEZ, TRUSTEE: And you are a director of M2 |
| 25 | LoanCo; correct? |

| | | |
|---|---|---|
| 1 | ISAAC LEFKOWITZ: | Correct. |
| 2 | ANDREW JIMENEZ, TRUSTEE: | Since when? |
| 3 | ISAAC LEFKOWITZ: | Since um, (INAUDIBLE) '21. |
| 4 | ANDREW JIMENEZ, TRUSTEE: | I didn't hear you, could you |
| 5 | | please repeat that? |
| 6 | ISAAC LEFKOWITZ: | December of 2021. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | Mr. Lefkowitz, why -- why didn't |
| 8 | | debtor disclose these transfers -- |
| 9 | | earlier? |
| 10 | ISAAC LEFKOWITZ: | I don't know the answer, you know. |
| 11 | | We're -- we were pumping |
| 12 | | information from all different |
| 13 | | directions.  And, you know, as the |
| 14 | | information came in, we amended |
| 15 | | the schedules. |
| 16 | ANDREW JIMENEZ, TRUSTEE: | In a previous 341 Meeting, you |
| 17 | | were asked about Perigrove |
| 18 | | relationship with the debtor, and |
| 19 | | you answered that there was no |
| 20 | | relationship with the debtor. |
| 21 | ISAAC LEFKOWITZ: | There is no relationship with the |
| 22 | | debtor. |
| 23 | ANDREW JIMENEZ, TRUSTEE: | Both (CROSSTALK) -- |
| 24 | ISAAC LEFKOWITZ: | The only relationship there is -- |
| 25 | ANDREW JIMENEZ, TRUSTEE: | -- didn't we just discuss that ah, |

| | | |
|---|---|---|
| 1 | | Perigrove is an affiliate of the |
| 2 | | debtor? |
| 3 | ISAAC LEFKOWITZ: | We call it an affiliate, but it's |
| 4 | | not an --- you're not a real |
| 5 | | affiliate because Perigrove |
| 6 | | doesn't own anything -- |
| 7 | | (INAUDIBLE) debtor owns, it's just |
| 8 | | ultimately that a principals are |
| 9 | | ah, some of them are same |
| 10 | | principals and they made a loan to |
| 11 | | the debtor, and that's why we |
| 12 | | amended the schedule and we |
| 13 | | disclosed it now. But they're |
| 14 | | really not an ongoing affiliate. |
| 15 | ANDREW JIMENEZ, TRUSTEE: | In a previous meeting of |
| 16 | | creditors, you were asked if ah, |
| 17 | | there were any transfers, ah, to |
| 18 | | Perigrove.  And you answered that |
| 19 | | there were none.  Why did you give |
| 20 | | that answer then? |
| 21 | ISAAC LEFKOWITZ: | (CROSSTALK) -- because there is |
| 22 | | two different Perigroves.  There |
| 23 | | is a Perigrove that owns the |
| 24 | | equity in the debtor, and there is |
| 25 | | a Perigrove that just was a |

|    |                              |                                                  |
|----|------------------------------|--------------------------------------------------|
| 1  |                              | lender.  There's two different                   |
| 2  |                              | entities.  So, in the previous                   |
| 3  |                              | meeting, we were discussing the                  |
| 4  |                              | entity that owns the equity                      |
| 5  |                              | whether there were any transfers.                |
| 6  |                              | And the answer was none.  But then               |
| 7  |                              | there's another Perigrove that                   |
| 8  |                              | acted as a lender, so we amended                 |
| 9  |                              | the schedule right now.                          |
| 10 | ANDREW JIMENEZ, TRUSTEE:     | So, how do you distinguish the two               |
| 11 |                              | Perigroves?                                      |
| 12 | ISAAC LEFKOWITZ:             | Beg your pardon?                                 |
| 13 | ANDREW JIMENEZ, TRUSTEE:     | How do you distinguish one --                    |
| 14 | ISAAC LEFKOWITZ:             | (CROSSTALK) --                                   |
| 15 | ANDREW JIMENEZ, TRUSTEE:     | -- how do you distinguish one                    |
| 16 |                              | Perigrove from the other                         |
| 17 |                              | Perigrove?                                       |
| 18 | ISAAC LEFKOWITZ:             | Ah, the other Perigrove in the                   |
| 19 |                              | previous meeting was called                      |
| 20 |                              | Perigrove 1018 and this is called                |
| 21 |                              | just Perigrove.                                  |
| 22 | ANDREW JIMENEZ, TRUSTEE:     | At this time, I'm going to um,                   |
| 23 |                              | allow creditors ah, to ask                       |
| 24 |                              | questions.  I'll start with Mr.                  |
| 25 |                              | ah, Ian Cross.  Do you have any                  |

| | |
|---|---|
| 1 | questions for the debtor? |
| 2 | IAN CROSS:                          (NO VERBAL RESPONSE HEARD). |
| 3 | ANDREW JIMENEZ, TRUSTEE:    Mr. Cross are you on the call? |
| 4 | IAN CROSS:                          Yes, I am.  Sorry, I was muted. |
| 5 | ANDREW JIMENEZ, TRUSTEE:    Go ahead, Mr. Cross.  Do you have |
| 6 |                                           any questions for the debtor? |
| 7 | IAN CROSS:                          So, ah, (CROSSTALK) -- did DG |
| 8 |                                           Realty refer to DG Realty |
| 9 |                                           Management, LLC under the limited |
| 10 |                                           liability company? |
| 11 | ISAAC LEFKOWITZ:                Right. |
| 12 | IAN CROSS:                          And that entity has two members, |
| 13 |                                           who are -- |
| 14 | ANDREW JIMENEZ, TRUSTEE:    Mr. -- Mr. -- Mr. Cross? |
| 15 | IAN CROSS:                          -- David Gefner and Abraham |
| 16 |                                           Goldberger? |
| 17 | ANDREW JIMENEZ, TRUSTEE:    Mr. Cross?  I'm sorry to |
| 18 |                                           interrupt.  Ah, I -- I -- I think |
| 19 |                                           -- I -- I hear you ah, very far. |
| 20 |                                           I don't know if -- if you have a - |
| 21 |                                           - you're using the speaker phone, |
| 22 |                                           but to the extent that you could |
| 23 |                                           bring the phone closer to you or |
| 24 |                                           use a headset, that might help, |
| 25 |                                           ah, improve the -- the quality of |

```
 1                              the sound.
 2   IAN CROSS:                 Okay.  How's that?
 3   ANDREW JIMENEZ, TRUSTEE:   Okay, a little better.  Go ahead.
 4                              Thank you.
 5   IAN CROSS:                 Okay.  Um, so, I see at the bottom
 6                              of the Attachment 13, there's a
 7                              note that says, "During the time
 8                              period, these affiliate transfers
 9                              were made.  Debtor also received
10                              $23,800,000 from these parties".
11                              Does that figure include the 7.5
12                              million loan that DG Realty
13                              Management, LLC made to the debtor
14                              on 12/27/21?
15   ISAAC LEFKOWITZ:           Yes.
16   IAN CROSS:                 Does that figure include --
17   AARON KAUFMAN:             Hold -- hold -- hold on, hold on.
18                              This -- this is Aaron Kaufman.  I
19                              -- I wanna clarify something, Mr.
20                              Cross.  When you say "include",
21                              are you -- are you -- can you
22                              clarify that, 'cause I -- I'm not
23                              sure the question or the answer is
24                              clear.
25   IAN CROSS:                 So, we have a note that says
```

| | |
|---|---|
| 1 | during the time period, these |
| 2 | affiliate's transfers were made, |
| 3 | the debtor also received |
| 4 | $23,800,000 from these parties. |
| 5 | And I'm asking if that $23,800,000 |
| 6 | figure include the 7.5 million |
| 7 | loan that Mr. Lefkowitz testified |
| 8 | DG Reality made to the debtor on |
| 9 | 12/27/21. |
| 10 | AARON KAUFMAN:                 Right.  So, you're -- you're |
| 11 | question -- just if I'm |
| 12 | understanding what you're asking |
| 13 | is are you asking if the 7 1/2 |
| 14 | million is on top of the 23.8 |
| 15 | million that was received by the |
| 16 | debtor or ah, or are you asking |
| 17 | what -- what exactly are you |
| 18 | asking?  (STAMMERS) -- I -- I can |
| 19 | kind of tell you -- |
| 20 | IAN CROSS:                     I'm asking -- |
| 21 | AARON KAUFMAN:                 -- the -- the creditors -- |
| 22 | IAN CROSS:                     -- if in the 23. -- |
| 23 | AARON KAUFMAN:                 -- (CROSSTALK) the debits or |
| 24 | (INAUDIBLE). |
| 25 | ANDREW JIMENEZ, TRUSTEE:       Miss -- m -- Mr. Kaufman, this is |

|    |                            |                                              |
|----|----------------------------|----------------------------------------------|
| 1  |                            | Andrew Jimenez. I think the                  |
| 2  |                            | question was clear was whether the           |
| 3  |                            | 7.5 is included in the 23,800,000.           |
| 4  |                            | And please --                                |
| 5  | AARON KAUFMAN:             | Well, it's not clear.  Because --            |
| 6  |                            | what -- what's above the line are            |
| 7  |                            | transfers out transfers in are not           |
| 8  |                            | (CROSSTALK) --                               |
| 9  | ANDREW JIMENEZ, TRUSTEE:   | Mr. -- Mr. Kaufman, then do -- you           |
| 10 |                            | need to let the witness answer the           |
| 11 |                            | question.  Because those are the             |
| 12 |                            | notes in this schedules. And he --           |
| 13 | AARON KAUFMAN:             | (CROSSTALK) --                               |
| 14 | ANDREW JIMENEZ, TRUSTEE:   | -- and -- and the question is                |
| 15 |                            | being asked to clarify what --               |
| 16 |                            | what does that note mean; let the            |
| 17 |                            | witness answer, please.                      |
| 18 | ISAAC LEFKOWITZ:           | So, we have a schedule here of               |
| 19 |                            | outgoing money from the debtor to            |
| 20 |                            | various affiliates with no total.            |
| 21 |                            | Then there is a note that these              |
| 22 |                            | affiliates also transferred in to            |
| 23 |                            | the debtor a total of 23,800,000             |
| 24 |                            | dollars.                                     |
| 25 | IAN CROSS:                 | I understand that.  I'm asking if            |

