# **DECLARATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SUFFERN PARTNERS LLC, | ) | Case No. 21-22280 (SHL) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF ALAN H. KATZ IN SUPPORT OF
## MOTION TO CONVERT TO CHAPTER 7

Alan H. Katz, an attorney admitted before the Courts of the State of New York and this Court, affirms under penalty of perjury as follows:

1.     I am a member of the Bar of this Court and Of Counsel to the firm Locke Lord LLP, attorneys for RS Old Mills RD, LLC in the above captioned bankruptcy case. I have personal knowledge of the facts stated herein and believe such facts to be true and correct.  I make this affirmation in support of the Motion to Convert to Chapter 7 filed by RS Old Mills RD, LLC.

2.     Attached hereto as Exhibit A is a true and correct copy of the transcript of the meeting of creditors pursuant to Bankruptcy Code section 341 held telephonically in the above captioned bankruptcy case on June 24, 2021, at which Isaac Lefkowitz appeared on behalf of debtor Suffern Partners LLC.

Dated: New York, New York
       August 11, 2021

                                        */s/ Alan H. Katz*_____
                                        Alan H. Katz

# Exhibit A

1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  SUFFERN PARTNERS LLC,                    Main Case No.

8           Debtor.                         21-22280-shl

9

10  - - - - - - - - - - - - - - - - - - - - -x

11

12               MEETING OF THE CREDITORS

13               PURSUANT TO SECTION 341

14               OF THE BANKRUPTCY CODE

15

16               United States Bankruptcy Court

17               300 Quarropas Street

18               White Plains, New York 10601

19

20               June 24, 2021

21               1:37 PM

22

23  B E F O R E :

24  RICHARD MORRISSEY, ESQ.

25  OFFICE OF UNITED STATES TRUSTEE

```
 1
 2   A P P E A R A N C E S (All present by video or telephone):
 3   DAVIDOFF HUTCHER & CITRON LLP
 4          Attorneys for Debtor
 5          120 Bloomingdale Road
 6          Suite 100
 7          White Plains, NY 10605
 8
 9   BY:   JONATHAN S. PASTERNAK, ESQ.
10
11
12   UNITED STATES DEPARTMENT OF JUSTICE
13          Office of the U.S. Trustee
14          201 Varick Street, Room 1006
15          New York, NY 10014
16
17   BY:   RICHARD C. MORRISSEY, ESQ.
18
19
20   ALTER & BRESCIA, LLP
21          Attorneys for DG Realty Management LLC
22          550 Mamaroneck Avenue
23          Harrison, NY 10528
24
25   BY:   BRUCE R. ALTER, ESQ.
```

3

1

2  LOCKE LORD LLP

3          Attorneys for RS Old Mills Road LLC

4          Brookfield Place

5          200 Vesey Street

6          20th Floor

7          New York, NY 10281

8

9  BY:   CASEY HOWARD, ESQ.

10         ALAN KATZ, ESQ.

11

12

13  BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

14         Attorneys for CPIF Lending, Inc.

15         1313 North Market Street

16         Suite 1201

17         Wilmington, DE 19801

18

19  BY:   WILLIAM M. ALLEMAN, JR., ESQ.

20

21

22

23

24

25

1

2  BUTLER, FITZGERALD, FIVESON & MCCARTHY, P.C.

3      Attorneys for Old Republic National Title Insurance

4      Co.

5      9 East 45th Street, Ninth Floor

6      New York, NY 10017

7

8  BY:   DAVID K. FIVESON, ESQ.

9

10

11  ALSO PRESENT:

12      UZIEL FRANKEL, Lone Pine Associates LLC

13      ISAAC LEFKOWITZ, CEO Suffern Partners LLC

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              MR. MORRISSEY:  We are on the record, and the record

3    should reflect that the date is June 24th, 2021.  The time is

4    1:37 p.m., and the name of the case is Suffern Partners, LLC.

5    That's spelled S as in Sam-U-F-F as in Frank-E-R-N.  The docket

6    number is 21-22280.

7              My name is Richard Morrissey.  I'm an attorney in the

8    Office of the U.S. Trustee for the Southern District of New

9    York.  The U.S. Trustee supervises the administration of

10   bankruptcy cases filed under the Bankruptcy Code, and the

11   debtor's representative is required to appear to be examined,

12   examined under oath regarding the bankruptcy case.

13             The examination is being recorded, and I would request

14   that anyone questioning the debtor state his or her name and

15   indicate who he or she represents.

16             I'd like to begin by swearing in the debtor's

17   representative.

18             But before I do that, Mr. Lefkowitz, are you going to

19   be swearing in or affirming your identity?

20             MR. LEFKOWITZ:  Affirm.

21             MR. MORRISSEY:  Okay.

22        (Witness affirmed)

23             MR. MORRISSEY:  Okay.  Please speak a little more

24   loudly.  Although I can hear you, I'm not sure that the machine

25   can.

1           Please state and spell your name for the record.

2           MR. LEFKOWITZ:  Isaac, I-S-A-A-C, Lefkowitz,

3    L-E-F-K-O-W-I-T-Z.

4           MR. MORRISSEY:  Thank you.  And what is your

5    relationship to the debtor?

6           MR. LEFKOWITZ:  I am the CEO and shareholder of

7    Goldman RX Incorporated, which is the hundred percent member of

8    the debtor.

9           MR. MORRISSEY:  Okay.  And is Goldman RX in

10   bankruptcy?

11          MR. LEFKOWITZ:  No.

12          MR. MORRISSEY:  Okay.  And if counsel could note his

13   appearance?

14          MR. PASTERNAK:  Jonathan Pasternak, Davidoff Hutcher &

15   Citron, 120 Bloomingdale Road, Suite 100, White Plains, New

16   York 10605 for the debtor.

17          MR. MORRISSEY:  Okay.  Thank you.  And now I am going

18   to take appearances of counsel today.  I'm not sure exactly who

19   is or who isn't on the phone today, but I will try to call out

20   my best guess as to who might be on the phone.

21          Is someone from Locke Lord on the phone?

22          MR. HOWARD:  Yes, Mr. Morrissey.  My name is Casey

23   Howard, from Locke, here with my colleague Alan Katz.  We both

24   today are appearing on behalf of RS Old Mills Road LLC.

25          MR. MORRISSEY:  Okay.  Now, at the hearing I believe

SUFFERN PARTNERS LLC                                                7

 1  you referred to your client as RD, D as in David.  Is that how

 2  we should call your client, or should we use RS Old Mills?

 3          MR. HOWARD:  We're more than happy to use RD.

 4          MR. MORRISSEY:  Okay.  As long as everyone's on the

 5  same page.  So and just for the record, Locke, in Locke Lord,

 6  is spelled L-O-C-K-E?

 7          MR. HOWARD:  Yes.

 8          MR. MORRISSEY:  All right.  Is anyone here

 9  representing Continental Kosher Catering, Inc?  Okay.

10          Hearing no response, is anyone here for TT Holder?

11  Okay.

12          Hearing no response, is anyone here for Old Republic?

13          MR. FIVESON:  Yes.  David Fiveson, F-I-V-E-S-O-N, of

14  Butler, Fitzgerald, Fiveson & McCarthy, 9 East 45th Street,

15  Ninth Floor, New York, New York 10017.

16          MR. MORRISSEY:  Thank you, Mr. Fiveson.  And is anyone

17  here for CPIF Lending?

18          MR. ALLEMAN:  Yes.  Good afternoon.  This is Bill

19  Alleman, Benesch, Friedlander, Coplan & Aronoff, on behalf of

20  CPIF Lending LLC.

21          MR. MORRISSEY:  Okay.  Mr. Alleman, please spell your

22  name for the record.

23          MR. ALLEMAN:  A-L-L-E-M-A-N.

24          MR. MORRISSEY:  Thank you.  And is anyone here for

25  Riverside Abstract?  Okay.  Hearing no response.

**SUFFERN PARTNERS LLC**                                      8

1          How about the County of Rockland?  Okay.

2          And DG Realty Management?

3          MR. ALTER:  Good afternoon, Mr. Morrissey.  This is

4    Bruce Alter, from the law firm of Alter& Brescia, for DG

5    Management.

6          MR. MORRISSEY:  Okay.  And is anyone here representing

7    the debtor from Hahn & Hessen?  Okay.  Hearing no response.

8          If I haven't called your name or your client's name,

9    now is the time to please identify yourself.

10         MR. FRANKEL:  Hello.

11         MR. MORRISSEY:  Hello.

12         MR. FRANKEL:  Yes.  My name is Uziel Frankel, and I'm

13   here for Lone Pine Associates.

14         MR. MORRISSEY:  Okay.  Could you speak more loudly,

15   please?  I didn't catch your name.

16         MR. FRANKEL:  Uziel Frankel.  U-Z-I-E-L, Frankel,

17   F-R-A-N-K-E-L.

18         MR. MORRISSEY:  Okay.

19         MR. FRANKEL:  I'm here for Lone Pine Associates.

20         MR. MORRISSEY:  Okay.  Could you spell the name of

21   your client?

22         MR. FRANKEL:  Yes.  I'm the client.  It's my company.

23         MR. MORRISSEY:  Okay.

24         MR. FRANKEL:  Lone Pine, L-O-N-E P-I-N-E Associates

25   LLC.

1           MR. MORRISSEY:  Okay.  Thank you.  Anyone else?

2           MR. FRANKEL:  Again, I'm also here --  I was asked to

3    also represent, as, you know, Judy Brags, which is --

4           MR. MORRISSEY:  Okay.  Again, if you could speak more

5    loudly and spell that name.

6           MR. FRANKEL:  The name is -- yeah, I'm going to call

7    this one.  Judy Brags, Judy Brags, B-R-A-G-S.

8           MR. MORRISSEY:  Okay.  And that's a creditor in this

9    case.

10           MR. FRANKEL:  Yes.  Yes.  And it's certainly again.

11           MR. MORRISSEY:  Okay.  Thank you.

12           Okay.  Anyone else?

13           Okay.  Hearing no response, I think we can start with

14    the questions.

15           Okay.  Mr. Lefkowitz, do you have the debtor's

16    petition in front of you?

17           MR. LEFKOWITZ:  Yes.

18           MR. MORRISSEY:  Okay.  Did you sign that document?

19           MR. LEFKOWITZ:  Yes.

20           MR. MORRISSEY:  Okay.  Do you see the signature page?

21           MR. LEFKOWITZ:  Yes.

22           MR. MORRISSEY:  Okay.  And your signature is on that

23    document?

24           MR. LEFKOWITZ:  Correct.

25           MR. MORRISSEY:  Okay.  Next, the debtor's schedules.

SUFFERN PARTNERS LLC                                    10

1   There's another signature page there.  Do you see that?

2           MR. LEFKOWITZ:  Yes.

3           MR. MORRISSEY:  Okay.  Did you sign that --

4           MR. LEFKOWITZ:  Correct.

5           MR. MORRISSEY:  You signed that document as well?

6           MR. LEFKOWITZ:  Yes.

7           MR. MORRISSEY:  Okay.

8           MR. LEFKOWITZ:  Yes, sir.

9           MR. MORRISSEY:  And then the statement of financial

10  affairs is the next document?

11          MR. LEFKOWITZ:  Correct.

12          MR. MORRISSEY:  With yet another signature page.  Do

13  you see that?

14          MR. LEFKOWITZ:  Yes.

15          MR. MORRISSEY:  Okay.  You signed that document?

16          MR. LEFKOWITZ:  Yes, sir.

17          MR. MORRISSEY:  Okay.  And finally, there's the 1007-2

18  declaration in your name.  Do you see that document?

19          MR. LEFKOWITZ:  Yes.

20          MR. MORRISSEY:  Okay.  And you signed that as well?

21          MR. LEFKOWITZ:  Correct.

22          MR. MORRISSEY:  Okay.  Mr. Lefkowitz, are there any

23  changes you wish to make to any of those documents?

24          MR. LEFKOWITZ:  No.

25          MR. MORRISSEY:  Okay.  Has this debtor filed for

 1  bankruptcy before?

 2          MR. LEFKOWITZ:  No.

 3          MR. MORRISSEY:  Okay.  Have the debtor opened a bank

 4  account?

 5          MR. LEFKOWITZ:  Yes.

 6          MR. MORRISSEY:  Is it marked a debtor-in-possession

 7  account?

 8          MR. LEFKOWITZ:  Correct.

 9          MR. MORRISSEY:  Okay.  And what is the bank?

10          MR. LEFKOWITZ:  Signature Bank.

11          MR. MORRISSEY:  And where is the branch?

12          MR. LEFKOWITZ:  In White Plains.

13          MR. MORRISSEY:  Okay.  Is there only one account?

14          MR. LEFKOWITZ:  Correct.

15          MR. MORRISSEY:  Okay.  Have you provided my office

16  with proof that the debtor-in-possession account has been

17  opened?

18          MR. LEFKOWITZ:  Yes.

19          MR. MORRISSEY:  Okay.  Now, do you remember an initial

20  interview with my colleague, Victor Abriano, whose name is

21  spelled A-B-R-I-A-N-O?

22          MR. LEFKOWITZ:  Yes.

23          MR. MORRISSEY:  Okay.  Did you provide information to

24  Mr. Abriano, either before, at, or after the initial debtor

25  interview, concerning insurance?

SUFFERN PARTNERS LLC                                12

 1            MR. LEFKOWITZ:  I don't know if it was directly to me

 2    or to my counsel, but the -- I think the question of insurance

 3    came up, and we gave the reply.

 4            MR. MORRISSEY:  Okay.  But you don't remember whether

 5    you actually transmitted either to Mr. Pasternak or directly to

 6    my office a copy of the insurance policies?

 7            MR. LEFKOWITZ:  Not directly to your office, but to

 8    Mr. Pasternak.

 9            MR. MORRISSEY:  Okay.

10            MR. PASTERNAK:  Richard, it's all been forwarded to

11    your office.

12            MR. MORRISSEY:  Okay.

13            MR. PASTERNAK:  Including the amended certificate,

14    adding the UST as notice party.  Thank you.

15            MR. MORRISSEY:  Okay.  Thank you, Mr. Pasternak.

16            Again, not just for Mr. Pasternak, but for anyone who

17    speaks, if you could please first identify yourself.  I know

18    who you are, but the machine probably does not.

19            Have you provided a listing of disbursements for the

20    ninety days leading up to the petition?

21            MR. LEFKOWITZ:  Yes.

22            MR. MORRISSEY:  Okay.

23            MR. LEFKOWITZ:  Excuse me one second.  Let me just get

24    rid of this noise.  One second.  I'm back.

25            MR. MORRISSEY:  Okay.  Please describe, Mr. Lefkowitz,

1   the nature of the business.

2           MR. LEFKOWITZ:  Suffern Partners, the debtor, owns an

3   industrial site in Suffern, New York, approximately 163 acres

4   of land with approximately 600,000 square foot of industrial

5   building.

6           MR. MORRISSEY:  Okay.  Is that space occupied?

7           MR. LEFKOWITZ:  It's partially occupied, a very small

8   portion, by a holdover tenant, Continental Kosher.

9           MR. MORRISSEY:  Okay.  When you say partially

10  occupied, you mentioned that it's a 600-square-foot building.

11  How many square feet are occupied?

12          MR. LEFKOWITZ:  Approximately 40,000 square feet.

13          MR. MORRISSEY:  First of all, when did you acquire the

14  building, meaning Suffern Partners, of course?

15          MR. LEFKOWITZ:  In third quarter of 2017.

16          MR. MORRISSEY:  Okay.  Is that when the debtor was

17  established?

18          MR. LEFKOWITZ:  Correct.

19          MR. MORRISSEY:  For the purpose of purchasing that

20  property?

21          MR. LEFKOWITZ:  Correct.

22          MR. MORRISSEY:  Okay.  Has the debtor had other

23  tenants between 2017 and now, or has it always been mostly

24  vacant?

25          MR. LEFKOWITZ:  Always been mostly vacant.

1          MR. MORRISSEY:  Have you tried to fill up the space?

2          MR. LEFKOWITZ:  Correct.

3          MR. MORRISSEY:  Okay.  The tenant that you mentioned,

4     the catering company --

5          UNIDENTIFIED SPEAKER:  Excuse me.  Nobody else can be

6     speaking right now.  Thank you.

7          MR. MORRISSEY:  The catering company, how long has

8     that been in the building?

9          MR. LEFKOWITZ:  So they came into the building

10    sometimes in August of 2018, prior to their lease commencement,

11    and their lease commenced December of 2018, and they are there

12    ever since.

13         MR. MORRISSEY:  What's the term of that lease?

14         MR. LEFKOWITZ:  Originally that lease was a ten-year

15    lease, but it was terminated in 2019.

16         MR. MORRISSEY:  Terminated by what?

17         MR. LEFKOWITZ:  By default, nonpayment.  Tenant hasn't

18    paid a single month's rent since their occupancy.

19         MR. MORRISSEY:  Okay.  And what is the value of the

20    property?

21         MR. LEFKOWITZ:  We're presently in a contract to sell

22    the property at fifty-two-and-a-half million dollars.

23         MR. MORRISSEY:  So in other words, your valuation is

24    based on the proposed -- on the sale price as opposed to an

25    appraisal; is that correct?

1           MR. LEFKOWITZ:  Or the actual sale price.

2           MR. MORRISSEY:  Right.  Now, just for the record,

3   there is a motion pending to sell that property for that price.

