**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TEHUM CARE SERVICES, INC.,[1] | ) Case No. 23-90086 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

## DEBTOR AND OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS' JOINT CHAPTER 11 PLAN

**GRAY REED**
Jason S. Brookner (TX Bar No. 24033684)
Micheal W. Bishop (TX Bar No. 02354860)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7127
Facsimile:  (713) 986-5966
Email:       jbrookner@grayreed.com
                mbishop@grayreed.com
                akaufman@grayreed.com
                lwebb@grayreed.com
                acarson@grayreed.com

*Counsel to the Debtor and Debtor in Possession*

**STINSON**
Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:  (816) 842-8600
Facsimile:  (816) 691-3495
Email:   nicholas.zluticky@stinson.com
            zachary.hemenway@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

---

[1] The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

4876-7587-0846

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
     GOVERNING LAW, AND OTHER REFERENCES...........................................................1
    A.     Defined Terms.............................................................................................................1
    B.     Rules of Interpretation ...............................................................................................9
    C.     Computation of Time .................................................................................................9
    D.     Governing Law ...........................................................................................................9
    E.     Reference to Monetary Figures ..................................................................................9
    F.     Controlling Document.................................................................................................9

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS.................................................10
    A.     Administrative Claims ..............................................................................................10
    B.     Professional Fee Claims............................................................................................10
    C.     DIP Claims ...............................................................................................................11
    D.     Priority Tax Claims ..................................................................................................12

ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS ...........12
    A.     Classification of Claims and Interests......................................................................12
    B.     Treatment and Voting of Classes of Claims and Interests .......................................13
          1.     Class 1 — Other Priority Claims.................................................................13
          2.     Class 2 — Other Secured Claims.................................................................13
          3.     Class 3 — Convenience Claims....................................................................13
          4.     Class 4 — Non-Personal Injury Claims .......................................................14
          5.     Class 5 — Personal Injury Claims ...............................................................14
          6.     Class 6 — Contingent Indemnification Claims ...........................................15
          7.     Class 7 — Interests in the Debtor ................................................................15
    C.     Elimination of Vacant Classes..................................................................................15
    D.     Voting Classes; Presumed Acceptance by Non-Voting Classes ..............................15
    E.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code........................15

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN.........................................16
    A.     Sources of Consideration for Plan Distributions ......................................................16
    B.     Global Settlement......................................................................................................16
          1.     The Settlement Payment. .............................................................................16
          2.     Settlement Parties' Release of Certain Claims. ............................................16
          3.     Consent to Releases of the Released Parties. ...............................................17
          4.     Settlement Releases. .....................................................................................17
    C.     General Settlement of Claims ...................................................................................17
    D.     Insurance Settlements ...............................................................................................17
    E.     Post-Effective Date Debtor, Liquidation Trust, and Personal Injury Trust.....................18
          1.     Post-Effective Date Debtor and the Liquidation Trust.................................18
           2.     Personal Injury Trust. ..................................................................................18
    F.     Corporate Action ......................................................................................................18
    G.     Vesting of Assets ......................................................................................................19
    H.     Effectuating Documents; Further Transactions ........................................................19
    I.     Exemptions from Certain Taxes and Fees ................................................................19
    J.     Preservation of Causes of Action .............................................................................20
    K.     Dissolution of Committee and Cessation of Fee and Expense Payments ......................20

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................20
    A.     Assumption or Rejection of Executory Contracts and Unexpired Leases......................20

|   | B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 21 |
|   | C. | Cure of Defaults and Objections to Cure and Assumption | 21 |
|   | D. | Insurance Policies | 21 |
|   | E. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 22 |
|   | F. | Reservation of Rights | 22 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ........................................................ **22**

|   | A. | Rights and Powers of the Debtor, Post-Effective Date Debtor, the Liquidation Trustee, and the Personal Injury Trustee | 22 |
|   | B. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 23 |
|   |   | 1. Delivery of Distributions in General | 23 |
|   |   | 2. Minimum; De Minimis Distributions | 23 |
|   |   | 3. Undeliverable Distributions and Unclaimed Property | 23 |
|   | C. | Manner of Payment | 23 |
|   | D. | Compliance Matters | 23 |
|   | E. | Allocation Between Principal and Accrued Interest | 24 |
|   | F. | Setoffs and Recoupment | 24 |
|   | G. | Claims Paid or Payable by Third Parties | 24 |
|   |   | 1. Claims Payable by Insurance | 24 |
|   |   | 2. Applicability of Insurance Policies | 24 |
|   |   | 3. Claims Paid by Third Parties | 24 |

**ARTICLE VII. RESERVES ADMINISTERED BY THE LIQUIDATION TRUSTEE** ......................... **25**

|   | A. | Establishment of Reserve Accounts | 25 |
|   | B. | Administrative and Priority Claims Reserve | 25 |
|   | C. | Other Secured Claims Reserve | 25 |

**ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS** ..................................................................................... **25**

|   | A. | Applicability | 25 |
|   | B. | Allowance of Claims and Interests | 25 |
|   | C. | Claims Administration Responsibilities | 26 |
|   | D. | Estimation of Claims and Interests | 26 |
|   | E. | Adjustment to Claims Without Objection | 26 |
|   | F. | No Distributions Pending Allowance | 26 |
|   | G. | Disallowance of Claims | 26 |
|   | H. | Claim Amendment Deadline | 27 |
|   | I. | Distributions After Allowance | 27 |
|   | J. | No Interest | 27 |

**ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ....................... **27**

|   | A. | Compromise and Settlement of Claims, Interests, and Controversies | 27 |
|   | B. | Release of Liens | 27 |
|   | C. | Release by the Debtor, its Estate, and the Post-Effective Date Debtor | 28 |
|   | D. | Third-Party Releases | 28 |
|   | E. | Exculpation | 29 |
|   | F. | Injunction and Gate Keeping | 29 |
|   | G. | Recoupment | 30 |
|   | H. | Term of Injunctions or Stays | 31 |

**ARTICLE X. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .......................................... **31**

|   | A. | Conditions Precedent to the Effective Date | 31 |
|   | B. | Waiver of Conditions Precedent | 31 |
|   | C. | Substantial Consummation | 31 |

4876-7587-0846

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ..............................**32**
    A.    Modification of Plan ..................................................................................................32
    B.    Revocation or Withdrawal of Plan ...........................................................................32

**ARTICLE XII. RETENTION OF JURISDICTION** .....................................................................**32**
    A.    Jurisdiction ...............................................................................................................32

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** ....................................................................**34**
    A.    Additional Documents ..............................................................................................34
    B.    Statutory Fees...........................................................................................................34
    C.    Reservation of Rights ...............................................................................................34
    D.    Successors and Assigns ............................................................................................34
    E.    Service of Documents ..............................................................................................34
    F.    Entire Agreement .....................................................................................................35
    G.    Plan Supplement Exhibits ........................................................................................35
    H.    Non-Severability ......................................................................................................35
    I.    Good Faith ................................................................................................................36
    J.    Waiver or Estoppel...................................................................................................36
    K.    No Attorney's Fees...................................................................................................36
    L.    Closing of Chapter 11 Case......................................................................................36

## INTRODUCTION

Tehum Care Services, Inc. and the Official Committee of Unsecured Creditors of Tehum Care Services, Inc. hereby propose the following joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

*A.    Defined Terms*

1.      "*Administrative Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case pursuant to sections 503(b) or 507 of the Bankruptcy Code.

2.      "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, unless otherwise specifically set forth in the Plan or a Final Order.

3.      "*Administrative and Priority Claims Reserve*" means a reserve established by the Liquidation Trustee on the Effective Date to be used to pay Holders of all Allowed Priority Claims and Allowed Administrative Claims, to the extent the same have not been paid in full on or before the Effective Date.

4.      "*Administrative Claims Objection Deadline*" means the first Business Day that is 21 days following the Administrative Claims Bar Date, unless otherwise specifically set forth in the Plan or a Final Order.

5.      "*Allowed*" means, any Claim:  (a) that is evidenced by a Proof of Claim Filed by the Claims Bar Date and as to which no objection has been interposed on or before the Claims Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; (b) that is listed in the Schedules and is not identified as contingent,  unliquidated, or disputed, and for which no Proof of Claim has been timely Filed and as to which no objection has been interposed on or before the Claims Objection Deadline; or (c) Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court.

6.      "*Assumed Executory Contract and Unexpired Lease List*" means the list of Executory Contracts and Unexpired Leases (with proposed cure amounts and assignee, as applicable) that will be assumed by the Debtor, which list shall be included in the Plan Supplement.

7.      "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other claims, causes of action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s), cause(s) of action or remedy(ies) were commenced prior to the Effective Date.

8.      "*Ballot*" means the form of ballot approved by the Bankruptcy Court and provided to Holders of Claims to indicate their votes to accept or reject the Plan and to make an election with respect to the Third-Party Release provided by Article IX.D hereof.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect and as may be hereafter amended.

