# **EXHIBIT 1**

to

PRESS INTERVENORS' MOTION
FOR ORDER CONFIRMING THAT
AUTOMATIC STAY IS
INAPPLICABLE OR, IN THE
ALTERNATIVE, RELIEF FROM
AUTOMATIC STAY

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| TEHUM CARE SERVICES, INC., | ) | |
| | ) | Case No. 23-90086 (CLM) |
| Debtor. | ) | |
| | ) | *Pending in the United States Bankruptcy* |
| | ) | *Court for the Southern District of Texas* |
| | ) | |
| | | |
| THE CURATORS OF THE UNIVERSITY | ) | |
| OF MISSOURI and CAPITAL REGION | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding No. 23-04005-drd |
| | ) | |
| v. | ) | |
| | ) | |
| TEHUM CARE SERVICES, INC. d/b/a | ) | *Removed from the Circuit Court of* |
| CORIZON HEALTH, INC., CHS TX, INC., | ) | *Boone County, Missouri, Division 4* |
| and YESCARE CORP., | ) | *Case No. 22BA-CV01701* |
| | ) | |
| Defendants. | ) | |

---

**INSIDER INC., NICOLE EINBINDER, AND DAKIN CAMPBELL'S MOTION TO
INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING COURT RECORDS**

---

Jaqueline Aranda Osorno
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
jaosorno@publicjustice.net

James Wyrsch
Khazaeli Wyrsch LLC
911 Washington Avenue, Suite 211
St. Louis, MO 63101
james.wyrsch@kwlawstl.com

*Counsel for Proposed Intervenors*

**INSIDER INC., NICOLE EINBINDER, AND DAKIN CAMPBELL'S MOTION TO
INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING COURT RECORDS**

Since its formation in 2011, Corizon Health (the corporate predecessor of every Defendant in this case) was one of the nation's largest providers of correctional health care services in the United States. For over a decade, Corizon maximized profits by systematically providing substandard care—and sometimes no care at all—subjecting incarcerated people to a substantial risk of serious harm and death. Facing mounting liability, in mid-2022, Corizon began to take steps to effectuate a financial and corporate scheme designed to evade as much liability as possible— including the significant exposure it faced in the underlying suit in this matter.

Corizon's maneuvers are colloquially known as the "Texas Two-Step." Nicole Einbinder and Dakin Campbell, *Hidden Investors Took Over Corizon Health, a Leading Prison Healthcare Company. Then They Deployed the Texas Two-Step*, Insider (Aug. 21, 2023), https://tinyurl.com/2n8fahat. In early May 2022—after Plaintiffs sent multiple demand letters requesting payment for amounts owed—Corizon divided the company into two new corporate entities, assigning most liabilities to one of the entities and most of the assets to the other. Doc. 1-1 at ¶¶ 60, 64, 80, 85. In February 2023, while the underlying state court litigation was pending, the surviving entity with all the liabilities, Tehum Care Inc., filed a Chapter 11 bankruptcy petition in the Southern District of Texas, where many creditors, including Plaintiffs in this case, have raised allegations of corporate misconduct and fraud. *See In re Tehum*, Case No. 23-90086, Docs. 1, 88, 731.

Insider Inc. and Insider correspondents Nicole Einbinder and Dakin Campbell (together, "Proposed Intervenors") seek access to court records relating to what Plaintiffs allege was a "scheme to deceive and defraud Plaintiffs to the tune of at least $12 million." Doc. 23 at 6. The records include Plaintiffs' voluminous motion for injunctive relief, related briefing, and nearly 40

exhibits in support of those briefs (together, "the requested records"). As discussed in their Motion to Unseal, Proposed Intervenors have both First Amendment and common law rights of access to these court records. Because permissive intervention is the appropriate procedural vehicle for unsealing records, and because Proposed Intervenors have met the elements of Federal Rule of Civil Procedure 24(b), the Court should permit Proposed Intervenors to intervene in this action for the limited purpose of unsealing court records.

## INTERESTS OF MOVANTS

**Insider Inc.** is an online media company founded in 2007 best known for publishing Business Insider, which features reporting on business and financial news, and Insider, which features more general news. Ex. 1, Declaration of Michael Kingfield, at ¶¶ 1–2. Insider correspondents, like all professional news agencies in this county, rely on access to public records in their daily reporting. *Id.* at ¶ 3. Insider Inc. seeks to intervene in this case to ensure its correspondents have access to information that will further their continued efforts to report on the Corizon bankruptcy, an issue of significant public interest. *Id.* at ¶¶ 6–7.

