**LANE & NACH, P.C.**
2001 East Campbell Avenue, Suite 103
Phoenix, AZ 85016
Telephone No.: (602) 258-6000
Facsimile No.: (602) 258-6003

Adam B. Nach – 013622
Email: adam.nach@lane-nach.com
Paul M. Hilkert – 028934
Email: paul.hilkert@lane-nach.com

*Attorney for Jennifer Power, Henry Snook, Aanda Slocum, Linda Floyd, Jason Robinson, Nathan Alvarez, Randolph DeLeon, and Michael Rosales*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>TEHUM CARE SERVICES, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 23-90086 (CML) |

**OBJECTION AND JOINDER IN OBJECTIONS FILED BY THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF TEXAS AND THE ARIZONA DEPARTMENT OF CORRECTIONS, REHABILITATION, AND REENTRY TO DEBTOR'S DISCLOSURE STATEMENT**

Jennifer Power, Henry Snook, Aanda Slocum, Linda Floyd, Jason Robinson, Nathan Alvarez, Randolph DeLeon, and Michael Rosales (collectively "Arizona Claimants"), Arizona claimants believed to be part of the class of claimants with rights under certain Arizona LSA Arizona Policies, by and through undersigned counsel, submit this Objection and Joinder in Objections filed by the United States Trustee for the Southern District of Texas [Docket No. 1022] and the Arizona Department of Corrections, Rehabilitations, and Reentry [Docket No. 1024] ("Joinder") to Debtor's Disclosure Statement Regarding *Debtor and Official Committee of Unsecured Creditors' Joint Chapter 11 Plan*[1].

---

[1] The Objections filed by the United States Trustee for the Southern District of Texas [Docket No. 1022] and the Arizona Department of Corrections, Rehabilitations, and Reentry are incorporated by this reference as if fully plead herein.

1

**Preliminary Statement, Joinder, and Objection**

Debtor previously filed a *Motion Pursuant to 11 U.S.C. §§ 105(a) & 502 and Bankruptcy Rules 3007 & 9019(b) for Entry of an Order Establishing Procedures for Resolution of a Certain Class of Claims with Rights under Certain Arizona Insurance Policies Issued by Lone Star Alliance* [Docket No. 802] (the "LSA Settlement Motion"). On September 1, 2023, Arizona Claimants filed an *Objection to the LSA Settlement Motion* [Docket No. 915] a copy of which is attached hereto as Exhibit A and incorporated herein by reference. The LSA Settlement Motion was set for hearing on September 15, 2023, but prior to the hearing date was continued to November 14, 2023 [Docket No. 946].

Arizona Claimants hereby join the Objections filed by the United States Trustee for the Southern District of Texas (the "UST") and the Arizona Department of Corrections, Rehabilitations, and Reentry (the "ADCRR") and incorporate the *Objection to the LSA Settlement Motion*, including but not limited to the discussion related to Debtor's failure to discuss the Estate's interest in insurance proceeds. As noted in the Objections filed by the UST and the ADCRR, the Debtor has failed to provide adequate information regarding the insurance policies, and without such information it is impossible to determine whether some or all of the insurance proceeds should be administered in this case. Further, the Debtor has failed to provide adequate information to explain the basis for pooling insurance proceeds and how pooling would impact each creditor. The ability of the Debtor to pool insurance proceeds impacts both the assets available for distribution and their value and also impacts the Debtor's Chapter 7 liquidation analysis.

For the foregoing reasons as well as the reasons set forth by the UST and the ADCRR, Arizona Claimants respectfully request that the Court deny approval of the Disclosure Statement.[2,3]

RESPECTFULLY SUBMITTED this 16th day of October, 2023.

**LANE & NACH, P.C.**

By  /s/ Adam B. Nach
    Adam B. Nach
    Paul Hilkert
    Attorneys for Arizona Claimants

---

[2] Please take notice that neither this Joinder, any subsequent appearance (by pleading or otherwise), nor any participation in or in connection with this case is intended as a waiver to, *inter alia*, (i) the right to have final orders in non-core matters entered only after de novo review by a District Court Judge, (ii) the right to trial by jury in any case, controversy, or proceeding, (iii) the right to have the reference withdrawn by the District Court in any matter subject to mandatory or discretionary withdrawal, and (iv) any other rights, claims, actions, defenses, setoffs or recoupments to which Arizona Claimants are, or may be entitled, under agreements, in law or in equity, and that the same are hereby expressly reserved.

