IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | ) ) | Case No. 23-90086 (CML) |
| Debtor. | ) ) ) ) | |

**OBJECTION OF IDAHO PARTIES TO JOINT EMERGENCY MOTION OF THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE JOINT CHAPTER 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH <u>RESPECT THERETO, AND (V) GRANTING RELATED RELIEF</u>**

COME NOW, through undersigned counsel, the State of Idaho, the Idaho Department of Correction, and certain officials or employees of the State of Idaho (collectively, the "<u>Idaho Parties</u>") and file this *Objection to Joint Emergency Motion of the Debtor and the Official Committee of Unsecured Creditors* (collectively, the "<u>Proponents</u>") *for Entry of An Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* (the "<u>Joint Motion</u>"), respectfully stating as follows:

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

1

### I.     PRELIMINARY STATEMENT

1. The claims of the Idaho Parties stem from a series of agreements related to the Debtor's provision of health care services to inmates in Idaho correctional facilities. The claims of the Idaho Parties likely span Classes 4 (non-personal injury claims), 5 (personal injury claims), and 6 (contingent indemnification claims). Though the Idaho Parties have concerns with respect to the adequacy of information in the proposed Disclosure Statement and the proposed solicitation procedures, the crux of the Idaho Parties' concerns is the proposed disallowance of claims in Class 6 pursuant to section 502(e)(1)(B) of the Bankruptcy Code on the effective date of the proposed Plan. The purpose of section 502(e)(1)(B) is to prohibit the doubling of allowed claims against the bankruptcy estate – *e.g.,* one allowed claim by a plaintiff, and one allowed claim by a party co-liable with the debtor on plaintiff's claim. The allowance of both would result in a double recovery on a single liability of a debtor. Section 502(e)(1)(B) is a useful tool to eliminate duplicative claims for the benefit of creditor recoveries; but, the Proponents here are using it for a different purpose: the elimination of all claims related to the misconduct of the Debtor.

2. As one walks through the timing of what the Proponents are proposing, the goal is clear: the claims of potential co-defendants in Class 6 are disallowed on the effective date; the Proponents (pursuant to the Plan) force plaintiffs to seek recovery from the Class 6 claimants following the effective date; and, assuming the Class 6 claimants pay, the Debtor is then absolved of both the plaintiffs' claims and the Class 6 claims. Basing a plan on the unfair treatment of one creditor group to benefit another of equal priority is antithetical to the bankruptcy process.

3. As set forth in detail below, the Joint Motion should be denied because the proposed solicitation procedures are improper, the proposed Disclosure Statement does not contain adequate information, and the proposed Plan is unconfirmable. Further, any order scheduling a hearing on

the Joint Motion should include reasonable deadlines for the Proponents to file revised versions of the solicitation procedures, Disclosure Statement and Plan so that interested parties have sufficient opportunity to review and make further objections, as needed, in advance of a hearing.

## II.     JOINDER

4.     The Idaho Parties join in the objections filed by the Office of the United States Trustee and the Arizona Department of Corrections, Rehabilitation and Reentry.

## III.     OBJECTION

### A. Emergency Relief Requested Should be Denied for Lack of Emergency

5.     The word 'emergency' appears 4 times in the Joint Motion – all on the cover page. The Proponents include no argument regarding why emergency relief is required. The Proponents indicate that the Debtor has limited resources, but provide no basis for this Court to determine whether shortened notice is justified, particularly in light of the below objections and attendant risk of re-solicitation if deficiencies are not identified until a combined hearing on final approval of a Disclosure Statement and confirmation of a Plan. *See* Bankr. L.R. 9013-1(i) (requiring "detailed statement why an emergency exists…"). Accordingly, the Proponents have not met their burden and emergency relief should be denied.

