IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | } | |
| | } | |
| TEHUM CARE SERVICES, INC., | } | Bankruptcy Case No. |
| a/k/a and f/d/b/a CORIZON | } | 23-90086-CML |
| HEALTH, INC. and/or | } | Chapter 11 |
| CORIZON, LLC | } | |
|     Debtors. | } | |

**OBJECTION OF TRACEY GRISSOM TO FINAL APPROVAL OF SECOND AMENDED DISCLOSURE STATEMENT; OBJECTION TO SUFFICIENCY OF THE SECOND AMENDED DISCLOSURE STATEMENT; AND, RESERVATION OF RIGHTS REGARDING SAME**

    **COMES NOW** Tracey Grissom ("Ms. Grissom"), by and through the undersigned Counsel, and submits the following objection with respect to the *Joint Amended Motion of the Debtor and the Official Committee of Unsecured Creditors, etc.* filed herein on November 1, 2023 as Docket No. 1082 (the "Joint Amended Motion"), as well as the *Second Amended Disclosure Statement Regarding Debtor and Official Committee of Unsecured Creditors' Second Amended Joint Chapter 11 Plan, etc.* filed herein as Docket No. 1071 (the "Second Amended Disclosure Statement"), and states as follows:

1. On October 27, 2023, the Debtors and the Official Committee of Unsecured Creditors ("UCC") filed the Second Amended Disclosure Statement [Dkt. 1071] together with a *Notice of Filing of Disclosure Statement, Hearing Thereon, And Objection Deadline* ("Notice of Filing") [Dkt. 1077].

2. According to the Notice of Filing, "the deadline to object to final approval of the Disclosure Statement is **November 30, 2023** (the "Objection Deadline")."

1

3. The Notice of Filing, prepared by and for the benefit of the Debtors and the UCC, purports to require that any objection must "state, with particularity, the basis and nature of any objection and, if practicable, **a proposed modification to the Disclosure Statement that would resolve such objection**…"

4. Such a requirement has no legal basis, either under the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules of the Bankruptcy Court for the Southern District of Texas. Its inclusion in the Notice of Filing amounts to yet another attempt by the Debtors, plus the Debtors' affiliates and insiders, to intimidate creditors by bluff and bluster. The UCC, by joining the filing of the Second Amended Disclosure Statement and Plan, has implicated itself in the attempt, as well.

5. As with the initial Disclosure Statement and Plan, as well as the first Amended Disclosure Statement and Plan, this Second Amended Disclosure Statement and Plan is fatally flawed and should not be approved.

6. The Second Amended Disclosure Statement does not contain adequate and accurate information, as required by 11 U.S.C. 1125(b).

7. The Second Amended Disclosure Statement in the instant case cannot be considered to contain adequate and accurate information unless and until it contains an explanation of the validity and propriety of the mediated settlement upon which the Disclosure Statement and Plan are based.

    a. On May 22, 2023, this Court entered its Order [Dkt. 603] setting out the obligations of the debtors and other parties to participate in a mediation (the "First Mediation"). As later shown, the First Mediation was grievously tainted by misconduct.

2

b. The First Mediation, however tainted it may have been, yielded a purported settlement upon which the initial Disclosure Statement and Plan were specifically based.

c. Notwithstanding the facts surrounding the First Mediation, the Debtors and the UCC have persisted in touting the First Mediation as the only hope of recovery for creditors.

d. Even in the face of specific questions from the Bench, in open court, as to the fundamental basis of the settlement, the same defective settlement agreement again forms the foundation upon which the Debtors and the UCC stake their Second Amended Disclosure Statement and Plan.

d. Furthermore, for all of their trumpeting of the success of the First Mediation, the Debtors and the UCC have intentionally and unabashedly refused to allow any actual tort claimants and other unsecured creditors to have information about the mediation, or its participants, or the basis of the settlement agreement which it spawned.

e. In that way, the Debtors have continued to shirk the responsibility of complete disclosure required by the Bankruptcy Code.

8. Moreover, less than two weeks ago, the Debtors and the UCC obtained this Court's approval for a **second** mediation, after the public revelations concerning the First Mediation.

a. Whether the second mediation occurred is unknown to Grissom, as details of the second mediation have been withheld from creditors, just as in the First Mediation.

    b. Whether the second mediation was successful or just a matter of "checking someone's homework" is equally unknown.

    c. In fact, this Court's Order approving the conditions under which the second mediation will be conducted was entered by the Court less than twenty-four hours ago, on November 29, 2023.

9. Without a complete statement regarding the second mediation, the Second Amended Disclosure Statement does not meet the "sufficiency" requirements of the Bankruptcy Code.

10. As if more reason to deny approval was needed, the United States Trustee has only recently formed a second creditors' committee, this time for the appropriate representation of the tort claimants, those individuals with "skin in the game" by way of claims against the Debtors, their affiliates and insiders.

