In The United States Bankruptcy Court

For The Southern District Of Texas

Houston Division

United States Courts
Southern District of Texas
FILED

JUL 23 2024

Nathan Ochsner, Clerk of Court

| In Re: | |
| --- | --- |
| Tehum Care Services, Inc | Case No: 23-90086 (CML) |
| | CHAPTER 11 |
| Debtor. | |

## HARRINGTON MOTION
### (VIDEO ARGUMENT REQUESTED)

On June 27, 2024 the United States Supreme Court decided Harrington v Purdue, No. 22-859.

### THE RELIEF SOUGHT

In light of Harrington, this Chapter 11 dismissed, unless those whom the Debtor wished released, file for separate bankruptcies, and every person, gives a consensual release.

### TABLE OF CONTENTS

The Relief Sought ...................................................................................1

Pertinent Law .......................................................................................2

Relevant Facts .....................................................................................3

The Companies Involved ......................................................................3

PERIGROVE, LLC. & PERIGROVE 1018, LLC. ............................................ 3

VALITÁS INTERMEDIATE HOLDINGS, INC. & VALITAS HEALTH SERVICES, INC. .......... 3

M2 HOLDING, INC. M2 LOANCO, LLC & M2 EQUITYCO, LLC ................................. 3

PHARMACORR, LLC. ............................................................ 4

YESCARE CORP., YES CARE HOLDINGS LLC, AND CHS TX, INC. ............................... 4

SIGMA RM, LLC. ............................................................. 4

SCARACOR, LLC. ............................................................. 5

FTI CAPITAL ADVISORS, LLC ......................................................... 5

**The Players Involved** .......................................................... **6**

ISAAC LEFTKOWITZ ............................................................ 6

JAMES HYMAN ................................................................ 6

SARA TIRSCHWELL ............................................................. 6

JEFFERY SHOLEY .............................................................. 6

AYODEJI OLAWALE LADELE ....................................................... 6

JENNIFER LYNEE FINGER ......................................................... 7

**SC**OTT KING ................................................................ 7

DAVID JONES ................................................................ 7

MICHELLE RICE ............................................................... 7

RUSSELL PERRY ............................................................... 7

**The Fix Is On** ............................................................... **7**

**Fraudulent Money Transfer** ..................................................... **11**

**Perigrove Transfers Millions Of Dollars** ............................................. **12**

**From *Corizon* To M2 Loanco** .................................................... **12**

**The Corporate Veil Of Corizon Must Be Pierced To Reveal Looted Cash And Assets Relevant To** ...................................................... **18**

**The Bankruptcy Filing** ......................................................... **18**

**The Proposed Plan Of Reorganization** .............................................. **22**

**Corizon's Plan Of Reorganization** ................................................. **23**

**Conclusion** ................................................................. **24**

## PERTINENT LAW

The Harrington court has stated that the types of release that the Debtor has been trying to obtain, cannot be obtained. Releases must be consensual.

However, in the parties who are to be released, file for bankruptcy, then this court may decide the matter.

None of the parties who have been asked to be released are in bankruptcy.

## RELEVANT FACTS

I filed ECF 244, 261 asking this bankruptcy be dismissed for fraud upon the court and asked for discovery.

These motions have yet to be ruled upon.

### THE COMPANIES INVOLVED

The following people and companies all play a role to some degree not only in the fraudulent bankruptcy filing by *Corizon*, but in the looting of *Corizon's* cash along the way. As it will be revealed, some of these companies were "formed" in order to garner "consulting" fees from *Corizon* both before and during bankruptcy proceedings.

At all-times herein *"Debtor"* refers to *Corizon*, renamed "Tehum," both before and during the bankruptcy proceedings.

#### Perigrove, LLC. & Perigrove 1018, LLC.

*Perigrove 1018* ("*Perigrove*") is a private equity fund owned by several individuals. None of whom owns more than 105 of the company. *Perigrove 1018* is a related company with common ownership to *Perigrove, LLC,* which operated in the healthcare space at the time of the introduction in early December 2021 from the *Flacks Group* Team Members who were seeking a buyer for *PharmaCorr*. This is where Isaac Leftkowitz entered the picture. Leftkowitz and *Perigrove* quickly shifted focus to a potential acquisition of all of the *Debtor*-related entities the *Flacks Group* owned. After approximately a week of negotiations, *Perigrove 1018* acquired the entire portfolio of companies from the *Flacks Group* on December 7, 2021 (*a day that will live in infamy in the annals of correctional healthcare).*

#### Valitás Intermediate Holdings, Inc. & Valitas Health Services, Inc.

The predecessor entity of the *Debtor* and its immediate parent that merged into *Corizon Health, Inc.* under the May 2022 Combination Merger and Divisional Merger. Today, *Valitás Health Services, Inc.* no longer exists, and *Valitás Intermediate Holdings, Inc.* is a special purpose entity with no assets or operations other than its ownership interest in the *Debtor*.

#### M2 holding, Inc. M2 LoanCo, LLC & M2 EquityCo, LLC.

All the "M2" companies were formed by the *Flacks Group* after they acquired the *Corizon* portfolio from *BlueMountain Capital Management* in the summer of 2020.

*M2 LoanCo* was formed in Florida on June 18, 2020 by James Gassenheimer, as authorized representative and registered agent, with the initial manager as Michael Flacks.

On or about June 26, 2020, *M2 LoanCo* acquired certain loans, in an aggregate principle amount of $109,104,391.08, made by various lenders in 2017 to borrowers *Valitás Health Services, Inc.* and *Corizon Health, Inc.* Thereafter, between May 12, 2021 and June 24, 2021, *M2 LoanCo* acquired certain senior notes, in an aggregate principal amount of $10,000,000 from various holders.

