**Schedule 1**

**Liquidation Analysis**

**Tehum Care Services, Inc.**
**Case No. 23-90086**
**Liquidation Analysis**
**Chapter 7 versus Chapter 11**

| ($ in thousands) | Note | Chapter 7 Liquidation | | | | | Chapter 11 - Joint Plan | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Book Value (Unliquidated) | Percentage Low | Percentage High | Liquidation Value Low | Liquidation Value High | Book Value (Unliquidated) | Percentage Low | Percentage High | Liquidation Value Low | Liquidation Value High |
| **Assets** | | | | | | | | | | | |
| 1 Unrestricted Cash and Equivalents | A | $ - | 0.0% | 0.0% | $ - | $ - | $ - | 0.0% | 0.0% | $ - | $ - |
| 2 Employee Retention Credits, gross | B | 25,960.0 | 40.6% | 100.0% | 10,544.3 | 25,960.0 | 25,960.0 | 40.6% | 100.0% | 10,544.3 | 25,960.0 |
| 3 Insurance Proceeds & Third-Party Recoveries | C | 18,761.3 | 5.3% | 53.3% | 1,000.0 | 10,000.0 | 18,761.3 | 5.3% | 53.3% | 1,000.0 | 10,000.0 |
| 4 Causes of Action Proceeds | D | - | 100.0% | 100.0% | - | 53,000.0 | - | 0.0% | 0.0% | - | 3,000.0 |
| 5 Global Settlement, Including Interest | E | - | 0.0% | 0.0% | - | - | 53,437.5 | 100.0% | 100.0% | 53,437.5 | 53,437.5 |
| **6 Gross Proceeds from Estate Assets** | | **$ 44,721.3** | | | **$ 11,544.3** | **$ 88,960.0** | **$ 98,158.8** | | | **$ 64,981.8** | **$ 92,397.5** |
| 7 *Less:* Employee Retention Credits Setoff by Priority Federal Tax Claims | F | | | | $ (8,239.4) | $ (8,239.4) | | | | $ (8,239.4) | $ (8,239.4) |
| 8 *Less:* Employee Retention Credits - Synergi Administrative Fee (dkt 723) | G | | | | (149.4) | (1,148.9) | | | | (149.4) | (1,148.9) |
| **9 Chapter 7 Liquidation Costs** | | | | | | | | | | | |
| 10 Chapter 7 Trustee Fees | H | | | | $ (99.1) | $ (2,421.6) | | | | $ - | $ - |
| 11 Chapter 7 Professional Fees | I | | | | (1,000.0) | (22,200.0) | | | | - | - |
| **12 Total Chapter 7 Liquidation Costs** | | | | | **$ (1,099.1)** | **$ (24,621.6)** | | | | **$ -** | **$ -** |
| **13 Remaining Proceeds Available for Distribution** | | | | | **$ 2,056.3** | **$ 54,950.1** | | | | **$ 56,593.0** | **$ 83,009.2** |
| 14 Budgeted Chapter 11 Administrative Costs | J | | | | $ (23,479.9) | $ (23,479.9) | | | | $ (23,479.9) | $ (23,479.9) |
| 15 Other Administrative Expense Claims | K | | | | (900.5) | (1,515.0) | | | | - | - |
| 16 DIP Facility Funding - Principal Only | L | | | | 20,407.9 | 20,407.9 | | | | 23,479.9 | 23,479.9 |
| **17 Incurred but Unpaid Administrative Expenses** | | | | | **$ (3,972.5)** | **$ (4,587.0)** | | | | **$ -** | **$ -** |
| **18 Remaining Proceeds Available for Distribution after Unfunded Administrative Costs** | | | | | **$ -** | **$ 50,363.1** | | | | **$ 56,593.0** | **$ 83,009.2** |

