**Exhibit B**

**Form of PI/WD Trust Distribution Procedures**

**TEHUM CARE SERVICES, INC.**

**TRUST DISTRIBUTION PROCEDURES FOR PERSONAL INJURY CLAIMS**

**ARTICLE I**
**PURPOSE AND GENERAL GUIDELINES**

A.      **Purpose.**  The purpose of the Personal Injury Trust (or the "**Trust**") is to, among other things, (i) assume legal liability for Channeled PI/WD Trust Claims—*i.e.*, Channeled PI/WD Claim, which are referred to herein as "**Personal Injury Claims**" and Channeled Indirect PI/WD Claims, which are referred to herein as "**Indirect Claims**"—pursuant to the terms of the Plan, (ii) prosecute and assert the Retained Trust Causes of Action and the PI/WD Retained Trust Causes of Action, (iii) to hold, preserve, maximize, liquidate, and administer the PI/WD Trust Assets (the "**Trust Assets**") for the benefit of the beneficiaries of the Trust, (iv) liquidate the Trust Assets, (v) employ procedures to allow valid Trust Claims (as further set forth herein) in accordance with section 502 of the Bankruptcy Code and/or applicable law (each, an "**Allowed Personal Injury Claim**" or an "**Allowed Indirect Claim**"), (vi) determine an allowed liability amount for each Allowed Trust Claim (the "**Allowed Claim Amount**"), and (vii) process and direct payment of all Allowed Trust Claims.  These Trust Distribution Procedures (the "**TDPs**") are adopted pursuant to the PI/WD Trust Agreement (the "**Trust Agreement**") and have been approved as fair, equitable, and reasonable by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").  The TDPs are designed to provide fair, equitable, and substantially similar treatment for Allowed Trust Claims.  The TDPs provide the means for resolving all Trust Claims that were assumed by the Trust and for which the Debtor had or is alleged to have legal responsibility.  As set forth in the Trust Agreement, the PI/WD Trustee (the "**Trustee**") will implement and administer the TDPs, with the goals of securing the just, speedy, fair, reasonable, and cost-efficient determination of every Trust Claim, providing substantially similar treatment to holders of similar, legally valid and supported Allowed Trust Claims as set forth herein, and obtaining and maximizing the benefits of the Trust Assets.

B.      **General Principles.**  To achieve maximum fairness and efficiency, and recoveries for holders of Allowed Trust Claims, the TDPs are founded on the following principles:

1.      objective claim eligibility criteria;

2.      clear and reliable proof requirements;

3.      administrative transparency;

4.      a rigorous review and evidentiary process that requires the Trustee to determine and reach final determinations and to achieve Allowed Claim Amounts that are fair and reasonable;

5.      robust audit procedures to verify the submission and payment of valid Trust Claims; and

6.      independence of the Trust and the Trustee.

**C.**     **Payment of Allowed Personal Injury Claims and Insurance Recoveries.** Pursuant to the Plan, the Trust has assumed the legal liability for, and obligation to pay, Allowed Trust Claims.  The Trust Assets, including the proceeds of the assigned insurance rights, shall be used to fund distributions to Claimants who are determined by the Trustee to hold Allowed Personal Injury Claims under the TDP.  The amounts that certain Claimants who are determined by the Trustee to hold Allowed Trust Claims will be paid on account of their Allowed Trust Claims will depend on, among other things, the Trust's ability to liquidate and recover the proceeds of the assigned insurance rights and other causes of action.  The amount of any installment payments, initial payments, or payment percentages established under the TDPs or the Trust Agreement are not the equivalent of (i) any Claimant's Allowed Claim Amount or (ii) the right to payment that the holder of an Allowed Trust Claim has against the Debtor, as assumed by the Trust.  For example, if the Allowed Claim Amount of a Personal Injury Claim is $1 million and the Initial Payment Percentage is 10% (such that the Trust can afford to pay the Personal Injury Claimant $100,000 on account of the Personal Injury Claim), the Debtor's legal liability, or obligation to pay, shall be $1 million (*i.e.*, the Allowed Claim Amount) and shall not be the amount that the Trust can afford to pay the Personal Injury Claimant.

**D.**     **Interpretation.**  In the event of any ambiguity or conflict between the terms of the TDPs, the Trust Agreement, the Plan and the Confirmation Order, each document shall have controlling effect in the following rank order:  (1) the Confirmation Order, (2) the Plan, (3) the Trust Agreement, and (4) the TDPs.

## ARTICLE II
## DEFINITIONS AND RULES OF INTERPRETATION

**A.**     **Incorporation of Plan Definitions.**  Capitalized terms used but not defined in the TDPs have the meanings ascribed to them in the Plan or the Trust Agreement and such definitions are incorporated in the TDPs by reference.

**B.**     **Definitions.**  The following terms have the respective meanings set forth below:

1.     "**Acceptance and Release**" shall have the meaning set forth in ARTICLE VIII.D.

2.     "**ADR Procedures**" shall have the meaning set forth in ARTICLE IV.K.

3.     "**Allowed Claim Amount**" shall have the meaning set forth in ARTICLE I.A.

4.     "**Allowed Claim Notice**" shall have the meaning set forth in ARTICLE IV.I.

5.     "**Allowed Personal Injury Claim**" shall have the meaning set forth in ARTICLE I.A.

6.     "**Base Matrix Value**" shall mean the base case value for each tier of Personal Injury Type (labeled as such in the Claims Matrix and more specifically defined

and described in ARTICLE VI.D) to be used to value Personal Injury Claims and that may be identified in connection with the description of the Scaling Factors in ARTICLE VI.C.

7.      "**Basic Claim Submission**" shall mean the submission of Identifying Information to the Trust and the election to make or not make the Expedited Distribution Election.

8.      "**Channeled Indirect PI/WD Claim**" shall have the meaning ascribed to it in the Plan.

9.      "**Channeled PI/WD Claim**" shall have the meaning ascribed to it in the Plan.

10.     "**Channeled PI/WD Trust Claim**" shall have the meaning ascribed to it in the Plan.

11.     "**Claims Matrix**" shall mean (as specifically defined and described in ARTICLE VI.C and ARTICLE VI.D) a table scheduling the five tiers of Personal Injury Types, and identifying the Base Matrix Value, and Maximum Matrix Value for each tier.

12.     "**Claim Notice**" shall have the meaning set forth in ARTICLE IV.I.

13.     "**Claimant**" shall mean the holder of a Personal Injury Claim or the holder of an Indirect Claim.

14.     "**Claims Audit Program**" shall have the meaning set forth in ARTICLE IV.L.

15.     "**Disallowed Claim**" shall have the meaning set forth in ARTICLE IV.F.

16.     "**Disallowed Claim Notice**" shall have the meaning set forth in ARTICLE IV.H.

17.     "**Exigent Claim**" shall mean an Exigent Health Claim or an Exigent Hardship Claim.

18.     "**Exigent Hardship Claim**" shall mean a Personal Injury Claim that is compensable hereunder, for which the Trustee, in his or her sole discretion, determines that the claimant needs immediate financial assistance based on the claimant's expenses and all sources of available income.

19.     "**Exigent Health Claim**" shall mean a Personal Injury Claim for which the Personal Injury Claimant has provided a declaration or affidavit made under penalty of perjury by a physician who has examined the Personal Injury Claimant within one hundred and twenty (120) days of the declaration or affidavit in which the physician states that there is substantial medical doubt that the Personal Injury Claimant will survive beyond six (6) months from the date of the declaration or affidavit.

20. "**Expedited Distribution**" shall have the meaning set forth in ARTICLE V.A.

21. "**Expedited Distribution Election**" shall mean an irrevocable election made by an individual to receive an Expedited Distribution on account of a Personal Injury Claim.

22. "**FIFO**" shall mean "first-in-first-out" and refers to the impartial basis for establishing a sequence pursuant to which Personal Injury Claims shall be initially reviewed by the Trust.

23. "**FIFO Processing Queue**" shall mean the FIFO line-up on which the Trust initially reviews Trust Claims Submissions.

24. "**Final Determination**" shall have the meaning set forth in ARTICLE IV.J.

25. "**Identifying Information**" shall mean, with respect to the holder of a Trust Claim, the holder's: (a) name; (b) address; (c) social security number (if the holder has one); and (d) counsel serving as the holder's representative (if any) and such counsel's address.

