**<u>Exhibit C</u>**

**Form of PI/WD Trust Agreement**

**TEHUM PERSONAL INJURY SETTLEMENT TRUST AGREEMENT**

**DATED AS OF [  ], 2024**

**PURSUANT TO THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF THE TORT CLAIMANTS' COMMITTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR FOR TEHUM CARE SERVICES, INC.**

**TABLE OF CONTENTS**

ARTICLE 1.   AGREEMENT OF TRUST ..................................................................................... 2

Section 1.1   Creation and Name. ..................................................................................... 2

Section 1.2   Purposes. ..................................................................................................... 2

Section 1.3   Transfer of Assets. ....................................................................................... 2

Section 1.4   Acceptance of Assets. .................................................................................. 3

Section 1.5   Receipt of Proceeds. ..................................................................................... 3

Section 1.6   Beneficiaries. ................................................................................................ 3

Section 1.7   Jurisdiction. .................................................................................................. 3

Section 1.8   Privileged and Confidential Information. ..................................................... 4

Section 1.9   Relation-back election. ................................................................................. 4

Section 1.10  Relationship to Plan. .................................................................................... 4

ARTICLE 2.   POWERS AND TRUST ADMINISTRATION ...................................................... 4

Section 2.1   Powers. ......................................................................................................... 4

Section 2.2   Limitations on the Trustee and TAC. ........................................................... 8

Section 2.3   General Administration. ............................................................................... 8

Section 2.4   Accounting. .................................................................................................. 8

Section 2.5   Financial Reporting. ..................................................................................... 8

Section 2.6   Claims Reporting. ......................................................................................... 9

Section 2.7   Names and addresses. ................................................................................... 9

Section 2.8   Transfers of the Trust Corpus. ...................................................................... 9

ARTICLE 3.   ACCOUNTS, INVESTMENTS, EXPENSES ....................................................... 9

Section 3.1   Accounts. ...................................................................................................... 9

Section 3.2   Investment Guidelines. ................................................................................. 10

Section 3.3   Payment of Trust Operating Expenses. ........................................................ 10

ARTICLE 4.   CLAIMS ADMINISTRATION AND DISTRIBUTIONS ................................... 10

Section 4.1   Claims Administration and Distributions. .................................................... 10

Section 4.2   Applicability and Review of Payment Percentage. ...................................... 11

Section 4.3   Supplemental Payments. ............................................................................... 11

Section 4.4   Manner of Payment. ...................................................................................... 12

Section 4.5   Delivery of Distributions. ............................................................................. 12

Section 4.6   Medicare Reimbursement and Reporting Obligations. ................................. 12

i

ARTICLE 5.   TRUSTEE; DELAWARE TRUSTEE ........................................................... 13

Section 5.1   Number of Trustees. ................................................................................. 13

Section 5.2   Term of Service, Successor Trustee. ........................................................ 13

Section 5.3   Appointment of Successor Trustee. .......................................................... 13

Section 5.4   Trust Meetings. ........................................................................................ 14

Section 5.5   Compensation and Expenses of Trustee. .................................................. 14

Section 5.6   Trustee's Independence. ........................................................................... 15

Section 5.7   Standard of Care; Exculpation. ............................................................... 15

Section 5.8   Protective Provisions. .............................................................................. 16

Section 5.9   Indemnification. ....................................................................................... 17

Section 5.10  Bond. ....................................................................................................... 18

Section 5.11  Delaware Trustee. .................................................................................... 18

Section 5.12  Meeting Minutes. ..................................................................................... 21

Section 5.13  Matters Requiring Consultation with TAC. .............................................. 21

Section 5.14  Matters Requiring Consent of TAC. ......................................................... 22

Section 5.15  Trustee's and TAC's Employment of Professionals. ................................ 22

ARTICLE 6.   TRUST ADVISORY COMMITTEE...................................................... 22

Section 6.1   Members; Action by Members. ................................................................. 22

Section 6.2   Duties. ...................................................................................................... 23

Section 6.3   TAC Information Rights. ........................................................................... 23

Section 6.4   [Reserved.] ............................................................................................... 23

Section 6.5   Term of Office. .......................................................................................... 23

Section 6.6   Appointment of Successor. ....................................................................... 23

Section 6.7   Compensation and Expenses of the TAC. ................................................. 24

Section 6.8   Procedures for Consultation with and Obtaining the Consent of the TAC. .......... 24

ARTICLE 7.   GENERAL PROVISIONS...................................................................... 25

Section 7.1   Irrevocability. ........................................................................................... 25

Section 7.2   Term; Termination. ................................................................................... 25

Section 7.3   Outgoing Trustee Obligations. ................................................................. 26

Section 7.4   Taxes. ....................................................................................................... 27

Section 7.5   Modification. ............................................................................................ 28

Section 7.6   Communications. ...................................................................................... 28

Section 7.7   Severability. .............................................................................................. 28

ii

Section 7.8      Notices............................................................................................... 28

Section 7.9      Successors and Assigns. .................................................................... 29

Section 7.10    Limitation on Transferability; Beneficiaries' Interests. ....................... 29

Section 7.11    Exemption from Registration. ............................................................. 30

Section 7.12    Entire Agreement; No Waiver.............................................................. 30

Section 7.13    Headings. ........................................................................................... 30

Section 7.14    Governing Law.................................................................................... 30

Section 7.15    Dispute Resolution. ........................................................................... 31

Section 7.16    Waiver of Jury Trial. .......................................................................... 32

Section 7.17    Effectiveness. .................................................................................... 32

Section 7.18    Counterpart Signatures. .................................................................... 32


EXHIBIT 1      AGGREGATE SETTLEMENT CONSIDERATION ........................................... 1

EXHIBIT 2      CERTIFICATE OF TRUST.................................................................................. 1

EXHIBIT 3      TRUST DISTRIBUTION PROCEDURES FOR PERSONAL INJURY
               CLAIMS.......................................................................................................... 1

EXHIBIT 4      TCC PROFESSIONAL FEE ESCROW ACCOUNT............................................ 1

EXHIBIT 5      INVESTMENT GUIDELINES.............................................................................. 1

## TEHUM PERSONAL INJURY SETTLEMENT TRUST AGREEMENT

This Tehum Personal Injury Settlement Trust Agreement (this "**Trust Agreement**"), dated as of [  ], 2024, and effective as of the Effective Date, is entered in accordance with the *Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor for Tehum Care Services, Inc.*, dated [  ], 2024 (as it may be amended, modified, or supplemented, the "**Plan**"),[1] by Tehum Care Services, Inc. (the "**Debtor**"); [  ] as trustee (together with any successor serving in such capacity, the "**Trustee**"); [  ] as the Delaware Trustee (together with any successor serving in such capacity, the "**Delaware Trustee**"); and the members of the Trust Advisory Committee who are the individuals further identified on the signature pages here (together with any successors serving in such capacity, the "**TAC**").

