## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**JOINT MOTION OF THE TORT CLAIMANTS' COMMITTEE,
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR
FOR ENTRY OF ORDER (I) APPROVING DISCLOSURE STATEMENT
AND FORM AND MANNER OF NOTICE OF HEARING THEREON,
(II) ESTABLISHING SOLICITATION PROCEDURES, (III) APPROVING
FORM AND MANNER OF NOTICE TO CLAIM HOLDERS (IV) APPROVING
FORM OF BALLOTS, (V) APPROVING FORM, MANNER, AND SCOPE OF
CONFIRMATION NOTICES, (VI) ESTABLISHING CERTAIN DEADLINES
IN CONNECTION WITH APPROVAL OF DISCLOSURE STATEMENT
AND CONFIRMATION OF PLAN, AND (VII) GRANTING RELATED RELIEF**

The Official Committee of Tort Claimants (the "TCC"), the Official Committee of Unsecured Creditors (the "UCC") and Tehum Care Services Inc. (f/k/a Corizon Health Services, Inc.) the debtor and debtor in possession (the "Debtor" and, together with the TCC and the UCC, the "Plan Proponents"), in the above captioned chapter 11 case (the "Chapter 11 Case") pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court" or the "Court") by and through their undersigned counsel, hereby submit this motion (the "Motion") seeking entry of an order substantially in the form attached hereto as **Exhibit A** (the "Solicitation Procedures Order"), pursuant to sections 105(a), 341, 365, 502, 521, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]  The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is:  205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

Rules"), and Rules 1075-1, 2002-1 and 3016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures") made applicable to this Chapter 11 Case by Local Rule 1075-1:

- approving the disclosure statement (Docket No. 1740) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") for the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Docket No. 1739) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan")[2];

- approving the form and manner of notice of the hearing to consider approval of the Disclosure Statement (the "Disclosure Statement Hearing" and the "Disclosure Statement Hearing Notice"), substantially in the form attached hereto as **Exhibit B**;

- establishing procedures for the solicitation and tabulation of votes on the Plan (the "Solicitation Procedures"), substantially in the form attached to the Solicitation Procedures Order as Exhibit 1;

- approving the form and manner of the notice Holders of Claims of the process for opting out of the Consensual Claimant Release (the "Opt-Out Release Form"), substantially in the form attached to the Solicitation Procedures Order as Exhibit 2;

- approving the forms of the ballot to be used by Holders of Claims voting on the Plan (the "Ballot"), substantially in the forms attached to the Solicitation Procedures Order as Exhibits 3-1, 3-2, 3-3, and 3-4, respectively;

- approving the form, manner, and scope of (a) notice of the hearing to consider confirmation of the Plan (the "Confirmation Hearing Notice" and the "Confirmation Hearing," respectively), substantially in the form attached to the Solicitation Procedures Order as Exhibit 4-1, (b) newspaper publication notice of the Confirmation Hearing (the "Publication Notice"), substantially in the form attached to the Solicitation Procedures Order as Exhibit 4-2, (c) notice to applicable Holders of Claims and Equity Interests that are Unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, or are Impaired and are presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code (the "Notice of Non-Voting Status"), substantially in the form attached to the Solicitation Procedures Order as Exhibit 4-3, and (d) notice to the Executory Contact and Unexpired Lease counterparties, substantially in the form

---

2   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

attached to the Solicitation Procedures Order as <u>Exhibit 4-4</u>, and a list of contracts that the Debtor proposes to assume and assign to be included as an attachment to said notice substantially in the form attached to Exhibit 4-4 as Schedule A (with Schedule A, the "<u>Contract/Lease Notice</u>" and, together with the Confirmation Hearing Notice, the Publication Notice, and the Notice of Non-Voting Status, the "<u>Confirmation Notices</u>");

- approving the form of letter (the "<u>TCC Cover Letter</u>") that the TCC will send to Holders of PI/WD Claims entitled to vote to accept or reject the Plan recommending that such parties vote in favor of the Plan, substantially in the form attached to the Solicitation Procedures Order as <u>Exhibit 4-5</u>;

- approving the form of letter (the "<u>UCC Cover Letter</u>") that the UCC will send to Holders of GUC Claims entitled to vote to accept or reject the Plan recommending that such parties vote in favor of the Plan, substantially in the form to be attached to the Solicitation Procedures Order and to be filed with the Court prior to the Disclosure Statement Hearing;

- establishing certain deadlines in connection with the foregoing; and

- granting related relief.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. This Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution. To the extent that it is later determined that this Bankruptcy Court, absent consent of the parties, cannot do so, the Plan Proponents confirm their consent to the Bankruptcy Court entering a final order in connection with this Motion.

3. Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105(a), 341, 365, 502, 521, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016,

3017, 3018, 3020, 9006, and 9008, Local Rules 1075-1, 2002-1 and 3016-1, and the Complex Case Procedures.

## **INTRODUCTION**

5.      The Plan Proponents designed the Plan to satisfy the interests and concerns of the creditors in this Chapter 11 Case.  After the Bankruptcy Court raised concerns about the first plan proposed by the Debtor and the UCC (Docket Nos. 985, 1043 & 1071-72), denied the motion filed by the Debtor and the UCC seeking approval of a settlement agreement entered into as of January 5, 2024, by and among the Debtor, the UCC, and certain other parties (*see* Docket Nos. 1259 & 1505), and denied a motion to dismiss filed by the TCC, the parties returned to mediation and sought to mutually agree on a plan.  The parties were successful in that mediation, which resulted in a settlement and plan structure that is supported by the Plan Proponents.

6.      The TCC had several requirements for any settlement, each of which is embodied or reflected in the proposed Plan.

7.      **<u>First</u>**, the TCC would not and does not support a chapter 11 plan or settlement conditioned on the approval of so-called *Purdue* releases or their equivalent.[3]  Such releases are unlawful in the Fifth Circuit (pre- or post-*Purdue*).[4]  Thus, any settlement conditioned upon the approval of such releases would be illusory and would only accomplish delay.

8.      Both the TCC and the UCC place a premium on time and, therefore, prefer and support a plan structure that is designed to deliver compensation to all creditors in the near term.  As a result, for the TCC and the UCC to support any plan structure, it would have to avoid the

---

[3]    *See Harrington v. Purdue Pharma L.P.*, 219 L. Ed. 2d 721, 732-40, 144 S.Ct. 2071, 603 U.S. --- (2024).

[4]    *See Bank of N.Y. Tr. Co. v. 9 Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 251-53 (5th Cir. 2009); *In re Coho Res., Inc*., 345 F.3d 338, 342-43 (5th Cir. 2003); *Hall v. Nat'l Gypsum Co*., 105 F.3d 225, 229 (5th Cir. 1997); *Feld v. Zale Corp*., 62 F.3d 746, 759-62 (5th Cir. 1995); *Matter of Edgeworth*, 993 F.2d 51, 53–54 (5th Cir. 1993).

delay that would result from years of appeals so that plan payments can begin starting in 2025. The proposed Plan does not include nonconsensual third-party releases or their equivalent.

9.      **Second**, the TCC would not and does not support a chapter 11 plan or settlement predicated on a "bankruptcy discount."  The Debtor in this case was created through a divisional merger and has no operating assets.  But Corizon Health Services, Inc., the Debtor's predecessor in interest, did have operating assets and meaningful operations prior to the divisional merger.

10.      While Corizon Health Services, Inc. was not a Fortune 50 company—*i.e.*, a company that by all accounts can easily pay all its debts in full and as they arise in the ordinary course of business—the TCC was unwilling to give any credit to the use of the so-called "Texas Two-Step."  The settlement proposed here must be considered "fair and reasonable" on its own terms and based on the willingness of claimants to support it and not because the settlement is taking place in a bankruptcy case.

11.      The plan architecture created by the TCC with the UCC facilitates a consensual resolution of the Chapter 11 Case consistent with both of the foregoing objectives.  This plan architecture is supported by the Debtor and YesCare, Corp. and other non-debtor affiliates (the "Settling Parties").  Under the Plan, the Holders of personal injury or wrongful death claims ("PI/WD Claims"),[5] denoted as "PI/WD Claimants" in the Plan,[6] will be afforded three options for liquidating their Claims against the Debtor.

---

5  "PI/WD Claim" means any unsecured Claim against the Debtor that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim within the meaning of 28 U.S.C. § 157(b)(2)(B), including any PI/WD Claim against the Debtor regardless of whether such Claim is alleged to have been allocated to CHS TX, Inc. or YesCare Corp. under the Plan of Divisional Merger.  Plan at § I.A.142.  The term PI/WD Claim does not include Indirect PI/WD Claims.  *Id.*

6  "PI/WD Claimant" means the Holder of a PI/WD Claim.  Plan at § 1.A.143.  "Holder," in turn, means any Person or Entity holding a Claim or an Interest.  *Id.* at § I.A.105.

12.     **First**, PI/WD Claimants may elect to participate in the plan settlement negotiated by the TCC, the UCC, and the Debtor.  The Plan provides for the creation of a settlement trust for PI/WD Claimants (the "PI/WD Trust").  The PI/WD Trust will assume the Debtor's obligation to pay the PI/WD Claims asserted by PI/WD Claimants who consent to the Consensual Claimant Release under the Plan.  Holders of PI/WD Claims who do **not** consent to this release will not be eligible to receive a distribution from the PI/WD Trust on account of their PI/WD Claims.

13.     The PI/WD Trust will be funded with cash payments totaling $25 million, plus interest, a 50/50 allocation of the Debtor's Employee Retention Credits, and a 50/50 allocation of the Debtor's remaining assets (collectively, the "PI/WD Trust Assets").  The cash payments will be contributed to the PI/WD Trust over thirty (30) months following the Effective Date.