|    |                    |                                    |
|----|--------------------|------------------------------------|
| 1  |                    | the $23,800,000 figure includes    |
| 2  |                    | the 7.5-million-dollar loan that   |
| 3  |                    | you testified DG Realty made to    |
| 4  |                    | the debtor on 12/27/21.            |
| 5  | ISAAC LEFKOWITZ:   | I believe so.                      |
| 6  | IAN CROSS:         | Okay. Does the $23,800,000 figure  |
| 7  |                    | includes amounts funded to the     |
| 8  |                    | debtor by M2 LoanCo under the      |
| 9  |                    | funding agreement?                 |
| 10 | ISAAC LEFKOWITZ:   | Believe so.  Oh, under the funding |
| 11 |                    | agreement?                         |
| 12 | IAN CROSS:         | Yeah.                              |
| 13 | ISAAC LEFKOWITZ:   | No.                                |
| 14 | IAN CROSS:         | Does it include amounts --         |
| 15 | ISAAC LEFKOWITZ:   | Under the fund --                  |
| 16 | IAN CROSS:         | -- advanced to the debtor a        |
| 17 |                    | unsecured creditor in excess of    |
| 18 |                    | funding agreement after the date   |
| 19 |                    | of the divisional merger?          |
| 20 | ISAAC LEFKOWITZ:   | I don't have that information in    |
| 21 |                    | front of me, I don't have the      |
| 22 |                    | schedule of the 23,800 in front of |
| 23 |                    | me with the date and sources.  So, |
| 24 |                    | I can't respond to it.             |
| 25 | IAN CROSS:         | Well -- when the debtor made these |

```
 1                               payments to M2 LoanCo, did the
 2                               payments go through Cortland
 3                               Capital Market Services?
 4  ISAAC LEFKOWITZ:             Don't know.
 5  IAN CROSS:                   You don't know?
 6  ISAAC LEFKOWITZ:             I don't know sitting here to see
 7                               how the funds went.
 8  IAN CROSS:                   Did the debtor receive credits for
 9                               this loan balance with M2 LoanCo
10                               when it made these payments?
11  ISAAC LEFKOWITZ:            If it was made as a loan payment.
12                               But not all of it is loan payment.
13  IAN CROSS:                   Oh -- which ones are loan
14                               payments?
15  ISAAC LEFKOWITZ:            I don't know.  I don't have the
16                               details --
17  IAN CROSS:                   What other kinds of payments would
18                               the debtor be making to M2 LoanCo?
19  ISAAC LEFKOWITZ:            Interest payments, penalty
20                               payments, extension fee payments.
21                               Renewal payments.  Could be many
22                               different things.
23  IAN CROSS:                   All right.  Let's take for example
24                               the 1-million-dollar payment from
25                               05/17/22.  What was that for?
```

| | | |
|---|---|---|
| 1 | ISAAC LEFKOWITZ: | (CROSSTALK) -- I don't know the |
| 2 | | detail behind it. |
| 3 | IAN CROSS: | Do you know the detail behind the |
| 4 | | 03/08/22 payment for 10 million |
| 5 | | dollars? |
| 6 | ISAAC LEFKOWITZ: | I don't know the detail of any on |
| 7 | | this list to M2 LoanCo to be able |
| 8 | | to tell you here.  I don't have |
| 9 | | the -- the backup details here. |
| 10 | IAN CROSS: | Now -- in the divisional merger, |
| 11 | | was the debtor relieved of some |
| 12 | | secured debt owed to M2 LoanCo? |
| 13 | ISAAC LEFKOWITZ: | (INAUDIBLE) when? |
| 14 | IAN CROSS: | Was the debtor relieved of some |
| 15 | | secured debt to M2 LoanCo in the |
| 16 | | divisional merger? |
| 17 | ISAAC LEFKOWITZ: | Yes. |
| 18 | IAN CROSS: | What was the balance of the |
| 19 | | secured debt that the debtor was |
| 20 | | relieved of on that date? |
| 21 | ISAAC LEFKOWITZ: | I don't know the exact number |
| 22 | | (NOSIEY BACKGROUND) but it was |
| 23 | | approximately (INAUDIBLE). |
| 24 | IAN CROSS: | Were you on the board of the |
| 25 | | debtor in February of 2022? |

| | | |
|---|---|---|
| 1 | ISAAC LEFKOWITZ: | Yes. |
| 2 | IAN CROSS: | And was there a presentation made |
| 3 | | to the board of the debtor on |
| 4 | | February 23rd, 2022 by FTI? |
| 5 | ISAAC LEFKOWITZ: | By who? |
| 6 | IAN CROSS: | FTI Consultants. (CROSSTALK) -- |
| 7 | ISAAC LEFKOWITZ: | I know FTI -- |
| 8 | AARON KAUFMAN: | Mr. Cross, this is Aaron Kaufman. |
| 9 | | Ah, this is Aaron Kaufman.  I'm |
| 10 | | interjecting just because you're |
| 11 | | going well beyond what's in the |
| 12 | | schedules, beyond the schedules |
| 13 | | and surface (INAUDIBLE).  Yeah, if |
| 14 | | you have additional questions here |
| 15 | | about these transfers, go ahead |
| 16 | | and ask 'em, I think they mostly |
| 17 | | been asked.  But if you wanna ask |
| 18 | | -- |
| 19 | IAN CROSS: | I agree.  This relates to the -- |
| 20 | AARON KAUFMAN: | -- if you take discovery -- |
| 21 | IAN CROSS: | -- 03/08/22 (CROSSTALK). |
| 22 | AARON KAUFMAN: | -- see the (CROSSTALK) separately. |
| 23 | | Hold on, I think we talked over |
| 24 | | each other.  If you wanna take |
| 25 | | additional discovery beyond the |

|   |   |
|---|---|
| 1 | | scope of what's in this list, |
| 2 | | let's -- let's discuss that off -- |
| 3 | | off -- offline and ah, and if you |
| 4 | | wanna (INAUDIBLE) some additional |
| 5 | | discovery we can do that.  I know |
| 6 | | you have a pending trust in |
| 7 | | motion, and -- and so this isn't |
| 8 | | the appropriate venue for taking |
| 9 | | discovery for that motion, we can |
| 10 | | do that separately. |
| 11 | IAN CROSS: | Well, this -- this line of |
| 12 | | questioning relates to the 3-8-22 |
| 13 | | transfer and I'm trying to |
| 14 | | understand whether that transfer |
| 15 | | reduced the loan balance. |
| 16 | AARON KAUFMAN: | Well, ask that question. |
| 17 | IAN CROSS: | So, I understand Mr. Lefkowitz |
| 18 | | that there was a presentation made |
| 19 | | to the Corizon board of directors |
| 20 | | on 02/23/22 of which FTI |
| 21 | | represented that the loan balance |
| 22 | | owed to M2 LoanCo was 97.8 million |
| 23 | | dollars.  Did that occur? |
| 24 | ISAAC LEFKOWITZ: | Where is this ah, presentation |
| 25 | | mentioned in those documents? |

```
 1   IAN CROSS:                 I'm asking you if it happened.

 2                              'Cause you said you are on the

 3                              board at that time.

 4   ISAAC LEFKOWITZ:           But I thought we're dealing with

 5                              the document here?  So, if you're

 6                              referring to something, show me to

 7                              which page number, so I can refer

 8                              to it -- you're giving me dates

 9                              and places and times and people;

10                              what are you referring to?

11   IAN CROSS:                 I'm trying to figure out if the

12                              loan balance went down by 10

13                              million, as a result of the (NOISY

14                              BACKGROUND) 03/08/22 payment from

15                              the debtor to M2 LoanCo.

16   ISAAC LEFKOWITZ:           I told you that I don't have the

17                              underlying details in front of me

18                              behind it.  This is a schedule, an

19                              amended schedule with a list of

20                              affiliate payments.  Anything

21                              that's -- in the detail of it, I

22                              don't have in front of me, unless

23                              you can show me in the document

24                              where it says.

25   IAN CROSS:                 The members of -- Perigrove, LLC,
```

| | |
|---|---|
| 1 | | were they ah, -- directed of the |
| 2 | | debtor on 04/12/22? |
| 3 | AARON KAUFMAN: | Ah, again, Mr. Cross, Mr. Jimenez |
| 4 | | has already explored a lot of this |
| 5 | | and -- and I -- I gave him a lot |
| 6 | | of leeway.  You have a trustee |
| 7 | | motion that's pending.  There's a |
| 8 | | contested matter that's pending. |
| 9 | | This is not the appropriate venue |
| 10 | | to take discovery on that motion. |
| 11 | | This is the appropriate time to |
| 12 | | ask questions about what's on the |
| 13 | | schedule in SOFA.  If you have |
| 14 | | questions beyond that, let's talk |
| 15 | | offline and we can discuss some |
| 16 | | ah, some separate deposition |
| 17 | | dates. |
| 18 | IAN CROSS: | All right.  We'll talk |
| 19 | | (INAUDIBLE). |
| 20 | ANDREW JIMENEZ, TRUSTEE: | Mr. Cross do you have additional - |
| 21 | | - |
| 22 | IAN CROSS: | Okay.  I don't have further. |
| 23 | ANDREW JIMENEZ, TRUSTEE: | -- do -- do you have additional |
| 24 | | questions? |
| 25 | IAN CROSS: | I don't have none at this time. |

| | |
|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: Thank you, Mr. Cross. Ah, Mr. |
| 2 | Zluticky for the Unsecure ah, |
| 3 | Creditors Committee, do you have |
| 4 | any questions for the debtor? |
| 5 | NICK ZLUTICKY: I do, thank you. Ah, Mr. |
| 6 | Lefkowitz, my name is Nick |
| 7 | Zluticky, I represent the Official |
| 8 | Committee of Unsecured Creditors |
| 9 | um, in this bankruptcy case. Um, |
| 10 | I have some questions on |
| 11 | Attachment 13. So, I think that's |
| 12 | the -- the page that Mr. Cross is |
| 13 | focusing on, as well. It's page |
| 14 | 220 of 225, for the Amended |
| 15 | Statement of Financial Affairs. |
| 16 | Can you please let me know when |
| 17 | you arrived at that page? |
| 18 | ISAAC LEFKOWITZ: I am. |
| 19 | NICK ZLUTICKY: So -- DG Realty Management, LLC |
| 20 | loaned the debtor 7 1/2 million |
| 21 | dollars on 12/27/2021; is that |
| 22 | right? |
| 23 | ISAAC LEFKOWITZ: Right. |
| 24 | NICK ZLUTICKY: And into what bank account was |
| 25 | that money deposited? |

```
1    ISAAC LEFKOWITZ:          I don't have the details in front
2                             of me.
3    NICK ZLUTICKY:           Okay. Well, I'm gonna ask you to
4                             get them and produce them.  Um, --
5    ISAAC LEFKOWITZ:          Okay.
6    NICK ZLUTICKY:           -- so, the debtor um, -- so, this
7                             was pre-combination merger.  What
8                             entity received the money for DG
9                             Realty Management, LLC?
10   ISAAC LEFKOWITZ:          The debtor.
11   NICK ZLUTICKY:           Okay.  So, just so we understand
12                            each other, when we say -- when
13                            you say the "debtor", are you
14                            referring to Tehum Care Services,
15                            Inc. formally known as Corizon
16                            Health, Inc.?
17   ISAAC LEFKOWITZ:          Corizon.  At that time, it was not
18                            Tehum; at that time, it was
19                            Corizon.
20   NICK ZLUTICKY:           But you're aware that in 2022,
21                            there was a divisional merger that
22                            created two separate entities:
23                            Corizon Health, Inc. and CHSTX,
24                            Inc.; is that correct?
25   ISAAC LEFKOWITZ:          It is.
```

```
1    NICK ZLUTICKY:              Okay.  And you're aware that prior
2                               to the divisional merger, there
3                               was a combination merger under
4                               which several Corizon entities
5                               were -- combined and merged into a
6                               single entity that was known as
7                               Corizon Health, Inc.; correct?
8    ISAAC LEFKOWITZ:            Correct.  But I believe we went
9                               through this in the previous
10                              meeting, so, we're basically
11                              repeating ourselves from the
12                              previous meeting, but go ahead.
13   NICK ZLUTICKY:             And so, which entity did DG Realty
14                              Management, LLC loan the 7 1/2
15                              million dollars to on December 27,
16                              2021?
17   ISAAC LEFKOWITZ:           You'll get the same answer Nick.
18                              We have a schedule here that we
19                              compiled based on underlying
20                              information.  I don't have
21                              information in front of me of
22                              which entity sent to which entity.
23                              We know that DG Realty, and we
24                              have the backup paperwork sent
25                              money 7 1/2 million dollars on
```