4   And Mr. Lefkowitz, that's a private sale, correct, as opposed

5   to sale subject to auction?

6           MR. LEFKOWITZ:  Correct.

7           MR. MORRISSEY:  Now, I'm getting a little bit ahead of

8   myself in terms of the disposition of the case, but do you

9   expect that if that sale goes through that the proceeds are

10  going to pay all creditors in full?

11          MR. LEFKOWITZ:  Correct.  A hundred percent plan.

12          MR. MORRISSEY:  Okay.  You also list, in addition to

13  the property, accounts receivable in the amount of 650,000

14  dollars.  That's in Schedule B.  I don't know if you want to

15  take a look at that or not.  But I was going to ask simply,

16  what company or companies or persons owe the debtor this amount

17  in receivables?

18          MR. LEFKOWITZ:  That's the approximate amount of the

19  arrears of the tenant Continental Kosher.  It's probably higher

20  than that.

21          MR. MORRISSEY:  Okay.  And that's the sole receivable

22  that you're referring to in the schedules?

23          MR. LEFKOWITZ:  Correct.  Correct.

24          MR. MORRISSEY:  Okay.  You also list a claim against

25  North 14th Street Realty Associates in the amount of 4,850,000

SUFFERN PARTNERS LLC                                      16

```
 1  dollars.  Could you explain that?
 2          MR. LEFKOWITZ:  So when we procured financing from the
 3  lender CPIF to secure a mortgage on the acquisition on this
 4  property, we needed to provide CPIF additional collateral to
 5  cross-collateralize their full outstanding mortgage.  At that
 6  time there was my predecessor, a different principal, who owned
 7  another piece of property N14 (ph.), as North 14, a Brooklyn
 8  property, and they provided that property for cross-
 9  collateralization.
10          At the time of the closing that property had an
11  existing mortgage, and the secured lender, CPIF, insisted that
12  that mortgage should be paid off.  So part of the proceeds of
13  the sale went to clear up that mortgage, so the new mortgage of
14  CPIF can be placed onto that property as well as cross-
15  collateralization.
16          MR. MORRISSEY:  Okay.  Let's back up just for one
17  second.  Mr. Lefkowitz, are you not the original principal of
18  the debtor?
19          MR. LEFKOWITZ:  Not when this transaction took place
20  in 2017.  I'm the principal since March of 2019.
21          MR. MORRISSEY:  Okay.  And was there a transaction to
22  cause that transition to happen?
23          MR. LEFKOWITZ:  Correct.
24          MR. MORRISSEY:  What was that?
25          MR. LEFKOWITZ:  I acquired with -- through my company,
```

1    Goldman RX, I acquired all the interests of my -- of the

2    predecessors members of Suffern Partners, which was two

3    members, a company called RSOM and an individual of Goldie

4    Reisman.  So I acquired the one hundred percent membership

5    interest of Suffern Partners.

6          MR. MORRISSEY:  Okay.  And if you could just explain,

7    and I apologize if you believe you already did, why North 14th

8    Street Realty owes the debtor 4,850,000 dollars?

9          MR. LEFKOWITZ:  I'm not sure whether it's owed or not

10   or there's some sort of a, you know, a claim, which needed to

11   be sorted out at the time of the closing.  When Suffern

12   Partners acquired the property and Suffern Partners acquired

13   the lender to put a mortgage onto its property, North 14

14   property came into play as a cross-collateral in order to do

15   that.  Suffern Partners undertook to clear off that mortgage.

16   So I'm not sure if North 14 will file a claim or not, but we

17   just did it for disclosure.

18         MR. MORRISSEY:  Okay.  But are you filing a claim

19   against them, or are they filing a claim against the debtor?

20         MR. LEFKOWITZ:  Neither.

21         MR. MORRISSEY:  Okay.  But you're not aware of any

22   action that's actually been taken?  There's no litigation that

23   has been commenced regarding North 14th Street Realty?

24         MR. LEFKOWITZ:  Correct

25         MR. MORRISSEY:  Okay.  Did you provide consideration

SUFFERN PARTNERS LLC                                      18

1    or payment when you acquired the company in 2019?

2              MR. LEFKOWITZ:  Yes.

3              MR. MORRISSEY:  Okay.  How much was that?

4              MR. LEFKOWITZ:  It was a combination of a deal.  It

5    was basically -- it was the undertaking of immediate

6    liabilities that the company had, that Suffern Partners had,

7    and we had to infuse capital in order to keep Suffern Partners

8    afloat.  And it was an undertaking to get the cross-collateral

9    of their property disposed of.

10             MR. MORRISSEY:  Okay.  But could you assign a dollar

11   amount to the transaction, to the purchase of Suffern Partners?

12             MR. LEFKOWITZ:  It is -- it's a combination, but it's

13   probably to the tune of over five millions dollars.

14             MR. MORRISSEY:  Okay.  And Mr. Lefkowitz, you

15   personally are not in bankruptcy; is that correct?

16             MR. LEFKOWITZ:  Correct.

17             MR. MORRISSEY:  Okay.  You mentioned CPIF Lending

18   earlier.  Do they have a mortgage against the property?

19             MR. LEFKOWITZ:  Yes.

20             MR. MORRISSEY:  Okay.  But as collateral, you had to

21   put up that Brooklyn property, correct?

22             MR. LEFKOWITZ:  Correct.

23             MR. MORRISSEY:  And was there another Brooklyn

24   property as well, or just the one?

25             MR. LEFKOWITZ:  Just the one.  I think it has an AKA

1   to it.

2         MR. MORRISSEY: Okay. My understanding, Mr.

3   Lefkowitz, is that the property was previously owned by the

4   corporation Novartis, N-O-V-A-R-T-I-S; is that true?

5         MR. LEFKOWITZ: Correct. Novartis Pharmaceutical.

6         MR. MORRISSEY: Okay. And then who owned the property

7   after Novartis?

8         MR. LEFKOWITZ: So there was a company called RS Old

9   Mill, which was nicknamed RS1 (ph.), that went into contract to

10   buy from Novartis. They couldn't proceed with their closing,

11   so they filed for bankruptcy in the Southern District, in White

12   Plains. RS Old Mill went ahead and flipped it to RD, which is

13   RS Old Mill Road. That's why it's nickname RD.

14         So there was an actual deed transfer from RS Old

15   Mill -- from Novartis to RS Old Mill, from RS Old Mill to RS

16   Old Mill Road, and RS Old Mill Road did a deed transfer to

17   Suffern Partners.

18         MR. MORRISSEY: Okay. Was the transfer to Suffern

19   Partners done during that RS1 bankruptcy or after?

20         MR. LEFKOWITZ: During.

21         MR. MORRISSEY: Okay. Do you know -- just again, I'm

22   only asking if you know. I don't want you to do an

23   investigation. But do you know if the bankruptcy court in the

24   RS1 case approved that sale or that transfer?

25         MR. LEFKOWITZ: Not at that time. Not at that time.

1    We were locked into adversary proceedings after the fact, and

2    Judge Drain did a nunc pro tunc court order approval that RS

3    Old Mill had the authority to transfer to RD, which, by the

4    way, RD paid no consideration, and then RD did a transfer to

5    Suffern, which Suffern paid all the consideration.

6            MR. MORRISSEY:  But directly to RD, not to RS1,

7    correct?

8            MR. LEFKOWITZ:  Correct.  Well, not directly to RD.

9    It was directly to RD's direction where all funds should go to.

10   RD was a shell company with no bank account.

11           MR. MORRISSEY:  Okay.  I understand there is

12   litigation, or has been in the district court involving the

13   debtor's title insurer, Old Republic National Title Insurance

14   Company, as well as Old Republic's abstract company, which is

15   called Riverside.  And before I get to what's happening in the

16   bankruptcy court with that, could you just explain briefly what

17   that action was about?

18           MR. LEFKOWITZ:  So when Suffern Partners acquired the

19   property in 2017 they engaged Riverside Abstract as a title

20   agent to Old Republic, paid for title insurance, and Old

21   Republic issued two policies, one to -- an owner's policy to

22   Suffern Partners, as well as a lender's policy to CPIF.

23           When the adversary proceeding in Judge Drain's

24   bankruptcy in the Southern District from RS Old Mill, which is

25   RS1, when that adversary proceeding started we filed a claim

 1  with Old Republic, because it was a direct attack on title.

 2  So -- and later on, when that all got disposed through the nun

 3  pro tunc, RD started an action in the Southern -- in the state

 4  court, in Rockland Supreme.  And again, we filed another claim

 5  with Old Republic for defending those.

 6          We didn't come to a complete agreement on defense, and

 7  there was dispute about it, and that's what this action started

 8  in the district court between Old Republic and Suffern

 9  Partners.

10          MR. MORRISSEY:  Okay.  Now, I will note for the record

11  that at a hearing two days ago, which is the 22nd of June, the

12  court heard a motion to settle that action, and the judge's

13  decision is still pending, so the debtor obviously hopes that

14  the judge approves that settlement.  So we'll see.

15          Does the debtor have employees?

16          MR. LEFKOWITZ:  No.

17          MR. MORRISSEY:  Okay.  And what are the monthly

18  expenses associated with operating the property?

19          MR. LEFKOWITZ:  You've -- no, I didn't get that.  You

20  finished that question?

21          MR. MORRISSEY:  Yes.  What are the monthly expenses

22  associated with operating the property?

23          MR. LEFKOWITZ:  Oh, okay.  Just one second.  Let me

24  just pull that up again.

25          MR. MORRISSEY:  If you're looking at a document,

1    that's fine, if you could just tell us what it is.

2              MR. LEFKOWITZ:  Yeah.  It's a declaration that we

3    filed.  Just want to do the correct amount.  I know it by

4    heart, the approximate amount.

5              MR. MORRISSEY:  Okay.  That's the 1007-2 declaration,

6    which is found at ECF document number 3.

7              MR. LEFKOWITZ:  Correct.  So I don't know the total,

8    but I can give you the few line items.  It cost about 16,000

9    dollars for a security company to secure the site,

10   approximately 4,000 dollars in landscaping, approximately

11   140,000 dollars in real estate taxes, although there's a

12   certiorari in dispute pending.  And then there is miscellaneous

13   fire alarm and maintenance of approximately 20,000 dollars a

14   month.  And that's excluding the debt service.

15             MR. MORRISSEY:  Okay.  I'm sorry.  What was the amount

16   of the real estate taxes per month?

17             MR. LEFKOWITZ:  About 138 and change.  138,000.

18             MR. MORRISSEY:  And has the debtor been making

19   payments on those line items you just mentioned since the

20   filing?

21             MR. LEFKOWITZ:  No.

22             MR. MORRISSEY:  On any of them?

23             MR. LEFKOWITZ:  Correct.

24             MR. MORRISSEY:  Have had real estate taxes come due,

25   since you filed, for post-petition, the post-petition period?

```
 1            MR. LEFKOWITZ:  You know, it's hard to say, you know,
 2    what came due.  You know, you can't tell what the county is and
 3    how the county is running their calendar, but I think the next
 4    payment was -- I think there was a payment due -- I should
 5    correct.  I think there's another bill that came out in June.
 6            MR. MORRISSEY:  Okay.  Was there a due date?
 7            MR. LEFKOWITZ:  You know, real estate taxes, in order
 8    for it not to incur interest and penalties, there's a due date.
 9            MR. MORRISSEY:  Right.  But do you know what it is?
10            MR. LEFKOWITZ:  No, I don't.
11            MR. MORRISSEY:  Okay.  Do you intend to make that
12    payment when it's due?
13            MR. LEFKOWITZ:  We intend to sell the property.
14    That's what this motion for the sale is pending, and if the
15    closing goes through, real estate taxes in arrears gets paid
16    off at the closing.  Otherwise you can't close.
17            MR. MORRISSEY:  Right.  And I understand that you're
18    aiming, but this is based on what I heard at the hearing the
19    other day.  You hope that not only that the sale is approved by
20    the court, but that the closing takes place on or about July
21    16th; is that correct?
22            MR. LEFKOWITZ:  Correct.
23            MR. MORRISSEY:  Okay.  If, for whatever reason, the
24    sale does not close, do you intend to pay, and is the debtor
25    able to pay the administrative expenses?  Those are the ones
```

```
 1    that are incurred after the petition date.
 2            MR. LEFKOWITZ:  The debtor is not able to pay, you
 3    know, without any DIP lender to be put in place.  The debtor
 4    has no revenue.
 5            MR. MORRISSEY:  Okay.  Has the debtor been talking to
 6    a DIP lender?
 7            MR. LEFKOWITZ:  Yes.
 8            MR. MORRISSEY:  But is it fair to say, and I don't
 9    mean to put words in your mouth, Mr. Lefkowitz, but if the sale
10    goes through, you won't need the DIP loan, but if the sale does
11    not go through, you will need the DIP loan?
12            MR. LEFKOWITZ:  That's correct.
13            MR. MORRISSEY:  I mentioned the bank account earlier
14    that you have at Signature Bank.  How much is on deposit in
15    that account?
16            MR. LEFKOWITZ:  Zero.
17            MR. MORRISSEY:  Okay.  Now you mentioned -- well,
18    actually, we both mentioned the CPIF loan.  Are there carrying
19    costs associated with that loan?
20            MR. LEFKOWITZ:  Yes.
21            MR. MORRISSEY:  Do you know what they are?  Under
22    normal circumstances, what the monthly expense is?
23            MR. LEFKOWITZ:  It's somewhere in the vicinity of
24    about 300,000 dollars.  It carries both an interest and arrears
25    of default interest and default penalties.
```

1          MR. MORRISSEY:  How much is owed on that loan?

2          MR. LEFKOWITZ:  Approximately forty-five-and-change

3   million.

4          MR. MORRISSEY:  What was the face amount of the loan?

5          MR. LEFKOWITZ:  Thirty-three million.

6          MR. MORRISSEY:  Have you hired a broker for the sale?

7          MR. LEFKOWITZ:  Yes.  Yes.

8          MR. MORRISSEY:  Okay.  Do you know if the broker has

9   been retained in the bankruptcy case?

10         MR. LEFKOWITZ:  I think there's an application.

11         MR. MORRISSEY:  Okay.  What's the name of the broker?

12         MR. LEFKOWITZ:  CBRE.  CB Richard Ellis.

13         MR. MORRISSEY:  Okay.

14         MR. PASTERNAK:  This is Jon Pasternak.  There's not a

15  technical application, because they were engaged pre-

16  bankruptcy, and there's a motion to assume their retention

17  agreement, as modified, as part of the sale motion.  Thank you.

18         MR. MORRISSEY:  Okay.  Thank you, Mr. Pasternak.

19         Is that your understanding, Mr. Lefkowitz?

20         MR. LEFKOWITZ:  Correct.

21         MR. MORRISSEY:  Okay.  What is the name?  You

22  mentioned that there is a buyer in a private sale.  What's the

23  name of the buyer?

24         MR. LEFKOWITZ:  The name of the buyer is TT Holder

25  Entity.

SUFFERN PARTNERS LLC                                    26

1          MR. MORRISSEY:  Okay.  TT as in -- T as in Thomas?

2          MR. PASTERNAK:  Tom Tom.

3          MR. MORRISSEY:  Okay.

4          MR. LEFKOWITZ:  Correct.

5          MR. MORRISSEY:  Is there a time of the essence or some

6   kind of deadline for that sale?

7          MR. LEFKOWITZ:  So the time of the essence is July 16

8   in order for a hundred percent plan to be able to consummate

9   it, because we struck a deal with the lender to give us over

10  eight million dollars in discount of the first position loan.

11  Should it not close on July 16, the discount goes away.

12         MR. MORRISSEY:  Correct.  But that's from the lender's

13  point of view.  How about from TT Holder, the buyer's point of

14  view?  Is July 16th the deadline for them as well?

15         MR. LEFKOWITZ:  It's a -- it's a self-created

16  deadline, but not a -- not a -- not memorialized in the

17  agreement.

18         MR. MORRISSEY:  Okay.  Are there any licenses or

19  permits required to operate the debtor?

20         MR. LEFKOWITZ:  No.

21         MR. MORRISSEY:  In 2017, when Suffern Partners, under

22  the old management, purchased the property, what was the

23  purchase price?  Do you know?

24         MR. LEFKOWITZ:  So the purchase price to RD was thirty

25  million.

1          MR. MORRISSEY:  Okay.  And how about to Suffern?

2          MR. LEFKOWITZ:  No, I'm saying Suffern to RD.

3          MR. MORRISSEY:  Oh, I'm sorry.  Understood.  Was there

4     a down payment or was it all paid at once?

5          MR. LEFKOWITZ:  It was all paid at once.

6          MR. MORRISSEY:  Okay.  And what is DG?  That's David

7     George Realty Management, LLC?

8          MR. LEFKOWITZ:  The management company that manage the

9     property.

10         MR. MORRISSEY:  Okay.  I believe you listed a five-

11    million-dollar loan, if I'm not mistaken, in the schedules; is

12    that right?

13         MR. LEFKOWITZ:  Correct.

14         MR. MORRISSEY:  Okay.  Can you describe that loan?

15         MR. LEFKOWITZ:  So DG has been advancing monies to

16    operate the property for the last few years.

17         MR. MORRISSEY:  For the last how many years?  I'm

18    sorry.