10.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court of the United States having jurisdiction over the Chapter 11 Case.

11.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as now in effect or hereafter amended.

1

12. "*Bar Date*" means, as applicable, (i) the Claims Bar Date, (ii) any other date or dates established or to be established by this Plan or by a Final Order of the Bankruptcy Court setting a deadline by which Proofs of Claim must be Filed and (iii) the Administrative Claims Bar Date.

13. "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

14. "*Cash*" or "*$*" means legal tender of the United States of America.

15. "*Causes of Action*" means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, owned by or otherwise accruing to the Debtor and its Estate, whether arising before, on, or after the Petition Date.

16. "*Challenge Period*" has the meaning ascribed to such term in the DIP Order.

17. "*Chapter 11 Case*" means the above-captioned chapter 11 bankruptcy case of the Debtor.

18. "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code.

19. "*Claims Agent*" means Kurtzman Carson Consultants LLC.

20. "*Claims Bar Date*" means the last date to file Proofs of Claim against the Debtor, which was August 14, 2023, for all creditors including Governmental Units.

21. "*Claims Objection Deadline*" means one hundred eighty days (180) days after the Effective Date unless extended by further order of the Bankruptcy Court.

22. "*Claims Register*" means the official register of Claims against and Interests in the Debtor maintained by the Claims Agent.

23. "*Class*" means any category of Holders of Claims or Interests classified by this Plan pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

24. "*Committee*" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee, as the same may be reconstituted from time to time.

25. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

26. "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court, including any adjournments thereof, to consider confirmation of the Plan.

27. "*Confirmation Objection Deadline*" means the date that is at least fourteen (14) Business Days prior to the date first set by the Bankruptcy Court for the Confirmation Hearing.

28. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement as containing adequate information pursuant to sections 1125 and 1126 of the Bankruptcy Code.

29.     "*Consenting Creditors*" means collectively the following, in each case in its capacity as such with each being a "*Consenting Creditor*": (a) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan <u>and</u> who do not check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D; (b) all Holders of Claims or Interests that abstain from voting on the Plan, vote to reject the Plan, or are deemed to reject the Plan <u>and</u> who do not (i) check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D or (ii) object to the Plan in respect of the releases; and (c) all Holders of Claims who elect to receive an Expedited Distribution.

30.     "*Consummation*" means the occurrence of the Effective Date.

31.     "*Contingent Indemnification Claim*" means any Claim for indemnification against the Debtor of any kind or nature whatsoever, whether arising under or pursuant to any type of bylaws, organizational or formation documents, board resolutions, management or indemnification agreements, employment or other services contracts, at common law, in equity or otherwise, and whether pertaining or related to past and present directors, officers, employees, attorneys, accountants, investment bankers, clients, state agencies, or other professionals and agents of the Debtor related to services provided to, by or for the Debtor at any time prior to the Effective Date that is contingent as of the Effective Date; *provided* that Contingent Indemnification Claims shall not include any Claim for indemnification against the Debtor if, prior to the Effective Date, such Claim has been adjudicated as non-contingent by Final Order of a court of competent jurisdiction.

32.     "*Convenience Claim*" means any General Unsecured Claim that is filed in an amount of $5,000 or less.

33.     "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

34.     "*Debtor Release*" means the release given on behalf of the Debtor and its Estate to the Released Parties as set forth in Article IX.C.

35.     "*Debtor*" means Tehum Care Services, Inc. f/k/a Corizon Health, Inc., a Texas corporation, in its capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

36.     "*DIP Claims*" means all Claims of the DIP Lender arising under and pursuant to the DIP Facility, the DIP Documents, and the DIP Order.

37.     "*DIP Credit Agreement*" means that certain *Senior Secured Superpriority Debtor-in-Possession Credit Agreement* attached to the DIP Order as Exhibit 1, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

38.     "*DIP Documents*" means, collectively, the DIP Credit Agreement, the DIP Order, and all other agreements, documents, and instruments related thereto, as may be amended, modified, restated, or supplemented from time to time.

39.     "*DIP Facility*" means the senior secured debtor in possession term loan facility, as provided for under the DIP Documents and authorized pursuant to the DIP Order.

40.     "*DIP Lender*" means M2 LoanCo, LLC, in its capacity as the DIP Lender (as defined in the DIP Order) as supplemented in subsequent orders.

41.     "*DIP Order*" means, collectively, (a) the *Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [Docket No. 243], (b) all additional interim orders entered by the Bankruptcy Court authorizing the

Debtor to incur postpetition obligations thereunder, and otherwise amending, supplementing, or modifying such authority from time to time and (c) any interim or final order or orders entered by the Bankruptcy Court granting the Debtor's *Motion for Entry of Fourth Interim DIP Order (I) Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 928].

42.     "*Disallowed*" means any Claim or Interest or portion thereof that is not Allowed or Disputed.

43.     "*Disclosure Statement*" means that certain disclosure statement relating to the Plan, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

44.     "*Disputed*" means any Claim or Interest or portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely Filed with the Bankruptcy Court, to the extent the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

45.     "*Distribution*" means Cash, property, interests in property or other value distribution to Holders of Allowed Claims, or their designated agent, including the Liquidation Trust Beneficiaries and the Personal Injury Trust Beneficiaries, as applicable under this Plan, or any trust agreement governing a trust created under this Plan.

46.     "*Distribution Date*" means the date on which the Liquidation Trustee or the Personal Injury Trustee, as applicable, first makes distributions from the Settlement Payment to Holders of Allowed Non-Personal Injury Claims or Personal Injury Claims as provided in the Plan.

47.     "*Distribution Reserve Accounts*" means the Cash reserve accounts established pursuant to this Plan by the Liquidation Trustee or Personal Injury Trustee, as may be applicable, including but not limited to the Administrative and Priority Claims Reserve and the Other Secured Claims Reserve.

48.     "*Effective Date*" means the later of the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in **Error! Reference source not found.** have been satisfied or waived.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

49.     "*Enjoined Parties*" means (i) all Entities that have held, hold, or may hold Claims against or Interests in the Debtor (whether or not Proofs of Claim or Proofs of Interest have been filed and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, and (iii) for each Entity listed in (i) and (ii), such Entity's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

50.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

51.     "*ERC Fund*" means a segregated account to be funded by the proceeds of employee retention tax credits received by the Debtor or Liquidation Trustee, as applicable.

52.     "*Estate*" means the estate of the Debtor as created under section 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

53.    "*Expedited Distribution*" means a one-time Cash payment in the amount of $5,000, to be made to a Holder of a General Unsecured Claim that irrevocably elects, as evidenced on a Ballot timely and validly submitted by such Holder, to have such General Unsecured Claim reduced to $5,000 and paid (upon Allowance) in full and final satisfaction of such Claim.

54.    "*Exculpated Party*" means, collectively, and in each case in its capacity as such:  (a) the Debtor; (b) the Committee and its members; and (c) Russell Perry, the Debtor's Chief Restructuring Officer.

55.    "*Executory Contract*" means a contract or lease to which the Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

56.    "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case or, with respect to the filing of a Proof of Claim or Proof of Interest, the Claims Agent.

57.    "*Final Decree*" means the decree contemplated in Bankruptcy Rule 3022.

58.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a stay, new trial, reargument, reconsideration, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument, reconsideration, or rehearing has been sought, (i) such order or judgment has been resolved by the highest court to which the order or judgment could be appealed, *certiorari* shall have been denied, or a stay, new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument, reconsideration or rehearing shall have expired; *provided*, *however* that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules or state or local rules has been or may be filed relating to such order or judgment.

59.    "*General Unsecured Claim*" means any unsecured claim (including, for the avoidance of doubt, any Personal Injury Claim and Non-Personal Injury Claim) that is not an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, or a Claim that is otherwise paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court.

60.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

61.    "*Holder*" means an Entity holding a Claim or an Interest.

62.    "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

63.    "*Initial Settlement Amount*" is defined in Article IV.B.1.

64.    "*Installment Settlement Payment*" is defined in Article IV.B.1.

65.    "*Insurance Settlement Motion*" means the Debtor's *Motion Pursuant to 11 U.S.C. §§ 105(a) & 502 and Bankruptcy Rules 3007 & 9019(b) for Entry of an Order Establishing Procedures for Resolution of a Certain Class of Claims with Rights Under Certain Arizona Insurance Policies Issued by Lone Star Alliance* [Docket No. 802], which settles and compromises certain disputes related to insurance policies issued by Lone Star Alliance under sections 363, 503(b), 507(a)(2), 1123 and 1141 of the Bankruptcy Code, as applicable, and Bankruptcy Rule 9019.

66.    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 357].