**Nicole Einbinder** and **Dakin Campbell** are correspondents at Insider. Ex. 2, Declaration of Nicole Einbinder, at ¶ 1; Ex. 3, Declaration of Dakin Campbell at ¶¶ 1. Together, Ms. Einbinder and Mr. Campbell have expertise in finance, banking, deceptive business practices, and the prison healthcare industry. *Id.* The way Corizon has managed its liability—in particular, through use of the bankruptcy system—is of direct interest to Insider's reporting on business and finance. Ex. 2 at ¶ 7; Ex. 3 at ¶¶ 5-6. On August 21, 2023, Ms. Einbinder and Mr. Campbell published an article entitled "Hidden investors took over Corizon Health, a leading prison healthcare company. Then they deployed the Texas Two-Step." Ex. 2 at ¶ 5; Ex. 3 at ¶ 3. They seek to intervene in this case to ensure they can produce timely and accurate reporting on issues of public interest, including the use of taxpayer dollars and the possible abuse of the bankruptcy system. Ex. 2 at ¶ 7; Ex. 3 at ¶¶ 6-7.

## ARGUMENT

The Court should permit Proposed Intervenors to intervene in this action for the limited purpose of asserting their First Amendment and common law rights of access to the sealed state court records. Under Federal Rule of Civil Procedure 24(b), nonparties may intervene where they have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "[P]ermissive intervention under Rule 24(b) is an appropriate procedural vehicle for non-parties seeking access to judicial records in civil cases." *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015). Parties seeking permissive intervention must ordinarily show: "(1) an independent ground for jurisdiction, (2) timeliness of the motion, and (3) that the applicant's claim or defense and the main action have a question of law or fact in common." *Id.* Consistent with the requirements of Rule 24(b), the court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Proposed Intervenors meet all requirements for permissive intervention. "[W]here a party is seeking to intervene in a case for the limited purpose of unsealing judicial records," the public's interest in the confidential records satisfies the commonality requirement. *Flynt*, 782 F.3d at 967. "Furthermore, when a party is seeking to intervene only to modify a protective order or unseal documents, and not to litigate a claim on the merits, an independent basis of jurisdiction is not required." *Id.* Accordingly, where parties seek to intervene to unseal court records, as is the case here, the only relevant inquiry is timeliness. Proposed Intervenors took reasonably prompt action and filed this motion a little over six months after Corizon filed for bankruptcy and this case was removed to federal court. The motion is decidedly timely. *See id.* at 966 n.2 (noting that a motion to intervene permissively for the limited purpose of modifying a protective order can be granted "even after the underlying dispute between the parties has long been settled") (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994)).

Additionally, allowing Proposed Intervenors to intervene will not unduly delay the proceedings or prejudice the parties. As explained in Proposed Intervenors' Motion to Unseal (filed concurrently with this motion), Defendants have an existing burden to establish that there

are compelling reasons for keeping these court records sealed. "The mere fact that Defendants will need to explain why the relevant records should remain sealed is not, itself, unduly prejudicial." *Muhaymin v. City of Phoenix*, No. CV-17-04565-PHX-DLR, 2021 WL 5173767, at *1 (D. Ariz. Nov. 3, 2021). The parties will also not experience undue delay where the underlying state action has been stayed and the issues before this Court are on hold pending possible resolution of the Chapter 11 case. *See* Docs. 1, 36. Proposed Intervenors have also satisfied Rule 24(c), which requires that an intervention motion "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Proposed Intervenors' Motion to Unseal Court Records sets forth the basis for that relief: the well-established public's right to access court records.