[3] Arizona Claimants do not consent to the jurisdiction of this Court to liquidate their claims pending in various courts in the State of Arizona including but not limited to the Ninth Circuit Court of Appeals, District Court of Arizona, and the Arizona Superior Court. Arizona Claimants also do not consent to this Court adjudicating claims pending by the Arizona Claimants against non-debtor third parties.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service in the above captioned case.

I further certify that a true and correct courtesy copy of the foregoing document was delivered at the time of filing via electronic notification to the following parties:

Amber Carson
Gray Reed
Email: acarson@grayreed.com
*Counsel to the Debtor and Debtor in Possession*

Zachary Hemenway
Stinson LLP
Email: Zachary.hemenway@stinson.com
*Counsel to the Committee*

/s/Adam B. Nach
Adam B. Nach

# EXHIBIT "A"

**LANE & NACH, P.C.**
2001 East Campbell Avenue, Suite 103
Phoenix, AZ 85016
Telephone No.: (602) 258-6000
Facsimile No.: (602) 258-6003

Adam B. Nach – 013622
Email: adam.nach@lane-nach.com
Paul M. Hilkert – 028934
Email: paul.hilkert@lane-nach.com

*Attorney for Jennifer Power, Henry Snook, Aanda Slocum, Linda Floyd, Jason Robinson, Nathan Alvarez, Randolph DeLeon, and Michael Rosales*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>TEHUM CARE SERVICES, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 23-90086 (CML) |

**OBJECTION AND JOINDER IN OBJECTION TO DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105(a) & 502 AND BANKRUPTCY RULES 3007 & 9019(b) FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR RESOLUTION OF A CERTAIN CLASS OF CLAIMS WITH RIGHTS UNDER CERTAIN ARIZONA INSURANCE POLICIES ISSUED BY LONE STAR ALLIANCE**

Jennifer Power, Henry Snook, Aanda Slocum, Linda Floyd, Jason Robinson, Nathan Alvarez, Randolph DeLeon, and Michael Rosales (collectively "Arizona Claimants") [1], Arizona claimants believed to be part of the class of claimants with rights under certain Arizona LSA Arizona Policies, by and through undersigned counsel, submit this Objection and Joinder ("Joinder") in the *Objection to Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a)*

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to them in the *Motion Pursuant to 11 U.S.C. §§ 105(a) & 502 and Bankruptcy Rules 3007 & 9019(b) for Entry of an Order Establishing Procedures for Resolution of a Certain Class of Claims with Rights under Certain Arizona Insurance Policies Issued by Lone Star Alliance* (the "Motion") filed at Docket No. 802.

1

*& 502 and Bankruptcy Rules 3007 & 9019(b) for Entry of an Order Establishing Procedures for Resolution of a Certain Class of Claims with Rights under Certain Arizona Insurance Policies Issued by Lone Star Alliance* filed by Antoinette Windhurst [Docket No. 858] (the "<u>Objection</u>")[2].

## I. Preliminary Statement

Arizona Claimants are in favor of a settlement procedure that allows for the resolution of their claims. However, in order for Arizona Claimants to support a settlement procedure, it must: (i) preserve their rights to pursue excess insurance, (ii) provide them with a fair procedure for settlement, (iii) allow them to advance their claims against non-debtor third parties to the extent the LSA Arizona Policies are insufficient to fully pay any judgment or settlement, and (iv) provide protections to allow them to receive distributions from a plan of reorganization in the event that they are unable to satisfy their claim from the LSA Arizona Policies, any other available insurance, or non-debtor third parties.