### B. Proposed Solicitation Procedures Should be Denied as Improper

6.     Without any ruling or justification, the Proponents have determined that claimants with any type of contingent claim for indemnification are completely impaired and not entitled to vote under section 1126(g) of the Bankruptcy Code. *See* Joint Motion at 7. There are at least two problems with this approach: First, the Proponents' definition of Contingent Indemnification Claims (Plan at 3) includes claims that are not disallowable under Bankruptcy Code section 502(e)(1)(B). Specifically, the Proponents failed to include any allegation of co-liability, proof of which is required for this Court to find that the claims at issue are disallowable. *See* Bankruptcy

3

Code § 502(e)(1) ("court shall disallow any claim for reimbursement or contribution of an entity that is *liable with the debtor*…") (emphasis added).  Thus, with respect to solicitation, the Proponents' improper treatment of claims has the effect of depriving claimants of the right to vote to accept or reject the proposed Plan.  Second, the solicitation procedures do not include any mechanism for this Court to hear disputes regarding temporary allowance of Contingent Indemnification Claims for voting purposes.  Only Disputed Claims have such a procedure, and Contingent Indemnification Claims are purportedly disallowed and thus excluded from the definition of Disputed Claims. *See* Def. "Disputed Claim", Plan at 4.

7. On a more mechanical level, the solicitation procedures fail to account for creditors with claims in more than one Plan class.  As indicated above, the claim of the Idaho Parties likely fits into more than one class under the proposed Plan.  The current solicitation procedures do not provide claimants the ability to vote an appropriate amount in the appropriate class so that the class-by-class tabulation will accurately reflect the claim population.  Absent claim splitting procedures, it is unclear how creditor votes can be correctly solicited.

8. Accordingly, because the current solicitation procedures improperly prohibit voting and fail to provide for claim splitting, the Joint Motion for approval of solicitation procedures should be denied.

**C. Proposed Disclosure Statement Does Not Contain Adequate Information**

9. In addition to the solicitation issues, the Joint Motion should be denied because the proposed Disclosure Statement is inadequate.  Along with many other creditors, the Idaho Parties have an economic decision to make in order to vote on the proposed Plan and chose a path with respect to third party releases.  This is not a hypothetical choice for the Idaho Parties, some of whom have contractual relationships with certain of the Settlement Parties for whom the

4

Proponents are seeking releases under the proposed Plan. The Idaho Parties are attempting to weigh the estimated recoveries under the proposed Plan against pursuing direct claims. Unfortunately, the proposed Disclosure Statement does not contain adequate information for the Idaho Parties, and other creditors, to make decisions on voting and releases.

10. As an initial matter, the Proponents are unable to describe the assumptions underpinning the recovery estimates and how the recovery estimates are calculated. On page iii of the proposed Disclosure Statement, the Proponents make the following statement:

> The Debtor and the Committee estimates [sic] that Holders of Personal Injury Claims could receive 17% to 36% of their Allowed Claims under the Plan from the funds provided hereunder [sic], the Debtor's insurance policies, and recoveries from non-Debtor co-defendants or their insurers.

11. The Proponents' proposed Plan also includes a settlement with Lone Star Alliance ("LSA Settlement") which may provide a greater recovery to certain holders of Personal Injury Claims than others (including the Idaho Parties) in Class 5 of the proposed Plan.

12. To understand how all the pieces – insurance, non-debtors, the LSA settlement – affect the Proponents' recovery estimates, additional disclosures should be added to the proposed Disclosure Statement so that creditors can understand how the recovery estimate may vary with respect to particular claims.[2]

13. The proposed Disclosure Statement also fails to describe the Debtor's insurance policies that are now a first-line source of recovery for claimants. Moreover, despite the statement that recovery from insurance is part of the recovery estimates, the Proponents have failed to describe the effect of the LSA Settlement on the recovery estimates for other members of Class 5, and whether claimants who are not entitled to participate in the LSA Settlement will see higher or

---

[2] Counsel for the Idaho Parties asked to discuss the assumptions and calculation with the financial advisor for the Debtor. That request was denied.

lower estimated recoveries on their claims after removing the LSA Settlement from the equation. In sum, because of the lack of adequate information in the proposed Disclosure Statement, creditors such as the Idaho Parties have no idea whether the treatment they will receive under the proposed Plan is roughly equivalent to what other unsecured creditors are receiving and whether that treatment supports the decision to grant third party releases.