11. The UST invited Ms. Grissom to apply to participate as a member of second creditors' committee.  Ms. Grissom applied but was not appointed.  To the best knowledge of Ms. Grissom and her counsel, no creditors' committee appointed in this case includes a single incarcerated person, even though, in Alabama and perhaps elsewhere, thousands of such people are still at the mercy of YesCare.

    a. Regardless of its vociferous denials, YesCare is the alter ego of the debtors and the recipient of the proceeds generated by the fraudulent conveyance consummated by the debtor; to this date the fraudulent conveyance has been ignored by the creditors' committees.

    b. Those incarcerated people still at the mercy of YesCare are suffering.

    c. Appointing one or more incarcerated persons to serve on the second creditors' committee is appropriate and just. Failure to do so may, itself, serve to further deprive Ms. Grissom and other incarcerated persons of their rights, all while YesCare, together with its aliases, affiliates and insiders, profit from the filing of this case.

12. While the makeup or reconstitution of the second creditors' committee should properly be, and will be, the subject of a separate proceeding, this Court should consider this factor when determining whether to approve the Second Amended Disclosure Statement.

    a. At the virtually inevitable point at which the parties file their Rule 9019 motions, this case will have reached a certain level of momentum.

    b. Failing to include one or more currently incarcerated persons as committee members will mean that their interests are not, and have not been, adequately represented, under the principles set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) and its progeny.

13. The second committee has only recently conducted its organizational meeting, and has only recently employed counsel. Granting final approval to the Second Amended Disclosure Statement at this stage would be repugnant to fundamental notions of justice.

14. The Second Amended Disclosure Statement fails to offer any meaningful information concerning serious issues to which objections have already been raised:

    a. The Data Breach: the Debtors' servers were breached by one or more hackers. Based on the verbal assertion of Debtors' counsel, a protective order is in place concerning the Data Breach. Thus, information regarding the hack has been embargoed and hidden behind a protective order.

    b. As outlined in Ms. Grissom's earlier objection, no information has been provided concerning the data which was hacked, thereby potentially exposing tens of thousands of persons to the possibility that Personally Identifiable Information and Personal Health Information regarding those persons have been stolen and sold.

    c. The Second Amended Disclosure Statement addresses the data breach only by admitting that it occurred.  No provision is made for any mitigation efforts to be undertaken with regard to the privacy concerns of those individuals whose information has been stolen.

    d. Additionally, the Second Amended Disclosure Statement makes no provision for the Debtors to comply with federal notification provisions related to HIPAA and Consumer Privacy.

15. Similarly, the Second Amended Disclosure Statement is silent concerning the appointment of a Patient Ombudsman under 11 U.S.C.333.

    a. Ms. Grissom anticipates that the Debtors and the UCC will deny that the Debtors constitute a health care provider, as set out in the Bankruptcy Code, but such an argument would be specious.

    b. The names of the "Debtors" are, in reality, interchangeable.  Corizon is YesCare and YesCare is Corizon.

    c. The legal fiction created by the entities via corporate spinoffs and name changes are little more than aliases and camouflage.  A Patient Ombudsman should be appointed, as required by the Bankruptcy Code.

16. The Second Amended Disclosure Statement gives detailed information about the extent to which the dealings of the Debtors were guided and directed by a single individual, as well as the fact that the individual and many of his confederates control <u>every single one</u> of the primary actors in this case.

    a. That fact was raised by Ms. Grissom and many other responders at the very outset of this case.

    b. The Second Amended Disclosure Statement is silent, however, as to the reasons for which the Debtors and the UCC have chosen to overlook those facts and persist in pushing forward with a settlement agreement borne of scandal, which provides for preferential treatment to a whole host of insiders.

    c. As a result, the Second Amended Disclosure Statement fails to provide sufficient information in that regard, as well.

17. The Second Amended Disclosure Statement is also defective in that it, again, fails to offer meaningful justification for the stance that the entity known as YesCare should not be subject to challenge as the successor-in-interest, if not the actual party, in existing or subsequent litigation, as well as the fact that obstructing claims against YesCare will likely dampen any likelihood of obtaining *pro tanto* relief.

    a. This is especially stunning in light of the statements contained in the Second Amended Disclosure Statement to the effect that the "financial advisory firm engaged to provide a fairness opinion on the transaction" relied on faulty information. [Dkt. 1071 at ECF Pg. 30.]

    b. Equally stunning is the admission that the UCC believes that the entire divisional merger – the "Texas Two Step" – constitutes an avoidable fraudulent transfer. [Dkt. 1071 at ECF Pg. 30.]