As of 1/16/24 *M2 Holding, Inc* is the sole member and manager of *M2 EquityCo, LLC,* which is the sole shareholder of *Valitas Intermediate Holdings, Inc.*

**PharmaCorr, LLC.**

Until 2021, *PharmaCorr* was a wholly owned subsidiary of the *Debtor* responsible for supplying the *Debtor* with pharmaceutical products and devices for use in its business. In June 2021, in an attempt to monetize *PharmaCorr* business and allow *PharmaCorr* to market its services to customers other than the *Debtor*, the *Flacks Group* effectuated a spinoff transaction which established these entities: *M2 PharmaCorr Equity Holdings LLC, PharmaCorr/M2 LLC, PharmaCorr holdings LLC,* and *Endeavor Distribution LLC.* The result is that PharmaCorr remains an indirect subsidiary of M2 HoldCo, but is no longer directly affiliated with the *Debtor.*

**YesCare Corp., Yes Care holdings LLC, and CHS TX, Inc.**

These entities were established in the early 2022 in preparation for the Divisional Merger, which became effective in May 2022. *CHS TX, Inc. is the surviving entity under the Divisional Merger and now* operates as YesCare Corp. on information and belief, Yes Care Holdings, LLC holds equity in CHS TX, Inc

**Sigma RM, LLC.**

Following the Divisional Merger, as part of the corporate restructuring of the *Debtor* and *YesCare,* several in-house legal staff formed their own company to provide contract services to the *Debtor* and *YesCare*; and thus began receiving monthly contract service fees rather than compensation as W-2 employees. On November1, 2022,

the *Debtor* entered into a Claims Management Service Agreement with *Sigma RM LLC* ("*Sigma*"). Sigma represents that it is owned by a group of the Debtor's former in-house counsel and litigation support staff. Pursuant to the Claims Management Service Agreement, the *Debtor* paid *Sigma* $150,000 *per month*. Corporate filings for *Sigma* reflect that the entity was organized by **Isaac Leftkowitz** and uses **his** address as its corporate service address. Leftkowitz testified that he is an unpaid director of *Sigma* (*Albeit – 150k a month doesn't ring as "unpaid"*) and listed his address for *Sigma's* service address to ensure he gets notice of legal filings made to *Sigma*. The UCC disputes the validity of the *Debtor's* pre- and post-bankruptcy petition payments to *Sigma.*

### Ankura

The pre-acquisition *Ankura* team was led by Roy Gallagher and assisted by CFO Jeff Sholey with preparing materials for sale to a strategic buyer or alternatively, a bankruptcy filing. *Ankura* largely ceased work for the *Debtor* in early December 2021, when *Perigrove 1018* consummated its acquisition from the *Flacks Group*, with the exception of an occasional call and email to provide information to the new *Perigrove 1018* management team. Russell Perry of *Ankura* was hired as Chief Restructuring Officer on February 13, 2023 (*the **same** day Tehum filed for bankruptcy*)

### Scaracor, LLC.

Interestingly, Tirschwell appears to sole owner of an entity called *Scaracor LLC* and is used by her for her contractual employment with the *Debtor*. Where it has been alleged she receives "consulting fees" from the *Debtor*.

### FTI Capital Advisors, LLC.

FTI was engaged by the Debtor to provide advisory services with respect to the Divisional Merger. M2 LoanCo agreed to indemnify FTI Capital Advisors in accordance with the terms and conditions of the engagement letter. FTI contends that it has incurred fees and expenses since the Bankruptcy Petition date related to the investigation conducted by the Debtor and the UCC that it contends are covered by the M2 LoanCo's agreement to indemnify. The Debtor and the UCC do not believe the Estate has claims against FTI Capital Advisors and are agreeable to release them in connection with the release being granted to M2 LoanCo.

## THE PLAYERS INVOLVED

### Isaac Leftkowitz

If there is a "head" to this fraudulent bankruptcy snake it is Isaac Leftkowitz. *Perigrove* 1018 ("*Perigrove*") and Geneva Consulting Inc. ("Geneva") share some of the common directors and authorizing representatives; one of whom is Isaac Lefkowitz. Who has been the sole Director of the *Debtor* since *Perigrove*'s acquisition in December 2021, where he has overseen every aspect of the *Debtor*'s operations and finances until the bankruptcy filing? After the filing the *Debtor* (i.e., Isaac Leftkowitz) executed board resolutions which, among other things, delegated sole authority to Russell Perry, the *Debtor*'s Chief Restructuring Officer. For all restructuring matters and any matters where a conflict of interest may exist.

During the bankruptcy case Leftkowitz testified at four (4) depositions on behalf of M2 LoanCo, *Perigrove* 1018, PharmaCorr and Geneva Consulting. His testimony on behalf of PharmaCorr is somewhat mystifying as PharmaCorr had been spun off from *Corizon* by the Flacks Group *before* being acquired by *Perigrove*.

### James Hyman

Former CEO of *Corizon* who was terminated up acquisition by *Perigrove*. Mr. Hyman who stated the *Corizon* bankruptcy was, "…*essentially an old fashioned bankruptcy fraud scheme.*"

### Sara Tirschwell

Ms. Tirschwell was first introduced to the management team in mid-December 2021 and was designated CEO for *Corizon*, when James Hyman was terminated, on or about December 17, 2021. She continued in this role until her termination in early 2023 (*around the time of the bankruptcy filing*). Upon the formation of *CHS TX* Tirschwell was the sole shareholder. Upon the formation of *YesCare*, Tirschwell contributed 95% of *CHS TX* equity to *YesCare*, who is wholly owned by undisclosed insiders believed to be former *Corizon* executives and attorneys.

### Jeffery Sholey

Former Chief Financial Officer for the *Debtor*. Was the CFO for *YesCare*, but was elevated to CEO up Tirschwell departure.