| ($ in thousands) | Note | Chapter 7 Liquidation | | | | | Chapter 11 - Joint Plan | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Estimated Claims Low | Estimated Claims High | Recovery % Low | Recovery % High | Estimated Recovery $ Low | Estimated Recovery $ High | Estimated Claims Low | Estimated Claims High | Recovery % Low | Recovery % High | Estimated Recovery $ Low | Estimated Recovery $ High |
| **19 Remaining Proceeds Available for Distribution after Unfunded Administrative Costs** | | | | | | $ - | $ 50,363.1 | | | | | $ 56,593.0 | $ 83,009.2 |
| 20 Super Priority DIP Facility Obligations | M | $ 22,506.6 | $ 22,506.6 | 0.0% | 100.0% | $ - | $ 22,506.6 | $ 25,628.6 | $ 25,628.6 | 0.0% | 0.0% | $ - | $ - |
| **21 Proceeds Available for Distribution after Super Priority Claims** | | | | | | **$ -** | **$ 27,856.5** | | | | | **$ 56,593.0** | **$ 83,009.2** |
| **22 Incremental Administrative Claims** | | | | | | | | | | | | | |
| 23 Plan Trusts' Professional Fees | N | $ - | $ - | 0.0% | 0.0% | $ - | $ - | $ 4,000.0 | $ 4,000.0 | 100.0% | 100.0% | $ 4,000.0 | $ 4,000.0 |
| 24 Post-Effective Date US Trustee Fees | O | - | - | 0.0% | 0.0% | - | - | 453.9 | 673.3 | 100.0% | 100.0% | 453.9 | 673.3 |
| **25 Total Administrative Claims** | | **$ -** | **$ -** | | | **$ -** | **$ -** | **$ 4,453.9** | **$ 4,673.3** | | | **$ 4,453.9** | **$ 4,673.3** |
| **26 Proceeds Available for Distribution after Administrative Claims** | | | | | | **$ -** | **$ 27,856.5** | | | | | **$ 52,139.0** | **$ 78,335.9** |
| 27 Unclassified - Priority State Tax Claim | P | $ 302.4 | $ 302.4 | 0.0% | 100.0% | $ - | $ 302.4 | $ 302.4 | $ 302.4 | 100.0% | 100.0% | $ 302.4 | $ 302.4 |
| 28 Class 1 - Other Priority Claims | Q | 775.3 | 775.3 | 0.0% | 100.0% | - | 775.3 | 775.3 | 775.3 | 100.0% | 100.0% | 775.3 | 775.3 |
| 29 Class 2 - Other Secured Claims | R | - | - | 0.0% | 0.0% | - | - | - | - | 0.0% | 0.0% | - | - |
| **30 Proceeds Available for Distribution after Priority / Secured Claims** | | | | | | **$ -** | **$ 26,778.8** | | | | | **$ 51,061.3** | **$ 77,258.2** |
| 31 Class 3 - Convenience Claims | S | $ 100.5 | $ 100.5 | 0.0% | 100.0% | $ - | $ 100.5 | $ 100.5 | $ 100.5 | 100.0% | 100.0% | $ 100.5 | $ 100.5 |
| 32 Class 4 / 5 - Non-Personal Injury General Unsecured Claims | T | 124,348.0 | 99,348.0 | 0.0% | 14.9% | - | 14,762.5 | 100,000.0 | 75,000.0 | 24.4% | 44.0% | 24,395.3 | 33,029.8 |
| 33 Class 6 / 7 / 8 - Personal Injury General Unsecured Claims | U | 132,145.2 | 80,190.0 | 0.0% | 14.9% | - | 11,915.8 | 112,253.3 | 67,970.0 | 23.7% | 64.9% | 26,565.5 | 44,128.0 |
| 34 Class 9 / 10 - Indirect Claims | V | - | - | 0.0% | 0.0% | - | - | - | - | 0.0% | 0.0% | - | - |
| **35 Total Class 3-10 Claims** | | **$ 256,593.7** | **$ 179,638.5** | | | **$ -** | **$ 26,778.8** | **$ 212,353.8** | **$ 143,070.5** | | | **$ 51,061.3** | **$ 77,258.2** |
| **36 Total Proceeds Distributed Net of Setoffs** | | | | | | **$ 2,149.1** | **$ 77,648.6** | | | | | **$ 56,742.4** | **$ 84,158.1** |