26. "**Indirect Claim**" means a Channeled Indirect PI/WD Claim.

27. "**Indirect Claimant**" shall mean the holder of an Indirect Claim.

28. "**Indirect Claim Criteria**" shall have the meaning set forth in ARTICLE VII.A.

29. "**Initial Claims Filing Date**" shall mean the date on which the Trust first provides notice that it is able to accept Trust Claim Submissions.

30. "**Initial Payment Percentage**" shall have the meaning set forth in ARTICLE VIII.B.

31. "**Insured Lawsuit**" shall have the meaning set forth in ARTICLE IX.D.

32. "**Insured Personal Injury Claim**" shall have the meaning set forth in ARTICLE IX.A.

33. "**Maximum Matrix Values**" shall mean the value for each tier of Personal Injury Type (labeled as such in the Claims Matrix and more specifically defined and described in ARTICLE VI.D) that represents the maximum Allowed Claim Amount achievable for an Allowed Personal Injury Claim assigned to a given tier after applicable of the Scaling Factors described in ARTICLE VI.E.

34. "**Opt Out Return Election**" shall have the meaning set forth in ARTICLE IX.C.

4

35. "**Personal Injury Claim**" shall be a Channeled PI/WD Claim.

36. "**Personal Injury Claimant**" shall mean the holder of a Personal Injury Claim.

37. "**Personal Injury Claim Criteria**" shall have the meaning set forth in ARTICLE VI.A.

38. "**Personal Injury Types**" shall have the meaning set forth in ARTICLE VI.C.

39. "**Potentially Liable Party**" means any party that is potentially co-liable with the Trust for a Trust Claim, including governmental entities.  Potentially Liable Parties shall not include any Released Party.

40. "**Proposed Allowed Claim Amount**" shall have the meaning set forth in ARTICLE IV.I.

41. "**Reconsideration Request**" shall have the meaning set forth in ARTICLE IV.K.

42. "**Reconsideration Deadline**" shall have the meaning set forth in ARTICLE IV.K.

43. "**Released Parties**" shall have the meaning ascribed to it in the Plan.

44. "**Scaling Factors**" shall have the meaning set forth in ARTICLE VI.C.

45. "**Submitted Claim**" shall have the meaning set forth in ARTICLE IV.E.

46. "**Supplemental Payment Percentage**" shall have the meaning set forth in ARTICLE VIII.C.

47. "**TAC**" shall mean the Trust Advisory Committee that represents the interests of holders of Personal Injury Claims pursuant to the Plan and Trust Agreement.

48. "**Threshold Criteria**" shall have the meaning set forth in ARTICLE IV.D.

49. "**Trust Claim**" means a Channeled PI/WD Trust Claim or a Channeled Indirect PI/WD Claim.

50. "**Trust Claim Submission**" shall have the meaning set forth in ARTICLE IV.E.

51. "**Trust Claim Submission Date**" shall have the meaning set forth in ARTICLE IV.E.

**C.** **Interpretation; Application of Definitions and Rules of Construction.**  For purposes of the TDP, unless otherwise provided herein:  (1) whenever from the context it is

appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference to a person as a holder of a Claim includes that person's estate, successors, and assigns; (3) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the TDPs as a whole and not to any particular article, section, subsection, or clause; (4) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (5) any effectuating provisions of the TDPs may be reasonably interpreted by the Trustee in such a manner that is consistent with the overall purpose and intent of the TDPs without further notice to or action, order, or approval of the Bankruptcy Court; (6) the headings in the TDPs are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (7) in computing any period of time prescribed or allowed by the TDP, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply; (8) "or" is not exclusive; and (9) all provisions requiring the consent of a person shall be deemed to mean that such consent shall not be unreasonably withheld.

## ARTICLE III
## TDP ADMINISTRATION

**A.** **Administration.** Pursuant to the Plan and the Trust Agreement, the Trust and the TDPs shall be administered by the Trustee subject to the consultation and consent provisions applicable to the TAC.

**B.** **Powers and Obligations.** The powers and obligations of the Trustee, and the consultation and consent provisions applicable to the TAC are set forth in the Trust Agreement. For the avoidance of doubt, the TAC shall have no authority or ability to modify, reject, or influence any claim review or Allowed Claim Amount determination under the TDPs.

**C.** **Consent Procedures.** The Trustee shall obtain the consent of the TAC on any amendments to the TDPs pursuant to ARTICLE XI.A, and on such matters as are otherwise required below and in Section 5.14 of the Trust Agreement. Such consent shall not be unreasonably withheld, conditioned or delayed.

**D.** **Extension of Deadlines.** The Trustee with the consent of the TAC may extend any deadlines set forth in the TDPs.

## ARTICLE IV
## GENERAL TRUST PROVISIONS

**A.** **Confidentiality.** Documents submitted to the Trust by a Claimant are for the sole benefit of the Trust and not third parties or defendants. All submissions to the Trust by a Claimant, including Trust Claim Submission and any documents submitted therewith, shall be treated as made during settlement discussions between the Claimant and the Trust and are intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including those directly applicable to settlement discussions. The Trust will preserve the confidentiality of such Claimant submissions and shall disclose the contents thereof only to such persons as authorized by the Claimant, the TDPs, or in response to a valid subpoena of such materials, seeking

6

non-privileged, non-mediation protected materials, issued by the Bankruptcy Court, the United States District Court for the Southern District of Texas, or any other court of competent jurisdiction.  The Trust shall provide counsel for the Claimant, or if unrepresented, the Personal Injury Claimant, with a copy of any such subpoena immediately upon being served.  In such a case, the Trust shall provide notice to counsel for the Claimant, or if unrepresented, the Personal Injury Claimant, to allow such party sufficient time to object to the production.  The Trust shall on its own initiative or upon request of the Claimant or Claimants in question take all necessary and appropriate steps to preserve all privileges.  Notwithstanding anything in the foregoing to the contrary, the Trust may disclose information, documents, or other materials reasonably necessary in the Trust's judgment to (i) one or more consultants and professionals (including a third party claims processing firm) retained by the Trust to assist in the administration of the Trust Claims, and (ii) preserve, obtain, litigate, resolve, or settle insurance coverage, or pursue any other claims transferred or assigned to the Trust by the holder of the Trust Claim or operation of the Plan; *provided*, *however*, that the Trust shall take all steps reasonably feasible to preserve the further confidentiality of such information, documents, and materials.

**B.**     **FIFO Claims Process Queuing and Exigent Claims.**   Except as otherwise provided herein with respect to Exigent Claims, the Trust shall commence review of all Trust Claim Submissions for processing purposes on a FIFO basis, provided, however, that nothing herein shall require the Trust to complete the review of any Trust Claim prior to reviewing and paying any subsequently filed Trust Claims.  A Claimant's position in the FIFO Processing Queue shall be determined as of the Claimant's Trust Claim Submission Date.  A Claimant that seeks recovery on account of an Exigent Claim shall be moved in front of the FIFO Processing Queue no matter what the order of processing otherwise would have been under the TDPs.**Statute of**

**Limitations or Repose.**  The statute of limitations and the choice of law determination applicable to claims against the Trust shall be determined by reference to the tort system where a claim was pending on the Petition Date, or where such a claim could have been timely and properly filed as asserted by the Claimant.  To be considered timely submitted and eligible for compensation, all Trust Claims filed against the Trust must either (a) in the case of claims first filed in the tort system against the Debtor prior to the Petition Date, have been filed prior to the applicable federal or state statute of limitations and repose that was in effect at the time of the filing of the claim in the tort system, and such claim must not have been dismissed prior to the Petition Date; or (b) in the case of claims not filed against the Debtor in the tort system prior to the Petition Date, have been filed with the Trust prior to the applicable federal or state statute of limitations and repose that was in effect at the time of the filing of a Basic Claim Submission with the Trust.  For the purpose of applying the TDPs, the running of the applicable statute of limitations or repose shall be tolled as of the earliest of:  (a) the actual filing of a claim against the Debtor prior to the Petition Date in the tort system; (b) the date specified by agreement or otherwise among the Debtor and/or the Trust, on the one hand, and the applicable claimant, on the other hand, (or, if none, the date of the agreement) in the case of tolling prior to the Petition Date by an agreement or otherwise, provided such tolling was still in effect on the Petition Date; or (c) the Petition Date.  The tolling as of the Petition Date shall run and exhaust as of 30 days after the Effective Date of the Plan.  If a Trust Claim meets any of the tolling provisions in the foregoing sentence and the claim was not barred by the applicable federal or state statute of limitations or repose at the time of the relevant tolling event, it shall be treated as timely filed if a Basic Claim Submission in respect of such claim is filed with the Trust within sixth (60) days after the Initial Claims Filing Date.