## <u>RECITALS</u>

(A)     Contemporaneously with the execution of this Trust Agreement, Debtor will have reorganized under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the United States Bankruptcy Court for the Southern District of Texas ("**Bankruptcy Court**"), administered and known as *In re: Tehum Care Services, Inc.*, Case No. 23-90086 (CML) (the "**Chapter 11 Case**").

(B)     Debtor is executing this Trust Agreement in its capacity as Settlor to implement the Plan and to create the PI/WD Trust (the "**Trust**") for the benefit of the holders of Channeled PI/WD Claims and Channeled Indirect PI/WD Claims (collectively, the "**Trust Claims**").

(C)     The Confirmation Order has been entered by the Bankruptcy Court and is in full force and effect.

(D)     The Plan and Confirmation Order provide, among other things, for the creation of the PI/WD Trust to satisfy the Trust Claims in accordance with this Trust Agreement, the Plan and the Confirmation Order.

(E)     The Bankruptcy Court held in the Confirmation Order that all the prerequisites for the Channeling Injunction have been satisfied, and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the Trust Claims.

(F)     The Plan and Confirmation Order provide that, on the Effective Date and continuing thereafter until fully funded in accordance with the Plan, the Aggregate Settlement Consideration (as defined in Section 1.3), as described in **Exhibit 1** shall be transferred to and vested in the Trust free and clear of all liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates, any creditor or any other entity, other than as provided in the Channeling Injunction with respect to the Trust Claims.

---

[1]     All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan or in the Confirmation Order, as applicable, or, if not defined therein, as set forth in the TDPs (as defined in Section 1.2 below).

**NOW, THEREFORE**, it is hereby agreed as follows:

## ARTICLE 1.
## AGREEMENT OF TRUST

Section 1.1     *Creation and Name.*There is here by created a trust known as the "**Tehum Personal Injury Settlement Trust**" which is the PI/WD Trust provided for and referred to in the Plan.  The Trustee may transact the business and affairs of the Trust in the name of the Tehum Personal Injury Settlement Trust and references herein to the Trust shall include the Trustee acting on behalf of the Trust.  It is the intention of the parties hereto that the Trust created hereby constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§ 3801 *et seq*. (the "**Act**") and that the Confirmation Order, the Plan and this Trust Agreement, including the Exhibits hereto (the Confirmation Order, the Plan and this Trust Agreement, including all Exhibits hereto, which includes the TDPs as defined in Section 1.2 below, collectively, the "**Trust Documents**"), constitute the governing instruments of the Trust.  The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 2**.

Section 1.2     *Purposes.*The purposes of the PI/WD Trust shall be to assume responsibility for Channeled PI/WD Trust Claims, maximize the value of the PI/WD Insurance Action Recoveries, pursue the Retained PI/WD Trust Causes of Action, and, among other things:  (1) to hold, preserve, maximize, and administer the PI/WD Trust Assets, (2) to liquidate the PI/WD Trust Assets, and (3) to administer, process, settle, resolve, liquidate, satisfy, and pay all Allowed Channeled PI/WD Trust Claims in a fair, consistent, and equitable manner in each case in accordance with the Trust Distributions Procedures for Personal Injury Claims attached hereto as **Exhibit 3** (the "**TDPs**"). The PI/WD Trust shall also have rights with respect to the Retained Causes of Action, subject to the provisions and consent rights of the PI/WD Trust, as set forth in **Article IV.J** of the Plan, with the net proceeds of such Retained Causes of Action to be split between the PI/WD Trust and the GUC Trust on a 50/50 basis.  For the avoidance of doubt, all Channeled PI/WD Claims and Channeled Indirect PI/WD Claims asserted against the Debtor in the Chapter 11 Case shall be resolved exclusively in accordance with the TDPs.

Section 1.3     *Transfer of Assets.*Pursuant to the Plan, on the Effective Date, the Trust will receive and hold all right, title and interest in and to the consideration described in Article IV.D of the Plan and set forth on **Exhibit 1** hereto (the "**Aggregate Settlement Consideration**" and together with any income or gain earned thereon and proceeds derived therefrom, collectively, the "**Trust Assets**").[2]  The Aggregate Settlement Consideration shall be transferred to the Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates, any creditor or any other person or entity, other than as provided in the Channeling

---

[2]     **Exhibit 1** shall identify: All Assets and Estate Assets allocated to the PI/WD Trust pursuant to the PI/WD Trust Agreement and the Plan, as applicable, and in each case, as amended, supplemented, restated, or otherwise modified from time to time, including: (a) 50% of the Settlement Payments; (b) 50% of the ERC Fund; (c) 50% interest in the Retained Causes of Action and the proceeds thereof; (d) Retained PI/WD Trust Causes of Action; (e) the PI/WD Insurance Assignment; (f) the PI/WD Data Transfer; (g) 50% of the Debtor's remaining Assets, including Cash, (h) any other funds or Assets allocated to the PI/WD Trust under the Plan; and (i) any income, profits, gains, and proceeds realized, received, or derived from PI/WD Trust Assets.

Injunction with respect to the Trust Claims. The Debtor shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and assign any assets comprising all or a portion of the Aggregate Settlement Consideration to the Trust.

Section 1.4    *Acceptance of Assets*.

(a)    In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly accepts the transfer to the Trust of the Aggregate Settlement Consideration, subject to the terms of the Trust Documents. The Trust shall succeed to all of the Debtor's respective right, title, and interest, including all legal privileges, in the Aggregate Settlement Consideration and neither the Debtor nor any other person or entity transferring such Aggregate Settlement Consideration will have any further equitable or legal interest in, or with respect to, the Trust Assets, including the Aggregate Settlement Consideration, or the Trust.

(b)    Except as otherwise provided in the Plan, Confirmation Order or Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Trust Claims that the Debtor had or would have had under applicable law.

(c)    No provision herein or in the TDPs shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code (as the same may be amended from time to time, the "**IRC**") (the "**QSF Regulations**").

(d)    Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or other terms of the Plan or Confirmation Order.

(e)    In this Trust Agreement and the TDPs, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

Section 1.5    *Receipt of Proceeds*. The proceeds of any sale of Trust Assets or recoveries from any litigation or claims of the Trust will be deposited in the Trust's accounts and become the property of the Trust.

Section 1.6    *Beneficiaries.*

(a)    The beneficial owners (within the meaning of the Act) of the Trust shall be the holders of allowable Trust Claims ("**Allowed Trust Claims**") (the "**Beneficiaries**").

(b)    The Beneficiaries shall be subject to the terms of this Trust Agreement and Trust Documents, including without limitation, the TDPs.

Section 1.7    *Jurisdiction.*The Bankruptcy Court shall have continuing jurisdiction with respect to the Trust; provided, however, the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Trust.