14.     The PI/WD Trust Assets will be allocated among the Holders of allowed PI/WD Claims using trust distribution procedures (the "PI/WD Trust Distribution Procedures" or "TDPs").  The TDPs, which are set forth in the Disclosure Statement and are attached as an exhibit to the Plan, include a claims matrix and scaling factors that will be used to assign values to each eligible PI/WD Claim.  For example, a PI/WD Claim based on wrongful death will be assigned a dollar value between $1.2 million and $1.597 million.  A PI/WD Claim involving complete or significant loss of mobility will be valued at between $600,000 and $798,600.

15.     The PI/WD Trust Assets will be allocated on a *pro rata* basis to the Holders of allowed PI/WD Claims.  For example, if the total amount of all allowed PI/WD Claims is $90 million, and if the PI/WD Trust Assets available for distribution are worth $30 million, then each Holder of an allowed PI/WD Claim would receive distributions equal to 33.3% of the value of his or her claim ($30 million / $90 million = 33.3%).  The PI/WD Trust Assets are the numerator and the total amount of allowed PI/WD Claims is the denominator.  In this scenario (*i.e.*, assuming a

payment percentage of 33.3%), the Holder of an allowed PI/WD Claim for wrongful death valued at $1.2 million would receive payments totaling $400,000.

16.     Only Holders of PI/WD Claims who have timely filed individual proofs of claim in the Chapter 11 Case will be eligible to participate in the PI/WD Trust.  No additional trust funding is contemplated—*i.e.*, the PI/WD is a limited fund.  If the universe of eligible PI/WD Claims unexpectedly expands after the Disclosure Statement is approved, then Holders of allowed PI/WD Claims who timely filed proofs of claim would see their recoveries diluted.  The PI/WD Trust guardrails and eligibility criteria are intended to avoid such an outcome and ensure that expectations are consistent with actual outcomes.

17.     The Disclosure Statement includes a range of possible payment percentages so that Holders of PI/WD Claims will understand what their likely recoveries will be from the PI/WD Trust.  Until all PI/WD Claims are allowed, and all PI/WD Trust Assets are liquidated, the TCC cannot offer an amount certain for any individual PI/WD Claim.  However, since at least $25 million of the PI/WD Trust Assets are cash contributions, the TCC can offer a "high" and a "low" with some degree of certainty given the current claimant population.  One of the reasons why the TCC insisted on cash funding for the PI/WD Trust was so that the TCC could offer PI/WD Claimants a fair sense of their likely recoveries from the PI/WD Trust prior to plan voting and, more importantly, before PI/WD Claimants agree to the Consensual Claimant Release.

18.     PI/WD Claimants who elect to participate in the PI/WD Trust can pursue recoveries from other co-liable parties, including governmental claimants.  Participating in the PI/WD Trust does not cut off or limit a PI/WD Claimant's ability to pursue such recoveries.  Participating in the PI/WD Trust is akin to entering into a good faith settlement with one of several defendants in the

tort system.  The plaintiff, and thus the relevant PI/WD Claimant, can continue to pursue co-liable defendants that do not settle.

19.     However, PI/WD Claimants **cannot** "Opt Out" of the Consensual Claimant Release under the Plan and participate in the PI/WD Trust.  Participating in the PI/WD Trust is akin to entering into a voluntary settlement with the Settling Parties and their insiders and affiliates.

20.     The Settling Parties and their non-debtor insiders and affiliates will **not** fund the settlement payments unless they receive a release similar in scope to the release that a claimant would be required to sign as a condition to entering into a voluntary settlement outside of bankruptcy.  The Consensual Claimant Release mirrors this type of release.

21.     The TCC anticipates that most PI/WD Claimants will elect to participate in the PI/WD Trust and will not "Opt Out."  Participants in the PI/WD Trust will have the ability to recover meaningful compensation from the Debtor in the near term and, if available, seek additional recovery from other potentially liable parties.  Both the limits and the benefits of the Consensual Claimant Release are spelled out in the Plan Documents.  PI/WD Claimants that are considering this option should carefully review the Disclosure Statement and the TDPs and consult with their legal counsel before making any decisions.

22.     **Second**, PI/WD Claimants may elect to pursue insurance recoveries in the Civil Justice System.[7]  This is referred to herein as the "Insurance Opt Out" and is further described in Article IV.C of the Plan.  Claimants who make this election may seek a recovery on account of their PI/WD Claims from available insurance coverage in the tort system and may name the PI/WD

---

[7] "Civil Justice System" means any non-bankruptcy federal, state, foreign, cross-border, or international adjudicatory system, whether private or public; judicial, administrative, arbitral, or mediative; or adversarial or non-adversarial.  Plan at § I.A.27.  In the context of personal injury lawsuits in the United States, it is coterminous with the term "tort system," which is used interchangeably in this Motion.

Trust as a defendant in that litigation, *provided*, *however*, that the "Insurance Opt Out" claimants may not name a Released Party as a defendant and will not receive a distribution from the PI/WD Trust so long as they remain "Insurance Opt Outs."

23.     Claimants who make the "Insurance Opt Out" election will still be deemed to provide the Consensual Claimant Release and are not ***true*** "Opt Outs" in this respect.  Rather, their recoveries will be limited to available insurance coverage, if any, unless they elect to return to the PI/WD Trust in accordance with the TDPs.  By providing the Consensual Claimant Release, these Claimants will have the ability to test the waters in the Civil Justice System to pursue insurance recoveries while, at the same time, retaining an ability to return to the PI/WD Trust under certain circumstances.

24.     The TCC anticipates that PI/WD Claimants who make the "Insurance Opt Out" election will promptly enter into mediation with potentially responsible insurers and other parties that may be co-liable for the applicable PI/WD Claims and that are also insureds under the policies. PI/WD Claimants that are considering this option should carefully review the Disclosure Statement and the TDPs and consult with their legal counsel before making any decisions.

25.     The inclusion of the Insurance Opt Out was important to the TCC because it should provide PI/WD Claimants who have access to significant insurance recoveries with the ability to obtain those recoveries in a manner similar to what could happen if this Chapter 11 Case were converted to chapter 7 and no plan is confirmed.  Thus, the Plan supported by the TCC and the UCC should satisfy the so-called "best interests" test under section 1129(a)(7) of the Bankruptcy Code.

26.     **Third**, PI/WD Claimants may elect to "Opt Out" entirely of the settlement and pursue their PI/WD Claims against YesCare Corp., CHS TX, Inc., or any other alleged successor

entity under the doctrine of successor liability in the Civil Justice System.  These Claims are referred to as "Opt-Out PI/WD Claims" or ***true*** "Opt Outs."  Holders of Opt-Out PI/WD Claims will ***not*** receive any portion of the PI/WD Trust Assets.

27.     Holders of Opt-Out PI/WD Claims will have the ability to assert claims against YesCare, Corp., CHS TX, Inc., and other alleged successor entities based on the doctrine of successor liability.  This is clearly set forth in Article III.D and Article IX.K of Plan and the corresponding articles of the Disclosure Statement so that there is no ambiguity on this issue. Holders of Opt-Out PI/WD Claims, however, will **not** have the ability to assert Avoidance Actions,[8] including fraudulent transfer claims, against the Released Parties because those Causes of Action will be settled under the Estate Party Settlement.

28.     Holders of Opt-Out PI/WD Claims will not have their recoveries capped by the TDPs.  Instead, they will have to litigate their claims on the merits and prevail in the civil justice system and then seek to collect.  Claimants who make this election may face years of litigation and appeals and will **not** have the ability to return to the PI/WD Trust under any circumstances. The inclusion of this option in the plan architecture ensures that like any settlement offer made outside of bankruptcy, claimants can reject the Plan Proponents' proposed settlement and pursue their claims in the tort system.

29.     Because the Plan contains a true "Opt Out," the Consensual Claimant Release is, from the TCC's and the UCC's perspective, truly consensual.  PI/WD Claimants that are

---

8   "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination or other claims, causes of action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s), cause(s) of action or remedy(ies) were commenced prior to the Effective Date.  Plan at § I.A.10.

considering this option should carefully review the Disclosure Statement and the TDPs and consult with their legal counsel before making any decisions.

30.     Whether the Plan will be confirmed and whether the settlement negotiated by the TCC and the UCC will go into effect will depend on the level of participation in the settlement itself.  For example, if all PI/WD Claimants elect to "Opt Out" and do not provide the Consensual Claimant Release, there would be no point to the Settling Parties' funding the settlement.  Only PI/WD Claimants who provide the Consensual Claimant Release can recover from the PI/WD Trust.  The Settling Parties and their non-debtor insiders and affiliates could not reasonably be expected to fund a settlement trust if there are no beneficiaries.

31.     Likewise, if the Settling Parties were not willing to fund the settlement, there would be no reason for any claimants to provide the Consensual Claimant Release as the PI/WD Trust would lack sufficient funding to pay claims.  If the PI/WD Trust had no funding and could not make any distributions, there would be no reason for any PI/WD Claimant to provide a release to be eligible to participate and become a beneficiary of the PI/WD Trust.  The TCC and the UCC designed the Plan so that the trust funding determines the level of participation.