| | | |
|---|---|---|
| 1 | | December 27th, to the debtor and |
| 2 | | they received it back. |
| 3 | NICK ZLUTICKY: | Well, I -- I think my confusion is |
| 4 | | that um, the purpose of the 341 |
| 5 | | Meeting is to um, address the |
| 6 | | amendments to the schedules of |
| 7 | | Statement of Financial Affairs. |
| 8 | | But what it sounds like I'm |
| 9 | | hearing is you don't have any |
| 10 | | additional information for the, |
| 11 | | (INAUDIBLE) 16 transfers on |
| 12 | | Attachment 13; is that right? |
| 13 | ISAAC LEFKOWITZ: | No, that's not right. |
| 14 | NICK ZLUTICKY: | Okay. |
| 15 | ISAAC LEFKOWITZ: | Because we provided -- we provided |
| 16 | | you the information amongst the |
| 17 | | hundreds of thousands of documents |
| 18 | | that you received, you also |
| 19 | | received the bank statements.  So, |
| 20 | | you probably information on your |
| 21 | | desk, I don't.  I just have the |
| 22 | | schedules here.  And I know what |
| 23 | | it's about.  But I don't have the |
| 24 | | underlying details.  But you have |
| 25 | | all that information and you know |

| | |
|---|---|
| 1 | | the ends and outs and where it |
| 2 | | came from and where it went.  So, |
| 3 | | I'm not trying to say that I don't |
| 4 | | have the information, I don't have |
| 5 | | the information in front of me. |
| 6 | | But the information was given to |
| 7 | | you and you have it. |
| 8 | NICK ZLUTICKY: | Was there a written loan agreement |
| 9 | | between DG Realty Management, LLC |
| 10 | | and whichever Corizon entity |
| 11 | | borrowed the money? |
| 12 | ISAAC LEFKOWITZ: | I'm not aware of it. |
| 13 | NICK ZLUTICKY: | Were there any other times that |
| 14 | | you can recall where DG Realty |
| 15 | | Management, LLC loaned money to |
| 16 | | Corizon entity? |
| 17 | ISAAC LEFKOWITZ: | Whatever is on the schedule. |
| 18 | NICK ZLUTICKY: | I'm asking other than what's in |
| 19 | | the Statement of Financial Affairs |
| 20 | | Attachment 13.  Is there any other |
| 21 | | transfer -- |
| 22 | ISAAC LEFKOWITZ: | I was (CROSSTALK) -- |
| 23 | NICK ZLUTICKY: | -- DG Realty, LLC?  DG Realty |
| 24 | | Management -- I think the best way |
| 25 | | to do this -- |

| | | |
|---|---|---|
| 1 | ISAAC LEFKOWITZ: | (CROSSTALK) -- |
| 2 | NICK ZLUTICKY: | -- is for me to finish my question |
| 3 | | and then I will be quiet, and you |
| 4 | | can answer. |
| 5 | ISAAC LEFKOWITZ: | Well, I think -- I think -- I |
| 6 | | think the best way to do it is, is |
| 7 | | to not to repeat the same |
| 8 | | questions that the Trustee asked |
| 9 | | me. |
| 10 | ANDREW JIMENEZ, TRUSTEE: | Mr. -- Mr. Lefkowitz -- |
| 11 | ISAAC LEFKOWITZ: | (CROSSTALK) --.  Mr. -- Mr. |
| 12 | | Jimenez asked me -- |
| 13 | ANDREW JIMENEZ, TRUSTEE: | -- Mr. Lefkowitz -- |
| 14 | ISAAC LEFKOWITZ: | -- Mr. Hernandez [SIC] asked me -- |
| 15 | ANDREW JIMENEZ, TRUSTEE: | -- hold on -- hold on a moment -- |
| 16 | ISAAC LEFKOWITZ: | -- let me -- let me -- let me |
| 17 | | finished. |
| 18 | ANDREW JIMENEZ, TRUSTEE: | -- Mr. Lefkowitz. No, hold on -- |
| 19 | | hold on -- |
| 20 | ISAAC LEFKOWITZ: | -- Just one second, one second -- |
| 21 | ANDREW JIMENEZ, TRUSTEE: | Because this -- this is a |
| 22 | | proceeding.  That the debtor is |
| 23 | | required to participate and |
| 24 | | cooperate.  So, I'm gonna ask you |
| 25 | | to please cooperate.  Just answer |

```
1                              the questions as you're being
2                              asked, don't argue with the person
3                              are asking you questions.  Even if
4                              you think it's being repetitive,
5                              you know, the creditors have a
6                              right to ask you questions.
7                              They're asking you questions that
8                              are relevant to the amendments
9                              that you recently filed, and that
10                             you signed under oath.  So, please
11                             cooperate so that these --
12   AARON KAUFMAN:            All right.  So --
13   ANDREW JIMENEZ, TRUSTEE:  - - proceedings can move forward.
14                             And just answer the questions and
15                             avoid engaging --
16   AARON KAUFMAN:            -- Mr. -- Mr. --
17   ANDREW JIMENEZ, TRUSTEE:  -- in conversation, avoid arguing
18                             --
19   ISAAC LEFKOWITZ:          (CROSSTALK) --
20   ANDREW JIMENEZ, TRUSTEE:  -- with the people asking you
21                             questions.
22   ISAAC LEFKOWITZ:          -- all I was gonna say, Mr.
23                             Hernandez [SIC] --
24   AARON KAUFMAN:            Let me -- let me -- hold on
25                             everyone.  This is Aaron Kaufman.
```

| | |
|---|---|
| 1 | Let me just interject real quick. |
| 2 | At -- at Mr. Jimenez, it's unfair |
| 3 | to suggest that the debtor is not |
| 4 | cooperating, this is the third |
| 5 | continued 341 Meeting.  We've |
| 6 | probably going on 8 or 9 hours |
| 7 | with questioning.  I understand |
| 8 | cred -- creditors have a right to |
| 9 | ask these questions.  We're doing |
| 10 | our best to answer within the |
| 11 | permission we have.  Um, we -- you |
| 12 | just asked about an hour's worth |
| 13 | of questions, and I did my best |
| 14 | not to get in the way.  These are |
| 15 | repetitive and it gets to the |
| 16 | point of feeling like Mr. |
| 17 | Lefkowitz is being harassed. |
| 18 | Let's try not to repeat questions |
| 19 | and Mr. Lefkowitz won't feel like |
| 20 | he's being harassed, and this will |
| 21 | go a lot smoother.  So, Mr. -- |
| 22 | with that, ah, Mr. Zluticky, go |
| 23 | ahead and ask your question, let's |
| 24 | -- let's try to get through this. |
| 25 | NICK ZLUTICKY:             Did DG Realty Management, LLC loan |

| | |
|---|---|
| 1 | money to any other Corizon entity |
| 2 | other than the singular 7 1/2- |
| 3 | million-dollar loan where the |
| 4 | repayment is listed on December |
| 5 | 27, 2021 on Attachment 13? |
| 6 | ISAAC LEFKOWITZ:     Attachment 13 is -- the detail of |
| 7 | what loans DG Realty was -- paid |
| 8 | and received from the debtor and |
| 9 | at this time, there is no |
| 10 | amendments to this exhibit.  It is |
| 11 | what it is in front of you. |
| 12 | NICK ZLUTICKY:     'Kay.  So, I'm going to repeat my |
| 13 | question, but not because it's |
| 14 | been asked before by anyone else, |
| 15 | it's because it's been asked |
| 16 | before by me and not answered. |
| 17 | Did DG Realty Management, LLC make |
| 18 | any other loans to any Corizon |
| 19 | entities other than the 7 1/2 |
| 20 | million-dollar loan that were |
| 21 | payments for which is listed on |
| 22 | Attachment 13? |
| 23 | ISAAC LEFKOWITZ:     I only have Attachment 13 in front |
| 24 | of me; I only know about |
| 25 | Attachment 13; at this time, there |

```
 1                                 is no amendments to Attachment 13;

 2                                 and Attachment 13 speaks for

 3                                 itself.  A single transaction.

 4   NICK ZLUTICKY:                Are you aware of any other

 5                                 transactions other than what's

 6                                 listed on Attachment 13?

 7   ISAAC LEFKOWITZ:              Question's been asked and answered

 8                                 numerous times, if um, if at this

 9                                 point, I wanna make an amendment

10                                 or is this a true amendment.  This

11                                 is a true amendment, there's a

12                                 single transaction with DG Realty,

13                                 and there is no other

14                                 transactions.

15   NICK ZLUTICKY:                What's the business of DG Realty?

16   ISAAC LEFKOWITZ:              You need to ask DG Realty.

17   NICK ZLUTICKY:                Do you know?

18   ISAAC LEFKOWITZ:              I'm not in a deposition, here.

19                                 I'm here to answer about the 341

20                                 Production Reports.

21   NICK ZLUTICKY:                So, you're saying, you're not

22                                 going to answer?

23   ISAAC LEFKOWITZ:              I'm not gonna answer anything

24                                 outside the scope of the -- these

25                                 reports; correct.  I'm not a
```

| | |
|---|---|
| 1 | director of DG Realty, I'm not an |
| 2 | officer, I'm not an employee -- |
| 3 | which questions were asked by the |
| 4 | Trustee whether I am and I |
| 5 | answered, no.  So, if you have any |
| 6 | questions about DG Realty, you can |
| 7 | go ahead and get the -- answers |
| 8 | from DG Realty.  You can ask me |
| 9 | about this transaction, and I can |
| 10 | give you the answer to this |
| 11 | transaction. |
| 12 | NICK ZLUTICKY:                Okay.  So, I understand that I'm |
| 13 | gonna need to go to DG Realty to |
| 14 | get some additional information, |
| 15 | I'll do that.  So, let's move to - |
| 16 | - Perigrove is listed as just one |
| 17 | word, Perigrove.  So, what |
| 18 | entities represented in those two |
| 19 | transactions listed on Attachment |
| 20 | 13? |
| 21 | ISAAC LEFKOWITZ:              It says in English, Perigrove. |
| 22 | NICK ZLUTICKY:                Is Perigrove a trademark?  Is it a |
| 23 | corporation?  Is it an LLC?  Is it |
| 24 | a trust? |
| 25 | ISAAC LEFKOWITZ:              An LLC. |