19         MR. LEFKOWITZ:  Since 2018.

20         MR. MORRISSEY:  Since you acquired the debtor?

21         MR. LEFKOWITZ:  Prior to that.  I acquired it in March

22    or April of 2019, and DG Realty was already on the property

23    before that.

24         MR. MORRISSEY:  Okay.  Have any payments been made to

25    DG Realty Management since then?

 1              MR. LEFKOWITZ:  No.

 2              MR. MORRISSEY:  Okay.  Is that five-million-dollar

 3    claim in dispute at all?

 4              MR. LEFKOWITZ:  No.

 5              MR. MORRISSEY:  So when you say that as a result of

 6    the sale the proceeds will be sufficient to fund a hundred

 7    percent plan, DG Realty Management is among the creditors that

 8    will be paid in full under that plan?

 9              MR. LEFKOWITZ:  Correct.

10              MR. MORRISSEY:  Okay.  Orange & Rockland Utilities

11    has, according to the schedules, a 309,000-dollar claim for

12    what you refer to as a meter assessment, and you also say it's

13    disputed.  Could you please explain that claim and what the

14    dispute is?

15              MR. LEFKOWITZ:  So Orange & Rockland sued Suffern

16    Partners for utilities for the year of 2018.  Apparently, there

17    was an open meter running power, which Suffern Partners never

18    applied for, never opened an account, and didn't have any use

19    for any power, because it was vacant.  But nevertheless, Orange

20    & Rockland claims power was running.  Somebody has to pay for

21    it, so it's state litigation, and it's pending.

22              MR. MORRISSEY:  Okay.  Have you been in discussions

23    with Orange & Rockland since you filed the case?

24              MR. LEFKOWITZ:  No.  Not since we filed the case, but

25    there were some settlement discussions prior to filing the

1  case.

2          MR. MORRISSEY:  Okay.  I'm going to just interject a

3  comment, and you can take it for what it's worth.  It may be

4  that this open claim may or may not be an impediment to a plan

5  getting confirmed.  Sometimes disputed claims are resolved

6  prior to confirmation, and sometimes that happens after

7  confirmation.  But certainly sufficient monies have to be

8  available to pay that claim upon confirmation, even if the

9  claim is ultimately adjudicated later on.

10         I just want to make sure that, you know, you should be

11  discussing with your counsel whether you need to grapple with

12  Orange & Rockland Utilities before you offer up a plan in the

13  case.  Okay?

14         MR. LEFKOWITZ:  I appreciate the advice.

15         MR. MORRISSEY:  Okay.  Now, then there's a claim of

16  Town of Ramapo listed in the schedules at 5.7 million dollars,

17  of which 5.25 million is listed as secured, and 5.25 million,

18  of course, happens to be the proposed sale price for the

19  property.

20         There was some discussion at the hearing the other

21  day, Mr. Lefkowitz, about who the claimant really was, whether

22  that was the Town of Ramapo or whether it was really the County

23  of Rockland.  But this was for real estate taxes, correct?

24         MR. LEFKOWITZ:  Correct.

25         MR. MORRISSEY:  Okay.  Have you been in discussions

SUFFERN PARTNERS LLC                                         30

1  with whoever the claimant is, be it the town or the county?

2          MR. LEFKOWITZ:  Yes.

3          MR. MORRISSEY:  Okay.  I'll also note, just for the

4  record, that an attorney for the County of Rockland appeared at

5  the hearing the other day, so I think we know that the County

6  of Rockland believes it holds that claim.  Do you believe that

7  as well?

8          MR. LEFKOWITZ:  We believe they hold a claim.  It's

9  the amount that it's in dispute, and we have our tax certiorari

10 lawyer, which just got approved his retention.  He's in

11 communication with the attorney of -- it's not the same

12 attorney that appeared two days ago, but it's the town

13 attorney, and we're discussing if -- what is the real dollar

14 amount that's being owed or being settled?

15         MR. MORRISSEY:  Okay.  Understood.  And as long as

16 discussions are happening, that's certainly a sign of progress.

17 And once again, you'll discuss with your counsel as to what

18 effect the undetermined amount of that large claim may or may

19 not affect the confirmation process.

20         MR. LEFKOWITZ:  Correct.

21         MR. MORRISSEY:  Okay.  Have you or anyone signed a

22 personal guarantee for any of the debtor's liabilities?

23         MR. LEFKOWITZ:  There is a personal guarantee to the

24 lender, but it's a personal guarantee.  They should pay our

25 predecessor.

1          MR. MORRISSEY:  Okay.  But it wasn't your personal

2   guarantee, correct?

3          MR. LEFKOWITZ:  Correct.

4          MR. MORRISSEY:  Okay.  So you never signed a personal

5   guarantee for any of the liabilities of the debtor; is that

6   correct?

7          MR. LEFKOWITZ:  Correct.

8          MR. MORRISSEY:  Okay.  Given that there are other

9   people on the line, I'm going to yield the floor in a moment.

10          I just wanted to tell you, Mr. Lefkowitz, something

11   that was covered at the initial debtor interview, which are the

12   debtor's operating reports.  The operating reports have to be

13   filed every month while the debtor is in Chapter 11, so the

14   parties know and the court knows the debtor's financial

15   condition as the debtor goes through the course of the Chapter

16   11 case.  The reports will reflect, among other things,

17   payments made and payments not made.  So for example, the

18   payments accruing on account of the administrative claims would

19   appear on there, whether it's for taxes or maintenance of the

20   property or for anything else.

21          But you do understand, Mr. Lefkowitz, that those

22   reports have to be filed every month during the pendency of the

23   case?

24          MR. LEFKOWITZ:  Yes, sir.

25          MR. MORRISSEY:  Okay.  Thank you.  Also, quarterly

1    fees to the U.S. Trustee are due.  Those are based on the

2    debtor's disbursements.  There's a minimum amount if there are

3    no disbursements.  But again, I just want to make sure you

4    understand that that's a statutory requirement that those

5    quarterly fees be paid.  So we are now in the second quarter of

6    2021.  The quarterly fee payment for the second quarter would

7    be due July 31st of 2021.  That is the end of the month after

8    the end of the quarterly period.  Do you understand how that

9    works?

10          MR. LEFKOWITZ:  Yes.

11          MR. MORRISSEY:  Okay.  At this time, I'm going to

12   yield the floor to anyone on the phone, a creditor who wishes

13   to ask questions of the debtor.  Now, once again, as I said off

14   the record, I'll say it on the record.  This is not the

15   occasion for a deposition.  You can take a deposition.  You can

16   apply for a 2004 examination with the court, if you would like,

17   but if you would like to ask a few questions of the debtor at

18   this time about what we have been talking about, namely the

19   debtor's condition, now is the time to do it.

20          And I'm going to begin by just inviting Mr. Howard, if

21   you would like to begin with any questions?

22          MR. HOWARD:  Yes.  Thank you, Mr. Morrissey.  I would.

23          MR. MORRISSEY:  Okay.  Please start with stating your

24   name again for the record.

25          MR. HOWARD:  Certainly.  Mr. Lefkowitz, good

1    afternoon.  My name is Casey Howard.  I'm an attorney at Locke

2    Lord in the City, and I'm here on behalf of RS Old Mills Road

3    LLC.

4              Mr. Morrissey, okay if I proceed?

5              MR. MORRISSEY:  Please.

6              MR. HOWARD:  All right.  Thank you.

7              Mr. Lefkowitz, I'll be asking most of my questions

8    focused upon the petition that Mr. Morrissey was referencing.

9    Do you still have that available to you?

10             MR. LEFKOWITZ:  Yes.

11             MR. HOWARD:  Okay.  If I could ask, first of all, in

12   Schedule A to look at question number 75.  Now, Mr. Morrissey

13   had asked you a bit about the 4.85-million-dollar loan for

14   monies advanced for a claim of North 14th Street Realty

15   Associates.  Do you see that there?

16             MR. LEFKOWITZ:  Yes.

17             MR. HOWARD:  Okay.  You had mentioned that, and I

18   don't want to misquote you here, but let's just say the

19   relationship between the debtor and North 14th was set up by a

20   predecessor of yours; is that correct?

21             MR. LEFKOWITZ:  Correct.

22             MR. HOWARD:  Who was the predecessor?

23             MR. LEFKOWITZ:  Goldie Reisman.

24             MR. MORRISSEY:  Okay.  I'm going to interject at this

25   point just to spell that name.  I believe that name is spelled

1    R-E-I-S-M-A-N; is that correct?

2          MR. LEFKOWITZ:  Correct.

3          MR. MORRISSEY:  Thank you.  Please proceed, Mr.

4    Howard.

5          MR. HOWARD:  No problem.  And Mr. Lefkowitz, do you

6    happen to know any of the members of North 14th Street Realty

7    Associates?

8          MR. LEFKOWITZ:  I know Reisman.

9          MR. HOWARD:  Okay.  Anyone else, by change?

10          MR. LEFKOWITZ:  No.

11          MR. HOWARD:  Okay.  Do you know anyone who has a

12    financial interest in that entity aside from Reisman?

13          MR. LEFKOWITZ:  I don't know who has a financial

14    interest in that entity.

15          MR. HOWARD:  Okay.  You had discussed the cross-

16    collateralization arrangement related to the loan on the

17    property in Suffern, New York at 25 Old Mill Road.  Is there

18    any documentation to commemorate that arrangement?

19          MR. LEFKOWITZ:  Yes.

20          MR. HOWARD:  Okay.  What documents commemorate that,

21    if you happen to know offhand?

22          MR. LEFKOWITZ:  Mortgage, loan agreements.

23          MR. HOWARD:  Okay.

24          MR. LEFKOWITZ:  Public records.

25          MR. HOWARD:  Okay.  And just to clarify one of your

```
 1   comments about the debtor's intent, if any, to pursue any type
 2   of claim against North 14th.  Did I hear you right that the
 3   debtor is not intending on pursuing a recovery of any money it
 4   might be owed from North 14th; is that correct?
 5             MR. LEFKOWITZ:  Correct.
 6             MR. HOWARD:  Okay.  Why is that?
 7             MR. LEFKOWITZ:  The arrangement we had with North 14.
 8             MR. HOWARD:  When you say arrangement, it was an
 9   arrangement, not you two made the arrangement, not -- the
10   debtors made an arrangements not to pursue that, that money?
11             MR. LEFKOWITZ:  The arrangement, the deal between
12   Goldman RX and RS and Goldie Reisman was the undertaking of
13   alleviating dead properties from its collateral.
14             MR. HOWARD:  Okay.  As to the loan agreement that you
15   referenced, do you have a copy of that available at present?
16             MR. LEFKOWITZ:  No.
17             MR. HOWARD:  Do you know who might?
18             MR. LEFKOWITZ:  It's public record, my friend.
19             MR. HOWARD:  Okay.  That's fair.  Have you all
20   submitted it on the docket?  I'm just trying to get a copy of
21   it.  That's what I'm looking for.
22             MR. LEFKOWITZ:  So I'm sure your client will pay for
23   your time to get the document.
24             MR. HOWARD:  We'll move on.  So if I could ask you
25   also to look at Schedules E and F of your petition.
```

 1          MR. LEFKOWITZ:  Okay.

 2          MR. HOWARD:  In particular, question 3.  I just want

 3    to go through a couple of these entities listed in Part 2,

 4    where it with subpart 3.1 in a reference of ATC Group.  In my

 5    copy it's on page 17 of 35 of your petition.  Do you happen to

 6    see that?

 7          MR. LEFKOWITZ:  Yes..

 8          MR. HOWARD:  Okay.  Okay.  Who is ATC Group, sir?

 9          MR. LEFKOWITZ:  I think it's a fire alarm company.

10    It's a public company.  I think it's part of ADP.

11          MR. HOWARD:  Okay.  And safe to assume, then, that

12    that 19,000 dollars and change, that would just be for some

13    sort of alarm services for the building that they have a claim

14    for?

15          MR. LEFKOWITZ:  I don't know what they have a claim

16    for.  It's in dispute.

17          MR. HOWARD:  Okay.  Any idea what the dispute's about?

18          MR. LEFKOWITZ:  I don't know what the claim is.

19          MR. HOWARD:  Okay.  If we could look next at -- going

20    down, at 3.2.,

                DG Realty Management LLC.  Do you see that?

21          MR. LEFKOWITZ:  Yes.

22          MR. HOWARD:  Okay.  When you were speaking with Mr.

23    Morrissey, I believe you said that the five millions dollars

24    was this year, that was money that DG had advanced to continue

25    to operate the property.  Did I hear that right?

```
 1            MR. LEFKOWITZ:  Correct.
 2            MR. HOWARD:  Okay.  Is there documentation evidencing
 3    that arrangement with DG Realty?
 4            MR. LEFKOWITZ:  Yes.
 5            MR. HOWARD:  Okay.  And what documentation would that
 6    be?
 7            MR. LEFKOWITZ:  Management agreement, loan agreement.
 8            MR. HOWARD:  And have you retained a copy of those
 9    documents?
10            MR. LEFKOWITZ:  I'm sure we have, yeah.
11            MR. HOWARD:  Okay.  I haven't seen.  To your
12    knowledge, those haven't been produced in this case yet, have
13    they, on the docket?
14            MR. LEFKOWITZ:  I don't know.
15            MR. HOWARD:  Okay.  I don't seem to understand that --
16    is it that DG Realty has an equity interest in the debtor's
17    invest -- is that right?
18            MR. LEFKOWITZ:  No.
19            MR. HOWARD:  Okay.  And DG Realty, in one of their
20    submissions, I believe they said that they had an equity kicker
21    received with respect to the debtor.  Does that ring a bell?
22            MR. LEFKOWITZ:  Equity kicker, not an equity interest.
23            MR. HOWARD:  Okay.  And to your knowledge, what did
24    they mean when they said equity kicker?
25            MR. LEFKOWITZ:  Equity kicker is a term that mezz
```

1    lenders use.  They charge interest, and they get a bonus equity

2    kicker for producing a loan.

3            MR. HOWARD:  Okay.  And does that equity kicker

4    involve a transmission of equity interest to the mezz lender?

5            MR. LEFKOWITZ:  Not equity interest, but equity.

6    Actually equity money.  In other words, when you refinance or

7    you sell the property, there's an amount of equity that needs

8    to go to the lender.

9            MR. HOWARD:  Okay.  So the idea would be that DG would

10   be getting a kicker in the event that the subject property here

11   is sold.  Am I understanding that right?

12           MR. LEFKOWITZ:  Sold or refinanced.

13           MR. HOWARD:  Okay.  And do you know any of the members

14   of DG Realty?

15           MR. LEFKOWITZ:  Yes.

16           MR. HOWARD:  Okay.  Who's do you know --

17           MR. LEFKOWITZ:  The principal owner.

18           MR. HOWARD:  Okay.  And do you know their name?

19           MR. LEFKOWITZ:  David Gefner.

20           MR. HOWARD:  Okay.  Is there any connection between

21   Mr. Gefner and the debtor?

22           MR. LEFKOWITZ:  No.

23           MR. HOWARD:  Okay.  Is there any connection with Mr.

24   Gefner and any of the principals of the debtor, including

25   yourself?

1          MR. LEFKOWITZ:  We -- we've been doing business for

2     the last three years.

3          MR. HOWARD:  Okay.  Any connections related to

4     anything outside of business related to the debtor?

5          MR. LEFKOWITZ:  No.

6          MR. HOWARD:  And does Mr. Gefner have any connection

7     with a company called Perigrove?

8          MR. LEFKOWITZ:  Yes.

9          MR. HOWARD:  Okay.  Do you know what that connection

10    is?

11         MR. LEFKOWITZ:  It's part of the -- it's an affiliate

12    of DG Realty.

13         MR. HOWARD:  Okay.  And do you have any connection

14    with that company, Perigrove?

15         MR. LEFKOWITZ:  I use their offices.

16         MR. HOWARD:  Okay.  In connection with work for the

17    debtor?

18         MR. LEFKOWITZ:  Correct.

19         MR. MORRISSEY:  Mr. Howard, this is Richard Morrissey.

20    I'm just interjecting.  If you could please spell the name of

21    that entity you just mentioned.

22         MR. HOWARD:  Sure.  I defer, actually, to Mr.

23    Lefkowitz.  I thought it was P-E-R-R-I-G-R-O-V-E (sic).

24         Is that right, to your knowledge, Mr. Lefkowitz?

25         MR. LEFKOWITZ:  Correct.

1          MR. HOWARD:  Okay.

2          MR. MORRISSEY:  Thank you.

3          MR. HOWARD:  Do you or the debtor pay for the use of

4   that office space --

5          MR. LEFKOWITZ:  It's part of the management --

6          MR. HOWARD:  -- Mr. Lefkowitz?

7          MR. LEFKOWITZ:  It's part of the management agreement.

8          MR. HOWARD:  Okay.  This is the same agreement that

9   covers the advances that DG was making to operate the building?

10         MR. LEFKOWITZ:  Oh, it's covered in the management

11  agreement.

12         MR. HOWARD:  The management agreement between who?

13         MR. LEFKOWITZ:  Suffern Partners owns a property, an

14  industrial property that's being managed by DG Realty

15  Management.  Suffern Partners does not have offices in Suffern,

16  New York.  DG Realty's in Suffern, New York.  So when they want

17  to make a phone call, they want to use the bathroom, they go to

18  a DG Realty manager's office to use those facilities.