67.     "*Interest*" means any interest, equity, or share in the Debtor, including all options, warrants, or other rights to obtain such an interest or share in the Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

68.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

69.     "*Liquidation Trust*" means that certain trust that will come into existence on the Effective Date, which shall be formed pursuant to, and governed by, the provisions of the Plan and the Liquidation Trust Agreement.

70.     "*Liquidation Trust Agreement*" means the agreement establishing and governing the Liquidation Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

71.     "*Liquidation Trust Assets*" means all assets of the Debtor or its Estate existing on the Effective Date (including all Causes of Action) that are not Personal Injury Trust Assets, after giving effect to all distributions required to be made as of or prior to the Effective Date.

72.     "*Liquidation Trustee*" means the trustee of the Liquidation Trust, who shall be selected by the Committee, in consultation with the Debtor, and who shall be named in the Plan Supplement.

73.     "*Local Bankruptcy Rules*" means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas as now in effect or hereafter amended.

74.     "*Non-Personal Injury Claim*" means any General Unsecured Claim that is not a Personal Injury Claim.

75.     "*Opt-Out Form*" means the form included with the notice sent to (a) Holders of Claims or Interests that are deemed to accept or reject the Plan, or (b) Holders of Disputed Claims, which provides such Holders the opportunity to elect to opt out of the Third-Party Releases contained in Article IX.D.

76.     "*Ordinary Course Professional*" means a Professional employed by the Debtor pursuant to the Ordinary Course Professionals Order.

77.     "*Ordinary Course Professionals Order*" means the *Amended Order (I) Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 638].

78.     "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Case.

79.     "*Other Secured Claim*" means any Secured Claim, other than a DIP Claim.

80.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

81.     "*Personal Injury Claim*" means any General Unsecured Claim that directly, indirectly or derivatively, is attributable to, arises from, is based upon, relates to, or results from alleged personal injury tort or wrongful death claims within the meaning of 28 U.S.C. § 157(b)(2)(B).

82.     "*Personal Injury Trust*" means that certain trust that will come into existence on the Effective Date, which shall be formed pursuant to, and governed by, the provisions of the Plan and the Personal Injury Trust Agreement.

83.     "*Personal Injury Trust Agreement*" means the agreement establishing and governing the Personal Injury Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

4876-7587-0846

84.     "*Personal Injury Trust Assets*" means (a) twenty-three percent (23%) of the Cash from the Initial Settlement Payment after payment of Allowed Administrative Claims and Allowed Priority Tax Claims; (b) fifty percent (50%) of the Cash from each Installment Settlement Payment; and (c) all rights of the Debtor or its Estate existing on the Effective Date under its professional liability insurance policies, including Causes of Action against insurers providing such policies, but no other Causes of Action.  For the avoidance of doubt, the Personal Injury Trust Assets shall not include funds held in the Professional Fee Escrow.

85.     "*Personal Injury Trustee*" means the trustee of the Personal Injury Trust, who shall be selected by the Committee, in consultation with the Debtor, and who shall be named in the Plan Supplement.

86.     "*Petition Date*" means February 13, 2023, the date on which the Debtor commenced the Chapter 11 Case.

87.     "*Plan of Divisional Merger*" means that certain *Agreement and Plan of Divisional Merger* dated as of May 1, 2022, by Corizon Health, Inc.

88.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed in one or more parts of volumes by the Debtor, at least seven (7) calendar days prior to the Confirmation Objection Deadline, as the same may be amended, supplemented, or modified from time to time on the terms set forth herein, containing, without limitation: (a) the form of Liquidation Trust Agreement; (b) the form of Personal Injury Trust Agreement; (c) the Assumed Executory Contract and Unexpired Lease List; (c) a schedule of Retained Causes of Action; (d) the identity and compensation of the Liquidation Trustee; and (e) the identity and compensation of the Personal Injury Trustee.

89.     "*Post-Effective Date Debtor*" means the Debtor, the Liquidation Trust, or any successor thereto after the Effective Date responsible for winding down the Debtor's Estate and implementing the terms of the Plan.

90.     "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

91.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

92.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in such Class.

93.     "*Professional*" means any Entity retained by and to be compensated from the Estate pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code.

94.     "*Professional Fee Claims*" means any Claim by a Professional under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

95.     "*Professional Fee Escrow*" means the segregated account established pursuant to the DIP Order for the payment of Professional Fee Claims during the course of the Chapter 11 Case.  The Professional Fee Escrow shall be funded by the Debtor, no later than the Effective Date, in an amount of Cash equal to the expected Allowed Professional Fee Claims.  The Professional Fee Escrow and the Cash therein shall remain subject to the jurisdiction of the Bankruptcy Court and shall not be used for any purpose other than to pay Allowed Professional Fee Claims.  If, following the payment of all Allowed Professional Fee Claims in full there remains Cash in the Professional Fee Escrow, such Cash shall be transferred to the Liquidation Trust and become part of the Liquidation Trust Assets.

96.     "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

97.     "*Proof of Interest*" means a proof of Interest Filed in the Debtor's Chapter 11 Case.

98.     "*Proponents*" means the Debtor and the Committee, together, as joint proponents of the Plan.

99.     "*Released Parties*" means collectively the following, in each case in its capacity as such with each being a "*Released Party*":  (a) the Debtor; (b) Russell Perry, the Debtor's Chief Restructuring Officer; (c) the Committee and its members; (d) the Liquidation Trustee; (e) the Personal Injury Trustee; (f) the Settlement Parties; (g) M2 EquityCo LLC; (h) Valitás Intermediate Holdings Inc.; (i) Valitás Health Services, Inc.; (j) M2 Pharmacorr Equity Holdings LLC; (k) Pharmacorr/M2 LLC; (l) Pharmacorr Holdings LLC; (m) Endeavor Distribution LLC; (n) CHS Texas LLC; (o) Yes Care Holdings LLC; (p) Sigma RM, LLC; (q) DG Realty Management LLC; (r) Scaracor LLC; (s) Yitzchak Lefkowitz a/k/a Isaac Lefkowitz; (t) Sara Ann Tirschwell; (u) Ayodeji Olawale Ladele; (v) Beverly Michelle Rice; (w) Jeffrey Scott King; (x) Jennifer Lynee Finger; (y) Frank Jeffrey Sholey; (z) for each Entity listed in (a) through (y), each of their respective current and former officers, directors, and managers; (aa) for each Entity listed in (b) through (y), each of their respective current and former employees and agents; and (bb) for each Entity listed in (d) through (y), each of their respective attorneys and other professional advisors; *provided*, *however*, that James Gassenheimer, Charles Gassenheimer, James Hyman, and Michael Flacks shall not be a "Released Party."

100.     "*Releasing Parties*" means collectively the following, in each case in its capacity as such with each being a "*Releasing Party*":  (a) the Debtor; (b) the Committee; (c) the Liquidation Trustee; (d) the Personal Injury Trustee; (e) the Settlement Parties; and (f) Consenting Creditors.

101.     "*Retained Causes of Action*" means Causes of Action scheduled in the Plan Supplement as "retained" and transferred to the applicable Trust.

102.     "*Schedules*" means, collectively, the schedule of assets and liabilities, schedule of Executory Contracts and Unexpired Leases and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

103.     "*Secured Claim*" means a Claim:  (a) secured by a valid, perfected, and enforceable Lien on upon property in which the Debtor has an interest to the extent of the value, as of the Effective Date, of such interest or Lien or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

104.     "*Settlement Parties*" means, collectively, YesCare Corp., its wholly owned subsidiaries (including CHS TX, Inc.), Geneva Consulting, LLC, Perigrove 1018, LLC, Perigrove, LLC, M2 HoldCo, LLC, M2 LoanCo, LLC, and PharmaCorr LLC.

105.     "*Settlement Payment*" is defined in Article IV.B.1.

106.     "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article IX.D.

107.     "*Trust*" or "*Trusts*" means either or both of the Liquidation Trust and the Personal Injury Trust, as the context may require.

108.     "*Trust Agreement*" or "*Trust Agreements*" means either or both of the Liquidation Trust Agreement and the Personal Injury Trust Agreement, as applicable.

109.     "*Trustee*" or "*Trustees*" means either or both of the Liquidation Trustee and the Personal Injury Trustee, as applicable.

110.     "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

111.     "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

112.     "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

113.     "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6).

4876-7587-0846

B.      *Rules of Interpretation*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtor or the Liquidation Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (13) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

C.      *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the documents contained in the Plan Supplement, the Plan shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

4876-7587-0846

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Claims have not been classified and shall be treated as follows:

A.      *Administrative Claims*

Except as otherwise provided by a Final Order entered by the Bankruptcy Court, requests for payment of Administrative Claims must be Filed and served on the Debtor, its counsel, counsel to the Committee and, if filed after the Effective Date, the Litigation Trustee and the Personal Injury Trustee, no later than the Administrative Claims Bar Date.  Each request for payment of an Administrative Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim and (c) a detailed basis for the Administrative Claim.  A failure to file any such request by the Administrative Claims Bar Date shall result in the Administrative Claim in question being discharged and its Holder being forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, its Estate or any other Entity.