Finally, although the Eighth Circuit has not definitively ruled so, a party need not establish standing as prerequisite for permissive intervention. *See In re Baycol Prod. Litig.*, 214 F.R.D. 542, 544 (D. Minn. 2003) ("To date, the Eighth Circuit has not yet ruled on whether standing is a prerequisite for permissive intervention."); *Org. for Competitive Markets, Inc. v. Seaboard Farms, Inc.*, No. 00-3432, 2001 WL 842029, at *2 (8th Cir. Feb. 1, 2001) ("We need not decide whether a third party seeking permissive intervention for the limited purpose of obtaining access to materials covered by a protective order must have standing."). Multiple federal courts of appeal that have considered this issue have found that standing is unnecessary. *See Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (in permissive intervention case, noting that "Article III does not require intervenors to independently possess standing where the intervention is into *a subsisting and continuing* Article III case or controversy") (emphasis in the original); *San Juan Cnty., Utah v. United States*, 420 F.3d 1197, 1206 (10th Cir.2005), aff'd, 503 F.3d 1163 (10th Cir. 2007) (en banc) ("a party seeking to intervene permissively need not first establish its standing"); *Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) (noting that standing "applies only to intervention as of right under Rule 24(a), not permissive intervention under Rule 24(b)").

Even if standing were required, Proposed Intervenors have proven that they have "suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and is likely

4

to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Proposed Intervenors' ability to produce timely and accurate reporting is hindered by the lack of access to the requested court records, which contain information that Proposed Intervenors cannot access elsewhere. *See* Ex. 1 at ¶ 8; Ex. 2 at ¶ 8; Ex. 3 at ¶ 8. Given the direct detrimental impact of the sealing on Proposed Intervenors' ability to report on this subject matter and this Court's authority to redress their injury by unsealing the records, Proposed Intervenors have satisfied the standing requirement.

## CONCLUSION

Because Proposed Intervenors satisfy the requirements for permissive intervention under Rule 24(b), the Court should grant their motion and allow them to assert their First Amendment and common law rights of access to court records.

Dated: August 29, 2023                    Submitted,

                                          /s/ Jaqueline Aranda Osorno
                                          *Counsel for Proposed Intervenors*

Public Justice
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
jaosorno@publicjustice.net

James Wyrsch
Khazaeli Wyrsch LLC
911 Washington Avenue, Suite 211
St. Louis, MO 63101
james.wyrsch@kwlawstl.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2023, a true and correct copy of the foregoing document was filed electronically with the Court's CM/ECF system, which electronically sent notice of the foregoing document to all counsel of record.

/s/ Jaqueline Aranda Osorno

6

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| TEHUM CARE SERVICES, INC., | ) | |
| | ) | Case No. 23-90086 (CLM) |
| Debtor. | ) | |
| | ) | *Pending in the United States Bankruptcy* |
| | ) | *Court for the Southern District of Texas* |
| | ) | |
| | | |
| THE CURATORS OF THE UNIVERSITY | ) | |
| OF MISSOURI and CAPITAL REGION | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding No. 23-04005-drd |
| | ) | |
| v. | ) | |
| | ) | |
| TEHUM CARE SERVICES, INC. d/b/a | ) | *Removed from the Circuit Court of* |
| CORIZON HEALTH, INC., CHS TX, INC., | ) | *Boone County, Missouri, Division 4* |
| and YESCARE CORP., | ) | *Case No. 22BA-CV01701* |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF MICHAEL KINGFIELD IN SUPPORT OF MOTIONS TO INTERVENE AND UNSEAL COURT RECORDS

Jaqueline Aranda Osorno
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
jaosorno@publicjustice.net

James Wyrsch
Khazaeli Wyrsch LLC
911 Washington Avenue, Suite 211
St. Louis, MO 63101
james.wyrsch@kwlawstl.com

*Counsel for Intervenors*

### DECLARATION OF MICHAEL KINGFIELD IN SUPPORT OF MOTIONS TO INTERVENE AND UNSEAL COURT RECORDS

I, Michael Kingfield, declare:

1. I am General Counsel for Insider, Inc., an online media company founded in 2007.

2. Insider, Inc. is best known for publishing Business Insider, which features original reporting on business and financial news; Insider, which features more general news; and other websites.  It reaches an audience of more than 250 million readers globally.

3. Insider, like all professional news agencies in this country, relies on access to public records in its daily reporting. The records obtained are incorporated into our journalism on a regular basis.

4. Nicole Einbinder and Dakin Campbell are correspondents at Insider who report on a variety of topics, including finance and deceptive business practices.

5. In February 2023, Ms. Einbinder and Mr. Campbell learned that Corizon Health, a correctional health care provider, filed for Chapter 11 bankruptcy. In the course of their investigation, they learned of this case and learned that the majority of documents on the docket were sealed.

6.  On August 21, 2023, Ms. Einbinder and Mr. Dakin published an article entitled *Hidden investors took over Corizon Health, a leading prison healthcare company. Then they deployed the Texas Two-Step.* Since it was published, that article has been loaded over 23,000 times, indicating that the coverage is of significant importance to the American public.