Arizona Claimants understand the challenges faced by the Debtor and LSA in structuring a comprehensive settlement due to the fact that some parties, including the excess insurer, either were not allowed to or elected not to participate in the mediation giving rise to the settlement. However, such challenges should not result in the Class Claimants having to take risks without thoroughly disclosing and detailing such risks and without making every effort to eliminate or reduce such risks. Unfortunately, the proposed Claims Resolution Procedures appear to overlook, or to sufficiently explain, a number of requirements that could put at risk any recovery under excess insurance policies, mandate the release claims against the Debtor's bankruptcy estate and LSA without providing an opt-out provision, and potentially allow for the pooling of insurance proceeds which could reduce recovery for some claimants. Therefore, based upon the foregoing, the Motion should be denied.

## II. Lack of Sufficient Information

---

[2] The Objection is incorporated by this reference as if fully plead herein.

As detailed in the Objection, "[t]o assure a proper compromise the bankruptcy judge must be apprised of all necessary facts for an intelligent, objective and educated evaluation." *In re Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980). As noted hereinbefore, the task to present a comprehensive settlement agreement is challenging, and Arizona Claimants' objection to the current Claims Resolution Procedures is not intended to be a criticism of the efforts taken by the Debtor, LSA and the Committee. However, just because there may be challenges to creating a comprehensive settlement does not mean that the potential risks and omissions under the current Claims Resolution Procedures, and the limited information presented in the Motion, should simply be overlooked.

The Motion provides insufficient information for Arizona Claimants, and this Court, to make a decision regarding the wisdom of supporting the current Claims Resolution Procedure. Although it appears that the Debtor, LSA, and the Committee were attempting to set up a basic settlement procedure, the lack of information as presented makes it impossible for Arizona Claimants to understand the issue that is being settled, the potential benefit to Class Claimants under the current Claims Resolution Procedures, and the potential risks associated with the current Claims Resolution Procedures.

      a.    **The Motion Does Not Discuss the Estate's Interest in the Insurance Proceeds**

Although the Motion identifies various LSA Arizona insurance policies, it does not indicate whether the Estate is asserting that the policy proceeds are property of the bankruptcy estate. In considering whether insurance policy proceeds are property of a bankruptcy estate, the Fifth Circuit has held:

> [t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

*In re Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993).  To the extent a debtor does not have a legal claim to the insurance proceeds, under the secondary impact exception, the proceeds may still be considered property of the bankruptcy estate if the claims against the policy exceed the available policy proceeds. *See In re OGA Charters, L.L.C.*, 569 B.R. 105, 132 (Bankr. S.D. Tex. 2017) aff'd sub nom. *In re OGA Charters, L.L.C.*, 901 F.3d 599 (5th Cir. 2018); *In re Burr Wolff, LP*, 2007 WL 2964835.

The Debtor has failed to establish that the insurance proceeds are property of the estate, and without such a showing, absent an agreement among all of the parties, including Arizona Claimants, the Motion should not be approved.

      b.    **The Motion Does Not Effectively Describe What Disputes are Being Resolved**

The Motion contains very little information about what, if any, controversies exist, so it is impossible to evaluate the settlement.  The Motion states that the settlement "avoids costly and time-consuming litigation over complex insurance issues that could arise if the Debtor . . . were to pursue other means of recovering available policy proceeds in this case." *See* Motion, Page 7, ¶ 17.  However, the Motion is silent as to what specific complex issue or issues exist between the Debtor and LSA, or the Debtor and the Class Claimants.  Given the fact that if approved the Class Claimants would not be allowed to participate in any plan distributions, information regarding the controversies that exist is necessary in order for all Class Claimants to reasonably evaluate the Motion.

Additionally, although the Motion indicates that it is being presented solely under 9019(b) of the Federal Rules of Bankruptcy Procedure, the Motion does not simply provide a procedure for resolving claims, but instead (i) releases Arizona Claimants' claims against the Debtor's bankruptcy estate and LSA, (ii) potentially reduces the amount of recovery for Arizona Claimants to the extent the proceeds from the LSA Arizona Policies are pooled at any point in time (which will be discussed in more detail hereinafter), and (iii) could potentially impair Arizona Claimants' ability to recover from excess insurance proceeds.