14. Overall, the proposed Disclosure Statement fails to adequately describe the LSA Settlement. The LSA Settlement is described in two short paragraphs on page 9 of the proposed Disclosure Statement. The description of Class 5 on page 16 of the proposed Disclosure Statement includes a single sentence that indicates the LSA Settlement takes precedence over the other treatment described for Class 5. That's it. In order to determine whether to vote in favor of the proposed Plan in Class 5, a creditor has to review a motion that is not part of the solicitation package and review a proposed order buried at Exhibit D to the proposed Disclosure Statement to get the barest picture of the LSA Settlement. Absent a reading of Exhibit D, no creditor would understand that there are proposed releases made part of the LSA Settlement. There is no discussion about the beneficiaries of the releases, the propriety of the releases, or who is granting the releases.

15. Until any and all Disclosure Statement deficiencies are cured, the Joint Motion should be denied.

**D. The Plan is Unconfirmable**

16. A motion to approve a disclosure statement may be denied when it describes a patently unconfirmable plan or a plan that is so fatally flawed it is incapable of confirmation. It is an extreme remedy, but one justified in this case as set forth below and in numerous other objections to the Proponents' Joint Motion.

17. Without motion, evidence, opportunity to respond, or a hearing before this Court, the Proponents are asking this Court to confirm a Plan that deems creditor claims disallowed en masse under Class 6. Plan at 15. The Joint Motion does not include a request to disallow claims, much less meet the burden of proof with respect to same. The purported basis for disallowance is section 502(e)(1)(B) of the Bankruptcy Code, but, as highlighted above, the Proponents' overly broad definition of Contingent Indemnification Claims fails to even allege that affected claimants are liable with the Debtor or have secured the claim of a creditor, much less prove this essential element of a request to the Court to disallow a claim on that basis.

18. Section 1123 of the Bankruptcy Code establishes what a plan should and may contain. Generally, a plan may contain provisions that are consistent with other provisions of the Bankruptcy Code. 11 U.S.C. § 1123(b)(6). Under § 502(e)(1)(B), applicable claims are disallowed "at the time of …disallowance of such claim." Courts have found that time for disallowance is the date of a ruling by the Court. *See In re Drexel Burnham Lambert Group Inc.*, 148 B.R. 982, 986 (Bankr. S.D.N.Y 1992). The Proponents have not asked for an order from this Court disallowing claims, but an order confirming a proposed Plan. Because the proposed Plan contravenes the Bankruptcy Code in attempting to disallow claims in Class 6 on the Effective Date, the proposed treatment of Class 6 is an impermissible provision under section § 1123.

19. As it contravenes other provisions of the Bankruptcy Code, the Plan cannot be confirmed under § 1129. Similarly, the Idaho Parties question whether any proposed Plan that contains such a provision was proposed in good faith. The Joint Motion to approve an inadequate Disclosure Statement and solicit the unconfirmable Plan should be denied.

## IV.  PRAYER

20.  For the reasons set forth above, the Idaho Parties request the Court (i) deny the Joint Motion, (ii) establish deadlines for the Proponents to file revised proposed solicitation packages at least 3 business days in advance of a hearing on the Joint Motion; and (iii) grant such further relief to which the Idaho Parties may be entitled.

RESPECTFULLY SUBMITTED this 16th day of October, 2023.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ *Brenda L. Funk*
John D. Cornwell
Texas Bar No. 24050450
Brenda L. Funk
Texas Bar No. 24012664
700 Milam Street, Suite 800
Houston, TX 77002-2806
Telephone: 713.222.1470
Facsimile: 713.222.1475
jcornwell@munsch.com
bfunk@munsch.com

Randall W. Miller
Texas Bar No. 24092838
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: 214.855.7539
Facsimile: 214.855.7584
rmiller@munsch.com

**SPECIAL DEPUTY ATTORNEYS GENERAL FOR THE STATE OF IDAHO PARTIES**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of October, 2023, a true and correct copy of this document was served by the Court's ECF system on all parties entitled to notice thereof.

/s/ Brenda L. Funk
Brenda L. Funk
Texas Bar No. 24012664