18. As was true in the initial Disclosure Statement, the Plan described in the Second Amended Disclosure Statement is unconfirmable because it violates the Absolute Priority Rule codified at 11 U.S.C. 1129(b)(2).

    a. The "insiders" of the debtors are numerous, including but not limited to Isaac Lefkowitz (also known by various aliases); Corizon and its progeny; YesCare and its progeny; M2LoanCo and its progeny; DG Realty; Valitás Intermediate Holdings, Inc.; Valitás Health Services, Inc.; M2Pharmacorr Equity Holdings; Pharmacorr/MS LLC; Pharmacorr Holdings LLC; Endeavor Distribution LLC; CHS Texas LLS; Yes Care Holdings LLC; Sigma RM, LLC; DG Realty Management LLC; Scaracor LLC; Sara Ann Tirschwell; the current and former officers, directors and managers for each of the entities named herein; and a host of other individuals and entities, the identity of which has been withheld by the debtors.

    b. None of those insiders have provided any new value to the estate, yet the Second Amended Disclosure Statement and Plan anticipates that each of those insiders will receive releases, which are clearly valuable to those insiders.

19. The Second Amended Disclosure Statement fails to offer any explanation as to the identity or duties of the group of twelve lawyers whose employment was authorized by this Court, ostensibly for the purpose of "managing" outside litigation.

    a. To the best of Ms. Grissom's knowledge, the Debtors are represented by outside counsel in every pending civil action in which the Debtors are a party.

    b. Each of those cases is stayed by 11 U.S.C. 362.

    c. There is no need whatsoever for any "management" of cases which are sitting stock still.

    d. Yet the group of twelve lawyers is being paid a total of $150,000.00 each month by the Estate. The Second Amended Disclosure Statement is defective in that it fails to include an explanation of those circumstances.

20. The Second Amended Disclosure Statement does not clearly explain the effective date of the plan.

21. The Second Amended Disclosure Statement is incapable of being understood by many of its recipients, many of whom are incarcerated and can be expected to have low levels of educational attainment and reading comprehension.

22. The Second Amended Disclosure Statement fails to provide any information at all concerning the separate Chapter 11 case of *Tehum Care Services, Inc.* Case No. 23-40176-can11, together with an Adversary Proceeding entitled *Curators of the University of Missouri, etc. v. Tehum Care Services, Inc. d/b/a Corizon Health Inc.*, AP 23-04005, pending in the US Bankruptcy Court for the Western District of Missouri.

    a. The separate Chapter 11 case and the AP were both filed one day after the instant case was filed in this Court.

    b. Why two different bankruptcy cases were filed in two different judicial districts is at best curious, and at worst suspicious, and should be explained.

23. The Second Amended Disclosure Statement provides that administrative expenses for attorneys' fees will not be determined until a date after the Effective Date.

   a. To the best knowledge of Ms. Grissom and her counsel, no attorney has yet filed any accounting or application for payment of interim fees in this case.

   b. From the language of the Second Amended Disclosure Statement, no indication is given that any such interim fee application is anticipated.

   c. As a result, the Second Amended Disclosure Statement is further defective, in that it does not contain sufficient information concerning attorneys fees.

24. The Second Amended Disclosure Statement is further defective in that it includes no meaningful discussion or explanation of the following matters:

   a. what, if anything, the Debtors have done to verify the proofs of claim beyond the "preliminary review of the actual Proofs of Claim filed" [Dkt. 1071 at ECF Pg. 35];

   b. the legal basis for the broad releases provided for non-debtor third parties;

   c. the risks associated with the broad releases provided for non-debtor third parties;

   d. the litigation risks associated with the insurance policies on which the First Mediation settlement is based;

   e. how and why the proposed settlement and Plan deprive claimants of statutory and constitutional rights;

   f. how and why the proposed Plan can be said to have been made in good faith, in light of the facts surrounding the various relationships between the insiders;

   g. how and why the approval of the Second Amended Disclosure Statement is anything more than a waste of judicial resources, since it is contingent on

      settlements that have not even been made, much less presented in the form of Rule 9019 Motions, much less approved by this Court.

    h. Even at that, the likelihood of subsequent approval is questionable, given the clear and convincing evidence demonstrating that the settlements were procured by a process that involved unethical and potentially criminal conduct on the part of participants in the settlement negotiations.

25. Given that a second mediation has been held, is being held, is in the offing, or whatever its status may be, Ms. Grissom expects that yet another amended disclosure statement will be filed.  In fact, a failure to do so would seem foolhardy, what with the nature of the proceedings so far.  Granting final approval to the Second Amended Disclosure Statement at this point, therefore, is inappropriate.

26. Ms. Grissom reserves the right to assert such other, different or further objections as may be appropriate regarding any subsequent amendments or filings herein.

## CONCLUSION

As with the initial Disclosure Statement and Plan, this Second Amended Disclosure Statement is fatally riddled with defects.  It should not be approved.

Respectfully Submitted,

*/s/ Valrey W. Early, III*
Valrey W. Early, III
Attorney for Plaintiff
Alabama Bar EAR001

OF COUNSEL:
Frank Ozment Attorney at Law, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
205.413.9973
frankozmentlaw@gmail.com

<u>Certificate of Service</u>

    I hereby certify that I have filed a copy of the foregoing on this Court's electronic filing system on November 30, 2023, such that it is served contemporaneously on all counsel of record.

                                      */s/ Valrey W. Early, III*
                                      Of Counsel