### Ayodeji Olawale Ladele

Former Executive Vice-President and Chief Medical Officer at the *Debtor*; now CMO for *YesCare*.

**Jennifer Lynee Finger**

Forer Assistant General Counsel at the *Debtor*. Now Assistant General Counsel at *YesCare* and General Counsel at *Sigma*

**Scott King**

Former Chief Legal Officer for the *Debtor*. Now CLO for *YesCare*.

**David Jones**

The original Trustee appointed by the court who was terminated after it was discovered he had a romantic relationship with Liz Freeman, an attorney retained by the Debtor.

**Michelle Rice**

Former Corporate Controller for the *Debtor*. Now serves the same role for *YesCare*.

**Russell Perry**

The *Debtor*'s ('Tehum') Chief restructuring Officer.

## THE FIX IS ON

Billions of dollars were allocated by the United States during the COVID epidemic. *Corizon*, an entity owned by *Valitas*, Becken O'Keefe, obtained these funds. They however did not use these funds for the purposes intended. Instead, management received bonuses, but the staff in the prisons got nothing. *Corizon* did this in every prison or jail they have had contracts in.

Senator Elizabeth Warren, Dick Durbin, Marie Hirono, Dick Blumenthal, Ron Wyden, Bernie sanders, Peter welch and Carey Booker wrote a letter to Leftkowitz and Genesis reminding them that in 2021 they received $300,000,000 in COVID funds.

Though *Corizon* has never maintained its principal place of business in Texas, it decided to restructure in Texas for the explicit purpose of defrauding the United States, creditors and prisoners.

*Corizon* hired lawyers to help it perpetrate the fraud and obtained legal advice, unbeknown to these lawyers, for the success of its scheme. The liability insurers provided *Corizon* with substantial assistance, because they did not follow their policies and industry practices, in dealing with claims, involving *Corizon*. Attorneys, compliance officers, auditors, all did not follow their professional

standards, and looked the other way, thereby aiding *Corizon* in its activities.

From the beginning the "fix" was on. Not only was the bankruptcy of *Tehum* filed fraudulently and in bad faith, but Isaac Leftkowitz, *Perigrove 1018, Geneva Consulting In,* Senior Management of *Corizon Health,* Sara Tirschwell, *YesCare* & *CHS Tex,* with the help of Gray Reed; Jason S. Brookner; Aaron Kaufman; Lydia Webb; Amber Carson, searched for a law firm that could influence the original trustee appointed by bankruptcy Judge Lopez, retired Judge David Jones. This was originally accomplished with the hiring of Liz Freeman, Jackson, who Jones's girlfriend. This ploy was ultimately discovered and jones was terminated by bankruptcy Judge Lopez. They were caught and this court appointed another arbitrator.

Further, the multiple companies were suddenly providing "contractual services," and being paid large sums by the Debtor; i.e., Isaac Leftkowitz. At one point the individual Isaac Leftkowitz, in some form or other, controlled M2LoanCo, *Perigrove,* M2HoldCo, M2LoanCo, M2EquityCo, *Valitas* Intermediate Holdings, *Valitas* Health Services, *Corizon* Health, *Corizon,* and *Corizon* Health of New Jersey LLC. If there was a "quarterback" to this ungodly conflagration all signs point to Isaac Leftkowitz. From Leftkowitz down, all involved individuals actively performed their part of the conspiracy as attorneys, agents, employees, subordinates, etc. in willfully agreeing to participate in a fraudulent endeavor with the common design and end goal of depriving 300,000 victims not only of their rights under law, but any semblance of a justifiable settlement for the injuries they incurred, while being paid large sums by the Debtor.

One intimately complicit individual was Sarah Tirschwell, who at one point was *Corizon's* CEO, as well as a 955 equity holding in *CHS TX* after the *MergerCo* Divisive Merger. This is evidenced where Tirschwell was instrumental in forming Tehum Care Services Inc; which was just "*Corizon*" now renamed and registered in Texas, not for the purpose of conducting business, but solely to file bankruptcy. Further, as previous touched on, Tirschwell held equity ownership in *CHS TX* and *YesCare* – all registered Texas corporations. However, *Perigrove,* a private equity fund owned my several individuals has

never maintained Texas as a place of business. Further evidence of fraudulent complicity is seen in the following:

- ➤ *Perigrove* 1018 placed Mr. Leftkowitz in charge of the entities it had acquired and planned to move forward with the company's business.
- ➤ Sent emails to all management staff, with the approval of then CEO Sara Tirschwell, directing the employees work 16-hour days with no overtime; while the Managers received bonuses.
- ➤ Emails also informing managers to reduce costs by denying not inmates hospital visits & admissions, specialists consults, and if the inmate died, so be it.
- ➤ The Managers who implemented the directives in these emails and received bonuses.
- ➤ Emails unearthed the deliberate plan that *Corizon* reorganize in Texas where there fraudulent application of a Divisive Merger could be implemented
- ➤ Isaac Leftkowitz & Sara Tirschwell agreed to transfer the bulk of *Corizon's* assets to *YesCare & CHS TX*, while all tort liabilities went to Tehum. This reorganization was nothing more than a sham designed to defraud tort victims and vendors.
- ➤ Ankura Consulting was hired to conduct due diligence, but as they were hired by the *Debtor* said due diligence was slanted, biased and incomplete –utterly favoring the *Debtor* and its Divisive Merger affiliates.
- ➤ Russell Perry of Ankura failed examine the financials as he should have, especially the use of COVID funds, and any claims against *Corizon* for spoliation of evidence.
- ➤ Sara Tirschwell & Isaac Leftkowitz authorized loans from monies laundered from the assets of *Corizon* that were nothing more than sham loans designed to drain capital from *Corizon*.
- ➤ At Isaac Leftkowitz's direction, *Corizon* sent 3 Million to *Perigrove* 1018 related party *Geneva Consulting*.
- ➤ Mr. Leftkowitz's first actions at *Corizon* included directing *Corizon's* immediate parent (*Valitás Health, Inc.*) accountants to enter into a Consulting Agreement with related entity *Geneva Consulting, LLC* ("Geneva") and directing *Corizon's* accountants to transfer 3 million dollars to *Geneva*. It bares noting that *Geneva* shares common directors with *Perigrove 1018* and

*Geneva* is owned, directly or indirectly, by *Perigrove 1018* and its principals. Mr. Leftkowitz described the role of *Geneva* in e-mails to at least one *Corizon* executive as relating to ongoing litigation claims.