**Tehum Care Services, Inc.**
Case No. 23-90086
Recovery Analysis

| ($ in thousands) | Note | Chapter 11 - GUC Trust Book Value (Unliquidated) | Percentage Low | Percentage High | Liquidation Value Low | Liquidation Value High | Chapter 11 - PI/WD Trust Book Value (Unliquidated) | Percentage Low | Percentage High | Liquidation Value Low | Liquidation Value High |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | |
| 1  Unrestricted Cash and Equivalents | A | $ - | 0.0% | 0.0% | $ - | $ - | $ - | 0.0% | 0.0% | - | - |
| 2  Employee Retention Credits, gross | B | 12,980.0 | 40.6% | 100.0% | 5,272.2 | 12,980.0 | 12,980.0 | 40.6% | 100.0% | 5,272.2 | 12,980.0 |
| 3  Insurance Proceeds & Third-Party Recoveries | C | - | 0.0% | 0.0% | - | - | 18,761.3 | 5.3% | 53.3% | 1,000.0 | 10,000.0 |
| 4  Causes of Action Proceeds | D | - | 100.0% | 100.0% | - | 1,500.0 | - | 0.0% | 100.0% | - | 1,500.0 |
| 5  Global Settlement, Including Interest | E | 26,718.8 | 100.0% | 100.0% | 26,718.8 | 26,718.8 | 26,718.8 | 100.0% | 100.0% | 26,718.8 | 26,718.8 |
| **6  Gross Proceeds from Estate Assets** | | **$ 39,698.8** | | | **$ 31,990.9** | **$ 41,198.8** | **$ 58,460.0** | | | **$ 32,990.9** | **$ 51,198.8** |
| 7  *Less:* Employee Retention Credits Setoff by Priority Federal Tax Claims | F | | | | $ (4,119.7) | $ (4,119.7) | | | | $ (4,119.7) | $ (4,119.7) |
| 8  *Less:* Employee Retention Credits - Synergi Administrative Fee (dkt 723) | G | | | | (74.7) | (574.4) | | | | (74.7) | (574.4) |
| **9  Chapter 7 Liquidation Costs** | | | | | | | | | | | |
| 10  Chapter 7 Trustee Fees | H | | | | $ - | $ - | | | | $ - | $ - |
| 11  Chapter 7 Professional Fees | I | | | | - | - | | | | - | - |
| **12  Total Chapter 7 Liquidation Costs** | | | | | **$ -** | **$ -** | | | | **$ -** | **$ -** |
| **13  Remaining Proceeds Available for Distribution** | | | | | **$ 27,796.5** | **$ 36,504.6** | | | | **$ 28,796.5** | **$ 46,504.6** |
| 14  Budgeted Chapter 11 Administrative Costs | J | | | | $ (11,740.0) | $ (11,740.0) | | | | $ (11,740.0) | $ (11,740.0) |
| 15  Other Administrative Expense Claims | K | | | | - | - | | | | - | - |
| 16  DIP Facility Funding - Principal Only | L | | | | 11,740.0 | 11,740.0 | | | | 11,740.0 | 11,740.0 |
| **17  Incurred but Unpaid Administrative Expenses** | | | | | **$ -** | **$ -** | | | | **$ -** | **$ -** |
| **18  Remaining Proceeds Available for Distribution after Unfunded Administrative Costs** | | | | | **$ 27,796.5** | **$ 36,504.6** | | | | **$ 28,796.5** | **$ 46,504.6** |

| ($ in thousands) | Note | Chapter 11 - GUC Trust Estimated Claims Low | Estimated Claims High | Recovery % Low | Recovery % High | Estimated Recovery $ Low | Estimated Recovery $ High | Chapter 11 - PI/WD Trust Estimated Claims Low | Estimated Claims High | Recovery % Low | Recovery % High | Estimated Recovery $ Low | Estimated Recovery $ High |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **19  Remaining Proceeds Available for Distribution after Unfunded Administrative Costs** | | | | | | **$ 27,796.5** | **$ 36,504.6** | | | | | **$ 28,796.5** | **$ 46,504.6** |
| 20  Super Priority DIP Facility Obligations | M | $ 12,814.3 | $ 12,814.3 | 0.0% | 0.0% | $ - | $ - | $ 12,814.3 | $ 12,814.3 | 0.0% | 0.0% | $ - | $ - |
| **21  Proceeds Available for Distribution after Super Priority Claims** | | | | | | **$ 27,796.5** | **$ 36,504.6** | | | | | **$ 28,796.5** | **$ 46,504.6** |
| **22  Incremental Administrative Claims** | | | | | | | | | | | | | |
| 23  Plan Trusts' Professional Fees | N | $ 2,000.0 | $ 2,000.0 | 100.0% | 100.0% | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | 100.0% | 100.0% | $ 2,000.0 | $ 2,000.0 |
| 24  Post-Effective Date US Trustee Fees | O | 223.0 | 296.6 | 100.0% | 100.0% | 223.0 | 296.6 | 231.0 | 376.6 | 100.0% | 100.0% | 231.0 | 376.6 |
| **25  Total Administrative Claims** | | **$ 2,223.0** | **$ 2,296.6** | | | **$ 2,223.0** | **$ 2,296.6** | **$ 2,231.0** | **$ 2,376.6** | | | **$ 2,231.0** | **$ 2,376.6** |
| **26  Proceeds Available for Distribution after Administrative Claims** | | | | | | **$ 25,573.5** | **$ 34,208.0** | | | | | **$ 26,565.5** | **$ 44,128.0** |
| 27  Unclassified - Priority State Tax Claim | P | $ 302.4 | $ 302.4 | 100.0% | 100.0% | $ 302.4 | $ 302.4 | $ - | $ - | 0.0% | 0.0% | $ - | $ - |
| 28  Class 1 - Other Priority Claims | Q | 775.3 | 775.3 | 100.0% | 100.0% | 775.3 | 775.3 | - | - | 0.0% | 0.0% | - | - |
| 29  Class 2 - Other Secured Claims | R | - | - | 0.0% | 0.0% | - | - | - | - | 0.0% | 0.0% | - | - |
| **30  Proceeds Available for Distribution after Priority / Secured Claims** | | | | | | **$ 24,495.8** | **$ 33,130.2** | | | | | **$ 26,565.5** | **$ 44,128.0** |
| 31  Class 3 - Convenience Claims | S | $ 100.5 | $ 100.5 | 100.0% | 100.0% | $ 100.5 | $ 100.5 | $ - | $ - | 0.0% | 0.0% | $ - | $ - |
| 32  Class 4 / 5 - Non-Personal Injury General Unsecured Claims | T | 100,000.0 | 75,000.0 | 24.4% | 44.0% | 24,395.3 | 33,029.8 | - | - | 0.0% | 0.0% | - | - |
| 33  Class 6 / 7 / 8 - Personal Injury General Unsecured Claims | U | - | - | 0.0% | 0.0% | - | - | 112,253.3 | 67,970.0 | 23.7% | 64.9% | 26,565.5 | 44,128.0 |
| 34  Class 9 / 10 - Indirect Claims | V | - | - | 0.0% | 0.0% | - | - | - | - | 0.0% | 0.0% | - | - |
| **35  Total Class 3-10 Claims** | | **$ 100,100.5** | **$ 75,100.5** | | | **$ 24,495.8** | **$ 33,130.2** | **$ 112,253.3** | **$ 67,970.0** | | | **$ 26,565.5** | **$ 44,128.0** |
| **36  Total Proceeds Distributed Net of Setoffs** | | | | | | **$ 27,871.2** | **$ 37,079.1** | | | | | **$ 28,871.2** | **$ 47,079.1** |