   **D.**    **Threshold Eligibility.** To be eligible to potentially receive compensation from the Trust on account of a Trust Claim, each Claimant must:

    (1)    have timely filed, or have been deemed to have timely filed, a Proof of Claim with the Bankruptcy Court;

    (2)    have personally signed his or her Proof of Claim attesting to the truth of its contents under penalty of perjury, or supplements his or her Proof of Claim to so provide such verification;

    (3)    have filed a Proof of Claim that is free of material defect such that the Trustee is able to determine from the Proof of Claim that Trust Claim is *prima facie* valid and is not barred by any applicable federal or state statute of limitations or repose; and

    (4)    have not previously had his or her Trust Claim dismissed on the merits or have received payments on his or her Trust Claim so that no recovery from the Trust would be permissible under the TDP, including ARTICLE X.

Trust Claims asserted by Claimants who do not satisfy this threshold eligibility criteria (the "**Threshold Criteria**") shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H, and shall not be paid by the Trust.

   **E.**    **Trust Claim Submissions.** Other than Personal Injury Claimants who make the Expedited Distribution Election, each Claimant who elects to pursue recovery from the Trust pursuant to the TDPs must submit his or her Trust Claim for settlement, valuation, and allowance in the manner and on the forms (including via electronic portal) prescribed by the Trust (each, a "**Trust Claim Submission**"). To properly make a Trust Claim Submission, each submitting Claimant must (i) complete a questionnaire; (ii) produce all records and documents requested by the Trustee; and (iii) consent to and cooperate in any written or oral examinations requested by the Trustee. Additional information that must be submitted for Personal Injury Claims as a part of the Trust Claim Submission is set forth in ARTICLE VI.B, and additional information that must be submitted for Indirect Claims as part of the Trust Claims Submission is set forth in ARTICLE VII.B. The date on which a Claimant submits the Trust Claim Submission to the Trust shall be the "**Trust Claim Submission Date**." Other than an Expedited Distribution, no recovery shall be provided to a Claimant who does not submit a Trust Claim Submission and his or her claim shall be deemed by the Trustee to be a Disallowed Claim after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H. To complete the evaluation of each Trust Claim submitted through a Trust Claim Submission (each a "**Submitted Claim**"), the Trust also may, but is not required to, obtain additional information or supplemental information from the Claimant or from other parties. Notwithstanding anything contained in the TDPs, the Trustee may waive any requirement to provide records or documents if doing so would not impair the Trust's ability to fully evaluate a Trust Claim in accordance with the TDPs and requiring such records or documents would constitute an undue hardship for the Claimant.

**F.** **Claims Evaluation.** The Trust shall evaluate each Trust Claim Submission individually and will follow the uniform procedures and guidelines set forth herein to determine, based on the evidence obtained by the Trust, whether a Submitted Claim should be allowed. After a review of the documentation provided by the Claimant in his or her Trust Claim Submission and any follow-up materials, the Trust will determine the Trust Claim to be either (i) legally valid and an Allowed Personal Injury Claim or an Allowed Indirect Claim or (ii) legally invalid and ineligible for compensation (a "**Disallowed Claim**").

**G.** **Deficiency Notices.** If the Trust Claim Submission does not include evidence that is presumptively reliable, or the Trust otherwise determines that additional evidence is reasonably required to establish the validity or amount of a Trust Claim, the Trust may issue deficiency notices to Claimants identifying the information requested by the Trust to cure the deficiency. The failure to provide information requested by the Trust shall be grounds for the Trustee to determine that a claim is a Disallowed Claim.

**H.** **Disallowed Claims.** If the Trustee determines that a Submitted Claim is a Disallowed Claim, the Trustee shall provide written notice of his or her determination to the relevant Claimant (an "**Disallowed Claim Notice**"). If the Trustee determines that a Submitted Claim is a Disallowed Claim, the Trustee will not perform the Allowed Trust Claim valuation analysis described herein.

**I.** **Allowed Trust Claims.** If the Trustee determines that a Submitted Claim is an Allowed Trust Claim, the Trustee shall utilize the procedures described in ARTICLE VI.C to determine the value of Personal Injury Claims and the procedures described in ARTICLE VII.C to determine the value for Indirect Claims (each, a "**Proposed Allowed Claim Amount**"), and provide written notice of allowance and the Proposed Allowed Claim Amount to the Claimant (an "**Allowed Claim Notice**" and together with the Disallowed Claim Notice, a "**Claim Notice**") as set forth in ARTICLE IV.J below. The Trustee shall have the right to develop additional procedures necessary to determine the value of any Trust Claims that are not subject to ARTICLE VI or ARTICLE VII so that they are valued in accordance with state law or, if applicable, other non-bankruptcy law and result in values consistent with values ascribed to other Trust Claims under the TDPs.

**J.** **Claims Determination.** If the Claimant accepts the Proposed Allowed Claim Amount in the Allowed Claim Notice or the reconsideration process set forth hereinafter in ARTICLE IV.K has been exhausted, the Proposed Allowed Claim Amount shall become the Allowed Claim Amount for such Trust Claim, operating as a final settlement for such Trust Claim and a determination of the Debtor's liability for such Trust Claim (a "**Final Determination**"), and the holder of such Allowed Trust Claim shall be approved for payment in accordance with ARTICLE VIII.A, subject to the Claimant executing the Acceptance and Release set forth in ARTICLE VIII.D.

**K.** **ADR Procedures for Reconsideration Requests.** A Claimant may make a request for reconsideration of (i) a determination that his or her Submitted Claim is ineligible for compensation, or (ii) the valuation of the Submitted Claim by the Trust (a "**Reconsideration Request**") within ninety (90) days of receiving a Disallowed Claim Notice or an Allowed Claim Notice (the "**Reconsideration Deadline**"). Any Claimant who fails to submit a Reconsideration

9

Request to the Trust by the Reconsideration Deadline shall be deemed to accept the disallowance of the Trust Claim or the Proposed Allowed Claim Amount. The Trustee shall develop non-binding arbitration dispute resolution procedures (the "**ADR Procedures**") to resolve Reconsideration Requests. Disputes over the validity of a Trust Claim shall be eligible for reconsideration and resolution under the ADR Procedures. The Claimant may submit further evidence in support of the Submitted Claim with the Reconsideration Request. The arbitrators will reconsider the Submitted Claim—including all new information provided by the Claimant in the Reconsideration Request—and will have the discretion to maintain the prior determination or determine that the Submitted Claim in question is an Allowed Trust Claim or should receive a new Proposed Allowed Claim Amount. If the arbitrators determine upon reconsideration that a Submitted Claim is an Allowed Trust Claim and/or should receive a new Proposed Allowed Claim Amount, the arbitrators will deliver their recommendation to the Trustee. The Trustee is not bound by the arbitrators' determination. The Trustee may accept or reject the arbitrators' recommendation. If the Trustee rejects the arbitrators' recommendation for any reason, the Trust's earlier allowance determination and/or Proposed Allowed Claim Amount shall stand, and the Trust will provide a Claim Notice to the Claimant of such result. In any event, the Allowed Claim Amount, if any, set by the Trustee at the conclusion of the ADR Procedures will constitute a Final Determination and the holder of such Allowed Trust Claim shall be approved for payment in accordance with ARTICLE VIII.A, subject to the Claimant executing the Acceptance and Release set forth in ARTICLE VIII.D. In no event will a Trust Claim that has completed the reconsideration process be subject to any further reconsideration.