3

Section 1.8      *Privileged and Confidential Information*. The transfer or assignment of any privileged information to the Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto.  Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the Trustee to perform his or her duties to administer the Trust; (b) they are vested solely in the Trustee, on behalf of the Trust, and not in the TAC, or any other person, committee or subcomponent of the Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Trust Claim; and (c) the Trustee shall keep, handle and maintain such privileged information. Notwithstanding the foregoing, nothing shall preclude the Trustee from providing privileged information to any insurance company as necessary to preserve, secure, or obtain the benefit of any rights under any insurance policy.

Section 1.9      *Relation-back election*. The Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a qualified settlement fund as of the earliest possible date.

Section 1.10     *Relationship to Plan*. The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order.  To the extent that there is conflict between the provisions of this Trust Agreement, the TDPs, the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order:  (1) the Confirmation Order; (2) the Plan; (3) this Trust Agreement; and (4) the TDPs.

## ARTICLE 2.
## POWERS AND TRUST ADMINISTRATION

Section 2.1      *Powers.*

(a)      The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "qualified settlement fund" under the QSF Regulations. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

The Trustee is and shall act as the fiduciary to the Trust in accordance with the provisions of this Trust Agreement. The Trustee shall administer the Trust, the Trust Assets, and any other amounts to be received under the terms of the Trust Documents in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Trust Documents.  The Trustee will implement and administer the TDPs with the goals of securing the just, speedy, fair, reasonable, and cost-efficient determination of every Trust Claim, providing substantially similar treatment to holders of similar, legally valid and supported Allowed Trust Claims as set forth herein, and obtaining and maximizing the benefits of the Trust Assets.

(b)      Subject to the limitations set forth in the Trust Documents, the Trustee shall have the power to take any and all actions that in the judgment of the Trustee are necessary or advisable to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or

4

hereafter permitted under the laws of the State of Delaware.  Nothing in the Trust Documents or any related document shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law.  In addition to all powers enumerated in the Trust Documents, including, but not limited to, the Trustee's powers and authority in respect of the interpretation, application of definitions and rules of construction set forth in Article I of the Plan to the fullest extent set forth therein, from and after the Effective Date, the Trust shall succeed to all of the rights and standing of the Debtor with respect to the Aggregate Settlement Consideration in its capacity as a trust administering assets for the benefit of the Beneficiaries.

(c)     Except as required by applicable law or the Trust Documents, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(d)     Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the Trust Documents and by applicable law, the Trustee shall have the power to:

(i)      supervise and administer the Trust in accordance with the Trust Documents, including the TDPs;

(ii)     adopt procedures to determine Allowed Trust Claims and determine an allowed liability amount for each Allowed Trust Claim (the "**Allowed Claim Amount**") in accordance with the TDPs (including an Expedited Distribution);

(iii)    establish an initial payment percentage (the "**Initial Payment Percentage**") with respect to Allowed Trust Claims and adjust the Initial Payment Percentage and any Supplemental Payment Percentage(s) as set forth in Sections 4.2 and 4.3 below;

(iv)     receive and hold the Trust Assets, and exercise all rights with respect thereto including the right to vote and sell any securities that are included in such funds;

(v)      invest the monies held from time to time by the Trust in accordance with Section 3.2;

(vi)     sell, transfer or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustee may determine proper and consistent with the other terms of the Trust Documents;

(vii)    enter into leasing, financing or other agreements with third parties, as determined by the Trustee, in his or her discretion, to be useful in carrying out the purposes of the Trust;

(viii)   determine and pay liabilities and pay all fees and expenses incurred in administering the Trust, managing the Trust Assets and making distributions in accordance with the Trust Documents (the "**Trust Operating Expenses**");

(ix)     establish accounts and reasonable reserves within the Trust, as determined by the Trustee, in his or her discretion, to be necessary, prudent or useful in

administering the Trust and to establish and administer the TCC Professional Fee Escrow Account in accordance with Exhibit 4;

(x)     sue, be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding, including without limitation the power to take any action in the best interest of the Trust in the event of a Settlement Payment Default as set forth in the Plan;

(xi)     appoint such officers and retain such employees, consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires, and delegate to such persons such powers and authorities as this Trust Agreement provides or the fiduciary duties of the Trustee permits and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(xii)     pay reasonable compensation and reimbursement of expenses to any of the Trust's employees, consultants, advisors, independent contractors, experts and agents for legal, financial, administrative, accounting, investment, valuation, auditing and alternative dispute resolution services and activities as the Trust requires;

(xiii)     compensate the Trustee, Delaware Trustee, and their employees, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee, the Delaware Trustee, and the TAC members, for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xiv)     compensate the Trustee, and any professionals with whom the Trustee has consulted prior to the Effective Date, for services, costs and expenses incurred prior to the Effective Date;

(xv)     execute and deliver such instruments as the Trustee considers advisable or necessary in administering the Trust;

(xvi)     timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xvii)     require, in respect of any distribution of Trust Assets, the timely receipt of properly executed documentation (including, without limitation, Internal Revenue Service ("**IRS**") Form W-9) as the Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

(xviii)  resolve all applicable lien resolution matters;

(xix)     register as a responsible reporting entity ("**RRE**") and timely submit all reports under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**") as required under Section 4.6 below;

6

(xx)    determine the form(s) of acceptance and release required to be executed by a Beneficiary in connection with a distribution on account of an Allowed Trust Claim in accordance with the TDPs;

(xxi)   enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of the Trust Documents;

(xxii)  in accordance with Section 5.9 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 5.7(a) below) solely from the Trust Assets and to the fullest extent permitted by law;

(xxiii) delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable investment advisors or investment managers without liability for any action taken or omission made because of any such delegation;

(xxiv)  delegate any or all of the authority conferred with respect to the protection, preservation, and monetization of any non-cash Trust Assets;

(xxv)   initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust;

(xxvi)  enter into structured settlements and other similar arrangements with any Beneficiary (including a minor or other person in need of special consideration) upon such terms as the Trustee and such Beneficiary (or such Beneficiary's counsel or other authorized person) agree, in all cases in accordance with the TDPs;

(xxvii) contract for the establishment and continuing maintenance of a website (the "**Trust Website**") to aid in communicating information to the Beneficiaries and their counsel or other authorized persons;

(xxviii) take any and all actions appropriate or necessary in order to carry out the terms of the Trust Documents;

(xxix)  except as otherwise expressly provided in the Trust Documents, exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of Delaware; and

(xxx)   at the Trustee's sole discretion, retain one or more consultants in order to assist the Trustee in evaluating and determining whether one or more Trust Claims may be fraudulent.

(e)     The Trustee shall consult with the TAC on the matters set forth in Section 5.13 below.  The Trustee shall obtain the consent of the TAC prior to taking action with respect to the matters as set forth in Section 5.14 below, as and to the extent set forth therein.