32.     To be fair to the Settling Parties, if the level of participation in the PI/WD Trust is too low, the Settling Parties may elect to terminate the settlement prior to the hearing on the confirmation of the Plan.  This walk away right is set forth in Article IV.B.5 of the Plan and is triggered if more than 5% of the current Holders of PI/WD Claims who are entitled to vote on the Plan elect to "Opt Out" of the Consensual Claimant Release before the voting deadline.[9]

---

[9]   The Estate Party Settlement does **not** terminate automatically if more than 5% in the number of current Holders of PI/WD Claims elect to "Opt Out."  Plan at § IV.B.5.  The Settling Parties could waive and elect to go forward with the Estate Party Settlement.  The Settling Parties, like the claimants here, will get to make an informed decision.

33.     The election to "Opt Out" must be made *before* the voting deadline established by the Court.  Thus, the Settling Parties will know the scope of the Consensual Claimant Release before the Confirmation Hearing and can make an informed decision based on the voting data. Claimants who do not "Opt Out" will be deemed to provide the Consensual Claimant Release.  If the Settling Parties elect to terminate the settlement, then the Chapter 11 Case may be dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

34.     Parties who want to "Opt Out" may still decide to vote in favor of the Plan.  Opting Out and voting in favor of the Plan are *two* separate things.  Parties who elect to "Opt Out," which is their right, may support the confirmation of the Plan because it may present the fastest path to pursue claims in the tort system.

35.     If the Plan is confirmed, "Opt Outs" will **not** face litigation over whether their claims against YesCare Corp, CHS TX, Inc., or any other alleged successor entity, to the extent asserted under the doctrine of successor liability, are Estate Causes of Action that can be settled by the Debtor's estate.  If the Plan is confirmed, "Opt Outs" will be free to pursue those claims under the doctrine of successor liability.  Likewise, parties who do not intend to "Opt Out" and who want the PI/WD Trust to be funded may also want to vote in favor of the Plan because if the Plan is not confirmed, then there will be no PI/WD Trust.

36.     At the insistence of the TCC and the UCC, the Plan will be solicited using a solicitation period of ninety (90) days.  This extended period is intended to ensure that claimants who are currently incarcerated in a federal, state, or local penal institution, prison, jail, reformatory, or similar correctional institution ("Incarcerated Claimants") have adequate time to receive and review the Disclosure Statement and TDPs and make an informed decision.  The TCC and the UCC can support the proposed settlement so long as the vast majority of the PI/WD Claimants in

this case support it and do not fully "Opt Out" of the Consensual Claimant Release, and no one is having their rights taken from them on an involuntary basis.

37.     The TCC and the UCC have gone to considerable lengths to propose a plan that is satisfactory to creditors in this Chapter 11 Case.  Holders of GUC Claims and Indirect Claims are also afforded options under the Plan as well for how their Claims will be treated.  All claimants entitled to vote on the Plan should carefully review the Disclosure Statement and consult with their legal counsel before making any decisions.  The TCC, the UCC, and the Debtor believe that the Plan presents the best possible outcome to this Chapter 11 Case.

## **BACKGROUND**

38.     On February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief in this Bankruptcy Court pursuant to chapter 11 of the Bankruptcy Code.   On February 16, 2023, the Bankruptcy Court entered the *Order Granting Complex Case Treatment* (Docket No. 6).  Since the Petition Date, the Debtor has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

39.     On March 2, 2023, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed seven creditors to the newly formed UCC pursuant to section 1102(a) and (b)(1) of the Bankruptcy Code.  *See* Docket No. 77.  On March 6, 2023, the U.S. Trustee added an eighth creditor to the UCC.  *See* Docket No. 145.  The UCC selected Stinson LLP as its counsel (*see* Docket Nos. 320, 321, 322, and 495) and Dundon Advisers LLC as its financial advisor (*see* Docket Nos. 450, 627, and 796).

40.     On November 20, 2023, the U.S. Trustee formed and appointed six eligible creditors to the TCC in this Chapter 11 Case pursuant to section 1102(a)(1) of the Bankruptcy Code.  *See* Docket No. 1127.  The TCC selected Berry Riddell LLC ("Berry Riddell") and Brown Rudnick LLP ("Brown Rudnick") as its proposed co-counsel on November 21, 2023, and 22, 2023,

respectively (*see* Docket Nos. 1225, 1227, 1231 & 1292), and Province, LLC ("Province") as its financial advisor on December 19, 2023 (*see* Docket Nos. 1256 & 1342).  The Bankruptcy Court subsequently approved the retention of Brown Rudnick, Berry Riddell, and Province, retroactive to the aforementioned retention dates.  *See* Docket Nos. 1293–94 & 1342.

41.     On May 2, 2023, before the TCC was appointed, the Bankruptcy Court entered an order (Docket No. 499) (the "Bar Date Order") that identified what entities, as defined in section 101(15) of the Bankruptcy Code, must file a Proof of Claim in this Chapter 11 Case and set the following deadlines for doing so:  (a) August 14, 2023, for all entities, holding claims against the Debtor that arose or are deemed to have arisen prior to the Petition Date (the "Claims Bar Date"); (b) the later of (i) the Claims Bar Date, and (ii) the date that is thirty (30) days following entry of the order approving the rejection of the applicable executory contract or unexpired lease of the Debtor for entities holding Claims arising from the Debtor's rejection of executory contracts and unexpired leases; and (c) the later of (i) the Claims Bar Date, and (ii) the date that is thirty (30) days from the date on which the Debtor mails notice of the amendment to its schedules for all entities holding Claims affected by any such amendment.

42.     By order dated March 3, 2023 (Docket No. 115), the Bankruptcy Court approved the Debtor's employment and retention of Verita Global as the Debtor's claims, noticing, and solicitation agent ("Claims Agent," "Noticing and Solicitation Agent," or "Solicitation Agent").[10] On August 14, 2024, the Claims Agent filed the latest version of the Master Service List, updated as of that date with this Bankruptcy Court, listing those parties that have requested notice pursuant to Bankruptcy Rule 2002 (and as may be modified, amended, or supplemented from time to time,

---

[10]  As part of this Motion, the Plan Proponents seek to appoint the Claims Agent as the Solicitation Agent for the Plan as well.  For this reason, the short term "Solicitation Agent" is used in the Solicitation Procedures Order, the exhibits attached therein, and the exhibits appended to this Motion.

the "2002 List").  As of October 2, 2024, the Debtor's claim register contains seven hundred and

seventy-two (772) filed claims.

## PLAN AND DISCLOSURE STATEMENT

43.    The Plan and Disclosure Statement are the product of the Plan Proponents'

collective review and analysis of the Debtor's assets and liabilities, the circumstances leading to

this Chapter 11 Case, and other significant events occurring during this Chapter 11 Case.

44.    Among other things, the Plan:  (a) facilitates the liquidation of the Debtor's estate;

(b) establishes, funds, and otherwise empowers one trust—*i.e.*, the PI/WD Trust—to address and

resolve all Channeled PI/WD Trust Claims, including certain Claims attributable to alleged

personal injury tort or wrongful death claims, and one trust—*i.e.*, the GUC Trust— to address and

resolve all Channeled GUC Trust Claims; (c) effectuates agreements reached by and among the

Debtor and the Committees; (d) provides for the payment of all allowed Professional Fee Claims;

and (e) otherwise maximizes the assets available for distribution to the Debtor's creditors.

45.    The Disclosure Statement describes every aspect of the Plan, its background, and

its reasons.  It details the proposed treatment for each class of Claims and Interests and the effect

of the Plan on the Holders of such Claims and Interests, including how the Trusts will be funded

and operate, procedures for resolving contingent claims and making distributions, and the like.

The Disclosure Statement explains the essence and extent of the Consensual Claimant Release, the

Estate Party Settlement, and the Channeling Injunction afforded by the Plan.

46.    In accordance with sections 1122 and 1123 of the Bankruptcy Code, the Plan

contemplates classifying Holders of Claims and Interests into various Classes for all purposes,

including with respect to voting on the Plan, as follows:

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| 1 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Administrative and Priority Claims Reserve on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) such date on which the Holder of such Other Priority Claim and the Debtor or Trustees, as applicable, shall otherwise agree in writing. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or the  GUC Trustee, as applicable, either: (i) payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the GUC Trustee, as applicable, shall otherwise agree in writing; (ii) the collateral securing such Allowed Other Secured Claim; or (iii) such other treatment that renders such Allowed Other Secured Claim Unimpaired. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Convenience Claims | On the first Business Day that is thirty (30) days following the Effective Date, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash. | Impaired | Entitled to Vote |
| 4 | Channeled GUC Claims | On the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Channeled GUC Claim agrees to less favorable treatment, each Holder of an Allowed Channeled GUC Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the GUC Trust.  Thereafter each such Holder shall receive Cash distributions from the GUC Trust in accordance with the terms and conditions set forth in the GUC Trust Documents.  Distributions from the GUC Trust to Holders of Allowed Channeled GUC Claims shall be on a Pro Rata basis with all other holders of GUC Trust beneficial interests in accordance with the terms of the GUC Trust Agreement.  Holders of Channeled GUC Claims shall not receive any payment from the GUC Trust unless and until such Claims are resolved in accordance with the GUC Trust Documents.   The GUC Trust Agreement establishes the method by with the Channeled GUC Claims will be resolved | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | and how such Claims will be submitted, processed, liquidated, and paid. Except as provided in the Plan, Holders of Channeled GUC Claims shall be enjoined from prosecuting or filing any Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.<br><br>Notwithstanding the above, each Holder of an Allowed Channeled GUC Claim shall have the option on the Ballot to elect for an Expedited GUC Distribution. Any Holder of a GUC Claim who elects for the Expedited GUC Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release. An election on the Ballot for an Expedited GUC Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot. An Expedited GUC Distribution shall be paid by the GUC Trustee on the later of (a) the Effective Date or (b) within ten (10) business days after such GUC Claim becomes an Allowed Claim by Final Order, provided, however, that the GUC Trustee shall not be required to pay such Expedited GUC Distribution until the first Business Day on which the GUC Trust has sufficient Cash on hand to make the Expedited GUC Distribution and satisfy the reserve requirements set forth in the GUC Trust Documents. | | |
| 5 | Opt-Out General Unsecured Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out GUC Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its GUC Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action. Except for the foregoing, Holders of Opt-Out GUC Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan. Consistent with the foregoing, each Holder of an Opt-Out GUC Claim may elect to pursue recovery on account of its GUC Claim from any of the Released Parties. Holders of Opt-Out GUC Claims shall not receive, and shall have no right to receive, a Distribution from the GUC Trust. | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| 6 | Channeled PI/WD Claims | Holders of Allowed Channeled PI/WD Claims shall be entitled to receive a distribution from the PI/WD Trust from the PI/WD Trust Assets. As of the Effective Date, the Debtor's liability for all Channeled PI/WD Claims shall be both incurred in full and assumed by the PI/WD Trust without further act, deed, or Court order and shall be administered and paid from the PI/WD Trust as set forth in the PI/WD Trust Documents. Holders of Channeled PI/WD Claims shall not receive any payment from the PI/WD Trust unless and until such Claims are resolved in accordance with the PI/WD Trust Documents. The PI/WD Trust Distribution Procedures establish the method by with the Channeled PI/WD Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid. Except as provided in the Plan, Holders of Channeled PI/WD Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.<br><br>Notwithstanding the above, and at all times subject to the requirements in Article III.B, each Holder of an Allowed Channeled PI/WD Claim shall have the option on the Ballot to elect for an Expedited PI/WD Claim Distribution. Any Holder of a Channeled PI/WD Claim who elects for the Expedited PI/WD Claim Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release. An election on the Ballot for an Expedited PI/WD Claim Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot. An Expedited PI/WD Claim Distribution shall be paid by the PI/WD Trustee within sixty (60) days following the Effective Date, subject to the terms of the PI/WD Trust Distribution Procedures, provided, however, that the PI/WD Trustee shall not be required to pay such Expedited PI/WD Distribution until the first Business Day on which the PI/WD Trust has sufficient Cash on hand to make the Expedited PI/WD Distribution and satisfy the reserve requirements set forth in the PI/WD Trust Documents. | Impaired | Entitled to Vote |
| 7 | Opt-Out PI/WD Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out PI/WD Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its PI/WD Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | been asserted by the Debtor as an Estate Cause of Action. Except for the foregoing, Holders of an Opt-Out PI/WD Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan. Consistent with the foregoing, each Holder of an Opt-Out PI/WD Claim may elect to pursue recovery on account of its PI/WD Claim from any of the Released Parties. Holders of Opt-Out PI/WD Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust. | | |
| 8 | Opt-Out Insured PI/WD Claim | The Holders of Opt-Out Insured PI/WD Claims shall be entitled to seek recovery on account of such Claims from any PI/WD Insurance Company. Such Holders shall be entitled to name as a defendant in any proceeding commenced or continued in the Civil Justice System the Debtor, the PI/WD Trust, and any other person or entity to the extent permitted under applicable law, provided, however, that such Holder may not name a Released Party as a defendant other than the Debtor. Claims that could have been asserted against the Debtor may be asserted against the PI/WD Trust, which will have the liabilities and defenses of the Debtor, subject to the limitations below on the Claimants' right to recover on any such Opt-Out Insured PI/WD Claim established through litigation. If such proceeding is commenced or continued, the PI/WD Trustee shall provide notice to and seek defense from each PI/WD Insurance Company that the PI/WD Trustee determines may have an obligation to provide coverage in accordance with the terms of each applicable PI/WD Insurance Policy. The PI/WD Trust shall have no obligation to appear and defend any lawsuit commenced against the PI/WD Trust if the applicable PI/WD Insurance Company refuses to cover any and/or all defense costs. The PI/WD Trust shall have no obligation to satisfy any Insurance Policy's deductible or self-insured retention per claim or in the aggregate. Holders of Opt-Out Insured PI/WD Claims shall not be entitled to receive any recovery from the PI/WD Trust or the Debtor on account of such Claim other than a recovery that is funded exclusively by an insurance recovery under a PI/WD Insurance Policy.<br><br>Each Holder of an Opt-Out Insured PI/WD Claim shall automatically be deemed to return to the PI/WD Trust on the ninetieth (90th) day following the Effective Date unless such Holder provides written notice to the PI/WD Trust that such Holder intends to remain an Opt-Out for purposes of pursuing insurance recoveries in the Civil Justice System. This deadline may be extended in accordance with the PI/WD Trust Documents. Holders of Opt-Out Insured PI/WD Claims who elect to remain in the Civil Justice | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|-------|------------------|-------------------------------|--------|---------------|
|  |  | System for the purpose of pursuing insurance recoveries after this deadline may elect to return to the PI/WD Trust in accordance with the PI/WD Trust Documents.  Any Holder of an Opt-Out Insured PI/WD Claim that returns to the PI/WD Trust in accordance with the PI/WD Trust Documents shall be treated as the Holder of Channeled PI/WD Claim under the Plan and the PI/WD Trust Documents. |  |  |
| 9 | Channeled Indirect Claims | Any Channeled Indirect Claim shall be Disallowed to the extent provided by section 502(e) and shall be subordinated to the extent provided by section 509(c) of the Bankruptcy Code or applicable law.<br><br>As of the Effective Date, (a) the Debtor's liability for all Allowed Channeled Indirect Claims that are Allowed Indirect PI/WD Claims shall be both incurred in full and assumed by the PI/WD Trust without further act, deed, or Court order and shall be administered and paid from the PI/WD Trust as set forth in the PI/WD Trust Documents, and (b) the Debtor's liability for all Allowed Channeled Indirect Claims that are Allowed Indirect GUC Claims shall be both incurred in full and assumed by the GUC Trust without further act, deed, or Court order and shall be administered and paid from the GUC Trust as set forth in the Plan and the GUC Trust Agreement.<br><br>Holders of Allowed Channeled Indirect Claims that are Allowed Indirect PI/WD Claims shall not receive any payment from the PI/WD Trust unless and until such Claims are resolved in accordance with the PI/WD Trust Documents. The PI/WD Trust Distribution Procedures establish the method by with such Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid.  Holders of Allowed Channeled Indirect Claims that are Allowed Indirect GUC Claims shall not receive any payment from the GUC Trust unless and until such Claims are resolved in accordance with the Plan and the GUC Trust Agreement.   Except as provided in the Plan, Holders of Channeled Indirect Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court. | Impaired | Entitled to Vote |
| 10 | Opt-Out Indirect Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out Indirect Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | Petition Date as part of or in connection with its Indirect Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action. Except for the foregoing, Holders of an Opt-Out Indirect Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan. Consistent with the foregoing, each Holder of an Opt-Out Indirect Claim may elect to pursue recovery on account of its Indirect Claim from any of the Released Parties. Holders of Opt-Out Indirect Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust or the GUC Trust. | | |
| 11 | Interests in the Debtor | On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive or retain any property on account of such Interests. | Impaired | Not Entitled to Vote (Deemed to Reject) |

47.    Based on the foregoing and as discussed in greater detail below, (a) the Plan Proponents propose to solicit votes to accept or reject the Plan from Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, and 10 (collectively, the "Voting Classes"), and (b) the Plan Proponents do not propose to solicit votes from Holders of Claims or Interests in Classes 1, 2, and 11 (collectively, the "Non-Voting Classes"). Holders of Claims or Interests in the Non-Voting Classes will not receive a Solicitation Package but instead will receive a Notice of Non-Voting Status.

### EXHIBITS TO SOLICITATION PROCEDURES ORDER AND MOTION

48.    As previously noted, several attachments and exhibits are attached to the Solicitation Procedures Order and cited throughout this Motion.[11]  In summary fashion, listed below are those attachments and exhibits:

---

[11]  Any additional documents not included therein will be included with the Plan Supplement except as to Exhibit 4-6, as noted below.

| Exhibit Ltr. / No. | Master Document | Exhibit Document |
|---|---|---|
| Exhibit A | Motion | Solicitation Procedures Order |
| Exhibit 1 | Solicitation Procedures Order | Solicitation Procedures |
| Exhibit 2 | Solicitation Procedures Order | Opt-Out Release Form |
| Exhibit 3-1 | Solicitation Procedures Order | Ballot for Holders of Claims in Class 3 (Convenience Claims) for Voting on Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor |
| Exhibit 3-2 | Solicitation Procedures Order | Ballot for Holders of Claims in Classes 4 and 5 (Channeled General Unsecured Claims and Opt-Out General Unsecured Claims) for Voting on Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor |
| Exhibit 3-3 | Solicitation Procedures Order | Ballot for Holders of Claims in Classes 6, 7, and 8 (Channeled PI/WD Claims, Opt-Out PI/WD Claims, and Opt-Out Insured PI/WD Claims) for Voting on Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor |
| Exhibit 3-4 | Solicitation Procedures Order | Ballot for Holders of Claims in Classes 9 and 10 (Channeled Indirect Claims and Opt-Out Indirect Claims) for Voting on Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor |
| Exhibit 4-1 | Solicitation Procedures Order | Confirmation Hearing Notice |
| Exhibit 4-2 | Solicitation Procedures Order | Publication Notice |
| Exhibit 4-3 | Solicitation Procedures Order | Notice of Non-Voting Status |
| Exhibit 4-4 | Solicitation Procedures Order | Contract/Lease Notice |
| Schedule A | Exhibit 4-4 | List of Executory Contracts to be Assumed and Unexpired Leases Debtor Proposes to Assume |
| Exhibit 4-5 | Solicitation Procedures | Cover Letter and Recommendation of the TCC |

| Exhibit Ltr. / No. | Master Document | Exhibit Document |
|---|---|---|
|  | Order |  |
| Exhibit 4-6 | Solicitation Procedures Order | Cover Letter and Recommendation of the UCC, a copy of which shall be filed within seven (7) days of the deadline to object to this Motion |
| Exhibit B | Motion | Disclosure Hearing Notice |

49. Regarding the Opt-Out Release Form and the different Ballots, under the Plan, Holders of GUC Claims and Holders of PI/WD Claims can elect different treatments. If a Holder of a GUC Claim elects to "Opt Out" of the Consensual Claimant Release, then that claimant will be treated as the Holder of and Opt-Out General Unsecured Claim (Class 5). If such claimant does not "Opt Out," then it will be treated as the Holder of a Channeled General Unsecured Claim (Class 4). Likewise, if a Holder of a PI/WD Claim elects to "Opt Out" of the Consensual Claimant Release, then that claimant will be treated as the Holder of an Opt-Out PI/WD Claim (Class 7). If such claimant does not "Opt Out," then it will be treated as the Holder of a Channeled PI/WD Claim (Class 6) or an Opt-Out Insured PI/WD Claim (Class 8).