| | | |
|---|---|---|
| 1 | NICK ZLUTICKY: | Perigrove, LLC; is that correct? |
| 2 | ISAAC LEFKOWITZ: | Correct. |
| 3 | NICK ZLUTICKY: | In what state is it incorporated? |
| 4 | ISAAC LEFKOWITZ: | I -- don't have that information |
| 5 | | in front of me. |
| 6 | NICK ZLUTICKY: | Are you a member of Perigrove, |
| 7 | | LLC? |
| 8 | ISAAC LEFKOWITZ: | No. |
| 9 | NICK ZLUTICKY: | Who are the members of Perigrove, |
| 10 | | LLC? |
| 11 | ISAAC LEFKOWITZ: | That question has been asked and |
| 12 | | answered, and I'll answer it |
| 13 | | again.  It's Mr. David Gefner and |
| 14 | | Abraham Goldberger. |
| 15 | NICK ZLUTICKY: | Are there any members of |
| 16 | | Perigrove, LLC other than Mr. -- |
| 17 | | David Gefner and Mr. Abe |
| 18 | | Goldberger? |
| 19 | ISAAC LEFKOWITZ: | I don't know. |
| 20 | NICK ZLUTICKY: | I'm sorry, Mr. Lefkowitz, I |
| 21 | | believe that the end of your |
| 22 | | answer was cutoff; could you |
| 23 | | please repeat that answer? |
| 24 | ISAAC LEFKOWITZ: | I don't -- know. |
| 25 | NICK ZLUTICKY: | Thank you.  What is Perigrove, |

| | | |
|---|---|---|
| 1 | | LLC's relationship to Perigrove |
| 2 | | 1018, LLC? |
| 3 | ISAAC LEFKOWITZ: | Question's been asked, by Mr. |
| 4 | | Hernandez [SIC} and I answered |
| 5 | | that it has the same principals, |
| 6 | | as members. |
| 7 | NICK ZLUTICKY: | Perigrove 1018, LLC's members are |
| 8 | | Mr. David Gefner and Mr. Abe |
| 9 | | Goldberger; is that what you're |
| 10 | | saying? |
| 11 | ISAAC LEFKOWITZ: | (MUMBLES). |
| 12 | NICK ZLUTICKY: | Are there any other members of |
| 13 | | Perigrove 1018, LLC other than |
| 14 | | David Gefner and Abe Goldberger? |
| 15 | ISAAC LEFKOWITZ: | You will need to ask Perigrove |
| 16 | | 1018 that question. |
| 17 | NICK ZLUTICKY: | What is your relationship to |
| 18 | | Perigrove 1018, LLC? |
| 19 | ISAAC LEFKOWITZ: | I'm a director. |
| 20 | NICK ZLUTICKY: | 'Kay, so it sounds like I am |
| 21 | | asking them.  Who are the other |
| 22 | | members of Perigrove 1018, LLC? |
| 23 | AARON KAUFMAN: | Hold -- hold -- hold on.  Yeah, |
| 24 | | Mr. Zluticky, this is Aaron |
| 25 | | Kaufman for the record.  Ah, I -- |

| | |
|---|---|
| 1 | | I'm here on behalf of the debtor, |
| 2 | | Mr. Lefkowitz is here on behalf of |
| 3 | | the debtor.  I can't represent him |
| 4 | | in his capacity as the director of |
| 5 | | Perigrove, you know that.  I'm -- |
| 6 | | I'm going to instruct him in his |
| 7 | | capacity as the debtors |
| 8 | | representative here that at -- |
| 9 | | just because Perigrove counsels is |
| 10 | | not here that ah, it's probably |
| 11 | | best to not answer that.  Ah, I |
| 12 | | mean, he's welcome to, but from a |
| 13 | | debtors perspective, he -- he |
| 14 | | shouldn't be answer questions |
| 15 | | without Perigrove's counsel. |
| 16 | NICK ZLUTICKY: | About -- so, -- trying to -- |
| 17 | AARON KAUFMAN: | Your -- your -- your quest -- your |
| 18 | | -- yeah.  Your question just now |
| 19 | | was it sounds like I am asking |
| 20 | | Perigrove; you're not.  You're |
| 21 | | asking the debtor. |
| 22 | NICK ZLUTICKY: | 'Kay. |
| 23 | AARON KAUFMAN: | Um, and so and -- |
| 24 | NICK ZLUTICKY: | So -- |
| 25 | AARON KAUFMAN: | -- we know Perigrove's counsel is |

| | |
|---|---|
| 1 | not here. |
| 2 | NICK ZLUTICKY:       Correct.  So, Mr. Lefkowitz do you |
| 3 | know whether Perigrove 1018, LLC |
| 4 | has other members besides Mr. |
| 5 | David Gefner and Mr. Abe |
| 6 | Goldberger? |
| 7 | ISAAC LEFKOWITZ:     I'm not gonna answer without |
| 8 | Perigrove 1018's counsel |
| 9 | (INAUDIBLE).  And you know who she |
| 10 | is, Melissa Hayworth, so call |
| 11 | Melissa and organize either a |
| 12 | deposition or a meeting and we'll |
| 13 | confer. |
| 14 | NICK ZLUTICKY:       You had testified earlier that |
| 15 | Perigrove was a -- I think you |
| 16 | referred to it as a grandfather |
| 17 | company of the entities that owned |
| 18 | the debtor.  Do you describe what |
| 19 | you mean by that? |
| 20 | ISAAC LEFKOWITZ:     I did not say that Perigrove was a |
| 21 | grandfather; you said it, I didn't |
| 22 | say it. |
| 23 | NICK ZLUTICKY:       Ah, I'm going back to your |
| 24 | testimony earlier, you said the |
| 25 | principals or the principal of |

| | | |
|---|---|---|
| 1 | | grandfather companies of the |
| 2 | | debtor. |
| 3 | ISAAC LEFKOWITZ: | That is correct. |
| 4 | NICK ZLUTICKY: | What do you mean by grandfather |
| 5 | | companies? |
| 6 | ISAAC LEFKOWITZ: | But that's not what your question |
| 7 | | was.  Your question was Perigrove |
| 8 | | being a grandfather.  Perigrove is |
| 9 | | not a grandfather. |
| 10 | NICK ZLUTICKY: | What do you mean by grandfather |
| 11 | | companies of the debtor? |
| 12 | ISAAC LEFKOWITZ: | (INAUDIBLE) there is many levels |
| 13 | | of entities going up. |
| 14 | NICK ZLUTICKY: | And so -- are you saying further |
| 15 | | than what level up the chain you |
| 16 | | had referred to is a grandfather |
| 17 | | company? |
| 18 | ISAAC LEFKOWITZ: | I mean, anything one above is a |
| 19 | | father and then two above is a |
| 20 | | grandfather, three above -- |
| 21 | | grandfather, great grandfather, |
| 22 | | and on and on. |
| 23 | NICK ZLUTICKY: | 'Kay.  Is Perigrove, LLC lent |
| 24 | | money to the debtor any other |
| 25 | | times than the one listed when two |

| | |
|---|---|
| 1 | payments that was repaid in 2022? |
| 2 | ISAAC LEFKOWITZ: I'm only aware of this schedule. |
| 3 | NICK ZLUTICKY: There's several transfers where M2 |
| 4 | LoanCo is listed as the um, |
| 5 | recipient of the transfer on |
| 6 | Attachment 13; do you see that? |
| 7 | ISAAC LEFKOWITZ: Yes. |
| 8 | NICK ZLUTICKY: Were -- all of the transfers |
| 9 | listed made pursuant to the loan - |
| 10 | - the credit agreement between M2 |
| 11 | LoanCo and the debtor? |
| 12 | ISAAC LEFKOWITZ: Right. |
| 13 | NICK ZLUTICKY: And none of these transfers were |
| 14 | made for any purpose other than |
| 15 | repayment of the (INAUDIBLE) under |
| 16 | the credit agreement? |
| 17 | ISAAC LEFKOWITZ: Whatever -- whatever other |
| 18 | agreements they have with M2 |
| 19 | LoanCo same question that Mr. |
| 20 | Cross asked.  And payment -- in a |
| 21 | loan relationship, it's not just a |
| 22 | payment of a loan.  It's payment |
| 23 | of interest, payment of penalties, |
| 24 | payment of fees, payment -- |
| 25 | NICK ZLUTICKY: The payment of amounts due under |

```
1                            the loan documents; right?
2   ISAAC LEFKOWITZ:        That's correct.
3   NICK ZLUTICKY:          In the loan documents, there were
4                            form notices um, attached to the
5                            third amended in (INAUDIBLE)
6                            credit agreement to make payments
7                            of interest and prepayments of
8                            principal.  Do you have -- does
9                            the debtor have a records of those
10                           notices being sent along with
11                           these payments?
12  ISAAC LEFKOWITZ:        (INAUDIBLE).
13  NICK ZLUTICKY:          Um, who instructed the debtor to
14                           make these payments?
15  ISAAC LEFKOWITZ:        (INAUDIBLE).
16  NICK ZLUTICKY:          I'm -- I'm sorry, Mr. Lefkowitz, I
17                           didn't hear that answer.
18  ISAAC LEFKOWITZ:        You're asking a general question,
19                           I don't have a general answer.
20  NICK ZLUTICKY:          Did you instruct the debtor to
21                           make any of these payments to M2
22                           LoanCo?
23  ISAAC LEFKOWITZ:        I don't recall the underlying
24                           details of these transfers.
25  NICK ZLUTICKY:          Were these -- payments that were
```