19         MR. HOWARD:  Okay.  All right.  Just one moment here.

20  I have to get my notes together.

21         All right.  If we could look at Schedule G.  Actually,

22  I'm sorry.  Before we move on to Schedule G, just quickly, in

23  question 3.4 of Schedule E/F it mentions a debt here from ISSM

24  Protective Services for 150,000 dollars.  Do you see that?

25         MR. LEFKOWITZ:  Yeah.

1              MR. HOWARD:  Okay.  What's that for?

2              MR. LEFKOWITZ:  Security Company.

3              MR. HOWARD:  Okay.  And when you say security, you

4    must just -- or security, rather, you mean protecting the

5    property from these or whatever --

6              MR. LEFKOWITZ:  Correct.

7              MR. HOWARD:  Okay.  We can move on to Section G.  I'm

8    looking at Section G, which I have on page 20 of 35 of the

9    petition, particularly in Section 2.2.  Do you see that?

10             MR. LEFKOWITZ:  Yeah.

11             MR. HOWARD:  Okay.   There it says,
                                              TT Holder Entity
12   LLC, right?

13             MR. LEFKOWITZ:  Yeah.

14             MR. HOWARD:  Okay.  And they're the proposed purchaser

15   of the property at 25 Old Mill Road, right?

16             MR. LEFKOWITZ:  Correct

17             MR. HOWARD:  Okay.  When did you first become aware of

18   the existence of TT Holder Entity?

19             MR. PASTERNAK:  I'm going to object to this line of

20   questioning, Counselor.  This is all subject to a contested

21   hearing before Judge Lane that, frankly, he's about to rule on.

22   And we're not going to get into any discovery in this call on

23   that matter.  So I'm going to direct my client not to answer

24   any questions regarding the pending sale.

25             MR. HOWARD:  Mr. Lefkowitz, I presume you'll follow

SUFFERN PARTNERS LLC                                                42

1    your client's (sic) instruction, yes?

2              MR. LEFKOWITZ:  Absolutely

3              MR. HOWARD:  Or your counsel's instructions.  Sorry.

4              All right.  Let's move on to Section H, then, if we

5    could?

6              MR. LEFKOWITZ:  Um-hum.

7              MR. HOWARD:  Okay.  Just looking at Section H, the

8    section's labeled, "Your Codebtors", right?

9              MR. LEFKOWITZ:  Um-hum.

10             MR. HOWARD:  Okay.  Now, you had mentioned earlier on,

11   I think was under Schedule -- one of the previous schedules --

12   that the North 14th Street Realty Associates is -- you had

13   mentioned that entity.  North 14th is a cosigner to a

14   promissory note secured, in part, by 25 Old Mill Road, right?

15             MR. LEFKOWITZ:  Correct.

16             MR. HOWARD:  Okay.  Does the debtor have any other

17   agreements with the North 14th Street entity aside from that

18   promissory note?

19             MR. LEFKOWITZ:  No.

20             MR. HOWARD:  Okay.  Also on Schedule -- well, let me

21   just ask you this, if I could.  I believe (indiscernible) Mr.

22   Morrissey's examination, you had said something akin to the

23   fact that the debtor and CPIF Lending LLC has a loan agreement

24   between them; is that right?

25             MR. LEFKOWITZ:  Correct.

SUFFERN PARTNERS LLC                                    43

1          MR. HOWARD:  Okay.  Does the debtor retain a copy of
2    that document?
3          MR. LEFKOWITZ:  I think we went through this line of
4    questioning.  These are public records.
5          MR. HOWARD:  And when you say public records, you mean
6    on the docket of this case or available at some clerk's office?
7          MR. LEFKOWITZ:  Some clerk's office in Rockland
8    County.
9          MR. HOWARD:  Okay.  In the event that the document is
10   not available in the clerk's office, does the debtor retain a
11   copy of that agreement?
12         MR. LEFKOWITZ:  I'm sure we have copies of it, yes.
13         MR. HOWARD:  Okay.  And I just want to briefly ask you
14   about a few transfer -- about transfers that might have been
15   made by the debtor prior to filing its bankruptcy petition.  In
16   particular, I'd like to -- could you -- are you able to tell us
17   whether or not there are any payments that the debtor had made
18   prior to filing the bankruptcy petition greater than, say,
19   50,000 dollars, except for to lawyers or recurring utility
20   bills or general service providers in the ordinary course?
21         MR. LEFKOWITZ:  You're talking about prior to filing
22   petition going when back?  Ninety days?  180 days?  Three
23   years?
24         MR. HOWARD:  As far back as you can remember, since
25   the inception of the company, and what was the point that would

1  gain, if I recall correctly?

2          MR. LEFKOWITZ:  So if -- so then repeat your question

3  again.  If payments were made to what, other than ordinary

4  course of business, the answer is no.

5          MR. HOWARD:  Okay.  Has the debtor made any

6  distributions to its members since its inception in 2017?.

7          MR. LEFKOWITZ:  No.

8          MR. HOWARD:  Okay.  What are the payments to its

9  managers other than salary?

10          MR. LEFKOWITZ:  None.

11          MR. HOWARD:  You'd mentioned that you, if I recall

12  correctly, that you had acquired your interest in Suffern in

13  2019; is that right?

14          MR. LEFKOWITZ:  Correct.

15          MR. HOWARD:  Okay.  Do you recall which month, by

16  chance?

17          MR. LEFKOWITZ:  Either March or April.

18          MR. HOWARD:  You don't recall the day?

19          MR. LEFKOWITZ:  No.

20          MR. HOWARD:  Is there anyone -- well, let me ask you

21  this first of all.  I assume you've done the lion's share of

22  the bookkeeping for Suffern since you acquired your interest in

23  2019, correct?

24          MR. LEFKOWITZ:  Correct.

25          MR. HOWARD:  Okay.  Do you happen to recall who

SUFFERN PARTNERS LLC                                    45

```
 1   managed the books prior to that?
 2            MR. LEFKOWITZ:  No.
 3            MR. HOWARD:  Are you aware if debtor has filed all
 4   appropriate tax returns since its inception?
 5            MR. LEFKOWITZ:  Appropriate returns, correct.  Yeah.
 6            MR. HOWARD:  Appropriate returns, yes.
 7            MR. LEFKOWITZ:  I believe so, yeah.
 8            MR. HOWARD:  Okay.  And does the debtor retain those
 9   copies of returns?
10            MR. LEFKOWITZ:  I believe so.
11            MR. HOWARD:  Okay.
12            MR. LEFKOWITZ:  Whatever they filed, I have.
13            MR. HOWARD:  Okay.  One moment.  Are you familiar with
14   an entity called Bridgewater Capital?
15            MR. LEFKOWITZ:  Only by name.
16            MR. HOWARD:  Okay.  Do you recall where you would have
17   heard that name?
18            MR. LEFKOWITZ:  The closing statement.
19            MR. HOWARD:  Okay.  The closing statement for what?
20   For the 25 Old Mill Road property?
21            MR. LEFKOWITZ:  Closing statement when Suffern
22   Partners acquired the property, the --
23            MR. PASTERNAK:  Counsel, I'm going to stop this line
24   of questioning then.  This is related to the dispute between
25   our respective clients.  I'm going to direct the client to
```

SUFFERN PARTNERS LLC                                    46

```
 1   answer no further questions about this entity.
 2              MR. HOWARD:  Okay.  Mr. Lefkowitz, could I ask you, do
 3   you anticipate -- well, let me ask you first of all, Mr.
 4   Lefkowitz.  I assume you're going to follow your advice of
 5   counsel?
 6              MR. LEFKOWITZ:  Yes.
 7              MR. HOWARD:  Okay.  Do you anticipate any unreported
 8   claims in the schedules here being filed from any entities
 9   related to that closing that you just mentioned?
10              MR. LEFKOWITZ:  Say that again.  Do I anticipate?  I
11   anticipate nothing.
12              MR. HOWARD:  Yes, do you -- I'm sorry.  The speaker
13   broke up a bit.  Could I hear that answer again?
14              MR. LEFKOWITZ:  You're asking me if I anticipate?
15              MR. HOWARD:  Yes.  Do you anticipate any claims from
16   any --
17              MR. LEFKOWITZ:  I don't anticipate.  I don't
18   anticipate nothing until it shows up in the register.
19              MR. HOWARD:  Okay.
20              MR. MORRISSEY:  Okay.  Mr. Howard, are you almost
21   finished with the questioning?
22              MR. HOWARD:  I am, Mr. Morrissey.  Just maybe a minute
23   or two more at most.
24              Are you familiar with the entity Watermark Associates?
25              MR. LEFKOWITZ:  No.
```

1          MR. HOWARD:  Are you familiar with an individual named

2   Jacob Lefkowitz?

3          MR. LEFKOWITZ:  No.

4          MR. HOWARD:  Okay.  Just one more moment, Mr.

5   Morrissey.  If you'll just indulge me to consult with my

6   cocounsel just briefly?

7          Okay.  Mr. Lefkowitz, that concludes our questions for

8   this time.  Thank you for your time.

9          And Mr. Morrissey, thank you for your indulgence.

10         MR. MORRISSEY:  Okay.  Thank you, Mr. Howard.

11         I'm just going to go down the list.  No one is

12  required to ask questions, just so you're aware of that.

13         But Continental Kosher Catering.  Is anyone on the

14  line for them?  Hearing no response.

15         Mr. Fiveson, do you have any questions?

16         MR. FIVESON:  Yes, I do.  I have a few questions.

17  Thank you.

18         Mr. Lefkowitz, how did you learn of the opportunity to

19  purchase the membership interest in Suffern from Ms. Reisman

20  and RSOM?

21         MR. LEFKOWITZ:  They reached out to me.

22         MR. FIVESON:  And had you had any prior business

23  relationships with Ms. Reisman or RSOM?

24         MR. LEFKOWITZ:  No.

25         MR. FIVESON:  Now, the DG Realty obligation that you

1  have on the Schedule E/F, is there an underlying promissory

2  note that was given by Suffern to DG Realty to memorialize the

3  obligations of these payments?

4          MR. MORRISSEY:  Yes.

5          MR. FIVESON:  And where was that note?

6          MR. LEFKOWITZ:  Its physical notice?

7          MR. FIVESON:  Yes.

8          MR. LEFKOWITZ:  I assume it's with DG.

9          MR. FIVESON:  Okay.  Did anyone guarantee that note?

10          MR. LEFKOWITZ:  No.

11          MR. FIVESON:  And were there, in fact, payments made

12  by DG Realty to the Suffern?

13          MR. LEFKOWITZ:  Sure.

14          MR. FIVESON:  And how were these payments made?

15          MR. LEFKOWITZ:  What kinds of payments?

16          MR. FIVESON:  Well, were they made by check, cash,

17  wire?

18          MR. LEFKOWITZ:  Credit card.

19          MR. FIVESON:  Well --

20          MR. LEFKOWITZ:  I'm saying cash --

21          MR. FIVESON:  Did Suffern --

22          MR. LEFKOWITZ:  -- credit card to the list.

23          MR. FIVESON:  And credit cards?

24          MR. LEFKOWITZ:  For them managing the property.

25          MR. FIVESON:  Well, let me let me break that down.

 1   Were the payments made into Suffern directly?

 2              MR. LEFKOWITZ:  No.  No.

 3              MR. FIVESON:  By the way, did Suffern have a bank

 4   account prior to its filing Chapter 11?

 5              MR. LEFKOWITZ:  Yes.

 6              MR. FIVESON:  And where was that bank account?

 7              MR. LEFKOWITZ:  Citibank.

 8              MR. FIVESON:  At what branch?

 9              MR. LEFKOWITZ:  Oh, I wouldn't know that.

10              MR. FIVESON:  Okay.  So is it fair to say that there

11   are no direct payments from DG Realty to Suffern's bank account

12   that comprises this five million dollars?

13              MR. LEFKOWITZ:  Correct.

14              MR. FIVESON:  And are there any wire transfers of

15   money from DG Realty to Suffern that comprises this five

16   millions dollars?

17              MR. LEFKOWITZ:  No.

18              MR. FIVESON:  And are there any cash deposits from DG

19   Realty into this bank account that comprises the five dollars

20   million?

21              MR. LEFKOWITZ:  No.

22              MR. FIVESON:  Now, what did DG Realty render periodic

23   statements to Suffern to account for the money that it was

24   advancing on behalf of Suffern?

25              MR. LEFKOWITZ:  Yes.

SUFFERN PARTNERS LLC                                    50

1          MR. FIVESON:  And when were these statements rendered?

2          MR. LEFKOWITZ:  I wouldn't know, but I know there are

3    statements.

4          MR. FIVESON:  All right.  Did you receive those

5    statements?

6          MR. LEFKOWITZ:  Yes.

7          MR. FIVESON:  And do you have copies of those

8    statements?

9          MR. LEFKOWITZ:  Yes.

10         MR. FIVESON:  And have any monies has been paid to DG

11   Realty by Suffern?

12         MR. LEFKOWITZ:  Okay (sic).

13         MR. FIVESON:   You also mentioned credit cards.  Can

14   you explain, was DG Realty charging expenses for Suffern on its

15   credit cards?

16         MR. LEFKOWITZ:  Correct.

17         MR. FIVESON:  And is there, in the statements that DG

18   Realty rendered, did they itemize the credit card expenses?

19         MR. LEFKOWITZ:  Yes.

20         MR. FIVESON:  And when was the last date you got a

21   statement from DG Realty for advances made on behalf of

22   Suffern?

23         MR. LEFKOWITZ:  Prior to the bankruptcy.

24         MR. FIVESON:  Well, when was that?

25         MR. LEFKOWITZ:  I don't know.  Sometimes in either end

SUFFERN PARTNERS LLC                                     51

1  of April, beginning of May.

2          MR. FIVESON:  And what was the amount that was claimed

3  to be owed on that statement?

4          MR. LEFKOWITZ:  Five million and change.

5          MR. FIVESON:  And that five million dollars, does that

6  includes interest?

7          MR. LEFKOWITZ:  Yes.

8          MR. FIVESON:  What is the interest that Suffern agreed

9  to pay DG Realty for its advances?

10         MR. LEFKOWITZ:  I don't -- I don't have it in front of

11 me.

12         MR. FIVESON:  Well, do you have an approximate amount?

13         MR. LEFKOWITZ:  I think it was 110 percent.

14         MR. FIVESON:  Now, I think you mentioned that David

15 Gefen is a principal of Perigrove.

16         MR. LEFKOWITZ:  I didn't say that.

17         MR. FIVESON:  Is that correct?

18         MR. LEFKOWITZ:  And I said David Gefner is a principal

19 of DG Realty.

20         MR. FIVESON:  Excuse me.  And does he have a

21 relationship with Perigrove?

22         MR. LEFKOWITZ:  Yes.  That's the same question that

23 Casey asked.

24         MR. FIVESON:  Well, I'm just leading into another

25 question.  Now, what was his --

SUFFERN PARTNERS LLC                                52

 1        MR. LEFKOWITZ:  Why don't you -- why don't you ask --
 2   why don't you ask the leading question?  You don't have to
 3   repeat the same questions.
 4        MR. FIVESON:  Well, I have to -- thank you.  I
 5   appreciate your assistance.
 6        What is his title at Perigrove?
 7        MR. LEFKOWITZ:  I don't know.
 8        MR. FIVESON:  Now, do you have any relation with
 9   Perigrove?
10        MR. LEFKOWITZ:  Again, it's the same line of
11   questioning.  If you want me to repeat it, I'll repeat it.
12        MR. FIVESON:  Yeah.  I think you said they --
13        MR. LEFKOWITZ:  Could --
14        MR. FIVESON:  -- an office there.  Other than officing
15   there, do you presently have any relation with Perigrove?
16        MR. LEFKOWITZ:  What does a relation mean?  I said I'm
17   officing --
18        MR. FIVESON:  Are you an officer?  Are you a director?
19   Do you hold an office with Perigrove?
20        MR. LEFKOWITZ:  I don't hold an office with Perigrove.
21   I'm not a director, although maybe I use the title director in
22   business transaction talking to vendors, but I'm not a
23   director.  I'm not a shareholder.  I'm not an officer.  I'm not
24   a member.  I'm not a principal.
25        MR. FIVESON:  Okay.  So let me just clarify --

SUFFERN PARTNERS LLC                                        53

1           MR. PASTERNAK:  Mr. Fiveson.  Mr. Fiveson, excuse me.

2           MR. FIVESON:  Yes.

3           MR. PASTERNAK:  This line of questioning has to do

4    with the debtor's assets and liabilities.

5           MR. FIVESON:  Who's speaking?  I'm sorry.

6           MR. PASTERNAK:  I'm sorry.  This is Mr. Pasternak.

7    I'm supposed to identify.

8           MR. FIVESON:  Well, and I'm trying to determine

9    whether or not this scheduled claim is a bona fide claim or

10   whether it's a claim of an insider.  I'm almost finished.

11          MR. PASTERNAK:  Go ahead.  Go ahead, David.

12          MR. FIVESON:  I'm almost finished, but that's the

13   basis.

14          MR. PASTERNAK:  Oh.  Thank you.

15          MR. FIVESON:  But just so I'm clear, currently you

16   don't have any business title with Perigrove; is that correct?