A request for payment of an Administrative Claim that has been properly and timely Filed and served shall become an Allowed Administrative Claim unless an objection is filed by the date that is thirty (30) days after such request has been Filed and served.  If a timely objection is Filed, the Administrative Claim in question shall become Allowed only to the extent set forth in a Final Order of the Bankruptcy Court.

Unless otherwise agreed by a Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of an Allowed Administrative Claim and Claims for U.S. Trustee Fees will receive, in full and final satisfaction of its Administrative Claim, Cash in an amount equal to the Allowed amount of such Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date; (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as otherwise agreed to between the Holder of such Allowed Administrative Claim and the Liquidation Trustee.

If an Administrative Claim is Allowed after the Effective Date and there are insufficient funds to pay such Allowed Administrative Claim from the Administrative and Priority Claims Reserve, any unpaid portion of such Allowed Administrative Claim shall be paid seventy-seven percent (77%) from the Liquidation Trustee from the Liquidation Trust Assets and twenty-three percent (23%) from the Personal Injury Trustee from the Personal Injury Trust Assets.

B.      *Professional Fee Claims*

1.      Final Fee Applications and Payment of Professional Fee Claims

Every Professional holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall File a final application for payment of such Professional Fee Claim no later than 45 calendar days after the Effective Date.  Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The last date to object to such final fee application shall be the 21st day after such fee application has been Filed, and all final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtor.  The Liquidation Trustee shall pay the full amount of each Professional Fee Claim no later than ten (10) days following entry of a Final Order by the Bankruptcy Court Allowing such Professional Fee Claim from the funds held in the Professional Fee Escrow Account.

4876-7587-0846

    2.   <u>Professional Fee Escrow Account</u>

As soon as is reasonably practicable after the Effective Date, the Debtor shall fund the Professional Fee Escrow Account (from Cash on hand and the Initial Settlement Amount) in an amount sufficient to pay all expected Allowed Professional Fee Claims in full. The Professional Fee Escrow Account shall be held for the sole benefit of Estate Professionals until all Allowed Professional Fee Claims been paid in full. No Liens, claims, or interests of any kind shall encumber the Professional Fee Escrow Account or the Cash contained therein in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Debtor's Estate or of the Post-Effective Date Debtor. Funds held in the Professional Fee Escrow Account shall be considered property of the Liquidation Trust to be distributed by the Liquidation Trustee under the terms and conditions set forth in the Plan and the Liquidation Trust Agreement.

Upon Allowance of a Professional Fee Claim, the same shall be paid as soon as reasonably practicable in Cash by the Liquidation Trustee from the funds held in the Professional Fee Escrow Account; *provided* that the Debtor's and the Liquidation Trustee's obligations to pay Allowed Professional Fee Claims shall not be limited or be deemed limited to funds held in the Professional Fee Escrow Account. To the extent that there are insufficient funds in the Professional Fee Escrow Account to satisfy all Allowed Professional Fee Claims in full, any such Allowed Professional Fee Claims (or portions thereof that remain unpaid from the Professional Fee Escrow Account) shall be paid as an Allowed Administrative Claim in accordance with Article II.A.

When all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court (as and if such Final Orders may be required), any remaining funds held in the Professional Fee Escrow Account shall be paid seventy-seven percent (77%) to the Liquidation Trust and twenty-three percent (23%) to the Personal Injury Trust.

    3.   <u>Professional Fee Escrow Amount</u>

Each Professional shall provide a reasonable and good-faith estimate of its fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date that are projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor no later than five days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be, nor shall it be deemed to be, an admission or limitation with respect to the amount of any Professional Fee Claim. If a Professional does not provide an estimate of its Professional Fee Claim, the Debtor may estimate the amount of unpaid and unbilled fees and expenses of such Professional. The aggregate amount of Professional fee estimates as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

    4.   <u>Post-Effective Date Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidation Trustee or Personal Injury Trustee, as applicable, may, in the ordinary course of business and without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pay the reasonable, actual, and documented legal, professional, or other fees and expenses incurred on or after the Effective Date in connection with administering the Liquidation Trust and the Personal Injury Trust, as applicable, and in accordance with the Plan, Liquidation Trust Agreement, and Personal Injury Trust Agreement, as applicable. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, the Interim Compensation Order, or the Ordinary Course Professionals Order in seeking retention or compensation for services rendered after such date shall terminate.

C.    *DIP Claims*

DIP Claims shall be treated and satisfied pursuant to the global settlement set forth in Article IV.B.2.

D.    *Priority Tax Claims*

    1.    <u>Priority Federal Tax Claims</u>

Except to the extent that a federal Governmental Unit Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each federal Governmental Unit Holder of such Allowed Priority Tax Claim will receive, at the sole option of the Debtor or Liquidation Trustee, as applicable, either:  (1) an amount of Cash from the ERC Fund equal to the amount of such Allowed Priority Tax Claim by the later of (a) ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, or (b) ten (10) days after the date on which the ERC Fund is funded; or (2) regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date.  For the avoidance of doubt, federal Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

    2.    <u>Priority State Tax Claims</u>

Except to the extent that a state Governmental Unit Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each state Governmental Unit Holder of such Allowed Priority Tax Claim will receive an amount of Cash equal to the amount of such Allowed Priority Tax Claim no later than ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter. For the avoidance of doubt, state Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority State Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

A.    *Classification of Claims and Interests*

All Claims and Interests, other than the Claims addressed in Article II, are classified as set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class | Claim or Interest | Status | Voting Rights |
|:---:|---|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Convenience Claims | Impaired | Entitled to Vote |
| 4 | Non-Personal Injury Claims | Impaired | Entitled to Vote |
| 5 | Personal Injury Claims | Impaired | Entitled to Vote |
| 6 | Contingent Indemnification Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

4876-7587-0846

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 7 | Interests in the Debtor | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment and Voting of Classes of Claims and Interests*

    1.    Class 1 — Other Priority Claims

        (a)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Liquidation Trustee on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) a date on which the Holder of such Other Priority Claim and the Debtor or Liquidation Trustee, as applicable, shall otherwise agree in writing.

        (b)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

    2.    Class 2 — Other Secured Claims

        (a)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or Liquidation Trustee, as applicable, either:

            (i)    payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the Liquidation Trustee, as applicable, shall otherwise agree in writing;

            (ii)    the Debtor's interest in the collateral securing such Allowed Other Secured Claim; or

            (iii)    other treatment that renders such Allowed Other Secured Claim Unimpaired.

        (b)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

    3.    Class 3 — Convenience Claims

        (a)    *Treatment*:  On the first Business Day that is thirty (30) days following the Effective Date, each Holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash.

        (b)    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

4876-7587-0846

4.    Class 4 — Non-Personal Injury Claims

(a)    *Treatment*:

(i)    Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Non-Personal Injury Claim agrees to less favorable treatment, each Holder of an Allowed Non-Personal Injury Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the Liquidation Trust.  Thereafter each such Holder shall receive Cash distributions from the Liquidation Trust.  Distributions from the Liquidation Trust to Holders of Allowed Non-Personal Injury Claims shall be on a Pro Rata basis with all other holders of Liquidation Trust beneficial interests in accordance with the terms of the Liquidation Trust Agreement.  For the avoidance of doubt, only Consenting Creditors will have the right to receive distributions from the Settlement Payment and excess ERC Funds, if any.

(ii)    Notwithstanding the above, each Holder of an Allowed Non-Personal Injury Claim shall have the option on the Ballot to elect for an Expedited Distribution.  Any Holder of a Non-Personal Injury Claim who elects for the Expedited Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the releases contained in Article IX.D.  An election on the Ballot for an Expedited Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot.  An Expedited Distribution shall be paid by the Liquidation Trustee or an insurer, as applicable, on the later of (a) the Effective Date or (b) within ten (10) business days after such General Unsecured Claim becomes an Allowed Claim by Final Order.

(b)    *Voting*:  Class 4 is Impaired under the Plan.  Holders of Allowed Non-Personal Injury Claims are entitled to vote to accept or reject the Plan.

5.    Class 5 — Personal Injury Claims

(a)    *Treatment*:

(i)    Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Personal Injury Claim agrees to less favorable treatment, each Holder of an Allowed Personal Injury Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the Personal Injury Trust.  Thereafter, each such Holder shall receive Cash distributions from the Personal Injury Trust.  Distributions from the Personal Injury Trust to Holders of Allowed Personal Injury Claims shall be paid to holders of Personal Injury Trust beneficial interests in accordance with the terms of the Personal Injury Trust Agreement.  For the avoidance of doubt, any treatment provided to one or more Holders of Personal Injury Claims pursuant to the provisions of the Confirmation Order approving the Insurance Settlement Motion shall take precedence over the treatment provided in this Article III.B.5.