7. Ms. Einbinder and Mr. Campbell believe that accessing the information contained in the sealed documents will further their continued efforts to cover Corizon's bankruptcy.

2

8.  I am not aware of any other available source for the information Ms. Einbinder and Mr.

Campbell seek.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct, and that this declaration is executed in Scarsdale, New York this

28th day of August, 2023.

Michael Kingfield

# EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| TEHUM CARE SERVICES, INC., | ) | |
| | ) | Case No. 23-90086 (CLM) |
| Debtor. | ) | |
| | ) | *Pending in the United States Bankruptcy* |
| | ) | *Court for the Southern District of Texas* |
| | ) | |
| | | |
| THE CURATORS OF THE UNIVERSITY | ) | |
| OF MISSOURI and CAPITAL REGION | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding No. 23-04005-drd |
| | ) | |
| v. | ) | |
| | ) | |
| TEHUM CARE SERVICES, INC. d/b/a | ) | *Removed from the Circuit Court of* |
| CORIZON HEALTH, INC., CHS TX, INC., | ) | *Boone County, Missouri, Division 4* |
| and YESCARE CORP., | ) | *Case No. 22BA-CV01701* |
| | ) | |
| Defendants. | ) | |

---

## DECLARATION OF NICOLE EINBINDER IN SUPPORT OF
## MOTIONS TO INTERVENE AND UNSEAL COURT RECORDS

---

Jaqueline Aranda Osorno
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
jaosorno@publicjustice.net

James Wyrsch
Khazaeli Wyrsch LLC
911 Washington Avenue, Suite 211
St. Louis, MO 63101
james.wyrsch@kwlawstl.com

*Counsel for Intervenors*

## DECLARATION OF NICOLE EINBINDER IN SUPPORT OF MOTIONS TO INTERVENE AND UNSEAL COURT RECORDS

I, Nicole Einbinder, declare:

1. I am an investigative reporter for Insider, Inc. In my reporting, I focus on a range of topics related to social justice issues. I have previously written about deceptive business practices and the prison healthcare industry.

2. I am a graduate of the University of Washington and the Columbia University Graduate School of Journalism, where I was the recipient of the Pulitzer Traveling Fellowship. My work has been published by The Nation, The New Yorker, Bustle, The Seattle Times, and the Orange County Register, among other outlets.

3. In 2022, I received a criminal justice reporting grant from the Ira A. Lipman Center for Journalism and Civil and Human Rights at Columbia University's Graduate School of Journalism for a project examining how the "deliberate indifference" legal standard prevents incarcerated people from vindicating their Eighth Amendment right to be free from cruel and unusual punishment.

4. In the course of my research on Eighth Amendment violations and prison conditions, I have examined Corizon Health, Inc.'s history of providing correctional health care services in jails and prisons nationwide. It is my understanding that Corizon filed a petition for Chapter 11 bankruptcy on February 13, 2023. Through the bankruptcy proceedings, Corizon was able to stay hundreds of legal cases against it, including cases involving allegations of Eighth Amendment violations.

5. *The way Corizon has managed its liability in prisoners' rights cases—in this case, through use of the bankruptcy system—is of demonstrated interest to my work. On August 21,*

2

2023, I and a team of reporters published an article entitled *Hidden investors took over Corizon Health, a leading prison healthcare company. Then they deployed the Texas Two-Step.*

6.  The information that is under seal in this case may shed additional light on how the individuals that managed to purchase, take over, and restructure a company headed for insolvency are now likely to make a profit.

7.  Continuing to cover the Corizon bankruptcy is in the public interest. Corizon's underlying business model implicates taxpayer dollars. Taxpayers across the country help fund correctional institutions, who in turn give that money to private corporations like Corizon to perform core government functions. Whether certain government functions should be privatized, and the consequences of doing so, are issues of significant public interest. Our reporting enables the public to engage in meaningful discussions around these issues.

8.  I am not aware of any other available source for this information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed in San Francisco, California this 28th day of August, 2023.