4

Arizona Claimants assert that as a result of the foregoing, the Motion is not in fact setting up a procedure for the Debtor to compromise or settle claims or controversies, but is instead, at least in part, acting to resolve Arizona Claimants' claims against the Debtor's bankruptcy estate and LSA without Arizona Claimants having participated in the settlement process. Based upon the foregoing, absent an agreement among all of the parties, including Arizona Claimants, this unilateral settlement process should not be allowed and the Motion should not be approved.

      c.    **The Motion does not Provide Information Regarding the Amount of Available Proceeds from the LSA Arizona Policies and the Impact that the Settlement could have on the Availability of Excess Insurance Proceeds**

Although the Debtor is advancing this Motion under 9019(b) of the Federal Rules of Bankruptcy Procedure, given the fact that if approved the Class Claimants would not be allowed to participate in any plan distributions, information about the available insurance proceeds, including excess insurance proceeds, is necessary in order for all Class Claimants to reasonably evaluate the Motion and the proposed Claims Resolution Procedures.

The Motion does not provide any information regarding the amount of available proceeds under the LSA Arizona Policies and does not provide information as to the outstanding claims against each of the individual LSA Arizona Policies to the extent such information is known by the Debtor. As well, the Motion provides no information regarding the potential availability of additional insurance coverage and any other avenues for recovery for Arizona Claimants. Moreover, the Motion fails to explain how excess insurance is triggered and how each Class Claimant's right to recover from the excess insurer will be preserved to the extent that the proceeds from the LSA Arizona Policies are insufficient to satisfy all claims. Arizona Claimants are concerned that without such information, the Claims Resolution Procedures as currently structured, could impair their right to pursue excess insurance proceeds and other avenues for recovery.

One area of concern involves the impact that pooling the proceeds from the

5

LSA Arizona Policies[3] could have on the ability of Arizona Claimants to pursue excess insurance proceeds. At a minimum, it is not clear from the Motion how policy limits would be determined if the primary insurance proceeds are pooled at any stage, and how the parties that submitted the Motion would protect Class Claimants in the event that the excess insurance carrier denied coverage based upon the pooling of the primary insurance proceeds. As well, it is not clear what benefit would be achieved by pooling the proceeds from the LSA Arizona Policies given the fact that the Claims Resolution Procedures appear to only require LSA to pay into the LSA Arizona Claim Personal Injury Trust the amount LSA is required to pay under each of the individual LSA Arizona Policies. Even to the extent that pooling the proceeds from the LSA Arizona Policies does not impact the ability to pursue excess insurance proceeds, not all Class Claimants sit in equal position in regards to the remaining available proceeds under each of the individual LSA Arizona Policies, and there is no reason why the Claims Resolution Procedures should impair any Class Claimant's right to recovery, particularly when Debtor has not demonstrated a legal basis for doing so, and when the amount that LSA will be paying into the LSA Arizona Claim Personal Injury Trust will be capped based upon each of the individual LSA Arizona Policies' limit.

A second area of concern involves the payment of a percentage fee to the Debtor's bankruptcy estate from the proceeds from the LSA Arizona Policies, and how such payment would be treated for purposes of achieving policy limits under the primary insurance policies. *See* Motion, Page 4, ¶ 9(b)(iv). More specifically, if one Class Claimants settles its claim at mediation, but another Class Claimant does not settle and is entitled to recovery under

---

[3] For the avoidance of doubt, the Motion refers to five (5) separate LSA Arizona Policies (4-100109, 4-100167, 4-453898, 4-4544898, and 4-455388. *See* Motion, Page 3, ¶ 7. The reference to "pooling" is intended to refer to a situation where LSA would pay, for example, an amount under LSA Arizona Policy 4-100109 and an amount under LSA Arizona Policy 4-100167 into the LSA Arizona Claim Personal Injury Trust, with all funds in the LSA Arizona Claim Personal Injury Trust to be paid to all Class Claimants on a pro rata basis regardless of the LSA Arizona Policy from which the Class Claimant was entitled to recover. Arizona Claimants do not know, *inter alia*, the impact that this commingling and distribution procedure could have on their rights to pursue additional recovery under excess insurance policies.

that same LSA Arizona insurance policy, it is unclear if the payment to the Debtor's bankruptcy estate would count towards the aggregate policy limits that would first need to be met before triggering excess insurance coverage. To the extent that such payment to the Debtor's bankruptcy estate would not count towards meeting any retained limit that must be met before triggering excess insurance coverage, such payment should not be allowed.