➢ Mr. Leftkowitz subsequently terminated a *Corizon* CEO James Hyman because he questioned misapplication of funds by Leftkowitz.

➢ Isaac Leftkowitz authorized multiple transfers of funds from *Corizon* operating accounts to *M2 LoanCo*, *Perigrove*, and other related parties.

➢ When *Perigrove 1018* acquired the *Corizon* entities, *Corizon's* cash management system was maintained with Bank of America ("BOA").

➢ Soon after the acquisition, *Perigrove 1018* opened two new accounts in the name of *Corizon Inc.* and its subsidiary *Corizon, LLC* at Signature Bank (the "Signature Accounts").

➢ While the Signature Accounts were titled in the name of *Corizon*, *Perigrove* made certain that *Corizon's* accounting staff and executives could not access or view the activity occurring within these signature accounts. Only certain representatives of *Perigrove 1018*, as authorized by Leftkowitz could access these signature accounts.

➢ Periodically, Mr. Leftkowitz would direct *Corizon's* accounting department to transfer large sums of money from *Corizon's* operating account at BOA to these signature accounts and other *Perigrove* ventures.

Mr. Leftkowitz, on behalf of *Perigrove*, was responsible for making the final financial decisions, with the company's accounting staff mandate to seek his expressed approval before making any transfers from *Corizon's* BOA accounts.

➢ Once *Perigrove* ordered funds from the *Corizon* BOA accounts to the signature accounts, those funds were then immediately transferred out of the signature accounts to separate accounts by *Perigrove* belonging to *M2 LoanCo*. In addition to these transfers, *Perigrove 1018* representatives sometimes caused *Corizon* funds to be transferred to fund *Perigrove* company expenses. Additionally, on a handful of occasions, *Perigrove 1018* representatives caused funds to be transferred out the

Signature Accounts and subsequently caused the same amounts to be transferred back into the Signature Accounts.

➤ Isaac Leftkowitz, on behalf of *Perigrove,* authorized *Corizon* to redirect 1.1 million in receivables and pays to *Geneva.* During the same time period *Perigrove* kept *Corizon* entities occasionally received or were entitled to payments outside the ordinary course of business, such as partial refunds of prepayments, negotiated agreements to sell off existing inventory, or settlement of disputes.

➤ *Perigrove 1018's* December 2021 acquisition included *PharmaCorr, LLC* and its parent companies. By the time these entities were included in the *Perigrove 1018* acquisition, *PharmaCorr* was no longer *a Corizon* subsidiary. Nevertheless, in January and February of 2022 *Corizon* funds were used to pay approximately $956,700 to *Amerisource Bergen* for "contractual" services.

## FRAUDULENT MONEY TRANSFER

Within days of *Perigrove's* acquisition of the *Debtor Perigrove* in early December 2021, appointed one of its directors, Isaac Leftkowitz, as the decision-maker for all of the companies. Mr. Leftkowitz, in turn, caused the *Debtor Perigrove* 1018 to enter into a "Consulting Agreement" with Geneva. The "Consulting Agreement" is between *Valitás* Health Services, Inc. and Geneva Consulting, LLC. Mr. Leftkowitz signed the Consulting Agreement as the "Interim CEO" for *Valitás.*

A director listed on *Perigrove's* website signed the Consulting Agreement as "Director" of *Geneva.* Mr. Leftkowitz directed James Hyman, the then-CEO of *Corizon* Health, Inc., and Jeff Sholey, the then-CFO of *Corizon* Health, Inc., to transfer substantial sums to Geneva under the Consulting Agreement.

On December 8, 2021, the *Corizon* transferred 3 million to Geneva, purportedly as a retainer required under the Consulting Agreement. *Corizon* then transferred $500,000 per month for the subsequent five (5) months, purportedly for "Corporate Restructuring" services under the Consulting Agreement.

Close to a million dollars was transferred to Amerisource Bergen to satisfy obligations of PharmaCorr, which ceased being a subsidiary of *Corizon* under the *Perigrove*'s ownership and control:

| | |
|---|---|
| 1/31/2022 | $500,000.00 |
| 2/15/2022 | $456,707.08 |
| Total to Amerisource Bergen | $956,707.08 |

## PERIGROVE TRANSFERS MILLIONS OF DOLLARS FROM *CORIZON* TO M2 LOANCO

At all relevant times, M2 LoanCo had two directors - Isaac Leftkowitz and Alan Rubenstein. M2LoanCo never had employees and did not maintain e-mail records on its own server, possessed no physical address. Had no employees, conducted no business, nor contained any assets.