**Liquidation Analysis**

As a condition to confirmation, section 1129(a)(7) of the Bankruptcy Code requires the Bankruptcy Court to find that each creditor in an impaired class of creditors—*i.e.*, Classes 3–10 under the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Docket No. 1739) (the "Plan")[1]—has either accepted the Plan or will receive or retain, on the Effective Date of the Plan, property on account of such claim in an amount not less than the creditor would receive in a hypothetical Chapter 7 liquidation.

Below is a hypothetical liquidation analysis (the "Liquidation Analysis"), illustrating what creditors would likely receive were the Debtor's Chapter 11 case converted to a Chapter 7 liquidation on the Effective Date of the Plan.

This Liquidation Analysis compares recoveries under the Plan to hypothetical creditor recoveries were the Debtor's assets to be disposed of under the direction of a Chapter 7 trustee, without the benefit of the Estate Party Settlement which is the foundation of the Plan.

On the whole, as illustrated in this Liquidation Analysis, without the benefit of the Estate Party Settlement, administrative costs will be higher, and net distributable proceeds to creditors would be lower.  For this reason, the Debtor and the Committees, as Proponents of the Plan, believe that creditors will achieve higher recoveries under the Plan than if the Debtor was liquidated under Chapter 7.

## I.        Limitations and Key Assumptions Underlying the Hypothetical Liquidation

**THE LIQUIDATION ANALYSIS PRESENTED HEREIN HAS BEEN PREPARED SOLELY FOR THE PURPOSES DESCRIBED ABOVE AND MAY NOT BE USED FOR ANY OTHER PURPOSE.**

This Liquidation Analysis was prepared by the Plan Proponents and their respective financial advisors and counsel.  The Liquidation Analysis contains numerous estimates, based upon a review of the Debtor's records and other documentation.  The claims that could be asserted and allowed in a Chapter 7 liquidation, including unpaid Chapter 11 administrative claims (including the DIP Claims, which are being fully released under the Plan pursuant to the Estate Party Settlement, but which would not be released in a Chapter 7 liquidation), and additional administrative claims that will be incurred by a Chapter 7 trustee and the trustee's new professionals, including wind-down costs and Chapter 7 trustee fees, have been estimated.

The Liquidation Analysis also includes estimates of the aggregate value of claims, by claim class, as described in the Plan, as the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims.  Unless specifically referenced in the Notes below, the amount of claims reflected in the Liquidation Analysis is based on the proofs of claim actually filed on or before the general bar date, which was August 14, 2023.  **Therefore, the estimates of claims set**

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

**forth in this Liquidation Analysis should not be relied on for any other purpose, including determining the value of the ultimate distributions to be made under the Plan.**

**THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASE COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THIS LIQUIDATION ANALYSIS.**

The assumptions utilized in developing this Liquidation Analysis are inherently subject to significant uncertainties and contingencies, many of which are beyond the control of the Plan Proponents or a hypothetical Chapter 7 trustee at the present time. For example, in a hypothetical Chapter 7 liquidation, it is unknown how quickly litigants will seek relief from the automatic stay, and how the timing of litigation may impact creditors' rights in the Debtor's various insurance policies. Accordingly, there can be no assurance that the values assumed in the Liquidation Analysis will be realized if the Debtor's assets were actually liquidated under Chapter 7 of the Bankruptcy Code. In addition, any liquidation would take place in the future, at which time circumstances may exist which cannot presently be predicted.

The Plan Proponents recognize that there are other potential liquidation alternatives that are not presented in the Liquidation Analysis, including alternatives that would give rise to further reduced and delayed creditor recoveries.