L.      **Claims Audit Program.** The Trustee may institute procedures for auditing the reliability of evidence submitted to the Trust involving Trust Claims for which the Trust has legal responsibility (the "**Claims Audit Program**"). The Trustee may utilize the services of a third-party claims processing facility to assist in the evaluation of Trust Claims submitted to the Trust. The filing of any Trust Claim with the Trust, regardless of the treatment sought, shall constitute consent for the Trust to release to any entity overseeing the Claims Audit Program all information submitted to the Trust on behalf of the Claimant and to disclose the status of any such Trust Claim and the amount and date of any payments on account of such Trust Claim. Any Claimant subject to the Claims Audit Program shall cooperate and provide the Trust with non-privileged information reasonably requested by the Trust and, if requested by the Trust, authorization to obtain information such Claimant has submitted to any other trusts or third parties relating to such Claimant's Trust Claim. If an audit reveals that fraudulent information has been provided to the Trust, the Trust may penalize any claimant or claimant's attorney by disallowing the Trust Claim or by other means including requiring the return of any payments received from the Trust and requiring the claimant to pay the costs associated with the audit, as well as any other appropriate action or sanction.

M.      **Medical Liens.** The Trust may, but is not required, to account for all known outstanding governmental medical liens, if any, currently owed by the Claimant. The resolution of all such liens shall be an obligation of the Claimant although the Trust may determine to offset to any payment on account of a Trust Claim to resolve any such liens. The Trustee may retain the services of a lien resolution administrator to identify, resolve, and satisfy, in accordance with applicable law, certain Claimant governmental repayment obligations, including but not limited to, Medicare (Parts A and B), Medicaid, and other governmental liens.

**ARTICLE V**
**EXPEDITED DISTRIBUTIONS**

A.    **Expedited Payment Criteria.**  A Personal Injury Claimant who meets the following criteria may elect to resolve his or her Personal Injury Claim for an expedited distribution of $5,000 (the "**Expedited Distribution**"):  (i) Personal Injury Claimant made an Expedited Distribution Election in his or her Basic Claim Submission to the Trust or otherwise in accordance with the Plan and Confirmation Order; and (ii) the Personal Injury Claimant satisfies the Threshold Criteria.

B.    **Process and Payment of Expedited Distributions.**  Personal Injury Claimants who have elected to receive the Expedited Distribution and who met the Threshold Criteria, shall be entitled to receive their Expedited Payment upon executing an appropriate release.  A Personal Injury Claimant who elects to receive the Expedited Distribution shall have no other remedies with respect to his or her Personal Injury Claim against the Trust and will not be eligible to receive any further distribution on account of their Personal Injury Claim from the Trust.

**ARTICLE VI**
**CLAIMS ALLOWANCE PROCESS FOR PERSONAL INJURY CLAIMS**

A.    **General Criteria for Evaluating Submitted Claims.**  In addition to satisfying the Threshold Criteria, to be eligible to receive compensation from the Trust on account of a Personal Injury Claim, each Personal Injury Claimant must have a Personal Injury Claim against the Debtor that is (i) valid under applicable state or federal law, and (ii) not subject to (y) disallowance under section 502 of the Bankruptcy Code, including subsection (b) thereof, or (z) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law.  The foregoing requirements are herein referred to as the "**Personal Injury Claim Criteria.**"  Personal Injury Claims asserted by Personal Injury Claimants who do not satisfy the Personal Injury Claim Criteria shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H, and shall not be paid by the Trust.

B.    **Trust Claim Submissions for Personal Injury Claims.**  To properly make a Trust Claim Submission, each submitting Personal Injury Claimant, in addition to completing and filing a Basic Claim Submission with the Trust, must provide:

(i)    **Medical Records**.  Medical records or other medical evidence that contain information sufficient to support a diagnosis or treatment of any alleged injury for which the Personal Injury Claimant seeks compensation.

(ii)    **Description of Injury**.  A written narrative or an audio or video recording detailing the Personal Injury Claimant's injury or treatment, including a timeline of such injury or treatment.  This may be provided by an attorney, personal representative, or family member for Personal Injury Claims involving wrongful death.

(iii)    **Location of Incarceration**.  Evidence sufficient to show that the Personal Injury Claimant was incarcerate at one or more facilities which the Debtor (or its predecessor) operated and provided medical services and the

11

approximate starting and ending dates (where applicable) of incarceration at each facility.

(iv)   **Wrongful Death**.  To the extent that the submission involves a Personal Injury Claimant who is deceased, the decedent's death certificate or a medical record providing proof of death.

The date on which the foregoing is submitted to the Trust by a Personal Injury Claimant shall be the Trust Claim Submission Date for the applicable Personal Injury Claim.  The Trustee may order medical records, death certificates, or obtain documents from third parties, including in circumstances where the Personal Injury Claimant does not have legal representation.

C.     **Valuation of Allowed Personal Injury Claims.**  If a Personal Injury Claimant has satisfied the Personal Injury Claim Criteria and has submitted the required Trust Claims Submission, then it shall have an Allowed Personal Injury Claim and his or her Personal Injury Claim shall be valued by the Trust in accordance with the claims matrix hereinafter (the "**Claims Matrix**") that schedules five types of personal injury types (the "**Personal Injury Types**") and designates for each Personal Injury Type a Base Matrix Value, a Maximum Matrix Value, and certain scaling factors (the "**Scaling Factors**") identified hereinafter to apply to the Base Matrix Values to determine the liquidated values for certain unliquidated Personal Injury Claims.  The Personal Injury Types, Scaling Factors, Base Matrix Values, and Maximum Matrix Values that are set forth in the Matrix have all been selected and derived with the intention of achieving a fair and reasonable Personal Injury Claim valuation range considering the best available information, considering the settlement, verdict and/or judgments that Personal Injury Claimants would receive in the tort system absent the bankruptcy.  The Trustee shall utilize the Claims Matrix and Scaling Factors as the basis to determine a Proposed Allowed Claim Amount for each Allowed Personal Injury Claim.  The Proposed Allowed Claim Amount for an Allowed Personal Injury Claim shall be deemed to be the Debtor's liability for such Personal Injury Claim (*i.e.*, the claimant's right to payment for his or her Personal Injury Claim), irrespective of how much the holder of such Personal Injury Claim receives from the Trust pursuant to the payment provisions set forth in ARTICLE VIII.  In no circumstance shall the amount of the Debtor's legal obligation to pay any Personal Injury Claim be determined to be any payment percentages hereunder or under the Trust Agreement (rather than the liquidated value of such Personal Injury Claim as determined under the TDP).

D.     **Claims Matrix.**  The Claims Matrix establishes five tiers of Personal Injury Type and provides the range of potential Allowed Claim Amounts assignable to an Allowed Personal Injury Claim in each tier.  The first two columns of the Claims Matrix delineate the five possible tiers to which an Allowed Personal Injury Claim can be assigned based on the nature of the Personal Injury.  The Base Matrix value column for each tier represents the default Allowed Claim Amount for an Allowed Personal Injury Claim assigned to a given tier (the "**Base Matrix Value**").  The maximum Matrix value column for each tier represents the maximum Allowed Claim Amount for an Allowed Personal Injury Claim assigned to a given tier after application of the Scaling Factors described in ARTICLE VI.E (the "**Maximum Matrix Value**").   The ultimate distribution(s) to the holder of an Allowed Personal Injury Claim that has received a Final Determination may vary upward or downward from the holder's Allowed Claim Amount based on the payment percentages determined by the Trustee.  If an Allowed Personal Injury Claim

would fall into more than one tier, it will be placed in the highest applicable tier.  A Personal Injury Claimant cannot have multiple Allowed Personal Injury Claims assigned to different tiers.  To the extent that a Personal Injury Claim does not fit within any of the five tiers, the Trustee, at his or her discretion, will determine the tier.

| Tier | Type of Personal Injury | Base Matrix Value | Maximum Matrix Value |
|---|---|---|---|
| 1 | Wrongful Death | $1,200,000 | $1,597,200 |
| 2 | Amputation (*e.g.*, Amputation of Limb or Loss of Testicle), Complete or Significant Loss of Mobility (*e.g.*, Paralysis of Arms & Legs, Quadriplegia, Untreated Bone Breaks), Neurological and Cognitive Issues (*e.g.*, Stroke, Parkinson's), Cancer (*e.g.*, Failure to Treat/Diagnose Various Cancers), Organ Rupture / Failure (*e.g.*, Colon Rupture, Renal Failure), Sexual Abuse or Assault. | $600,000 | $798,600 |
| 3 | Infections and Immunological Issues (*e.g.*, Failure to Treat Resulting in Fibrosis, Meningitis, or Other), Cardiac and Vascular Problems (*e.g.*, Heart Attack, Heart Damage), Extreme Pain and Suffering (*e.g.*, Untreated Bowel Incontinence, Untreated Withdrawal). | $200,000 | $266,200 |
| 4 | Pain and Suffering (*e.g.*, Untreated Pain, Emotional Distress), Digestive and Abdominal Issues (*e.g.*, Untreated Crohns Disease, Hernia, Enlarged Prostate), Sensory Impairment (*e.g.*, Complete or Incomplete Loss of Vision, Hearing), Injuries and Traumas (*e.g.*, Bone Breaks, Joint Injuries). | $50,000 | $66,550 |
| 5 | Other Injuries (*e.g.*, COVID-19). | $5,000 | $5,000 |

   **E.**  <u>**Scaling Factors.**</u>  After the Trustee has assigned an Allowed Personal Injury Claim to one of the five tiers in the Claims Matrix, the Trustee may, in his discretion, adjust the Proposed Allowed Claim amount upward through the application of the following Scaling Factors:

(i) **Nature and Circumstances of Personal Injury**.  To account for particularly severe personal injury or aggravating circumstances, the Trustee may assign a Scaling Factor of up to 1.1 to each Allowed Personal Injury Claim.