7

Section 2.2     *Limitations on the Trustee and TAC.*

(a)     Notwithstanding anything in the Trust Documents to the contrary, the Trustee shall not do or undertake any of the following:

(i)     guaranty any debt;

(ii)     make or enter into any loan of Trust Assets;

(iii)     make any transfer or distribution of Trust Assets other than those authorized by the Trust Documents;

(iv)     engage in any trade or business with respect to the Trust Assets or proceeds therefrom, provided, however, that the Trustee shall hold, manage, protect and monetize the Trust Assets which shall not be deemed to constitute a trade or business;

(v)     engage in any investment of the Trust Assets, other than as explicitly authorized by this Trust Agreement; and

(vi)     engage in any activities inconsistent with the treatment of the Trust as a "qualified settlement fund" within the meaning of the QSF Regulations.

Section 2.3     *General Administration.*The Trustee shall act in accordance with the Trust Documents.  The initial mailing address of the Trust shall be Tehum Personal Injury Settlement Trust, [          ] and the Trustee may change the mailing address in his or her discretion.

Section 2.4     *Accounting.*The fiscal year of the Trust shall begin on January 1 and shall end on December 31 of each calendar year.  The Trustee shall maintain the books and records relating to the Trust Assets and income and the payment of Trust Operating Expenses and other liabilities of the Trust.  The detail of these books and records and the duration of time during which the Trustee shall keep such books and records shall be such as to allow the Trustee to make a full and accurate accounting of all Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the Trust, including, without limitation, the assets and liabilities of the Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year (the "**Annual Report**"); provided, however, that the Trustee shall maintain such books and records until the wind-up of the Trust's affairs and satisfaction of all of Trust liabilities.

Section 2.5     *Financial Reporting.*

(a)     The Trustee shall engage a firm of independent certified public accountants (the "**Independent Auditors**") selected by the Trustee, to audit the Annual Report.  Within one hundred twenty (120) days following the end of each calendar year, the Trustee shall file with the Bankruptcy Court the Annual Report audited by the Independent Auditors and accompanied by an opinion of such firm as to the fairness in all material respects of the special-purpose financial statements.  The Trustee shall publish a copy of such Annual Report on the Trust Website when such report is filed with the Bankruptcy Court.

8

(b)      All materials filed with the Bankruptcy Court pursuant to this Section 2.5 need not be served on any parties in the Chapter 11 Case but shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court.

Section 2.6      *Claims Reporting.* Within one hundred twenty (120) days following the end of each calendar year, the Trustee shall cause to be prepared and filed with the Bankruptcy Court an annual report containing a summary regarding the number and type of Allowed Trust Claims disposed of during the period covered by the financial statements (the "**Annual Claims Report**").  The Trustee shall post a copy of the Annual Claims Report on the Trust Website when such report is filed with the Bankruptcy Court.

Section 2.7      *Names and addresses*. The Trust shall keep a register (the "**Register**") in which the Trust shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the Trust Documents.  The Trustee may rely upon this Register for the purposes of delivering distributions or notices.  In preparing and maintaining this Register, the Trustee may rely on the name and address of each Trust Claim holder as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Beneficiary to the Trust.  The Trust may deliver distributions and notices to counsel for any Beneficiary identified in such Beneficiary's proof of claim or proper notice of a name or address change.

Section 2.8      *Transfers of the Trust Corpus*. To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.

## ARTICLE 3.
## ACCOUNTS, INVESTMENTS, EXPENSES

Section 3.1      *Accounts.*

(a)      The Trustee shall maintain one or more accounts ("**Trust Accounts**") on behalf of the Trust with one or more financial depository institutions (each a "**Financial Institution**").  Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in or relationship with Debtor or their affiliated persons or others.  Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting a Financial Institution.

(b)      The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a).

(c)      The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Beneficiaries and the payment of Trust Operating Expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**").  Any such Trust

Subaccounts established by the Trustee shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the IRC or Treasury Regulations.

(d)     The Trustee shall establish a separate subaccount of the Trust to receive funds designated under the Plan for the TCC Professional Fee Escrow Account, which shall be administered exclusively in accordance with the terms set forth on Exhibit 4 hereto.

Section 3.2     *Investment Guidelines.*

(a)     The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as Exhibit 5 (the "**Investment Guidelines**").

(b)     The Trust may hold certain non-liquid assets.  The Trustee shall own, protect, oversee, insure, and monetize such non-liquid assets in accordance with the Trust Documents.  This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

(c)     Cash proceeds received by the Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the Trust as set forth in Section 1.2 above.

Section 3.3     *Payment of Trust Operating Expenses.*All Trust Operating Expenses shall be payable out of the Trust Assets.  None of the Trustee, Delaware Trustee, the TAC, the Beneficiaries nor any of their officers, agents, advisors, professionals, or employees shall be personally liable for the payment of any Trust Operating Expense or any other liability of the Trust.

## ARTICLE 4.
## CLAIMS ADMINISTRATION AND DISTRIBUTIONS

Section 4.1     *Claims Administration and Distributions*.

(a)     The Trust shall fairly and reasonably compensate Allowed Trust Claims and shall pay up to the full value of such claims, solely in accordance with the Trust Documents, including the TDPs.  The TDPs shall be subject to amendment or modification only to the extent expressly set forth in the TDPs.

(b)     The Trustee shall develop non-binding arbitration dispute resolution procedures (the "**ADR Procedures**") to resolve Reconsideration Requests.  The Trustee shall employ individuals to serve as the arbitrators to implement the ADR Procedures for Reconsideration Requests in accordance with the TDPs, giving due weight in the selection process to prior service as a retired judge with tort experience.

(c)     The Trustee may institute procedures for auditing the reliability of evidence submitted to the Trust involving Trust Claims for which the Trust has legal responsibility (the "**Claims Audit Program**").  The Trustee may employ third-party service providers to assist the Trust with the Claims Audit Program.

10

Section 4.2    *Applicability and Review of Payment Percentage.*

(a)    Because there is uncertainty in the prediction of both the total amount of the Trust's liabilities and the amount of the Trust Assets, no guarantee can be made as to the total payment the Trust will be able to pay for any Allowed Trust Claim.  The Trustee shall determine from time to time the percentage of value that holders of Allowed Trust Claims are likely to receive from the Trust Assets available for distribution on account of compensable Allowed Trust Claims.  As soon as practicable after the Effective Date, the Trustee shall establish an Initial Payment Percentage.

(b)    The Initial Payment Percentage shall apply to all Allowed Trust Claims to be paid by the Trust until the Trustee, after consultation with the TAC, determines that the Initial Payment Percentage should be changed and that such change shall continue to allow to the Trust shall be in a financial position to pay holders of similar Allowed Trust Claims in substantially the same manner.

(c)    No less frequently than once every twelve (12) months, the Trustee shall undertake an evaluation of the Initial Payment Percentage.  The Trustee may evaluate the Initial Payment Percentage at shorter intervals if the Trustee deems such evaluation is appropriate or if requested to do so by the TAC.