50. The decision to "Opt Out" impacts the treatment afforded to the claimants under the Plan. Because all claims within a single class must be afforded the same treatment under section 1123(a)(4) of the Bankruptcy Code, the Plan places claimants into a class based on the treatment that they elect. All PI/WD Claimants will use the same Ballot (Exhibit 3-3) and can complete the same Opt-Out Release Form (Exhibit 2), but the elections they make will determine which class the fall into for purposes of determining class acceptance under section 1126(c) of the Bankruptcy Code. The same is true for Holders of General Unsecured Claims.

51. The Plan Proponents recognized that Claimants may want to forego receiving a cash distribution from one of the Trusts in favor of liquidating their claims in the Civil Justice

System.  Other claimants may prefer to participate in the proceeds of the Estate Party Settlement and recover from one of the Trusts.  Claimants can vote to accept the Plan and elect the treatment that they deem suitable for them.

## BASIS FOR RELIEF REQUESTED

I.   **Approval of Disclosure Statement and
     Form and Manner of Notice of Hearing Thereon**

   A.   **Disclosure Statement Should Be Approved**

52.      Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims or equity interests with "adequate information" regarding such plan. Section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, that:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .[12]

53.      Accordingly, a disclosure statement must, as a whole, provide information that is necessary to permit an informed judgment by impaired creditors entitled to vote on the plan.[13]

---

[12]  11 U.S.C. § 1125(a)(1).

[13]  *See*, *e.g.*, *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 271 (5th Cir. 2015) ("The proponent of a reorganization plan . . . must provide a court-approved disclosure statement that contains 'adequate information' about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an 'informed judgment' about the plan.") (internal citations omitted); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan" (internal quotations omitted)); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 487 F. Supp. 2d 914, 923 (S.D. Ohio 2007) (noting that "the [d]isclosure [s]tatement serves the purpose of giving creditors information necessary to decide whether to accept the plan"); *In re Phx. Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure

Whether a disclosure statement required under section 1125(b) of the Bankruptcy Code contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation." 11 U.S.C. § 1125(d). Rather, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement.[14] The determination of whether a disclosure statement contains adequate information should be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.[15]

54. The Disclosure Statement contains the information necessary for Holders of Claims entitled to vote on the Plan to make an informed decision about whether to vote to accept or reject the Plan, including, among other things:

(a)   requirements for confirmation of the Plan (Disclosure Statement at Article I.F);

(b)   information regarding the Debtor's history and corporate structure (*Id.* at Article II.A-D);

(c)   the key events leading to the commencement of the Chapter 11 Case (*Id.* at Article II.E);

---

statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan.").

[14]   *See, e.g.*, *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D. N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement.") (citing *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995)); *Phx. Petroleum*, 278 B.R. at 393 (noting that the determination of what is adequate information is "largely within the discretion of the bankruptcy court") (quoting *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988)); *In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Me. 1997) (noting that "[t]he precise contours of 'adequate information' were vaguely drawn by Congress so that bankruptcy courts might exercise their discretion to limn them in view of each case's peculiar circumstances"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (noting that the adequacy of a disclosure statement "is to be determined on a case specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties").

[15]   *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

(d)      the Chapter 11 Case, including a description of the significant events that occurred during the Chapter 11 Case (*Id.* at Article III.A-C);

(e)      information regarding the Claims against the Debtor (*Id.* at Article III.D);

(f)      an overview of the Plan, including a description of the various Classes of Claims and Equity Interests as well as a description of the Classes entitled to vote to accept or reject the Plan (*Id.* at Article IV.A-B);

(g)      information regarding the proposed settlement, exculpation, releases, and injunction provisions (*Id*. at Article IV.C);[16]

(h)      information regarding the GUC Trust and the PI/WD Trust (*Id*. at Article V);

(i)      risk factors, including risk factors affecting recoveries the Plan (*Id*. at Article VI); and

(j)      information regarding the tax consequences of the Plan (*Id*. at Article VII).

55.      Based on the foregoing, the Plan Proponents submit that the Disclosure Statement contains sufficient information for Holders of Claims entitled to vote on the Plan to make an informed judgment regarding whether to vote to accept or reject the Plan.  The Plan Proponents respectfully request that the Bankruptcy Court approve the Disclosure Statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

### B.      Disclosure Statement Hearing Notice Is Appropriate and Should Be Approved

56.      Bankruptcy Rule 3017(a) provides as follows:

[A]fter a disclosure statement is filed in accordance with [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in [Bankruptcy] Rule 2002 to consider the disclosure statement and any objections or modifications thereto. The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the [Bankruptcy] Code, the

---

16  Pursuant to Bankruptcy Rule 3016(c), this is set forth in specific and conspicuous language.  Fed. R. Bankr. P. 3016(c).

> Securities and Exchange Commission, and any party in interest who
> requests in writing a copy of the statement or plan.

FED. R. BANKR. P. 3017(a).  Bankruptcy Rule 2002(b) requires notice by mail to all creditors and

indenture trustees of the time set for filing objections to, and the hearing to consider approval of,

a disclosure statement.  *See* FED. R. BANKR. P. 2002(b).  Bankruptcy Rule 2002(d) requires that

equity security holders be given notice of the foregoing "in the manner and form directed by the

court."  FED. R. BANKR. P. 2002(d).

57.     Contemporaneously with the filing of this Motion, the Plan Proponents have

requested that the Bankruptcy Court-appointed claims, noticing, and solicitation agent in the

Chapter 11 Case, Verita Global (the "Solicitation Agent"), provide copies of the Disclosure

Statement Hearing Notice, attached hereto as **Exhibit B**, by electronic and/or first-class mail, to

the following parties:  (a) all Persons or Entities that have filed Proofs of Claims in the Chapter 11

Case that have not been previously withdrawn or disallowed by a Final Order; (b) all Persons or

Entities listed in the Schedules as holding liquidated, noncontingent, and undisputed Claims; (c) all

holders of Equity Interests in the Debtor; (d) all known attorneys representing any holders of

Claims; and (e) any other known holders of Claims against, or Equity Interests in, the Debtor.

58.     Among other things, the Disclosure Statement Hearing Notice identifies the date,

time, and place of the Disclosure Statement Hearing and the deadline and procedures for asserting

objections to the approval of the Disclosure Statement.

59.     The Plan Proponents will serve a copy of the Disclosure Statement Hearing Notice,

together with the Disclosure Statement and Plan, on (a) the U.S. Trustee, and (b) the 2002 List and

will provide copies of the Disclosure Statement and Plan to all other parties that request such

documents in the manner specified in the Disclosure Statement Hearing Notice and Bankruptcy

Rule 3017(a).  Copies of these documents will also be on file with the Clerk of Court for review

during normal business hours (a fee may be charged) and will be available free-of-charge on the website maintained by the Solicitation Agent (as defined below) at https://veritaglobal.net/tehum.

60.     The Plan Proponents submit that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and, accordingly, request that the Bankruptcy Court approve such notice as appropriate and in compliance with the relevant requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

## II.     <u>Approval of Solicitation Procedures</u>[17]

61.     The Plan Proponents respectfully request that the Bankruptcy Court approve the Solicitation Procedures and authorize the solicitation and tabulation of votes on the Plan from Holders of Claims entitled to vote on the Plan in accordance with such Solicitation Procedures by entering the Solicitation Procedures Order, attached hereto as **<u>Exhibit A</u>**.

62.     While the Plan Proponents are seeking approval of the Solicitation Procedures in their entirety pursuant to this Motion, provided below is an overview of certain salient features of the Solicitation Procedures, including:  (a) the proposed contents of the Solicitation Packages (as defined below), (b) the proposed distribution of Solicitation Packages to Holders of Claims, (c) the proposed Voting Deadline (as defined below), and (d) the Plan Proponents' proposal to allow Claims solely for voting purposes in the amount of $1.00 in the aggregate per claimant.

### A.     <u>Proposed Solicitation Packages Are Appropriate and Should Be Approved</u>

63.     Section 1126 of the Bankruptcy Code and Bankruptcy Rule 3017(d) require a plan proponent to mail copies of the plan, the disclosure statement, and a notice regarding the deadlines

---

[17]  The description of the Solicitation Procedures set forth herein is intended only as a summary.  Nothing in this summary description modifies the Solicitation Procedures, and reference should only be made to the Solicitation Procedures themselves for the precise terms thereof, which terms control in the event of any inconsistency between the summary included herein and the Solicitation Procedures.

for voting on the plan to all creditors and equity security holders of the Debtor.  11 U.S.C. § 1126;

FED. R. BANKR. P. 3017(d).