77

| | |
|---|---|
| 1 | made monthly? |
| 2 | ISAAC LEFKOWITZ:          Ah, -- Nick, you can ask the |
| 3 | question in many different ways |
| 4 | and you're gonna get the same |
| 5 | answer.  These were transfers from |
| 6 | the debtor to M2 LoanCo; M2 LoanCo |
| 7 | was the secured lender.  This is a |
| 8 | list and an exhibit all the -- |
| 9 | monies that went from the dent -- |
| 10 | debtor to M2 LoanCo going out. |
| 11 | (LOUD MUISC PLAYING) -- |
| 12 | ANDREW JIMENEZ, TRUSTEE:    Okay.  So -- |
| 13 | ISAAC LEFKOWITZ:          (INAUDIBLE)hear that? |
| 14 | (LOUD MUSIC PLAYING) |
| 15 | UNKNOWN:                  I think someone put us hold -- |
| 16 | (LOUD MUSIC) |
| 17 | ISAAC LEFKOWITZ:          Yeah, I think -- |
| 18 | (LOUD MUSIC) |
| 19 | ANDREW JIMENEZ, TRUSTEE:    Okay.  This is Andrew Jimenez. |
| 20 | I'm gonna asked if -- if you're |
| 21 | not asking questions or answering |
| 22 | questions at this moment, please |
| 23 | mute your phones, so that we can |
| 24 | avoid background noise and |
| 25 | interruptions to the meeting. |

| | |
|---|---|
| 1 | Continue Mr. ah, Zluticky. |
| 2 | NICK ZLUTICKY: Um, Mr. Lefkowitz, you don't need |
| 3 | to put me on hold ah, if you don't |
| 4 | wanna -- answer (LAUGHS). |
| 5 | ISAAC LEFKOWITZ: Ah, you can accuse me of anything |
| 6 | you wish, but I didn't touch the |
| 7 | phone.  So -- |
| 8 | NICK ZLUTICKY: I'm just joking -- |
| 9 | AARON KAUFMAN: I think that -- that was |
| 10 | (CROSSTALK) -- |
| 11 | ISAAC LEFKOWITZ: (CROSSTALK) -- |
| 12 | AARON KAUFMAN: Let's -- let's go. |
| 13 | ISAAC LEFKOWITZ: I'm -- I'm -- I'm not ready to |
| 14 | joke with you. |
| 15 | NICK ZLUTICKY: Understood.  All right.  So -- um, |
| 16 | -- M2 LoanCo, LLC those transfers |
| 17 | the backup information for these |
| 18 | transfers is -- what is the source |
| 19 | information? |
| 20 | ISAAC LEFKOWITZ: Um, we have given you hundreds of |
| 21 | thousands of documents um, you are |
| 22 | in communication with M2 LoanCo's |
| 23 | counsel.  Um, you are in |
| 24 | communication with the debtor's |
| 25 | counsel.  You are in communication |

```
 1                               with the equity holder's counsel.
 2                               You probably -- by now, have more
 3                               information than I do.  Ah, I'm
 4                               here today to explain you the
 5                               amended 341 Exhibit.  This was not
 6                               listed on the previous one, and we
 7                               amended it to add and to explain
 8                               to you what they are.  I don't
 9                               have the drill down of the
10                               details.  I can tell you who ABC
11                               is AmerisourceBergen, I can tell
12                               you D -- who DG is, I can tell you
13                               M2 LoanCo is.  I can tell you who
14                               Perigrove is, and I can tell you
15                               who Pharmacorr is, and I can tell
16                               you the nature of these
17                               transactions.  But anything
18                               further than that, I don't have
19                               the answers here today.
20   NICK ZLUTICKY:              And all I'm asking is -- the
21                               source of the information for
22                               what's listed only on the amended
23                               Attachment 13.
24   ISAAC LEFKOWITZ:            And the source of the information
25                               is of the books and records that
```

|    |                              |                                      |
|----|------------------------------|--------------------------------------|
| 1  |                              | we have provided to Ankura that      |
| 2  |                              | are doing all the analysis and of    |
| 3  |                              | the books and records, and to our    |
| 4  |                              | counsel of the debtor of Gray        |
| 5  |                              | Reed.  They have compiled the        |
| 6  |                              | information, they've concluded       |
| 7  |                              | that an amend -- amended schedule    |
| 8  |                              | is required and that's why we did    |
| 9  |                              | it.                                  |
| 10 | NICK ZLUTICKY:               | And what did you do to review the    |
| 11 |                              | books and records to make sure       |
| 12 |                              | that the amended Attachment 13 was   |
| 13 |                              | true and correct?                    |
| 14 | ISAAC LEFKOWITZ:             | In consultation with Ankura and      |
| 15 |                              | counsel.                             |
| 16 | NICK ZLUTICKY:               | Mr. Jimenez, those are all the       |
| 17 |                              | questions that I have at this        |
| 18 |                              | time; thank you.                     |
| 19 | ANDREW JIMENEZ, TRUSTEE:     | Thank you.  Um, Mr. Collins, could   |
| 20 |                              | you please ah, if you have any       |
| 21 |                              | questions, please state your name    |
| 22 |                              | for the record and who you           |
| 23 |                              | represent.                           |
| 24 | PARRISH COLLINS:             | Ah, yes.  This is Parrish Collins    |
| 25 |                              | for the Estate of April Trugillo,    |

| | |
|---|---|
| 1 | | ah, personal representative |
| 2 | | Eugenio Mathison [SIC] |
| 3 | | (INAUDIBLE). |
| 4 | ANDREW JIMENEZ, TRUSTEE: | Go ahead, sir. |
| 5 | PARRISH COLLINS: | Um, may I -- proceed? |
| 6 | AARON KAUFMAN: | I'm -- I'm sorry, Mr. -- |
| 7 | PARRISH COLLINS: | Um -- |
| 8 | AARON KAUFMAN: | -- this is Aaron Kaufman.  Can you |
| 9 | | repeat your client's names again, |
| 10 | | I didn't catch those two? |
| 11 | PARRISH COLLINS: | The -- the personal representative |
| 12 | | is Eugenio Mathis.  Eugenio is |
| 13 | | spelled:  E-u-g-e-n-i-o.  Mathis: |
| 14 | | M-a-t-h-i-s for the Estate of |
| 15 | | April Trugillo, who passed away at |
| 16 | | the --  Bernalillo County |
| 17 | | Metropolitan Detention Center. |
| 18 | AARON KAUFMAN: | Okay, thank you. |
| 19 | PARRISH COLLINS: | So -- I just wanted to ask about |
| 20 | | what, a couple questions about |
| 21 | | insurance and then service of |
| 22 | | these notices of, you know, the |
| 23 | | deadlines. |
| 24 | | Um, Mr. Lefkowitz, were -- were |
| 25 | | you aware that the notices are |

82

| | |
|---|---|
| 1 | | being sent to individuals and -- |
| 2 | | and -- in this case, law firms |
| 3 | | that sent courtesy notices of |
| 4 | | claims to protect the prisoners' |
| 5 | | rights to file a claim under the |
| 6 | | Tort Claims Act, even though -- in |
| 7 | | -- in my case for instance, I |
| 8 | | assume this is true of many others |
| 9 | | even though I don't represent |
| 10 | | these clients or represent those |
| 11 | | inmates? |
| 12 | ISAAC LEFKOWITZ: | I'm not sure I'm following your |
| 13 | | question. You're asking the |
| 14 | | question on behalf of people you |
| 15 | | don't represent or you do |
| 16 | | represent? |
| 17 | PARRISH COLLINS: | I do not represent them, yet I |
| 18 | | received notices of claims for |
| 19 | | them and I did not agree to accept |
| 20 | | service for these -- these |
| 21 | | inmates. |
| 22 | ISAAC LEFKOWITZ: | Why did you -- so, why don't you |
| 23 | | return them to sender? |
| 24 | PARRISH COLLINS: | I'm just asking if that's the |
| 25 | | practice is to send the notices to |

| | |
|---|---|
| 1 | | the people that sent courtesy |
| 2 | | notices of claims rather than |
| 3 | | sending them to the inmates |
| 4 | | thereby passing the burden? |
| 5 | ISAAC LEFKOWITZ: | Who (CROSSTALK) -- |
| 6 | AARON KAUFMAN: | Mr. Collins, this is -- this -- |
| 7 | ISAAC LEFKOWITZ: | -- (CROSSTALK) -- |
| 8 | AARON KAUFMAN: | -- hold -- hold on, Mr. Lefkowitz. |
| 9 | | This is Aaron Kaufman for the |
| 10 | | record.  Mr. Collins, I just wanna |
| 11 | | to understand your question.  Are |
| 12 | | -- are you -- well -- are you |
| 13 | | saying that ah, you're receiving |
| 14 | | notice for claimants that you |
| 15 | | don't represent? |
| 16 | PARRISH COLLINS: | I have a -- thick stack of notices |
| 17 | | here for people that we sent |
| 18 | | courtesy notices of claims to the |
| 19 | | county, I cc'd Corizon, and ah, I |
| 20 | | do not represent them.  They were |
| 21 | | courtesy notices to protect their |
| 22 | | claims understand the Tort Claims |
| 23 | | Act.  And ah -- |
| 24 | AARON KAUFMAN: | Okay. |
| 25 | PARRISH COLLINS: | -- I don't know how to re -- I |

```
 1                              don't know how to -- locate them
 2                              nor do I feel that's my
 3                              responsibility.
 4   AARON KAUFMAN:             Understood.  So, you -- you're
 5                              saying that you're receiving
 6                              notices in this bankruptcy case
 7                              for claimants, who you wrote to
 8                              Corizon ah, to provide courtesy
 9                              notices and -- and you don't have
10                              the addresses of those claimants
11                              either; am I understanding you?
12   PARRISH COLLINS:          Right.  I -- I ah, sent notices to
13                              the county of Bernalillo, you
14                              know, to protect the claims under
15                              the Tort Claims Act in the -- you
16                              know -- New Mexico Civil Rights
17                              Act.  Yeah, we cc'd Corizon as a
18                              courtesy and I have no contact
19                              with most of these people.  Yet,
20                              you know, I have all these notices
21                              and -- and, you know, without, you
22                              know -- in --any contact or legal
23                              relationship with the vast
24                              majority of them.
25   AARON KAUFMAN:             And -- and you're assuming that
```

| | |
|---|---|
| | Corizon should have their |
| | addresses or you don't know? |
| PARRISH COLLINS: | I think -- I am saying that |
| | Corizon should be sending these |
| | notices as ah, Mr. Jimenez asked |
| | earlier to the actual inmates not |
| | to -- to individuals that, you |
| | know, file courtesy notices of |
| | claims, those are not, the notices |
| | of claims do not constitute legal |
| | representation, they're simply |
| | courtesy notices to protect the |
| | statute. |
| AARON KAUFMAN: | And -- and you don't have those |
| | addresses, is that what you're |
| | saying? |
| PARRISH COLLINS: | I don't have those addresses, that |
| | would be a very large burden to |
| | track these people down, nor do I |
| | have a obligation to track them |
| | down.  They are not my clients. |
| AARON KAUFMAN: | Let -- let -- let me just ask Mr. |
| | Lefkowitz a question real quick. |
| | Mr. Lefkowitz, it's -- you heard |
| | what Mr. Collins said.  Do you |

| | |
|---|---|
| 1 | agree it would be a burden to |
| 2 | track down those addresses? |
| 3 | ISAAC LEFKOWITZ: | Ah, -- I think what happened here |
| 4 | is he filed, you know, courtesies, |
| 5 | so he got the courtesy back, and |
| 6 | he was just cc'd by KCC.  Um, so, |
| 7 | don't worry about his notices.  We |
| 8 | -- we are sending notices all over |
| 9 | the place and sometimes |
| 10 | inadvertently, some people, who |
| 11 | were -- do not supposed to get |
| 12 | notices are getting duplicates. |
| 13 | So, don't worry about the postage. |
| 14 | ANDREW JIMENEZ, TRUSTEE: | So, this is Andrew Jimenez. |
| 15 | ISAAC LEFKOWITZ: | Okay.  Well, what I'm saying -- |
| 16 | ANDREW JIMENEZ, TRUSTEE: | Hold -- what -- |
| 17 | ISAAC LEFKOWITZ: | -- what I'm saying -- |
| 18 | ANDREW JIMENEZ, TRUSTEE: | -- yes, one moment.  This is -- |
| 19 | ISAAC LEFKOWITZ: | -- can I follow up? |
| 20 | ANDREW JIMENEZ, TRUSTEE: | -- yes -- yes, you can.  Ah, let - |
| 21 | - let me just state this for the |
| 22 | record and then I'll let you ah, |
| 23 | continue if you have any |
| 24 | questions.  Ah, I'm -- I'm going |
| 25 | to encourage ah, ah, Mr. Kaufman |

1       and Mr. -- Zluticky ah, and Mr.