17          MR. LEFKOWITZ:  I don't know what business title

18   means.  Tell me --

19          MR. FIVESON:  You not an officer?  You're not a

20   director?  You're not a --

21          MR. LEFKOWITZ:  I'm not a director.  I'm not a

22   principal.  I'm not a shareholder.  I'm not a manager.  I'm not

23   an employee.  And I'm not a principal.

24          MR. FIVESON:  Okay.  Now --

25          MR. LEFKOWITZ:  And I don't get paid from Perigrove.

SUFFERN PARTNERS LLC                                          54

1           MR. FIVESON:  Now, have you ever, in the past, held

2    yourself out as a manager, member, principal, director, or

3    employee of Perigrove?

4           MR. LEFKOWITZ:  I don't recall.

5           MR. FIVESON:  Okay.  I have no further questions.

6    Thank you.

7           MR. MORRISSEY:  Okay.  Thank you Mr. Fiveson.

8           Looking down my list here, Mr. Alleman, CPIF is a

9    secured lender, and this is a meeting of unsecured creditors.

10   But still, since you're here, if you would like to ask a few

11   questions, please do.

12          MR. ALLEMAN:  Thank you.  We don't have any questions.

13          MR. MORRISSEY:  All right.  Thank you.

14          Mr. Alter?

15          MR. ALTER:  No questions.  Thank you, Mr. Morrissey.

16          MR. MORRISSEY:  Thank you.  And finally, Mr. Frankel.

17          Mr. Frankel, are you still there?  Okay.  Hearing no

18   response.

19          So that is all from me as well.  I appreciate your

20   participation and --

21          MR. FRANKEL:  Excuse me.  Excuse me.  I just got my --

22   I had a problem with the phone.  I'm sorry.

23          MR. MORRISSEY:  Okay.  Mr. --

24          MR. FRANKEL:  May I ask my questions?

25          MR. MORRISSEY:  Mr. Frankel, is that you?

1              MR. FRANKEL:  Yes.

2              MR. MORRISSEY:  Okay.  Would you like to ask any

3    questions?

4              MR. FRANKEL:  Yes, I would.  Yes.

5              MR. MORRISSEY:  Okay.  And please speak loudly, just

6    so that the machine can pick up your voice.  And also please

7    repeat the names of the entities that you represent.  Thank

8    you.

9              MR. FRANKEL:  Yes.  Yes.  My name is Uziel Frankel,

10   and my company is Lone Pine Associates LLC, and I'm also

11   representing Judy Brags.

12             My question to Mr. Lefkowitz was regarding income to

13   the company.  First I want to ask, how large is the property,

14   the actual building on the premises, which including the kosher

15   caterer, whatever his name is, how big is that property?

16             MR. LEFKOWITZ:  First of all, who are you, and what's

17   your standing here?

18             MR. FRANKEL:  I'm owed money by Suffern.

19             MR. PASTERNAK:  And I have the same question.  This is

20   Mr. Pasternak.

21             Mr. Frankel, are you an attorney?

22             MR. FRANKEL:  No.

23             MR. PASTERNAK:  All right.  Well, what do you mean by

24   you represent Judy Brags?

25             MR. FRANKEL:  No, he asked me to -- just to mention --

SUFFERN PARTNERS LLC                                          56

1    to be able to ask any questions.  I don't have any questions on

2    Judy Brags, so let's say we'll drop that.  But I do

3    represent --

4              MR. PASTERNAK:  Okay.  So you're a principal of Loan

5    Pine?

6              MR. FRANKEL:  Lone Pine Associates, yes.  Yes.  Yes.

7              MR. PASTERNAK:  All right.  Let the record reflect

8    that he is not a creditor of this bankruptcy.  And I'm going to

9    object --

10             MR. FRANKEL:  Well, I should have been.

11             MR. PASTERNAK:  -- to this module.  That's all.

12             MR. FRANKEL:  I should have been.

13             MR. PASTERNAK:  No, your --

14             MR. FRANKEL:  I should have been.

15             MR. PASTERNAK:  -- claims were dismissed in state

16   court, sir.

17             MR. FRANKEL:  No, it wasn't.  It was dismissed -- not

18   against Suffern.  Not against Suffern.  No.  On the record,

19   Judge Drain said no.

20             MR. PASTERNAK:  Okay.

21             MR. FRANKEL:  Check the record.

22             MR. PASTERNAK:  Okay.

23             MR. MORRISSEY:  Okay.  Mr. --

24             MR. FRANKEL:  Check the record from January of '20.

25   Check it.

**SUFFERN PARTNERS LLC**                    57

```
 1            MR. MORRISSEY:  Okay.  Okay.  Mr. Frankel --
 2            MR. FRANKEL:  I'm there --
 3            MR. MORRISSEY:  This is Richard Morrissey again.  I'll
 4    call you a disputed creditor for the limited purpose of this
 5    341 meeting.  But if you would like to ask just a couple of
 6    questions, please do.  Thank you.
 7            MR. FRANKEL:  Okay.  Thank you.  My first question was
 8    the size of the building.  How many square feet?
 9            MR. LEFKOWITZ:  Mr. Morrissey, this Frankel, Uziel
10    Frankel, is a fraudster.
11            MR. MORRISSEY:  Okay.  Mr. --
12            MR. LEFKOWITZ:  We forced him out in the state court.
13            MR. MORRISSEY:  Mr. Lefkowitz.
14            MR. LEFKOWITZ:  Let me finish.  Judge, let me finish
15    talking.  We flushed them out in state court.  He's trying to
16    confuse this meeting, something about what Judge Drain said.
17    We had lengthy litigation in state court, and it was all -- all
18    dismissed and all disposed of, and I refuse to have any
19    conversation with this man.
20            MR. PASTERNAK:  He's going to have to request a 2004
21    examination of my client, Mr. Morrissey.  We object to any line
22    of questioning from this person.
23            MR. MORRISSEY:  Okay.  And Mr. Frankel, considering I
24    am not the court, I am not the judge, I cannot compel --
25            MR. FRANKEL:  I understand.
```

```
 1           MR. MORRISSEY:  -- an answer.
 2           MR. FRANKEL:  I appreciate that.  Thank you.
 3           MR. MORRISSEY:  Okay?
 4           MR. FRANKEL:  Yeah.  But it's just very interesting.
 5   I just want to say this, but listening to --
 6           MR. PASTERNAK:  Before you sit -- before you --
 7           MR. MORRISSEY:  Okay.  Okay.
 8           MR. LEFKOWITZ:  Before you -- before you say -- why
 9   don't you disclose -- why don't you disclose at this meeting
10   that you're also in the bankruptcy of RS Old Mill in the
11   Eastern District, because you are.
12           MR. FRANKEL:  Because it's in the records.  It's the
13   records itself.  Have your client pay for it.
14           MR. MORRISSEY:  Okay.
15           MR. FRANKEL:  I can be just as nasty as your client.
16           MR. MORRISSEY:  Okay.  This is not 341 meeting
17   questioning, so I'm going to cut it off there.  And everyone
18   has had a -- h
19           MR. FRANKEL:  I was just looking to discussing about
20   some income that came into the building that he's not
21   discussing.
22           MR. MORRISSEY:  Okay.  Okay.  Mr. Frankel, he's not
23   going to answer the questions, and I can't --
24           MR. FRANKEL:  Why doesn't he have to answer?
25           MR. MORRISSEY:  I can't.
```

1              MR. FRANKEL:  He doesn't have to answer.

2              MR. MORRISSEY:  And I can't force him to.  But you can

3     seek an order from the court directing that Mr. Lefkowitz

4     appear for a deposition, if you would like to go that route,

5     but you would need court approval for that.  I can't give you

6     that approval.

7              So having said that, I believe the questioning is all

8     done.  Then I take it there's no one else on the line who

9     wishes to ask any questions of Mr. Lefkowitz?  Okay.  Hearing

10    no response, I thank you very much.  I wish you all good luck.

11    And this meeting is closed.

12          (Whereupon these proceedings were concluded at 3:01 PM)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T I O N

3

4    I, Hana Copperman, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Hana Copperman*

8

9    _____

10   Hana Copperman (CET-487)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  June 29, 2021

18

19

20

21

22

23

24

25

21-22280-shl Doc 126-2 Filed 08/11/21 Entered 08/11/21 13:46:55 Page 64 of 73
21-22280-shl Doc 126-2 Filed 08/11/21 Entered 08/11/21 13:46:55 Exhibit C of Alan H. Katz   Pg 64 of 73

SUFFERN PARTNERS LLC
Main Case No. 21-22280-shl

June 24, 2021

## A

**able (5)**
23:25;24:2;26:8;
43:16;56:1
**Abriano (2)**
11:20,24
**A-B-R-I-A-N-O (1)**
11:21
**Absolutely (1)**
42:2
**Abstract (3)**
7:25;20:14,19
**according (1)**
28:11
**account (14)**
11:4,7,13,16;
20:10;24:13,15;
28:18;31:18;49:4,6,
11,19,23
**accounts (1)**
15:13
**accruing (1)**
31:18
**acquire (1)**
13:13
**acquired (12)**
16:25;17:1,4,12,
12;18:1;20:18;
27:20,21;44:12,22;
45:22
**acquisition (1)**
16:3
**acres (1)**
13:3
**action (5)**
17:22;20:17;21:3,
7,12
**actual (3)**
15:1;19:14;55:14
**actually (6)**
12:5;17:22;24:18;
38:6;39:22;40:21
**adding (1)**
12:14
**addition (1)**
15:12
**additional (1)**
16:4
**adjudicated (1)**
29:9
**administration (1)**
5:9
**administrative (2)**
23:25;31:18
**ADP (1)**
36:10
**advanced (2)**
33:14;36:24
**advances (3)**
40:9;50:21;51:9
**advancing (2)**
27:15;49:24

**adversary (3)**
20:1,23,25
**advice (2)**
29:14;46:4
**affairs (1)**
10:10
**affect (1)**
30:19
**affiliate (1)**
39:11
**Affirm (1)**
5:20
**affirmed (1)**
5:22
**affirming (1)**
5:19
**afloat (1)**
18:8
**afternoon (3)**
7:18;8:3;33:1
**Again (16)**
9:2,4,10;12:16;
19:21;21:4,24;
30:17;32:3,13,24;
44:3;46:10,13;
52:10;57:3
**against (7)**
15:24;17:19,19;
18:18;35:2;56:18,18
**agent (1)**
20:20
**ago (2)**
21:11;30:12
**agreed (1)**
51:8
**agreement (12)**
21:6;25:17;26:17;
35:14;37:7,7;40:7,8,
11,12;42:23;43:11
**agreements (2)**
34:22;42:17
**ahead (4)**
15:7;19:12;53:11,
11
**aiming (1)**
23:18
**AKA (1)**
18:25
**akin (1)**
42:22
**ALAN (2)**
3:10;6:23
**alarm (3)**
22:13;36:9,13
**ALLEMAN (7)**
3:19;7:18,19,21,
23;54:8,12
**A-L-L-E-M-A-N (1)**
7:23
**alleviating (1)**
35:13
**almost (3)**

46:20;53:10,12
**ALTER (4)**
8:3,4;54:14,15
**Alter& (1)**
8:4
**Although (3)**
5:24;22:11;52:21
**always (2)**
13:23,25
**amended (1)**
12:13
**among (2)**
28:7;31:16
**amount (16)**
15:13,16,18,25;
18:11;22:3,4,15;
25:4;30:9,14,18;
32:2;38:7;51:2,12
**anticipate (8)**
46:3,7,10,11,14,
15,17,18
**apologize (1)**
17:7
**Apparently (1)**
28:16
**appear (3)**
5:11;31:19;59:4
**appearance (1)**
6:13
**appearances (1)**
6:18
**appeared (2)**
30:4,12
**appearing (1)**
6:24
**application (2)**
25:10,15
**applied (1)**
28:18
**apply (1)**
32:16
**appraisal (1)**
14:25
**appreciate (4)**
29:14;52:5;54:19;
58:2
**appropriate (3)**
45:4,5,6
**approval (1)**
20:2;59:5,6
**approved (3)**
19:24;23:19;30:10
**approves (1)**
21:14
**approximate (3)**
15:18;22:4;51:12
**approximately (7)**
13:3,4,12;22:10,
10,13;25:2
**April (3)**
27:22;44:17;51:1
**ARONOFF (2)**
3:13;7:19

**arrangement (8)**
34:16,18;35:7,8,9,
9,11;37:3
**arrangements (1)**
35:10
**arrears (3)**
15:19;23:15;24:24
**aside (2)**
34:12;42:17
**assessment (1)**
28:12
**assets (1)**
53:4
**assign (1)**
18:10
**assistance (1)**
52:5
**associated (3)**
21:18,22;24:19
**Associates (11)**
4:12;8:13,19,24;
15:25;33:15;34:7;
42:12;46:24;55:10;
56:6
**assume (5)**
25:16;36:11;
44:21;46:4;48:8
**ATC (2)**
36:4,8
**attack (1)**
21:1
**attorney (7)**
5:7;30:4,11,12,13;
33:1;55:21
**Attorneys (3)**
3:3,14;4:3
**auction (1)**
15:5
**August (1)**
14:10
**authority (1)**
20:3
**available (5)**
29:8;33:9;35:15;
43:6,10
**aware (4)**
17:21;41:17;45:3;
47:12
**away (1)**
26:11

## B

**back (4)**
12:24;16:16;
43:22,24
**bank (10)**
11:3,9,10;20:10;
24:13,14;49:3,6,11,
19
**bankruptcy (18)**
5:10,10,12;6:10;
11:1;18:15;19:11,19,

23;20:16,24;25:9,16;
43:15,18;50:23;
56:8;58:10
**based (3)**
14:24;23:18;32:1
**basically (1)**
18:5
**basis (1)**
53:13
**bathroom (1)**
40:17
**become (1)**
41:17
**begin (3)**
5:16;32:20,21
**beginning (1)**
51:1
**behalf (5)**
6:24;7:19;33:2;
49:24;50:21
**believes (1)**
30:6
**bell (1)**
37:21
**BENESCH (2)**
3:13;7:19
**best (1)**
6:20
**big (1)**
55:15
**Bill (2)**
7:18;23:5
**bills (1)**
43:20
**bit (3)**
15:7;33:13;46:13
**Bloomingdale (1)**
6:15
**bona (1)**
53:9
**bonus (1)**
38:1
**bookkeeping (1)**
44:22
**books (1)**
45:1
**both (3)**
6:23;24:18,24
**Brags (5)**
9:3,7,7;55:11,24;
56:2
**B-R-A-G-S (1)**
9:7
**branch (2)**
11:11;49:8
**break (1)**
48:25
**Brescia (1)**
8:4
**Bridgewater (1)**
45:14
**briefly (3)**
20:16;43:13;47:6

21-22280-shl Doc 126-2 Filed 08/11/21 Entered 08/11/21 13:46:55 Exhibit C of a Portion
SUFFERN PARTNERS LLC    of Alan H. Katz    Pg 65 of 73
Main Case No. 21-22280-shl                                                                                    June 24, 2021

broke (1)
  46:13
broker (3)
  25:6,8,11
Brookfield (1)
  3:4
Brooklyn (3)
  16:7;18:21,23
Bruce (1)
  8:4
building (10)
  13:5,10,14;14:8,9;
  36:13;40:9;55:14;
  57:8;58:20
business (8)
  13:1;39:1,4;44:4;
  47:22;52:22;53:16,
  17
BUTLER (2)
  4:2;7:14
buy (1)
  19:10
buyer (3)
  25:22,23,24
buyer's (1)
  26:13

## C

calendar (1)
  23:3
call (6)
  6:19;7:2;9:6;
  40:17;41:22;57:4
called (6)
  8:8;17:3;19:8;
  20:15;39:7;45:14
came (6)
  12:3;14:9;17:14;
  23:2,5;58:20
can (16)
  5:24,25;9:13;14:5;
  16:14;22:8;27:14;
  29:3;32:15,15;41:7;
  43:24;50:13;55:6;
  58:15;59:2
capital (2)
  18:7;45:14
card (3)
  48:18,22;50:18
cards (3)
  48:23;50:13,15
carries (1)
  24:24
carrying (1)
  24:18
case (14)
  5:4,12;9:9;15:8;
  19:24;25:9;28:23,
  24;29:1,13;31:16,23;
  37:12;43:6
cases (1)
  5:10