(ii)    Notwithstanding the above, each Holder of an Allowed Personal Injury Claim shall have the option on the Ballot to elect for an Expedited Distribution.  Any Holder of a Personal Injury Claim who elects for the Expedited Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the releases contained in Article IX.D.  An election on the Ballot for an Expedited Distribution shall be irrevocable, shall be conclusive and

14

controlling, and shall govern over any and all other markings on the Ballot. An Expedited Distribution shall be paid by an insurer, or the Personal Injury Trustee, as applicable, within sixty (60) days following the Effective Date.

(b)      *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Personal Injury Claims are entitled to vote to accept or reject the Plan.

6.      Class 6 — Contingent Indemnification Claims

(a)      *Treatment*: On the Effective Date, all Contingent Indemnification Claims shall be Disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Holders of Contingent Indemnification Claims shall not receive any distribution on account of such Claims.

(b)      *Voting*: Class 6 is Impaired under the Plan. Holders of Contingent Indemnification Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7.      Class 7 — Interests in the Debtor

(a)      *Treatment*: On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive any distribution on account of such Interests.

(b)      *Voting*: Class 7 is Impaired under the Plan. Holders of Interests in the Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

D.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

E.      *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

To the extent any Class is impaired under the Plan and such Class fails to accept this Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Proponents hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. The Proponents reserve the right to modify the Plan in accordance with Article XI to the extent, if any, that Plan confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Sources of Consideration for Plan Distributions*

Sources of consideration for Plan distributions shall be:  (1) Cash on hand; (2) the Settlement Payment; (3) the Debtor's insurance policies; and (4) the Liquidation Trust Assets and the Personal Injury Trust Assets, as applicable.

B.      *Global Settlement*

The Debtor, the Committee, and the Settlement Parties have reached a global resolution of all issues among them in this Chapter 11 Case.  Pursuant to Bankruptcy Rule 9019, the Plan does, and shall, constitute a compromise, settlement, and release of all potential claims by and among the Settlement Parties on the terms set forth below.  Entry of the Confirmation Order shall constitute approval of the global resolution set forth below, which shall become effective upon the Effective Date.

1.      <u>The Settlement Payment</u>.

(a)      The Settlement Parties shall pay or cause to be paid to the Debtor or Liquidation Trustee, as applicable, aggregate Cash in the amount of Thirty-Seven Million Dollars ($37,000,000.00) (the "<u>Settlement Payment</u>"), as follows: (i) on or before the Effective Date, the Settlement Parties shall pay or cause to be paid to the Debtor's estate Cash in the amount of Twenty-Five Million Dollars ($25,000,000.00) (the "<u>Initial Settlement Amount</u>"), reduced as set forth in Article IV.B.2; and (ii) after the Effective Date, the Settlement Parties shall pay or cause to be paid to the Liquidation Trustee Cash in the aggregate amount of Twelve Million Dollars ($12,000,000), in installments of One Million Dollars ($1,000,000.00) (each, an "<u>Installment Settlement Payment</u>"), with the first payment to be made 30 days after the Effective Date, and the subsequent 11 installments to be made every 30 days thereafter until paid in full, with the final installment being made no later than 360 days after the Effective Date.

(b)      If the Settlement Parties fail to timely pay or cause to be paid any of the Installment Settlement Payments, the Debtor or either Trustee, shall promptly provide written notice of the claimed payment default to counsel for Perigrove 1018, LLC at the following email addresses: mhayward@haywardfirm.com.  The Settlement Parties may cure the payment default by making the missed payment within five (5) calendar days of the written notice. The Settlement Parties shall have the opportunity to cure a total of two payment defaults, unless otherwise agreed by both Trustees in writing.  Upon a third failure to make a timely Installment Settlement Payment, either Trustee may file a notice of default with the Bankruptcy Court and serve notice on counsel to the Settlement Parties by email to: mhayward@haywardfirm.com.   Upon such filing and service, unless both Trustees agree otherwise in writing, any releases proposed to and from the Released Parties in Article IV.B.4, Article IX.C, and Article IX.D shall be null and void.

2.      <u>Settlement Parties' Release of Certain Claims</u>.

On the Effective Date, the Settlement Parties shall release and waive all claims and causes of action against the Debtor's estate, including, without limitation, the DIP Lender's claims under the DIP Order that accrued prior to August 23, 2023, and the Proofs of Claim filed by Geneva Consulting LLC (KCC Claims Register No. 572 for $315,032.97) and M2 LoanCo, LLC  (KCC Claims Register No. 589 for $24,032,965), which Claims shall be Disallowed for all purposes and expunged from the Claims Register; *provided*, *however*, that all amounts advanced by the DIP Lender pursuant to the DIP Order on or after August 23, 2023, shall not be released but shall instead be credited dollar-for-dollar against the Initial Settlement Amount.

16

3.       Consent to Releases of the Released Parties.

As set forth more fully on the Ballot or Opt-Out Form, all Consenting Creditors shall be deemed to have consented to the Third-Party Release contained in Article IX.D regardless of whether a Ballot or Opt-Out Form has been submitted.  In consideration for the Third-Party Release set forth in Article IX.D and the other releases set forth in this Plan, the Settlement Parties shall provide the Settlement Payment.  **Any Holder of a Claim or Interest who has checked the box on the Ballot or Opt-Out Form to opt out of the Third-Party Release or has objected to the Plan in respect of the release shall be deemed to have forever waived and forfeited its right to its applicable share of the Settlement Payment and any applicable proceeds of the ERC Fund (after payment in full of all Allowed Priority Tax Claims, as provided in Article II.D.1).**

4.       Settlement Releases.

Upon payment in full of the Settlement Amount as provided in Article IV.B.1, and as more fully described in Article IX.D, the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any causes of action, directly or derivatively, by, through, for, or because of the foregoing entities, shall be deemed to have released, and shall be permanently enjoined from any prosecution or attempted prosecution of, any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, which any of them has or may have against: (a) the Settlement Parties; (b) M2 EquityCo LLC; (c) Valitás Intermediate Holdings Inc.; (d) Valitás Health Services, Inc.; (e) M2 Pharmacorr Equity Holdings LLC; (f) Pharmacorr/M2 LLC; (g) Pharmacorr Holdings LLC; (h) Endeavor Distribution LLC; (i) CHS Texas LLC; (j) Yes Care Holdings LLC; (k) Sigma RM, LLC; (l) DG Realty Management LLC; (m) Scaracor LLC; (n) Yitzchak Lefkowitz a/k/a Isaac Lefkowitz; (o) Sara Ann Tirschwell; (p) Ayodeji Olawale Ladele; (q) Beverly Michelle Rice; (r) Jeffrey Scott King; (s) Jennifer Lynee Finger; (t) Frank Jeffrey Sholey; and (u) for each Entity listed in (a) through (t), each of their respective current and former officers, directors, employees, managers, attorneys, professional advisors, and agents; *provided*, *however*, that nothing herein shall release any claims or causes of action of any kind, by any Entity, against James Gassenheimer, Charles Gassenheimer, James Hyman, and Michael Flacks or any obligations under this Plan; *provided*, *further*, that nothing herein shall release claims or causes of action to enforce the terms of the Plan, including but not limited to the global settlement provisions in this Article IV.B; *provided*, *further*, that nothing in this Article IV.B.4 shall alter or diminish the release set forth in Paragraph 17 of the DIP Order; *provided*, *further*, that the Challenge Period (as defined in the DIP Order) is extended for the Liquidation Trustee through the date the releases in Article IV become effective.  For the avoidance of doubt, the releases described in this paragraph are not effective unless and until the full Settlement Amount is paid by the Settlement Parties, including, without limitation, each Installment Settlement Payment pursuant to Article IV.B.1.

C.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

D.      *Insurance Settlements*

The Plan incorporates the Insurance Settlement Motion as if set forth fully in the Plan.  The Insurance Settlement Motion shall be approved as part of the Plan pursuant to the Confirmation Order.

4876-7587-0846

E.    *Post-Effective Date Debtor, Liquidation Trust, and Personal Injury Trust*

    1.    <u>Post-Effective Date Debtor and the Liquidation Trust</u>

On the Effective Date, the Liquidation Trust will be formed pursuant to the Liquidation Trust Agreement to receive and liquidate the Liquidation Trust Assets and wind down the Debtor's Estate.  In addition, the Liquidation Trust shall serve as a successor to the Debtor pursuant to sections 1123(a)(5)(B) and (b)(3)(B) of the Bankruptcy Code to: (a) administer the terms of the Plan (other than as the Plan relates to Personal Injury Claims), including making payments in accordance with Articles II and III to all Holders of Claims and interests other than Personal Injury Claims; (b) make distributions pursuant to the Liquidation Trust Agreement; (c) assert any Cause of Action on behalf of the Debtor that constitutes a Liquidation Trust Asset; and (d) take such other action as may be authorized by the Liquidation Trust Agreement, including objecting to any and all Claims other than Professional Fee Claims.