_____

Nicole Einbinder

# EXHIBIT 3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| TEHUM CARE SERVICES, INC., | ) | |
| | ) | Case No. 23-90086 (CLM) |
| Debtor. | ) | |
| | ) | *Pending in the United States Bankruptcy* |
| | ) | *Court for the Southern District of Texas* |
| | ) | |
| | | |
| THE CURATORS OF THE UNIVERSITY | ) | |
| OF MISSOURI and CAPITAL REGION | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding No. 23-04005-drd |
| | ) | |
| v. | ) | |
| | ) | |
| TEHUM CARE SERVICES, INC. d/b/a | ) | *Removed from the Circuit Court of* |
| CORIZON HEALTH, INC., CHS TX, INC., | ) | *Boone County, Missouri, Division 4* |
| and YESCARE CORP., | ) | *Case No. 22BA-CV01701* |
| | ) | |
| Defendants. | ) | |

---

## DECLARATION OF DAKIN CAMPBELL IN SUPPORT OF
## MOTIONS TO INTERVENE AND UNSEAL COURT RECORDS

---

Jaqueline Aranda Osorno
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
jaosorno@publicjustice.net

James Wyrsch
Khazaeli Wyrsch LLC
911 Washington Avenue, Suite 211
St. Louis, MO 63101
james.wyrsch@kwlawstl.com

*Counsel for Intervenors*

## <u>DECLARATION OF DAKIN CAMPBELL IN SUPPORT OF MOTIONS TO INTERVENE AND UNSEAL COURT RECORDS</u>

I, Dakin Campbell, declare:

1.  I am the Chief Finance Correspondent for Insider, Inc., and a veteran business journalist with over 15 years of experience writing about the finance, banking and technology industries. During the course of my career, I have written about companies in bankruptcy.

2.  I am a graduate of Cornell University and the Columbia University Graduate School of Journalism, where I was selected for an investigative reporting fellowship. My work for the fellowship focused on private government actors.

3.  In working with my colleague, Nicole Einbinder, I have become aware of Corizon Health Inc.'s Chapter 11 bankruptcy. On August 21, 2023, I and a team of reporters published an article entitled *Hidden investors took over Corizon Health, a leading prison healthcare company. Then they deployed the Texas Two-Step.*

4.  Corizon's use of a relatively untested legal technique that combines a Texas state law with a bankruptcy filing, known colloquially as a Texas Two-Step, is of interest in my work. Based on my ongoing research, it is my understanding that if the company is successful in paying off its liabilities for a fraction of what they are worth, it could herald a wave of copycats using the technique to shed any and all unwanted liabilities, including such run-of-the-mill debts as unpaid bills.

5.  The information that is under seal in this case may explain more about Corizon's underlying financial condition, and perhaps explain why and how Corizon effectuated a corporate scheme that would allow it to shield most of its assets from creditors.

6. I believe that the information is also highly likely to be of public interest because Corizon's underlying business model, its bankruptcy filing and financial condition, implicates taxpayer dollars. Taxpayers across the country help fund correctional institutions, who in turn give that money to private corporations like Corizon to perform core government functions. The consequences of a government-funded entity such as Corizon pushing the boundaries of the bankruptcy code are of significant public interest.

7. As journalists, we seek to make the public aware of significant issues through timely and accurate reporting. Public access to the court documents we are requesting is critical to our ability to do so.

8. I am not aware of any other available source for this information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed in Chapel Hill, North Carolina on this 28th day of August, 2023.

_____
Dakin Campbell

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| TEHUM CARE SERVICES, INC., | ) | |
| | ) | Case No. 23-90086 (CLM) |
| Debtor. | ) | |
| | ) | *Pending in the United States Bankruptcy* |
| | ) | *Court for the Southern District of Texas* |
| | ) | |
| | | |
| THE CURATORS OF THE UNIVERSITY | ) | |
| OF MISSOURI and CAPITAL REGION | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding No. 23-04005-drd |
| | ) | |
| v. | ) | |
| | ) | |
| TEHUM CARE SERVICES, INC. d/b/a | ) | *Removed from the Circuit Court of* |
| CORIZON HEALTH, INC., CHS TX, INC., | ) | *Boone County, Missouri, Division 4* |
| and YESCARE CORP., | ) | *Case No. 22BA-CV01701* |
| | ) | |
| Defendants. | ) | |

---

## PROPOSED INTERVENORS'
## MOTION TO UNSEAL COURT RECORDS

---

Jaqueline Aranda Osorno
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
jaosorno@publicjustice.net

James Wyrsch
Khazaeli Wyrsch LLC
911 Washington Avenue, Suite 211
St. Louis, MO 63101
james.wyrsch@kwlawstl.com