To the extent the Claims Resolution Procedures could impair the availability of excess insurance coverage, the Motion should be denied. As well, to the extent the Claims Resolution Procedures provide for pooling of the proceeds available under the LSA Arizona Policies, the Motion should be denied. Finally, to the extent that payment to the Debtor's bankruptcy estate of a percentage fee from any settlement achieved at mediation does not count towards meeting a retained limit that must be met before triggering excess insurance coverage, the Motion should be denied.

        d.    **The Motion does not discuss the Debtor's Pending Litigation against LSA and the Excess Insurer**

The Debtor commenced an action against the excess insurance carrier and LSA in the Suffolk County Superior Court (Civil Action Division), assigned Case Number 218CV01127-BLS2 (the "Excess Insurer Litigation") as a result of the excess insurance carrier's denial of insurance coverage that the excess insurance carrier alleged were not timely submitted by the Debtor. As part of the dispute, the Debtor alleges that there was an agreement between the Debtor, LSA, and the excess insurer whereby the Debtor would provide notice of a claim to LSA, and LSA would provide notice to the excess insurer. *See* Objection, Exhibits 2-4.

The Motion is silent as to whether the Debtor will continue to advance the Excess Insurer Litigation, and if it does, whether some or all Arizona Claimants will be entitled to any recovery therefrom. Further, it is not clear if the Excess Insurer Litigation impacts some or all of the Class Claimants. Certainly one reading of the Claims Resolution Procedures would disallow any Class Claimants from receiving any additional recovery from

7

the Excess Insurer Litigation based upon the fact that the Claims Resolution Procedures provide that after litigation by each Class Claimant "distribution [from the LSA Arizona Claim Personal Injury Trust] shall constitute full and final satisfaction of **all** claims against Debtor's estate (or its successor in interest) [and] LSA . . . ." *See* Revised Order, Dkt. No. 895, Page 4, ¶ 1(c)(iii) (emphasis added). Given the fact that it was the excess insurance carrier's denial of coverage of some or all of the Class Claimants' claims, it is patently unfair that such injured parties would not be entitled to receive distributions from any recovery arising out of the Excess Insurer Litigation.

Additionally, it is not clear whether there are any additional disputes regarding LSA's or any other insurers' duty to provide coverage for Arizona Claimants' claims, or whether LSA and any other insurer has confirmed coverage for all Arizona Claimants' claims.

Without complete information regarding potential coverage disputes, there is insufficient information to allow Arizona Claimants to evaluate the Claims Resolution Procedures and the Motion should be denied.

    e.    **The Settlement does not Provide Claimants with Protections from a Race to Mediation**

The Motion does not provide claimants with sufficient protections against a race to mediation and depletion of insurance proceeds, leaving the potential that some claimants could be left with no avenue for recovery. The risk is further enhanced by the fact that those Class Claimants that are entitled to recovery from the LSA Arizona Policies, which Class Claimants have thus far have not been formally identified, are solely limited to recovery from the proceeds from the LSA Arizona Policies and not from the bankruptcy estate. The risk is impossible to quantify given the fact that the Motion provides no information regarding the amount available for distribution to Arizona Claimants from the LSA Arizona Policies.

While the Revised Form of Order filed at Docket No. 895 includes a noticing procedure for settlements, such notice will only occur for settlements over $500,000.00. However, this settlement noticing threshold amount has little meaning without complete

disclosure of the amount of available insurance proceeds[4], and therefore may not serve to protect against depletion of insurance proceeds prior to all Class Claimants having had an opportunity to attend mediation. Without satisfactory protections to avoid a potential race to mediation, the Motion should be denied.

      f.    **Self-Insurance Retention**

The Motion states that "[t]he LSA Arizona Policies require the Debtor to fund certain self-insurance retention obligations before LSA is obligated to provide coverage." *See* Motion, Page 3, ¶ 7. However, there is no information regarding the status of the self-insurance retention obligations (the "**SIR**"), whether any or all SIR obligations have been met by the Debtor, and to the extent the SIR obligations have not been met, whether the SIR will be paid by LSA, or whether the failure to pay the SIR will impair excess insurance coverage. Arizona Claimants do not believe it is appropriate to approve the current Motion to the extent that it could in any way impair recovery under any excess insurance policies.