Transfers from *Corizon* to M2 LoanCo.

| | |
|---|---|
| 12/29/2021 | $ 10,000,000.00 |
| 12/30/2021 | $  5,000,000.00 |
| 01/04/2022 | $  2,300,000.00 |
| 01/05/2022 | $    600,000.00 |
| 01/31/2022 | $  5,000,000.00 |
| 02/18/2022 | $    600,000.00 |
| 03/08/2022 | $ 10,000,000.00 |
| 03/09/2022 | ($ 10,000,000.00) |
| 05/17/2022 | $  1,000,000.00 |
| 11/14/2022 | $     25,572.19 |
| 11/14/2022 | $     12,583.00 |
| Total Amount to M2 LoanCo From *Corizon* | $ 24,538,155.19 |

## THE KEEP PLAYERS IN THE CORIZON BANKRUPTCY

Sara Tirschwell; 205 Powell Place, Brentwood, TN 37027 was the CEO of *Corizon* when it filed for bankruptcy. *Valitas* Intermediate Holdings Incorporated, a Delaware Corporation; 205 Powell Place, Brentwood, TN 37027 owned *Corizon*. M2 HoldCo LLC, a Florida

Limited Liability Co; James D. Gassenheimer, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131; M2LoanCo LLC, a Florida Limited Liability Co; James D. Gassenheimer, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131; M2EquityCo LLC, a Florida Liability Co; James D. Gassenheimer, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 took money that *Corizon* had and loaned it back to *Corizon*, after it filed for bankruptcy. Becken Petty O'Keefe, a Delaware Corporation 131 South Dearborn St # 2800, Chicago, IL 60603 financed *Corizon*.

Wexford Health Sources, Inc;  provider 501 Holiday Drive, Pittsburgh, PA 15220, *Corizon*, Centurion and NaphCare have cooperation agreements to ensure that the *Corizon* business model continues, and that none of them, release any documents that may have adverse impacts on each other.

Weber Gallagher Simpson Stapleton Fires & Newby LLP; Attorney 2 Gateway Ctr Pittsburgh PA 15222 attorney for Wexford; Jones Skelton Hochuli Attorney 1 N Central # 900, Phoenix, AZ 85004 have been instrumental in ensuring that the fraudulent activities by *Corizon* continues.

Quintairos Prieto Wood & Boyer PA; Nichole Rowey Lori Metcalf Attorney 8800 E. Raintree #100 Scottsdale, AZ. 85260 is a law firm that has helped *Corizon* perpetrate fraud upon the bankruptcy system. 8800 E Raintree #100 Scottsdale, AZ 85260

Renaud Cook Drury Mesaros PA; Joseph Scott Conlon Attorney 40 N. Central #2700 Phoenix AZ 85004 are another group of attorneys that have helped *Corizon* perpetuate fraud upon the bankruptcy court system.

Centurion of Arizona Provider 1850 E Rio Salado Way, #209, Tempe, AZ 85284 is a prison healthcare provider that has continued the *Corizon* model and aided and abetted *Corizon* in the fraudulent scheme. Broening Oberg Woods & Wilson PC, Sarah L Barnes Attorney 2800 N. Central Phoenix AZ. 85004 are lawyers for Centurion that have helped Centurion conceal evidence to assist *Corizon* in the bankruptcy fraud.

Kelly Joan Morrissey Attorney; Michael E. Gottfried Attorney 2005 N. Central, Phoenix, AZ. 85004; Paul Carter Attorney 416 W

Congress #20 Tucson, AZ 85701 are Assistant Arizona Attorneys general who have helped *Corizon* with their fraudulent activities by concealing documents.

Daniel P. Struck Attorney Struck, Wienke & Love PLC Attorney 3100 W. Ray Rd #300 Chandler, AZ. 85226 are attorneys in Arizona who through their influence peddling have helped *Corizon* perpetrate bankruptcy fraud.

Evanston Insurance Company, 10275 W. Higgins Rd #700, Rosemont, IL. 60018-6408 liability Insurer for Wexford; Lexington Insurance Company 99 High Street, Floor 24, Boston MA. 02110-2378 liability Insurer for *Corizon*; Zurich American Insurance 1299 Zurich Way, Schaumburg, IL. 60196-1056 Company liability Insurer for Centurion; American  Zurich Insurance Company P.O. Box 968046 Schaumburg, IL 60196-8046  liability Insurer for Centurion; Columbia Casualty Company 151 N Franklin St, Chicago IL. 60606-1915 liability Insurer for Centurion; Scottsdale Insurance Company 8877 N. Gainey Center Dr. Scottsdale, AZ 85258 is liability Insurer for Centurion; Coverys Specialty Insurance Company 1 Financial Center 13th Floor, Boston MA 02111 liability Insurer for Centurion have all acted together to ensure *Corizon* succeeded in perpetrating fraud upon prisoners and bankruptcy fraud.

March 6, 2020 Nichole Cullen sent emails from qpwblaw.com to Babich and Perkins at cch.com with copies to Gottfried and Carter directing them not to show me emails hat they send or receive. Copies were sent to bowwlaw.com Orm@teamcenturion and cch.com

November 25, 2018 Dr. Rodney Stewart cch.com sent emails to all staff that they must make sure that the records when submitted pursuant to Parsons, are reconciled with the medical records, and if necessary the medical records changed.

May 6, 2018 Dr. Ayodeji Ladele sent emails to all staff directed not to prescribe inmates medication that is cost prohibitive or not to refer inmates for consultation.

May 6, 2018 Dr. Ayodeji Ladele sent emails to all staff that they must change patient records in order to comply with Parsons. Conlon prepared declarations that contradicted these emails. These emails

were subsequently sent to Gottfried azag.gov and Struck Wienke & Love PLC swfirm.com

March 20, 2018 Robert Maldonado from cch.com sent emails that *Corizon* had altered the records required to be filed by Parsons.

March 20, 2018 Marlene Bedoya from azadc.gov sent emails that records had been altered by *Corizon*. These emails were subsequently sent to Gottfried azag.gov and Struck Wienke & Love PLC swfirm.com

December 2017 Dr. Fallhouse sent an email to *Corizon* corporate that he had delivered the altered reports pursuant to Parsons the ADCRR as directed by *Corizon* corporate.

November 2017 Dr. David Robertson sent emails to Dr. Fallhouse that *Corizon* was altering reports and must stop. These emails were subsequently sent to Gottfried azag.gov and Struck Wienke & Love PLC swfirm.com

November 2017 Specer Sego sent *Corizon* an email that he had changed the reports that Parson requires to comply with Parsons.