**THE PLAN PROPONENTS RESERVE THE RIGHT TO SUPPLEMENT, MODIFY, OR ADJUST ANY PART OF THIS LIQUIDATION ANALYSIS, INCLUDING A CHANGE TO THE UNDERLYING ASSUMPTIONS AND ANALYSIS.**

## General Assumptions

The following general assumptions were considered by the Plan Proponents and their advisors as assumptions that would be applicable in any hypothetical Chapter 7 liquidation.

1. **Timing Considerations of Chapter 7 Case**

    The Liquidation Analysis assumes an orderly liquidation of the Debtor over a 3-month period commencing on or around December 31, 2024 (the "Conversion Date"). This timeline assumes substantially all of the Debtor's assets (other than insurance proceeds, litigation proceeds, and recoveries from causes of action to be pursued by the Chapter 7 trustee) will be realized by March 31, 2025, representing a three-month period following the Conversion Date.

    There can be no assurance, however, that a liquidation would be completed in such a limited timeframe, nor is there any assurance that the recoveries assigned to the Debtor's assets would in fact ever be realized. In reality, proceeds from litigation and insurance will take months (if not years) to realize if the case is converted to Chapter 7. Moreover, there can be no guarantee that a Chapter 7 trustee will realize greater value from causes of action than the $50.0 million settlement amount that is part of the Estate Party Settlement.

**2.**    **Professionals Involved in the Chapter 7 Case**

As part of a hypothetical Chapter 7 case, the Plan Proponents assume a Chapter 7 trustee would choose to retain certain professionals, including counsel, financial advisors, and potentially others, to provide expertise and assistance in the Debtor's liquidation.  The Liquidation Analysis assumes that the Chapter 7 trustee would replace the Debtor's existing professionals with new professionals who do not have the same level of background knowledge as the Debtor's existing professionals.

It is possible that the Chapter 7 trustee would retain the Committees' professionals to assist in the pursuit of certain estate causes of action to avoid duplication of effort and expense.

**3.**    **Trustee Fees for Chapter 7 Administration**

Under section 326(a) of the Bankruptcy Code, the Bankruptcy Court may allow reasonable compensation for the Chapter 7 trustee's services not to exceed three percent (3%) of the moneys disbursed or turned over in the case by the Chapter 7 trustee to parties in interest in excess of $1 million, excluding the Debtor, but including holders of secured claims.  The Plan Proponents assume in the Liquidation Analysis that such fees would be approximately three percent (3%) of gross liquidation proceeds.

**4.**    **Additional Claims**

Conversion of the Debtor's Chapter 11 case to Chapter 7 will trigger additional costs of administration that do not otherwise exist under the proposed Plan.  Additionally, the DIP Claims proposed to be released under the Plan would not be released in a Chapter 7 case.  Examples of these kinds of Claims include tax liabilities triggered upon liquidation, Claims related to rejection of executory contracts, higher DIP Claims and other litigation Claims.  These claims could be significant and will be entitled to priority in payment over General Unsecured Claims in the Chapter 7 distribution waterfall.  No adjustment has been made for these potential claims unless specified in the assumptions and notes to the Liquidation Analysis.

**5.**    **Basis of Presentation**

The hypothetical Liquidation Analysis is based on the unaudited balance sheet and other documentation of the Debtor as of August 31, 2024, with certain adjustments to reflect anticipated activity through the Conversion Date.

**6.**    **Additional Assumptions for Liquidation**

The Plan Proponents assume a liquidation would be conducted pursuant to Chapter 7 of the Bankruptcy Code, with a Chapter 7 trustee appointed to manage the bankruptcy estate.  The Chapter 7 trustee would be responsible for liquidating the Debtor's assets in a manner intended to maximize the recovery to creditors.  Because the Debtor ceased operating in April 2022, the major components of the liquidation process would be as follows:

- pursuing Causes of Action, including avoidance actions under Chapter 5 of the Bankruptcy Code, which are too speculative to value;[2]

- administering and managing costs and post-conversion expenses related to the monetization of estate assets, such as costs associated with litigation, claims reconciliation costs, estate wind down costs, and Chapter 7 trustee and professional fees; and

- distributing net proceeds to claimants in accordance with the priority scheme under Chapter 7 of the Bankruptcy Code.

## II.     Consummation of the Plan Will Provide Greater Value to Creditors than a Chapter 7 Liquidation

Because distributions to creditors in a hypothetical Chapter 7 liquidation, as reflected in the Liquidation Analysis, will be significantly lower relative to the forecasted recoveries under the Plan, the Plan Proponents believe that consummation of the Plan will provide greater value to such holders than would a liquidation under Chapter 7 of the Bankruptcy Code.

## III.    Notes to Liquidation Analysis

### A.    Unrestricted Cash and Equivalents

The Debtor has not operated since April 2022 and as such, has no ability to generate cash flow.  The only source of cash since the Petition Date has been from the DIP Facility.  The Debtor maintains no unrestricted cash balance and therefore the value of Unrestricted Cash and Equivalents is zero.