(ii) **Impact of Personal Injury**.  To account for the particularly severe impact of the alleged personal injury on the Personal Injury Claimant's mental health, physical health, inter-personal relationships, vocational capacity or success, the Trustee may assign a Scaling Factor of up to 1.1.

(iii) **Substantial Medical Expenses**.  To account for Personal Injury Claims that result in substantial out-of-pocket medical expenses for which the Personal Injury Claimant has not received and does not expect to receive reimbursement, the Trustee may assign a Scaling Factor of up to 1.1.

The Base Matrix Values already provides for the base case scenario of a victim of personal injury who suffered the typical level of personal injury within the tier to which the Allowed Personal Injury Claim was assigned.  By default, the value of each scaling factor is one (1), meaning that in the absence of the application of the scaling factor, the Base Matrix Value assigned to a Claim is not affected by that factor.  In contrast, if the Settlement Trustee determines that a particular scaling factor as applied to a given Allowed Personal Injury Claim is 1.1, the Proposed Allowed Claim Amount for the Allowed Personal Injury Claim will be increased by 10%, the result of multiplying the Base Matrix Value of the Allowed Personal Injury Claim by 1.1.  The combined effect of all scaling factors is determined by multiplying the scaling factors together then multiplying the result by the Base Matrix Value of the Allowed Personal Injury Claim.  By way of example, if an Allowed Personal Injury Claim is determined by the Trustee to be a tier 2 claim (Base Matrix Value of $600,000) with a Scaling Factor of 1.1 for the nature and circumstances of the Personal Injury, and a Scaling Factor of 1.1 for the impact of the Personal Injury, the Proposed Allowed Claim Amount for the Allowed Personal Injury Claim would be calculated as $600,000 x 1.1 x 1.1 = $726,000.

F.    **Liquidated Judgments.**  Notwithstanding the process of valuing Allowed Personal Injury Claims set forth in this ARTICLE VI, if (1) prior to the Effective Date an Allowed Personal Injury Claim was liquidated by a judgment of a court of competent jurisdiction that has not been reversed or vacated on appeal, (2) such judgment is not secured by a bond or other collateral such that the judgment can be satisfied by a source other than the Trust, and (3) the holder of such Allowed Personal Injury Claim did not elect to Opt Out under Article [●] of the Plan, then the Proposed Allowed Claim Amount shall be determined in accordance with the TDPs, provided, however, that if the amount of the judgment is below the Maximum Matrix Value for the applicable tier of injury or the Personal Injury Claimant agrees to voluntarily reduce his or her judgment to the Maximum Matrix Value for the applicable tier of injury, the Trustee may adopt the judgment amount as the Proposed Allowed Claim Amount.

G.    **Disputes Involving Personal Injury Claims.**  A Personal Injury Claimant may make a request for reconsideration under ARTICLE IV.K.

## ARTICLE VII
## INDIRECT CLAIMS

A.   **Indirect Claim Eligibility Criteria.**  In addition to the threshold eligibility criteria for Trust Claims set forth in ARTICLE IV.A, to be eligible to receive compensation from the Trust on account of an Indirect Claim, each Indirect Claimant must:

(i)      have a valid Indirect Claim against the Debtor that is (a) valid under applicable state or federal law, and (b) not subject to (y) disallowance under section 502 of the Bankruptcy Code, including subsection (b) thereof, or (z) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law; and

(ii)     must establish to the Trust's satisfaction that:

(a)      such Indirect Claimant has paid in full the liability and/or obligation of the Trust to a Personal Injury Claimant to whom the Trust would otherwise have had a liability or obligation under the TDPs (and which has not been paid by the Trust);

(b)      the Indirect Claim is not otherwise subject to a valid defense; and

(c)      the Personal Injury Claimant and the Indirect Claimant have or will have forever and fully released the Trust in respect of the Indirect Claim.

The foregoing requirements are herein referred to as the "**Indirect Claim Criteria.**"  Indirect Claims asserted by Indirect Claimants who do not satisfy the Indirect Claim Criteria shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H, and shall not be paid by the Trust.

B.   **Indirect Claimant Trust Claim Submission.**  To properly make a Trust Claim Submission, each submitting Indirect Claimant must, in addition to completing and filing a Basic Claim Submission with the Trust, submit documents sufficient to establish to the Trust's satisfaction that the Indirect Claimant satisfies the Indirect Claim Criteria.  The Trust may develop any additional claim forms for Indirect Claimants so that appropriate documentation is provided by each Indirect Claimant to substantiate and pay Indirect Claims.  The date on which the foregoing is submitted to the Trust by an Indirect Claimant shall be the Trust Claim Submission Date for the applicable Indirect Claim.

C.   **Allowance of Indirect Claims.**  If an Indirect Claimant has satisfied the Indirect Claim Criteria and has submitted the required Trust Claims Submission, then it shall have an Allowed Personal Injury Claim and its Indirect Claim shall be valued by the Trust in accordance with applicable law; *provided*, *however*, no Indirect Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has paid to the related Personal Injury Claimant in respect of such claim for which the Trust would have liability, and in no event shall any Indirect Claim exceed the Allowed Claim Amount of the related Personal Injury Claim as determined under the TDPs.  In any case where the Indirect Claimant has satisfied the claim of a Personal Injury

15

Claimant against the Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain a release for the benefit of the Trust substantially in the form and substance of the release provided in Exhibit 1-2.  If the Indirect Claimant can show that it has paid such liability or obligation of the Trust to a Personal Injury Claimant and the Trust has not already paid the Personal Injury Claimant, and the Indirect Claimant provides a release of the Trust pursuant to a document substantially in the form and substance of the release provided in Exhibit 1-2 for the Personal Injury Claim, then the Indirect Claim may be allowable pursuant to the procedures described herein.  In no event shall any Indirect Claimant have any rights against the Trust superior to the rights that the Personal Injury Claimant to whose claim the Indirect Claim relates would have against the Trust under applicable law and the TDPs, including any rights with respect to timing, amount, priority, or manner of payment.

D.       **Disputes Involving Indirect Claims.**  An Indirect Claimant may make a request for reconsideration under ARTICLE IV.K.

E.       **Offset.**  The liquidated value of any Indirect Claim paid by the Trust shall be treated as an offset to or reduction of the Allowed Claim Amount of any related Personal Injury Claim that has been or will be submitted to the Trust.

## ARTICLE VIII
## PAYMENT OF FINAL DETERMINATION

A.       **Payment Upon Final Determination.**  Only after the Trustee has established an Initial Payment Percentage in accordance with Section [●] of the Trust Agreement, then once there is a Final Determination of a Trust Claim pursuant to pursuant to ARTICLE IV.J (based on a final settlement reached in accordance with ARTICLE VI and/or ARTICLE VII), will the Claimant receive a payment of such Final Determination based on the Payment Percentage then in effect as described in ARTICLE VIII.B and ARTICLE VIII.C.

B.       **Initial Payment Percentage.**  After there is a Final Determination of the Trust Claim, the Trust shall pay an initial distribution (the "**Initial Distribution**") based on the Initial Payment Percentage established by the Trustee in accordance with the Trust Agreement.