Section 4.3    *Supplemental Payments.*

(a)    When the Trustee determines that the then-current estimates of the Trust's assets and its liabilities, as well as then-estimated value of then-pending Trust Claims, warrant additional distributions on account of the Final Determinations, the Trustee shall, after consultation with the TAC, set a supplemental payment percentage (the "**Supplemental Payment Percentage**").  Thereafter, from time to time, the Trustee, after consultation with the TAC, may set additional Supplemental Payment Percentages.  All Supplemental Payment Percentages shall be implemented after the Trustee determines that the Trust shall continue to be in a financial position to pay holders of similar Allowed Trust Claims in substantially the same manner.

(b)    The Trust shall not be obligated to make any distribution to a Beneficiary if the amount of the distribution would be less than $[100.00] and the distribution to such Beneficiary shall be suspended for future payment.  At such time as the amount of a current distribution plus all suspended distributions to a Beneficiary shall aggregate in excess of $[100.00], then the Trust shall direct the payment of such aggregate distribution to the Beneficiary, subject to Section 4.5(c) below.

(c)    Notwithstanding anything herein or in the TDPs, the Trustee reserves all powers expressly granted to him or her by the Plan and the Confirmation Order with respect to the administration of Trust Claims.

11

Section 4.4     *Manner of Payment.*Distributions from the Trust to the Beneficiaries may be made by the Trustee on behalf of the Trust or by a disbursing agent retained by the Trust to make distributions on behalf of the Trust.

Section 4.5     *Delivery of Distributions.*

(a)     Distributions shall be payable to the Beneficiary (or to counsel for the Beneficiary) on the date approved for distribution by the Trustee (the "**Distribution Date**") in accordance with the terms of the Trust Documents, including the TDPs. With respect to each Approved Trust Claim approved for payment, distributions shall be made only after the Trustee has determined that all obligations of the Trust with respect to each such Allowed Trust Claim have been satisfied.  In the event that any distribution to a Beneficiary is returned as undeliverable, no further distribution to such Beneficiary shall be made unless and until the Trustee has been notified of the then current address of such Beneficiary, at which time such distribution shall be made to such Beneficiary without interest; provided, however, that all distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date.  After such date, (i) all unclaimed property or interests in property shall revert to the Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), (ii) the Trust Claim of such Beneficiary shall be released, settled, compromised and forever barred as against the Trust, and (iii) all unclaimed property interests shall be distributed to other Beneficiaries in accordance with the Trust Documents, as if the Trust Claim of such Beneficiary had been disallowed as of the date the undeliverable distribution was first made.  The Trustee shall take reasonable efforts to obtain a current address for any Beneficiary with respect to which any distribution is returned as undeliverable.

(b)     No Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

(c)     Notwithstanding any provision in the Trust Documents to the contrary, no payment shall be made to any Beneficiary on account of any Allowed Trust Claim if the Trustee determines that the costs of making such distribution is greater than the amount of the distribution to be made.

Section 4.6     *Medicare Reimbursement and Reporting Obligations.*

(a)     The Trust shall register as an RRE under the reporting provisions of section 111 of the MMSEA.

(b)     The Trust shall, at its sole expense, timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust.  The Trust, in its capacity as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)     Before making distributions to Beneficiaries (or Beneficiaries' counsel), in respect of any Allowed Trust Claim, the Trustee shall obtain a certification that said Beneficiary (or such Beneficiary's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Allowed Trust Claim.

### ARTICLE 5.
### TRUSTEE; DELAWARE TRUSTEE

Section 5.1     *Number of Trustees.*In addition to the Delaware Trustee appointed pursuant to Section 5.11 hereof, there shall be one (1) Trustee.  The initial Trustee shall be [                    ]. For the avoidance of doubt, there shall be at least one (1) Trustee serving at all times (in addition to the Delaware Trustee).

Section 5.2     *Term of Service, Successor Trustee.*

(a)     The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) below, (iii) his or her removal pursuant to Section 5.2(c) below, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(b)     The Trustee may resign at any time upon written notice to the TAC with such notice filed with the Bankruptcy Court.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     The Trustee may be removed by consent of the TAC in the event that the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard.  Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, any substantial failure to comply with the administration of the Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder.  For the avoidance of doubt, any removal of the Trustee pursuant to this Section 5.2(c) shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

Section 5.3     *Appointment of Successor Trustee.*

(a)     In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any successor Trustee, such vacancy shall be filled by the TAC as set forth herein. The TAC will nominate an individual to serve as successor Trustee.  If the majority of the TAC then in office agree upon a successor Trustee, then, subject to the approval of the Bankruptcy Court, such individual shall become the Trustee.  In the event that a majority of the TAC then in office cannot agree on a successor Trustee, the matter will be resolved pursuant to Section 7.16 below.

13

(b)      Immediately upon the appointment of any successor Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c)      Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, and (iv) the termination of the Trust pursuant to Section 7.2 below.

Section 5.4      *Trust Meetings.*

(a)      **Regular Meeting**.  The Trustee shall hold regular Trust meetings with the TAC not less than quarterly, which may be held at such times and at such places as may be determined from time to time by the Trustee.  For the avoidance of doubt, the Delaware Trustee shall not be required or permitted to attend any meetings of the Trustee contemplated by this Section 5.4.

(b)      **Special Meetings**.  Special meetings of the Trustee may be called by the Trustee by giving written notice to the TAC not less than one (1) Business Day prior to the date of the meeting.  Any such notice shall include the time, place, and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication.  Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice.  Notice by overnight courier shall be deemed to have been given one (1) Business Day after the time that written notice is provided to such overnight courier.  Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)      **Participation in Meetings by Telephone Conference**.  The Trustee may convene, and persons may participate in, a meeting by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 5.4(c) shall constitute presence in person at such meeting.

(d)      **Waiver of Notice**.  Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trust meeting need be specified in any waiver of notice.

(e)      **Adjournment**.  A meeting may be adjourned by the Trustee to another time and place.

Section 5.5      *Compensation and Expenses of Trustee.*The Trustee shall receive compensation from the Trust for his or her services as Trustee. The initial amount of the Trustee's compensation

shall be $[      ] per month for the year ended December 31, 2024, and shall be adjusted annually thereafter (at a per month rate) in accordance with the Trustee's customary compensation practices, subject to the consent of the TAC, which consent shall not be unreasonably withheld or delayed. The Trust shall also, upon receipt of appropriate documentation, reimburse all reasonable out-of-pocket costs and expenses incurred by the Trustee in the course of carrying out his or her duties as Trustee in accordance with reasonable policies and procedures as may be adopted from time to time, including in connection with attending meetings of the Trust.  The amounts paid to the Trustee for compensation and expenses shall be disclosed in the Annual Report.

Section 5.6     *Trustee's Independence.*

(a)     The Trustee shall not, during his or her service, hold a financial interest in, act as attorney or agent for or serve as any other professional for the Debtor or its affiliated persons. No Trustee shall act as an attorney for, or otherwise represent, any Person who holds a Trust Claim in the Chapter 11 Case.  For the avoidance of doubt, this provision shall not apply to the Delaware Trustee.