64.     Consistent with such requirements, the Plan Proponents, acting through the

Solicitation Agent, propose to solicit acceptances of the Plan by disseminating the materials set

forth below (collectively, the "Solicitation Package") on or before November 7, 2024, or within

five (5) business days from the entry of the Solicitation Procedures Order (the "Solicitation Date").

65.     For all Holders of Claims who are not Incarcerated Claimants, the Solicitation

Package will consist of:

> (a)     a cover letter describing the contents of the Solicitation Package and the enclosed USB flash drive (described below), and instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;
>
> (b)     the Confirmation Hearing Notice;
>
> (c)     a USB flash drive containing the Solicitation Procedures and a copy of the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date);
>
> (d)     the Solicitation Procedures Order (without exhibits);
>
> (e)     for Holders of Claims, an Opt-Out Release Form, instructions for the same, and a pre-addressed, return envelope for the completed Opt-Out Release Form;
>
> (f)     for Holders of Claims entitled to vote to reject or accept the Plan, an appropriate Ballot, voting instructions for the same, and a pre-addressed, return envelope for completed Ballots;[18]
>
> (g)     for Holders of PI/WD Claims, a letter from the TCC urging such claimants to vote to accept the Plan, substantially in the form attached to the Solicitation Procedures Order as Exhibit 4-5, a final copy of which will be filed before the Disclosure Statement Hearing;

---

[18]   Holders of Claims entitled to vote to reject or accept the Plan may include both the Ballot and Opt-Out Release Form in one of the two tamped, preaddressed envelopes they will receive.

(h)     for Holders of GUC Claims, a letter from the UCC urging such claimants to vote to accept the Plan, substantially in the form attached to the Solicitation Procedures Order as Exhibit 4-6, a copy of which will be filed within seven (7) days of the deadline to object to this Motion; and

(i)     any other materials ordered by this Bankruptcy Court to be included as part of the Solicitation Package.

66.     For Incarcerated Claimants, the Solicitation Package will consist of the same documents provided to all PI/WD Claimants but exclusively in paper form and will therefore not include a USB flash drive containing the same.  Specifically, the Solicitation Package for these Claimants will include:

(a)     a cover letter describing the contents of the Solicitation Package;

(b)     the Confirmation Hearing Notice;

(c)     a copy of the Solicitation Procedures;

(d)     a copy of the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date);

(e)     the Solicitation Procedures Order (without exhibits);

(f)     an Opt-Out Release Form, instructions for the same, and a pre-addressed, return envelope for the completed Opt-Out Release Form;

(g)     an appropriate Ballot, voting instructions for the same, and a pre-addressed, return envelope for completed Ballots;[19]

(h)     a letter from the TCC urging such claimants to vote to accept the Plan, substantially in the form attached to the Solicitation Procedures Order as Exhibit 4-5, a final copy of which will be filed before the Disclosure Statement Hearing; and

(i)     any other materials ordered by this Bankruptcy Court to be included as part of the Solicitation Package.

---

[19]  Holders of Claims entitled to vote to reject or accept the Plan may include both the Ballot and Opt-Out Release Form in one of the two tamped, preaddressed envelopes they will receive.

67.     The Plan Proponents anticipate that the Disclosure Statement, including its exhibits, will be hundreds of pages in length.  Accordingly, to reduce administrative costs associated with printing and mailing the Disclosure Statement to thousands of creditors, the Plan Proponents propose to serve it via USB flash drive.  Electronic distribution of solicitation materials is common in large chapter 11 cases in general and mass tort cases in particular.[20]  An Incarcerated Claimant, however, will receive the Disclosure Statement and Plan in paper form without charge from the Solicitation Agent.  The Disclosure Statement, Plan, and related exhibits will also be available free of charge on the Solicitation Agent's website at https://veritaglobal.net/Tehum.

68.     The Plan Proponents will distribute Solicitation Packages to (a) the U.S. Trustee, (b) the 2002 List, and (c) Holders of Impaired Claims against the Debtor (the "Solicitation Parties").[21]  The Plan Proponents will distribute a copy of the Confirmation Hearing Notice and Notice of Non-Voting Status to Holders of Administrative Claims, Priority Tax Claims, Other Priority Claims, Secured Claims, and Equity Interests in Classes 1, 2 and 11.[22]

---

[20]  *See, e.g.*, *In re Robertshaw US Holding Corp.*, No. 24-90052 (CML) (Bankr. S.D. Tex. June 21, 2024) (authorizing the debtors to distribute solicitation packages by "other electronic means (such as a flash drive to save unnecessary costs)"); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. April 29, 2024) (authorizing the debtors to distribute solicitation packages in electronic format by e-mail on a conditional basis); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 18, 2024) (authorizing the debtors to distribute solicitation packages in electronic format by e-mail); *In re Caresmatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Apr. 18, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Mar. 18, 2024) (same); *In re Cyxtera Techs.*, Inc., No. 23-14853 (JKS) (Bankr. D.N.J. Sept. 26, 2023) (same).

[21]  Notwithstanding anything herein to the contrary, the Plan Proponents request that neither they nor the Solicitation Agent be required to mail a Solicitation Package to any Person or Entity from which the notice of this Motion or other mailed notice in the Chapter 11 Case is or has been returned as undeliverable by the postal service, unless the Solicitation Agent is provided with an accurate address for such Person or Entity before the Solicitation Date.

[22]  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Claims have not been classified.  *See* 11 U.S.C. § 1123(a)(1) (requiring plans to designate, subject to section 1122, claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code, and classes of interest).  The Plan spells out the treatment proposed for these Claims in Article II. *See* Plan at § II.

**B.**     <u>**Voting Deadline Should Be Approved**</u>

69.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." FED. R. BANKR. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.  FED. R. BANKR. P. 3018(a).  Additionally, Bankruptcy Rule 3017(c) provides that, "[o]n or before the approval of the disclosure statement, the court shall fix a time within which holders of claims and interests may accept or reject the plan." FED. R. BANKR. P. 3017(c).

70.     The Plan Proponents will use their reasonable efforts to distribute, or cause to be distributed, the Solicitation Packages by first-class mail no later than November 7, 2024, or within five (5) business days from the entry of the Solicitation Procedures Order.  Based on this schedule, the Plan Proponents request that the Bankruptcy Court set February 5, 2025 (the "<u>Voting Deadline</u>"), as the deadline by which the Solicitation Agent must actually receive completed Ballots from Holders of Claims entitled to vote on the Plan or their counsel.  The Solicitation Procedures provide that, to be counted, completed Ballots must be returned to and actually received by the Solicitation Agent on or before the Voting Deadline by (a) mail, (b) overnight delivery, (c) hand delivery, or (d) via online transmission through a customized electronic Ballot by utilizing the E-Ballot platform on the Solicitation Agent's website.

71.     Instructions for casting an electronic Ballot can be found on the E-Ballot section of the Solicitation Agent's website.  The encrypted ballot data and audit trail created by such electronic submission will become part of the record of any electronic Ballot submitted in this

manner and the electronic signature will be deemed to be an original signature that is legally valid and effective.  Any Ballot submitted by facsimile transmission or other electronic means except through the E-Ballot on the Solicitation Agent's website will not be counted.

72.     As the Plan Proponents will serve the Solicitation Packages on or before November 7, 2024, or within five (5) business days from the entry of the Solicitation Procedures Order, the proposed Voting Deadline provides Holders of Claims entitled to vote on the Plan or their counsel sufficient time (approximately ninety (90) days) within which to review the Solicitation Package, to cast votes on the Plan, and to deliver those votes to the Solicitation Agent.

**C.      Claims Should Be Temporarily Allowed Solely for Voting
         Purposes in the Amount of $1.00 in the Aggregate Per Claimant**

73.     The Plan Proponents additionally proposes to temporarily allow all Convenience Claims, PI/WD Claims, and GUC Claims entitled to vote on the Plan for the limited purpose of voting on the Plan in the amount of $1.00 in the aggregate per claimant.  That value will **not** be binding on the Plan Proponents, the Trust, the Holder of the Claim, or any other party for any purpose other than voting to accept or reject the Plan.  Because the nature and amount of the Indirect Claims are unknown at this time, the proposed Solicitation Procedures and Solicitation Procedures Order would similarly temporarily allow any Indirect Claims for voting purposes in the amount of $1.00 in the aggregate per claimant.

74.     If any Holder of a Claim in a Voting Class seeks a different treatment of its Claim for voting purposes, such Holder will be required to file a motion (a "Rule 3018 Motion"), pursuant to Bankruptcy Rule 3018(a), seeking temporary allowance of their Claim in a different amount for purposes of voting to accept or reject the Plan.  The Holder of such Claim will further be required to serve such motion on the Plan Proponents' counsel so that it is received no later than December 27, 2024.

75.     Generally, only holders of claims allowed under section 502 of the Bankruptcy Code are entitled to vote to accept or reject any chapter 11 plan.  *See* 11 U.S.C. § 1126(a) ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan."); *see also* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.").

76.     Accordingly, those Claims that are (a) listed on the Schedules as contingent, unliquidated, or disputed, (b) specified in Proofs of Claim in an unliquidated or zero-dollar amount or as contingent or disputed, or (c) the subject of pending objections are not allowed claims under section 502(a) of the Bankruptcy Code.  *See* 11 U.S.C. §§ 502(a), 1126(a).