2       Collins, I think it would be

3       appropriate if ah, at -- after the

4       conclusion of this meeting um, you

5       can have a -- a conversation about

6       this and perhaps ah, (STAMMERS) --

7       this -- this, you know, this -- I

8       know this is just an example of --

9       of -- of -- of a situation, but

10      perhaps it could -- it could be

11      informative ah, for the debtor and

12      for the committee, as to how to

13      improve the process of sending

14      notice -- actual notice to -- to

15      the claimants ah, in -- in -- in

16      this case.  And ah, I -- I think

17      it would be very helpful if -- if

18      -- ah, the three of you could get

19      together and just discuss this a

20      little more, ah, so that perhaps

21      you can exchange ideas as to how

22      to address this going forward.

23      Ah, because I think what is most -

24      -- what's most important is that

25      all the claimants ah, get a fair

| | |
|---|---|
| 1 | opportunity receive notice. Ah, |
| 2 | and we don't want anything to be - |
| 3 | - anyone to miss the opportunity |
| 4 | ah, simply because the -- the -- |
| 5 | the notice is being sent to -- to |
| 6 | someone else, an attorney that is |
| 7 | no longer involved with the |
| 8 | claimant. So, it -- it's another |
| 9 | challenge for this case -- |
| 10 | AARON KAUFMAN: Under -- under -- |
| 11 | ANDREW JIMENEZ, TRUSTEE: -- I recognize that. But I -- I |
| 12 | think it would be good too -- |
| 13 | AARON KAUFMAN: -- no, and -- Mr. -- Mr. -- |
| 14 | ANDREW JIMENEZ, TRUSTEE: -- to discuss that ah, -- |
| 15 | AARON KAUFMAN: -- Mr. Jimenez, well -- |
| 16 | ANDREW JIMENEZ, TRUSTEE: -- off the record. |
| 17 | AARON KAUFMAN: -- Mr. Zluticky and I will confer |
| 18 | again. We -- we certainly did |
| 19 | extensively when we worked out the |
| 20 | Bar Date Notice, ah, procedures |
| 21 | and got that court (INAUDIBLE) |
| 22 | order and if its -- I'll confer |
| 23 | with him again. We certainly have |
| 24 | a lot of discussions to do over |
| 25 | the course(INAUDIBLE)for the next |

| | |
|---|---|
| 1 | | several months.  So, we -- we'll |
| 2 | | add this to the list of things we |
| 3 | | discuss. |
| 4 | ANDREW JIMENEZ, TRUSTEE: | I appreciate it.  I appreciate |
| 5 | | that.  Mr. Collins, -- ah, do you |
| 6 | | have any other questions for the |
| 7 | | debtor? |
| 8 | PARRISH COLLINS: | Bottom of the schedule is any -- |
| 9 | | can insurance reserve for New |
| 10 | | Mexico for the Bernalillo County |
| 11 | | Detention Center?  And I'm trying |
| 12 | | to -- I don't understand exactly |
| 13 | | the 15 million -- you know, the 1 |
| 14 | | million paid by Corizon, the next |
| 15 | | 15 million, I think (INAUDIBLE)-- |
| 16 | | it was stated that that's paid by |
| 17 | | the insurer, and ah, anything |
| 18 | | above the 16 million, I guess, |
| 19 | | (INAUDIBLE) one is paid again by |
| 20 | | Corizon.  And I don't see, you |
| 21 | | know, where, you know, what |
| 22 | | reserves -- insurance reserves -- |
| 23 | | there are for New Mexico and I |
| 24 | | would like to, (INAUDIBLE), know |
| 25 | | are there reserves in New Mexico, |

| | |
|---|---|
| 1 | | and if so, you know, -- what are |
| 2 | | they exactly?  And (STAMMERS) -- |
| 3 | ISAAC LEFKOWITZ: | Do you see -- do you see any other |
| 4 | | states? |
| 5 | PARRISH COLLINS: | I'm seeing -- yeah, there's a list |
| 6 | | of various companies, you know, |
| 7 | | ah, Arizona, and they're -- a |
| 8 | | couple other states, but I guess, |
| 9 | | yeah -- what I'm getting at is |
| 10 | | this 15 million global nationally |
| 11 | | or is this -- is this per state? |
| 12 | ISAAC LEFKOWITZ: | I don't know.  The -- I don't know |
| 13 | | the -- I don't what the answer is, |
| 14 | | but you asked -- you don't see |
| 15 | | Bernalillo.  And I'm telling you, |
| 16 | | you don't see Philadelphia, |
| 17 | | either.  You don't see Baltimore, |
| 18 | | either.  So, why you hung up on |
| 19 | | Berna (CROSSTALK) -- |
| 20 | PARRISH COLLINS: | Are -- are they -- |
| 21 | ISAAC LEFKOWITZ: | -- these are a list of (CROSSTALK) |
| 22 | | -- |
| 23 | PARRISH COLLINS: | -- that's -- that's where our -- |
| 24 | | that's where our lawsuit is filed |
| 25 | | and we received a (INAUDIBLE)of |

```
 1                        litigation based upon this
 2                        bankruptcy.  So, that's why
 3                        (CROSSTALK) --
 4   ISAAC LEFKOWITZ:      I --
 5   PARRISH COLLINS:      -- I'm here to --
 6   ISAAC LEFKOWITZ:      -- I under -- I -- I understand
 7                        that.  So, you -- you need to file
 8                        a claim and we're in the midst of
 9                        mediation with all these insurance
10                        carriers to deal with all the
11                        claim holders.  And you're one of
12                        them.  But ah, you asked the
13                        question, how come you don't see
14                        Bernalillo listed here, this is
15                        not listed by city or state.
16                        These are just names --
17   PARRISH COLLINS:      And --
18   ISAAC LEFKOWITZ:      -- of insurance carriers and
19                        policy numbers.
20   PARRISH COLLINS:      -- right.  And that wasn't my
21                        question.  My question was is the
22                        15 million policy -- is -- is that
23                        global nationally or is that -- by
24                        -- is that 15 million per state
25                        and per entity -- or per
```

```
 1                              correctional facility?
 2   AARON KAUFMAN:             Ah -- let me -- let me just
 3                              interject; this is Aaron Kaufman
 4                              for the record.  Ah, Mr. -- Mr.
 5                              Collins, I'm gonna just ask you to
 6                              reach out to us off -- offline
 7                              'cause this is a very, very
 8                              complicated ah, question that
 9                              you're raising.  It really depends
10                              --
11   PARRISH COLLINS:           Okay.
12   AARON KAUFMAN:             -- on --
13   PARRISH COLLINS:           All right.
14   AARON KAUFMAN:             -- which policy covers when --
15                              when your claim arose, ah, which
16                              policy might be implicated or
17                              policies might be implicated.  Ah,
18                              as -- as Mr. -- I think, Mr.
19                              Lefkowitz is trying to explain to
20                              you, these policies aren't
21                              necessarily um, listed by state or
22                              county, um, and it -- it's
23                              something that counsel, we have a
24                              pretty good handle on, we think,
25                              and we're happy to work with you
```

| | | |
|---|---|---|
| 1 | | on it.  I just don't think Mr. |
| 2 | | Lefkowitz -- |
| 3 | PARRISH COLLINS: | Okay. |
| 4 | AARON KAUFMAN: | -- in a position to answer your |
| 5 | | question sitting here today, at |
| 6 | | this time. |
| 7 | PARRISH COLLINS: | Okay. |
| 8 | AARON KAUFMAN: | (CROSSTALK) -- schedules in front |
| 9 | | of him. |
| 10 | PARRISH COLLINS: | So -- is this Mr. Kaufman |
| 11 | | speaking? |
| 12 | AARON KAUFMAN: | Yes.  You can reach out to me and |
| 13 | | actually, I would encourage you to |
| 14 | | reach out to my partner, Amber |
| 15 | | Carson, here at Gray Reed 'cause |
| 16 | | she's kind of running point on |
| 17 | | this. |
| 18 | PARRISH COLLINS: | (STAMMERS) -- what -- now that's |
| 19 | | ah -- which one?  Amber -- is that |
| 20 | | Amber Carson, is that what you |
| 21 | | said? |
| 22 | AARON KAUFMAN: | (INAUDIBLE). |
| 23 | PARRISH COLLINS: | Okay.  And then, I assume -- yeah, |
| 24 | | one more question.  I'm looking at |
| 25 | | your LinkedIn page Mr. Lefkowitz. |

|   |   |   |
|---|---|---|
| 1 |  | And ah, you're of the executive |
| 2 |  | board member of Genesis.  Is that |
| 3 |  | -- does that have any legal |
| 4 |  | relationship to Corizon or |
| 5 |  | Yescare? |
| 6 | ISAAC LEFKOWITZ: | You see LinkedIn on the schedule |
| 7 |  | here? |
| 8 | PARRISH COLLINS: | I'm asking you about Genesis and |
| 9 |  | your -- your -- you're an |
| 10 |  | executive board member for |
| 11 |  | Genesis.  I'm wondering if that's |
| 12 |  | legally related to Corizon or |
| 13 |  | Yescare or Tehum, and if so, why |
| 14 |  | it's not on the schedule. |
| 15 | ISAAC LEFKOWITZ: | You can reach out to the in-house |
| 16 |  | counsel of Genesis and we'll |
| 17 |  | gladly provide you all (MUMBLES). |
| 18 | PARRISH COLLINS: | But I'm asking you is Genesis have |
| 19 |  | a legal relationship -- |
| 20 | ISAAC LEFKOWITZ: | I'm -- I'm here to respond to |
| 21 |  | information that's on this |
| 22 |  | schedule, and this schedule is |
| 23 |  | what I signed for and this |
| 24 |  | schedule doesn't need to be |
| 25 |  | amended.  So, the list all the |

| | | |
|---|---|---|
| 1 | | affiliates -- |
| 2 | PARRISH COLLINS: | But -- |
| 3 | ISAAC LEFKOWITZ: | -- and any -- any other affiliates |
| 4 | | that you find on social media is |
| 5 | | not listed here, you gotta go out |
| 6 | | and reach out to that -- that |
| 7 | | company and see what relationship |
| 8 | | they have, if any. |
| 9 | PARRISH COLLINS: | Okay.  So, your testimony is that |
| 10 | | Genesis has no legal relationship |
| 11 | | to Corizon since it's not on the |
| 12 | | schedule? |
| 13 | ISAAC LEFKOWITZ: | I didn't say anything about |
| 14 | | Genesis.  And don't put any words |
| 15 | | into my mouth.  All I'm saying -- |
| 16 | PARRISH COLLINS: | Well, that's why I'm asking you is |
| 17 | | -- was Genesis -- |
| 18 | ISAAC LEFKOWITZ: | -- and I'm (CROSSTALK) -- |
| 19 | PARRISH COLLINS: | -- omitted -- |
| 20 | ISAAC LEFKOWITZ: | -- and I'm here to respond to you. |
| 21 | | Whatever affiliate financial |
| 22 | | transfers that were done to |
| 23 | | affiliates is listed on this |
| 24 | | schedule.  Anything outside this |
| 25 | | schedule you gotta take it |