CASEY (4)
  3:9;6:22;33:1;
  51:23
cash (3)
  48:16,20;49:18
catch (1)
  8:15
caterer (1)
  55:15
Catering (4)
  7:9;14:4,7;47:13
cause (1)
  16:22
CB (1)
  25:12
CBRE (1)
  25:12
CEO (2)
  4:13;6:6
certainly (4)
  9:10;29:7;30:16;
  32:25
certificate (1)
  12:13
certiorari (2)
  22:12;30:9
chance (1)
  44:16
change (4)
  22:17;34:9;36:12;
  51:4
changes (1)
  10:23
Chapter (3)
  31:13,15;49:4
charge (1)
  38:1
charging (1)
  50:14
check (4)
  48:16;56:21,24,25
circumstances (1)
  24:22
Citibank (1)
  49:7
Citron (1)
  6:15
City (1)
  33:2
claim (25)
  15:24;17:10,16,18,
  19;20:25;21:4;28:3,
  11,13;29:4,8,9,15;
  30:6,8,18;33:14;
  35:2;36:13,15,18;
  53:9,9,10
claimant (2)
  29:21;30:1
claimed (1)
  51:2
claims (3)
  28:20;29:5;31:18;
  46:8,15;56:15

clarify (2)
  34:25;52:25
clear (3)
  16:13;17:15;53:15
clerk's (3)
  43:6,7,10
client (10)
  7:1,2;8:21,22;
  35:22;41:23;45:25;
  57:21;58:13,15
clients (1)
  45:25
client's (2)
  8:8;42:1
close (3)
  23:16,24;26:11
closed (1)
  59:11
closing (10)
  16:10;17:11;
  19:10;23:15,16,20;
  45:18,19,21;46:9
Co (1)
  4:4
cocounsel (1)
  47:6
Code (1)
  5:10
Codebtors (1)
  42:8
collateral (3)
  16:4;18:20;35:13
collateralization (3)
  16:9,15;34:16
colleague (2)
  6:23;11:20
combination (2)
  18:4,12
commemorate (2)
  34:18,20
commenced (2)
  14:11;17:23
commencement (1)
  14:10
comment (1)
  29:3
comments (1)
  35:1
communication (1)
  30:11
companies (1)
  15:16
company (22)
  8:22;14:4,7;15:16;
  16:25;17:3;18:1,6;
  19:8;20:10,14,14;
  22:9;27:8;36:9,10;
  39:7,14;41:2;43:25;
  55:10,13
compel (1)
  57:24
complete (1)
  21:6

comprises (3)
  49:12,15,19
concerning (1)
  11:25
concluded (1)
  59:12
concludes (1)
  47:7
condition (2)
  31:15;32:19
confirmation (4)
  29:6,7,8;30:19
confirmed (1)
  29:5
confuse (1)
  57:16
connection (6)
  38:20,23;39:6,9,
  13,16
connections (1)
  39:3
consideration (3)
  17:25;20:4,5
considering (1)
  57:23
consult (1)
  47:5
consummate (1)
  26:8
contested (1)
  41:20
Continental (4)
  7:9;13:8;15:19;
  47:13
continue (1)
  36:24
contract (2)
  14:21;19:9
conversation (1)
  57:19
copies (3)
  43:12;45:9;50:7
COPLAN (2)
  3:13;7:19
copy (7)
  12:6;35:15,20;
  36:5;37:8;43:1,11
corporation (1)
  19:4
correctly (2)
  44:1,12
cosigner (1)
  42:13
cost (1)
  22:8
costs (1)
  24:19
counsel (7)
  6:12,18;12:2;
  29:11;30:17;45:23;
  46:5
Counselor (1)
  41:20

counsel's (1)
  42:3
County (8)
  8:1;23:2,3;29:22;
  30:1,4,5;43:8
couple (2)
  36:3;57:5
course (5)
  13:14;29:18;
  31:15;43:20;44:4
court (17)
  19:23;20:2,12,16;
  21:4,8,12;23:20;
  31:14;32:16;56:16;
  57:12,15,17,24;59:3,
  5
covered (2)
  31:11;40:10
covers (1)
  40:9
CPIF (12)
  3:14;7:17,20;16:3,
  4,11,14;18:17;20:22;
  24:18;42:23;54:8
Credit (6)
  48:18,22,23;50:13,
  15,18
creditor (4)
  9:8;32:12;56:8;
  57:4
creditors (3)
  15:10;28:7;54:9
cross- (3)
  16:8,14;34:15
cross-collateral (2)
  17:14;18:8
cross-collateralize (1)
  16:5
currently (1)
  53:15
cut (1)
  58:17

## D

date (5)
  5:3;23:6,8;24:1;
  50:20
DAVID (8)
  4:8;7:1,13;27:6;
  38:19;51:14,18;
  53:11
Davidoff (1)
  6:14
day (4)
  23:19;29:21;30:5;
  44:18
days (5)
  12:20;21:11;
  30:12;43:22,22
DE (1)
  3:17
dead (1)

35:13
**deadline (3)**
26:6,14,16
**deal (3)**
18:4;26:9;35:11
**debt (2)**
22:14;40:23
**debtor (47)**
5:14;6:5,8,16;8:7;
10:25;11:3,24;13:2,
16,22;15:16;16:18;
17:8,19;21:13,15;
22:18;23:24;24:2,3,
5;26:19;27:20;31:5,
11,13,15;32:13,17;
33:19;35:3;37:21;
38:21,24;39:4,17;
40:3;42:16,23;43:1,
10,15,17;44:5;45:3,8
**debtor-in-possession (2)**
11:6,16
**debtors (1)**
35:10
**debtor's (13)**
5:11,16;9:15,25;
20:13;30:22;31:12,
14;32:2,19;35:1;
37:16;53:4
**December (1)**
14:11
**decision (1)**
21:13
**declaration (3)**
10:18;22:2,5
**deed (2)**
19:14,16
**default (3)**
14:17;24:25,25
**defending (1)**
21:5
**defense (1)**
21:6
**defer (1)**
39:22
**deposit (1)**
24:14
**deposition (3)**
32:15,15;59:4
**deposits (1)**
49:18
**describe (2)**
12:25;27:14
**determine (1)**
53:8
**DG (32)**
8:2,4;27:6,15,22,
25;28:7;36:24;37:3,
16,19;38:9,14;39:12;
40:9,14,16,18;47:25;
48:2,8,12;49:11,15,
18,22;50:10,14,17,
21;51:9,19
**different (1)**

16:6
**DIP (4)**
24:3,6,10,11
**direct (4)**
21:1;41:23;45:25;
49:11
**directing (1)**
59:3
**direction (1)**
20:9
**directly (7)**
12:1,5,7;20:6,8,9;
49:1
**director (7)**
52:18,21,21,23;
53:20,21;54:2
**disbursements (3)**
12:19;32:2,3
**disclose (2)**
58:9,9
**disclosure (1)**
17:17
**discount (2)**
26:10,11
**discovery (1)**
41:22
**discuss (1)**
30:17
**discussed (1)**
34:15
**discussing (4)**
29:11;30:13;
58:19,21
**discussion (1)**
29:20
**discussions (4)**
28:22,25;29:25;
30:16
**dismissed (3)**
56:15,17;57:18
**disposed (3)**
18:9;21:2;57:18
**disposition (1)**
15:8
**dispute (7)**
21:7;22:12;28:3,
14;30:9;36:16;45:24
**disputed (3)**
28:13;29:5;57:4
**dispute's (1)**
36:17
**distributions (1)**
44:6
**District (6)**
5:8;19:11;20:12,
24;21:8;58:11
**docket (4)**
5:5;35:20;37:13;
43:6
**document (11)**
9:18,23;10:5,10,
15,18;21:25;22:6;
35:23;43:2,9

**documentation (3)**
34:18;37:2,5
**documents (3)**
10:23;34:20;37:9
**dollar (2)**
18:10;30:13
**dollars (20)**
14:22;15:14;16:1;
17:8;18:13;22:9,10,
11,13;24:24;26:10;
29:16;36:12,23;
40:24;43:19;49:12,
16,19;51:5
**done (3)**
19:19;44:21;59:8
**down (5)**
27:4;36:20;47:11;
48:25;54:8
**Drain (3)**
20:2;56:19;57:16
**Drain's (1)**
20:23
**drop (1)**
56:2
**due (8)**
22:24;23:2,4,6,8,
12;32:1,7
**during (3)**
19:19,20;31:22

**E**

**E/F (2)**
40:23;48:1
**earlier (3)**
18:18;24:13;42:10
**East (2)**
4:5;7:14
**Eastern (1)**
58:11
**ECF (1)**
22:6
**effect (1)**
30:18
**eight (1)**
26:10
**either (4)**
11:24;12:5;44:17;
50:25
**Ellis (1)**
25:12
**else (6)**
9:1,12;14:5;31:20;
34:9;59:8
**employee (2)**
53:23;54:3
**employees (1)**
21:15
**end (3)**
32:7,8;50:25
**engaged (2)**
20:19;25:15
**entities (3)**

36:3;46:8;55:7
**Entity (10)**
25:25;34:12,14;
39:21;41:18;42:13,
17;45:14;46:1,24
**equity (13)**
37:16,20,22,22,24,
25;38:1,3,4,5,5,6,7
**ESQ (4)**
3:9,10,19;4:8
**essence (2)**
26:5,7
**established (1)**
13:17
**estate (6)**
22:11,16,24;23:7,
15;29:23
**even (1)**
29:8
**event (2)**
38:10;43:9
**everyone (1)**
58:17
**everyone's (1)**
7:4
**evidencing (1)**
37:2
**exactly (1)**
6:18
**examination (4)**
5:13;32:16;42:22;
57:21
**examined (2)**
5:11,12
**example (1)**
31:17
**except (1)**
43:19
**excluding (1)**
22:14
**Excuse (6)**
12:23;14:5;51:20;
53:1;54:21,21
**existence (1)**
41:18
**existing (1)**
16:11
**expect (1)**
15:9
**expense (1)**
24:22
**expenses (5)**
21:18,21;23:25;
50:14,18
**explain (5)**
16:1;17:6;20:16;
28:13;50:14

**F**

**face (1)**
25:4
**facilities (1)**

40:18
**fact (3)**
20:1;42:23;48:11
**fair (3)**
24:8;35:19;49:10
**familiar (3)**
45:13;46:24;47:1
**far (1)**
43:24
**fee (1)**
32:6
**fees (2)**
32:1,5
**feet (3)**
13:11,12;57:8
**few (6)**
22:8;27:16;32:17;
43:14;47:16;54:10
**fide (1)**
53:9
**fifty-two-and-a-half (1)**
14:22
**file (1)**
17:16
**filed (14)**
5:10;10:25;19:11;
20:25;21:4;22:3,25;
28:23,24;31:13,22;
45:3,12;46:8
**filing (8)**
17:18,19;22:20;
28:25;43:15,18,21;
49:4
**fill (1)**
14:1
**finally (2)**
10:17;54:16
**financial (4)**
10:9;31:14;34:12,
13
**financing (1)**
16:2
**fine (1)**
22:1
**finish (2)**
57:14,14
**finished (4)**
21:20;46:21;
53:10,12
**fire (2)**
22:13;36:9
**firm (1)**
8:4
**first (10)**
12:17;13:13;
26:10;33:11;41:17;
44:21;46:3;55:13,
16;57:7
**FITZGERALD (2)**
4:2;7:14
**five (7)**
18:13;36:23;
49:12,15,19;51:4,5

**five-** (1)
 27:10
**five-million-dollar** (1)
 28:2
**FIVESON** (61)
 4:2,8;7:13,13,14,
 16;47:15,16,22,25;
 48:5,7,9,11,14,16,19,
 21,23,25;49:3,6,8,10,
 14,18,22;50:1,4,7,10,
 13,17,20,24;51:2,5,8,
 12,14,17,20,24;52:4,
 8,12,14,18,25;53:1,1,
 2,5,8,12,15,19,24;
 54:1,5,7
**F-I-V-E-S-O-N** (1)
 7:13
**flipped** (1)
 19:12
**Floor** (5)
 3:6;4:5;7:15;31:9;
 32:12
**flushed** (1)
 57:15
**focused** (1)
 33:8
**follow** (2)
 41:25;46:4
**foot** (1)
 13:4
**force** (1)
 59:2
**forced** (1)
 57:12
**forty-five-and-change** (1)
 25:2
**forwarded** (1)
 12:10
**found** (1)
 22:6
**FRANKEL** (48)
 4:12;8:10,12,12,
 16,16,16,19,22,24;
 9:2,6,10;54:16,17,
 21,24,25;55:1,4,9,9,
 18,21,22,25;56:6,10,
 12,14,17,21,24;57:1,
 2,7,9,10,23,25;58:2,
 4,12,15,19,22,24;
 59:1
**F-R-A-N-K-E-L** (1)
 8:17
**Frank-E-R-N** (1)
 5:5
**frankly** (1)
 41:21
**fraudster** (1)
 57:10
**FRIEDLANDER** (2)
 3:13;7:19
**friend** (1)
 35:18
**front** (2)

**five-** (1)
 9:16;51:10
**full** (3)
 15:10;16:5;28:8
**fund** (1)
 28:6
**funds** (1)
 20:9
**further** (2)
 46:1;54:5

**G**

**gain** (1)
 44:1
**gave** (1)
 12:3
**Gefen** (1)
 51:15
**Gefner** (5)
 38:19,21,24;39:6;
 51:18
**general** (1)
 43:20
**George** (1)
 27:7
**gets** (1)
 23:15
**Given** (2)
 31:8;48:2
**goes** (5)
 15:9;23:15;24:10;
 26:11;31:15
**Goldie** (3)
 17:3;33:23;35:12
**Goldman** (4)
 6:7,9;17:1;35:12
**Good** (4)
 7:18;8:3;32:25;
 59:10
**grapple** (1)
 29:11
**greater** (1)
 43:18
**Group** (2)
 36:4,8
**guarantee** (6)
 30:22,23,24;31:2,
 5;48:9
**guess** (1)
 6:20

**H**

**Hahn** (1)
 8:7
**happen** (5)
 16:22;34:6,21;
 36:5;44:25
**happening** (2)
 20:15;30:16
**happens** (2)
 29:6,18
**happy** (1)

7:3
**hard** (1)
 23:1
**hear** (4)
 5:24;35:2;36:25;
 46:13
**heard** (3)
 21:12;23:18;45:17
**hearing** (14)
 6:25;7:10,12,25;
 8:7;9:13;21:11;
 23:18;29:20;30:5;
 41:21;47:14;54:17;
 59:9
**heart** (1)
 22:4
**held** (1)
 54:1
**Hello** (2)
 8:10,11
**Hessen** (1)
 8:7
**higher** (1)
 15:19
**hired** (1)
 25:6
**hold** (3)
 30:8;52:19,20
**Holder** (4)
 7:10;25:24;26:13;
 41:18
**holdover** (1)
 13:8
**holds** (1)
 30:6
**hope** (1)
 23:19
**hopes** (1)
 21:13
**HOWARD** (101)
 3:9;6:22,23;7:3,7;
 32:20,22,25;33:1,6,
 11,17,22;34:4,5,9,11,
 15,20,23,25;35:6,8,
 14,17,19,24;36:2,8,
 11,17,19,22;37:2,5,8,
 11,15,19,23;38:3,9,
 13,16,18,20,23;39:3,
 6,9,13,16,19,22;40:1,
 3,6,8,12,19;41:1,3,7,
 11,14,17,25;42:3,7,
 10,16,20;43:1,5,9,13,
 24;44:5,8,11,15,18,
 20,25;45:3,6,8,11,13,
 16,19;46:2,7,12,15,
 19,20,22;47:1,4,10
**hundred** (5)
 6:7;15:11;17:4;
 26:8;28:6
**Hutcher** (1)
 6:14

**I**

**idea** (2)
 36:17;38:9
**identify** (3)
 8:9;12:17;53:7
**identity** (1)
 5:19
**immediate** (1)
 18:5
**impediment** (1)
 29:4
**Inc** (2)
 3:14;7:9
**inception** (3)
 43:25;44:6;45:4
**includes** (1)
 51:6
**Including** (3)
 12:13;38:24;55:14
**income** (1)
 55:12;58:20
**Incorporated** (1)
 6:7
**incur** (1)
 23:8
**incurred** (1)
 24:1
**indicate** (1)
 5:15
**indiscernible** (1)
 42:21
**individual** (2)
 17:3;47:1
**indulge** (1)
 47:5
**indulgence** (1)
 47:9
**industrial** (3)
 13:3,4;40:14
**information** (1)
 11:23
**infuse** (1)
 18:7
**initial** (3)
 11:19,24;31:11
**insider** (1)
 53:10
**insisted** (1)
 16:11
**instruction** (1)
 42:1
**instructions** (1)
 42:3
**Insurance** (6)
 4:3;11:25;12:2,6;
 20:13,20
**insurer** (1)
 20:13
**intend** (3)
 23:11,13,24
**intending** (1)

35:3
**intent** (1)
 35:1
**interest** (16)
 17:5;23:8;24:24,
 25;34:12,14;37:16,
 22;38:1,4,5;44:12,
 22;47:19;51:6,8
**interesting** (1)
 58:4
**interests** (1)
 17:1
**interject** (2)
 29:2;33:24
**interjecting** (1)
 39:20
**interview** (3)
 11:20,25;31:11
**into** (9)
 14:9;17:14;19:9;
 20:1;41:22;49:1,19;
 51:24;58:20
**invest** (1)
 37:17
**investigation** (1)
 19:23
**inviting** (1)
 32:20
**involve** (1)
 38:4
**involving** (1)
 20:12
**ISAAC** (2)
 4:13;6:2
**I-S-A-A-C** (1)
 6:2
**ISSM** (1)
 40:23
**issued** (1)
 20:21
**itemize** (1)
 50:18
**items** (2)
 22:8,19

**J**

**Jacob** (1)
 47:2
**January** (1)
 56:24
**Jon** (1)
 25:14
**Jonathan** (1)
 6:14
**JR** (1)
 3:19
**Judge** (8)
 20:2,23;21:14;
 41:21;56:19;57:14,
 16,24
**judge's** (1)
 21:12

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(4) five- - judge's

21-22280-shl Doc 126-2 Filed 08/11/21 Entered 08/11/21 13:46:55 Page 68 of 73
SUFFERN PARTNERS LLC                          of Alan H. Katz      Pg 68 of 73
Main Case No. 21-22280-shl                                                                      June 24, 2021