Upon the transfer of the Liquidation Trust Assets, as more fully set forth in the Liquidation Trust Agreement, the Debtor will have no reversionary or further interest in or with respect to the Liquidation Trust Assets.  For U.S. federal income tax purposes, the beneficiaries of the Liquidation Trust will be treated as grantors and owners thereof and it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations.  Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidation Trust be treated as if they had received an interest in the Liquidation Trust Assets and then contributed such interests to the Liquidation Trust.

On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtor shall be deemed to have resigned and the Liquidation Trustee shall be appointed as the sole manager, director, and officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtor's managers, directors, and officers.  From and after the Effective Date, the Liquidation Trustee shall be the sole representative of, and shall act for, the Post-Effective Date Debtor.  The Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall be deemed to be substituted in lieu of the Debtor as the proper party in interest in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Post-Effective Date Debtor or the Liquidation Trustee to file motions or substitutions of parties or counsel in any such matter.

    2.    <u>Personal Injury Trust</u>

On the Effective Date, the Personal Injury Trust shall be formed to receive and liquidate the Personal Injury Trust Assets for the benefit of Holders of Allowed Personal Injury Claims.  The Personal Injury Trust shall:  (a) make distributions to Holders of Allowed Personal Injury Claims in accordance with this Plan and the Personal Injury Trust Agreement; (b) assert any Cause of Action constituting a Personal Injury Trust Asset on behalf of the Post-Effective Date Debtor including, without limitation, seeking full recovery of any and all available insurance proceeds from any insurers; and (c) take such further action as may be authorized by the Personal Injury Trust Agreement, including objecting to Personal Injury Claims.  The proceeds of the recoveries on any of the Personal Injury Trust Assets shall be deposited in and become the property of the Personal Injury Trust.

Upon the transfer of the Personal Injury Trust Assets, the Debtor will have no reversionary or further interest in or with respect to the Personal Injury Trust Assets.  For all U.S. federal income tax purposes, the beneficiaries of the Personal Injury Trust will be treated as grantors and owners thereof and it is intended that the Personal Injury Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations.  Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Personal Injury Trust be treated as if they had received an interest in the Personal Injury Trust Assets and then contributed such interests to the Personal Injury Trust.

F.    *Corporate Action*

On or before the Effective Date, as applicable, all actions contemplated under the Plan or in any of the documents contained the Plan Supplement (including any action to be undertaken by the Post-Effective Date Debtor or Personal Injury Trustee, as applicable) shall be deemed authorized and approved, and, to the extent taken by the

Debtor prior to the Effective Date, ratified, confirmed and approved without any requirement for further action by Holders of Claims or Interests, the Debtor, or any other Entity in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor or the Post-Effective Date Debtor, as applicable, and any corporate action required by the Debtor or the Post-Effective Date Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtor or the Post-Effective Date Debtor, as applicable.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions required to be made under the Plan, the Debtor shall be deemed to have been dissolved and terminated and the Liquidation Trustee shall be responsible for effectuating such dissolution. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtor or Post-Effective Date Debtor. The authorizations and approvals contemplated by this Article IV.F. shall be effective notwithstanding any requirements under non-bankruptcy law.

G.    *Vesting of Assets*

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property of the Debtor's Estate, all Causes of Action, any property acquired by the Debtor under the Plan, and any proceeds of any of the foregoing, other than the Personal Injury Trust Assets, shall automatically vest in the Liquidation Trust free and clear of all Liens, Claims, interests, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidation Trustee may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the Liquidation Trust Agreement.

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all Personal Injury Trust Assets and any proceeds thereof shall automatically vest in the Personal Injury Trust free and clear of all Liens, Claims, interests, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Personal Injury Trustee may use, acquire, or dispose of Personal Injury Trust Assets and compromise or settle any Personal Injury Claims or Causes of Action constituting Personal Injury Trust Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the Personal Injury Trust Agreement.

H.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidation Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the documents contained in the Plan Supplement, in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

I.    *Exemptions from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, no transfers of property under the Plan shall be subject in any way to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, including but not limited to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in either Trust; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan. Each appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

J.      *Preservation of Causes of Action*

Except as otherwise provided in this Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and as set forth more fully in the Disclosure Statement, the Debtor reserves and, as of the Effective Date, assigns to the applicable Trust the Causes of Action identified in the Plan Supplement as Retained Causes of Action.  On and after the Effective Date, the Liquidation Trustee and Personal Injury Trustee, as appropriate may pursue Retained Causes of Action on behalf of and for the benefit of the applicable Trust beneficiaries.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Liquidation Trustee or the Personal Injury Trustee, as appropriate, will not pursue any and all available Causes of Action against it.  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Liquidation Trustee and Personal Injury Trustee expressly reserve all Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Plan confirmation or Consummation.

The Debtor, the Liquidation Trustee, or the Personal Injury Trustee, as applicable, reserves such Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan.  The Liquidation Trustee and Personal Injury Trustee, as applicable, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

K.      *Dissolution of Committee and Cessation of Fee and Expense Payments*

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case; *provided that* the Committee shall have post-Effective Date standing to object to Administrative Expense Claims and Professional Fee Claims and shall be entitled to file a Professional Fee Claim for services related thereto and otherwise provided before the Effective Date, subject to rights of any party in interest to object thereto.  Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either the Liquidation Trustee or Personal Injury Trustee or to be compensated or reimbursed per the Plan and the Liquidation Trust Agreement or Personal Injury Trust Agreement in connection with such representation.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption or Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless an Executory Contract or Unexpired Lease: (1) was previously assumed or rejected by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a pending motion to assume filed on or before the Effective Date; or (4) is identified on the Assumed Executory Contract and Unexpired Lease List.

20

Entry of the Confirmation Order shall constitute a Bankruptcy Court order pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments, or rejections described above as of the Effective Date.

Contracts or leases that were not allocated to YesCare Corp. or its wholly owned subsidiaries (including CHS TX, Inc.) under the Plan of Divisional Merger but under which YesCare Corp. is or was operating after May 5, 2022, are not Executory Contracts or Unexpired Leases. To the extent that such contracts are determined to be Executory Contracts or Unexpired Leases by a Final Order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from such contracts or leases must be filed with the Claims Agent and served on the Post-Effective Date Debtor no later than thirty (30) days of the later of the Effective Date or entry of such Final Order.

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be the subject of a Proof of Claim Filed with the Claims Agent and served on the Post-Effective Date Debtor no later than thirty (30) days after the later of (i) the Effective Date or (ii) the date of entry of a Bankruptcy Court order approving such rejection. Such Proof of Claim may be objected to in accordance with the provisions of Article VIII and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not the subject of a timely Filed Proof of Claim shall be Disallowed for all purposes in this Chapter 11 Case, discharged, and forever barred.

C.      Cure of Defaults and Objections to Cure and Assumption

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

The Debtor shall provide notices of proposed cure amounts to counterparties to Executory Contracts and Unexpired Leases as part of the Plan Supplement. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by counsel to the Debtor and the Committee no later than the Confirmation Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption, or assumption and assignment, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed for all purposes in this Chapter 11 Case, discharged, forever barred, and expunged without further notice to or action, order, or approval of the Bankruptcy Court.**

D.      Insurance Policies

Notwithstanding anything to the contrary herein, each of the insurance policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtor prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided*, *however*, that to the extent any such insurance policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such insurance policy and assign the same to the Personal Injury Trust if a Personal Injury Trust Asset, or to the Liquidation Trust if a Liquidation Trust Asset. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order

will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any insurance policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any insurance policy shall be indefeasible. Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court, (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by such insurance policies.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Except as otherwise provided in a Final Order, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease on Schedule G of the Debtor's Schedules, nor anything contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Post-Effective Date Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, the Liquidation Trustee, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease to assume or reject it, including by rejecting such contract or lease effective as of the Confirmation Date.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Rights and Powers of the Debtor, Post-Effective Date Debtor, the Liquidation Trustee, and the Personal Injury Trustee*

On and after the Effective Date, the Personal Injury Trustee and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any Personal Injury Claim, subject to the terms hereof and the Personal Injury Trust Agreement. On and after the Effective Date, the Liquidation Trustee and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any Claim other than Personal Injury Claims subject to the terms hereof and the Liquidation Trust Agreement.

The Post-Effective Date Debtor, the Liquidation Trustee, and the Personal Injury Trustee, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Liquidation Trustee or the Personal Injury Trustee is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Liquidation Trust Assets or the Personal Injury Trust Assets, as applicable.