*Counsel for Proposed Intervenors*

<u>**PROPOSED INTERVENORS' MOTION TO UNSEAL COURT RECORDS**</u>

In mid-2022, facing mounting liability, Corizon Health, the corporate predecessor of every Defendant in this case and one of the nation's largest providers of correctional health care services in the United States, began to take steps to effectuate a financial and corporate scheme colloquially known as the "Texas Two-Step." Nicole Einbinder and Dakin Campbell, *Hidden Investors Took Over Corizon Health, a Leading Prison Healthcare Company. Then They Deployed the Texas Two-Step*, Insider (Aug. 21, 2023), https://tinyurl.com/2n8fahat. Corizon first divided the company into two new corporate entities, assigning most liabilities to one of the entities and most of the assets to the other. Doc. 1-1 at ¶¶ 60, 64, 80, 85. The surviving entity with all the liabilities, Tehum Care Inc., then filed a Chapter 11 bankruptcy petition in the Southern District of Texas. *See In re Tehum*, Case No. 23-90086, Doc. 1. Like Plaintiffs in this case, multiple of Corizon's unsecured creditors have raised allegations of corporate misconduct and fraud. *See* id. at Docs. 88, 731.

Insider, Inc. and Insider correspondents Nicole Einbinder and Dakin Campbell (together, "Proposed Intervenors") seek to find out whether any of those allegations are true. The question they seek to answer through their investigation is of significant public interest: will Corizon succeed at managing its liability through use of the bankruptcy system, and if so, at whose expense? As discussed below, Proposed Intervenors have both First Amendment and common law rights of access to the sealed court records in the underlying state action. The record reveals there is no compelling justification for keeping the requested records under seal. The requested records should be unsealed.

### BACKGROUND

Corizon Health Inc. was the correctional health care provider for the Missouri Department of Corrections from 1992 to late 2021. Doc. 1-1 at ¶ 48. In performing its contractual obligations, Corizon entered into a hospital services agreement with Plaintiffs to provide inpatient and

outpatient hospital services for medically necessary or emergency services. *Id.* at ¶¶ 16, 19, 21. Plaintiffs proceeded to provide health services to incarcerated individuals, but in 2020, Corizon stopped paying claims. *Id.* at ¶ 73. Following extensive attempts to recoup funds, Plaintiffs served Corizon with a demand letter on April 19, 2022, demanding the amount owed and expressing that Plaintiffs intended to sue if Corizon failed to pay the amount owed within seven business days. *Id.* at ¶¶ 74–85. Plaintiffs brought action against Defendants in state court. As of the date of that complaint, Corizon owed Plaintiffs approximately 12 million dollars without interest. *Id.* at ¶ 85.

In the course of litigation, Plaintiffs were able to obtain expedited discovery and pursue additional claims, including claims relating to fraud and conspiracy. Doc. 22 at ¶¶ 5-6. Based on that discovery, Plaintiffs moved the court for injunctive relief seeking appointment of a receiver. *Id.* at ¶ 7. They also concurrently moved for leave to file their brief and most of their exhibits under seal.  Doc. 1-3 at 304-305. In that motion, Plaintiffs noted that the protective order in the case required them to conditionally file under seal, that the brief substantively discussed or incorporated information designated as confidential by Defendants YesCare Corp. ("YesCare") and CHS TX Inc. ("CHS"), and that they took no position as to whether any documents were confidential. *Id.* Three more motions for leave to file under seal were filed; Defendant Tehum d/b/a Corizon and Defendants CHS TX and YesCare each filed one for their opposition briefs, and Plaintiffs filed another for their reply. Id. at ¶¶ 479-80, 483-84, 568-69. The state court summarily granted each of these motions. *See* Doc. 1-2 (docket showing text orders granting motions for good cause).

Notably, under the terms on the protective order agreed to by the parties, if a party attached or incorporated material designated as confidential in their filings, the materials were to be filed conditionally under seal. Doc. 1-3 at 188, 192-93. The protective order expressly provided that "the designating person bears the burden of showing that the material should be filed under seal." *Id.* at 193. To that end, per the terms of the protective order, the designating party had seven days to file a motion requesting that the materials be kept under seal. *Id.* The text of the protective order is unequivocal: "If no motion supporting the sealing is filed, the materials ***shall*** be unsealed by the

clerk after the time for supporting the sealing has expired." *Id.* (emphasis added). For each of the motions for leave to file under seal, Defendants YesCare and CHS, as the designating parties, had seven days to request that purportedly confidential material be maintained under seal, but neither did so.