### III.    Non-Debtor Third Party Releases

The terms of the Claims Resolution Procedure, as set forth in the original proposed form of order, required Class Claimants to release non-debtor parties that are insureds under the LSA Arizona Policies. The Revised Proposed Order appears to have modified this requirement to allow a Class Claimant to pursue additional recovery against non-debtor parties that are insureds under the LSA Arizona Policies in the event that the Class Claimant's claim is not resolved at mediation and thereafter obtains a judgment or enters into a settlement that exceeds the available LSA Arizona Policy proceeds.

To the extent that Arizona Claimants' understanding of the revision to the third-party release is correct, so that, absent a settlement at mediation, they will have the ability to pursue

---

[4] Counsel for Arizona Claimants has been provided some information regarding the available proceeds under the LSA Arizona Policies and the excess insurance policies, but still has remaining questions about the same and asserts that notwithstanding the information that has been provided, such information should be filed and made a part of the record in order to ensure the accuracy of the information thus provided.

9

non-debtor third parties if the LSA Arizona Policy proceeds are insufficient to satisfy their claim, they have no objection to this revised term. However, to the extent that Arizona Claimants' understanding of the revision to the third-party release is incorrect and there is any limitation on their ability to satisfy any unpaid portion of their claim, they object to mandatory release of non-debtor parties that are insureds under the LSA Arizona Policies for the reasons set forth in the Objection, which are incorporated herein by this reference.

### IV. Conclusion

Arizona Claimants recognize the challenges faced by Debtor, LSA and the Committee. However, without additional information to allow Class Claimants to quantify their potential recovery under the Motion and Claims Resolution Procedures, the Motion should be denied. Notwithstanding the foregoing, Arizona Claimants believe that with additional efforts, the alleged deficiencies can be cured so that Arizona Claimants will be able to fairly evaluate the impact of the Motion, and potential support the same. The Motion should be denied without prejudice to Arizona Claimants obtaining more information and addressing their concerns raised herein.

### V. Reservation of Rights

Please take notice that neither this Joinder, any subsequent appearance (by pleading or otherwise), nor any participation in or in connection with this case is intended as a waiver to, *inter alia*, (i) the right to have final orders in non-core matters entered only after de novo review by a District Court Judge, (ii) the right to trial by jury in any case, controversy, or proceeding, (iii) the right to have the reference withdrawn by the District Court in any matter subject to mandatory or discretionary withdrawal, and (iv) any other rights, claims, actions, defenses, setoffs or recoupments to which Arizona Claimants are, or may be entitled, under agreements, in law or in equity, and that the same are hereby expressly reserved.[5]

---

[5] Arizona Claimants do not consent to the jurisdiction of this Court to liquidate their claims pending in various courts in the State of Arizona including but not limited to the Ninth Circuit Court of Appeals, District Court of Arizona, and the Arizona Superior Court. Arizona Claimants also do not consent to this Court adjudicating claims pending by the Arizona Claimants against non-debtor third parties.

RESPECTFULLY SUBMITTED this 1st day of September, 2023.

**LANE & NACH, P.C.**

By   /s/ Adam B. Nach
       Adam B. Nach
       Paul Hilkert
       Attorneys for Arizona Claimants

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service in the above captioned case.

I further certify that a true and correct courtesy copy of the foregoing document was delivered at the time of filing via electronic notification to the following parties:

Amber Carson
Gray Reed
Email: acarson@grayreed.com
*Counsel to the Debtor and Debtor in Possession*

Zachary Hemenway
Stinson LLP
Email: Zachary.hemenway@stinson.com
*Counsel to the Committee*

Mark Stromberg
Stromberg Stock, PLLC
Email: mark@strombergstock.com
*Counsel for LSA*

       */s/Adam B. Nach*
       Adam B. Nach

11