October 2017 Dr. Fallhouse sent an email to *Corizon* corporate that he had delivered the altered reports pursuant to Parsons the ADCRR as directed by *Corizon* corporate.

April 21, 2017 Dr. Michael Minev sent email to Dr. Rodney Stewart cch.com that he has changed the medical records to comply with the report submitted pursuant to Parsons, as requested

April 2017 FHA Porter sent altered reports required by Parsons to ADCRR and notified *Corizon* corporate.

March 21, 2016 Dr. Rodney Stewart cch.com sent emails to all staff that they must make sure that the records when submitted pursuant to Parsons, are reconciled with the medical records, and if necessary the medical records changed.

August 28, 2014 Dr. Winfred Williams from ch.com sent emails to staff to ensure that staff change the records to coincide with the reports submitted under Parsons. Conlon prepared a declaration contradicting the emails. These emails were subsequently sent to Gottfried azag.gov and Struck Wienke & Love PLC swfirm.com

March 4, 2014 Joseph Scott Conlon rcdmlaw.com sent email to Dr. Dimitic Catsaros ch.comasking him to sign an affidavit that contradicted the emails sent by Catsaros when he was with Wexford health July 16,2012 where he was directed by Wexford change my treatment due to the cost. Catsaros executed the affidavit. These emails were subsequently sent to Gottfried azag.gov and Struck Wienke & Love PLC swfirm.com

September 2, 2013 Dr. Lucy Burciaga sent an email to staff to ensure that staff change the records to coincide with the reports submitted under Parsons. Conlon prepared a declaration contradicting the emails. These emails were subsequently sent to Gottfried azag.gov and Struck, Wienke & Love PLC swfirm.com

August 3, 2013 Dr. Kevin Lewis sent email to Dr. Joseph Moyse which directed him not to prescribe inmates medication that is cost prohibitive and if inmates die, *Corizon* will take care of it.

July 23, 2013 Dr. Winfred Williams from ch.com sent directives to all staff that they are not to provide treatment, referral to specialists and send inmates to hospitals, due to the cost of treatment. Conlon prepared a declaration contradicting the emails. These emails were subsequently sent to Gottfried azag.gov and Struck Wienke & Love PLC swfirm.com

July 16, 2013 Weber Gallagher sent an email to Skelton Hochuli that training given to staff are to be released to inmates in discovery.

June 26, 2013 NP Unger received an email that directed him not to provide inmates with care that is expensive and not to refer inmates to specialists.

February 3 2013 Mullenaux of Wexford sent emails to all staff that staff should just change reports required by Parsons to make it look good.

January 14, 2013 Weber Gallagher sent an email to Skelton Hochuli that no policies by Wexford are to be released to inmates in discovery.

January 4, 2013 Mullenaux of Wexford sent emails to all staff that inmates Wexford staff should not send inmates to hospital and in the event they die, Wexford will take care of it.

October 6, 2012 Mullenaux of Wexford sent emails to all staff that inmates are not to be referred to specialists of provided essential treatment as the costs are exorbitant and Wexford s not getting paid much.

September 9, 2012 Weber Gallagher sent an email to Skelton Hochuli that no documents adverse to Wexford are to be released to inmates in discovery.

August 18, 2012, May 21, 2013; and March 6, 2013 ADCRR informed Wexford by emails that Wexford should reexamine the reports as they appear falsified.

Liability Insurers for private healthcare providers and *Corizon* are aware of these practices that set forth, and have failed to take actions, mandated by their policies. They have provided performance bonds and liability insurance, have breached the covenant of good faith and fair dealing, fiduciary duty, and engaged in bad faith settlement practices. Liability Insurers have put in place the practice, in violation of law, which forces litigation, in prisoner cases, as in this case.

By omission liability insurers have misrepresented facts and policy provisions. They have failed to, as mandated by law, in prisoner cases, to acknowledge and promptly act on all claims. Liability Insurers  failed to follow reasonable standards, standards followed by the insurance community in all cases, for investigation of claims. Liability Insurers    deny claims  without reasonable investigation.

Liability Insurers compel prisoners to litigate issues, and fail to follow their own rules and regulations, internal policies and guidelines.

Liability Insurers are required to investigate facts and the law, as if there were no policy limits.

In prisoner cases, these Liability Insurers aided and abetted in the prefabrication of defenses and bad faith use of procedural devices.

## THE CORPORATE VEIL OF CORIZON MUST BE PIERCED TO REVEAL LOOTED CASH AND ASSETS RELEVANT TO THE BANKRUPTCY FILING

*Corizon*, the nation's largest for-profit medical services provider for prisons, jails and other detention facilities, was formed in June 2011 through the merger of Prison Health Services (PHS) and Correctional Medical Services (CMS).According to *Corizon*'s website, the company provides healthcare services at over 530 correctional facilities serving approximately 378,000 prisoners in 28 states. In addition, *Corizon* employs around 14,000 staff members and contractors. The company's corporate headquarters is located in Brentwood, Tennessee and its operational headquarters is in St. Louis, Missouri.

The 2011 merger that created *Corizon* involved *Valitás* Health Services, the parent company of CMS, and America Service Group, the parent company of PHS. The Nashville Business Journal reported the deal was valued at $250 million. "*Corizon*'s vision is firmly centered on service – to our clients, our patients and our employees," Campbell said at the time. "To that we add the insight of unparalleled experience assisting our client partners, and caring professionals serving the unique healthcare needs of [incarcerated] patients."

*Corizon* had around $1.5 billion in annual revenue and contracts to provide medical services for the prison systems in 13 states. The company also contracts with numerous cities and counties to provide healthcare to prisoners held in local jails; some of *Corizon*'s larger municipal clients include Atlanta, Philadelphia and New York City (including the Rikers Island jail). Additionally, the company has its own in-house pharmacy division, PharmaCorr, Inc.