### B.    Employee Retention Credits ("ERC")

Employee Retention Credits represent refundable tax credits, authorized by the CARES Act, for keeping employees on payroll during the COVID-19 pandemic during calendar years 2020 and 2021.  The Debtor believes these tax credits would be pursued in either Chapter 7 or Chapter 11, and that the recovery estimates would be the same in either scenario.  The recovery amounts are presented before payment of Allowed Priority Federal Tax Claims and Allowed Administrative Claims of Synergi Partners, Inc. (*see* Docket No. 723).

---

[2]  Under the Estate Party Settlement, the Trusts will receive $50.0 million, without incurring any additional litigation costs or expenses to pursue or collect such amounts.  For creditors to recover more in a hypothetical Chapter 7 liquidation, a Chapter 7 trustee would not only have to prove damages in excess of $50.0 million, but the Chapter 7 trustee would also have to actually collect an amount in excess of $50.0 million to account for trustee fees and other expenses, including contingency professionals.  Finally, the Chapter 7 trustee would have to complete this process faster than the expected approximately 30-month time frame under the Plan—where the settlement amounts will be paid in monthly installments starting on the Effective Date.

4

C.    **Insurance Proceeds & Third-Party Recoveries**

The high- and low-end recoveries reflected in Line 3 are the Debtor's best estimate as to the range of potential insurance recoveries based upon the Debtor's high-level review of the claims made under the Debtor's various insurance policies and the remaining limits thereunder.  Any recoveries from insurance are believed to be the same in either Chapter 7 or Chapter 11.  However, the key distinction is that the Plan offers a fair and efficient mechanism (as detailed in PI/WD Trust Distribution Procedures and further illustrated in Schedule 3 to the Disclosure Statement) for claimants to settle their claims and be paid from insurance.  Conversely, a Chapter 7 liquidation would leave every creditor to fend for itself without any way to ensure that proceeds are available for all personal injury claimants, rather than those who get their judgments first.  A Chapter 7 trustee would likely allow the automatic stay to lift for all claimants so that pro se litigants and other incarcerated individuals, most without access to counsel or judicial resources, would be at a severe disadvantage in the "race to the courthouse" that may exhaust proceeds under the Debtor's various insurance policies before most individuals have their day in court.  Additionally, there is no way to determine how the potential recoveries from third parties might be distributed to creditors in either Chapter 7 or Chapter 11.

D.    **Causes of Action Proceeds**

Potential recoveries in this line represent recoveries on any and all claims or causes of action owned by the Estate, but not including Insurance Proceeds & Third-Party Recoveries from Note C.  As noted in the Plan and Disclosure Statement, the Plan proposes to settle certain of the Estate's potential Causes of Action against the Settlement Parties for $50.0 million.  The Plan Proponents believe there are approximately $5.0 million in avoidance actions other than those settled as part of the Estate Party Settlement.  Of that amount, the Plan Proponents believe the range of realistic recoveries is between $0 and $3.0 million.  Further, the Plan Proponents believe that there are risks that Chapter 7 trustee would not be able to liquidate the Estate's claims against the Settlement Parties for an amount in excess of the $50.0 million Estate Party Settlement amount.  As a result, the low-end of recoveries in Line 4 reflects a $0 recovery on the Estate's claims against the Settlement Parties and other causes of action.  The $50.0 million high-end in Line 4 reflects the Trusts recovering the same $50.0 million as the Estate Party Settlement, plus an additional $3.0 million in other avoidance actions.  The same assumptions are made for the Chapter 11 scenario, with the $50.0 million Estate Party Settlement reflected in Line 5 and discussed below.

E.    **Estate Party Settlement**

The Estate Party Settlement provides significant value to claimants under the Plan.  The cash component of the Estate Party Settlement is in the aggregate principal amount of $50.0 million and interest of $3.4 million, to be paid to the Trusts for distribution to Holders of Allowed Channeled Claims, payable in multiple installments as follows:  (i) $2.0 million in Cash on the Effective Date, and (ii) $48.0 million in Cash plus 6% in Cash Interest paid to the Trusts in monthly principal installments of $3.5 million and $3.0 million in the first

5

two months and $1.5 million every month for the next 27 months with a final payment of $1.0 million.  The first payment is to be made 30 days after the Effective Date.

**F.**  **Employee Retention Credits Setoff by Priority Federal Tax Claims**

The Internal Revenue Service ("IRS") has filed amended Priority Federal Tax Claims totaling approximately $8.2 million.  The Debtor assumes that the IRS will offset its Claims against the Employee Retention Credits.  The Liquidation Analysis therefore deducts this amount from Gross Proceeds from Estate Assets in both the Chapter 11 and 7 scenarios.