C.       **Supplemental Payment Percentage.**  When the Trustee determines that the then-current estimates of the Trust's assets and its liabilities, as well as the then-estimated value of then-pending Trust Claims, warrant additional distributions on account of the Final Determinations, the Trustee shall set a supplemental payment percentage in accordance with the Trust Agreement (the "**Supplemental Payment Percentage**").  Such Supplemental Payment Percentages shall be applied to all Final Determinations that became final prior to the establishment of such Supplemental Payment Percentage.  Claimants whose Trust Claim becomes a Final Determination after a Supplemental Payment Percentage is set shall receive an Initial Distribution equal to the then-existing aggregate payment percentage.  For the avoidance of doubt, the Allowed Claim Amount of each Allowed Trust Claim after Final Determination shall be deemed to be the Debtor's liability for such Allowed Trust Claim irrespective of how much the holder of such Trust Claim actually receives from the Trust pursuant to the payment provisions set forth in this ARTICLE VIII.  For example, if the Allowed Claim Amount for an Allowed Personal Injury Claim that has received a Final Determination is $600,000, even if the Trust distributes less than $600,000 to the

16

Personal Injury Claimant on account of such Allowed Personal Injury Claim based on application of the Initial Payment Percentage and any Subsequent Payment Percentage(s), the Allowed Claim Amount for the Personal Injury Claim is still $600,000.

        **D.**      **Acceptance and Release.**  For an Allowed Trust Claim to receive payment from the Trust, the Claimant must submit, as a precondition to receiving such payment from the Trust, an executed acceptance and release (the "**Acceptance and Release**"), which shall include a release of the Trust, the Trustee, the TAC, and each of their respective Representatives.  The Acceptance and Release shall be in the form attached hereto as Exhibit 1-1 (Expedited Distributions), Exhibit 1-2 (Personal Injury Claims), and Exhibit 1-3 (Indirect Claims).  The Acceptance and Release shall be available for completion electronically and may be executed by the Claimant or his or her representative through DocuSign or a similar authorized electronic signature program, or such other simplified and expedient means as the Trust may adopt.

**ARTICLE IX**
**INSURANCE RIGHTS AND RECOVERIES**

        **A.**      **Rights Against Insurance Companies.**  Pursuant to the Plan, the Trust has received the Debtor's rights and obligations under the Insurance Policies.  For any Personal Injury Claim that the Trust determines is an Allowed Personal Injury Claim, the Trust will determine, based on the relevant Trust Claim Submission and any other information submitted in connection with that submission and in the materials whether any Insurance Company issued coverage that is available to respond to such Personal Injury Claim (an "**Insured Personal Injury Claim**").  The Trust may determine that multiple Insurance Companies have responsibility for an Insured Personal Injury Claim.  The Trust shall seek reimbursement for each Insured Personal Injury Claim that is an Insured Personal Injury Claim, including the Proposed Allowed Claim Amount, from the applicable Insurance Company(ies) pursuant to the Insurance Policies and applicable law, subject to the Trustee's discretion as to the manner and extent of efforts to obtain insurance coverage that is economically reasonable.  The Trust shall have the ability to exercise all the rights and interests in the Insurance Policies assigned to the Trust as set forth in the Plan, including the right to resolve any disputes with an Insurance Company regarding its obligation to pay some or all of an Insured Personal Injury Claim, and to enter into agreements with any Insurance Company.  The Trust will have the ability to request further information from Personal Injury Claimants in connection with seeking reimbursement for Insured Personal Injury Claims.  To the extent that the Trustee deems it advisable or beneficial, the Trustee may resolve an Insurance Company's potential liability for multiple Insured Personal Injury Claims or all Insured Personal Injury Claims at one time for an aggregate settlement amount.

        **B.**      **Insurance Recoveries.**  Amounts recovered from an Insurance Company in satisfaction of an Insured Personal Injury Claim shall be allocated as follows:  *first*, to the payment of any professional fees and expenses or contingency fees that were incurred by the Trust in the course of pursuing the recovery; *second*, to the Personal Injury Claimant whose Insured Personal Injury Claim resulted in the recovery to the extent necessary to provide for the full payment of the Allowed Claim Amount of such Personal Injury Claim; and *third*, after such Personal Injury Claimant has received the full payment of the Allowed Claim Amount of such Personal Injury Claim, such recoveries shall be treated as Trust Assets generally available to pay Trust expenses or to be distributed generally to holders of Allowed Trust Claims.  If the Trustee has elected to

17

resolve an Insurance Company's potential liability for multiple Insured Personal Injury Claims or all Insured Personal Injury Claims at one time for an aggregate settlement amount, the Trustee will allocate the proceeds recovered as follows: *first*, to the payment of any professional fees and expenses or contingency fees that were incurred by the Trust in the course of pursuing the recovery and then; *second*, in a reasonable manner, to each of the Personal Injury Claimants whose Insured Personal Injury Claims supported the aggregate claim against the Insurance Company resulting in the aggregate resolution.

        **C.**      **Opt Out Claimants.**  Personal Injury Claimants who elect to "Opt Out" to the tort system under the Plan and also elect to limit their recovery in the tort system to available insurance coverage, may elect to return to the Trust and have their Personal Injury Claims evaluated and paid hereunder as if such Personal Injury Claimant had not elected to "Opt Out."  Each such Personal Injury Claimant shall automatically be deemed to return to the Trust on the ninetieth (90th) day following the Effective Date unless he or she provides written notice to the Trust that he or she intends to remain an Opt Out for purposes of pursuing insurance recoveries in the tort system. Personal Injury Claimants who elect to remain in the tort system for the purpose of pursuing insurance recoveries after this deadline may elect to return to the Trust (an "**Opt Out Return Election**") if such Personal Injury Claimant can show the following:  (1) the Personal Injury Claimant timely submitted a Basic Claim Submission to the Trust and indicated that the Personal Injury Claimant had elected to Opt Out and pursue available insurance coverage; (2) the Personal Injury Claimant satisfies factors One through Three of the Threshold Criteria; (3) the Personal Injury Claimant's claim was not dismissed or the subject of an adjudication of no liability or no damages; and (4) the Personal Injury Claimant believes that he or she will be unable to obtain an insurance recovery that is greater than the payment such Personal Injury Claimant would likely receive an account of his or her Allowed Personal Injury Claim as determined under the TDPs due to, *inter alia*, the insurance coverage available to pay the liquidated Personal Injury Claim has been fully or partially exhausted.  An Opt Out Return Election must be exercised within three (3) years from the Initial Claims Filing Date.

        **D.**      **Tender to Insurance Company for Opt Outs.**  The Personal Injury Claimant may assert its Personal Injury Claim against the Trust as if the Personal Injury Claimant were asserting such claim against the Debtor and the discharge in the Plan had not been issued.  The Personal Injury Claimant may name any person or entity that is not a Released Party to the extent permitted by applicable law.  If the Personal Injury Claimant is authorized to file a lawsuit against the Trust under the Plan, the Trustee shall determine whether any Insurance Company issued coverage that is available to respond to such Personal Injury Claim (an "**Insured Lawsuit**").  The Trustee shall provide notice to and seek defense from each Insurance Company that the Trustee determines may have an obligation to provide coverage in accordance with the terms of each applicable Insurance Policy.  The Trust shall have no obligation to appear and defend an Insured Lawsuit if the applicable Insurance Company refuses to cover any and/or all defense costs.  The Trust shall have no obligation to satisfy any Insurance Policy's deductible or self-insured retention per claim or in the aggregate.  Any Insured Lawsuit must be filed by the Personal Injury Claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit.  Pursuant to the Plan, a Personal Injury Claimant who limits their recovery in the tort system with respect to the Debtor or any Released Party to available insurance coverage shall not be entitled to receive any recovery from the Trust that is not funded by an insurance recovery paid specifically with respect to that Personal Injury Claimant.  To the

extent a Personal Injury Claimant names any defendants that are persons or entities that are not Released Parties, the Personal Injury Claimant may collect any claim established from such defendant subject to and in accordance with ARTICLE X.

E.      **Mediation.**  The Trustee may mediate with any Insurance Company that issued coverage that is available to respond to any Insured Personal Injury Claim.  If the Trustee determines, in his or her sole and absolute discretion, that (1) an Insurance Company is willing to engage in good faith mediation to resolve its coverage obligations with respect to an Insured Personal Injury Claim, (2) the coverage available is likely to provide for the full payment or a substantial payment of the Proposed Allowed Claim Amount for the Allowed Personal Injury Claim by the Insurance Company, and (3) participation in the mediation is unlikely to unduly delay payment to the Personal Injury Claimant, then notwithstanding anything contained in the TDPs, including ARTICLE VIII, the Trustee may defer the payment of the Allowed Personal Injury Claim until the conclusion of such mediation.