(b)     The Trustee, and the Delaware Trustee, shall be indemnified by the Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)     Persons dealing with the Trust, the Trustee, and the Delaware Trustee with respect to the affairs of the Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust, the Trustee or the Delaware Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Trustee, the Delaware Trustee, the Beneficiaries, nor any of their professionals, advisors, officers, agents, consultants or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.7     *Standard of Care; Exculpation.*

(a)     As used herein, the term "**Trust Indemnified Party**" shall mean the Trustee, the Delaware Trustee, the members of the TAC, and each of their respective members, officers, employees, agents, consultants, lawyers, advisors, or professionals (collectively, the "**Trust Indemnified Parties**").

(b)     No Trust Indemnified Party shall be liable to the Trust, any other Trust Indemnified Party, any Beneficiary or any other Person for any damages arising out of the creation, operation, administration, enforcement or termination of the Trust, except in the case of such Trust Indemnified Party's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction.  To the fullest extent permitted by applicable law, the Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers and other professionals retained by the Trust Indemnified Parties.  None of the provisions of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers.  Any Trust Indemnified Party may

15

rely, without inquiry, upon writings delivered to it under any of the Trust Documents, which the Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.7 shall relieve the Trust Indemnified Parties from any liability for any actions or omissions arising out of the willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; provided that in no event will any such person be liable for punitive, exemplary, consequential or special damages under any circumstances. Any action taken or omitted by the Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute willful misconduct, bad faith, or fraud.

(c)     The Trust Indemnified Parties shall not be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any Person in connection with the affairs of the Trust or for any liabilities or obligations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud, and all Persons claiming against the Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims.

(d)     To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, including Section 3806 of the Act, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties, _provided_, _however_, that with respect to the Trust Indemnified Parties other than the Delaware Trustee, the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 5.7 and its subparts.

(e)     The Trust Indemnified Parties shall be indemnified to the fullest extent permitted by law by the Trust against all liabilities arising out of the creation, operation, administration, enforcement or termination of the Trust, including actions taken or omitted in fulfillment of their duties with respect to the Trust, except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(f)     The Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

Section 5.8     _Protective Provisions._

(a)     Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 5.8.

(b)     In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all

16

communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder.  A successor to any Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege.  No Beneficiary or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.

(c)     To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating hereto, to the Trust or to the Beneficiaries, it is hereby understood and agreed by the Parties and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, including Section 3806 of the Act, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trustee, provided, however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to Section 5.7 herein.

(d)     No Trust Indemnified Party shall be personally liable under any circumstances, except for their own willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction.

(e)     No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties, and powers hereunder.

(f)     In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.9     *Indemnification.*

(a)     Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of Delaware, is entitled to indemnify, hold harmless and defend such persons against any and all liabilities, expenses, claims, damages or losses (including attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

17

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

(c)    The Trustee shall purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)    The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Termination or modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)    The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

Section 5.10    *Bond.* The Trustee and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 5.11    *Delaware Trustee.*

(a)    There shall at all times be a Delaware Trustee.  The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware, or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 5.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 5.11(c) below.  For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder.  The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein.

18

The Delaware Trustee shall be a trustee of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act.  There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Trust or the Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.  The Delaware Trustee shall have no liability for the acts or omissions of the Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, bad faith, or fraud.  The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction.  The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may, at the expense of the Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)     The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns, and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 5.11(d) below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee, provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 5.11(d) below, provided further, that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee.  If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees

and expenses due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement.  The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust in accordance with Section 3810 of the Act.

(e)    Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)    The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Trust and the Delaware Trustee, which compensation shall be paid by the Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement.  The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)    The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee.  The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document, other than this Trust Agreement.  Neither the Delaware Trustee nor any of its directors, officers, employees, agents, or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Trust, the Trustee, or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party.  The Delaware Trustee may assume performance by all such persons of their respective obligations.  The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person.  The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not, be regarded as making nor be required to make, any representations thereto.

(h)    The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or

20

governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(i)     In no event shall the Delaware Trustee be responsible or liable for any action taken in good faith, errors in judgement or any special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Delaware Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

(j)     The Delaware Trustee is hereby authorized to take such action as the Trustee specifically directs in written instructions delivered to the Delaware Trustee and shall have no liability for acting in accordance therewith. The Delaware Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties, not only as to due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein.

(k)     Notwithstanding anything herein to the contrary, the Delaware Trustee shall not be required to take any action that is in violation of applicable law.

(l)     The Corporate Transparency Act (31 U.S.C § 5336) and its implementing regulations (collectively, the "**CTA**"), may require the Trust to file reports with the Financial Crimes Enforcement Network ("**FinCEN**") from time to time.  It shall be the Trustee's duty and not the Delaware Trustee's duty to cause the Trust to make such filings, as applicable, and to cause the Trust to comply with its obligations under the CTA, if any.  The parties hereto acknowledge that the Delaware Trustee acts solely as a directed trustee at the direction of the Trustee hereunder and that the Trustee is and shall deemed to be the party with the power and authority to exercise substantial control over the Trust.

Section 5.12    *Meeting Minutes*. The minutes of Trust meetings shall be kept in written form (which may be electronic) at such place or places designated by the Trustee.

Section 5.13    *Matters Requiring Consultation with TAC*. The Trustee shall consult with the TAC on each of the following:

(a)     The form(s) of acceptance and release to be executed by a Beneficiary for an Expedited Distribution and for a Personal Injury Claim and an Indirect Claim;

(b)     An annual estimate of the budget for the Trust Operating Expenses;

(c)     The determination of the Initial Payment Percentage, any subsequent adjustment to the Initial Payment Percentage, and any Supplemental Payment Percentage; and

(d)     The form and substance of the questionnaire required in connection with a Trust Claim Submission under the TDPs.

21

Section 5.14    *Matters Requiring Consent of TAC*. The Trustee shall obtain the consent of the TAC, or, otherwise, Bankruptcy Court approval in the event of a dispute in accordance with Section 7.16 hereof, for the items listed below:

(a)    Any proposed modification to the indemnification provisions of the Trust Agreement;

(b)    Any proposed sale, transfer or exchange of Trust Assets above $[    ] (any proposed sale of Trust Assets below such amount shall not require TAC consent);

(c)    Any proposed material modifications to the Trust Agreement and/or the TDPs, if and as required by the consent provisions set forth therein;

(d)    Any proposed removal of the Trustee in accordance with Section 5.2(c);

(e)    Any proposed extension of the deadlines set forth in the TDPs; and

(f)    Any proposed modification to the compensation of the Trustee after December 31, 2024.

The consent of the TAC shall not be unreasonably withheld, conditioned, or delayed.

Section 5.15    *Trustee's and TAC's Employment of Professionals.*

(a)    The Trustee may, but is not required to, retain and/or consult accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed appropriate by the Trustee to assist in matters for the Trust within the Trustee's purview (the "**Trust Professionals**").