77.     However, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [any] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." FED. R. BANKR. P. 3018(a).  This provision thus empowers a bankruptcy court to "temporarily allow" a claim not yet allowed (whatever the reason) in an amount deemed proper that is sufficient to entitle such claimants to vote on a plan.

78.     The Claims are contingent, unliquidated, and disputed.  The proposed temporary allowance of Claims for voting purposes addresses this issue in a way that adequately considers the particular circumstances of the Chapter 11 Case, reflects an appropriate scheme for voting on the Plan, is supported by the Plan Proponents, and is consistent with similar chapter 11 cases.

79.     Moreover, the temporary allowance of the Claims in the amount of $1.00 in the aggregate per claimant eliminates the need to make any individual or class determination, whether by estimation or otherwise, regarding these Claims, a process that can be time-consuming and difficult, if not impossible.  There are hundreds of Claims in this Chapter 11 Case and holding an

estimation hearing or hearings for such Claims would only delay administration of the Chapter 11 Case and the ultimate distribution of funds to claimants with valid Claims.

### D.   Other Aspects of the Solicitation Procedures Should Be Approved

80.   The Solicitation Agent will tabulate the votes to accept or reject the Plan based on the Ballots received by the Solicitation Agent by the Voting Deadline.  The Solicitation Procedures specify certain circumstances in which a vote reflected on a Ballot will not be counted.

81.   Those circumstances include Ballots where:  (a) the Ballot is submitted by or on behalf of a claimant that is not entitled to vote; (b) the Ballot is not actually received by the Solicitation Agent by the Voting Deadline, unless the Plan Proponents have granted an extension of the Voting Deadline with respect to such Ballot or the Bankruptcy Court has granted such an extension; (c) the Ballot is returned to the Solicitation Agent indicating acceptance or rejection of the Plan but is unsigned; (d) the Ballot is illegible or contains insufficient information to permit the identification of the claimant; (e) the Ballot is transmitted to the Solicitation Agent by facsimile or other electronic means other than by online transmission through the E-Ballot platform on the Solicitation Agent's website; (f) the Ballot is submitted in an inappropriate form; or (g) the Ballot is not completed.

82.   The Solicitation Procedures further provide general voting procedures and standard assumptions the Solicitation Agent will use in tabulating the Ballots.  The Solicitation Agent has the discretion, but not the obligation, to contact voters to cure any defects in the Ballots.  A voter that submits a valid Ballot may withdraw his, her, or its vote in accordance with the procedure set forth in the Solicitation Procedures; *provided*, *however*, that the Plan Proponents will not be obligated to recognize any withdrawal, revocation, or change of any vote received after the Voting Deadline (or such later date as agreed by the Plan Proponents).

83.     If multiple Ballots are received from different Holders purporting to hold the same Claim, the Solicitation Procedures provide that, in the absence of contrary information establishing which claimant held such Claim as of the Voting Deadline, the latest-dated otherwise valid Ballot that is received before the Voting Deadline (or such later date as agreed by the Plan Proponents) will be the Ballot that is counted.

84.     If multiple Ballots are received from a Holder of a Claim for the same Claim, the Solicitation Procedures provide that the latest-dated otherwise valid Ballot that is received before the Voting Deadline (or such later date as agreed by the Plan Proponents) will be the Ballot that is counted.  A Ballot that is completed, but on which the claimant did not note whether the claimant accepted or rejected the Plan, or on which the claimant voted to both accept and reject the Plan, will not be counted as a vote to accept or reject the Plan.  In addition, the Solicitation Procedures provide that any attempts by the Holders of Claims to split their votes partially to accept and partially to reject the Plan will result in the applicable Ballots not being counted.

85.     The Plan Proponents submit that the above procedures are reasonable under the circumstances of this Chapter 11 Case.  Accordingly, these aspects of the Solicitation Procedures should be approved together with all other aspects of the Solicitation Procedures.

### III.    Forms of Ballots Should Be Approved

86.     Bankruptcy Rule 3017(d) requires the plan proponent to mail a form of ballot, which substantially conforms to Official Form No. 14, to "creditors and equity security holders entitled to vote on the plan."  FED. R. BANKR. P. 3017(d).

87.     Supplementing the latter provision, Bankruptcy Rule 3018(c) requires that "[a]n acceptance or rejection [of a chapter 11 plan] shall be in writing, identify the plan or plans accepted

or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."  FED. R. BANKR. P. 3018(c).

88.     The Plan Proponents propose to distribute a Ballot to Holders of Claims voting on the Plan.  The forms of the Ballots are based on Official Form No. 14 but have been modified to address the aspects of this Chapter 11 Case and are similar in all material respects to those used in other chapter 11 cases.  Accordingly, the Plan Proponents submit that the proposed forms of Ballots substantially comply with Bankruptcy Rules 3017(d) and 3018(c) while taking into account the particular circumstances of this Chapter 11 Case and should be approved.

**IV.     The Opt-Out Release Form Should be Approved**

89.     The Opt-Out Release Form is like forms that have been incorporated into ballots in other chapter 11 cases but exists here as a stand-alone document.  The Plan Proponents did this to make it clear that all creditors can elect to "Opt Out" of the Consensual Claimant Release irrespective of how they vote on the Plan—*i.e.*, claimants can "Opt Out" and still vote in favor of the Plan—and whether or not they vote on the Plan—*i.e.*, claimants who did not file a proof of claim in the Chapter 11 Case can still "Opt Out" of the Consensual Claimant Release.

90.     The Opt-Out Release Form will include, among other things:  (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Solicitation Procedures Order, and all other materials in the Solicitation Package (excluding Ballots) from the Solicitation Agent and/or the Bankruptcy Court's website via PACER; (b) notice to recipients of their status as Holders or potential Holders of Claims or Interests in non-voting classes; (c) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article IX and discussed in Article IV.B of the Plan; and (d) an

Opt-Out Form akin to a Ballot by which Holders could elect to opt out of the Consensual Claimant Release set forth in Article IX.D and described in Article IV.B.7 of the Plan.

91.     In addition to accepting a hard copy Opt-Out Release Forms via regular mail, overnight courier, and hand delivery, the Plan Proponents request authorization to accept Opt-Out Release Forms electronically through electronic Ballots ("E-Ballots") via electronic, online transmissions through a customized online balloting portal on the Debtor's case website maintained by the Solicitation Agent (the "E-Ballot Portal"), as applicable.  Instructions for electronic, online transmission of Opt-Out Release Form are set forth on the Opt-Out Release Form.  The encrypted audit trail created by such electronic submission shall become part of the record of any Opt-Out Release Form submitted in this manner, and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

92.     As to Holders of Claims or Interests in the Non-Voting Classes, the Plan Proponents believe that mailing the Opt-Out Release Forms in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Unless the Bankruptcy Court orders otherwise, the Plan Proponents do not intend to distribute Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes.  All Holders of Claims entitled to vote to accept or reject the Plan will receive, in addition to a Ballot, an Opt-Out Release Form.  All claimants appearing in the Schedules as holding claims that are disputed, contingent, or unliquidated who have not filed a proof of claim will receive an Opt-Out Release Form, but will not receive a Ballot.[23]  The Plan Proponents submit that the proposed Opt-Out Release Form substantially complies with the

---

23   *See* FED. R. BANKR. P. 3003(c) ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.").

Bankruptcy Rules while taking into account the particular circumstances of this Chapter 11 Case and should be approved.

## V.      Form, Manner, and Scope of Confirmation Notices Should Be Approved

### A.      Confirmation Hearing Date

93.      Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and provides that parties in interest can object to confirmation.  11 U.S.C. § 1128.  Bankruptcy Rule 3017(a) also requires that a bankruptcy court "hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto."  FED. R. BANKR. P. 3017(a).  Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a bankruptcy court shall fix a time for the hearing on confirmation of a plan.  FED. R. BANKR. P. 3017(c).

94.      Further, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees not less than 28 days . . . by mail of the time fixed . . . for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary."  Fed. R. Bankr. P. 2002(b).

95.      In accordance with Bankruptcy Rules 2002 and 3017 and section 1128 of the Bankruptcy Code, and in light of the Plan Proponents' proposed solicitation schedule outlined below, the Plan Proponents propose that March 13, 2025, or the nearest date thereafter that is convenient for the Bankruptcy Court, be fixed by the Bankruptcy Court as the Confirmation Hearing date.

96.     Such date will provide the Plan Proponents sufficient time to solicit votes on the Plan in accordance with the schedule described herein and to notify the required parties of the Confirmation Hearing date and the opportunity to submit objections to the Plan, if any, before the Confirmation Hearing.  The Plan Proponents also request that the Bankruptcy Court order that the Confirmation Hearing may be continued from time to time by the Plan Proponents without further notice to creditors or other parties in interest.

**B.     Confirmation Hearing Notice**

97.     Bankruptcy Rule 3017(d) requires a plan proponent to send to all creditors and interest holders a notice regarding the deadlines for voting on the plan.  FED. R. BANKR. P. 3017(d). Bankruptcy Rule 2002(b) requires twenty-eight (28) days' notice to any party in interest of any hearing to consider confirmation of a chapter 11 plan.  FED. R. BANKR. P. 2002(b).   The Confirmation Hearing Notice will be included as part of the Solicitation Packages and will denote the date and time fixed for (a) submitting votes on the Plan, (b) filing objections to confirmation of the Plan, and (c) the Confirmation Hearing.