| | |
|---|---|
| 1 | | elsewhere; it doesn't belong in |
| 2 | | this meeting. |
| 3 | ANDREW JIMENEZ, TRUSTEE: | Mr. -- Mr. Lefkowitz -- |
| 4 | PARRISH COLLINS: | Okay.  So, -- in that -- and -- |
| 5 | ANDREW JIMENEZ, TRUSTEE: | -- this is -- hold on a second. |
| 6 | PARRISH COLLINS: | -- there's also -- |
| 7 | ANDREW JIMENEZ, TRUSTEE: | Hold on a second.  This is Andrew |
| 8 | | Jimenez.  Mr. Lefkowitz, -- you |
| 9 | | can answer the questions.  You are |
| 10 | | -- you are required to answer the |
| 11 | | questions.  I don't think it's |
| 12 | | appropriate for you to tell a cred |
| 13 | | -- someone participating in the -- |
| 14 | | in the meeting what questions they |
| 15 | | ask you or not.  I think that -- |
| 16 | | at -- that question is actually |
| 17 | | relevant -- |
| 18 | ISAAC LEFKOWITZ: | (CROSSTALK) -- |
| 19 | ANDREW JIMENEZ, TRUSTEE: | -- they're trying to see if there |
| 20 | | is an affiliate or not.  You're |
| 21 | | giving him an answer.  You're |
| 22 | | saying that if it's not in the |
| 23 | | schedules, the schedules don't |
| 24 | | need to be amended.  But guess |
| 25 | | what?  And we have -- we -- we -- |

|    |                              |                               |
|----|------------------------------|-------------------------------|
| 1  |                              | this is the -- the third time -- |
| 2  |                              | the second time that you amend |
| 3  |                              | schedules.  So, I think the   |
| 4  |                              | question is relevant.  Please be |
| 5  |                              | respectful to the questions, try |
| 6  |                              | to answer it.  If you don't have - |
| 7  |                              | - if you don't know the answer, |
| 8  |                              | just -- just state that and move |
| 9  |                              | on.  But let's be cordial with |
| 10 |                              | people participating in this -- in |
| 11 |                              | this meeting.                 |
| 12 | ISAAC LEFKOWITZ:              | So, I'm --                    |
| 13 | ANDREW JIMENEZ, TRUSTEE:      | Mr. --                        |
| 14 | ISAAC LEFKOWITZ:              | -- cordial.  But all I'm -- all |
| 15 |                              | I'm saying is Mr. Hernandez [SIC} |
| 16 |                              | --                            |
| 17 | ANDREW JIMENEZ, TRUSTEE:      | It's Mr. Jimenez.             |
| 18 | ISAAC LEFKOWITZ:              | -- you know.  The guy is asking a |
| 19 |                              | question about -- about LinkedIn. |
| 20 |                              | He's not asking me a question |
| 21 |                              | about a documents.  He's not  |
| 22 |                              | asking me question about a    |
| 23 |                              | schedule.  He's not asking a  |
| 24 |                              | question about a report.      |
| 25 |                              | (CROSSTALK) --                |

| | | |
|---|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: | He asked you a question -- |
| 2 | ISAAC LEFKOWITZ: | -- he's asking a question that he |
| 3 | | Googled -- |
| 4 | ANDREW JIMENEZ, TRUSTEE: | -- I'm not here -- I'm not here to |
| 5 | | have a -- a -- a -- discussion |
| 6 | | with you.  Okay?  And neither are |
| 7 | | -- neither are the -- the -- the |
| 8 | | people participating in this -- in |
| 9 | | this meeting.  Just answer the |
| 10 | | questions and avoid entering into |
| 11 | | the discussions; okay?  Let's just |
| 12 | | move forward. |
| 13 | PARRISH COLLINS: | Okay.  Can I -- ask it this way, |
| 14 | | are you an executive board member |
| 15 | | of Genesis as it indicates on your |
| 16 | | LinkedIn page? |
| 17 | ISAAC LEFKOWITZ: | And I decline to answer the |
| 18 | | question. |
| 19 | PARRISH COLLINS: | Ah, Mr. Jimenez, ah, can you |
| 20 | | direct him to answer the question, |
| 21 | | please? |
| 22 | ANDREW JIMENEZ, TRUSTEE: | That's his answer.  Ah, you stated |
| 23 | | the record, you can -- you can ask |
| 24 | | your follow up question, if you |
| 25 | | have one. |

| | | |
|---|---|---|
| 1 | PARRISH COLLINS: | Okay.  So, I guess, since you're |
| 2 | | assuming to answer whether or not |
| 3 | | you're an executive board member |
| 4 | | of Genesis, are you also refusing |
| 5 | | to answer whether or not Genesis |
| 6 | | has a legal relationship to |
| 7 | | Corizon, Yescare, or Tehum? |
| 8 | AARON KAUFMAN: | Mr. -- Mr. Collins, this is Aaron |
| 9 | | Kaufman.  I -- just want you to |
| 10 | | clarify what legal relationship |
| 11 | | means, if you could. And that way |
| 12 | | -- |
| 13 | PARRISH COLLINS: | Do they -- is there an (CROSSTALK) |
| 14 | | -- |
| 15 | AARON KAUFMAN: | (MUMBLES) -- |
| 16 | PARRISH COLLINS: | -- equity -- an equity relation -- |
| 17 | | okay.  Sorry.  Yeah, is there an - |
| 18 | | - any kind of ownership interest |
| 19 | | between (INAUDIBLE)direction |
| 20 | | between Genesis and Corizon, |
| 21 | | Tehum, Yescare, or any, you know, |
| 22 | | other entities setup under |
| 23 | | Corizon? |
| 24 | AARON KAUFMAN: | That's, well -- that -- that -- |
| 25 | | that question is ah, (STAMMERS) -- |

| | |
|---|---|
| 1 | has assumptions in there that I |
| 2 | don't think are correct.  Why |
| 3 | don't you break up a little bit, |
| 4 | and just about Tehum. |
| 5 | PARRISH COLLINS: Okay.  Well, I'm asking about |
| 6 | Corizon, (INAUDIBLE) because the |
| 7 | (INAUDIBLE) and now (INAUDIBLE) |
| 8 | (CROSSTALK) -- |
| 9 | AARON KAUFMAN: (CROSSTALK) -- ask about Corizon - |
| 10 | - |
| 11 | PARRISH COLLINS: -- Genesis (CROSSTALK) -- |
| 12 | AARON KAUFMAN: -- I don't -- I don't represent |
| 13 | Yescare and I don't know anything |
| 14 | about Yescare that ah, -- that I |
| 15 | can guide Mr. Lefkowitz to answer. |
| 16 | PARRISH COLLINS: Okay.  Ah, does Genesis have any |
| 17 | kind of equity or any kind of |
| 18 | other ownership interest in |
| 19 | Corizon, Tehum, or Yescare, since |
| 20 | you are on the board of Yescare? |
| 21 | AARON KAUFMAN: Let's -- again, let's limit it to |
| 22 | the debtor and (INAUDIBLE) Tehum, |
| 23 | Corizon.  I don't represent |
| 24 | Yescare, and I can't -- I can't |
| 25 | guide Mr. Lefkowitz to answer |

| | |
|---|---|
| 1 | about Yescare. |
| 2 | PARRISH COLLINS:   Okay.  So again, we gotta stay |
| 3 | here in New Mexico related to |
| 4 | Corizon New Mexico and Tehum.  So |
| 5 | does Genesis have any equity or |
| 6 | ownership interest in Corizon or |
| 7 | Tehum? |
| 8 | ISAAC LEFKOWITZ:   I'm not aware of any. |
| 9 | PARRISH COLLINS:   Okay.  And then does ah, Corizon |
| 10 | or Tehum have any ownership |
| 11 | interest in Genesis? |
| 12 | ISAAC LEFKOWITZ:   I'm not aware of any. |
| 13 | PARRISH COLLINS:   Okay.  And then, I have the same |
| 14 | question for Synergy Health Care |
| 15 | Services.  It looks like you're |
| 16 | executive board member there, as |
| 17 | well.  So, does Synergy Health |
| 18 | Care Services have any ownership |
| 19 | interest in Corizon or Tehum? |
| 20 | ISAAC LEFKOWITZ:   I'm a board member of a dozen |
| 21 | companies.  Are you gonna go |
| 22 | through all these companies? |
| 23 | Whatever -- whoever owns the |
| 24 | debtor has been disclosed.  It's |
| 25 | been disclosed on the ah, |

| | | |
|---|---|---|
| 1 | | (INAUDIBLE) bankruptcy and the |
| 2 | | merger, it's been disclosed in -- |
| 3 | ANDREW JIMENEZ, TRUSTEE: | Mr. Lefkowitz, -- |
| 4 | ISAAC LEFKOWITZ: | -- the bankruptcy -- |
| 5 | ANDREW JIMENEZ, TRUSTEE: | -- please answer the question. |
| 6 | ISAAC LEFKOWITZ: | -- I don't think -- I don't think |
| 7 | | -- what's that? |
| 8 | ANDREW JIMENEZ, TRUSTEE: | Please provide an answer. |
| 9 | PARRISH COLLINS: | (CROSSTALK) -- it sounds like he's |
| 10 | | amended several times, I'm just |
| 11 | | wondering if it needs to be |
| 12 | | amended again to add either Syn -- |
| 13 | | Synergy or Genesis. |
| 14 | ISAAC LEFKOWITZ: | I'm -- and I'm -- and I'm -- and |
| 15 | | I'm telling you at this point, we |
| 16 | | don't need to amend anything. |
| 17 | PARRISH COLLINS: | Okay.  All right.  That's all my |
| 18 | | questions. |
| 19 | ANDREW JIMENEZ, TRUSTEE: | Thank you, Mr. Collins.  Is there |
| 20 | | any other creditor or people, |
| 21 | | person participating in the call |
| 22 | | that wishes to ask questions to |
| 23 | | the debtor? |
| 24 | VAL EARLY: | Yes. |
| 25 | ANDREW JIMENEZ, TRUSTEE: | Please -- please state your name |