**Judy (6)**
9:3,7,7;55:11,24;
56:2
**July (5)**
23:20;26:7,11,14;
32:7
**June (3)**
5:3;21:11;23:5

## K

**KATZ (2)**
3:10;6:23
**keep (1)**
18:7
**kicker (7)**
37:20,22,24,25;
38:2,3,10
**kind (1)**
26:6
**kinds (1)**
48:15
**knowledge (3)**
37:12,23;39:24
**knows (1)**
31:14
**Kosher (5)**
7:9;13:8;15:19;
47:13;55:14

## L

**labeled (1)**
42:8
**land (1)**
13:4
**landscaping (1)**
22:10
**Lane (1)**
41:21
**large (2)**
30:18;55:13
**last (4)**
27:16,17;39:2;
50:20
**later (2)**
21:2;29:9
**law (1)**
8:4
**lawyer (1)**
30:10
**lawyers (1)**
43:19
**leading (3)**
12:20;51:24;52:2
**learn (1)**
47:18
**lease (5)**
14:10,11,13,14,15
**LEFKOWITZ (285)**
4:13;5:18,20;6:2,
2,6,11,9:15,17,19,21,
24;10:2,4,6,8,11,14,

16,19,21,22,24;11:2,
5,8,10,12,14,18,22;
12:1,7,21,23,25;
13:2,7,12,15,18,21,
25;14:2,9,14,17,21;
15:1,4,6,11,18,23;
16:2,17,19,23,25;
17:9,20,24;18:2,4,
12,14,16,19,22,25;
19:3,5,8,20,25;20:8,
18;21:16,19,23;22:2,
7,17,21,23;23:1,7,10,
13,22;24:2,7,9,12,16,
20,23;25:2,5,7,10,12,
19,20,24;26:4,7,15,
20,24;27:2,5,8,13,15,
19,21;28:1,4,9,15,
19,21;28:14,21,24;30:2,
8,20,23;31:3,7,10,21,
24;32:10,25;33:7,10,
16,21,23;34:2,5,8,10,
13,19,22,24;35:5,7,
11,16,18,22;36:1,7,9,
15,18,21;37:1,4,7,10,
14,18,22,25;38:5,12,
15,17,19,22;39:1,5,8,
11,15,18,23,24,25;
40:5,6,7,10,13,25;
41:2,6,10,13,16,25;
42:2,6,9,15,19,25;
43:3,7,12,21;44:2,7,
10,14,17,19,24;45:2,
5,7,10,12,15,18,21;
46:2,4,6,10,14,17,25;
47:2,3,7,18,21,24;
48:6,8,10,13,15,18,
20,22,24;49:2,5,7,9,
13,17,21,25;50:2,6,9,
12,16,19,23,25;51:4,
7,10,13,16,18,22;
52:1,7,10,13,16,20;
53:17,21,25;54:4;
55:12,16;57:9,12,13,
14;58:8;59:3,9
**L-E-F-K-O-W-I-T-Z (1)**
6:3
**lender (10)**
16:3,11;17:13;
24:3,6;26:9;30:24;
38:4,8;54:9
**lenders (1)**
38:1
**lender's (2)**
20:22;26:12
**Lending (5)**
3:14;7:17,20;
18:17;42:23
**lengthy (1)**
57:17
**liabilities (4)**
18:6;30:22;31:5;
53:4
**licenses (1)**

26:18
**limited (1)**
57:4
**line (11)**
22:8,19;31:9;
41:19;43:3;45:23;
47:14;52:10;53:3;
57:21;59:8
**lion's (1)**
44:21
**list (5)**
15:12,24;47:11;
48:22;54:8
**listed (4)**
27:10;29:16,17;
36:3
**listening (1)**
58:5
**listing (1)**
12:19
**litigation (4)**
17:22;20:12;
28:21;57:17
**little (2)**
5:23;15:7
**LLC (12)**
3:3;4:12,13;5:4;
6:24;7:20;8:25;27:7;
33:3;41:12;42:23;
55:10
**LLP (2)**
3:2,13
**loan (17)**
24:10,11,18,19;
25:1,4;26:10;27:11,
14;33:13;34:16,22;
35:14;37:7;38:2;
42:23;56:4
**LOCKE (6)**
3:2;6:21,23;7:5,5;
33:1
**L-O-C-K-E (1)**
7:6
**locked (1)**
20:1
**Lone (6)**
4:12;8:13,19,24;
55:10;56:6
**L-O-N-E (1)**
8:24
**long (3)**
7:4;14:7;30:15
**look (5)**
15:15;33:12;
35:25;36:19;40:21
**looking (6)**
21:25;35:21;41:8;
42:7;54:8;58:19
**LORD (4)**
3:2;6:21;7:5;33:2
**loudly (4)**
5:24;8:14;9:5;55:5
**luck (1)**

59:10

## M

**machine (3)**
5:24;12:18;55:6
**maintenance (2)**
22:13;31:19
**making (2)**
22:18;40:9
**man (1)**
57:19
**manage (1)**
27:8
**managed (2)**
40:14;45:1
**Management (13)**
8:2,5;26:22;27:7,
8,25;28:7;37:7;40:5,
7,10,12,15
**manager (2)**
53:22;54:2
**managers (1)**
44:9
**manager's (1)**
40:18
**managing (1)**
48:24
**many (3)**
13:11;27:17;57:8
**March (3)**
16:20;27:21;44:17
**marked (1)**
11:6
**Market (1)**
3:15
**matter (1)**
41:23
**may (7)**
29:3,4,4;30:18,18;
51:1;54:24
**maybe (2)**
46:22;52:21
**MCCARTHY (2)**
4:2;7:14
**mean (6)**
24:9;37:24;41:4;
43:5;52:16;55:23
**meaning (1)**
13:14
**means (1)**
53:18
**meeting (6)**
54:9;57:5,16;58:9,
16;59:11
**member (3)**
6:7;52:24;54:2
**members (5)**
17:2,3;34:6;38:13;
44:6
**membership (2)**
17:4;47:19
**memorialize (1)**

48:2
**memorialized (1)**
26:16
**mention (1)**
55:25
**mentioned (16)**
13:10;14:3;18:17;
22:19;24:13,17,18;
25:22;33:17;39:21;
42:10,13;44:11;
46:9;50:13;51:14
**mentions (1)**
40:23
**meter (2)**
28:12,17
**mezz (2)**
37:25;38:4
**might (4)**
6:20;35:4,17;
43:14
**Mill (15)**
19:9,12,13,15,15,
15,16,16;20:3,24;
34:17;41:15;42:14;
45:20;58:10
**million (12)**
14:22;25:3,5;
26:10,20,25;29:16,17,
17;49:12,20;51:4,5
**million-dollar (1)**
27:11
**millions (3)**
18:13;36:23;49:16
**Mills (4)**
3:3;6:24;7:2;33:2
**minimum (1)**
32:2
**minute (1)**
46:22
**miscellaneous (1)**
22:12
**misquote (1)**
33:18
**mistaken (1)**
27:11
**modified (1)**
25:17
**module (1)**
56:11
**moment (4)**
31:9;40:19;45:13;
47:4
**money (7)**
35:3,10;36:24;
38:6;49:15,23;55:18
**monies (4)**
27:15;29:7;33:14;
50:10
**month (6)**
22:14,16;31:13,
22;32:7;44:15
**monthly (3)**
21:17,21;24:22

21-22280-shl Doc 126-2 Filed 08/11/21 Entered 08/11/21 13:46:55 Page 69 of 73
SUFFERN PARTNERS LLC                                                      of Alan H. Katz   Pg 69 of 73
Main Case No. 21-22280-shl                                                                                    June 24, 2021

**month's (1)**
14:18
**more (6)**
5:23;7:3;8:14;9:4;
46:23;47:4
**MORRISSEY (190)**
5:2,7,21,23;6:4,9,
12,17,22,25;7:4,8,16,
21,24;8:3,6,11,14,18,
20,23;9:1,4,8,11,18,
20,22,25;10:3,5,7,9,
12,15,17,20,22,25;
11:3,6,9,11,13,15,19,
23;12:4,9,12,15,22,
25;13:6,9,13,16,19,
22;14:1,3,7,13,16,19,
23;15:2,7,12,21,24;
16:16,21,24;17:6,18,
21,25;18:3,10,14,17,
20,23;19:2,6,18,21;
20:6,11;21:10,17,21,
25;22:5,15,18,22,24;
23:6,9,11,17,23;
24:5,8,13,17,21;
25:1,4,6,8,11,13,18,
21,26:1,3,5,12,18,
21;27:1,3,6,10,14,17,
20,24;28:2,5,10,22;
29:2,15,25;30:3,15,
21;31:1,4,8,25;
32:11,22,23;33:4,5,
8,12,24;34:3;36:23;
39:19,19;40:2;46:20,
22;47:5,9,10;48:4;
54:7,13,15,16,23,25;
55:2,5;56:23;57:1,3,
3,9,11,13,21,23;58:1,
3,7,14,16,22,25;59:2
**Morrissey's (1)**
42:22
**mortgage (10)**
16:3,5,11,12,13,
13;17:13,15;18:18;
34:22
**most (2)**
33:7;46:23
**mostly (2)**
13:23,25
**motion (5)**
15:3;21:12;23:14;
25:16,17
**mouth (1)**
24:9
**move (4)**
35:24;40:22;41:7;
42:4
**much (4)**
18:3;24:14;25:1;
59:10
**must (1)**
41:4
**myself (1)**
15:8

## N

**N14 (1)**
16:7
**name (29)**
5:4,7,14;6:1,22;
7:22;8:8,8,12,15,20;
9:5,6;10:18;11:20;
25:11,21,23,24;
32:24;33:1,25,25;
38:18;39:20;45:15,
17;55:9,15
**named (1)**
47:1
**namely (1)**
32:18
**names (1)**
55:7
**nasty (1)**
58:15
**National (2)**
4:3;20:13
**nature (1)**
13:1
**need (4)**
24:10,11;29:11;
59:5
**needed (2)**
16:4;17:10
**needs (1)**
38:7
**Neither (1)**
17:20
**nevertheless (1)**
28:19
**New (11)**
3:7;4:6;5:8;6:15;
7:15,15;13:3;16:13;
34:17;40:16,16
**Next (4)**
9:25;10:10;23:3;
36:19
**nickname (1)**
19:13
**nicknamed (1)**
19:9
**ninety (2)**
12:20;43:22
**Ninth (2)**
4:5;7:15
**Nobody (1)**
14:5
**noise (1)**
12:24
**None (1)**
44:10
**nonpayment (1)**
14:17
**normal (1)**
24:22
**North (16)**
3:15;15:25;16:7;
17:7,13,16,23;33:14,
19;34:6;35:2,4,7;
42:12,13,17
**note (8)**
6:12;21:10;30:3;
42:14,18;48:2,5,9
**notes (1)**
40:20
**notice (2)**
12:14;48:6
**Novartis (5)**
19:4,5,7,10,15
**N-O-V-A-R-T-I-S (1)**
19:4
**number (3)**
5:6;22:6;33:12
**nun (1)**
21:2
**nunc (1)**
20:2
**NY (2)**
3:7;4:6

## O

**oath (1)**
5:12
**object (3)**
41:19;56:9;57:21
**obligation (1)**
47:25
**obligations (1)**
48:3
**obviously (1)**
21:13
**occasion (1)**
32:15
**occupancy (1)**
14:18
**occupied (4)**
13:6,7,10,11
**off (5)**
16:12;17:15;
23:16;32:13;58:17
**offer (1)**
29:12
**offhand (1)**
34:21
**Office (13)**
5:8;11:15;12:6,7,
11;40:4,18;43:6,7,
10;52:14,19,20
**officer (3)**
52:18,23;53:19
**offices (2)**
39:15;40:15
**officing (2)**
52:14,17
**Old (8)**
3:3;4:3;6:24;7:2,
12;19:8,12,13,14,15,
15,16,16;20:3,13,14,
20,20,24;21:1,5,8;

**26:22;33:2;34:17;**
41:15;42:14;45:20;
58:10
**once (4)**
27:4,5;30:17;
32:13
**one (18)**
9:7;11:13;12:23,
24;16:16;17:4;
18:24,25;20:21;
21:23;34:25;37:19;
40:19;42:11;45:13;
47:4,11;59:8
**ones (1)**
23:25
**only (4)**
11:13;19:22;
23:19;45:15
**onto (2)**
16:14;17:13
**open (2)**
28:17;29:4
**opened (3)**
11:3,17;28:18
**operate (4)**
26:19;27:16;
36:25;40:9
**operating (4)**
21:18,22;31:12,12
**opportunity (1)**
47:18
**opposed (2)**
14:24;15:4
**Orange (5)**
28:10,15,19,23;
29:12
**order (6)**
17:14;18:7;20:2;
23:7;26:8;59:3
**ordinary (1)**
43:20;44:3
**original (1)**
16:17
**Originally (1)**
14:14
**Otherwise (1)**
23:16
**out (7)**
6:19;17:11;23:5;
47:21;54:2;57:12,15
**outside (1)**
39:4
**outstanding (1)**
16:5
**over (2)**
18:13;26:9
**owe (1)**
15:16
**owed (6)**
17:9;25:1;30:14;
35:4;51:3;55:18
**owes (1)**
17:8

**owned (3)**
16:6;19:3,6
**owner (1)**
38:17
**owner's (1)**
20:21
**owns (2)**
13:2;40:13

## P

**page (6)**
7:5;9:20;10:1,12;
36:5;41:8
**paid (12)**
14:18;16:12;20:4,
5,20;23:15;27:4,5;
28:8;32:5;50:10;
53:25
**part (8)**
16:12;25:17;36:3,
10;39:11;40:5,7;
42:14
**partially (2)**
13:7,9
**participation (1)**
54:20
**particular (2)**
36:2;43:16
**particularly (1)**
41:9
**parties (1)**
31:14
**Partners (23)**
4:13;5:4;13:2,14;
17:2,5,12,12,15;
18:6,7,11,19;17,19;
20:18,22;21:9;
26:21;28:16,17;
40:13,15;45:22
**party (1)**
12:14
**past (1)**
54:1
**Pasternak (32)**
6:14,14;12:5,8,10,
13,15,16;25:14,14,
18;26:2;41:19;
45:23;53:1,3,6,6,11,
14;55:19,20,23;56:4,
7,11,13,15,20,22;
57:20;58:6
**pay (11)**
15:10;23:24,25;
24:2;28:20;29:8;
30:24;35:22;40:3;
51:9;58:13
**payment (6)**
18:1;23:4,4,12;
27:4;32:6
**payments (14)**
22:19;27:24;
31:17,17,18;43:17;

21-22280-shl Doc 126-2 Filed 08/11/21 Entered 08/11/21 13:46:55 Exhibit Deposition

21-22280-shl Doc 126-2 Filed 08/11/21 Entered 08/11/21 13:46:55 Page 70 of 72

SUFFERN PARTNERS LLC
Main Case No. 21-22280-shl

of Alan H. Katz   Pg 70 of 73

June 24, 2021

44:3,8;48:3,11,14,
15;49:1,11
**PC (1)**
4:2
**penalties (2)**
23:8;24:25
**pendency (1)**
31:22
**pending (6)**
15:3;21:13;22:12;
23:14;28:21;41:24
**people (1)**
31:9
**per (1)**
22:16
**percent (6)**
6:7;15:11;17:4;
26:8;28:7;51:13
**Perigrove (12)**
39:7,14;51:15,21;
52:6,9,15,19,20;
53:16,25;54:3
**period (2)**
22:25;32:8
**periodic (1)**
49:22
**permits (1)**
26:19
**P-E-R-R-I-G-R-O-V-E (1)**
39:23
**person (1)**
57:22
**personal (5)**
30:22,23,24;31:1,4
**personally (1)**
18:15
**persons (1)**
15:16
**petition (10)**
9:16;12:20;24:1;
33:8;35:25;36:5;
41:9;43:15,18,22
**ph (2)**
16:7;19:9
**Pharmaceutical (1)**
19:5
**phone (6)**
6:19,20,21;32:12;
40:17;54:22
**physical (1)**
48:6
**pick (1)**
55:6
**piece (1)**
16:7
**Pine (7)**
4:12;8:13,19,24;
55:10;56:5,6
**P-I-N-E (1)**
8:24
**Place (4)**
3:4;16:19;23:20;
24:3

**placed (1)**
16:14
**Plains (3)**
6:15;11:12;19:12
**plan (6)**
15:11;26:8;28:7,8;
29:4,12
**play (1)**
17:14
**Please (16)**
5:23;6:1;7:21;8:9,
15;12:17,25;28:13;
32:23;33:5;34:3;
39:20;54:11;55:5,6;
57:6
**pm (2)**
5:4;59:12
**point (4)**
26:13,13;33:25;
43:25
**policies (2)**
12:6;20:21
**policy (2)**
20:21,22
**portion (1)**
13:8
**position (1)**
26:10
**post-petition (2)**
22:25,25
**power (3)**
28:17,19,20
**pre- (1)**
25:15
**predecessor (4)**
16:6;30:25;33:20,
22
**predecessors (1)**
17:2
**premises (1)**
55:14
**PRESENT (2)**
4:11;35:15
**presently (2)**
14:21;52:15
**presume (1)**
41:25
**previous (1)**
42:11
**previously (1)**
19:3
**price (6)**
14:24;15:1,3;
26:23,24;29:18
**principal (11)**
16:6,17,20;38:17;
51:15,18;52:24;
53:22,23;54:2;56:4
**principals (1)**
38:24
**prior (1)**
14:10;27:21;
28:25;29:6;43:15,18,