B.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

      1.      <u>Delivery of Distributions in General</u>

Except as otherwise provided in the Plan or the applicable Trust Agreement, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Effective Date by the Trustees or other third parties, as applicable:  (a) to the party designated to receive payment on any Proof of Claim or Proof of Interest; or (b) at the addresses set forth in any written notices of address changes delivered to the applicable Trustee after the Effective Date.  Neither the Post-Effective Date Debtor nor either of the Trustees shall incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

      2.      <u>Minimum; De Minimis Distributions</u>

No Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim unless provided otherwise in one of the Trust Agreements, as applicable.

      3.      <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Liquidation Trustee or the Personal Injury Trustee, as applicable, has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (a) the Effective Date and (b) the date of the distribution.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidation Trust or the Personal Injury Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court, for distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

Neither the Liquidation Trustee nor Personal Injury Trustee nor their respective agents and attorneys are under a duty to take any action to either (a) attempt to locate any Holder, or (b) obtain an executed Internal Revenue Service Form W-9 from any Holder; *provided* that in their sole discretion, the Liquidation Trustee or Personal Injury Trustee, as applicable may periodically publish notice of unclaimed distributions.

If, at the time either of the Trusts terminates there remains unclaimed property in such Trust, such property shall be donated by the applicable Trustee to the Anthony H.N. Schnelling Endowment Fund maintained by the American Bankruptcy Institute, to assist in the provision of resources for research and education.

C.      *Manner of Payment*

At the option of the applicable Trustee, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

D.      *Compliance Matters*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Trustees are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan or pursuant to the Liquidation Trust Agreement and the Personal Injury Trust Agreement shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Trustees shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Trustees reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child

support, and other spousal awards, liens and encumbrances.  All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

E.     *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

F.     *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, the Post-Effective Date Debtor and the Trustees may, pursuant to the Bankruptcy Code, applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that such Post-Effective Date Debtor or Trustee, as applicable, may hold against the Holder of such Allowed Claim.  In no event shall any Claim Holder be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Post-Effective Date Debtor or either Trustee (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to implement such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

G.     *Claims Paid or Payable by Third Parties*

1.     <u>Claims Payable by Insurance</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtor's insurers, sureties, or non-Debtor payors pays or satisfies a Claim in full or in part, or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged and Disallowed without the need for a Claim objection to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

2.     <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

3.     <u>Claims Paid by Third Parties</u>

Each Trustee, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Claim Holder receives a distribution on account of such Claim and also receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Trustee to the extent the Holder's total recovery on account of such Claim

24

from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

## ARTICLE VII.
## RESERVES ADMINISTERED BY THE LIQUIDATION TRUSTEE

A.      *Establishment of Reserve Accounts*

The Liquidation Trustee shall establish each of the Distribution Reserve Accounts, which, notwithstanding anything to the contrary contained in this Plan, may be effectuated by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidation Trustee.

B.      *Administrative and Priority Claims Reserve*

On the Effective Date, the Liquidation Trustee shall establish the Administrative and Priority Claims Reserve. The Administrative and Priority Claims Reserve shall be used to pay Allowed Administrative and Priority Claims.  If all or any portion of an Administrative or Priority Claim shall become a Disallowed Claim, then the amount on deposit in the Administrative and Priority Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in such Reserve, shall remain in the Administrative and Priority Claims Reserve to the extent that the Liquidation Trustee determines necessary to ensure that the Cash remaining in the Administrative and Priority Claims Reserve is sufficient to ensure that all Allowed Administrative and Priority Claims will be paid in accordance with the Plan.

C.      *Other Secured Claims Reserve*

On the Effective Date if appropriate, the Liquidation Trustee shall establish the Other Secured Claims Reserve by depositing Cash proceeds from the sale of assets securing the Other Secured Claims, if any.  The Other Secured Claims Reserve shall be used to pay Allowed Other Secured Claims to the extent not satisfied by the return of the assets securing the Allowed Other Secured Claim.  If all or any portion of an Other Secured Claim shall become a Disallowed Claim, then the amount on deposit in the Other Secured Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Other Secured Claims Reserve, shall remain in the Other Secured Claims Reserve or be transferred out of the Other Secured Claims Reserve to the extent that the Liquidation Trustee determines necessary to ensure that the Cash remaining in the Other Secured Claims Reserve is sufficient to ensure that all Allowed Other Secured Claims will be paid in accordance with the Plan.

The Debtor shall not have any reversionary or other interest in or with respect to any of the Distribution Reserve Accounts.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

A.      *Applicability.*

All Disputed Claims against the Debtor, other than Administrative Expense Claims, shall be subject to the provisions of this Article VIII.  All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with Article II.  None of the terms or provision of this Article VIII shall apply to Personal Injury Claims, which shall be exclusively processed, liquidated, and paid by the Personal Injury Trustee in accordance with the Personal Injury Trust Agreement.

B.      *Allowance of Claims and Interests*

After the Effective Date, the applicable Trustee shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date, except with respect to any

Claim Allowed pursuant to the Plan or Final Order of the Bankruptcy Court entered before the Effective Date.  Except as expressly provided in the Plan or in any Final Order of the Bankruptcy Court entered prior to the Effective Date (including the Confirmation Order and the DIP Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise, if any, shall be binding on all parties.

C.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date the Liquidation Trustee shall have the sole authority to:  (1) file, withdraw, or litigate to judgment objections to Claims or Interests, except for Professional Fee Claims; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and direct the Claims Agent to adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Liquidation Trustee shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.J.

D.      *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtor or the Liquidation Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.      *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Liquidation Trustee without the Liquidation Trustee having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes Allowed.

G.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been

entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Liquidation Trustee.

**EXCEPT AS PROVIDED HEREIN OR IN AN ORDER OF THE BANKRUPTCY COURT, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE AUTOMATICALLY DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL BY, FROM OR OF THE BANKRUPTCY COURT, THE DEBTOR, THE PERSONAL INJURY TRUSTEE, OR THE LIQUIDATION TRUSTEE.  HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS.**

H.      *Claim Amendment Deadline*

**ANY AMENDMENTS TO ANY CLAIM TIMELY FILED BY THE BAR DATE MUST BE MADE WITHIN THIRTY (30) DAYS FOLLOWING THE EFFECTIVE DATE.  ANY AMENDMENTS FILED MORE THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE SHALL BE DEEMED INEFFECTIVE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH AMENDED CLAIMS.**

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Liquidation Trustee shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

J.      *No Interest*

Unless otherwise specifically provided for by the Plan or the Confirmation Order, or unless otherwise required by applicable bankruptcy law, no postpetition interest shall accrue or be paid on any Claim or Interest and no Holder of any Claim or Interest shall be entitled to interest accruing on or after the Petition Date.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

B.      *Release of Liens*

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the Debtor and its successors and**

4876-7587-0846

assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Debtor or the Liquidation Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

C.     *Release by the Debtor, its Estate, and the Post-Effective Date Debtor*

Pursuant to section 1123(b) of the Bankruptcy Code, upon payment in full of the Settlement Payment as provided in Article IV.B.1, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, and the Post-Effective Date Debtor shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each and all of the Released Parties from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise that the Debtor, the Post-Effective Date Debtor, or the Estate has, have or may have against the Released Parties.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.

D.     *Third-Party Releases*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, upon payment in full of the Settlement Payment as provided in Article IV.B.1, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each and all of the Debtor, Post-Effective Date Debtor, and each Released Party, to the fullest extent permissible under applicable law, from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively (including any Causes of Action asserted or assertable on behalf of the Debtor, the Post-Effective Date Debtor, or the Estate, as applicable), matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, arising from, relating to, or connected with the Debtor (or any predecessor entity) or the Chapter 11 Case or affecting property of the Debtor's Estate, the Plan or the administration and implementation of the Plan, or based upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Upon the payment in full of the Settlement Payment as provided in Article IV.B.1, each of the Released Parties shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Consenting Creditor to the fullest extent permissible under applicable law, from any and all any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, arising from, relating to, or connected with, the Debtor (or any

predecessor entity) or the Chapter 11 Case or affecting property of the Debtor's Estate, the Plan or the administration and implementation of the Plan, or based upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything contained herein to the contrary, the foregoing releases do not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, or (ii) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan.