Following the submission of all briefing, the state court judge held a half-day evidentiary hearing on that motion, took the motion under advisement, and instructed Plaintiffs to submit a proposed order by the end of the following day. Doc. 22 at ¶ 10. At Defendants' behest, Plaintiffs requested and were granted an extension for an additional business day. *Id.* at ¶ 11. The day Plaintiffs' proposed order was due, Defendant Tehum d/b/a Corizon filed for bankruptcy and promptly removed this case to federal court. *Id.* at ¶¶ 13, 15.

## ARGUMENT

As members of the public and press, Proposed Intervenors have a qualified right of access to the sealed records in the underlying state court case. The state court, without examining the records or conducting any analysis, concluded that the information contained in the records was confidential because the producing parties had designated the records as such, and on that basis allowed the records to be sealed. Contrary to well-established law, the state court did not consider whether there existed a compelling interest in secrecy sufficient to defeat the presumption of public access. This Court should order that the records be unsealed.[1]

___

[1] This Court has jurisdiction to unseal those records. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 436–39 (1974) (explaining that after removal, a federal court has "full force and effect" over the case, that federal rather than state law then applies, and the district court has "authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal"); *see also Parson v. Farley*, 352 F. Supp. 3d 1141, 1151–52 (N.D. Okla. 2018), aff'd, No. 16-CV-423-JED-JFJ, 2018 WL 6333562 (N.D. Okla. Nov. 27, 2018) (finding that documents that were sealed pursuant to a state court sealing order can be unsealed by a federal court after removal); *Doe v. Town of Lisbon*, No. 1:21-CV-944-JL, 2022 WL 2274785, at *2–3 (D.N.H. June 23, 2022) (noting that a state court sealing order does not control in federal court after the case has been removed and the court must conduct an independent analysis on whether particular records should be sealed).

## I.  PROPOSED INTERVENORS HAVE FIRST AMENDMENT AND COMMON LAW RIGHTS OF ACCESS TO COURT RECORDS IN THE UNDERLYING STATE PROCEEDINGS

Open access to court proceedings and judicial records is a fundamental element of the American legal system. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572–73 (1980); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978); *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C. Cir. 1976); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999). As the Eighth Circuit has recognized, the common law right of access preserves and maintains "the public's confidence in, and the accountability of, the judiciary." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018). The co-existing First Amendment right of access is similarly "rooted in the public's [] right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994). The Eighth Circuit has specifically noted that "the presence of the public and press at civil proceedings will enhance and safeguard the quality of the fact-finding process" and that "the public has a great interest in the fairness of civil proceedings." *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983).

The common law right of access attaches to "pleadings in civil litigation (other than discovery motions and accompanying exhibits) . . . even when the case is pending before judgment." *IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013) (citations omitted). Whether a First Amendment right of access attaches depends on whether there is "(1) a historical tradition of accessibility, and (2) a significant positive role for public access in the functioning of the judicial process in question." *Flynt*, 885 F.3d at 512 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9–10 (1986)).

In this case, Proposed Intervenors have both a First Amendment and common law right of access to the requested court records, which include Plaintiffs' motion for a preliminary injunction, related briefing, and almost forty exhibits. Filings related to injunctive relief clearly fall within the ambit of merits-based, non-discovery motions. *See IDT Corp.*, 709 F.3d at 1223; *see also Steele v. City of Burlington, Iowa*, 334 F. Supp. 3d 972, 977 (S.D. Iowa 2018) (noting that "multiple U.S. Circuit Courts of Appeals and U.S. District Courts have broadly concluded that 'the presumption of public access (and concomitant need to articulate a compelling reason for non-disclosure) attaches to documents filed with the court in support of merits-based motions'") (collecting cases, including in the 1st, 2nd, 3rd, 4th, 7th, and 9th Circuits). And as records related to civil proceedings, the First Amendment right of access attaches as well. *See In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir.1983) (First Amendment right of access attaches in contempt proceedings); *N.Y.C.L.U. v. N.Y. City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) (First Amendment right of access attaches to non-criminal, non-civil Transit Authority Board hearings); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253–54 (4th Cir. 1988) (First Amendment right of access attaches to documents filed in connection with a summary judgment motion in a civil case); *In re Continental Ill. Secs. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (First Amendment right of access attaches in civil cases); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) (First Amendment right of access attaches to preliminary injunction hearing in civil case); *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) (First Amendment right of access attaches to pre-trial and post-trial civil proceedings); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596 (Brennan, J., concurring) (discussing the value of open proceedings in civil cases); *id.* at 599 (Stewart, J., concurring) ("[T]he First and Fourteenth

Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal.").