The prison healthcare market has flourished as state Departments of Corrections and local governments seek ways to save money and reduce exposure to litigation. Only a few major companies dominate the industry. *Corizon*'s competitors include Wexford Health Sources, Armor Correctional Health Services, NaphCare, Correct Care Solutions and Centurion Managed Care – the latter being a joint venture of MHM Services and Centene Corporation. Around 20 states outsource all or some of the medical services in their prison systems.

In April 2013, the debt-rating agency Moody's downgraded *Corizon*'s nearly $360 million worth of debt to a rating of B2 – an indication the company's debt is highly speculative and a high credit risk. According to Moody's, the rating downgrade was due to an "expectation of earnings volatility following recent contract losses, margin declines from competitive pricing pressure on new and renewed contracts, and Moody's belief that *Valitás* [*Corizon*'s parent corporation] will be unable to restore metrics to levels commensurate with the prior B1 rating over the near to intermediate term."

*Valitás* Health Services is majority owned by Beecken Petty O'Keefe & Company, a Chicago-based private equity management firm. Beecken's other holdings are primarily in the healthcare industry. On September 23, 2013, Moody's again downgraded *Corizon*'s debt rating and changed the company's rating outlook from "stable" to "negative." The following month *Corizon* announced that it had replaced CEO Rich Hallworth with Woodrow A. Myers, Jr., the former chief medical officer at WellPoint Health. Hallworth, who had been appointed *Corizon*'s CEO in 2011, previously served as the president and CEO of PHS. At the same time that Hallworth was replaced, *Corizon* president Stuart Campbell also stepped down.

As *Corizon* is privately held, there is little transparency with respect to its internal operations and financial information, including costs of litigation when prisoners (or their surviving family members) sue the company, often alleging inadequate medical care. The financial unpinning's of *Corizon* reside in a murky world known only to *Corizon* executives. *Where* monies come from can be traced, but often what happens to them after they are received at *Corizon* is lost, even if the monies are obtained and earmarked for specific transactions; for example:

During the period January 2020 through January 2021 *Corizon* obtained funds authorized by 12 USC 4703a; 15 USC 636; 15 USC 9001; 15 USC 9009a; 15 USC 9011; 15 USC 9051; 21 USC 21516; 22 USC 4801; 42 USC 234; 42 USC 603; 50 USC 4532; amongst others, for the 25 contracts cancelled due to poor performance that amounted to unconstitutional medical care being provided to inmates.

In the applications to obtain these funds, as well as the subsequent reports on how these funds were used, *Corizon* made material misrepresentations that the funds were not used as represented in their request application. Instead, the funds were used to grant bonuses to executives. *Corizons* current bankruptcy does not account for these monies. When question, Russell Perry, the Chief Restructuring Officer hired by *Corizon* on 2-13-23, the day *Corizon,* now *Tehum,* filed for bankruptcy was unable to not explain what happened to these monies.

*Corizon*[5] was the largest prison healthcare provider which filed for bankruptcy.   This bankruptcy was borne from a fraudulent transaction; a Divisive Merger that was intended to impair tort victims' ability to recover from a profitable tortfeasor.  The *Corizon*'s board, management, and professionals are all entwined with *YesCare* and *CHS TX*, Inc., the entities that emerged from the Divisive Merger.

Furthermore, *Tehum* formerly *Corizon* is a legal fiction created to perpetrate an obvious fraudulent bankruptcy. The purpose of which, as devised by the *Corizon*'s owners, is not to maximize value for the benefit of creditors, but to transfer value from creditors to equity holders through a bad faith settlement that deprives creditors and tort victims of adequate and fair compensation.

*Tehum* gives bankruptcy a bad name. *Tehum* Health and its non-*Tehum* insiders and beneficial owners created the factual basis for, and are trying to settle through this bankruptcy. This is not speculation. The entity *Tehum* has already proven through its actions that it exists solely to secure a non-consensual non-*Tehum* release for the benefit of *YesCare* and its affiliates to the detriment of the victims and their families.

Through clever bankruptcy machinations, *Tehum* Health and its beneficial owners sought to control by becoming both the plaintiff and the defendant in all litigation against them based on their tortious conduct; thus depriving the victims their property, legal, and Constitutional rights. This case is an elaborate scheme to confirm a plan that includes non-consensual third-party releases without the affirmative vote of the tort victims and over their vehement objection.

Bankruptcy should not be used by tortfeasors to avoid responsibility for the harm that they caused, deny victims their rights against non-*Tehum* entities, and prevent victims from being able to access our justice system. *Tehum*'s plan seeks to deny victims their legal rights and impose a de minimis settlement under which victims would be forced to accept pennies on the dollar on account of claims that are worth millions of dollars.

As the victims here were incarcerated, possessing minimal access to funds and resources to fight their claims, *Tehum* incorrectly judged they would just lie down and take pennies on the dollar for their claims. I mattered not to *Tehum* executives that they did not deserve to die, or they did not deserve to be provided substandard health care, their families did not deserve to attend funerals of loved ones who would be alive today absent the misconduct of *Corizon*, its predecessors and beneficial owners. All that mattered was money, even if that meant *Tehum* would use its bankruptcy as a tool to prey on widowed spouses, parentless children, and distraught family members at lost loved ones who did not enter their term of incarceration as a death sentence. This case is an affront to basic principles of justice and the dignity that every person deserves under our Constitution.

*Tehum*'s bankruptcy was designed to deny any just result by creating an administratively insolvent estate, incentivizing professionals to advocate for a cheap settlement, and pressuring claimants with few financial resources to settle. Just such a bankruptcy, if allowed to proceed by the parties who orchestrated this fraud could potentially upend our justice system.