**G.**  **Employee Retention Credits—Synergi Administrative Fee [Docket No. 723]**

Pursuant to order of the Bankruptcy Court at Docket No. 723, Synergi has an Allowed Administrative Claim calculated as 10% of the refundable ERC returns filed by the Debtor after June 27, 2023 (the date of entry of the order) and actually approved and paid in cash to the Debtor or its successor.  The Debtor filed ERC returns after June 27 for 2020 in the aggregate amount of approximately $7.6 million.  Before June 27, 2023, the Debtor filed ERC returns for 2021 in the aggregate amount of approximately $9.1 million.  Subsequently, the debtor filed approximately $9.2 million in ERC returns for 2020 and 2021 in addition to the $16.7 million originally filed after June 27, 2023. The Debtor assumes the IRS will combine the ERC credits for 2020 and 2021, and offset the approximate $8.2 million in priority IRS claims, and remit the balance to the Debtor.  For purposes of calculating the Synergi fee, the Debtor assumes the total priority IRS claim is allocated pro rata to each of 2020 and 2021, which results in the reflected fee to Synergi.

**H.**  **Chapter 7 Trustee Fees**

The Liquidation Analysis assumes hypothetical Chapter 7 trustee fees would be as set forth in section 326(a) of the Bankruptcy Code.  The Plan Proponents assume that Chapter 7 trustee fees will be approximately 3% of Gross Proceeds from Estate Assets (Line 6).

**I.**  **Chapter 7 Professional Fees**

Chapter 7 Professional Fees include costs for financial advisors, attorneys, accountants, and other professionals retained by the Chapter 7 trustee.  In the Liquidation Analysis, Chapter 7 Professional Fees are estimated to be approximately $1.0 million plus a 40% contingency fee on the Causes of Action Proceeds (Line 4).  This amount may fluctuate based on the length and complexity of the wind-down process and could be substantially greater if the claims cannot be resolved without the need for substantial litigation.

**J.**  **Chapter 11 Administrative Costs**

Chapter 11 Administrative Expenses represent the costs associated with the administration of the Debtor's Chapter 11 case including professional fees and other administrative expenses through the Effective Date of the Plan.  The Chapter 11 Administrative Costs of approximately $23.5 million represent the total administrative expenses for the Chapter 11 case, comprised of: (i) approximately $12.4 million, of incurred and paid administrative

claims through September 20, 2024; (ii) approximately $8.9 million, of incurred but unpaid administrative claims through September 20, 2024; and (iii) approximately $2.1 million in incremental Administrative Claims expected to be incurred for the remainder of the Chapter 11 case through the anticipated Effective Date. The actual Administrative Claims may be higher as a result of the additional hearings required to obtain approval of the Plan and Disclosure Statement.

The Chapter 7 scenario assumes the same as the Chapter 11 scenario above, except the Plan does not receive final approval. Unpaid, incremental expenses will remain outstanding and must be paid by the hypothetical Chapter 7 trustee before there can be distributions to General Unsecured Creditors.

**K.**      **Other Administrative Expense Claims**

This line includes filed or anticipated Administrative Claims for entities other than estate professionals who have provided services to the Debtor during the Chapter 11 Case. As discussed in the Disclosure Statement, Sigma Risk Management ("Sigma") is likely to seek payment for its postpetition services of approximately $3.0 million. For illustrative purposes, the Liquidation Analysis assumes a range for ultimate Allowed Administrative Claims, mostly consisting of claims filed by Sigma. In the Chapter 11 scenario, there would be no recovery without an increase in the DIP funding; therefore, no recovery is currently assumed in the Chapter 11 scenario.

In a hypothetical Chapter 7 liquidation, unpaid Chapter 11 Administrative Claims are senior in rights to payment to General Unsecured Claims and must be paid in full before General Unsecured Claims may receive a distribution. Thus, under this illustration, the Liquidation Analysis assumes that the Chapter 7 will be unable to pay the allowed Chapter 11 Administrative Expenses in full, meaning that under the low-end scenario, there will be no funds left to pay holders of General Unsecured Claims, as these Administrative Claims will consume all remaining proceeds of the estate.

**L.**      **DIP Facility Funding - Principal Only**

The Chapter 11 DIP Facility Funding of $23.5 million represents the total principal amount of DIP funding estimated to be received by the Debtor, comprised of: (i) approximately $13.2 million, of funded DIP draws through September 20, 2024; (ii) approximately $9.7 million in incremental DIP draws; and (iii) use of approximately $0.6 million of the $1.0 million back-stop allowed for professional fees and expenses.

The Chapter 7 scenario assumes a Plan is not confirmed and therefore the final $2.5 million due upon confirmation is funded, nor does the estimated $0.6 million of the $1.0 million back stop.

It is important to note that this represents the principal only and does not include PIK interest or funding fees.