## ARTICLE X
## EXCESS RECOVERIES

A.      **Limitation on Trust Recovery.**  A Claimant may not recover more than the Allowed Claim Amount from the Trust when taking into consideration recoveries obtained from other Potentially Liable Parties and, in the case of Personal Injury Claimants who elect to "Opt Out" to the tort system to pursue insurance, available insurance recoveries.  The sole source of recovery for Personal Injury Claimants who do not elect to "Opt Out" to the tort system and who do not elect to pursue recoveries from Potentially Liable Parties is from the Trust.  Personal Injury Claimants who elect to pursue recoveries from Potentially Liable Parties may obtain recoveries from sources other than the Trust on account of their Personal Injury Claims.  If a Personal Injury Claimant recovers on account of his or her Personal Injury Claim an amount from a Potentially Liable Party, an insurer, or any source other than the Trust that results in such Personal Injury Claimant recovering the Allowed Claim Amount of such Personal Injury Claims as determined under the TDPs, then notwithstanding anything contained herein, such Personal Injury Claimant shall not be entitled to receive an additional recovery from the Trust on account of such Personal Injury Claim.  For example, if the Allowed Claim Amount for an Allowed Personal Injury Claim is $600,000, and the Personal Injury Claimant has received distributions from the Trust totaling $200,000, and the Personal Injury Claimant then recovers $400,000 from a Potentially Liable Party or any source other than the Trust such that his or her total recovery is $600,000 on account of such Personal Injury Claim, then such Personal Injury Claimant shall not be entitled to receive any further recovery from the Trust, including in circumstances where the Supplemental Payment Percentage is over 33.3%.  The Trustee may ask Personal Injury Claimants if they intend to pursue recoveries on account of their Personal Injury Claims from sources other than the Trust and to provide the Trustee with updates regarding such pursuits.  Personal Injury Claimants who obtain such recoveries shall immediately inform the Trust.

B.      **Excess Recovery.**  If a Personal Injury Claimant were to receive a distribution from the Trust on account of his or her Personal Injury Claim and then obtain a recovery from a Potentially Liable Party or any source other than the Trust on account of his or her Personal Injury Claim such that the Personal Injury Claimant is placed in a position where he or she has recovered more than the Allowed Claim Amount of such Personal Injury Claim as determined under the

TDPs, then such Personal Injury Claimant shall be required to return or deliver to the Trust the portion of such recovery that causes such Personal Injury Claimant's total recovery on account of such Personal Injury Claim to exceed the Allowed Claim Amount, provided, however, that in no circumstance shall a Personal Injury Claimant be required to return or deliver to the Trust an amount greater than the distributions received from the Trust on account of his or her Personal Injury Claim.  For example, if the Allowed Claim Amount for an Allowed Personal Injury Claim is $600,000, and the Personal Injury Claimant has received distributions from the Trust totaling $200,000, and the Personal Injury Claimant then recovers $500,000 from a Potentially Liable Party such that his or her total recovery is $700,000, then such Personal Injury Claimant shall be required to return $100,000 to the Trust.  If the Allowed Claim Amount for an Allowed Personal Injury Claim is $600,000, and the Personal Injury Claimant has received distributions from the Trust totaling $200,000, and the Personal Injury Claimant then recovers $2,000,000 from a Potentially Liable Party such that his or her total recovery is $2,200,000, then such Personal Injury Claimant shall be required to return $200,000 to the Trust (*i.e.*, the distributions received from the Trust on account of his or her Personal Injury Claim).

      **C.**    **Potentially Liable Parties.**  Nothing in the TDPs, nor any action taken pursuant to the TDPs, shall determine, limit, reduce, or impact the liability of any Potentially Liable Party for a Trust Claim.  Potentially Liable Parties are not third-party beneficiaries, and their liability for any Trust Claim shall not be determined by, or by reference to, the TDPs.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

      **A.**    **Amendments.**  Except as otherwise provided herein, the TDPs may be amended with the written consent of the Trustee and the TAC, as provided in the Trust Agreement.  The consent of the TAC shall not be unreasonably withheld.  Nothing herein is intended to preclude the TAC from proposing to the Trustee, in writing, amendments to the TDPs.  Notwithstanding the foregoing, absent Bankruptcy Court approval after appropriate notice and opportunity to be heard, the TDPs may not be modified or amended in a material manner that would have the effect of (i) providing for materially different treatment for Trust Claims or (ii) cause the TDPs to be otherwise inconsistent with the Trust Agreement, the Plan, or the Confirmation Order.

      **B.**    **Severability.**  Should any provision contained in the TDPs be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the TDPs.

      **C.**    **Governing Law.**  Each Trust Claim shall be evaluate under the laws of the jurisdiction in which the Trust Claim arose.

## **EXHIBIT 1-1**

FORM OF ACCEPTANCE AND RELEASE
(EXPEDITED DISTRIBUTION)

## ACCEPTANCE AND RELEASE (EXPEDITED DISTRIBUTION)

To receive an Expedited Distribution (as defined below) from the Trust (the "**Trust**") created pursuant to the Chapter 11 Plan of Reorganization for Tehum Care Services, Inc., dated as of [●], 2024 (the "**Plan**"), the holder of a Personal Injury Claim must execute and submit to the Trust this acceptance and release (the "**Release**").  **This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below).  A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient**.

## DEFINITIONS

The definitions set forth above for the terms "**Trust**," "**Plan**," and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.  All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Plan.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, having subject matter jurisdiction over the Chapter 11 Case.

"**Chapter 11 Case**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and currently styled *In re Tehum Care Services, Inc..*, Bankruptcy Case No. 23-90086 (CML).

"**Debtor**" means Tehum Care Services, Inc., the debtor and debtor-in-possession in the Chapter 11 Case.

"**Expedited Distribution**" means the compensation a Claimant receives from the Trust on behalf of the Claimant's Personal Injury Claim in the amount of $5,000.

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to execute this Release on behalf of the Personal Injury Claimant.

"**Personal Injury Claim**" means a Personal Injury Claim asserted by an individual (or an individual's estate) against the Debtor for alleged personal injury, wrongful death, or other similar Claim or Cause of Action arising out of or relating to an injury or death allegedly caused by the Debtor.

"**Personal Injury Claimant**" means the holder of a Personal Injury Claim who (a) has satisfied the eligibility criteria section forth in the Trust Distribution Procedures, (b) has had his or her Personal Injury Claim assumed by the Trust for evaluation, resolution, and payment pursuant to the Plan, and (c) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Released Parties**" means the Trust, the Trustee, and the TAC and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, Trustee, insurers, beneficiaries,

administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, and the TAC.

"**TAC**" means the Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**Trustee**" means [●] or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RECITALS

A.    **WHEREAS**, the Plan was confirmed by order of the Bankruptcy Court on [●] and became effective on [●].

B.    **WHEREAS**, the Plan provides for the assumption of Personal Injury Claims against the Debtor by the Trust and for the treatment of Personal Injury Claims against the Debtor through the Trust.

C.    **WHEREAS**, the Claimant has accepted an Expedited Distribution in the amount of $[_____] from the Trust on account of his or her Personal Injury Claim and agrees to execute this Release in consideration of the benefit of such Expedited Distribution.

## RELEASE

Each of the foregoing Recitals is hereby incorporated into this Release by reference and is made apart of this Release as if fully restated herein.

In consideration of the benefit of an Expedited Distribution from the Trust, I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, Trustee, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably waive, release, remit, acquit, forever discharge, and covenant not to sue the Released Parties for my Personal Injury Claim, whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") and fully discharge the Released Parties of their duties and responsibilities (to the extent applicable) under the Trust Documents, including any agreement, document, instrument or certification contemplated by the Trust Documents, from the beginning of time through the execution date of this Release. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Expedited Distribution or any component thereof, and I understand and agree that I shall be

2

solely responsible for compliance with all tax laws with respect to the Expedited Distribution, to the extent applicable.