(b)    The TAC may, but is not required to, retain and/or consult, legal counsel and such other parties deemed appropriate by the TAC to assist in matters within the TAC's purview (the "**TAC Professionals**"), provided that no TAC Professionals may be retained to act on behalf of any holder of a Trust Claim.  The Trust shall promptly reimburse, or pay directly if so requested, the TAC for all reasonable and documented fees and costs associated with the TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder.

### ARTICLE 6.
### TRUST ADVISORY COMMITTEE

Section 6.1    *Members; Action by Members.*The TAC shall be composed of [●] members appointed to represent the interests of holders of Trust Claims.  The initial TAC members shall be the following: [●].  Except as otherwise set forth in the Trust Documents, the TAC shall act by majority vote of TAC members then serving, provided, however, the TAC may continue to act in

the event of one or more vacancies on the TAC, in which case majority vote of the TAC members then serving shall be required for action by the TAC.

Section 6.2    *Duties.* The members of the TAC shall serve in a fiduciary capacity representing holders of Trust Claims.  The TAC shall not have any fiduciary duties or responsibilities to any party other than holders of Trust Claims.  Except for the duties and obligations expressed in this Trust Agreement and the TDPs, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TAC.  To the extent that, at law or in equity, the TAC has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other parties hereto, or any Beneficiary, such duties and liabilities are replaced by the duties and liabilities of the TAC expressly set forth in this Trust Agreement and the TDPs.

Section 6.3    *TAC Information Rights*. The TAC shall have reasonable access to the Trust's consultants and other advisors retained by the Trust and its staff (if any), and information available to the Trustee, which access shall be made available as determined by the Trustee in his or her discretion.

Section 6.4    [Reserved.]

Section 6.5    *Term of Office.*

(a)    Each member of the TAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) below, (iii) his or her removal pursuant to Section 6.5(c) below, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(b)    A member of the TAC may resign at any time by written notice to the other members of the TAC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)    A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the member of the TAC has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall require the majority vote of the other members of the TAC and such removal shall take effect only upon the approval of the Bankruptcy Court.

Section 6.6    *Appointment of Successor.*

(a)    In the event of a TAC member vacancy, the remaining TAC members shall propose an individual as successor, subject to the approval of the Trustee, which approval may not be unreasonably withheld.  In the event a successor TAC member is not appointed within sixty (60) days following the occurrence of such vacancy, the Bankruptcy Cour may appoint a successor TAC member upon motion of the Trustee.

23

(b)     Each successor member of the TAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) above, (iii) his or her removal pursuant to Section 6.5(c) above, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(c)     No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member.  No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member.  No TAC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 6.7     *Compensation and Expenses of the TAC.*The members of the TAC shall not be entitled to compensation for their services but shall be reimbursed promptly for all reasonable and documented ordinary and customary out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder, subject to the limitation of Section 7.16 below.  The Trust shall include a description of the amounts paid under this Section 6.7 in the Annual Report to be filed with the Bankruptcy Court and posted on the Trust's Website.

Section 6.8     *Procedures for Consultation with and Obtaining the Consent of the TAC.*

(a)     Consultation Process.

(i)     In the event the Trustee is required to consult with the TAC pursuant to Section 5.13 above, the Trustee shall provide the TAC with written advance notice of the matter under consideration, to the extent practicable, and with all relevant information and documents concerning the matter as is reasonably practicable under the circumstances.  The Trustee shall also provide the TAC with such reasonable access to the consultants and other advisors retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustee is considering such matter, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee, to the extent practicable.

(ii)     In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 6.8(a), the Trustee shall take into consideration the time required for the TAC to meet and consult as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least five (5) Business Days after providing the TAC with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived in writing by the TAC or at a meeting where the TAC and Trustee are present, or the Trustee determines in his reasonable discretion that definitive action is required earlier.

(b)     Consent Process.

(i)     In the event the Trustee is required to obtain the consent of the TAC pursuant to the Trust Documents, the Trustee shall provide the TAC with a written notice stating that its consent is being sought, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action. The Trustee shall provide the TAC as much relevant additional information concerning the

24

proposed action as is requested by the TAC and as is reasonably practicable under the circumstances. The Trustee shall also provide the TAC with such reasonable access to the Trust consultants and other advisors retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii)     For matters requiring the consent of the TAC:

(A)     The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee, in writing, of its consent or its objection to the proposed action within five (5) Business Days of receiving the original request for consent from the Trustee, unless the Trustee extends the time for such response. The TAC may not withhold its consent unreasonably. If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the TAC does not advise the Trustee, in writing, of its consent or its objections to the action within five (5) Business Days of receiving notice regarding such request (or within such additional time as may be granted by the Trustee in his or her discretion), the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(B)     If, after following the procedures specified in this Section 6.8(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the TAC shall resolve their dispute pursuant to Section 7.16 below, provided, however in that event the TAC shall have the burden of proof to show the validity of the TAC's objection.

## ARTICLE 7.
## GENERAL PROVISIONS

Section 7.1     *Irrevocability.* To the fullest extent permitted by applicable law, the Trust is irrevocable. The Settlor shall not (i) retain any ownership or residual interest whatsoever with respect to any Trust Assets, including, but not limited to, the funds transferred to fund the Trust, and (ii) have any rights or role with respect to the management or operation of the Trust, or the Trustee's administration of the Trust.

Section 7.2     *Term; Termination.*

(a)     The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the following provisions.

(b)     The Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution of the Trust because (i) all reasonably expected assets have been collected by the Trust, (ii) all distributions have been made to the extent set forth in the TDPs, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining Trust obligations and Trust Operating Expenses in a manner consistent with the Trust Documents, and (iv) a final accounting has been filed and approved by the Bankruptcy Court.

(c)  Following the dissolution and distribution of the Trust Assets, the Trust shall terminate, and the Trustee and the Delaware Trustee (acting solely at the written direction of the Trustee) shall execute and cause a Certificate of Cancellation of the Certificate of Trust to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

(d)  After termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until its duties hereunder have been fully performed, and shall retain the books, records, documents, and files that shall have been delivered to or created by the Trustee until the date required by applicable law.  At the Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (i) the first anniversary of the filing of the Certificate of Cancelation of the Trust, and (ii) the date until which the Trustee is required by applicable law to retain such books, records, documents and files.

(e)  If, at the time of the termination of the Trust there remains unclaimed property in such Trust, such property shall be donated by the Trustee to the Anthony H.N. Schnelling Endowment Fund maintained by the American Bankruptcy Institute, to assist in the provision of resources for research and education, provided that such fund is a tax-exempt entity in good standing under applicable laws.

(f)  Upon termination of the Trust and accomplishment of all activities described in this agreement, the Trustee and its professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Trustee or his agents or representatives).  The Trustee may, at the expense of the Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

Section 7.3  *Outgoing Trustee Obligations*. In the event of the resignation or removal of the Trustee, the resigning or removed Trustee shall:

(a)  execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee;

(b)  deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee;

(c)  otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee; and

(d)  irrevocably appoint the successor Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place, and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust

26

Agreement.  Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment.  The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee.