98.     As noted above, the Solicitation Packages will include the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and numerous additional documents relevant to the Plan and the confirmation process and will be mailed on or before November 7, 2024, or within five (5) business days from the entry of the Solicitation Procedures Order.  The Confirmation Hearing Notice that will be included as part of the Solicitation Packages will denote the date and time fixed for (a) submitting votes on the Plan, (b) filing objections to the confirmation of the Plan, and (c) the Confirmation Hearing.  Thus, parties will have more than the required 28 days' notice of the proposed Confirmation Hearing date and Confirmation Objection Deadline (as defined

below) required by Bankruptcy Rule 2002(b).  Accordingly, the Confirmation Hearing Notice should be considered adequate and sufficient notice under Bankruptcy Rules 2002 and 3017(d).

### C.       Publication Notice

99.     The Plan Proponents further seek permission pursuant to Bankruptcy Rule 2002(l) to supplement the foregoing notice procedures by publishing notice of the Plan Proponents' solicitation of votes on the Plan and the Confirmation Hearing.  Bankruptcy Rule 2002(l) permits a bankruptcy court to order "notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  FED. R. BANKR. P. 2002(l).  Bankruptcy Rule 9008 further provides that said bankruptcy court may "determine the form and manner" of publication notice.  FED. R. BANKR. P. 9008.

100.    To supplement the Confirmation Hearing Notice, the Plan Proponents plan to cause the Publication Notice to be published in the Prison Legal News on or before November 29, 2024.  The content of the Publication Notice provides adequate notice of the Confirmation Hearing, the Confirmation Objection Deadline, and the Voting Deadline to all unknown potential creditors.

101.    The Publication Notice, coupled with the mailed Confirmation Hearing Notice, will provide as wide a distribution of notice of the Plan, the Confirmation Hearing, and related deadlines as is reasonable and practicable under the circumstances of the Chapter 11 Case for both known and unknown Claimants.

### D.       Notice of Non-Voting Status

102.    Bankruptcy Rule 3017(d) permits a bankruptcy court to order that a plan and disclosure statement need not be mailed to unimpaired classes.  *See* FED. R. BANKR. P. 3017(d).  In lieu thereof, a bankruptcy court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of

the plan and disclosure statement may be obtained upon request," as well as "notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to such classes. *Id*.

103. Holders of Claims or Equity Interests in the Non-Voting Classes are either Unimpaired (and subject to section 1126(f) of the Bankruptcy Code and are presumed to have accepted the Plan) or are Impaired (and are presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code). Accordingly, the Plan Proponents propose to send the Notice of Non-Voting Status to each Holder of a Claim or Equity Interest in the Non-Voting Classes. The Plan Proponents also intends to send the Notice of Non-Voting Status to each Holder of an Administrative Claim and a Priority Tax Claim, which are unclassified and Unimpaired under the Plan (collectively, the "Unclassified Claims").

### E.   Contract/Lease Notice

104. Parties to certain of the Executory Contracts and Unexpired Leases may not have scheduled Claims or may maintain Claims based upon filed Proofs of Claim pending the disposition of their Executory Contracts or Unexpired Leases by assumption or rejection. To ensure that such parties nevertheless receive notice of the Confirmation Hearing, they will receive the Contract/Lease Notice that gives (a) notice of the filing of the Plan, (b) notice that such party has been identified as a party to an Executory Contract or Unexpired Lease, (c) instructions regarding the Confirmation Hearing and how to obtain a copy of the Solicitation Package (other than a Ballot) free of charge, and (d) detailed directions for filing objections to confirmation of the Plan, and will include list of the Executory Contracts and Unexpired Leases that the Debtor proposes to assume as Schedule A.

105.   Based on the foregoing, the Bankruptcy Court should approve the form and scope of the Confirmation Notices, as well as the manner of providing such notices, pursuant to Bankruptcy Rules 2002 and 9008.

## VI.   **Establishing Voting and Confirmation Deadlines**

106.   Bankruptcy Rule 3020(b)(1) provides that "[a]n objection to confirmation of the plan shall be filed and served . . . within a time fixed by the court."  FED. R. BANKR. P. 3020(b)(1). In addition, Bankruptcy Rule 2002(b) provides that a plan proponent must provide at least twenty-eight (28) days' notice of the deadline for filing such objections.  FED. R. BANKR. P. 2002(b).

107.   The Plan Proponents propose that the following deadlines be established:

(a)   *November 1, 2024*, as the Voting Record Date;

(b)   *November 7, 2024*, or within five (5) business days from the entry of the Solicitation Procedures Order, whichever date is later, as the deadline for the Plan Proponents to cause the Solicitation Agent to serve the Solicitation Packages, the Contract/Lease Notice, the Confirmation Hearing Notice, the Notice of Non-Voting Status, and the Opt-Out Release Form;

(c)   *November 29, 2024*, as the last date by which the Debtor will submit the Publication Notice containing the information from the Confirmation Hearing Notice in a format modified for publication.

(d)   *December 27, 2024*, at 5:00 p.m. (Prevailing Central Time), as the deadline for Holders of Claims to file any Rule 3018 Motions;

(e)   *February 5, 2025*, at 5:00 p.m. (Prevailing Central Time), as the Voting Deadline;

(f)   *February 10, 2025*, as the deadline to file the certification (the "Voting Certification") of the amount and number of Claim in Classes 3, 4, 5, 6, 7, 8, 9, and 10 accepting or rejecting the Plan;

(g)   *February 13, 2025*, at 5:00 p.m. (Prevailing Central Time), as the deadline (the "Confirmation Objection Deadline") to file and serve any objections to confirmation of the Plan, which must (i) be in writing, (ii) set forth in detail the name and address of any party filing the objection, the grounds for the objection, any evidentiary support thereof in the nature of declarations submitted on information and belief, and the amount of the objector's Claims or such other grounds that give the objector standing to assert the

43

objection, and (iii) be served upon the parties at the addresses set forth in the Confirmation Hearing Notice. Any objection not properly and timely filed and served will be deemed waived and any party in interest that does not timely file and serve an objection will be deemed to consent to the Bankruptcy Court's entry of an order confirming the Plan;

(h)     *March 6, 2025*, at 5:00 p.m. (Prevailing Central Time), as the deadline (the "Confirmation Reply Deadline") for the Plan Proponents and for any other parties in interest to file a reply to any objections to confirmation of the Plan; and

(i)     *March 13, 2025*, at 10:00 a.m. (Prevailing Central Time), or the nearest date thereafter that is convenient for the Bankruptcy Court, as the Confirmation Hearing date.

108.     The proposed dates for the deadline for objecting to confirmation of the Plan and for responding to any such objections, and the related procedures set forth in this Motion, provide for ample periods in which parties in interest may consider and vote upon, or respond to, the Plan, and are reasonable and appropriate under the circumstances.

* * *

109.     In sum, the proposed Solicitation Procedures, forms of Ballots and Opt-Out Release Form, and proposed notice procedures, taken together, afford claimants with a full and fair opportunity to accept or reject the Plan. The proposed Solicitation Procedures provide for an orderly and logical method for soliciting and tabulating the Ballots received from Holders of Claims in this Chapter 11 Case and are consistent with the voting procedures adopted for claims in other chapter 11 cases. Accordingly, the Plan Proponents request that the Bankruptcy Court approve the Solicitation Procedures.

## **NON-SUBSTANTIVE MODIFICATION**

110.     The Plan Proponents request authorization to make any non-substantive changes to the (a) Solicitation Procedures, (b) Opt-Out Release Form, (c) Ballots, and (d) Confirmation Notices without further order of this Bankruptcy Court, including, without limitation, changes to

(a) correct any typographical, grammatical, and formatting errors or omissions before their mailing to parties in interest or publication, and (b) modify the Publication Notice as necessary or desirable for purposes of providing notice in publications.

## NOTICE

111.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the 2002 List; and (c) any other party entitled to notice.  The Plan Proponents respectfully submit that no further notice is required.

## NO PRIOR REQUEST

112.     No prior request for the relief sought in this Motion has been made to this Bankruptcy Court or any other court in connection with this Chapter 11 Case.

## CONCLUSION

**WHEREFORE**, based on the foregoing, the Plan Proponents respectfully request that the Court enter the Solicitation Procedures Order granting the relief requested in the Motion and grant such other and further relief as the Bankruptcy Court deems necessary and appropriate.

Dated:  October 2, 2024

Respectfully Submitted,

*/s/ Eric R. Goodman*

David J. Molton (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Meghan McCafferty (*pro hac vice*)
Amir Shachmurove (*pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email:  dmolton@brownrudnick.com
      egoodman@brownrudnick.com
      cmoxley@brownrudnick.com
      gcicero@brownrudnick.com
      mmccafferty@brownrudnick.com
      ashachmurove@brownrudnick.com

 - and -

*/s/ Michael W. Zimmerman*

Michael W. Zimmerman
**BERRY RIDDELL LLC**
6750 E. Camelback Road, Suite #100
Scottsdale, AZ 85251
Telephone: (480) 385-2727
Email:  mz@berryriddell.com

*Counsel to the Tort Claimants' Committee*

*/s/ Nicholas Zluticky*

Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
**STINSON LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:    (816) 842-8600
Facsimile:    (816) 691-3495
Email: nicholas.zluticky@stinson.com
         zachary.hemenway@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

*/s/ Jason S. Brookner*

Jason S. Brookner (TX Bar No. 24033684)
Micheal W. Bishop (TX Bar No. 02354860)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED LLP**
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:    (713) 986-7127
Facsimile:    (713) 986-5966
Email: jbrookner@grayreed.com
         mbishop@grayreed.com
         akaufman@grayreed.com
         lwebb@grayreed.com
         acarson@grayreed.com

*Counsel to the Debtor and Debtor in Possession*