| | |
|---|---|
| 1 | for the record and who you |
| 2 | represent. |
| 3 | VAL EARLY:    I'm Val Early and I represent |
| 4 | Tracey Gissom.  Good afternoon, |
| 5 | Mr. Lefkowitz, Mr. Kaufman.  I |
| 6 | have a couple of follow up |
| 7 | questions for you.  Um, in the |
| 8 | initial 341, and this is a |
| 9 | Continued 341, so this is a topic |
| 10 | which can be discussed here.  I |
| 11 | ask you about the ah, ah, ah, |
| 12 | privacy concerns with respect to |
| 13 | the medical records and personal - |
| 14 | - personally identifiable |
| 15 | information of the prisoners under |
| 16 | the care of Corizon or Tehum or -- |
| 17 | whichever entity -- handled that |
| 18 | for those individuals.  As I |
| 19 | recall, and please by all means |
| 20 | correct me if I'm wrong, but as I |
| 21 | recall, you said that that those |
| 22 | records were maintained on the |
| 23 | debtor's servers and that they |
| 24 | were secure.  If -- if -- am I |
| 25 | recalling that accurately? |

```
 1   ISAAC LEFKOWITZ:              I don't know what records you're

 2                                 referring you're referring to.  I

 3                                 think we -- discuss what record --

 4                                 the last meeting we discussed what

 5                                 records we had.  We have names,

 6                                 inmate names, inmate numbers,

 7                                 inmate date of births, and inmate

 8                                 locations, that's all we have.

 9   VAL EARLY:                    Okay.  Thank you.  And -- and am I

10                                 correct in recalling your

11                                 testimony to be that that

12                                 information is maintained on the

13                                 debtor's servers and that it is

14                                 secure; am I correct in

15                                 remembering that?

16   ISAAC LEFKOWITZ:              Correct.

17   VAL EARLY:                    Okay.  Very well.  Um, -- we also

18                                 discussed in the earlier ah,

19                                 iteration of this particular

20                                 creditor's meeting ah, the need to

21                                 -- to provide protection under

22                                 HIPAA the federal privacy law.

23                                 And -- and I'll ask you if you're

24                                 familiar with ah, an entity known

25                                 as Royal Ransomware or Red Packet
```

| | | |
|---|---|---|
| 1 | | Security? |
| 2 | ISAAC LEFKOWITZ: | Yes. |
| 3 | VAL EARLY: | And -- and tell me how it is that |
| 4 | | you became familiar with -- with - |
| 5 | | - first tell me which of those |
| 6 | | entities are you familiar with, |
| 7 | | Royal Ransomware or ah, Red Packet |
| 8 | | Security? |
| 9 | ISAAC LEFKOWITZ: | We have a (CROSSTALK) -- |
| 10 | AARON KAUFMAN: | Mr. -- Mr. Early, this is Aaron |
| 11 | | Kaufman.  Can -- can I just a -- |
| 12 | | ask where you're going and what |
| 13 | | this has to do with the schedules? |
| 14 | VAL EARLY: | You -- you -- yeah, it has to do |
| 15 | | with this 341 Meeting.  And Mr. |
| 16 | | Kaufman, I'll just tell you if you |
| 17 | | want to protective order, then I'm |
| 18 | | gonna suggest to you that you ask |
| 19 | | for a continuance of this 341 |
| 20 | | Meeting and file your motion. |
| 21 | AARON KAUFMAN: | Well, I, you know, I'm happy to -- |
| 22 | VAL EARLY: | And we proceed -- |
| 23 | AARON KAUFMAN: | -- ah, do this offline, if you |
| 24 | | have specific questions -- |
| 25 | VAL EARLY: | Well, I'm -- I'm happy to do it |

```
 1                             online.
 2   AARON KAUFMAN:            (CROSSTALK) --
 3   VAL EARLY:                We're gonna do it in an open
 4                             forum.  That's the purpose of this
 5                             meeting.
 6   AARON KAUFMAN:            All right.  Well, --
 7   VAL EARLY:                And the debtor --
 8   AARON KAUFMAN:            -- I just instruct the -- I'm
 9                             gonna have to instruct my client
10                             not to answer if you wanna do
11                             this.
12   VAL EARLY:                 -- okay.  Mr. Jimenez, will you
13                             please record that fact?
14   AARON KAUFMAN:            You haven't asked a question, yet.
15                             I just ask you are you --
16   VAL EARLY:                I did ask a question.  I did ask a
17                             question.
18   ANDREW JIMENEZ, TRUSTEE:  Okay. So, --
19   VAL EARLY:                It has not been answered.
20   ANDREW JIMENEZ, TRUSTEE:  -- did you --
21   VAL EARLY:                I asked him if he -- which entity
22                             with which he is familiar.
23   ANDREW JIMENEZ, TRUSTEE:  Okay.  Yes, and --
24   AARON KAUFMAN:            Answer, if you can.
25   ANDREW JIMENEZ, TRUSTEE:  -- Mr. -- okay.  Mr. -- Mr.
```

| | |
|---|---|
| 1 | | Kaufman, you've already made your |
| 2 | | ah, your objection ah, Mr. -- Mr. |
| 3 | | Early ah, ask your questions and |
| 4 | | then the debtor can provide an |
| 5 | | answer.  And -- and ah -- |
| 6 | VAL EARLY: | Thank you. |
| 7 | ANDREW JIMENEZ, TRUSTEE: | -- and I -- I -- I -- everyone to |
| 8 | | know, so this meeting is being |
| 9 | | recorded.  And if anyone wants a |
| 10 | | copy of the recording, please send |
| 11 | | me an email, ah, at the conclusion |
| 12 | | of the ah, of -- of the meeting |
| 13 | | and then ah, we can process that |
| 14 | | for you.  Mr. Early, go -- go |
| 15 | | ahead, continue. |
| 16 | VAL EARLY: | Thank you.  Mr. Lefkowitz, are you |
| 17 | | familiar with Royal Ransomware and |
| 18 | | if so, how? |
| 19 | ISAAC LEFKOWITZ: | So, I believe we have a ah, |
| 20 | | protective order from the |
| 21 | | bankruptcy court on the subject |
| 22 | | and I will not (INAUDIBLE) |
| 23 | | (INAUDIBLE) and I will not get |
| 24 | | into any discussion on this topic. |
| 25 | VAL EARLY: | All right.  Let me ask the same |

```
 1                              question about Red Packet
 2                              Security.  Are you familiar with
 3                              Red Packet and if so, how?
 4   ISAAC LEFKOWITZ:           Same answer.
 5   VAL EARLY:                 Mr. Kaufman, would you please
 6                              provide to me by email a copy of
 7                              your protective order?
 8   AARON KAUFMAN:            It's under seal um, you're welcome
 9                              to take this up with the
10                              bankruptcy judge.
11   VAL EARLY:                 I will be delighted to do that.
12                              Other follow along questions, at
13                              the last iteration of this 341
14                              Meeting, Mr. Lefkowitz, you
15                              answered that ah, the debtor had
16                              made pre-petition payments to
17                              Geneva, and I do not see that
18                              listed on the attachment, which
19                              ah, you've been referring to this
20                              afternoon.  Ah was -- was -- was
21                              that already listed elsewhere or -
22                              - or should it be on this one or I
23                              -- I'm really just asking for
24                              clarification.
25   ISAAC LEFKOWITZ:           (NO VERBAL RESPONSE HEARD).
```

| | | |
|---|---|---|
| 1 | AARON KAUFMAN: | Ask your question again, I'm not |
| 2 | | sure, I may misunderstood. |
| 3 | VAL EARLY: | Is -- is -- is the transfer |
| 4 | | (INAUDIBLE) million-dollar payment |
| 5 | | to Geneva to which Mr. Lefkowitz |
| 6 | | testified at an earlier ah, ah |
| 7 | | convening of this 341 Meeting, is |
| 8 | | that reflected anywhere in -- in |
| 9 | | these amended and restated |
| 10 | | schedules?  I do not see it on |
| 11 | | Attachment 13.  Is it provided |
| 12 | | elsewhere? It's a yes or no |
| 13 | | question. |
| 14 | AARON KAUFMAN: | I'm -- I'm looking myself, I |
| 15 | | thought it was on here. |
| 16 | VAL EARLY: | And it may be on there.  I ah -- |
| 17 | | (STAMEMRS) -- I don't know.  I |
| 18 | | don't see it.  But that's fine. |
| 19 | | I'm a -- |
| 20 | AARON KAUFMAN: | Well, yeah.  I don't think it's in |
| 21 | | 13, but I thought it was on -- in |
| 22 | | one of the other schedules, maybe |
| 23 | | -- four.  (MUMBLES). |
| 24 | ANDREW JIMENEZ, TRUSTEE: | A -- again, the -- |
| 25 | AARON KAUFMAN: | Maybe not -- |

| | | |
|---|---|---|
| 1 | ANDREW JIMENEZ, TRUSTEE: | -- quest -- the question is for |
| 2 | | the witness -- |
| 3 | AARON KAUFMAN: | -- I'm not sure. |
| 4 | ANDREW JIMENEZ, TRUSTEE: | -- to answer. |
| 5 | VAL EARLY: | Mr. Lefkowitz, if you don't know, |
| 6 | | that's okay.  Just say, I don't |
| 7 | | know. |
| 8 | ISAAC LEFKOWITZ: | Ah, I don't have it -- I don't |
| 9 | | have it in front of me, I'm -- I'm |
| 10 | | sure -- if you know about it, you |
| 11 | | -- must have gotten it from this |
| 12 | | report. |
| 13 | VAL EARLY: | No, sir.  I know about it from |
| 14 | | your personal -- prior testimony |
| 15 | | and I'm asking you where it is on |
| 16 | | the report.  But that's okay.  If |
| 17 | | you don't know, I'm happy to |
| 18 | | accept that answer. |
| 19 | ISAAC LEFKOWITZ: | I don't know. |
| 20 | VAL EARLY: | Thank you. All right.  Do these |
| 21 | | newly amended schedules -- and -- |
| 22 | | and I think I know the answer to |
| 23 | | this.  I think the answer is yes, |
| 24 | | but if not, tell me.  Does it now |
| 25 | | provide a completed list of the |

| | |
|---|---|
| 1 | persons and/or entities to who the |
| 2 | debtor believes it owes |
| 3 | indemnification?  Is that -- is |
| 4 | that list now complete? |
| 5 | ISAAC LEFKOWITZ: | I'm not aware of (INAUDIBLE).  Is |
| 6 | there an indemnification schedule |
| 7 | there? |
| 8 | UNKNOWN: | (STAMMERS) -- yeah, Isaac, this is |
| 9 | what we covered in (INAUDIBLE). |
| 10 | ISAAC LEFKOWITZ: | Oh.  So then the last -- last |
| 11 | hearing it's been complete; |
| 12 | (INAUDIBLE). |
| 13 | UNKNOWN: | That's correct. |
| 14 | ISAAC LEFKOWITZ: | To the best of my knowledge. |
| 15 | VAL EARLY: | So it's -- it is complete to the |
| 16 | best of your knowledge.  Okay. |
| 17 | Thank you.  That's all the |
| 18 | questions I had. |
| 19 | ISAAC LEFKOWITZ: | Thank you. |
| 20 | ANDREW JIMENEZ, TRUSTEE: | Thank you, Mr. Early.  Anyone -- |
| 21 | is there anyone else on the call |
| 22 | that wishes to ask questions? |
| 23 | (NO VERBAL RESPONSE HEARD). |
| 24 | ANDREW JIMENEZ, TRUSTEE: | Okay.  It appears that everyone |
| 25 | present today had an opportunity |

```
1                                to ask questions.  Thank you all
2                                for your appearances.  This
3                                meeting is concluded.
4    VAL EARLY:                  Thank -- thank you, Mr. Jimenez.
5                                Thank you, gentleman.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```