21;45:1;47:22;49:4;
50:23
**private (2)**
15:4;25:22
**pro (2)**
20:2;21:3
**probably (3)**
12:18;15:19;18:13
**problem (2)**
34:5;54:22
**proceed (3)**
19:10;33:4;34:3
**proceeding (2)**
20:23,25
**proceedings (2)**
20:1;59:12
**proceeds (3)**
15:9;16:12;28:6
**process (1)**
30:19
**procured (1)**
16:2
**produced (1)**
37:12
**producing (1)**
38:2
**progress (1)**
30:16
**promissory (3)**
42:14,18;48:1
**proof (1)**
11:16
**properties (1)**
35:13
**property (43)**
13:20;14:20,22;
15:3,13;16:4,7,8,8,
10,14;17:12,13,14;
18:9,18,21,24;19:3,
6;20:19;21:18,22;
23:13;26:22;27:9,16,
22;29:19;31:20;
34:17;36:25;38:7,
10;40:13,14;41:5,15;
45:20,22;48:24;
55:13,15
**proposed (3)**
14:24;29:18;41:14
**protecting (1)**
41:4
**Protective (1)**
40:24
**provide (3)**
11:23;16:4;17:25
**provided (3)**
11:15;12:19;16:8
**providers (1)**
43:20
**Public (5)**
34:24;35:18;
36:10;43:4,5
**pull (1)**
21:24

**purchase (4)**
18:11;26:23,24;
47:19
**purchased (1)**
26:22
**purchaser (1)**
41:14
**purchasing (1)**
13:19
**purpose (2)**
13:19;57:4
**pursue (2)**
35:1,10
**pursuing (1)**
35:3
**put (4)**
17:13;18:21;24:3,
9

---

**Q**

**quarter (3)**
13:15;32:5,6
**quarterly (4)**
31:25;32:5,6,8
**quickly (1)**
40:22

---

**R**

**Ramapo (2)**
29:16,22
**rather (1)**
41:4
**RD (13)**
7:1,3;19:12,13;
20:3,4,4,6,8,10;21:3;
26:24;27:2
**RD's (1)**
20:9
**reached (1)**
47:21
**real (7)**
22:11,16,24;23:7,
15;29:23;30:13
**really (2)**
29:21,22
**Realty (31)**
8:2;15:25;17:8,23;
27:7,22,25;28:7;
33:14;34:6;37:3,16,
19;38:14;39:12;
40:14,18;42:12;
47:25;48:2,12;49:11,
15,19,22;50:11,14,
18,21;51:9,19
**Realty's (1)**
40:16
**reason (1)**
23:23
**recall (7)**
44:1,11,15,18,25;
45:16;54:4

**receivable (2)**
15:13,21
**receivables (1)**
15:17
**receive (1)**
50:4
**received (1)**
37:21
**record (16)**
5:2,2,6;1:7:5,22;
15:2;21:10;30:4;
32:14,14,24;35:18;
56:7,18,21,24
**recorded (1)**
5:13
**records (5)**
34:24;43:4,5;
58:12,13
**recovery (1)**
35:3
**recurring (1)**
43:19
**refer (1)**
28:12
**reference (1)**
36:4
**referenced (1)**
35:15
**referencing (1)**
33:8
**referred (1)**
7:1
**referring (1)**
15:22
**refinance (1)**
38:6
**refinanced (1)**
38:12
**reflect (3)**
5:3;31:16;56:7
**refuse (1)**
57:18
**regarding (4)**
5:12;17:23;41:24;
55:12
**register (1)**
46:18
**Reisman (7)**
17:4;33:23;34:8,
12;35:12;47:19,23
**R-E-I-S-M-A-N (1)**
34:1
**related (5)**
34:16;39:3,4;
45:24;46:9
**relation (3)**
52:8,15,16
**relationship (3)**
6:5;53:19;51:21
**relationships (1)**
47:23
**remember (3)**
11:19;12:4;43:24

render (1)
   49:22
rendered (2)
   50:1,18
rent (1)
   14:18
repeat (5)
   44:2;52:3,11,11;
   55:7
reply (1)
   12:3
reports (4)
   31:12,12,16,22
represent (4)
   9:3;55:7,24;56:3
representative (2)
   5:11,17
representing (3)
   7:9;8:6;55:11
represents (1)
   5:15
Republic (8)
   4:3;7:12;20:13,20,
   21;21:1,5,8
Republic's (1)
   20:14
request (2)
   5:13;57:20
required (3)
   5:11;26:19;47:12
requirement (1)
   32:4
resolved (1)
   29:5
respect (1)
   37:21
respective (1)
   45:25
response (8)
   7:10,12,25;8:7;
   9:13;47:14;54:18;
   59:10
result (1)
   28:5
retain (3)
   43:1,10;45:8
retained (2)
   25:9;37:8
retention (2)
   25:16;30:10
returns (4)
   45:4,5,6,9
revenue (1)
   24:4
Richard (5)
   5:7;12:10;25:12;
   39:19;57:3
rid (1)
   12:24
right (25)
   7:8;14:6;15:2;
   23:9,17;27:12;33:6;
   35:2;36:25;37:17;

38:11;39:24;40:19,
21;41:12,15;42:4,8,
14,24;44:13;50:4;
54:13;55:23;56:7
ring (1)
   37:21
Riverside (3)
   7:25;20:15,19
Road (11)
   3:3;6:15,24;19:13,
   16,16;33:2;34:17;
   41:15;42:14;45:20
Rockland (11)
   8:1;21:4;28:10,15,
   20,23;29:12,23;30:4,
   6;43:7
route (1)
   59:4
RS (16)
   3:3;6:24;7:2;19:8,
   12,13,14,15,15,15,
   16;20:2,24;33:2;
   35:12;58:10
RS1 (5)
   19:9,19,24;20:6,25
RSOM (3)
   17:3;47:20,23
rule (1)
   41:21
running (3)
   23:3;28:17,20
RX (4)
   6:7,9;17:1;35:12

## S

safe (1)
   36:11
salary (1)
   44:9
sale (19)
   14:24;15:1,4,5,9;
   16:13;19:24;23:14,
   19,24;24:9,10;25:6,
   17,22;26:6;28:6;
   29:18;41:24
same (7)
   7:5;30:11;40:8;
   51:22;52:3,10;55:19
Sam-U-F-F (1)
   5:5
saying (2)
   27:2;48:20
Schedule (8)
   15:14;33:12;
   40:21,22,23;42:11,
   20;48:1
scheduled (1)
   53:9
schedules (8)
   9:25;15:22;27:11;
   28:11;29:16;35:25;
   42:11;46:8

second (6)
   12:23,24;16:17;
   21:23;32:5,6
Section (5)
   41:7,8,9;42:4,7
section's (1)
   42:8
secure (2)
   16:3;22:9
secured (4)
   16:11;29:17;
   42:14;54:9
security (4)
   22:9;41:2,3,4
seek (1)
   59:3
seem (1)
   37:15
self-created (1)
   26:15
sell (4)
   14:21;15:3;23:13;
   38:7
service (2)
   22:14;43:20
services (2)
   36:13;40:24
set (1)
   33:19
settle (1)
   21:12
settled (1)
   30:14
settlement (2)
   21:14;28:25
share (1)
   44:21
shareholder (3)
   6:6;52:23;53:22
shell (1)
   20:10
shows (1)
   46:18
sic (3)
   39:23;42:1;50:12
sign (3)
   9:18;10:3;30:16
signature (6)
   9:20,22;10:1,12;
   11:10;24:14
signed (5)
   10:5,15,20;30:21;
   31:4
simply (1)
   15:15
single (1)
   14:18
sit (1)
   58:6
site (2)
   13:3;22:9
size (1)
   57:8

small (1)
   13:7
sold (2)
   38:11,12
sole (1)
   15:21
Somebody (1)
   28:20
someone (1)
   6:21
sometimes (4)
   14:10;29:5,6;
   50:25
somewhere (1)
   24:23
sorry (9)
   22:15;27:3,18;
   40:22;42:3;46:12;
   53:5,6;54:22
sort (2)
   17:10;36:13
sorted (1)
   17:11
Southern (4)
   5:8;19:11;20:24;
   21:3
space (3)
   13:6;14:1;40:4
speak (4)
   5:23;8:14;9:4;55:5
SPEAKER (2)
   14:5;46:12
speaking (3)
   14:6;36:22;53:5
speaks (1)
   12:17
spell (6)
   6:1;7:21;8:20;9:5;
   33:25;39:20
spelled (4)
   5:5;7:6;11:21;
   33:25
square (4)
   13:4,11,12;57:8
standing (1)
   55:17
start (2)
   9:13;32:23
started (3)
   20:25;21:3,7
state (8)
   5:14;6:1;21:3;
   28:21;56:15;57:12,
   15,17
statement (6)
   10:9;45:18,19,21;
   50:21;51:3
statements (6)
   49:23;50:1,3,5,8,
   17
stating (1)
   32:23
statutory (1)

32:4
still (4)
   21:13;33:9;54:10,
   17
stop (1)
   45:23
Street (11)
   3:5,15;4:5;7:14;
   15:25;17:8,23;
   33:14;34:6;42:12,17
struck (1)
   26:9
subject (3)
   15:5;38:10;41:20
submissions (1)
   37:20
submitted (1)
   35:20
subpart (1)
   36:4
sued (1)
   28:15
Suffern (49)
   4:13;5:4;13:2,3,
   14;17:2,5,11,12,15;
   18:6,7,11;19:17,18;
   20:5,5,18,22;21:8;
   26:21;27:1,2;28:15,
   17;34:17;40:13,15,
   15,16;44:12,22;
   45:21;47:19;48:2,12,
   21;49:1,3,15,23,24;
   50:11,14,22;51:8;
   55:18;56:18,18
Suffern's (1)
   49:11
sufficient (2)
   28:6;29:7
Suite (2)
   3:16;6:15
supervises (1)
   5:9
supposed (1)
   53:7
Supreme (1)
   21:4
sure (11)
   5:24;6:18;17:9,16;
   29:10;32:3;35:22;
   37:10;39:22;43:12;
   48:13
swearing (2)
   5:16,19

## T

talking (5)
   24:5;32:18;43:21;
   52:22;57:15
tax (2)
   30:9;45:4
taxes (7)
   22:11,16,24;23:7,

15;29:23;31:19
**technical (1)**
  25:15
**tenant (4)**
  13:8;14:3,17;
  15:19
**tenants (1)**
  13:23
**ten-year (1)**
  14:14
**term (2)**
  14:13;37:25
**terminated (2)**
  14:15,16
**terms (1)**
  15:8
**third (1)**
  13:15
**thirty (1)**
  26:24
**Thirty-three (1)**
  25:5
**Thomas (1)**
  26:1
**thought (1)**
  39:23
**three (2)**
  39:2;43:22
**Title (10)**
  4:3;20:13,13,19,
  20;21:1;52:6,21;
  53:16,17
**today (3)**
  6:18,19,24
**together (1)**
  40:20
**Tom (2)**
  26:2,2
**took (1)**
  16:19
**total (1)**
  22:7
**Town (4)**
  29:16,22;30:1,12
**transaction (4)**
  16:19,21;18:11;
  52:22
**transfer (7)**
  19:14,16,18,24;
  20:3,4;43:14
**transfers (2)**
  43:14;49:14
**transition (1)**
  16:22
**transmission (1)**
  38:4
**transmitted (1)**
  12:5
**tried (1)**
  14:1
**true (1)**
  19:4
**Trustee (3)**

5:8,9;32:1
**try (1)**
  6:19
**trying (3)**
  35:20;53:8;57:15
**TT (5)**
  7:10;25:24;26:1,
  13;41:18
**tunc (2)**
  20:2;21:3
**tune (1)**
  18:13
**two (6)**
  17:2;20:21;21:11;
  30:12;35:9;46:23
**type (1)**
  35:1

## U

**ultimately (1)**
  29:9
**Um-hum (2)**
  42:6,9
**under (6)**
  5:10,12;24:21;
  26:21;28:8;42:11
**underlying (1)**
  48:1
**Understood (2)**
  27:3;30:15
**undertaking (3)**
  18:5,8;35:12
**undertook (1)**
  17:15
**undetermined (1)**
  30:18
**UNIDENTIFIED (1)**
  14:5
**unreported (1)**
  46:7
**unsecured (1)**
  54:9
**up (12)**
  12:3,20;14:1;
  16:13,16;18:21;
  21:24;29:12;33:19;
  46:13,18;55:6
**upon (2)**
  29:8;33:8
**use (12)**
  7:2,3;28:18;38:1;
  39:15;40:3,17,18;
  52:21
**UST (1)**
  12:14
**Utilities (3)**
  28:10,16;29:12
**utility (1)**
  43:19
**UZIEL (5)**
  4:12;8:12,16;55:9;
  57:9

**U-Z-I-E-L (1)**
  8:16

## V

**vacant (3)**
  13:24,25;28:19
**valuation (1)**
  14:23
**value (1)**
  14:19
**vendors (1)**
  52:22
**Vesey (1)**
  3:5
**vicinity (1)**
  24:23
**Victor (1)**
  11:20
**view (2)**
  26:13,14
**voice (1)**
  55:6

## W

**Watermark (1)**
  46:24
**way (2)**
  20:4;49:3
**What's (6)**
  14:13;20:15;
  25:11,22;41:1;55:16
**Whereupon (1)**
  59:12
**White (3)**
  6:15;11:12;19:11
**Who's (2)**
  38:16;53:5
**whose (1)**
  11:20
**WILLIAM (1)**
  3:19
**Wilmington (1)**
  3:17
**wire (2)**
  48:17;49:14
**wish (2)**
  10:23;59:10
**wishes (2)**
  32:12;59:9
**without (1)**
  24:3
**Witness (1)**
  5:22
**words (3)**
  14:23;24:9;38:6
**work (1)**
  39:16
**works (1)**
  32:9
**worth (1)**
  29:3

## Y

**year (2)**
  28:16;36:24
**years (4)**
  27:16,17;39:2;
  43:23
**yield (2)**
  31:9;32:12
**York (10)**
  3:7;4:6;5:9;6:16;
  7:15,15;13:3;34:17;
  40:16,16

## Z

**Zero (1)**
  24:16

## 1

**1:37 (1)**
  5:4
**100 (1)**
  6:15
**10017 (2)**
  4:6;7:15
**1007-2 (2)**
  10:17;22:5
**10281 (1)**
  3:7
**10605 (1)**
  6:16
**11 (3)**
  31:13,16;49:4
**110 (1)**
  51:13
**120 (1)**
  6:15
**1201 (1)**
  3:16
**1313 (1)**
  3:15
**138 (1)**
  22:17
**138,000 (1)**
  22:17
**14 (4)**
  16:7;17:13,16;
  35:7
**140,000 (1)**
  22:11
**14th (11)**
  15:25;17:7,23;
  33:14,19;34:6;35:2,
  4;42:12,13,17
**150,000 (1)**
  40:24
**16 (2)**
  26:7,11
**16,000 (1)**
  22:8

**163 (1)**
  13:3
**16th (2)**
  23:21;26:14
**17 (1)**
  36:5
**180 (1)**
  43:22
**19,000 (1)**
  36:12
**19801 (1)**
  3:17

## 2

**2 (1)**
  36:3
**2.2 (1)**
  41:9
**20 (2)**
  41:8;56:24
**20,000 (1)**
  22:13
**200 (1)**
  3:5
**2004 (2)**
  32:16;57:20
**2017 (6)**
  13:15,23;16:20;
  20:19;26:21;44:6
**2018 (4)**
  14:10,11;27:19;
  28:16
**2019 (6)**
  14:15;16:20;18:1;
  27:22;44:13,23
**2021 (3)**
  5:3;32:6,7
**20th (1)**
  3:6
**21-22280 (1)**
  5:6
**22nd (1)**
  21:11
**24th (1)**
  5:3
**25 (4)**
  34:17;41:15;
  42:14;45:20

## 3

**3 (2)**
  22:6;36:2
**3.1 (1)**
  36:4
**3.2 (1)**
  36:20
**3.4 (1)**
  40:23
**3:01 (1)**
  59:12
**300,000 (1)**

    24:24
**309,000-dollar (1)**
    28:11
**31st (1)**
    32:7
**341 (2)**
    57:5;58:16
**35 (2)**
    36:5;41:8

---

### 4

**4,000 (1)**
    22:10
**4,850,000 (2)**
    15:25;17:8
**4.85-million-dollar (1)**
    33:13
**40,000 (1)**
    13:12
**45th (2)**
    4:5;7:14

---

### 5

**5.25 (2)**
    29:17,17
**5.7 (1)**
    29:16
**50,000 (1)**
    43:19

---

### 6

**600,000 (1)**
    13:4
**600-square-foot (1)**
    13:10
**650,000 (1)**
    15:13

---

### 7

**75 (1)**
    33:12

---

### 9

**9 (2)**
    4:5;7:14