Each of the Releasing Parties knowingly grants the Third-Party Releases notwithstanding that each Releasing Party may hereafter discover facts in addition to, or different from, those which either such Releasing Party now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and each Releasing Party expressly waives any and all rights that such Releasing Party may have under any statute or common law principle which would limit the effect of the Third-Party Release to those claims actually known or suspected to exist as of the Effective Date.  In connection with their agreement to the foregoing Third-Party Releases, the Releasing Parties knowingly and voluntarily waive and relinquish any and all provisions, rights, and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims, comparable or equivalent to California Civil Code § 1542, which provides:  "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

E.      Exculpation

Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.  The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code.  Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

F.      Injunction and Gate Keeping

Upon the Effective Date, to the fullest extent permissible under applicable law, all Enjoined Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Post-Effective Date Debtor, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to claims or interests that have been released, discharged, settled, or are subject to exculpation under this Plan; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any claims or interests that have been released, discharged, or are subject to exculpation under this Plan; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any claims or interests that have been released, discharged, or are subject to exculpation under this Plan; (4) interfering with the Consummation, implementation, and execution of the Plan and all documents related to the Plan; and (5) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any claims or interests that have been released, discharged, or are subject to exculpation under this Plan, unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and

notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.

No Person or Entity may commence or pursue a claim or cause of action of any kind against the Debtor, the Post-Effective Date Debtor, any Released Party, or any Exculpated Party that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or cause of action subject to Article IX.C, Article IX.D, or Article IX.E, including any claim or cause of action that was asserted or assertable on behalf of the Debtor, including any derivative, alter ego, successor liability, or similar claims and causes of action based on general harm to the Debtor, Holders of Claims and Interests, or any other party in interest, or a theory of lack of separation between the Debtor and a Released Party or Exculpated Party, without the Bankruptcy Court (i) first determining, upon motion that attaches a copy of the proposed complaint or petition, and after notice and a hearing, that such claim or cause of action represents a direct (as opposed to derivative) and colorable claim of any kind and (ii) specifically authorizing such Person or Entity to bring such claim or cause of action against the Debtor, the Post-Effective Date Debtor, any Released Party, or any Exculpated Party.  At the hearing on such motion, the Bankruptcy Court shall have sole and exclusive jurisdiction to assess whether the proposed complaint or petition satisfies the applicable Federal Rules of Civil Procedure (or other applicable rules of procedure), including rule 8 and rule 9 (as applicable), and to determine whether such claim or cause of action represents a colorable claim of any kind.  Such motion shall also include a proposed attorney fee reserve, subject to court modification, that will be deposited into the Bankruptcy Court's registry to indemnify the Debtor, the Post-Effective Date Debtor, the Exculpated Parties, or the Released Parties named in the complaint or petition attached to the motion, as appliable, against costs associated with the successful defense of any claim that is allowed to proceed.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by applicable law.

No Person or Entity may commence or pursue a claim or cause of action of any kind that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor, the administration of the Liquidation Trust or the Personal Injury Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind that is not resolved pursuant to a Final Order, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence, and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, to the extent legally permissible and as provided for in Article XII, shall have jurisdiction to adjudicate the underlying claim or cause of action to the extent colorable.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under the Plan shall be deemed to have consented to the injunction provisions set forth in this Article IX.  The Debtor, the Post-Effective Date Debtor, the Exculpated Parties, or the Released Parties shall be entitled to seek sanctions by motion for contempt or other appropriate proceeding for any violations of the Confirmation Order or this Plan, including the Release, Exculpation, Injunction, and Gate Keeping provisions set forth in this Article IX.

G.    Recoupment

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Post-Effective Date Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the

30

Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

H.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE X.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.B:

1.    the Bankruptcy Court shall have entered the Confirmation Order;

2.    the Settlement Parties shall have funded the Initial Settlement Amount;

3.    the Liquidation Trust shall be established and funded and the Liquidation Trustee shall have been appointed in accordance with the provisions of the Plan and the terms of the Liquidation Trust Agreement;

4.    the Personal Injury Trust shall be established and funded and the Personal Injury Trustee shall have been appointed in accordance with the provisions of the Plan and the terms of the Personal Injury Trust Agreement;

5.    the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

6.    substantially final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been filed;

7.    the Administrative and Priority Claims Reserve shall have been established and funded;

8.    the Professional Fee Escrow shall have been established and funded; and

9.    the Other Secured Claims Reserve shall have been established and funded.

B.    *Waiver of Conditions Precedent*

The Proponents, together by joint agreement, may agree to waive any of the conditions to the Effective Date set forth above at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

C.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification of Plan*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1125 and 1125 of the Bankruptcy Code, the Proponents may jointly propose in writing to alter, amend, or modify materially the Plan prior to or after Confirmation.  Holders of Claims and Interests that have accepted the Plan shall be deemed to have accepted the Plan as altered, amended, or modified; *provided, however*, that any Holders of Claims and Interests who were deemed to accept the Plan because such Claims or Interests were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modifications, such Claims and Interests continue to be Unimpaired.  For purposes of this Article XI only, the Liquidation Trustee shall be deemed a Proponent entitled to seek amendment of the Plan under section 1127 of the Bankruptcy Code.

B.      *Revocation or Withdrawal of Plan*

The Proponents reserve the right to jointly revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Proponents jointly revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then:  (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

A.      *Jurisdiction*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code for, among other things, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests, except as otherwise expressly provided in the Plan;

2.      hear and determine all matters relating to Professional Fee Claims;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, interpret, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, the Trust Agreements, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      adjudicate, decide, or resolve any and all matters related to the Plan;

9.      issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation, implementation or enforcement of the Plan, including all settlements, releases, exculpations and injunctions provided for under the Plan;

10.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, implementation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order;

11.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including:  (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.G.3; (b) with respect to the releases, injunctions, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

12.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order, including the Confirmation Order;

14.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15.     hear and determine all matters relating to the releases, injunctions, exculpations, and gatekeeping contained in Article IX;

16.     enforce all orders previously entered by the Bankruptcy Court;

17.     hear any other matter not inconsistent with the Bankruptcy Code; and

18.     enter an order or Final Decree concluding or closing the Chapter 11 Case.

33

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.      *Additional Documents*

On or before the Effective Date, the Proponents may jointly file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor, the Liquidation Trustee, or the Personal Injury Trustee, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

B.      *Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a), including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by the applicable Trustee for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

C.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Proponents with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of either of the Proponents with respect to Holders of Claims or Interests prior to the Effective Date.

D.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.      *Service of Documents*

All notices, requests, and demands relating to the Plan shall be in writing to be effective and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

**If to the Debtor:**

Tehum Care Services, Inc.
Attention: Russell Perry, Chief Restructuring Officer
2021 McKinney Avenue, Suite 340
Dallas, TX 75201
E-mail:     russell.perry@ankura.com

with copies to:

Gray Reed
Attention: Jason S. Brookner and Aaron M. Kaufman
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056

4876-7587-0846

E-mail:    jbrookner@grayreed.com; akaufman@grayreed.com

**If to the Commitee:**

David Barton, Chairperson for Official Committee
of Unsecured Creditors of Tehum Care Services, Inc.
190 E. Bannock Street
Boise, ID 83712
Email:    bartond@slhs.org

with copies to:

Stinson
Attention:  Nicholas Zluticky and Zachary Hemenway
1201 Walnut, Suite 2900
Kansas City, MO 64106
E-mail:    nicholas.zluticky@stinson.com; zachary.hemenway@stinson.com

**If to the Liquidation Trustee, to:**

[Address to be provided in the Plan Supplement]

**If to the Personal Injury Trustee, to:**

[Address to be provided in the Plan Supplement]

After the Effective Date, the Liquidation Trustee shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidation Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

F.      *Entire Agreement*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.      *Plan Supplement Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The Plan Supplement is available upon written request to Debtor's counsel or Committee counsel at the addresses above, by downloading such exhibits and documents for free from the Claims Agent's website at https://www.kcclls.net/tehum, or from the Bankruptcy Court's website for a fee at https://ecf.txsb.uscourts.gov/.  The documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

H.      *Non-Severability*

If, prior to Plan confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided* that at the request of the Debtor and the Committee, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall

35

be acceptable to the Debtor and the Committee.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

I.      *Good Faith*

Upon entry of the Confirmation Order and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Committee, the Exculpated Parties, and the Released Parties will be deemed to have solicited votes on the Plan, or otherwise participated in the Plan process, in good faith and in compliance with the Bankruptcy Code, and, therefore, no such parties, individuals, or the Trustees will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or participation in the Plan process.

J.      *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor, the Committee, or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

K.      *No Attorney's Fees*

Except for the fees of Professionals, no attorneys' fees shall be paid by the Debtor or the Trustees with respect to any Claim or Interest unless otherwise specified in the Plan or by a Final Order of the Bankruptcy Court.

L.      *Closing of Chapter 11 Case*

The Liquidation Trustee shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

4876-7587-0846

Dated:  September 29, 2023

Respectfully submitted,

**Tehum Care Services, Inc.**

By:   _/s/ Russell Perry_
Name: Russell Perry
Title: Chief Restructuring Officer

-and-

**Official Committee of Unsecured Creditors**

By:   _/s/ David Barton_
Name: David Barton
Title: Chair

4876-7587-0846