Because the requested records are presumptively public, they cannot be sealed unless the party requesting secrecy provides "compelling reasons" for sealing the documents. *Flynt* , 885 F.3d at 511 (citing *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006); *see In re New York Times Co.*, 828 F.2d at 116 (noting that when the First Amendment right of access attaches, "[p]roceedings may be closed and, by analogy, documents may be sealed if 'specific, on the record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to that interest'") (citing *Press-Enterprise II*, 478 U.S. at 13–14). As described below, Defendants cannot meet this stringent standard.

## II. THERE ARE NO COMPELLING REASONS TO SEAL THE REQUESTED RECORDS

Defendants cannot overcome the presumption of public access. This Circuit has noted that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224 (citing *United States v. Amodeo*, 71 F.3d 1044, 1049 (2nd Cir. 1995). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo*, 71 F.3d 1044 at 1049. Briefs and evidence related to a request for a preliminary injunction are precisely the kinds of documents that inform a court's determination of "litigant's substantive rights—conduct at the heart of Article III." *Id.* Furthermore, Proposed Intervenors are experienced reporters with a demonstrated commitment to reporting on the Corizon bankruptcy litigation, and their coverage will ultimately serve the public

in monitoring state, federal, and bankruptcy courts. For this reason, the weight of the presumption of access is significant.

Competing against this interest in disclosure is Defendants' purported interest in maintaining secrecy. The parties' motions for leave to file under seal mentioned only that the material to be sealed had been designated as confidential by the producing party. Doc. 1-3 at 304–05, 479–80, 483–84, 568-69. On that basis, and without examination of the documents or any legal analysis, the state court allowed the requested records to be filed under seal. *See* Doc. 1-2 (docket showing text orders granting motions for good cause). This broad and unexamined assertion of confidentiality is insufficient to establish a compelling interest in favor of secrecy. *See In re Iowa Freedom of Info. Council*, 724 F.2d at 663 (explaining that "courts should not simply take representations of interested counsel on faith" when determining whether trade secrets exist).

Nor can Defendants prove that there is a "compelling government interest" to seal the documents. *See United States v. Hughes*, No. 4:19-CR-00687-SRC-2, 2022 WL 3700907, at *5 (E.D. Mo. Aug. 26, 2022) ("The common-law and First Amendment standards for sealing share many features. However, unlike the common-law standard that requires the Court to evaluate whether Hughes provides a "compelling reason" for sealing, under the First Amendment standard, the Court must find a "compelling *government* interest" before it permits sealing.) (emphasis in the original). Even if the Defendants could establish such an interest, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to that interest." *Id.* (citing *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988)). That standard has plainly not been met in this case, where the records were sealed wholesale without any evidentiary basis, and without consideration for whether any interest in secrecy (to the extent it exists) could

be protected through less restrictive means, including redaction of only truly confidential information.

## CONCLUSION

For the reasons stated above, this Court should grant Proposed Intervenors' Motion to Unseal and order that the underlying state court records be unsealed in their entirety. In the alternative, the Court should require Defendants to establish why the standard for sealing is satisfied, and if the Court agrees that standard is met, the Court must make specific, on-the-record findings describing why the records must be sealed and whether continued sealing of entire documents, including briefs containing legal argument, is the most narrowly tailored means of preserving any established confidentiality interest.

Dated: August 29, 2023                    Submitted,

                                          /s/ Jaqueline Aranda Osorno
                                          *Counsel for Proposed Intervenors*

Public Justice
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
jaosorno@publicjustice.net

James Wyrsch
Khazaeli Wyrsch LLC
911 Washington Avenue, Suite 211
St. Louis, MO 63101
james.wyrsch@kwlawstl.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on August 29, 2023, a true and correct copy of the foregoing document was filed electronically with the Court's CM/ECF system, which electronically sent notice of the foregoing document to all counsel of record.

                              <u>/s/ Jaqueline Aranda Osorno</u>