## **CORIZON'S CORPORATE HISTORY & TORT CLAIMS**

The *Corizon*'s predecessors were in the business of providing healthcare services to inmates incarcerated in state and local prisons across the county. During the 2010s, a group of private equity funds owned the *Corizon* Health conglomerate. During this period, *Corizon* was very profitable. Many States had converted to providing healthcare to inmates by contracting with private companies and there were only a handful of competitors that were able to compete for these contracts.

But *Corizon* Health ran into headwinds. The disturbing truth of the private prison health care industry is that it incentivizes and provides a level of care that leads to medical malpractice and related liability. With revenue fixed by a government contract, profits are maximized by minimizing costs. The costs here are the costs of providing health care to inmates. Less healthcare equates with a higher rate of return. This reality led to significant tort claims, including claims for wrongful death, permanent disability and disfigurement.

The members of the TCC exemplify the tort claims arising from serious medical malpractice and neglect that the *Corizon*'s insiders are trying to evade in this bankruptcy case. Five TCC members have wrongful death claims, and the sixth TCC member suffered permanent disability and disfigurement caused by *Corizon*'s business plan to avoid medical expenses by limiting care provided to inmates.

## THE PROPOSED PLAN OF REORGANIZATION

The proposed plan reflects the final embodiment of *YesCare*'s scheme. As one may expect, the proposed plan treats the inmates and their families poorly, and that is probably an overly generous statement.

Unfair Discrimination. Unlike the plans proposed in other *Texas Two-Step* cases, the *Corizon*'s plan divides the claimants among three separate classes: Class 4-Non-Personal Injury Claims, Class 5-Personal Injury Claims, and Class 6-Indemnification Claims. Class 4, which includes the five trade creditors represented by the UCC, gets the lion's share of the money.

The plan deploys a two-trust structure, with Non-Personal Injury Claims being channeled to the "Liquidation Trust" and Personal Injury Claims being channeled to the "Personal Injury Trust." Under the settlement with the UCC, the Liquidation Trust gets between $14.5 and $15.5 million of the $37 million settlement, the right to pursue certain estates causes of action, including preference claims worth millions of dollars and claims against the Flacks Group (also worth millions of dollars), and ERC credits (purported to be worth between $5 and $10 million)[11]

The Liquidation Trust currently employs the professionals that currently represent the UCC. Holders of Non-Personal Injury Claims will enjoy a substantially higher recovery than holders of Personal Injury Claims. The Personal Injury Trust gets between $8.5 and $8.8 million of the $37 million settlement and insurance rights that are presently estimated to have little to no value. The filed proofs of claims alleged personal injury and wrongful death claims total approximately 200 (plus), with a face value of $775 million.

Under the proposed settlement and plan, claimants on the UCC will receive between a 44% and 69% recovery, while *YesCare* and *CHS TX* will avoid millions of dollars in tort liability that they would otherwise face in the tort system. Assuming any funds are left after the payment of trust administrative claims, the inmates and their families stand to recover pennies on the dollar. Wrongful death claims worth more than $5 to $10 million in the tort system may recover less than 1.2% of their claim; e.g., $60,000 or $120,000. If the plan is confirmed and upheld on appeal victims like David Hall may recover only $5,000 on his $770,000 judgment, while also being stripped of his right to pursue non-*Corizon* tortfeasors, such as *YesCare* and *CHS TX* for the difference.

## CORIZON'S PLAN OF REORGANIZATION

Likewise, there is no path here to the confirmation of the *Corizon*'s plan to harm tort claimants and transfer millions in value from creditors to equity holders. The plan violates the best interest test, proposes unfair discrimination, was proposed in bad faith, and the *Tehum* i.e., *Corizon*, proposed settlement is an insider transaction that does not satisfy the Rule 9019 standard[12].

The tort claimants will vote against plan confirmation. The *Corizon*'s plan, if confirmed, would take away the right to a jury trial, property rights, and the ability of tort claimants to collect from *YesCare* in the tort system.  The releases are unlawful in every Circuit, not just under Fifth Circuit case law, given the lack claimant support and a plan that fails to provide for substantial compensation to the impacted class of creditors.  (*See* Bank of N.Y. Tr. Co. v. 9 Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.), 584 F.3d 229 (5th Cir. 2009) ("[T]his court has held that Section 524(e) only releases *Corizon*, not co-liable third parties.")[13].

*Tehum* may argue that the release(s) under its plan are voluntary because the claimants can theoretically opt-out. But, again, the opt-out is illusory. Anyone who opts out will be channeled into a brick wall. Any claimants who opt-out would be barred from pursuing their state law rights against *YesCare* and its non-*Corizon* affiliates and insiders. Any release confirmation would most certainly be challenged by the TCC, tort and creditor claimants, and public interest groups with the consolidated intent of preventing this case from spearheading the charge to further abuses of the bankruptcy system. To date in the history of the bankruptcy courts, no plan has been submitted, much less confirmed, in a chapter 11 case that compares to what the *Tehum* and the UCC are proposing.

## CONCLUSION

For these reasons, pursuant to Harrington, this Bankruptcy must be dismissed.

Respectfully Submitted,

S/d Anant Kumar Tripati

Anant Kumar Tripati

The Plaintiff Hereby Certifies That A True And Correct Copy Of The Foregoing Document Was Served By The Court's Cm/Ecf System On All Parties Requesting Notice/ All Parties Who Have Entered Appearance.

Inmate _____

ADC # _____

Arizona State Prison Complex _____

Unit _____

United States Courts
Southern District of Texas
F I L E D

JUL 23 2024

Nathan Ochsner, Clerk of Court

NEOPOST
07/03/2024
US POSTAGE $0
04-

US BANKRUPTCY COURT

515 RUSK

HOUSTON TX 77002