**M.      DIP Claims**

In the Chapter 11 scenario, the DIP Claims represent the total DIP Ending Balance including principal, PIK interest, funding fees, and $0.6 million of the $1.0 million back stop less the amounts that will be released pursuant to the Estate Party Settlement.

In the Chapter 7 scenario, DIP Claims will be lower because the final $2.5 million in funding due upon confirmation and the $0.6 million back stop are assumed to not be funded.

It is important to note that in the absence of advances made under the DIP Facility, the Chapter 7 trustee would still have to pay Chapter 11 administrative expenses for the same amount.

**N.      Plan Trusts' Professional Fees**

This line estimates the projected expenses associated with the Personal Injury Trust and the GUC Liquidating Trustee professional fees to be incurred after the Effective Date, as well as other wind down expenses necessary to discharge the duties and responsibilities of the respective Trusts.

These expected costs of $2.0 million for each of the GUC Trust and PI/WD Trust, respectively are estimated to be incurred in the Chapter 11 scenario in both the low and high scenarios.  However, the actual amounts could differ based on the length and complexity of the wind-down processes and could be higher or lower than the amounts assumed herein.

**O.      Post-Effective Date United States Trustee Fees**

These fees represent the statutory fees payable to the United States Trustee in the Chapter 11 scenario and are approximately 0.8% of total distributions estimated to be made to creditors.  No UST fees will be required in the Chapter 7 liquidation scenario.  Instead, the Chapter 7 trustee will be entitled to a fee of up to 3% for all distributions made from the estate.

**P.      Unclassified – Priority State Tax Claims**

This category includes approximately $302 thousand of state tax claims entitled to priority treatment under the Bankruptcy Code.

In the Chapter 11 scenario, all Priority State Tax Claims are estimated to receive 100% recovery in both the low and high scenarios, respectively.  To the extent all or a portion of any of these claims are disallowed or reduced, additional funds could be available for distribution to holders of General Unsecured Claims.

In the Chapter 7 scenario, the priority state tax claims will receive 0% recovery in the low-end scenario because there will not be sufficient funds on hand to pay such claims.

**Q.** **Class 1 – Other Priority Claims**

This category includes proofs of claim filed as "priority claims" in the approximate aggregate amount of $775 thousand, excluding the state and federal priority tax claims discussed above.

In the Chapter 11 scenario, all Other Priority Claims are estimated to receive 100% recovery.

**R.** **Class 2 – Other Secured Claims**

This category includes proofs of claims filed as "secured claims" in the approximate aggregate amount of $16.4 million. These proofs of claim include the following: (i) claims filed by a group of insurance companies purportedly secured by approximately $13.1 million cash deposits held by such insurance companies, but allocated to CHS TX, Inc. in the divisional merger (see KCC Claim Nos. 583 & 584; see also Docket No. 810); and (ii) claims filed by trade vendors purportedly secured by equipment in the possession or control of the Debtor.

The Plan Proponents do not believe that the insurance companies are entitled to any distribution from the estate because, among other things, the collateral purportedly securing such claims has been allocated to CHS TX, Inc. pursuant to the divisional merger. To the extent the Debtor still possess any equipment leased from or financed by a trade vendor, such equipment will be tendered back to such creditor. As a result, all of these "Other Secured Claims" have been zeroed out and removed from the Liquidation Analysis because the Plan Proponents do not believe any such creditors are entitled to a distribution from the cash proceeds available.

**S.** **Class 3 – Convenience Claims**

Convenience Claims represent any Claim that would otherwise be a General Unsecured Claim that is Allowed in the amount of $5,000 or less.

Proofs of claim filed in the approximately amount of $100,500 are assumed to receive 100% recovery in both the Chapter 11 low and high scenarios, and no recovery in the Chapter 7 low recovery scenarios.

**T.** **Class 4 / 5 – Non-Personal Injury Claims**

Proofs of claim filed in the approximate amount of $138.6 million. The Debtor and UCC estimates Non-Personal Injury Claims could be allowed in the range of $75.0 million-$100.0 million, excluding settlement party proof of claim amounts. Depending on the ultimate amounts Allowed, and all of the other factors discussed herein, these claims could recover between 24.4% and 44.0% under the Plan. Chapter 7 claims include settlement party proof of claim amounts.

9

**U.**     **Class 6 / 7 / 8 – Personal Injury Claims**

Proofs of claim filed in the approximate face amount of $1.087 billion.  The TCC values Personal Injury Claims in the range of $68.0 million-$112.3 million based on applying the proposed Trust Distribution Procedures to filed / pending claims. These claims could recover between 23.7% and 64.9% under the Plan.

**V.**     **Class 9 / 10 – Indirect Claims**

Proofs of claim filed in the approximately amount of $10.4 million.  As set forth in the Plan, these claims will receive the same treatment as provided under section 509 of the Bankruptcy Code, which provides for such claims to be subrogated to the claims that are paid, but subordinated until such claims are paid in full.