Claimant or Legal Representative Printed Name: _____

Claimant or Legal Representative Signature: _____

Date: _____

**EXHIBIT 1-2**

FORM OF ACCEPTANCE AND RELEASE
(PERSONAL INJURY CLAIM)

## ACCEPTANCE AND RELEASE (PERSONAL INJURY CLAIM)

To receive payment on account of an Award (as defined below) from the Trust (the "**Trust**") created pursuant to the Chapter 11 Plan of Reorganization for Tehum Care Services, Inc., dated as of [●], 2024 (the "**Plan**"), the holder of a Personal Injury Claim must execute and submit to the Trust this acceptance and release (the "**Release**").  **This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below).  A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient**.

## DEFINITIONS

The definitions set forth above for the terms "**Trust**," "**Plan**," and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.  All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Plan.

"**Award**" means the compensation a Claimant receives from the Trust on behalf of the Claimant's Personal Injury Claim.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, having subject matter jurisdiction over the Chapter 11 Case.

"**Chapter 11 Case**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and currently styled *In re Tehum Care Services, Inc..*, Bankruptcy Case No. 23-90086 (CML).

"**Debtor**" means Tehum Care Services, Inc., the debtor and debtor-in-possession in the Chapter 11 Case.

"**Governmental Payor**" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services.

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to execute this Release on behalf of the Personal Injury Claimant.

"**Lien**" or "**Liens**" means (i) any statutory lien of a Governmental Payor or Medicare Part C or Part D Program sponsor, or (ii) any mortgage, lien, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any other payer or provider, where there is a legal obligation to withhold payment of an Award, or some portion thereof, to a Personal Injury Claimant under applicable federal or state law or for the Personal Injury Claimant to reimburse the Government Payor, other payer or provider for amounts paid on the Personal Injury Claimant's behalf in connection with the Claimant's Personal Injury Claim.

"**Lien Resolution Administrator**" means that person or entity, retained by the Trustee to resolve Medicare Program Part A and B liens, Medicaid Program liens, and Medicare Part C Program liens, using the information provided by the Personal Injury Claimant.

"**Medicaid Program**" means the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1, *et seq*.

"**Medicare Part C or Part D Program**" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with Centers for Medicare & Medicaid Services ("**CMS**").

"**Medicare Program**" means the Medicare Parts A and B federal program administered by CMS under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq*.

"**Personal Injury Claim**" means a Personal Injury Claim asserted by an individual (or an individual's estate) against the Debtor for alleged personal injury, wrongful death, or other similar Claim or Cause of Action arising out of or relating to an injury or death allegedly caused by the Debtor.

"**Personal Injury Claimant**" means the holder of a Personal Injury Claim who (a) has satisfied the eligibility criteria section forth in the Trust Distribution Procedures, (b) has had his or her Personal Injury Claim assumed by the Trust for evaluation, resolution, and payment pursuant to the Plan, and (c) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Released Parties**" means the Trust, the Trustee, and the TAC and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, Trustee, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, and the TAC.

"**TAC**" means the Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**Trustee**" means [●] or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RECITALS

A.    **WHEREAS**, the Plan was confirmed by order of the Bankruptcy Court on [●] and became effective on [●].

B.    **WHEREAS**, the Plan provides for the assumption of Personal Injury Claims against the Debtor by the Trust and for the treatment of Personal Injury Claims against the Debtor through the Trust.

2

C.      **WHEREAS**, the Claimant has received and accepted an Award in the amount of $[_____] from the Trust on account of his or her Personal Injury Claim and agrees to execute this Release in consideration of the benefit of such Award.

## RELEASE

Each of the foregoing Recitals is hereby incorporated into this Release by reference and is made apart of this Release as if fully restated herein.

In consideration of the benefit of an Award from the Trust, I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, Trustee, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably waive, release, remit, acquit, forever discharge, and covenant not to sue the Released Parties for my Personal Injury Claim against the Debtor, whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") and fully discharge the Released Parties of their duties and responsibilities (to the extent applicable) under the Trust Documents, including any agreement, document, instrument or certification contemplated by the Trust Documents, from the beginning of time through the execution date of this Release. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

I hereby acknowledge that I am solely and ultimately responsible for the satisfaction and discharge of all Liens. I shall use my best efforts to resolve all known Liens.

Notwithstanding my responsibilities to resolve all known Liens, I hereby authorize the Lien Resolution Administrator to resolve all Medicare Program liens, Medicaid Program liens, and Medicare Part C Program liens, as set forth in the definition of Lien Resolution Administrator above. The Lien Resolution Administrator shall use best efforts to resolve the Medicare Program liens, Medicaid Program liens, and Medicare Part C Program liens on my behalf.

In further consideration of the benefit of an Award, I do hereby release, forever discharge, hold harmless, and covenant not to sue the Released Parties from all Claims arising from, relating to, resulting from or in any way connected to, in whole or in part, any act, or failure to act, of the Lien Resolution Administrator. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action based upon, arising out of, or relating to any Claim released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

I hereby acknowledge and agree that to the extent my information is incorrect or incomplete to any substantial degree, after reasonable diligence by the Lien Resolution Administrator, which

3

results in the Lien Resolution Administrator being unable to properly verify coverage or identify Liens for which the Lien Resolution Administrator is responsible, then the Lien Resolution Administrator shall have no further responsibility for such unknown/unresolved Liens.

I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Award, to the extent applicable.

Claimant or Legal Representative Printed Name: _____

Claimant or Legal Representative Signature: _____

Date: _____

**EXHIBIT 1-3**

FORM OF ACCEPTANCE AND RELEASE
(INDIRECT CLAIM)

## ACCEPTANCE AND RELEASE (INDIRECT CLAIM)

To receive payment on account of an Award (as defined below) from the Trust (the "**Trust**") created pursuant to the Chapter 11 Plan of Reorganization for Tehum Care Services, Inc., dated as of [●], 2024 (the "**Plan**"), the holder of an Indirect Claim must execute and submit to the Trust this acceptance and release (the "**Release**").  **This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below).  A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient**.

## DEFINITIONS

The definitions set forth above for the terms "**Trust**," "**Plan**," and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.  All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Plan.

"**Award**" means the compensation a Claimant receives from the Trust on behalf of the Claimant's Indirect Claim.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, having subject matter jurisdiction over the Chapter 11 Case.

"**Chapter 11 Case**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and currently styled *In re Tehum Care Services, Inc..*, Bankruptcy Case No. 23-90086 (CML).

"**Debtor**" means Tehum Care Services, Inc., the debtor and debtor-in-possession in the Chapter 11 Case.

"**Indirect Claim**" means a liquidated or unliquidated, contingent or non-contingent Personal Injury Claim against the Debtor for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction).

"**Indirect Claimant**" means the holder of an Indirect Claim who (a) has satisfied the eligibility criteria section forth in the Trust Distribution Procedures, (b) has had its Indirect Claim assumed by the Trust for evaluation, resolution, and payment pursuant to the Plan, and (c) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to execute this Release on behalf of the Personal Injury Claimant.

"**Released Parties**" means the Trust, the Trustee, and the TAC and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, Trustee, insurers, beneficiaries,

administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, and the TAC.

"**TAC**" means the Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**Trustee**" means [●] or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RECITALS

**A.**     **WHEREAS**, the Plan was confirmed by order of the Bankruptcy Court on [●] and became effective on [●].

**B.**     **WHEREAS**, the Plan provides for the assumption of Personal Injury Claims against the Debtor by the Trust and for the treatment of Personal Injury Claims against the Debtor through the Trust.

**C.**     **WHEREAS**, the Claimant has received and accepted an Award in the amount of $[_____] from the Trust on account of its Indirect Claim and agrees to execute this Release in consideration of the benefit of such Award.

## RELEASE

Each of the foregoing Recitals is hereby incorporated into this Release by reference and is made apart of this Release as if fully restated herein.

In consideration of the benefit of an Award from the Trust, I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, Trustee, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably waive, release, remit, acquit, forever discharge, and covenant not to sue the Released Parties for my Indirect Claim, whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") and fully discharge the Released Parties of their duties and responsibilities (to the extent applicable) under the Trust Documents, including any agreement, document, instrument or certification contemplated by the Trust Documents, from the beginning of time through the execution date of this Release.  I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Award, to the extent applicable.

Claimant or Legal Representative Printed Name: _____

Claimant or Legal Representative Signature: _____

Date: _____