Section 7.4      *Taxes*.

(a)      The Trust is intended to qualify as a "qualified settlement fund" within the meaning of the QSF Regulations.

(b)      The Trustee shall be the "administrator" of the Trust within the meaning of the QSF Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust, if any, out of the Trust Assets, which assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of Trust as a qualified settlement fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

(c)      As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the Trust shall make a good faith valuation of the Aggregate Settlement Consideration and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes.  In connection with the preparation of the valuation contemplated hereby, the Trust shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d)      The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution.  All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Trust Agreement.  The Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order and this Trust Agreement.  In order to receive distributions, all Beneficiaries shall be required to provide tax information to the Trustee to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes. The Trustee may refuse to make a payment or distribution unless or until such information is delivered; provided, however, that, upon the delivery of such information, the Trustee shall make such delayed payment or distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such distribution shall irrevocably revert to the Trust.  In no event shall any escheat to any federal, state or local government or any other entity.

27

Section 7.5     *Modification.*

(a)     Material modifications to this Trust Agreement, including Exhibits hereto, may be made only with the consent of the Trustee, the TAC (which consent in each case shall not be unreasonably withheld, conditioned or delayed) and subject to the approval of the Bankruptcy Court; provided, however, that the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make minor corrective or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten (10) days after notice to the Bankruptcy Court.  Except as permitted pursuant to the preceding sentence, the Trustee shall not modify this Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court.  The Trustee shall file notice of any modification of this Trust Agreement with the Bankruptcy Court and post such notice on the Trust Website.

(b)     Notwithstanding subsection (a) of this Section 7.5, no material modifications may be made to this Section 7.5 of this Trust Agreement without the consent of the Trustee, the unanimous consent of the TAC, and subject to the approval of the Bankruptcy Court.

(c)     Notwithstanding anything set forth in this Trust Agreement to the contrary, none of this Trust Agreement, nor any document related thereto shall be modified or amended in any way that could jeopardize or impair (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan and Confirmation Order, (iii) the Trust's qualified settlement fund status under the QSF Regulations, or (iv) the rights, duties, liabilities and obligations of the Delaware Trustee without the written consent of the Delaware Trustee.

Section 7.6     *Communications.*The Trustee shall establish and maintain the Trust Website and post on the Trust Website the information required by this Trust Agreement, and such other information as the Trustee determines.

Section 7.7     *Severability.*If any provision of this Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 7.8     *Notices.*Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by email or facsimile pursuant to the instructions listed below, or mailed by overnight courier, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing

or by electronic transmittal to each of the other parties listed below in compliance with the terms hereof.

To the Trustee:



with a copy (which shall not constitute notice) to:

To the Delaware Trustee:

with a copy (which shall not constitute notice) to:
To the TAC:

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 7.9    *Successors and Assigns*. The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, the TAC, the Delaware Trustee and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its, or their, rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustee, as contemplated by Section 2.1 and Section 5.2 above, and in the case of the Delaware Trustee, as contemplated by Section 5.11 above.

Section 7.10    *Limitation on Transferability; Beneficiaries' Interests*. The Beneficiaries' interests in the Trust shall not (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void *ab initio*; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the Trust or the Trust Assets; (e) entitle the holders thereof to seek the removal or replacement of any Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holders thereof to receive any interest on distributions;

29

and (g) give rise to any rights to seek a partition or division of the Trust Assets.  In accordance with the Act, the Beneficiaries shall have no interest of any kind in any of the Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of but only to the extent such cash assets are declared by the Trustee to be distributable as distributions in accordance with the Trust Documents. For the avoidance of doubt, the Beneficiaries shall have only such rights as expressly set forth in the Trust Documents.

Section 7.11   *Exemption from Registration*. The Parties hereto intend that the rights of the Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

Section 7.12   *Entire Agreement; No Waiver*. The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 7.13   *Headings*. The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

Section 7.14   *Governing Law*. This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. For the avoidance of doubt, none of the following provisions of Delaware law shall apply to the extent inconsistent with the terms of the Trust Documents:  (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets, (g) the existence of rights or interests (beneficial or otherwise) in trust assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware

30

Trustee, the TAC, or the FCR set forth or referenced in this Trust Agreement.  12 Del. C. § 3540 shall not apply to the Trust.

Section 7.15    *Dispute Resolution.*

(a)    Except as provided in Section 5.2(c) (Removal of Trustee for Cause), the dispute resolution procedures of this Section 7.16 shall be the exclusive mechanism to resolve any dispute between or among the parties hereto (other than the Delaware Trustee), and the Beneficiaries hereof, arising under or with respect to this Trust Agreement.  For the avoidance of doubt, this section does not apply to the Delaware Trustee in any respect.

(b)    **Informal Dispute Resolution**.  Any dispute under this Trust Agreement shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**").  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed fifteen (15) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties.  If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(c)    **Formal Dispute Resolution**.  If the Trustee and TAC consent, a dispute hereunder may be resolved by alternative dispute resolution.

(d)    **Judicial Review**.  The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over any dispute, such court as has jurisdiction under Section 1.7 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute.  The motion must be filed within seven (7) days of receipt of the last counterparty's statement of position pursuant to the preceding subparagraph.  The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation, and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Trust. Each counterparty shall respond to the motion within the time period allowed by the rules the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court. In the case of any dispute pursuant to this Section 7.16(d), if the dispute arose pursuant to the consent provisions of Section 5.14 or Section 7.5, the Court shall initially determine, by a preponderance of the evidence, whether the party or parties who withheld consent were reasonable in such action.  If the Court so determines, then the Court will determine whether the requested action is in the best interests of the Trust and its Beneficiaries.

(e)    Notwithstanding anything to the contrary in this Trust Agreement, the Trust shall bear the reasonable costs and expenses of the TAC in connection with any dispute that arises under this Trust Agreement.

Section 7.16   *Waiver of Jury Trial*. Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

Section 7.17   *Effectiveness*. This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 7.18   *Counterpart Signatures*. This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.  A signed copy of this Trust Agreement or any amendment hereto delivered by facsimile, email, or other means of electronic transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

*[SIGNATURE PAGES TO FOLLOW]*

32

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

SETTLOR:

TRUSTEE:

DELAWARE TRUSTEE:

TAC MEMBER:

TAC MEMBER:

TAC MEMBER:

TAC MEMBER:

TAC MEMBER:

*[Signature Page to Trust Agreement]*

**EXHIBIT 1**
**AGGREGATE SETTLEMENT CONSIDERATION**

**EXHIBIT 2**
**CERTIFICATE OF TRUST**

**EXHIBIT 3**
**TRUST DISTRIBUTION PROCEDURES FOR PERSONAL INJURY CLAIMS**

**EXHIBIT 4**
**TCC PROFESSIONAL FEE ESCROW ACCOUNT**

**EXHIBIT 5**
**INVESTMENT GUIDELINES**