United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 13, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

### ORDER (I) APPROVING DISCLOSURE STATEMENT
### AND FORM AND MANNER OF NOTICE OF HEARING THEREON,
### (II) ESTABLISHING SOLICITATION PROCEDURES, (III) APPROVING
### FORM AND MANNER OF NOTICE TO CLAIM HOLDERS (IV) APPROVING
### FORM OF BALLOTS, (V) APPROVING FORM, MANNER, AND SCOPE OF
### CONFIRMATION NOTICES, (VI) ESTABLISHING CERTAIN DEADLINES
### IN CONNECTION WITH APPROVAL OF DISCLOSURE STATEMENT
### AND CONFIRMATION OF PLAN, AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Official Committee of Tort Claimants (the "TCC"), the Official Committee of Unsecured Creditors (the "UCC"), and Tehum Care Services, Inc., the above-captioned debtor and debtor in possession (the "Debtor" and, together with the TCC and the UCC, the "Plan Proponents"), pursuant to sections 105(a), 341, 365, 502, 521, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008, Local Rules 1075-1, 2002-1 and 3016-1, and the Complex Case Procedures, (a) approving the Disclosure Statement for the Plan, (b) approving the form and manner of the Disclosure Statement Hearing Notice in respect of the Disclosure Statement Hearing, (c) establishing Solicitation Procedures, (d) approving the Opt-Out Release Form, (e) approving the forms of Ballots, (f) approving the form, manner, and scope of the Confirmation Notices in respect of the

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

Confirmation Hearing, (g) establishing certain deadlines in connection with the foregoing, and (h) granting related relief—all as more fully set forth in the Motion; and it appearing that this Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Solicitation Procedures Order, it is hereby

**FOUND AND DETERMINED THAT:**

A.      The notice of the Disclosure Statement Hearing, provided in the manner described in the Motion, was sufficient and appropriate under the circumstances and complied with the applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, and no further notice is needed.

B.      The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and no further information is necessary or required.

C.      The Disclosure Statement complies with Bankruptcy Rule 3016(c) and describes, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction, exculpation, and release provisions contained in the Plan.

D.      The Solicitation Procedures attached hereto as **Exhibit 1** provide a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the applicable Bankruptcy Rules.

E.     The contents of the Solicitation Packages and other notices, as set forth in the Motion, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice of the Plan, the Confirmation Hearing, and related matters to all interested parties.

F.     The form of the Opt-Out Release Form attached hereto as **Exhibit 2** complies with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

G.     The forms of Ballots attached hereto as **Exhibits 3-1**, **3-2**, **3-3**, and **3-4**, including all instructions provided therein, (a) are sufficiently consistent with Official Form No. 14 to be approved, (b) adequately address the particular needs of the Chapter 11 Case, and (c) are appropriate for the Classes of Claims entitled to vote to accept or reject the Plan.  No further information or instructions are necessary.

H.     Ballots need not be provided to Holders of Claims in any Class other than Classes 3, 4, 5, 6, 7, 8, 9, and 10 because all other Classes are presumed to accept or reject the Plan because (a) they are Unimpaired or (b) they are Impaired and are not entitled to receive or retain any property under the Plan.

I.     The period during which the Plan Proponents may solicit votes on the Plan is a reasonable and adequate period of time for Holders of Claims entitled to vote on the Plan to make an informed decision to accept or reject the Plan and timely return Ballots evidencing such decision.

J.     The combination of direct and published notice of the Plan and Confirmation Hearing, as set forth in the Motion, provides good and sufficient notice of the Plan, the Confirmation Hearing, and the opportunity to vote on and object to the Plan, complies with Bankruptcy Rules 2002 and 3017, and satisfies the requirements of due process with respect to all known and unknown creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED, as set forth herein.

**Disclosure Statement**

2.      The Disclosure Statement is APPROVED as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

3.      All objections to the Disclosure Statement that have not been withdrawn or resolved previously or at the hearing to consider the Disclosure Statement are overruled.

4.      The Disclosure Statement Hearing Notice and the manner of service thereof are each APPROVED.

**Plan Confirmation Schedule**

5.      The following dates and deadlines in connection with the Solicitation Procedures and Confirmation Hearing are APPROVED:

> (a)      The Voting Record Date shall be ***November 13, 2024***.
>
> (b)      The deadline for the Plan Proponents to cause the Solicitation Agent to serve the Solicitation Packages, the Contract/Lease Notice, the Confirmation Hearing Notice, the Notice of Non-Voting Status, and the Opt-Out Release Form shall be ***November 20, 2024***, or within five (5) business days from the entry of this Order, whichever date is later.
>
> (c)      The last date by which the Plan Proponents will submit the Publication Notice containing the information from the Confirmation Hearing Notice in a format modified for publication shall be ***November 29, 2024***.
>
> (d)      The deadline for Holders of Claims to file any Rule 3018 Motions shall be ***December 27, 2024***.
>
> (e)      The Voting Deadline shall be ***February 21, 2025***, at 5:00 p.m. (Prevailing Central Time); provided that the Plan Proponents are authorized to extend the Voting Deadline for any party entitled to vote on the Plan.
>
> (f)      The deadline for filing the Voting Certification shall be ***February 25, 2025***.
>
> (g)      The Confirmation Objection Deadline shall be ***February 21, 2025***, at 5:00 p.m. (Prevailing Central Time).

(h)     The Confirmation Reply Deadline shall be ***February 26, 2025***, at 5:00 p.m. (Prevailing Central Time).

(i)      The Confirmation Hearing shall be held on ***March 3, 2025***, at 10:00 a.m. (Prevailing Central Time).  The Confirmation Hearing may be adjourned from time to time by this Court or the Plan Proponents without further notice other than adjournments announced in open court or as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with this Bankruptcy Court.

6.     Any other dates and deadlines requested to be approved in the Motion or otherwise set forth in the Solicitation Procedures are APPROVED.

**<u>Distribution of Solicitation Packages</u>**

7.     The proposed distribution and contents of the Solicitation Packages to all Holders of Claims except Incarcerated Claimants, which shall include the following, are APPROVED:

(a)     a cover letter describing the contents of the Solicitation Package and the enclosed USB flash drive (described below), and instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;

(b)     the Confirmation Hearing Notice;

(c)     a USB flash drive containing the Solicitation Procedures and a copy of the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date);

(d)     the Solicitation Procedures Order (without exhibits);

(e)     for Holders of Claims, an Opt-Out Release Form, instructions for the same, and a pre-addressed, return envelope for the completed Opt-Out Release Form;

(f)     for Holders of Claims entitled to vote to reject or accept the Plan, an appropriate Ballot, voting instructions for the same, and a pre-addressed, return envelope for completed Ballots;

(g)     for Holders of PI/WD Claims, a letter from the TCC urging such claimants to vote to accept the Plan;

(h)     for Holders of GUC Claims, a letter from the UCC urging such claimants to vote to accept the Plan; and

(i)    any other materials ordered by this Bankruptcy Court to be included as part of the Solicitation Package.

1.    The proposed distribution and contents of the Solicitation Packages to all Incarcerated Claimants, which shall include the following, are APPROVED:

(a)    a cover letter describing the contents of the Solicitation Package;

(b)    the Confirmation Hearing Notice;

(c)    a copy of the Solicitation Procedures;

(d)    a copy of the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date);

(e)    the Solicitation Procedures Order (without exhibits);

(f)    an Opt-Out Release Form, instructions for the same, and a pre-addressed, return envelope for the completed Opt-Out Release Form;

(g)    an appropriate Ballot, voting instructions for the same, and a pre-addressed, return envelope for completed Ballots;[3]

(h)    a letter from the TCC urging such claimants to vote to accept the Plan; and

(i)    any other materials ordered by this Bankruptcy Court to be included as part of the Solicitation Package.

8.    The Plan Proponents shall transmit, or cause to be transmitted, the Solicitation Packages to the Solicitation Parties identified in the Motion on or before ***November 20, 2024***, or within five (5) business days from the entry of this Order, whichever date is later.

9.    As part of the Solicitation Package, copies of the Disclosure Statement, the Plan, this Solicitation Procedures Order, and exhibits to all of such documents, shall be provided in PDF format on a USB flash drive, instead of printed hard copies. Incarcerated Claimants, however, shall be provided printed hard copies of the Solicitation Package. The cover letter included in the

---

[3]    Holders of Claims entitled to vote to reject or accept the Plan may include both the Ballot and Opt-Out Release Form in one of the two tamped, preaddressed envelopes they will receive.

Solicitation Package shall include instructions for obtaining printed copies of the materials free of charge. The Plan Proponents may substitute hard copies of all solicitation materials instead of the USB flash drive as may be necessary to achieve timely distribution of the Solicitation Packages.

10. The Plan Proponents and the Solicitation Agent shall not be required to mail a Solicitation Package or any other materials related to voting or confirmation of the Plan to any person or entity from which the notice of the Motion or other mailed notice in this case was returned as undeliverable by the postal service, unless the Solicitation Agent is provided with accurate addresses for such persons or entities before the Solicitation Date, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such persons or entities shall not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017(d).

11. The Plan Proponents shall distribute a copy of the Confirmation Hearing Notice and Notice of Non-Voting Status to the Holders of Claims and Equity Interests in the Non-Voting Classes and to the Holders of Unclassified Claims, and the Plan Proponents and the Solicitation Agent shall not be required to mail a Solicitation Package or any other materials related to voting or confirmation of the Plan to the Holders of Claims or Equity Interests in Non-Voting Classes or Holders of Unclassified Claims.

12. The Plan Proponents shall not be required to deliver Ballots, Solicitation Packages, or a Notice of Non-Voting Status to counterparties to the Executory Contracts and Unexpired Leases who do not have scheduled Claims or Claims based upon filed Proofs of Claim. Rather, in lieu thereof, and in accordance with Bankruptcy Rule 3017(d), the Plan Proponents shall mail to the counterparties to the Executory Contracts and Unexpired Leases a notice, with which shall be

included a list of Executory Contracts and Unexpired Leases that the Debtor proposes to assume, substantially in the form of Exhibit 4-4 attached hereto (the "Contract/Lease Notice").

**Solicitation Procedures**

13.     The Solicitation Procedures attached hereto as Exhibit 1 are APPROVED in all respects.

14.     The Opt-Out Release Form attached hereto as Exhibits 2 is APPROVED in all respects.

15.     The forms of Ballots and instructions appropriate for specific Holders attached hereto as Exhibits 3-1, 3-2, 3-3, and 3-4, respectively, are APPROVED in all respects.

16.     All Claims in Classes 3, 4, 5, 6, 7, 8, 9 and 10 of the Plan shall be temporarily allowed in the amount of $1.00 in the aggregate per claimant solely for purposes of voting to accept or reject the Plan and not for any other purpose.  Holders of Claims may file a Rule 3018 Motion seeking temporary allowance of such Holders' Claims in a different amount.  Any such Rule 3018 Motion must be filed no later than ***December 27, 2024***, at 5:00 p.m. (Prevailing Central Time).

17.     As Solicitation Agent, Verita Global shall process and tabulate Ballots and file the Voting Certification no later than ***February 25, 2025***.  A Ballot shall not be counted if:

(a)     The Ballot is submitted by or on behalf of a claimant not entitled to vote pursuant to the Solicitation Procedures;

(b)     The Ballot is not actually received by the Solicitation Agent in the manner set forth in the Solicitation Procedures by the Voting Deadline, unless the Plan Proponents shall have granted an extension of the Voting Deadline with respect to such Ballot, or this Court shall have granted such an extension;

(c)     The Ballot is returned to the Solicitation Agent indicating acceptance or rejection of the Plan but is unsigned;

(d)     The Ballot is returned to the Solicitation Agent:  (i) indicating neither acceptance nor rejection of the Plan; (ii) indicating both acceptance and

rejection of the Plan; or (iii) indicating partial rejection and partial acceptance of the Plan;

(e)     The Ballot is illegible or contains insufficient information to permit the identification of the claimant;

(f)     The Ballot is transmitted to the Solicitation Agent by facsimile or other electronic means other than by online transmission through the E-Ballot platform on the Solicitation Agent's website;

(g)     The Ballot is submitted in a form that is not the appropriate Ballot for such Claim; or

(h)     The Ballot is not completed, including, without limitation, if a Ballot submitted by or on behalf of a Holder of a Claim in the United States that does not provide the last four digits of the claimant's Social Security Number. If the last four digits of a claimant's Social Security Number are not listed because the Holder of such Claim is not a citizen of the United States, then the Ballot shall state such fact conspicuously in the area where such number would have been inserted.

**Confirmation Notices and Objection Procedures**

18.     The form, manner, and scope of the mailed Confirmation Hearing Notice, the Publication Notice, the Notice of Non-Voting Status, and the Contract/Lease Notice attached hereto as Exhibits 4-1, 4-2, 4-3, and 4-4, respectively, constitute good, sufficient, and adequate notice to all parties, including known and unknown creditors and Holders of Equity Interests, comply with due process, and are APPROVED. Such notices are being provided by means reasonably calculated to reach all interested persons, reasonably convey all the required information to inform all persons affected thereby and provide a reasonable time for a response and an opportunity to object to the relief requested. No other or further notice is necessary.

19.     Objections and responses, if any, to confirmation of the Plan must (a) be in writing, (b) set forth in detail the name and address of any party filing the objection, the grounds for the objection, any evidentiary support thereof in the nature of declarations submitted on information and belief, and the amount of the objector's Claims or such other grounds that give the objector

standing to assert the objection, (c) conform to the Bankruptcy Rules and Local Rules, (d) be filed with this Court, and (e) be served upon the parties listed in the Confirmation Hearing Notice at the addresses set forth therein, so as to be actually received on or before the Confirmation Objection Deadline.

20.     Objections to confirmation of the Plan not timely filed and served in accordance with the provisions of this Solicitation Procedures Order shall not be considered by this Court and are denied and overruled unless otherwise ordered by this Court.

21.     The Plan Proponents or other parties in interest may file and serve a reply or replies to any objections or responses to confirmation of the Plan on or before the Confirmation Reply Deadline.

**Additional Relief**

22.     The Plan Proponents are authorized to take any action necessary or appropriate to implement the terms of and the relief granted in this Solicitation Procedures Order without seeking further order of this Court.  The Solicitation Agent shall cooperate fully with the Plan Proponents and shall take all necessary or appropriate actions at the direction of the Plan Proponents to implement the terms of and the relief granted in this Solicitation Procedures Order.

23.     The Plan Proponents are authorized to make any non-substantive changes to the Solicitation Procedures, Opt-Out Release Form, Ballots, and Confirmation Notices without further order of this Court, including, without limitation, changes to (a) correct any typographical, grammatical, and formatting errors or omissions before their mailing to parties in interest or publication, and (b) modify the Publication Notice as necessary or desirable for purposes of providing notice in publications.

24.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Solicitation Procedures.

Signed:  November 13, 2024

Christopher Lopez
United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Solicitation Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**SOLICITATION PROCEDURES FOR JOINT**
**CHAPTER 11 PLAN OF THE TORT CLAIMANTS'**
**COMMITTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The following procedures (the "Solicitation Procedures") are adopted with respect to (a) the distribution of Solicitation Packages for the Plan and (b) the return and tabulation of Ballots to be used in voting on the Plan.

The Solicitation Procedures set out in this document are supplemented by the instructions accompanying the Ballots included in the Solicitation Packages that will be sent to (or can be obtained by) those persons entitled to vote on the Plan. Reference should be made to those instructions as well as to the contents of this document; however, in the case of a conflict, the terms of this document control.[2]

## I.    DEFINITIONS

1.    "Ballot" means the forms of ballots approved by the Bankruptcy Court and provided to Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, and 10 to indicate their votes to accept or reject the Plan and, to extent applicable, make certain elections, as defined in the Solicitation Procedures Motion, to the extent consistent with the Solicitation Procedures Order.

2.    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect and as may be hereafter amended.

3.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court of the United States having jurisdiction over the Chapter 11 Case.

4.    "Business Day" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

---

[1]    The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]    The preceding capitalized terms are defined below.

5.      "Chapter 11 Case" means the above-captioned chapter 11 bankruptcy case of the Debtor.

6.      "Claim" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code.

7.      "Claimant" means a Holder of a Claim.

8.      "Confirmation Date" means the date on which the Confirmation Order is entered on the Docket in the Chapter 11 Case.

9.      "Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be continued from time to time.

10.     "Confirmation Hearing Notice" means the notice included in the Solicitation Packages notifying parties, among other things, of the date and time fixed for the Confirmation Hearing, the deadline by which parties entitled to vote must submit Ballots to accept or reject the Plan, and the opportunity to submit objections to the Plan, substantially in the form attached to the Solicitation Procedures Order as Exhibit 4-1.

11.     "Confirmation Objection Deadline" means the date that is at least fourteen (14) Business Days prior to the date first set by the Bankruptcy Court for the Confirmation Hearing.

12.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Committees, the Debtor, and the Settling Parties.

13.     "Convenience Claim" means any GUC Claim in an Allowed amount that is less than or equal to Five Thousand Dollars ($5,000.00).

14.     "Convenience Claim Ballot" means a ballot submitted by a Holder of a Convenience Claim, substantially in the form attached to the Solicitation Procedures Order as Exhibit 3-1.

15.     "Debtor" means Tehum Care Services, Inc. f/k/a Corizon Health, Inc., a Texas corporation, in its capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

16.     "Disclosure Statement" means that certain disclosure statement relating to the Plan, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code, which is in form and substance acceptable to the Committees, the Debtor, and the Settling Parties.

17.     "Docket" means the docket in the jointly administered Chapter 11 Case maintained by the Clerk.

2

18.     "Effective Date" means the later of the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in **Article X.B** of the Plan have been satisfied or waived.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

19.     "Equity Interest" means any "equity security," as defined in section 101(16) of the Bankruptcy Code, in the Debtor.

20.     "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

21.     "Executory Contract" means a contract to which the Debtor is a party, including all amendments thereto, that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

22.     "Impaired" means, with respect to a Class of Claims or Interests or a Claim or Interest, a Class of Claim or Claim or Interest or an Interest that is "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

23.     "GUC Claim" means any Claim against the Debtor that is not a PI/WD Claim, an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim.  The term GUC Claim does not include Indirect GUC Claims.  The term GUC Claim includes any GUC Claim against the Debtor regardless of whether such Claim is alleged to have been allocated to CHS TX, Inc. or YesCare Corp. under the Plan of Divisional Merger.

24.     "GUC Claim Ballot" means a ballot submitted by a Holder of a GUC Claim, substantially in the form attached to the Solicitation Procedures Order as Exhibit 3-2.

25.     "Holder" means any Person or Entity holding a Claim or an Equity Interest.

26.     "Incarcerated Claimant" is the Holder of a PI/WD Claim who is known to be currently incarcerated in a federal, state, or local penal institution, prison, jail, reformatory, or other similar correctional institution.

27.     "Indirect Claim Ballot" means a ballot submitted by a Holder of an Indirect Claim, substantially in the form attached to the Solicitation Procedures Order as Exhibit 3-4.

28.     "Indirect Claims" means, collectively, Indirect GUC Claims and Indirect PI/WD Claims, as defined in the Plan.

29.     "Interest" means Equity Interest, as defined herein.

30.     "Objection Deadline" means the date established by the Bankruptcy Court in the Solicitation Procedures Order as the deadline for filing objections to confirmation of the Plan.

31.     "Opt-Out Release Form" means the form approved by the Bankruptcy Court for opting out of the Consensual Claimant Release, substantially in the form attached to the Solicitation Procedures Order as Exhibit 2.  Claimants may vote to accept the Plan on a Ballot and, at the same time, elect to opt out of the Consensual Claimant Release.

32.     "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code and includes any individual, corporation, general or limited partnership, limited liability company, joint venture, estate, trust, benefit plan, unincorporated organization, business, syndicate, sole proprietorship, association, organization, labor union or other entity, or governmental unit.

33.     "Petition Date" means February 13, 2023, the date on which the Debtor commenced the Chapter 11 Case.

34.     "PI/WD" means personal injury or wrongful death.

35.     "PI/WD Claim" means any unsecured Claim against the Debtor that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim within the meaning of 28 U.S.C. § 157(b)(2)(B), including any PI/WD Claim against the Debtor regardless of whether such Claim is alleged to have been allocated to CHS TX, Inc. or YesCare Corp. under the Plan of Divisional Merger.  The term PI/WD Claim does not include Indirect PI/WD Claims.

36.     "PI/WD Claim Ballot" means a ballot submitted by a Holder of a PI/WD Claim, substantially in the form attached to the Solicitation Procedures Order as Exhibit 3-3.

37.     "Plan" means the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors*, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code.

38.     "Plan Proponent" means the TCC, the UCC, and the Debtor.

39.     "Publication Notice" means a published notice of the date and time fixed for the Confirmation Hearing, the deadline by which parties entitled to vote must submit Ballots to accept or reject the Plan, and the opportunity to submit objections to the Plan, substantially in the form attached to the Solicitation Procedures Order as Exhibit 4-2.

40.     "Schedules" means, collectively, the schedule of assets and liabilities, schedule of Executory Contracts and Unexpired Leases and statement of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

41.     "Solicitation Agent" means Verita Global, or any other firm that may be retained to act as the solicitation and tabulation agent with respect to the Plan.

42.     "Solicitation Date" means the date established by the Bankruptcy Court as the deadline by which the Solicitation Agent must cause the Solicitation Packages to be distributed to the parties entitled to vote to accept or reject the Plan, as more specifically provided herein.

43.     "Solicitation Package" means, and will consist of, all of the following:

a       a cover letter describing the contents of the Solicitation Package and for Holders of Claims except for Incarcerated Claimants, an enclosed USB

flash drive (described below) with instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;

b.    the Confirmation Hearing Notice;

c.    for Holders of all Claims except Incarcerated Claimants, a USB flash drive containing a copy of the Solicitation Procedures and the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date);

d.    for Incarcerated Claimants, a paper copy of the Solicitation Procedures and the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date);

e.    the Solicitation Procedures Order (without exhibits);

f.    for Holders of Claims, an Opt-Out Release Form and a pre-addressed, return envelope for the completed Opt-Out Release Form;

g.    for Holders of Claims entitled to vote to reject or accept the Plan, an appropriate Ballot and voting instructions for the same;

h.    for Holders of Claims entitled to vote to reject or accept the Plan, a pre-addressed, return envelope for completed Ballots;

i.    for Holders of PI/WD Claims, a letter from the TCC urging such claimants to vote to accept the Plan;

j.    for Holders of GUC Claims, a letter from the UCC urging such claimants to vote to accept the Plan; and

k.    any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

44.    "Solicitation Procedures Motion" means the *Joint Motion of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Claim Holders, (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief*, as filed and as may be amended from time and time.

45.    "Solicitation Procedures Order" means any order of the Bankruptcy Court establishing the procedures for the solicitation of votes to accept or reject the Plan.

46.     "TCC" means the official committee of tort claimants in the Debtor's Chapter 11 Case appointed by the United States Trustee, as such committee is reconstituted from time to time.

47.     "Trust" means the Official Tort Claimants' Committee appointed in the Chapter 11 Case by the U.S. Trustee, as the same may be reconstituted from time to time.

48.     "UCC" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee, as the same may be reconstituted from time to time.

49.     "Unexpired Lease" means a lease to which the Debtor is a party, including all amendments thereto, that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

50.     "Unimpaired" means a Class of Claims or Interests that is "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

51.     "United States Trustee" means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the Southern District of Texas.

52.     "Voting PI/WD Claimants" means Holders of PI/WD Claims who prior to the Voting Deadline timely filed, or were deemed to have timely filed, a personalized Proof of Claim, or whose PI/WD Claims are scheduled as undisputed, noncontingent, and liquidated in the Schedules.

53.     "Voting Deadline" means the date by which all Persons entitled to vote on the Plan must vote to accept or reject the Plan.

54.     "Voting Record Date" means November 13, 2024.

## II.    CONFIRMATION NOTICES

The Solicitation Packages will include the Confirmation Hearing Notice.  In addition to the mailed Confirmation Hearing Notice, the Plan Proponents will cause notice of the Confirmation Hearing to be published.  The Publication Notice will be published in the Prison Legal News on or before November 29, 2024.

The Plan Proponents will distribute a copy of the Confirmation Hearing Notice and Notice of Non-Voting Status to Holders of Unimpaired Claims and Equity Interests in Classes 1, 2 and 11.  Holders of Claims in Classes 1 and 2 are Unimpaired and are presumed to accept the Plan. Holders of Equity Interests in Class 11 are Impaired and are not receiving any distributions under the Plan as are presumed to reject the Plan.  The Plan Proponents will distribute a copy of the Notice of Non-Voting Status to such Holders.  The Plan Proponents will also distribute a copy of the Contract/Lease Notice to counterparties to the Executory Contracts and Unexpired Leases.

## III.     DISTRIBUTION OF SOLICITATION PACKAGES

This Section III explains the manner in which Solicitation Packages will be distributed to parties entitled to vote on the Plan and other interested parties.

1.      <u>Claims</u>.  The Solicitation Agent will cause Solicitation Packages to be served with respect to Claims in the manner described in Section IV below.

2.      <u>Other Parties</u>.  The Solicitation Agent will cause a Solicitation Package (without a Ballot) to be served for informational purposes upon (a) the Office of the United States Trustee for the Southern District of Texas, (b) the Securities and Exchange Commission, (c) those parties that have requested notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002, and (d) any other known Holders of Impaired Claims against, or Equity Interests in, the Debtor.  The Plan Proponents may, in their discretion, distribute or cause the Solicitation Agent to distribute Solicitation Packages to other parties not specified in this Section III.

3.      <u>Determination of Holders of Record</u>.  Except with respect to Claims, the Solicitation Packages will be served for informational purposes upon the Entity that holds a Claim or Equity Interest, as applicable, as of the Voting Record Date, and neither the Plan Proponents nor the Solicitation Agent will have any obligation to cause a Solicitation Package to be served upon a subsequent Holder of such Claim (as evidenced by any notice of assignment of such Claim entered on the Docket or that only becomes effective after the Voting Record Date or otherwise) or Equity Interest.

4.      <u>Exception for Undeliverables</u>.  Notwithstanding any provision in this Section III to the contrary, neither the Plan Proponents nor the Solicitation Agent will be required to mail a Solicitation Package to any Person or Entity from which the notice of the Solicitation Procedures Motion or other mailed notice in the Chapter 11 Case was returned as undeliverable by the postal service, unless the Solicitation Agent is provided with an accurate address for such person or entity before the Solicitation Date.

## IV.     SPECIAL PROCEDURES RELATING TO CONVENIENCE, PI/WD, GUC, AND INDIRECT CLAIMS

A.      Each Holder of a Convenience, PI/WD, and GUC Claim will have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant.  The temporary allowance of Convenience, PI/WD, and GUC Claims in the amount of $1.00 is solely for voting purposes, and will not be binding upon the Holder, the Plan Proponents, the Trusts, or any other party for any purpose other than voting on the Plan.

B.      Each Holder of an Indirect Claim will similarly have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant.  The temporary allowance of Indirect Claims in the amount of $1.00 is solely for voting purposes, and will not be binding upon the Holder, the Plan Proponents, the Trusts, or any other party for any purpose other than voting on the Plan.

C.      Any Holder of a Claim that seeks different treatment for its Claim for voting purposes is required to file a motion pursuant to Bankruptcy Rule 3018(a) (a "<u>Rule 3018 Motion</u>")

7

seeking temporary allowance of such Claim in a different amount for voting purposes only. Any such Rule 3018 Motion must be filed with the Bankruptcy Court and served on the Tort Claimants' Committee's counsel no later than ***December 27, 2024***, at 5:00 p.m. (Prevailing Central Time). In accordance with Bankruptcy Rule 3018, any Ballot submitted by a Holder of a Claim that files a Rule 3018 Motion will be counted solely in accordance with these Solicitation Procedures unless and until, after notice and a hearing, such Claim is temporarily allowed by the Bankruptcy Court for voting purposes only in a different amount.

## V.     RETURN OF BALLOTS AND OPT-OUT RELEASE FORMS

**1.      Claimants Entitled to Vote**.  Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9 and 10 are entitled to vote and complete Opt-Out Release Forms.

**2.      Authority to Complete and Execute Ballots**.  If a Ballot is signed by a trustee, executor, guardian, attorney-in-fact, officer of a corporation, or any other Entity acting in a fiduciary or representative capacity, such person must indicate such capacity when signing.  The authority of the signatory of each Ballot to complete and execute the Ballot will be presumed, but each such signatory must certify, on information and belief, by executing the Ballot, that he or she has such authority and must provide evidence of such authority upon request of the Solicitation Agent.

**3.      Place to Send Completed Ballots and Opt-Out Release Forms**.  All Ballots and Opt-Out Release Forms should be returned by online transmission through the E-Ballot platform on the Solicitation Agent's website at https://veritaglobal.net/tehum, by mail, using the envelope included in the Solicitation Package, or by hand delivery or overnight courier to:

Tehum Care Services, Inc.
Ballot Processing Center
Verita Global
222 N. Pacific Coast Hwy., Ste. 300
El Segundo, CA  90245

**4.      Deadline for Receiving Completed Ballots and Opt-Out Release Forms**.  All Ballots and Opt-Out Release Forms must be **actually received** by the Solicitation Agent by 5:00 p.m. (Prevailing Central Time) on the Voting Deadline in order to register a vote on the Plan and/or make an election to "Opt Out" of the Consensual Claimant Release.  If any Ballot is received by the Solicitation Agent after such date and time, the vote(s) recorded on that Ballot may not be counted for purposes of voting on the Plan.

**5.      Ballots and Opt-Out Release Forms Submitted by Electronic Transmission**. The Solicitation Agent will accept online transmission of Ballots and Opt-Out Release Forms through the E-Ballot platform on the Solicitation Agent's website but will **not** accept Ballots or Opt-Out Release Forms submitted by other forms of electronic transmission or facsimile.  Any Ballots so submitted will **not** be counted for purposes of voting on the Plan.

**6.      Retention of Ballots and Opt-Out Release Forms by Solicitation Agent**.  The Solicitation Agent will date-stamp all Ballots and Opt-Out Release Forms when received.  Ballots and Opt-Out Release Forms received on the day of the Voting Deadline will be dated and time

8

stamped.  In addition, the Solicitation Agent will retain originals of all Ballots and Opt-Out Release Forms for a period of two years after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court.

## I.      CLASSIFICATION OF CLAIMS

**1.**      **Convenience Claims**.  All Convenience Claims shall be placed into Class 3.

**2.**      **Channeled GUC Claims**.  Claims asserted by Holders of GUC Claims that either (a) do not return the Opt-Out Release Form or (b) return the Opt-Out Release Form but do not make an irrevocable election to "Opt Out" of the Consensual Claimant Release shall be placed into Class 4 and shall be deemed to be Channeled GUC Claims for purpose of determining class acceptance under section 1126(c) of the Bankruptcy Code.

**3.**      **Opt-Out GUC Claims**.  Claims asserted by Holders of GUC Claims that return the Opt-Out Release Form and make an irrevocable election to "Opt Out" of the Consensual Claimant Release shall be placed into Class 5 and shall be deemed to be Opt-Out GUC Claims for purpose of determining class acceptance under section 1126(c) of the Bankruptcy Code.

**4.**      **Channeled PI/WD Claims**.  Claims asserted by Holders of PI/WD Claims that either (a) do not return the Opt-Out Release Form or (b) return the Opt-Out Release Form but do not make an irrevocable election to "Opt Out" of the Consensual Claimant Release shall be placed into Class 6 and shall be deemed to be Channeled PI/WD Claims for purpose of determining class acceptance under section 1126(c) of the Bankruptcy Code.

**5.**      **Opt-Out PI/WD Claims**.  Claims asserted by Holders of PI/WD Claims that return the Opt-Out Release Form and make an irrevocable election to "Opt Out" of the Consensual Claimant Release shall be placed into Class 7 and shall be deemed to be Opt-Out PI/WD Claims for purpose of determining class acceptance under section 1126(c) of the Bankruptcy Code.

**6.**      **Opt-Out Insured PI/WD Claims**.  Claims asserted by Holders of PI/WD Claims that either (a) do not return the Opt-Out Release Form or (b) return the Opt-Out Release Form but do not make an irrevocable election to "Opt Out" of the Consensual Claimant Release, and (c) make an election on their Ballots to become Holders of Opt-Out Insured PI/WD Claims shall be placed into Class 8 and shall be deemed to be Channeled PI/WD Claims for purpose of determining class acceptance under section 1126(c) of the Bankruptcy Code.

**7.**      **Channeled Indirect Claims**.  Claims asserted by Holders of Indirect Claims that either (a) do not return the Opt-Out Release Form or (b) return the Opt-Out Release Form but do not make an irrevocable election to "Opt Out" of the Consensual Claimant Release shall be placed into Class 9 and shall be deemed to be Channeled Indirect Claims for purpose of determining class acceptance under section 1126(c) of the Bankruptcy Code.

**8.**      **Opt-Out Indirect Claims**.  Claims asserted by Holders of Indirect Claims that return the Opt-Out Release Form and make an irrevocable election to "Opt Out" of the Consensual Claimant Release shall be placed into Class 10 and shall be deemed to be Opt-Out Indirect Claims for purpose of determining class acceptance under section 1126(c) of the Bankruptcy Code.

## VI.    TABULATION OF BALLOTS

**1.      Ballots Excluded**.  A vote cast on a Ballot will not be counted if any of the following applies to such Ballot:

A.      The Holder submitting the Ballot or on whose behalf a vote is cast is not entitled to vote, pursuant to Section V.1 hereof.

B.      The Ballot is not actually received by the Solicitation Agent in the manner set forth in Section V.3 hereof by the Voting Deadline, unless the Plan Proponents have granted an extension of the Voting Deadline with respect to such Ballot, or the Bankruptcy Court has granted an extension.

C.      The Ballot is returned to the Solicitation Agent indicating acceptance or rejection of the Plan but is unsigned.

D.      The Ballot is returned to the Solicitation Agent:  (1) indicating neither acceptance nor rejection of the Plan; (2) indicating both acceptance and rejection of the Plan; or (3) indicating partial rejection and partial acceptance of the Plan.

E.      The Ballot is illegible or contains insufficient information to permit the identification of the claimant.

F.      The Ballot is transmitted to the Solicitation Agent by facsimile or other electronic means other than by online transmission through the E-Ballot platform on the Solicitation Agent's website.

G.      The Ballot is submitted in a form that is not the appropriate Ballot for such Claim.

**2.      General Solicitation Procedures and Standard Assumptions for Ballots**.  In addition to all other provisions of these Solicitation Procedures, the following procedures for voting and standard assumptions will be used in tabulating Ballots:

A.      A creditor may not split his, her, or its vote.  Accordingly, (1) each creditor will have a single vote, (2) the full amount of all such creditor's Claim (calculated in accordance with these procedures) will be deemed to have been voted either to accept or reject the Plan, and (3) any individual vote cast on a Ballot that partially rejects and partially accepts the Plan will not be counted.

B.      The Solicitation Agent will have the discretion, but will not be obligated, to contact voters to cure any defects in the Ballots.

C.      Any voter that delivers a valid Ballot may withdraw his, her, or its vote by delivering a written notice of withdrawal to the Solicitation Agent before the Voting Deadline (or such later date as agreed by the Plan Proponents).  To be valid, the notice of withdrawal must be signed by the party who signed the Ballot to be revoked.  The Plan Proponents reserve the right to contest any withdrawals.

D.      If multiple Ballots are received from different Holders purporting to hold the same Claim, in the absence of contrary information establishing which claimant held such Claim as of the Voting Deadline, the latest-dated otherwise valid Ballot that is received before the Voting Deadline (or such later date as agreed by the Plan Proponents) will be the Ballot that is counted.

E.      If multiple Ballots are received from the Holder of a Claim and someone purporting to be his, her, or its attorney or agent, the Ballot received from the Holder of the Claim will be the Ballot that is counted, and the vote of the purported attorney or agent will not be counted.

F.      There will be a rebuttable presumption that any claimant who submits a properly completed superseding Ballot or withdrawal of a Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's acceptance or rejection of the Plan.

G.      A Ballot that is completed, but on which the claimant did not note whether to accept or reject the Plan, or on which the claimant has voted both to accept and reject the Plan, will not be counted as a vote to accept or reject the Plan.

H.      If multiple Ballots are received from a Holder of a Claim for the same Claim, the latest-dated otherwise valid Ballot that is received before the Voting Deadline (or such later date as agreed by the Plan Proponents) will be the Ballot that is counted as a vote to accept or reject the Plan; if multiple Ballots are received from an attorney or agent with respect to the same Claim (but not from the Holder thereof), the latest-dated otherwise valid Ballot that is received before the Voting Deadline (or such later date as agreed by the Plan Proponents) will be the Ballot that is counted as a vote to accept or reject the Plan.

I.      The Plan Proponents will not be obligated to recognize any withdrawal, revocation or change of any vote received after the Voting Deadline (or such later date as agreed by the Plan Proponents).

**3.      General Solicitation Procedures and Standard Assumptions for Opt-Out Release Forms**.  In addition to all other provisions of these Solicitation Procedures, the following procedures for and standard assumptions will be used for Opt-Out Release Forms:

A.      The Solicitation Agent will have the discretion, but will not be obligated, to contact voters to cure any defects in the Opt-Out Release Form.

B.      Any voter that delivers a valid Opt-Out Release Form may withdraw his, her, or its election to "Opt Out" of the Consensual Claimant Release by delivering a written notice of withdrawal to the Solicitation Agent before the Voting Deadline (or such later date as agreed by the Plan Proponents).  To be valid, the notice of withdrawal must be signed by the party who signed the Opt-Out Release Form to be revoked.  The Plan Proponents reserve the right to contest any withdrawals.

C.      If multiple Opt-Out Release Forms are received from the Holder of a Claim and someone purporting to be his, her, or its attorney or agent, the Opt-Out Release Form received

11

from the Holder of the Claim will be the Opt-Out Release Form that is counted, and the election of the purported attorney or agent will not be counted.

D.      There will be a rebuttable presumption that any claimant who submits a properly completed superseding Opt-Out Release Form or withdrawal of an Opt-Out Release Form on or before the Voting Deadline has sufficient cause to change or withdraw such claimant's election with respect to the Consensual Claimant Release.

E.      An Opt-Out Release Form that is completed, but on which the claimant did not check the box to not grant the Consensual Claimant Release, will not be treated as an election to "Opt Out" of the Consensual Claimant Release.

F.      If multiple Opt-Out Release Forms are received from a Holder of a Claim, the latest-dated otherwise valid Opt-Out Release Form that is received before the Voting Deadline (or such later date as agreed by the Plan Proponents) will be the Opt-Out Release Form that controls; if multiple Opt-Out Release Forms are received from an attorney or agent with respect to the same Claim (but not from the Holder thereof), the latest-dated otherwise valid Opt-Out Release Form that is received before the Voting Deadline (or such later date as agreed by the Plan Proponents) will be the Opt-Out Release Form that controls.

G.      The Plan Proponents will not be obligated to recognize any withdrawal, revocation or change of any election to "Opt Out" of the Consensual Claimant Release received after the Voting Deadline (or such later date as agreed by the Plan Proponents).

## Exhibit 2

### Opt-Out Release Form

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

## OPT-OUT RELEASE FORM FOR HOLDERS OF ALL CLAIMS

This opt-out election form (the "Opt-Out Release Form") is the form used to "Opt Out" of the Consensual Claimant Release (as defined below) in *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Docket No. 1739) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"),[2] which is described in greater detail in that certain disclosure statement with respect to the Plan (Docket No. 1740) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**").

Making the election to "Opt Out" of the Consensual Claimant Release will impact how Your Claim against Tehum Care Services, Inc., f/k/a Corizon Health Services (the "**Debtor**") is treated under the Plan. Claimants who elect to "Opt Out" of the Consensual Claimant release will be barred from receiving a distribution from the Trusts and, instead, will have the right to pursue their claims against YesCare, Corp., CHS TX, Inc. or any other alleged successor entity under the doctrine of successor liability in the Civil Justice System.

You are receiving this Opt-Out Release Form because You are or You may be a Holder of a Claim or Interest in the above captioned chapter 11 case (the "**Chapter 11 Case**") pending before the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"). You should consult with Your attorney (if You have one) before making an election using this form. You do **NOT** have to complete this Opt-Out Release Form if You do not want to "Opt Out" of the Consensual Claimant Release.

---

[1]  The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Solicitation Procedures, as applicable.

**ENTITIES AND PERSONS REQUIRED TO COMPLETE THIS FORM:**
**ALL HOLDERS OF ALL CLAIMS AGAINST THE DEBTOR**

This Opt-Out Release Form is for use by any Holder of a Claim who wishes and intends to elect to opt out of the Consensual Claimant Release set forth in Article IX.D of the Plan.[3]

This Opt-Out Release Form **must** be used by **all** Holders of Claims against the Debtor who wish **not** to grant, and therefore elect to "Opt Out" of, the Consensual Claimant Release set forth in Article IX.D of the Plan.

Whether a Holder casts, chooses not to cast, or fails to cast (for whatever reason) a Ballot to accept or reject the Plan, a Holder must separately fill out and submit this Opt-Out Release Form to avoid granting the Consensual Claimant Release.

Accordingly, You may fill out Opt-Out Form Release regardless of: (1) the Class in which Your Claim may be categorized under the Plan; (2) Your view as to the nature and proper classification of Your Claim; (3) the legal elements of Your Claim; (4) the non-classification of Your Claim; and (5) Your receipt of a Ballot to vote to accept or reject the Plan as the Holder of a Convenience Claim, General Unsecured Claim, PI/WD Claim, or an Indirect Claim a separate standalone document provided to the Holders of Claims in Class 3, 4, 5, 6, 7, 8, 9, or 10 along with this Opt-Out Release Form.

For this Opt-Out Release Form to be effective, You **must** follow the instructions set forth in this Opt-Out Release Form.

**DEADLINE**

**THIS OPT-OUT RELEASE FORM MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT ON OR BEFORE FEBRUARY 21, 2025, AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "RELEASE OPT-OUT DEADLINE").**

**DISTINCTION BETWEEN THIS OPT-OUT RELEASE FORM AND BALLOT**

**The Ballot and this Opt-Out Release Form are separate and independent documents, and one cannot substitute for the other.**

**CONSEQUENCES OF ELECTION OR NON-ELECTION**

As detailed in the Plan and the Disclosure Statement, Your decision to opt-out will affect: (1) Your treatment under the Plan and (2) Your rights upon and after the Plan's confirmation.

---

[3]   A substantively identical description of the Consensual Claimant Release also appears in Article IV.B.7 of the Plan.  In this Opt-Out Release Form, any subsequent references to the Consensual Claimant Release will be limit itself to Article IX.D.

## DIFFERING TREATMENT UNDER THE PLAN
## FOR OPT-OUT AND NON-OPT-OUT CLAIMANTS

If You are the Holder of a PI/WD Claim and (i) You want to have such Claim liquidated and paid by the PI/WD Trust to the extent Allowed under the PI/WD Trust Documents, including the PI/WD Trust Distribution Procedures, or (ii) You want to pursue available insurance recoveries and retain the right to return to the PI/WD Trust under the circumstances specified in the PI/WD Trust Distribution Procedures, then You should **not** "Opt Out" of the Consensual Claimant Release.  Opting Out of the Consensual Claimant Release will mean that Your PI/WD Claim will not be assigned to **Class 6** (Channeled PI/WD Claims) or **Class 8** (Opt-Out Insured PI/WD Claims) and You will **not** receive a recovery from the PI/WD Trust.

If You are the Holder of a PI/WD Claim and You want to seek recovery from YesCare Corp., CHS TX, Inc., or any other alleged successor entity under the doctrine of successor liability in the Civil Justice System, then You should "Opt Out" of the Consensual Claimant Release. Opting Out of the Consensual Claimant Release will mean that Your PI/WD Claim will be assigned to **Class 7** (Opt-Out PI/WD Claims).  Please be advised that if You "Opt Out" of the Consensual Claimant Release, then You will **not** have the ability to undo that election if Your PI/WD Claim is subsequently dismissed.

If You are the Holder of a GUC Claim and (i) You want to have such Claim liquidated and paid by the GUC Trust to the extent Allowed under the Plan and the GUC Trust Agreement, then You should **not** "Opt Out" of the Consensual Claimant Release.  Opting Out of the Consensual Claimant Release will mean that Your GUC Claim will not be assigned to **Class 4** (Channeled GUC Claims) and You will **not** receive a recovery from the GUC Trust.

If You are the Holder of a GUC Claim and You want to seek recovery from YesCare Corp., CHS TX, Inc., or any other alleged successor entity under the doctrine of successor liability in the Civil Justice System, then You should "Opt Out" of the Consensual Claimant Release.  Opting Out of the Consensual Claimant Release will mean that Your GUC Claim will be assigned to **Class 5** (Opt-Out GUC Claims).  Please be advised that if You "Opt Out" of the Consensual Claimant Release, then You will **not** have the ability to undo that election if Your GUC Claim is subsequently dismissed.

If You are the Holder of an Indirect Claim and (i) You want to have such Claim liquidated and paid by one of the Trusts to the extent Allowed under the Plan, the GUC Trust Agreement, or the PI/WD Trust Documents, as applicable, then You should **not** "Opt Out" of the Consensual Claimant Release.  Opting Out of the Consensual Claimant Release will mean that Your Indirect Claim will not be assigned to **Class 9** (Channeled Indirect Claims) and You will **not** receive a recovery from either of the Trusts.

If You are the Holder of an Indirect Claim and You want to seek recovery from YesCare Corp., CHS TX, Inc., or any other alleged successor entity under the doctrine of successor liability in the Civil Justice System, then You should "Opt Out" of the Consensual Claimant Release. Opting Out of the Consensual Claimant Release will mean that Your Indirect Claim will be assigned to **Class 10** (Opt-Out Indirect Claims).  Please be advised that if You "Opt Out" of the

Consensual Claimant Release, then You will **not** have the ability to undo that election if Your Indirect Claim is subsequently dismissed.

## SCOPE: CONSENSUAL CLAIMANT RELEASE

As of the Final Payment Date, which is the date that the Final Settlement Payment is received by the Trusts, the Consensual Claimant Release will become effective.  The Consensual Claimant Release will **not** become effective unless and until all the Settlement Payments are received by the Trusts.

**If You do NOT affirmatively "Opt Out" of the Consensual Claimant Release by submitting this Opt-Out Release Form prior to the Voting Deadline**, the Consensual Claimant Release will bar You from initiating any Cause of Action against the Released Parties in the manner and to the extent spelled out in the Plan and/or order of the Bankruptcy Court, as may be applicable.[4]  Specifically, and as set forth in Article IX.D of the Plan:

**As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**The Consensual Claimant Release shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument,**

---

[4]  Excerpts from the Plan regarding the Consensual Claimant Release appear at the end of this Opt-Out Release Form.  The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect Your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  The Plan Proponents urge all Holders of Claims and Interests to read through the entire Plan and Disclosure Statement, plus any additional and related documentation, before submitting this Opt-Out Release Form.

or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.

If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.D shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.[5]

The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

The Consensual Claimant Release to which this Opt-Out Release Form applies is separate from and independent of the other releases contained in Articles IX.C and IX.E and the exculpation, recoupment, and injunction provisions in Articles IX.F–K, among other provisions.  If You object to any aspect of Article IX besides the Consensual Claimant Release, You must file a separate objection with the Court in accordance with the procedures described in the Solicitation Procedures Order.

### INSTRUCTIONS ON SUBMITTING THIS OPT-OUT RELEASE FORM

IF YOU WISH TO OPT-OUT OF THE CONSENSUAL CLAIMANT RELEASE SET FORTH IN ARTICLE IX.D OF THE PLAN, PLEASE **EITHER**:

1. COMPLETE, SIGN, AND DATE THIS OPT-OUT RELEASE FORM AND RETURN IT TO VERITA GLOBAL IN THE RETURN ENVELOPE PROVIDED OR OTHERWISE BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:

Tehum Care Services, Inc.
Ballot Processing Center
Verita Global
222 N. Pacific Coast Hwy., Ste. 300
El Segundo, CA  90245

---

[5]  Except for minor grammatical changes, the preceding description of the Consensual Claimant Release is substantively identical to the excerpt from the Plan appended at the end of this Opt-Out Release Form.  To the extent there is any discrepancy between this description of the Consensual Claimant Release and the quote below, the latter controls, and the version of Article IX.D.

2. **SUBMIT YOUR OPT-OUT RELEASE FORM VIA THE BALLOTING AGENT'S ONLINE PORTAL AT HTTPS://VERITAGLOBAL.NET/TEHUM. CLICK ON THE "SUBMIT E-BALLOT" SECTION OF THE WEBSITE AND IN ACCORDANCE WITH THE INSTRUCTIONS THERE PROVIDED TO SUBMIT YOUR OPT-OUT RELEASE FORM.**

**IMPORTANT NOTE: If You are also submitted a Ballot with Your Opt-Out Release Form, please include Your customized electronic Ballot ID number below:**

**Unique Ballot ID#:** _____

**Unique PIN#:** _____

The Balloting Agent's online portal is the sole manner in which the Opt-Out Release Forms will be accepted via electronic or online transmission. Opt-Out Release Forms submitted by facsimile, email or other means of electronic transmission **will not** be accepted.

Holders of Claims or Interests who submit an Opt-Out Release Form using the Balloting Agent's online portal should NOT also submit a paper Opt-Out Release Form.

<u>**DEADLINE REMINDER**</u>

AS ALREADY NOTED, AND REPEATED HERE, THIS OPT-OUT RELEASE FORM MUST BE <u>ACTUALLY</u> RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE RELEASE OPT-OUT DEADLINE: <u>FEBRUARY 21, 2025, AT 5:00 P.M. (PREVAILING CENTRAL TIME).</u>

<u>**CONSEQUENCES OF FAILURE TO MEET RELEASE OPT-OUT DEADLINE**</u>

IF THIS OPT-OUT RELEASE FORM IS RECEIVED <u>AFTER</u> THE RELEASE OPT-OUT DEADLINE, IT WILL NOT BE COUNTED BY THE SOLICITATION AGENT AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE CONSENSUAL CLAIMANT RELEASE SET FORTH IN ARTICLE IX.D OF THE PLAN AND YOUR CLAIM WILL BE CLASSIFIED UNDER THE PLAN ACCORDINGLY.

<u>**STEP-BY-STEP INSTRUCTIONS FOR FILLING IN THIS OPT-OUT RELEASE FORM**</u>

**To fill out this Opt-Out Release Form, You must complete the following**:

**Item 1. Claimant's Name and Address**.

Please fill in the name and address information requested. U.S. claimants should include street address, city, state, ZIP Code, telephone number, and the last four digits of their Social Security Number. Any claimants from other countries who do not have Social Security Numbers should include relevant address information in the space provided.

United States citizen claimants MUST provide the last four digits of their Social Security Number in this box. Claimants outside of the United States (or claimants in the United States who are not U.S. citizens) that do not have a Social Security Number MUST state so conspicuously in the area where such number would have been inserted.

**Item 2. Claim or Interest**.

Please check a box to indicate the nature of Your Claim against or Interest in the Debtor. You must certify that Your hold an Other Priority Claim against the Debtor, a Secured Claim against the Debtor, a Convenience Claim against the Debtor, a General Unsecured Claim against the Debtor, a PI/WD Claim against the Debtor, an Indirect Claim against the Debtor, an Interest in the Debtor, or an Unclassified Claim against the Debtor.

**Item 3. Consensual Claimant Release Election**.

Check the appropriate box if You elect **NOT** to grant the Consensual Claimant Release contained in Article IX.D of the Plan. Election to withhold consent to the releases contained in Article IX.D of the Plan is at Your option. If You received a Ballot and, regardless of whether You vote to accept or reject the Plan, submit Your Ballot without also submitting this Opt-Out Release Form, or if You do not submit this Opt-Out Release Form by the Voting Deadline, You will be deemed to consent to the releases contained in Article IX.D of the Plan to the fullest extent permitted by applicable law.

After the Voting Deadline, the election to NOT to grant the Consensual Claimant Release contained in Article IX.D of the Plan is **IRREVOCABLE**, and You will not be eligible to receive a distribution from the Trusts. Instead, You will have the right to liquidate Your Claim in the Civil Justice System.

**Item 4. Certifications, Acknowledgment, Signature and Date**.

Either the Claimant, the Claimant's personal representative, or the Claimant's attorney must sign the Opt-Out Release Form. If the Opt-Out Release Form is not signed, the election to "Opt Out" of the Consensual Claimant Release will **NOT** be valid.

The Claimant, the Claimant's personal representative, or the Claimant's attorney, must certify certain information in the Opt-Out Release Form. Please read the certifications below and ensure that the information in the Opt-Out Release Form meets the requirements of those certifications.

By signing the Opt-Out Release Form, You make the following certifications, on information and belief:

- "I am/ The Claimant is (i) the Holder of Claims or Interests set forth in Item 2, or (ii) an authorized signatory for an entity that is the Holder of the Claims or Interests set forth in Item 2";

- "I / The Claimant received this Opt-Out Release Form and am submitting it pursuant to the terms and conditions set forth therein"; and

7

- "No other Opt-Out Release Form with respect to the Holder's Claims or Interests has been completed or, if any other Opt-Out Release Forms have been submitted with respect to such Claims or Interests, then any such Opt-Out Release Forms are hereby revoked."

**IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-OUT RELEASE FORM, PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 967-0491 (U.S. / CANADA, TOLL-FREE) or +1 (310) 751-2691 (INTERNATIONAL)**

**WEBSITE: https://veritaglobal.net/tehum**

[*Remainder of page left intentionally blank.*]

## <u>OPT-OUT RELEASE FORM</u>

**Please read the instructions that accompany this Opt-Out Release Form before completing. Print clearly.**

**ITEM 1 —Name and Address:**

_____

Name

_____

Street Address

_____

City, State, and ZIP Code (U.S.)

_____

Telephone Number

_____

Last Four Digits of Social Security Number (U.S. claimants only)

**ITEM 2 — Claim or Interest**

The undersigned, as Holder of (or representative of a Holder of) a Claim, certifies that the undersigned (check all that apply):

☐　　　Holds a **Class 1 (Other Priority Claim)** against the Debtor

☐　　　Holds a **Class 2 (Other Secured Claim)** against the Debtor

☐　　　Holds a **Class 3 (Convenience Claim)** against the Debtor

☐　　　Holds a **Class 4 or Class 5 (General Unsecured Claim)** against the Debtor

☐　　　Holds a **Class 6, Class 7, or Class 8 (PI/WD Claim)** against the Debtor

☐　　　Holds a **Class 9 or Class 10 (Indirect Claim)** against the Debtor

☐　　　Holds a **Class 11 (Interest)** in the Debtor

☐　　　Holds an **Unclassified Claim** against the Debtor

**Please read the instructions that accompany this Opt-Out Release Form before completing. Print clearly.**

**ITEM 3 — CONSENSUAL CLAIMANT RELEASE ELECTION.**

BY CHECKING THIS BOX, THE UNDERSIGNED HOLDER:

☐ ELECTS <u>NOT</u> TO GRANT THE CONSENSUAL CLAIMANT RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN.

☐ ELECTS TO GRANT THE CONSENSUAL CLAIMANT RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN.

**IN MAKING THIS ELECTION, YOU ARE HEREBY ADVISED, AND ARE URGED TO KEEP THE FOLLOWING IN MIND:**

- **TO AVOID GRANTING THE CONSENSUAL CLAIMANT RELEASE AGAINST THE "RELEASED PARTIES" AS THAT TERM IS DEFINED IN THE PLAN, <u>YOU MUST AFFIRMATIVELY CHECK THE FIRST BOX ABOVE AND INDICATE THAT YOU ARE ELECTING NOT TO GRANT THE CONSENSUAL CLAIMANT RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN.</u>**

- **IF YOU AFFIRMATIVELY ELECT TO GRANT THE CONSENSUAL CLAIMANT RELEASE, IF YOU MAKE NO ELECTION AT ALL, OR IF YOU DO NOT COMPLETE THIS FORM, THEN YOU WILL BE DEEMED TO HAVE CONSENTED TO THE CONSENSUAL CLAIMANT RELEASE.**

- **THE CONSENSUAL CLAIMANT RELEASE TO WHICH THIS OPT-OUT RELEASE FORM APPLIES IS SEPARATE FROM AND INDEPENDENT OF THE OTHER RELEASES CONTAINED IN ARTICLES IX.C AND IX.E AND THE EXCULPATION, RECOUPMENT, AND INJUNCTION PROVISIONS IN ARTICLES IX.F-K, AMONG OTHER PROVISIONS. IF YOU OBJECT TO ANY ASPECT OF ARTICLE IX BESIDES THE CONSENSUAL CLAIMANT RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE SOLICITATION PROCEDURES ORDER.**

Please read the instructions that accompany this Opt-Out Release Form before completing.  Print clearly.

**ITEM 4 — Certifications, Acknowledgment, Signature and Date:**

By signing this Opt-Out Release Form, the signatory certifies, on information and belief, that:

(i)      I am/ The Claimant is (i) the Holder of Claims or Interests set forth in Item 2, or (ii) an authorized signatory for an entity that is the Holder of the Claims or Interests set forth in Item 2;

(ii)     I / The Claimant received this Opt-Out Release Form and am submitting it pursuant to the terms and conditions set forth therein; and

(iii)    No other Opt-Out Release Form with respect to the Holder's Claims or Interests identified in Item 2 has been completed or, if any other Opt-Out Release Forms have been submitted with respect to such Claims, then any such Opt-Out Release Forms are hereby revoked.

**Signature and Date**

_____
Signature of Claimant or Authorized Agent

_____
Date

**YOU <u>MUST</u> COMPLETE ITEM 4 IN ORDER FOR THIS OPT-OUT RELEASE FORM TO BE EFFECTIVE.**

**YOUR RECEIPT OF THIS OPT-OUT RELEASE FORM DOES <u>NOT</u> SIGNIFY THAT YOUR CLAIM OR INTEREST HAS BEEN OR WILL BE ALLOWED.**

3

## ADDITIONAL INFORMATION FOR HOLDERS OF CLAIMS

Separate and apart from the Consensual Claimant Release, the plan contains estate release, exculpation, and injunction provisions.  These provisions, as well as the relevant definitions, are included below exactly as they appear in the Plan for further and immediate reference.[1]  You should review these provisions, as they appear in the Plan and are discussed in the Disclosure Statement, with care and, if necessary, counsel.  The Plan Proponents urge all Claimants to read and review the entire Plan before submitting any vote or Opt-Out Release Form.

## Select Defined Terms[2]

"*Causes of Action*" means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.

"*Channeled Claim*" means a Channeled GUC Trust Claim or a Channeled PI/WD Trust Claim, as the context may require.

"*Channeled GUC Claim*" means a GUC Claim asserted by a GUC Claimant that does not opt out of the Consensual Claimant Release.

"*Channeled GUC Trust Claim*" means (a) a Channeled GUC Claim and (b) an Indirect GUC Claim that is a Channeled Indirect Claim.

"*Channeled Indirect Claim*" means an Indirect Claim asserted by an Indirect Claimant that does not opt out of the Consensual Claimant Release.

"*Channeled PI/WD Claim*" means a PI/WD Claim asserted by a PI/WD Claimant (a) who does not opt out of the Consensual Claimant Release or (b) who does not opt out to pursue his or her PI/WD Claims in the Civil Justice System for the purpose of pursuing a recovery from one or more PI/WD Insurance Companies, *provided*, *however*, that an Opt-Out Insured PI/WD Claim shall become a Channeled PI/WD Claim if the Holder of the Opt-Out Insured PI/WD Claim elects or is deemed to elect to return to the PI/WD Trust under and in accordance with the PI/WD Trust Distribution Procedures.  A PI/WD Claim asserted by the Holder of an Opt-Out PI/WD Claim shall not be a Channeled PI/WD Claim.

---

[1]   Accordingly, certain pronouns, *i.e.* "this," are not alerted.

[2]   These terms appear in Article I of the Plan, wherein the definitions of other terms relevant to any understanding of the Plan and the Disclosure Statement may be found and should be reviewed by any Holder.

"*Channeled PI/WD Trust Claim*" means (a) a Channeled PI/WD Claim and (b) an Indirect PI/WD Claim that is a Channeled Indirect Claim.

"*Civil Justice System*" means any non-bankruptcy federal, state, foreign, cross-border, or international adjudicatory system, whether private or public, judicial, administrative, arbitral, or mediative, or adversarial or non-adversarial.

"*Consensual Claimant Release*" means the consensual releases granted by the Consenting Claimants in favor of the Released Parties as set forth in **Article IV.B.7** and **Article IX.D**.

"*Consenting Claimant*" means a Consenting Indirect Claimant, a Consenting GUC Claimant, and/or Consenting PI/WD Claimant, regardless of whether any such Claimant receives a Distribution and so long as such Claimant has previously consented to the Consensual Claimant Release in accordance with the procedures set forth in the Plan.

"*Consenting Indirect Claimant*" means:  (a) any Holder of an Indirect Claim that votes to accept or is deemed to accept the Plan **and** who does not check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release; and (b) any Holder of an Indirect Claim that abstains from voting on the Plan, votes to reject the Plan, or is deemed to reject the Plan **and** that does not (i) check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release or (ii) object to the Plan in respect of the Consensual Claimant Release.  No Holder of an Opt-Out Indirect Claim shall be a Consenting Indirect Claimant.

"*Consenting GUC Claimant*" means:  (a) any Holder of an Indirect Claim that votes to accept or is deemed to accept the Plan **and** who does not check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release; and (b) any Holder of an Indirect Claim that abstains from voting on the Plan, votes to reject the Plan, or is deemed to reject the Plan **and** that does not (i) check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release or (ii) object to the Plan in respect of the Consensual Claimant Release.  No Holder of an Opt-Out Indirect Claim shall be a Consenting Indirect Claimant.

"*Consenting PI/WD Claimant*" means:  (a) any Holder of a PI/WD Claim who votes to accept or is deemed to accept the Plan **and** who does not check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release, including any who elect to pursue insurance recoveries under and consistent with **Article IV.C**.; (b) any Holder of a PI/WD Claim who abstains from voting on the Plan, votes to reject the Plan, or is deemed to reject the Plan **and** who does not (i) check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release or (ii) object to the Plan in respect of the Consensual Claimant Release; and (c) any Holder of a PI/WD Claim who elects to receive an Expedited PI/WD Claim Distribution.  No Holder of an Opt-Out PI/WD Claim shall be a Consenting PI/WD Claimant.

"*Convenience Claim*" means any GUC Claim in an Allowed amount that is less than or equal to Five Thousand Dollars ($5,000.00).

2

"*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the TCC, (b) the members of the TCC, (d) the UCC, (e) the members of the UCC; and (f) the Mediator.

"*GUC Claim*" means any Claim against the Debtor that is not a PI/WD Claim, an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim.  The term GUC Claim does not include Indirect GUC Claims.  The term GUC Claim includes any GUC Claim against the Debtor regardless of whether such Claim is alleged to have been allocated to CHS TX, Inc. or YesCare Corp. under the Plan of Divisional Merger.

"*GUC Claimant*" means the Holder of a GUC Claim.

"*Indirect Claims*" means, collectively, Indirect GUC Claims and Indirect PI/WD Claims.

"*Indirect GUC Claim*" means a Claim against the Debtor for contribution, indemnification, reimbursement, or subrogation of any entity that is liable with the Debtor on a GUC Claim held by another creditor, whether contractual or implied by law and whether in the nature of or sounding in contract, tort, warranty, statute, common law, or any other theory of law or equity whatsoever.

"*Indirect PI/WD Claim*" means a Claim against the Debtor for contribution, indemnification, reimbursement, or subrogation of any entity that is liable with the Debtor on a PI/WD Claim held by another creditor, whether contractual or implied by law and whether in the nature of or sounding in contract, tort, warranty, statute, common law, or any other theory of law or equity whatsoever.

"*Indirect Claimant*" means the Holder of an Indirect Claim.

"*PI/WD*" means personal injury or wrongful death.

"*PI/WD Claim*" means any unsecured Claim against the Debtor that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim within the meaning of 28 U.S.C. § 157(b)(2)(B), including any PI/WD Claim against the Debtor regardless of whether such Claim is alleged to have been allocated to CHS TX, Inc. or YesCare Corp. under the Plan of Divisional Merger.  The term PI/WD Claim does not include Indirect PI/WD Claims.

"*PI/WD Claimant*" means the Holder of a PI/WD Claim.

"*Released Parties*" means collectively the following, in each case in its capacity as such with each being a "*Released Party*":  (a) the Debtor; (b) Russell Perry, the Debtor's Chief Restructuring Officer; (c) the Committees and their respective members; (d) the Professionals; (e) the GUC Trustee; (f) the PI/WD Trustee; (g) the Settlement Parties; (h) M2 EquityCo LLC; (i) Valitás Intermediate Holdings Inc.; (j) Valitás Health Services, Inc.; (k) M2 Pharmacorr Equity Holdings LLC; (l) Pharmacorr/M2 LLC; (m) Pharmacorr Holdings LLC; (n) Endeavor Distribution LLC; (o) Yes Care Holdings LLC; (p) Sigma

RM, LLC; (q) DG Realty Management LLC; (r) Scaracor LLC; (s) Yitzchak Lefkowitz a/k/a Isaac Lefkowitz; (t) Sara Ann Tirschwell; (u) Ayodeji Olawale Ladele; (v) Beverly Michelle Rice; (w) Jeffrey Scott King; (x) Jennifer Lynne Finger; (y) Frank Jeffrey Sholey; (z) FTI Capital Advisors, LLC, and for each Entity listed in (a) through (z), each of their respective current and former officers, directors, managers, employees, contractors, agents, attorneys, and other professional advisors, Insiders, and Affiliates; *provided*, *however*, that a Non-Released Party shall not be a "Released Party."

"*Releasing Parties*" means collectively the following, in each case in its capacity as such with each being a "*Releasing Party*":  (a) the Debtor; (b) the Settlement Parties; and (c) Consenting Claimants.

"*Settlement Parties*" or "*Settling Parties*" means, collectively, YesCare Corp., its wholly owned subsidiaries (including CHS TX, Inc.); Geneva Consulting, LLC; Perigrove 1018, LLC; Perigrove, LLC; M2 HoldCo, LLC; M2 LoanCo, LLC; and PharmaCorr LLC.

### *Estate Release*[3]

**As of the Final Payment Date, except for the claims or theories of recover or remedies distributed to or retained by Holders of Opt-Out GUC Claims, Holders of Opt-Out PI/WD Claims, and Holders of Opt-Out Indirect Claims, and except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns, including the Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in the Plan shall not be construed to release any Insurance Actions or any post-**

---

[3]   The Estate Release appears in Article IX.C of the Plan.

**Effective Date obligations under the Estate Party Settlement or any document, instrument, or agreement executed to implement the Estate Party Settlement.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.C shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Estate Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.**

## Consensual Claimant Release[4]

**As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.D shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the**

---

[4]   The Consensual Claimant Release appears in Article IX.D of the Plan and is discussed in Article IV.B.7 of the Plan.

Trust Documents.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.D shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

**Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9**[5]

As of the Final Payment Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Channeled GUC Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.E shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.

---

[5]   The Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9 appear in Article IX.E of the Plan.

## Exculpation[6]

**As of the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

## Channeling Injunction[7]

### Purpose

**As of the Effective Date, to facilitate the liquidation of Channeled Claims by the Trusts and the preserve and promote the settlement framework contemplated by and provided for in the Plan, including the Estate Party Settlement, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under the Bankruptcy Code, the Bankruptcy Court shall issue the channeling injunction set forth in this Article IX.I (the "Channeling Injunction").**

### Protections Afforded to Released Parties

**Subject to the terms of Article IX.I.5, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, (a) the sole recourse of any Holder of a Channeled PI/WD Trust Claim that is eligible for compensation under the PI/WD Trust Distribution Procedures on account of such Channeled PI/WD Trust Claim shall be to and against the PI/WD Trust pursuant to the PI/WD Trust Documents, and such Holder shall have no right to assert such Channeled PI/WD Trust Claim or any Claim against the Debtor against any Released Party, and (b) the sole recourse of any Holder of a Channeled GUC Trust Claim that is eligible for compensation under the Plan and the GUC Trust Agreement on account of such Channeled GUC Trust Claim shall be to and against the GUC Trust, and such Holder shall have no right to assert such Channeled GUC Trust Claim or any Claim against the Debtor against any Released Party. Accordingly, on or after the Effective Date, and subject to the**

---

[6]   The Exculpation provision appears in Article IX.F of the Plan.

[7]   The Channeling Injunction appears in Article IX.I of the Plan.

terms of **Article IX.I.5**, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:

(a) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;

(b) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;

(c) creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;

(d) asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or

(e) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or any Plan Document or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Trusts, except in conformity and compliance with the Plan and any Plan Document with respect to any such Channeled Claim.

## Reservations

Notwithstanding anything to the contrary in this Article IX.I, this Channeling Injunction shall not enjoin:

(a) the rights of Holders of Channeled PI/WD Trust Claims to assert such Claims against the PI/WD Trust in accordance with the PI/WD Trust Distribution Procedures;

(b) the rights of Holders of Channeled GUC Trust Claims to assert such Claims against the GUC Trust in accordance with the Plan and the GUC Trust Agreement;

(c)      the rights of Holders of Channeled Claims to assert such Claims against any Released Party if the Channeling Injunction is terminated under Article IX.I.5;

(d)      the Trusts from enforcing their rights under the Plan and the Confirmation Order;

(e)      the rights of the Trusts to prosecute any action against an Insurance Company based on or arising from a PI/WD Insurance Policy or a GUC Insurance Policy;

(f)      the rights of the Trusts to prosecute any Retained Estate Causes of Action; and

(g)      the rights of Holders of Channeled Claims to seek recovery from any Person, Entity, or Governmental Unit that is not a Released Party on account of their Channeled Claims or any other claim or Cause of Action.

<u>Enforcement</u>

Any Released Party may enforce the Channeling Injunction before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

<u>Termination of Channeling Injunction</u>

The Channeling Injunction and all protections afforded to the Released Parties set forth in this <u>Article IX.I</u> shall terminate automatically (or not take effect) as to the Holder of any Channeled Claims if a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by both the PI/WD Trustee and GUC Trustee in accord with <u>Article IV.B.2</u>, or if the Estate Release or the Consensual Claimant Release become void under <u>Article IV.B.7</u>, <u>Article IV.B.9</u> or <u>Article IV.B.12</u>.

<u>Tolling of Statute of Limitations</u>

While the Channeling Injunction is in effect as to any Channeled Claim, and for ninety (90) days following the termination of the Channeling Injunction under <u>Article IX.I.5</u>, the running of any relevant Statute of Limitations shall be tolled as to any Channeled Claim.  Upon the termination of the Channeling Injunction, the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.

## **Exhibit 3-1**

**Ballot for Holders of Claims in Class 3 (Convenience Class)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**BALLOT FOR HOLDERS OF CLAIMS IN CLASS 3
(CONVENIENCE CLAIMS) FOR VOTING ON JOINT
CHAPTER 11 PLAN OF THE TORT CLAIMANTS' COMMITTEE,
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

The Official Committee of Tort Claimants (the "**Tort Claimants' Committee**") and the Official Committee of Unsecured Creditors (the "**Unsecured Creditors' Committee**") appointed in the above Chapter 11 Case, and Tehum Care Services, Inc., the above-captioned debtor (the "**Debtor**" and, together with Tort Claimants' Committee and the Unsecured Creditors' Committee, the "**Plan Proponents**"), are soliciting votes from Holders of Claims on the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Docket No. 1739) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"),[2] which is described in greater detail in that certain disclosure statement with respect to the Plan (Docket No. 1740) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**"). The Plan and Disclosure Statement have been included in the package of materials containing this ballot (this "**Ballot**") and can also be accessed free-of-charge at https://veritaglobal.net/tehum.

On November 13, 2024, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") entered an order (the "**Solicitation Procedures Order**") approving the Disclosure Statement and procedures for soliciting votes to accept or reject the Plan (the "**Solicitation Procedures**"). If the Plan is confirmed by the Bankruptcy Court it will be binding on You whether or not You vote and, if You vote, whether You vote in support of or to reject the Plan.

The Plan will be accepted by the Holders of Claims for purposes of section 1129 of the Bankruptcy Code if it is accepted by the Holders of at least two-thirds in amount and at least one-half in number of Claims who vote. If the Plan is confirmed by the Bankruptcy Court, all Holders

---

[1]   The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is:  205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Solicitation Procedures, as applicable.

of Claims against and Equity Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

You should review the Disclosure Statement and the Plan before You vote.  You may wish to seek legal advice concerning the Plan and Your classification and treatment under the Plan.

## THIS BALLOT'S LIMITATIONS

This Ballot does **not** constitute and will **not** be deemed a Proof of Claim or an assertion of a Claim. Any admission of Claims for purposes of voting on the Plan is **not** an admission of liability on the part of the Debtor, the Committees, or any other party for payment purposes.  This Ballot is **not** a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  If (i) the Plan Proponents revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered, or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to You.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Plan Proponents will not resolicit votes for acceptance or rejection of the Plan.

## WHO SHOULD USE THIS BALLOT

This Ballot is to be used by Holders of Convenience Claims in Class 3 only.  Therefore, please use this Ballot to cast Your vote to accept or reject the Plan if You are, as of November 13, 2024 (the "**Voting Record Date**"), a Holder of a Claim (a "**Holder**") against the Debtor that is a General Unsecured Claim in an amount that is less than or equal to Five Thousand Dollars ($5,000), as those terms are defined in Article I of the Plan.  Any admission of Claims for purposes of voting on the Plan is **not** an admission of liability on the part of the Debtor, the Committees, or any other party for payment purposes.

## DEADLINE, FORMS, AND LIMITATIONS

**Unless such time is extended by the Debtor, the Committees, or the Bankruptcy Court**, this Ballot must be properly completed, signed, and returned to the address below so as to be received no later **than February 21, 2025, at 5:00 p.m. (Prevailing Central Time)** (the "**Voting Deadline**") in order for the vote on this Ballot to count.

**Facsimiles or other electronic submissions other than by online transmission through the E-Ballot platform on the Solicitation Agent's website at https://veritaglobal.net/tehum, including e-mail, will NOT be accepted.**

## THIS BALLOT AND THE OPT-OUT RELEASE FORM ARE SEPARATE DOCUMENTS

In addition to this Ballot, You will have received the Opt-Out Release Form.  The Opt-Out Release Form and this Ballot are separate and distinct documents and are designed for different purposes.  This Ballot is intended to be used by recipients to vote to reject or accept the Plan and, to the extent applicable, make certain elections regarding Trust participation, expedited distributions, or insurance rights.  The Opt-Out Release Form is intended to be used by recipients

who elect to opt out of the Consensual Claimant Release in Article IX.D of the Plan.  The Opt-Out Release Form has one purpose and can be used for no other.

Therefore:

- You **MUST** submit this Ballot **if** You want Your vote to accept or reject the Plan to be counted and if You wish to make certain applicable elections.

- You **MUST** submit the Opt-Out Release Form **if** You decline to grant the Consensual Claimant Release on the Effective Date.

However, You may include both a completed Ballot and the completed Opt-Out Release Form in same stamped preaddressed envelope provided with the Solicitation Package You received.  The Plan Proponents advise You to carefully consider the Ballot and the Opt-Out Release Form on their own merits.

## DOCUMENTS INCLUDED WITH THIS BALLOT

You should have received the following documents with this Ballot (collectively, the "**Solicitation Package**").  Please note that some of the following documents may be included on a USB flash drive included as part of Your Solicitation Package.

- a cover letter describing the contents of the Solicitation Package and the enclosed USB flash drive or printed materials for incarcerated individuals, and instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;

- the Confirmation Hearing Notice (as defined in the Solicitation Procedures);

- a USB flash drive containing a copy of the Solicitation Procedures and the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits were filed with the Bankruptcy Court before the distribution of the Solicitation Package) or printed versions of the same for incarcerated individuals;

- the Solicitation Procedures Order (without exhibits); and

- a pre-addressed, return envelope for Your completed Ballot.[3]

If You have questions about this Ballot, or if You did not receive a copy of the Plan or any related materials, please contact Verita Global (the "**Solicitation Agent**"), at http://www.veritaglobal/tehum/inquiry, or by phone at (866) 967-0491 (U.S./Canada, toll free) or (310) 751-2691 (International). Information may also be obtained at https://veritaglobal.net/tehum.

---

[3]   As noted above, You may include both this Ballot and the Opt-Out Release Form in one of the pre-addressed return envelopes with which Holders of Claims in Voting Classes have been provided.

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

The following instructions explain each of the items contained on Your Ballot.  If You have any questions, please contact the Solicitation Agent at the number or email provided above or visit https://veritaglobal.net/tehum.

**If Submitting Your Vote through the "E-Ballot" Platform**:

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot platform.  To submit Your Ballot via the E-Ballot platform, visit https://veritaglobal.net/tehum, click on the "Submit E-Ballot" section of the website and follow the instructions to submit Your Ballot.

**IMPORTANT NOTE**:  You will need the following information to retrieve and submit Your customized electronic Ballot:

**Unique E-Ballot ID#: [_____]**

**Unique PIN#: [_____]**

The Solicitation Agent's E-Ballot is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of Your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# You receive, as applicable.  Creditors who cast a Ballot using the E-Ballot platform should NOT also submit a paper Ballot.

If Your Ballot is not received by the Solicitation Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Plan Proponents, as noted above, Your vote will not be counted.

**If Submitting Your Vote through the Mail, Overnight Courier or via Hand Delivery**:

Submit Your completed and signed Ballot by mail using the envelope included in the Solicitation Package, or by hand delivery or overnight courier to:

Tehum Care Services, Inc.
Ballot Processing Center
Verita Global
222 N. Pacific Coast Hwy., Ste. 300
El Segundo, CA  90245

**To fill out Your Ballot, You must complete the following**:

**Item 1.  Claimant's Name and Address**.

Please fill in the name and address information requested.  U.S. claimants should include street address, city, state, ZIP Code, telephone number, and the last four digits of their Social Security Number.  Any claimants from other countries who do not have Social Security Numbers should include relevant address information in the space provided.

United States citizen claimants MUST provide the last four digits of their Social Security Number in this box.  Claimants outside of the United States (or claimants in the United States who are not U.S. citizens) that do not have a Social Security Number MUST state so conspicuously in the area where such number would have been inserted.

**Item 2.  Vote on the Plan**.

Vote on the Plan by checking the box that corresponds to Your choice.  You may vote to ACCEPT / vote in favor of or to REJECT / vote against the Plan.  You must check one of the boxes below to have Your vote counted.

Each Holder of a Claim will have a single Claim for voting purposes, which Claim has been temporarily allowed in the amount of $1.00 in the aggregate per claimant for purposes of voting on the Plan in accordance with certain tabulation rules set forth in the Solicitation Procedures approved by the Bankruptcy Court.  The temporary allowance of Your Claim in the amount of $1.00 is solely for voting purposes and does not constitute an allowance of such Claim for purposes of distribution and is not binding on You, the Plan Proponents, or the Trusts for any purpose other than voting on the Plan.

If You believe that Your Claim should be allowed for voting purposes in an amount other than $1.00, You must file a motion with the Bankruptcy Court pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure no later than December 27, 2024, seeking temporary allowance of Your Claim in such other amount.  The Bankruptcy Court will thereafter determine the amount of Your Claim solely for voting purposes in accordance with the procedures described in the Solicitation Procedures and Solicitation Procedures Order.

**Item 3.  Certifications, Acknowledgment, Signature and Date**.

Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will not be counted.  As a reminder, United States claimants must provide the last four digits of their Social Security Number in Item 1 of the Ballot as well.

The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, You make the following certifications, on information and belief:

- "I have / The claimant or his / her personal representative or attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Solicitation Procedures Order, and the Solicitation Procedures."

- "I am / The claimant is the Holder of a Convenience Claim."

- "I have full power and authority to vote to ACCEPT / in favor of or to REJECT / against the Plan on behalf of, or in my capacity as, the claimant."

If You cast more than one Ballot voting the same Claim before the Voting Deadline, the latest dated Ballot will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT / in favor of or to REJECT / against the Plan**. A Holder of a Claim may not split his or her vote. Accordingly, the votes of any Holder of a Claim who purports partially to accept and partially to reject the Plan will not be counted.

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF ANY OF THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 967-0491 (U.S. / CANADA, TOLL-FREE) or +1 (310) 751-2691 (INTERNATIONAL)**

**WEBSITE: https://veritaglobal.net/tehum**

[*Remainder of page left intentionally blank.*]

**Claim Ballot for Class 3 for Voting on Joint Chapter 11 Plan of
the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor**

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.  Print clearly.** |

**ITEM 1 — Claimant's Name and Address:**

_____
Name

_____
Street Address

_____
City, State, and ZIP Code (U.S.)

_____
Telephone Number

_____
Last Four Digits of Social Security Number (U.S. claimants only)

**ITEM 2 — Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Convenience Claim, votes (fill in ONE box only):

☐ to ACCEPT / in Favor of the Plan.

☐ to REJECT / Against the Plan.

Amount of Your Claim for voting purposes only:  $1.00.

**ITEM 3 — Certifications, Acknowledgment, Signature and Date:**

By signing this Ballot, the signatory certifies, on information and belief, that:

(i)     I have / The claimant or his / her personal representative or attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Solicitation Procedures Order, and the Solicitation Procedures;

(ii)    I am / The claimant is the Holder of a Convenience Claim; and

(iii)   I have full power and authority to vote to ACCEPT / in favor of or to REJECT / against the Plan on behalf of, or in my capacity as, the claimant.

| **Please read the instructions that accompany this Ballot before completing.  Print clearly.** |
|---|
| **Signature and Date**<br><br>_____<br>Signature of Claimant or Authorized Agent<br><br>_____<br>Date |
| **YOU <u>MUST</u> COMPLETE ITEM 3 IN ORDER FOR YOUR VOTE ON THE PLAN TO BE COUNTED.** |

<u>**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.  MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**</u>

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT BY FEBRUARY 21, 2025, AT 5:00 P.M. (PREVAILING CENTRAL TIME), YOUR VOTE MAY NOT BE COUNTED.**

**Exhibit 3-2**

**Ballot for Holders of Claims in Class 4 and Class 5**
**(Channeled General Unsecured Claims and Opt-Out General Unsecured Claims)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**BALLOT FOR HOLDERS OF CLAIMS IN CLASSES 4 AND 5
(CHANNELED GENERAL UNSECURED CLAIMS AND OPT-OUT
GENERAL UNSECURED CLAIMS) FOR VOTING ON JOINT CHAPTER 11
PLAN OF THE TORT CLAIMANTS' COMMITTEE, OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

The Official Committee of Tort Claimants (the "**Tort Claimants' Committee**") and the Official Committee of Unsecured Creditors (the "**Unsecured Creditors' Committee**") appointed in the above Chapter 11 Case, and Tehum Care Services, Inc., the above-captioned debtor (the "**Debtor**" and, together with Tort Claimants' Committee and the Unsecured Creditors' Committee, the "**Plan Proponents**"), are soliciting votes from Holders of Claims on the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Docket No. 1739) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"),[2] which is described in greater detail in that certain disclosure statement with respect to the Plan (Docket No. 1740) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**"). The Plan and Disclosure Statement have been included in the package of materials containing this ballot (this "**Ballot**") and can also be accessed free-of-charge at https://veritaglobal.net/tehum.

On November 13, 2024, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") entered an order (the "**Solicitation Procedures Order**") approving the Disclosure Statement and procedures for soliciting votes to accept or reject the Plan (the "**Solicitation Procedures**"). If the Plan is confirmed by the Bankruptcy Court it will be binding on You whether or not You vote and, if You vote, whether You vote in support of or to reject the Plan.

The Plan will be accepted by the Holders of Claims for purposes of section 1129 of the Bankruptcy Code if it is accepted by the Holders of at least two-thirds in amount and at least one-

---

[1]  The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is:  205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Solicitation Procedures, as applicable.

half in number of Claims who vote.  If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Equity Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

You should review the Disclosure Statement and the Plan before You vote.  You may wish to seek legal advice concerning the Plan and Your classification and treatment under the Plan.

## THIS BALLOT'S LIMITATIONS

This Ballot does **not** constitute and will **not** be deemed a Proof of Claim or an assertion of a Claim.  Any Holder of a Claim must have filed a Proof of Claim on account of his or her personal Claim by the Claims Bar Date even if such Holder may purport to be included in, or represented by, a purported class action, class suit, class Proof of Claim, or similar representative action filed against the Debtor with respect to such Holder's Claim, regardless of whether or not said action was ever certified or authorized by a court of competent jurisdiction.  If the Holder of a Claim has **not** filed a personalized Proof of Claim, the Holder of that Claim shall **not** be entitled to any distribution from the Trusts.  Any admission of Claims for purposes of voting on the Plan is **not** an admission of liability on the part of the Debtor, the Committees, or any other party for payment purposes.  This Ballot is **not** a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  If (i) the Plan Proponents revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered, or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to You.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Plan Proponents will not resolicit votes for acceptance or rejection of the Plan.

## WHO SHOULD USE THIS BALLOT

This Ballot is to be used by Holders of General Unsecured Claims in Class 4 or Class 5 only.  Therefore, please use this Ballot to cast Your vote to accept or reject the Plan if You are, as of November 13, 2024 (the "**Voting Record Date**"), a Holder of a Claim (a "**Holder**") against the Debtor that is a General Unsecured Claim in an amount that is greater than Five Thousand Dollars ($5,000), as those terms are defined in Article I of the Plan.  Any admission of Claims for purposes of voting on the Plan is **not** an admission of liability on the part of the Debtor, the Committees, or any other party for payment purposes.

This Ballot is **not** intended to be used by Holders of an Indirect General Unsecured Claim, which is different from a General Unsecured Claim.

## DEADLINE, FORMS, AND LIMITATIONS

**Unless such time is extended by the Debtor, the Committees, or the Bankruptcy Court**, this Ballot must be properly completed, signed, and returned to the address below so as to be received no later than February 21, 2025, at 5:00 p.m. (Prevailing Central Time) (the "**Voting Deadline**") in order for the vote on this Ballot to count.

**Facsimiles or other electronic submissions other than by online transmission through the E-Ballot platform on the Solicitation Agent's website at https://veritaglobal.net/tehum, including e-mail, will <u>NOT</u> be accepted.**

<u>**THIS BALLOT AND THE OPT-OUT RELEASE FORM ARE SEPARATE DOCUMENTS**</u>

In addition to this Ballot, You will have received the Opt-Out Release Form. The Opt-Out Release Form and this Ballot are separate and distinct documents and are designed for different purposes. This Ballot is intended to be used by recipients to vote to reject or accept the Plan and, to the extent applicable, make certain elections regarding Trust participation, expedited distributions, or insurance rights. The Opt-Out Release Form is intended to be used by recipients who elect to opt out of the Consensual Claimant Release in Article IX.D of the Plan. The Opt-Out Release Form has one purpose and can be used for no other.

Therefore:

- You **MUST** submit this Ballot **if** You want Your vote to accept or reject the Plan to be counted and if You wish to make certain applicable elections.

- You **MUST** submit the Opt-Out Release Form **if** You decline to grant the Consensual Claimant Release on the Effective Date.

However, You may include both a completed Ballot and the completed Opt-Out Release Form in same stamped preaddressed envelope provided with the Solicitation Package You received. The Plan Proponents advise You to carefully consider the Ballot and the Opt-Out Release Form on their own merits.

<u>**DOCUMENTS INCLUDED WITH THIS BALLOT**</u>

You should have received the following documents with this Ballot (collectively, the "**<u>Solicitation Package</u>**"). Please note that some of the following documents may be included on a USB flash drive included as part of Your Solicitation Package.

- a cover letter describing the contents of the Solicitation Package and the enclosed USB flash drive or printed materials for incarcerated individuals, and instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;

- the Confirmation Hearing Notice (as defined in the Solicitation Procedures);

- a USB flash drive containing a copy of the Solicitation Procedures and the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits were filed with the Bankruptcy Court before the distribution of the Solicitation Package) or printed versions of the same for incarcerated individuals;

- the Solicitation Procedures Order (without exhibits);

- a letter from the Unsecured Creditors' Committee urging Holders of General Unsecured Claims to vote to accept the Plan; and

- a pre-addressed, return envelope for Your completed Ballot.[3]

If You have questions about this Ballot, or if You did not receive a copy of the Plan or any related materials, please contact Verita Global (the "**Solicitation Agent**"), at http://www.veritaglobal/tehum/inquiry, or by phone at (866) 967-0491 (U.S./Canada, toll free) or (310) 751-2691 (International). Information may also be obtained at https://veritaglobal.net/tehum.

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

The following instructions explain each of the items contained on Your Ballot.  If You have any questions, please contact the Solicitation Agent at the number or email provided above or visit https://veritaglobal.net/tehum.

**If Submitting Your Vote through the "E-Ballot" Platform**:

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot platform.  To submit Your Ballot via the E-Ballot platform, visit https://veritaglobal.net/tehum, click on the "Submit E-Ballot" section of the website and follow the instructions to submit Your Ballot.

**IMPORTANT NOTE**:  You will need the following information to retrieve and submit Your customized electronic Ballot:

**Unique E-Ballot ID#: [_____]**

**Unique PIN#: [_____]**

The Solicitation Agent's E-Ballot is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of Your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# You receive, as applicable.  Creditors who cast a Ballot using the E-Ballot platform should NOT also submit a paper Ballot.

If Your Ballot is not received by the Solicitation Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Plan Proponents, as noted above, Your vote will not be counted.

**If Submitting Your Vote through the Mail, Overnight Courier or via Hand Delivery**:

---

[3]   As noted above, You may include both this Ballot and the Opt-Out Release Form in one of the pre-addressed return envelopes with which Holders of Claims in Voting Classes have been provided.

Submit Your completed and signed Ballot by mail using the envelope included in the Solicitation Package, or by hand delivery or overnight courier to:

Tehum Care Services, Inc.
Ballot Processing Center
Verita Global
222 N. Pacific Coast Hwy., Ste. 300
El Segundo, CA  90245

**To fill out Your Ballot, You must complete the following**:

**Item 1.  Claimant's Name and Address**.

Please fill in the name and address information requested.  U.S. claimants should include street address, city, state, ZIP Code, telephone number, and the last four digits of their Social Security Number.  Any claimants from other countries who do not have Social Security Numbers should include relevant address information in the space provided.

United States citizen claimants MUST provide the last four digits of their Social Security Number in this box.  Claimants outside of the United States (or claimants in the United States who are not U.S. citizens) that do not have a Social Security Number MUST state so conspicuously in the area where such number would have been inserted.

**Item 2.  Vote on the Plan**.

Vote on the Plan by checking the box that corresponds to Your choice.  You may vote to ACCEPT / vote in favor of or to REJECT / vote against the Plan.  You must check one of the boxes below to have Your vote counted.

Each Holder of a Claim will have a single Claim for voting purposes, which Claim has been temporarily allowed in the amount of $1.00 in the aggregate per claimant for purposes of voting on the Plan in accordance with certain tabulation rules set forth in the Solicitation Procedures approved by the Bankruptcy Court.  The temporary allowance of Your Claim in the amount of $1.00 is solely for voting purposes and does not constitute an allowance of such Claim for purposes of distribution and is not binding on You, the Plan Proponents, or the Trusts for any purpose other than voting on the Plan.

If You believe that Your Claim should be allowed for voting purposes in an amount other than $1.00, You must file a motion with the Bankruptcy Court pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure no later than December 27, 2024, seeking temporary allowance of Your Claim in such other amount.  The Bankruptcy Court will thereafter determine the amount of Your Claim solely for voting purposes in accordance with the procedures described in the Solicitation Procedures and Solicitation Procedures Order.

**Item 3.  Expedited GUC Distribution**.

Check the box only if You elect for an Expedited GUC Distribution.  "Expedited GUC Distribution" means a one-time Cash payment in the amount of Five Thousand Dollars ($5,000),

5

to be made to a Holder of a GUC Claim that irrevocably elects, as evidenced on a Ballot timely and validly submitted by such Holder, to have such GUC Claim reduced to Five Thousand Dollars ($5,000) and paid (upon Allowance) in full and final satisfaction of such GUC Claim.

Any Holder of a GUC Claim who elects for the Expedited GUC Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release. An election on the Ballot for an Expedited GUC Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot or the Opt-Out Release Form. An Expedited GUC Distribution shall be paid by the GUC Trust on the later of (a) the Effective Date or (b) within ten (10) business days after such GUC Claim becomes an Allowed Claim by Final Order.

**Item 4.  Certifications, Acknowledgment, Signature and Date**.

Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will not be counted. As a reminder, United States claimants must provide the last four digits of their Social Security Number in Item 1 of the Ballot as well.

The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot. Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, You make the following certifications, on information and belief:

- "I have / The claimant or his / her personal representative or attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Solicitation Procedures Order, a letter from the UCC urging Claimants to accept the Plan, and the Solicitation Procedures."

- "I am / The claimant is the Holder of a General Unsecured Claim in Class 4 or Class 5."

- "I have full power and authority to vote to ACCEPT / in favor of or to REJECT / against the Plan on behalf of, or in my capacity as, the claimant."

If You cast more than one Ballot voting the same Claim before the Voting Deadline, the latest dated Ballot will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT / in favor of or to REJECT / against the Plan**. A Holder of a Claim may not split his or her vote. Accordingly, the votes of any Holder of a Claim who purports partially to accept and partially to reject the Plan will not be counted.

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT, OR IF YOU DID NOT RECEIVE A**

COPY OF ANY OF THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS, PLEASE CONTACT THE SOLICITATION AGENT AT:

TELEPHONE: (866) 967-0491 (U.S. / CANADA, TOLL-FREE) or +1 (310) 751-2691 (INTERNATIONAL)

WEBSITE: https://veritaglobal.net/tehum

[*Remainder of page left intentionally blank.*]

7

**Claim Ballot for Class 4 or Class 5 for
Voting on Joint Chapter 11 Plan of the Tort
<u>Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor</u>**

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.  Print clearly.** |

**ITEM 1 — Claimant's Name and Address:**

_____
Name

_____
Street Address

_____
City, State, and ZIP Code (U.S.)

_____
Telephone Number

_____
Last Four Digits of Social Security Number (U.S. claimants only)

**ITEM 2 — Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a General Unsecured Claim, votes (fill in ONE box only):

☐ to ACCEPT / in Favor of the Plan.

☐ to REJECT / Against the Plan.

Amount of Your Claim for voting purposes only:  $1.00.

**ITEM 3 — Expedited GUC Distribution.**

If You have elected to seek relief from the GUC Trust, the Holder of a GUC Claim ELECTS for:

☐ an Expedited GUC Distribution

**ITEM 4 — Certifications, Acknowledgment, Signature and Date:**

By signing this Ballot, the signatory certifies, on information and belief, that:

(i)     I have / The claimant or his / her personal representative or attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Solicitation Procedures Order, the Solicitation Procedures,

| Please read the instructions that accompany this Ballot before completing.  Print clearly. |
|---|

and a letter from the UCC urging Claimants to vote to ACCEPT / vote in favor of the Plan;

(ii)    I am / The claimant is the Holder of a General Unsecured Claim in Class 4 or Class 5;

(iii)   I have full power and authority to vote to ACCEPT / in favor of or to REJECT / against the Plan on behalf of, or in my capacity as, the claimant;

**Signature and Date**

_____

Signature of Claimant or Authorized Agent

_____

Date

**YOU MUST COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE ON THE PLAN TO BE COUNTED.**

**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.  MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT BY FEBRUARY 21, 2025, AT 5:00 P.M. (PREVAILING CENTRAL TIME), YOUR VOTE MAY NOT BE COUNTED.**

**Exhibit 3-3**

**Ballot for Holders of Claims in Class 6, Class 7, and Class 8
(Channeled PI/WD Claims, Opt-Out PI/WD Claims, and Opt-Out Insured PI/WD Claims)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**BALLOT FOR HOLDERS OF CLAIMS IN
CLASSES 6, 7, AND 8 (CHANNELED PI/WD CLAIMS,
OPT-OUT PI/WD CLAIMS, AND OPT-OUT INSURED
PI/WD CLAIMS) FOR VOTING ON JOINT CHAPTER 11 PLAN
OF REORGANIZATION OF THE TORT CLAIMANTS' COMMITTEE,
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

The Official Committee of Tort Claimants (the "**Tort Claimants' Committee**") and the Official Committee of Unsecured Creditors (the "**Unsecured Creditors' Committee**") appointed in the above Chapter 11 Case, and Tehum Care Services, Inc., the above-captioned debtor (the "**Debtor**" and, together with Tort Claimants' Committee and the Unsecured Creditors' Committee, the "**Plan Proponents**"), are soliciting votes from Holders of Claims on the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Docket No. 1739) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"),[2] which is described in greater detail in that certain disclosure statement with respect to the Plan (Docket No. 1740) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**").  The Plan and Disclosure Statement have been included in the package of materials containing this ballot (this "**Ballot**") and can also be accessed free-of-charge at https://veritaglobal.net/tehum.

On November 13, 2024, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") entered an order (the "**Solicitation Procedures Order**") approving the Disclosure Statement and procedures for soliciting votes to accept or reject the Plan (the "**Solicitation Procedures**").  If the Plan is confirmed by the Bankruptcy Court it will be binding on You whether or not You vote and, if You vote, whether You vote in support of or to reject the Plan.

---

[1]   The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is:  205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Solicitation Procedures, as applicable.

The Plan will be accepted by the Holders of Claims for purposes of section 1129 of the Bankruptcy Code if it is accepted by the Holders of at least two-thirds in amount and at least one-half in number of Claims who vote. If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Equity Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

You should review the Disclosure Statement and the Plan before You vote. You may wish to seek legal advice concerning the Plan and Your classification and treatment under the Plan.

## THIS BALLOT'S LIMITATIONS

This Ballot does **not** constitute and will **not** be deemed a Proof of Claim or an assertion of a Claim. Any Holder of a Claim must have filed a Proof of Claim on account of his or her personal Claim by the Claims Bar Date even if such Holder may purport to be included in, or represented by, a purported class action, class suit, class Proof of Claim, or similar representative action filed against the Debtor with respect to such Holder's Claim, regardless of whether or not said action was ever certified or authorized by a court of competent jurisdiction. If the Holder of a Claim has **not** filed a personalized Proof of Claim, the Holder of that Claim shall **not** be entitled to any distribution from the Trusts. Any admission of Claims for purposes of voting on the Plan is **not** an admission of liability on the part of the Debtor, the Committees, or any other party for payment purposes. This Ballot is **not** a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. If (i) the Plan Proponents revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered, or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to You. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Plan Proponents will not resolicit votes for acceptance or rejection of the Plan.

## WHO SHOULD USE THIS BALLOT

This Ballot is to be used by Holders of Personal Injury and Wrongful Death Claims or PI/WD Claims in Class 6, Class 7, or Class 8. Therefore, please use this Ballot to cast Your vote to accept or reject the Plan if You are, as of November 13, 2024 (the "**Voting Record Date**"), a Holder of a Claim (a "**Holder**") against the Debtor that is a Claim against the Debtor that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim within the meaning of section 157(b)(2)(B) of Title 28. Any admission of Claims for purposes of voting on the Plan is **not** an admission of liability on the part of the Debtor, the Committees, or any other party for payment purposes.

This Ballot is **not** intended to be used by a Holder of an Indirect PI/WD Claim, which is different from a PI/WD Claim, as defined in Article I of the Plan.

## DEADLINE, FORMS, AND LIMITATIONS

**Unless such time is extended by the Debtor, the Committees, or the Bankruptcy Court**, this Ballot must be properly completed, signed, and returned to the address below so as to

be received no later than February 21, 2025, at 5:00 p.m. (Prevailing Central Time) (the "**Voting Deadline**") in order for the vote on this Ballot to count.

**Facsimiles or other electronic submissions other than by online transmission through the E-Ballot platform on the Solicitation Agent's website at https://veritaglobal.net/tehum, including e-mail, will NOT be accepted.**

## THIS BALLOT AND THE OPT-OUT RELEASE FORM ARE SEPARATE DOCUMENTS

In addition to this Ballot, You will have received the Opt-Out Release Form. The Opt-Out Release Form and this Ballot are separate and distinct documents and are designed for different purposes. This Ballot is intended to be used by recipients to vote to reject or accept the Plan and, to the extent applicable, make certain elections regarding Trust participation, expedited distributions, or insurance rights. The Opt-Out Release Form is intended to be used by recipients who elect to opt out of the Consensual Claimant Release in Article IX.D of the Plan. The Opt-Out Release Form has one purpose and can be used for no other.

Therefore:

- You **MUST** submit this Ballot **if** You want Your vote to accept or reject the Plan to be counted and if You wish to make certain applicable elections.

- You **MUST** submit the Opt-Out Release Form **if** You decline to grant the Consensual Claimant Release on the Effective Date.

However, You may include both a completed Ballot and the completed Opt-Out Release Form in same stamped preaddressed envelope provided with the Solicitation Package You received. The Plan Proponents advise You to carefully consider the Ballot and the Opt-Out Release Form on their own merits.

## DOCUMENTS INCLUDED WITH THIS BALLOT

You should have received the following documents with this Ballot (collectively, the "**Solicitation Package**"). Please note that some of the following documents may be included on a USB flash drive included as part of Your Solicitation Package.

- a cover letter describing the contents of the Solicitation Package and the enclosed USB flash drive or printed materials for incarcerated individuals, and instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;

- the Confirmation Hearing Notice (as defined in the Solicitation Procedures);

- a USB flash drive containing a copy of the Solicitation Procedures and the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits were filed with the Bankruptcy Court before the

distribution of the Solicitation Package) or printed versions of the same for incarcerated individuals;

- the Solicitation Procedures Order (without exhibits);

- a letter from the Tort Claimants' Committee urging Holders of PI/WD Claims to vote to accept the Plan; and

- a pre-addressed, return envelope for Your completed Ballot.[3]

If You have questions about this Ballot, or if You did not receive a copy of the Plan or any related materials, please contact Verita Global (the "**Solicitation Agent**"), at http://www.veritaglobal/tehum/inquiry, or by phone at (866) 967-0491 (U.S./Canada, toll free) or (310) 751-2691 (International). Information may also be obtained at https://veritaglobal.net/tehum.

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

The following instructions explain each of the items contained on Your Ballot.  If You have any questions, please contact the Solicitation Agent at the number or email provided above or visit https://veritaglobal.net/tehum.

**If Submitting Your Vote through the "E-Ballot" Platform**:

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot platform.  To submit Your Ballot via the E-Ballot platform, visit https://veritaglobal.net/tehum, click on the "Submit E-Ballot" section of the website and follow the instructions to submit Your Ballot.

**IMPORTANT NOTE**:  You will need the following information to retrieve and submit Your customized electronic Ballot:

**Unique E-Ballot ID#: [_____]**

**Unique PIN#: [_____]**

The Solicitation Agent's E-Ballot is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of Your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# You receive, as applicable.  Creditors who cast a Ballot using the E-Ballot platform should NOT also submit a paper Ballot.

---

[3]   As noted above, You may include both this Ballot and the Opt-Out Release Form in one of the pre-addressed return envelopes with which Holders of Claims in Voting Classes have been provided.

If Your Ballot is not received by the Solicitation Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Plan Proponents, as noted above, Your vote will not be counted.

**If Submitting Your Vote through the Mail, Overnight Courier or via Hand Delivery**:

Submit Your completed and signed Ballot by mail using the envelope included in the Solicitation Package, or by hand delivery or overnight courier to:

Tehum Care Services, Inc.
Ballot Processing Center
Verita Global
222 N. Pacific Coast Hwy., Ste. 300
El Segundo, CA  90245

**To fill out Your Ballot, You must complete the following**:

**Item 1.  Claimant's Name and Address**.

Please fill in the name and address information requested.  U.S. claimants should include street address, city, state, ZIP Code, telephone number, and the last four digits of their Social Security Number.  Any claimants from other countries who do not have Social Security Numbers should include relevant address information in the space provided.

United States citizen claimants MUST provide the last four digits of their Social Security Number in this box.  Claimants outside of the United States (or claimants in the United States who are not U.S. citizens) that do not have a Social Security Number MUST state so conspicuously in the area where such number would have been inserted.

**Item 2.  Vote on the Plan**.

Vote on the Plan by checking the box that corresponds to Your choice.  You may vote to ACCEPT / vote in favor of or to REJECT / vote against the Plan.  You must check one of the boxes below to have Your vote counted.

Each Holder of a Claim will have a single Claim for voting purposes, which Claim has been temporarily allowed in the amount of $1.00 in the aggregate per claimant for purposes of voting on the Plan in accordance with certain tabulation rules set forth in the Solicitation Procedures approved by the Bankruptcy Court.  The temporary allowance of Your Claim in the amount of $1.00 is solely for voting purposes and does not constitute an allowance of such Claim for purposes of distribution and is not binding on You, the Plan Proponents, or the Trusts for any purpose other than voting on the Plan.

If You believe that Your Claim should be allowed for voting purposes in an amount other than $1.00, You must file a motion with the Bankruptcy Court pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure no later than December 27, 2024, seeking temporary allowance of Your Claim in such other amount.  The Bankruptcy Court will thereafter determine

the amount of Your Claim solely for voting purposes in accordance with the procedures described in the Solicitation Procedures and Solicitation Procedures Order.

**Item 3.  Insurance Election**.

Check the box if You **ELECT** to have Your Claim treated as an Opt-Out Insured PI/WD Claim and included in Class 8.

The Holders of Opt-Out Insured PI/WD Claims shall be entitled to seek recovery on account of such Claims from any PI/WD Insurance Company.  Such Holders shall be entitled to name as a defendant in any proceeding commenced or continued in the Civil Justice System the Debtor, the PI/WD Trust, and any other person or entity to the extent permitted under applicable law, *provided*, *however*, that such Holder may not name a Released Party as a defendant other than the Debtor.  Claims that could have been asserted against the Debtor may be asserted against the PI/WD Trust, which will have the liabilities and defenses of the Debtor, subject to the limitations below on the Claimants' right to recover on any such Opt-Out Insured PI/WD Claim established through litigation.  If such proceeding is commenced or continued, the PI/WD Trustee shall provide notice to and seek defense from each PI/WD Insurance Company that the PI/WD Trustee determines may have an obligation to provide coverage in accordance with the terms of each applicable PI/WD Insurance Policy.  The PI/WD Trust shall have no obligation to appear and defend any lawsuit commenced against the PI/WD Trust if the applicable PI/WD Insurance Company refuses to cover any and/or all defense costs.  The PI/WD Trust shall have no obligation to satisfy any Insurance Policy's deductible or self-insured retention per claim or in the aggregate.  Holders of Opt-Out Insured PI/WD Claims shall not be entitled to receive any recovery from the PI/WD Trust or the Debtor on account of such Claim other than a recovery that is funded exclusively by an insurance recovery under a PI/WD Insurance Policy.

**Item 4.  Expedited PI/WD Distribution**.

Check the box only if You elect for an Expedited PI/WD Distribution.  "Expedited PI/WD Distribution" means a one-time Cash payment in the amount of Five Thousand Dollars ($5,000), to be made to a Holder of a PI/WD Claim that irrevocably elects, as evidenced on a Ballot timely and validly submitted by such Holder, to have such PI/WD Claim reduced to Five Thousand Dollars ($5,000) and paid (upon Allowance) in full and final satisfaction of such PI/WD Claim, and subject to the provisions of the PI/WD Trust Distribution Procedures, including the provisions regarding lien resolution set forth in article IV.M of the PI/WD Trust Distribution Procedures.

Any Holder of a PI/WD Claim who elects for the Expedited PI/WD Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release.  An election on the Ballot for an Expedited GUC Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot or the Opt-Out Release Form.

**Item 5.  Certifications, Acknowledgment, Signature and Date**.

Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will not be counted.  As a

reminder, United States claimants must provide the last four digits of their Social Security Number in Item 1 of the Ballot as well.

The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, You make the following certifications, on information and belief:

- "I have / The claimant or his / her personal representative or attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Solicitation Procedures Order, a letter from the TCC urging Claimants to accept the Plan, and the Solicitation Procedures."

- "I am / The claimant is the Holder of a PI/WD Claim in Class 6, Class 7, or Class 8."

- "I have full power and authority to vote to ACCEPT / in favor of or to REJECT / against the Plan on behalf of, or in my capacity as, the claimant."

If You cast more than one Ballot voting the same Claim before the Voting Deadline, the latest dated Ballot will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT / in favor of or to REJECT / against the Plan**.  A Holder of a Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Claim who purports partially to accept and partially to reject the Plan will not be counted.

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF ANY OF THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 967-0491 (U.S. / CANADA, TOLL-FREE) or +1 (310) 751-2691 (INTERNATIONAL)**

**WEBSITE: https://veritaglobal.net/tehum**

*[Remainder of page left intentionally blank.]*

**Claim Ballot for Class 6, Class 7, or Class 8 for**
**Voting on Joint Chapter 11 Plan of the Tort**
**Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor**

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.  Print clearly.** |

**ITEM 1 — Claimant's Name and Address:**

_____
Name

_____
Street Address

_____
City, State, and ZIP Code (U.S.)

_____
Telephone Number

_____
Last Four Digits of Social Security Number (U.S. claimants only)

**ITEM 2 — Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a PI/WD Claim, votes (fill in ONE box only):

☐ to ACCEPT / in Favor of the Plan.

☐ to REJECT / Against the Plan.

Amount of Your Claim for voting purposes only:  $1.00.

**ITEM 3 — Insurance Election**

If the Plan is confirmed, the Holder of a PI/WD Claim ELECTS to:

☐ Be treated as the Holder of an Opt-Out Insured PI/WD Claim assigned to Class 8.

**ITEM 4 — Expedited PI/WD Distribution.**

If You have elected to seek relief from the PI/WD Trust, the Holder of a PI/WD Claim ELECTS for:

☐ an Expedited PI/WD Distribution

**Please read the instructions that accompany this Ballot before completing.  Print clearly.**

**ITEM 5 — Certifications, Acknowledgment, Signature and Date:**

By signing this Ballot, the signatory certifies, on information and belief, that:

(i)  I have / The claimant or his / her personal representative or attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Solicitation Procedures Order, the Solicitation Procedures, and a letter from the TCC urging Claimants to vote to ACCEPT / vote in favor of the Plan;

(ii)  I am / The claimant is the Holder of a PI/WD Claim in Class 6, Class 7, or Class 8; and

(iii)  I have full power and authority to vote to ACCEPT / in favor of or to REJECT / against the Plan on behalf of, or in my capacity as, the claimant.

**Signature and Date**

_____
Signature of Claimant or Authorized Agent

_____
Date

**YOU <u>MUST</u> COMPLETE ITEM 5 IN ORDER FOR YOUR VOTE ON THE PLAN TO BE COUNTED.**

<u>DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.  MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.</u>

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT BY FEBRUARY 21, 2025, AT 5:00 P.M. (PREVAILING CENTRAL TIME), YOUR VOTE MAY NOT BE COUNTED.**

**<u>Exhibit 3-4</u>**

**Ballot for Holders of Claims in Classes 9 and 10**
**(Channeled Indirect Claims and Opt-Out Indirect Claims)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**BALLOT FOR HOLDERS OF CLAIMS IN CLASSES 9
AND 10 (CHANNELED INDIRECT CLAIMS AND OPT-OUT
INDIRECT CLAIMS) FOR VOTING ON JOINT CHAPTER 11 PLAN
OF REORGANIZATION OF THE TORT CLAIMANTS' COMMITTEE,
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

The Official Committee of Tort Claimants (the "**Tort Claimants' Committee**") and the Official Committee of Unsecured Creditors (the "**Unsecured Creditors' Committee**") appointed in the above Chapter 11 Case, and Tehum Care Services, Inc., the above-captioned debtor (the "**Debtor**" and, together with Tort Claimants' Committee and the Unsecured Creditors' Committee, the "**Plan Proponents**"), are soliciting votes from Holders of Claims on the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Docket No. 1739) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"),[2] which is described in greater detail in that certain disclosure statement with respect to the Plan (Docket No. 1740) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**"). The Plan and Disclosure Statement have been included in the package of materials containing this ballot (this "**Ballot**") and can also be accessed free-of-charge at https://veritaglobal.net/tehum.

On November 13, 2024, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") entered an order (the "**Solicitation Procedures Order**") approving the Disclosure Statement and procedures for soliciting votes to accept or reject the Plan (the "**Solicitation Procedures**"). If the Plan is confirmed by the Bankruptcy Court it will be binding on You whether or not You vote and, if You vote, whether You vote in support of or to reject the Plan.

The Plan will be accepted by the Holders of Claims for purposes of section 1129 of the Bankruptcy Code if it is accepted by the Holders of at least two-thirds in amount and at least one-

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Solicitation Procedures, as applicable.

half in number of Claims who vote.  If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Equity Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

You should review the Disclosure Statement and the Plan before You vote.  You may wish to seek legal advice concerning the Plan and Your classification and treatment under the Plan.

## <u>THIS BALLOT'S LIMITATIONS</u>

This Ballot does **not** constitute and will **not** be deemed a Proof of Claim or an assertion of a Claim.  Any Holder of a Claim must have filed a Proof of Claim on account of his or her personal Claim by the Claims Bar Date even if such Holder may purport to be included in, or represented by, a purported class action, class suit, class Proof of Claim, or similar representative action filed against the Debtor with respect to such Holder's Claim, regardless of whether or not said action was ever certified or authorized by a court of competent jurisdiction.  If the Holder of a Claim has **not** filed a personalized Proof of Claim, the Holder of that Claim shall **not** be entitled to any distribution from the Trusts.  Any admission of Claims for purposes of voting on the Plan is **not** an admission of liability on the part of the Debtor, the Committees, or any other party for payment purposes.  This Ballot is **not** a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  If (i) the Plan Proponents revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered, or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to You.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Plan Proponents will not resolicit votes for acceptance or rejection of the Plan.

## <u>WHO SHOULD USE THIS BALLOT</u>

This Ballot is to be used by Holders of General Unsecured Claims in Class 9 or Class 10 only.  Therefore, please use this Ballot to cast Your vote to accept or reject the Plan if You are, as of November 13, 2024 (the "**<u>Voting Record Date</u>**"), a Holder of a Claim (a "**<u>Holder</u>**") against the Debtor that is either an Indirect GUC Claim or an Indirect PI/WD Claim, as those terms are defined in Article I of the Plan.  This Ballot is **not** intended to be used by a Holder of a GUC Claim, which is different from an Indirect GUC Claim, or a PI/WD Claim, which is different from an Indirect GUC Claim, per Article I of the Plan.  Any admission of Claims for purposes of voting on the Plan is **not** an admission of liability on the part of the Debtor, the Committees, or any other party for payment purposes.

## <u>DEADLINE, FORMS, AND LIMITATIONS</u>

**Unless such time is extended by the Debtor, the Committees, or the Bankruptcy Court**, this Ballot must be properly completed, signed, and returned to the address below so as to be received no later than February 21, 2025, at 5:00 p.m. (Prevailing Central Time) (the "**<u>Voting Deadline</u>**") in order for the vote on this Ballot to count.

**Facsimiles or other electronic submissions other than by online transmission through the E-Ballot platform on the Solicitation Agent's website at https://veritaglobal.net/tehum, including e-mail, will NOT be accepted.**

## THIS BALLOT AND THE OPT-OUT RELEASE FORM ARE SEPARATE DOCUMENTS

In addition to this Ballot, You will have received the Opt-Out Release Form. The Opt-Out Release Form and this Ballot are separate and distinct documents and are designed for different purposes. This Ballot is intended to be used by recipients to vote to reject or accept the Plan and, to the extent applicable, make certain elections regarding Trust participation, expedited distributions, or insurance rights. The Opt-Out Release Form is intended to be used by recipients who elect to opt out of the Consensual Claimant Release in Article IX.D of the Plan. The Opt-Out Release Form has one purpose and can be used for no other.

Therefore:

- You **MUST** submit this Ballot **if** You want Your vote to accept or reject the Plan to be counted and if You wish to make certain applicable elections.

- You **MUST** submit the Opt-Out Release Form **if** You decline to grant the Consensual Claimant Release on the Effective Date.

However, You may include both a completed Ballot and the completed Opt-Out Release Form in same stamped preaddressed envelope provided with the Solicitation Package You received. The Plan Proponents advise You to carefully consider the Ballot and the Opt-Out Release Form on their own merits.

## DOCUMENTS INCLUDED WITH THIS BALLOT

You should have received the following documents with this Ballot (collectively, the "**Solicitation Package**"). Please note that some of the following documents may be included on a USB flash drive included as part of Your Solicitation Package.

- a cover letter describing the contents of the Solicitation Package and the enclosed USB flash drive or printed materials for incarcerated individuals, and instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;

- the Confirmation Hearing Notice (as defined in the Solicitation Procedures);

- a USB flash drive containing a copy of the Solicitation Procedures and the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits were filed with the Bankruptcy Court before the distribution of the Solicitation Package) or printed versions of the same for incarcerated individuals;

- the Solicitation Procedures Order (without exhibits); and

3

- a pre-addressed, return envelope for Your completed Ballot.[3]

If You have questions about this Ballot, or if You did not receive a copy of the Plan or any related materials, please contact Verita Global (the "**Solicitation Agent**"), at http://www.veritaglobal/tehum/inquiry, or by phone at (866) 967-0491 (U.S./Canada, toll free) or (310) 751-2691 (International). Information may also be obtained at https://veritaglobal.net/tehum.

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

The following instructions explain each of the items contained on Your Ballot.  If You have any questions, please contact the Solicitation Agent at the number or email provided above or visit https://veritaglobal.net/tehum.

**If Submitting Your Vote through the "E-Ballot" Platform**:

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot platform.  To submit Your Ballot via the E-Ballot platform, visit https://veritaglobal.net/tehum, click on the "Submit E-Ballot" section of the website and follow the instructions to submit Your Ballot.

**IMPORTANT NOTE**:  You will need the following information to retrieve and submit Your customized electronic Ballot:

**Unique E-Ballot ID#: [_____]**

**Unique PIN#: [_____]**

The Solicitation Agent's E-Ballot is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of Your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# You receive, as applicable.  Creditors who cast a Ballot using the E-Ballot platform should NOT also submit a paper Ballot.

If Your Ballot is not received by the Solicitation Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Plan Proponents, as noted above, Your vote will not be counted.

**If Submitting Your Vote through the Mail, Overnight Courier or via Hand Delivery**:

Submit Your completed and signed Ballot by mail using the envelope included in the Solicitation Package, or by hand delivery or overnight courier to:

---

[3]   As noted above, You may include both this Ballot and the Opt-Out Release Form in one of the pre-addressed return envelopes with which Holders of Claims in Voting Classes have been provided.

4

Tehum Care Services, Inc.
Ballot Processing Center
Verita Global
222 N. Pacific Coast Hwy., Ste. 300
El Segundo, CA  90245

**To fill out Your Ballot, You must complete the following**:

**Item 1.  Claimant's Name and Address**.

Please fill in the name and address information requested.  U.S. claimants should include street address, city, state, ZIP Code, telephone number, and the last four digits of their Social Security Number.  Any claimants from other countries who do not have Social Security Numbers should include relevant address information in the space provided.

United States citizen claimants MUST provide the last four digits of their Social Security Number in this box.  Claimants outside of the United States (or claimants in the United States who are not U.S. citizens) that do not have a Social Security Number MUST state so conspicuously in the area where such number would have been inserted.

**Item 2.  Vote on the Plan**.

Vote on the Plan by checking the box that corresponds to Your choice.  You may vote to ACCEPT / vote in favor of or to REJECT / vote against the Plan.  You must check one of the boxes below to have Your vote counted.

Each Holder of a Claim will have a single Claim for voting purposes, which Claim has been temporarily allowed in the amount of $1.00 in the aggregate per claimant for purposes of voting on the Plan in accordance with certain tabulation rules set forth in the Solicitation Procedures approved by the Bankruptcy Court.  The temporary allowance of Your Claim in the amount of $1.00 is solely for voting purposes and does not constitute an allowance of such Claim for purposes of distribution and is not binding on You, the Plan Proponents, or the Trusts for any purpose other than voting on the Plan.

If You believe that Your Claim should be allowed for voting purposes in an amount other than $1.00, You must file a motion with the Bankruptcy Court pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure no later than December 27, 2024, seeking temporary allowance of Your Claim in such other amount.  The Bankruptcy Court will thereafter determine the amount of Your Claim solely for voting purposes in accordance with the procedures described in the Solicitation Procedures and Solicitation Procedures Order.

**Item 3.  Certifications, Acknowledgment, Signature and Date**.

Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will not be counted.  As a reminder, United States claimants must provide the last four digits of their Social Security Number in Item 1 of the Ballot as well.

The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, You make the following certifications, on information and belief:

- "I have / The claimant or his / her personal representative or attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Solicitation Procedures Order, a letter from the TCC urging Claimants to accept the Plan, and the Solicitation Procedures."

- "I am / The claimant is the Holder of an Indirect Claim in Class 9 or Class 10."

- "I have full power and authority to vote to ACCEPT / in favor of or to REJECT / against the Plan on behalf of, or in my capacity as, the claimant."

If You cast more than one Ballot voting the same Claim before the Voting Deadline, the latest dated Ballot will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT / in favor of or to REJECT / against the Plan**.  A Holder of a Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Claim who purports partially to accept and partially to reject the Plan will not be counted.

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF ANY OF THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 967-0491 (U.S. / CANADA, TOLL-FREE) or +1 (310) 751-2691 (INTERNATIONAL)**

**WEBSITE: https://veritaglobal.net/tehum**

[*Remainder of page left intentionally blank.*]

**Claim Ballot for Class 9 or Class 10 for**
**Voting on Joint Chapter 11 Plan of the Tort**
**Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor**

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.  Print clearly.** |

**ITEM 1 — Claimant's Name and Address:**

_____
Name

_____
Street Address

_____
City, State, and ZIP Code (U.S.)

_____
Telephone Number

_____
Last Four Digits of Social Security Number (U.S. claimants only)

**ITEM 2 — Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) an Indirect Claim, votes (fill in ONE box only):

□ to ACCEPT / in Favor of the Plan.

□ to REJECT / Against the Plan.

Amount of Your Claim for voting purposes only:  $1.00.

**ITEM 3 — Certifications, Acknowledgment, Signature and Date:**

By signing this Ballot, the signatory certifies, on information and belief, that:

(i)     I have / The claimant or his / her personal representative or attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Solicitation Procedures Order, the Solicitation Procedures, and a letter from one or both of the Committees to vote to ACCEPT / vote in favor of the Plan;

(ii)    I am / The claimant is the Holder of an Indirect Claim in Class 9 or Class 10; and

(iii)   I have full power and authority to vote to ACCEPT / in favor of or to REJECT / against the Plan on behalf of, or in my capacity as, the claimant.

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.  Print clearly.** |
| **Signature and Date**<br><br>_____<br>Signature of Claimant or Authorized Agent<br><br><br>_____<br>Date |
| **YOU <u>MUST</u> COMPLETE ITEM 3 IN ORDER FOR YOUR VOTE ON THE PLAN TO BE COUNTED.** |

**<u>DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.  MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.</u>**

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT BY FEBRUARY 21, 2025, AT 5:00 P.M. (PREVAILING CENTRAL TIME), YOUR VOTE MAY NOT BE COUNTED.**

**<u>Exhibit 4-1</u>**

**Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**NOTICE OF HEARING TO CONSIDER**
**CONFIRMATION OF JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF THE TORT CLAIMANTS' COMMITTEE,**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

PLEASE TAKE NOTICE THAT on October 2, 2024, the Official Committee of Tort Claimants appointed in the Debtor's Chapter 11 Case (the "**Tort Claimants' Committee**"), the Official Committee of Unsecured Creditors appointed in the Debtor's Chapter 11 Case (the "**Unsecured Creditors' Committee**"), and Tehum Care Services, Inc., the above-captioned debtor (the "**Debtor**" and, together with the Tort Claimants' Committee and Unsecured Creditors' Committee, the "**Plan Proponents**") filed:

- the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Docket No. 1739] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**");[2] and

- the *Disclosure Statement for the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Docket No. 1740] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**").

PLEASE TAKE FURTHER NOTICE THAT:

1.     The United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") has scheduled a hearing on March 3, 2025, at 10:00 a.m. (Prevailing Central Time) (the "**Confirmation Hearing**") to consider whether to confirm the Plan.

---

[1]   The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is:  205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

2.      The Confirmation Hearing will be held before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Texas, located at the Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002.  The Confirmation Hearing may be continued from time to time without further notice other than the announcement of the adjourned date(s) at the Confirmation Hearing or any continued hearing or as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court.  If the Confirmation Hearing is continued, the Plan Proponents will post the new date and time of the Confirmation Hearing at https://veritaglobal.net/Tehum.

3.      The Plan may be modified, if necessary, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and other applicable law, before, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest.

4.      On November 13, 2024 the Bankruptcy Court entered an order (the "**Solicitation Procedures Order**") approving the Disclosure Statement and procedures for soliciting votes to accept or reject the Plan (the "**Solicitation Procedures**").

5.      The Bankruptcy Court has further established a deadline of February 21, 2025, at 5:00 p.m. (Prevailing Central Time) (the "**Voting Deadline**") for voting to accept or reject the Plan.  If You are entitled to vote to accept or reject the Plan, an appropriate ballot and voting instructions have been included in the package of materials containing this Notice, or, alternatively, such items may have been sent to Your attorney.  You must return Your Ballot to the address specified in the instructions accompanying the Ballot so that it is received by the claims, noticing, and solicitation agent, Verita Global (the "**Solicitation Agent**"), no later than the Voting Deadline.  If You do not return Your Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline, Your vote may not be counted.  Any failure to follow the voting instructions included with the Ballot may disqualify Your Ballot and Your vote.  If You have not received a Ballot and are entitled to vote on the Plan, You may request a Ballot and voting instructions from the Solicitation Agent by e-mail at tehuminfo@veritaglobal.com and submit Your Ballot as set forth above by the Voting Deadline.  All submitted Ballots will be tabulated according to the rules set forth in the Solicitation Procedures as approved in the Solicitation Procedures Order.

5.      If You have received Your Ballot and the package of materials containing this Notice from Your attorney, Your attorney may require You to submit Your completed Ballot to him or her by a date specified in a letter from Your attorney included in the package of materials. Please return Your completed Ballot to Your attorney by such date.  If You have received Your Ballot and package of solicitation materials from Your attorney but Your attorney has not requested that You return a completed Ballot to Your attorney for inclusion on a master ballot, You must return Your completed Ballot to the Solicitation Agent by the Voting Deadline in order for Your vote to count.

6.      If You would like to object to the Plan, You may do so by filing Your objection no later than February 21, 2025, at 5:00 p.m. (Prevailing Central Time) (the "**Confirmation Objection Deadline**").  Objections, if any, to confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Equity Interest of such party; (c) state with particularity the legal and factual basis and nature of any objection to

the Plan and include any evidentiary support therefor in the form of declarations submitted on information and belief; and (d) be filed with the Bankruptcy Court, Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002, together with proof of service, and served so as to be **RECEIVED on or before the Objection Deadline**.  Objections not timely filed and served in such manner will not be considered and will be deemed overruled.

7.     Please be advised that the Plan contains certain release, injunction, and exculpation provisions, which will become effective if the Plan is approved, and are set forth in Article IX of the Plan and described in Article IV.C of the Disclosure Statement.  Such provisions include the following:[3]

A.     *Estate Release*

**As of the Final Payment Date, except for the claims or theories of recover or remedies distributed to or retained by Holders of Opt-Out GUC Claims, Holders of Opt-Out PI/WD Claims, and Holders of Opt-Out Indirect Claims, and except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns, including the Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in the Plan shall not be construed to release any Insurance Actions or any post-Effective Date obligations under the Estate**

---

[3]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect Your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  The Plan Proponents urge all Holders to read through the entire Plan and Disclosure Statement, plus any additional and related documentation.

Party Settlement or any document, instrument, or agreement executed to implement the Estate Party Settlement.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.C shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Estate Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

**B.**     *Consensual Claimant Release*

As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.D shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.  If, following the Final Payment Date, any portion of the

Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.D shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

C.   *Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9*

As of the Final Payment Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Channeled GUC Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.E shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.

5

D.  *Exculpation*

As of the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

E.  *Channeling Injunction*

Subject to the terms of Article IX.I.5, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, (a) the sole recourse of any Holder of a Channeled PI/WD Trust Claim that is eligible for compensation under the PI/WD Trust Distribution Procedures on account of such Channeled PI/WD Trust Claim shall be to and against the PI/WD Trust pursuant to the PI/WD Trust Documents, and such Holder shall have no right to assert such Channeled PI/WD Trust Claim or any Claim against the Debtor against any Released Party, and (b) the sole recourse of any Holder of a Channeled GUC Trust Claim that is eligible for compensation under the Plan and the GUC Trust Agreement on account of such Channeled GUC Trust Claim shall be to and against the GUC Trust, and such Holder shall have no right to assert such Channeled GUC Trust Claim or any Claim against the Debtor against any Released Party. Accordingly, on or after the Effective Date, and subject to the terms of Article IX.I.5, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:

(a)  commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;

(b)      **enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;**

(c)      **creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;**

(d)      **asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or**

(e)      **taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or any Plan Document or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Trusts, except in conformity and compliance with the Plan and any Plan Document with respect to any such Channeled Claim.**

F.      *Channeling Injunction (Reservations)*

**Notwithstanding anything to the contrary in this <u>Article IX.I</u>, this Channeling Injunction shall not enjoin:**

(a)      **the rights of Holders of Channeled PI/WD Trust Claims to assert such Claims against the PI/WD Trust in accordance with the PI/WD Trust Distribution Procedures;**

(b)      **the rights of Holders of Channeled GUC Trust Claims to assert such Claims against the GUC Trust in accordance with the Plan and the GUC Trust Agreement;**

(c)      **the rights of Holders of Channeled Claims to assert such Claims against any Released Party if the Channeling Injunction is terminated under Article IX.I.5;**

(d)      **the Trusts from enforcing their rights under the Plan and the Confirmation Order;**

(e)    **the rights of the Trusts to prosecute any action against an Insurance Company based on or arising from a PI/WD Insurance Policy or a GUC Insurance Policy;**

(f)    **the rights of the Trusts to prosecute any Retained Estate Causes of Action; and**

(g)    **the rights of Holders of Channeled Claims to seek recovery from any Person, Entity, or Governmental Unit that is not a Released Party on account of their Channeled Claims or any other claim or Cause of Action.**

G.    *Channeling Injunction (Enforcement)*

**Any Released Party may enforce the Channeling Injunction before the Bankruptcy Court, which shall retain jurisdiction for such purpose. The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.**

H.    *Channeling Injunction (Termination)*

**The Channeling Injunction and all protections afforded to the Released Parties set forth in this Article IX.I shall terminate automatically (or not take effect) as to the Holder of any Channeled Claims if a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by both the PI/WD Trustee and GUC Trustee in accord with Article IV.B.2, or if the Estate Release or the Consensual Claimant Release become void under Article IV.B.7, Article IV.B.9 or Article IV.B.12.**

I.    *Channeling Injunction (Tolling of Statute of Limitations)*

**While the Channeling Injunction is in effect as to any Channeled Claim, and for ninety (90) days following the termination of the Channeling Injunction under Article IX.I.5, the running of any relevant Statute of Limitations shall be tolled as to any Channeled Claim. Upon the termination of the Channeling Injunction, the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.**

If You would like additional copies of the Plan, the Disclosure Statement, or the Solicitation Procedures Order, You can obtain those documents in the following manner: by (a) telephoning the Solicitation Agent at (866) 967-0491 (U.S. / Canada, Toll-Free) or +1 (310) 751-2691 (International); (b) visiting https://veritaglobal.net/tehum; (c) submitting an inquiry at http://www.veritaglobal.net/tehum/inquiry; (d) emailing Your request to tehuminfo@veritaglobal.com; or (e) writing to Tehum Care Services, Inc., Ballot Processing Center, c/o Verita Global, 222 N Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245.

Dated:  November [●], 2024

Respectfully Submitted,

---

David J. Molton (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Meghan McCafferty (*pro hac vice*)
Amir Shachmurove (*pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email:  dmolton@brownrudnick.com
egoodman@brownrudnick.com
cmoxley@brownrudnick.com
gcicero@brownrudnick.com
mmccafferty@brownrudnick.com
ashachmurove@brownrudnick.com

- and -

---

Michael W. Zimmerman
**BERRY RIDDELL LLC**
6750 E. Camelback Road, Suite #100
Scottsdale, AZ 85251
Telephone: (480) 385-2727
Email:  mz@berryriddell.com

*Counsel to the Tort Claimants' Committee*

Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
**STINSON LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:    (816) 842-8600
Facsimile:    (816) 691-3495
Email: nicholas.zluticky@stinson.com
             zachary.hemenway@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

Jason S. Brookner (TX Bar No. 24033684)
Micheal W. Bishop (TX Bar No. 02354860)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED LLP**
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:    (713) 986-7127
Facsimile:    (713) 986-5966
Email: jbrookner@grayreed.com
             mbishop@grayreed.com
             akaufman@grayreed.com
             lwebb@grayreed.com
             acarson@grayreed.com

*Counsel to the Debtor and Debtor in Possession*

10

**Exhibit 4-2**

**Publication Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**NOTICE OF DEADLINE FOR CASTING VOTES TO
ACCEPT OR REJECT PROPOSED JOINT CHAPTER 11 PLAN
OF REORGANIZATION OF THE TORT CLAIMANTS' COMMITTEE,
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

PLEASE TAKE NOTICE THAT on October 2, 2024, the Official Committee of Tort Claimants appointed in the Debtor's Chapter 11 Case (the "**Tort Claimants' Committee**"), the Official Committee of Unsecured Creditors appointed in the Debtor's Chapter 11 Case (the "**Unsecured Creditors' Committee**"), and Tehum Care Services, Inc., the above-captioned debtor (the "**Debtor**" and, together with the Tort Claimants' Committee and the Unsecured Creditors' Committee, the "**Plan Proponents**") filed:

- the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Docket No. 1739] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**");[2] and

- the *Disclosure Statement for the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Docket No. 1740] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**").

PLEASE TAKE FURTHER NOTICE THAT:

1.     The United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") has scheduled a hearing on March 3, 2025, at 10:00 a.m. (Prevailing Central Time) (the "**Confirmation Hearing**") to consider whether to confirm the Plan.  The Confirmation Hearing will be held before the Honorable Christopher M. Lopez, United States

---

[1]   The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is:  205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Texas, located at the Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002.

3.      On November 13, 2024 the Bankruptcy Court entered an order (the "**Solicitation Procedures Order**") approving the Disclosure Statement and procedures for soliciting votes to accept or reject the Plan (the "**Solicitation Procedures**").

4.      Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved certain procedures for soliciting votes to accept or reject the Plan, which are attached to the Disclosure Statement.  Only Holders of Claims in Classes 3 through 10 are entitled to receive a ballot for casting a vote on the Plan (a "**Ballot**").  Holders of Claims in all other Classes under the Plan are deemed to accept the Plan because they are Unimpaired.  Holders of Equity Interests under the Plan are deemed to reject the Plan because not receiving any distribution.  For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the Ballot so that it is received by **February 21, 2025, at 5:00 p.m. (Prevailing Central Time)**.

5.      **The Plan proposes certain releases and injunctions in furtherance of the Plan. For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below**.

6.      The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan and the Disclosure Statement contains information that will help You decide how to vote.  Your legal rights will be affected if the Plan is approved.

6.      If You would like to object to the Plan, You may do so by filing Your objection no later than February 21, 2025, at 5:00 p.m. (Prevailing Central Time) (the "**Confirmation Objection Deadline**").  Objections, if any, to confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Equity Interest of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor in the form of declarations submitted on information and belief; and (d) be filed with the Bankruptcy Court, Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002, together with proof of service, and served so as to be **RECEIVED** on or before the Objection Deadline.

OBJECTIONS NOT TIMELY FILED AND SERVED IN SUCH MANNER MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.

## COPIES OF PLAN AND DISCLOSURE STATEMENT

If You would like additional copies of the Plan, the Disclosure Statement, or the Solicitation Procedures Order, You can obtain those documents in the following manner: by (a) telephoning the Solicitation Agent at (866) 967-0491 (U.S. / Canada, Toll-Free) or +1 (310) 751-2691 (International); (b) visiting https://veritaglobal.net/tehum; (c) submitting an inquiry at http://www.veritaglobal.net/tehum/inquiry;          (d)          emailing          Your          request          to

tehuminfo@veritaglobal.com; or (e) writing to Tehum Care Services, Inc., Ballot Processing Center, c/o Verita Global, 222 N Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245.

Dated:  November [●], 2024                    Respectfully Submitted,

David J. Molton (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Meghan McCafferty (*pro hac vice*)
Amir Shachmurove (*pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
           egoodman@brownrudnick.com
           cmoxley@brownrudnick.com
           gcicero@brownrudnick.com
           mmccafferty@brownrudnick.com
           ashachmurove@brownrudnick.com

- and -

Michael W. Zimmerman
**BERRY RIDDELL LLC**
6750 E. Camelback Road, Suite #100
Scottsdale, AZ 85251
Telephone: (480) 385-2727
Email: mz@berryriddell.com

*Counsel to the Tort Claimants' Committee*

Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
**STINSON LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:     (816) 842-8600
Facsimile:     (816) 691-3495
Email: nicholas.zluticky@stinson.com
          zachary.hemenway@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

Jason S. Brookner (TX Bar No. 24033684)
Micheal W. Bishop (TX Bar No. 02354860)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED LLP**
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:     (713) 986-7127
Facsimile:     (713) 986-5966
Email: jbrookner@grayreed.com
          mbishop@grayreed.com
          akaufman@grayreed.com
          lwebb@grayreed.com
          acarson@grayreed.com

*Counsel to the Debtor and Debtor in Possession*

**Exhibit 4-3**

**Notice of Non-Voting Status**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

## NOTICE OF NON-VOTING STATUS

## TO:  ALL HOLDERS OF UNCLASSIFIED CLAIMS AND CLAIMS OR INTERESTS IN CLASSES 1, 2 and 11

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

## APPROVAL OF DISCLOSURE STATEMENT

On October 2, 2024, the official committee of tort claimants appointed in the Debtor's Chapter 11 Case (the "**Tort Claimants' Committee**"), the Official Committee of Unsecured Creditors appointed in the Debtor's Chapter 11 Case (the "**Unsecured Creditors' Committee**"), and Tehum Care Services, Inc., the above-captioned debtor (the "**Debtor**" and, together with Tort Claimants' Committee and the Unsecured Creditors' Committee, the "**Plan Proponents**") filed:

- the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Docket No. 1739] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**");[2] and

- the *Disclosure Statement for the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Docket No. 1740] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**").

## ENTITLEMENT TO VOTE ON PLAN

You are receiving this notice because, according to the Debtor's books and records, You may be the holder of a Claim in Class 1 (Other Priority Claims), Class 2 (Secured Claims), or

---

[1]  The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is:  205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

Class 11 (Interests in the Debtor) (collectively, the "**Non-Voting Classes**"), or You are a holder of an Administrative Expense Claim, Professional Fee Claim, or Priority Tax Claim, which are unclassified under the Plan (collectively, the "**Unclassified Claims**"). Pursuant to the terms of the Plan, holders of Claims in Classes 1 and 2, respectively, are Unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan. Pursuant to the terms of the Plan, holders of Interests in the Debtor shall not receive or retain any property under the Plan on account of such Interests and therefore, pursuant to section 1126(g) of the Bankruptcy Code, are presumed to not accept the Plan.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF PLAN

1.     The United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") has scheduled a hearing on March 3, 2025, at 10:00 a.m. (Prevailing Central Time) (the "**Confirmation Hearing**") to consider whether to confirm the Plan. The Confirmation Hearing will be held before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Texas, located at the Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002. The Confirmation Hearing may be continued from time to time without further notice other than the announcement of the adjourned date(s) at the Confirmation Hearing or any continued hearing or as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court. If the Confirmation Hearing is continued, the Tort Claimants' Committee will post the new date and time of the Confirmation Hearing at https://veritaglobal.net/Tehum. The Plan may be modified, if necessary, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and other applicable law, before, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest.

2.     Notwithstanding the fact that You are not entitled to vote to accept or reject the Plan, You nevertheless may be a party in interest in the Chapter 11 Case and You, therefore, may be entitled to participate in the Chapter 11 Case, including by filing objections to confirmation of the Plan. If You would like to object to the Plan, You may do so by filing Your objection no later than February 21, 2025, at 5:00 p.m. (Prevailing Central Time) (the "**Confirmation Objection Deadline**"). Objections, if any, to confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Equity Interest of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor in the form of declarations submitted on information and belief; and (d) be filed with the Bankruptcy Court, Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002, together with proof of service, and served so as to be **RECEIVED on or before the Objection Deadline**.

**OBJECTIONS NOT TIMELY FILED AND SERVED IN SUCH MANNER MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE**.

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|-------|------------------|-------------------------------|--------|---------------|
| 1 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Administrative and Priority Claims Reserve on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) such date on which the Holder of such Other Priority Claim and the Debtor or Trustees, as applicable, shall otherwise agree in writing. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or the GUC Trustee, as applicable, either: (i) payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the GUC Trustee, as applicable, shall otherwise agree in writing; (ii) the collateral securing such Allowed Other Secured Claim; or (iii) such other treatment that renders such Allowed Other Secured Claim Unimpaired. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Convenience Claims | On the first Business Day that is thirty (30) days following the Effective Date, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash. | Impaired | Entitled to Vote |
| 4 | Channeled GUC Claims | On the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Channeled GUC Claim agrees to less favorable treatment, each Holder of an Allowed Channeled GUC Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the GUC Trust. Thereafter each such Holder shall receive Cash distributions from the GUC Trust in accordance with the terms and conditions set forth in the GUC Trust Documents. Distributions from the GUC Trust to Holders of | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | Allowed Channeled GUC Claims shall be on a Pro Rata basis with all other holders of GUC Trust beneficial interests in accordance with the terms of the GUC Trust Agreement.  Holders of Channeled GUC Claims shall not receive any payment from the GUC Trust unless and until such Claims are resolved in accordance with the GUC Trust Documents.  The GUC Trust Agreement establishes the method by with the Channeled GUC Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid.  Except as provided in the Plan, Holders of Channeled GUC Claims shall be enjoined from prosecuting or filing any Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.<br><br>Notwithstanding the above, each Holder of an Allowed Channeled GUC Claim shall have the option on the Ballot to elect for an Expedited GUC Distribution.  Any Holder of a GUC Claim who elects for the Expedited GUC Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release.  An election on the Ballot for an Expedited GUC Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot. An Expedited GUC Distribution shall be paid by the GUC Trustee on the later of (a) the Effective Date or (b) within ten (10) business days after such GUC Claim becomes an Allowed Claim by Final Order, provided, however, that the GUC Trustee shall not be required to pay such Expedited GUC Distribution until the first Business Day on which the GUC Trust has sufficient Cash on hand to make the Expedited GUC Distribution and satisfy the reserve requirements set forth in the GUC Trust Documents. | | |
| 5 | Opt-Out GUC Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out GUC Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its GUC Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action.  Except | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | for the foregoing, Holders of Opt-Out GUC Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan. Consistent with the foregoing, each Holder of an Opt-Out GUC Claim may elect to pursue recovery on account of its GUC Claim from any of the Released Parties.  Holders of Opt-Out GUC Claims shall not receive, and shall have no right to receive, a Distribution from the GUC Trust. | | |
| 6 | Channeled PI/WD Claims | Holders of Allowed Channeled PI/WD Claims shall be entitled to receive a distribution from the PI/WD Trust from the PI/WD Trust Assets.  As of the Effective Date, the Debtor's liability for all Channeled PI/WD Claims shall be both incurred in full and assumed by the PI/WD Trust without further act, deed, or Court order and shall be administered and paid from the PI/WD Trust as set forth in the PI/WD Trust Documents.  Holders of Channeled PI/WD Claims shall not receive any payment from the PI/WD Trust unless and until such Claims are resolved in accordance with the PI/WD Trust Documents.   The PI/WD Trust Distribution Procedures establish the method by with the Channeled PI/WD Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid.  Except as provided in the Plan, Holders of Channeled PI/WD Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.

Notwithstanding the above, and at all times subject to the requirements in Article III.B, each Holder of an Allowed Channeled PI/WD Claim shall have the option on the Ballot to elect for an Expedited PI/WD Claim Distribution.  Any Holder of a Channeled PI/WD Claim who elects for the Expedited PI/WD Claim Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release.  An election on the Ballot for an Expedited PI/WD Claim Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot.   An Expedited PI/WD Claim Distribution shall be paid by the PI/WD Trustee within sixty (60) days following the Effective Date, subject to the terms of | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | the PI/WD Trust Distribution Procedures, provided, however, that the PI/WD Trustee shall not be required to pay such Expedited PI/WD Distribution until the first Business Day on which the PI/WD Trust has sufficient Cash on hand to make the Expedited PI/WD Distribution and satisfy the reserve requirements set forth in the PI/WD Trust Documents. | | |
| 7 | Opt-Out PI/WD Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out PI/WD Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its PI/WD Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action. Except for the foregoing, Holders of an Opt-Out PI/WD Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan. Consistent with the foregoing, each Holder of an Opt-Out PI/WD Claim may elect to pursue recovery on account of its PI/WD Claim from any of the Released Parties. Holders of Opt-Out PI/WD Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust. | Impaired | Entitled to Vote |
| 8 | Opt-Out Insured PI/WD Claim | The Holders of Opt-Out Insured PI/WD Claims shall be entitled to seek recovery on account of such Claims from any PI/WD Insurance Company. Such Holders shall be entitled to name as a defendant in any proceeding commenced or continued in the Civil Justice System the Debtor, the PI/WD Trust, and any other person or entity to the extent permitted under applicable law, *provided*, *however*, that such Holder may not name a Released Party as a defendant other than the Debtor. Claims that could have been asserted against the Debtor may be asserted against the PI/WD Trust, which will have the liabilities and defenses of the Debtor, subject to the limitations | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | below on the Claimants' right to recover on any such Opt-Out Insured PI/WD Claim established through litigation.  If such proceeding is commenced or continued, the PI/WD Trustee shall provide notice to and seek defense from each PI/WD Insurance Company that the PI/WD Trustee determines may have an obligation to provide coverage in accordance with the terms of each applicable PI/WD Insurance Policy.  The PI/WD Trust shall have no obligation to appear and defend any lawsuit commenced against the PI/WD Trust if the applicable PI/WD Insurance Company refuses to cover any and/or all defense costs.  The PI/WD Trust shall have no obligation to satisfy any Insurance Policy's deductible or self-insured retention per claim or in the aggregate.  Holders of Opt-Out Insured PI/WD Claims shall not be entitled to receive any recovery from the PI/WD Trust or the Debtor on account of such Claim other than a recovery that is funded exclusively by an insurance recovery under a PI/WD Insurance Policy.<br><br>Each Holder of an Opt-Out Insured PI/WD Claim shall automatically be deemed to return to the PI/WD Trust on the ninetieth (90th) day following the Effective Date unless such Holder provides written notice to the PI/WD Trust that such Holder intends to remain an Opt-Out for purposes of pursuing insurance recoveries in the Civil Justice System. This deadline may be extended in accordance with the PI/WD Trust Documents.  Holders of Opt-Out Insured PI/WD Claims who elect to remain in the Civil Justice System for the purpose of pursuing insurance recoveries after this deadline may elect to return to the PI/WD Trust in accordance with the PI/WD Trust Documents. Any Holder of an Opt-Out Insured PI/WD Claim that returns to the PI/WD Trust in accordance with the PI/WD Trust Documents shall be treated as the Holder of Channeled PI/WD Claim under the Plan and the PI/WD Trust Documents. | | |
| 9 | Channeled Indirect Claims | Any Channeled Indirect Claim shall be Disallowed to the extent provided by section 502(e) and shall be subordinated to the extent provided by section 509(c) of the Bankruptcy Code or applicable law.<br><br>As of the Effective Date, (a) the Debtor's liability for all Allowed Channeled Indirect Claims that are Allowed Indirect PI/WD Claims shall be both incurred in full and assumed by the PI/WD Trust without further act, deed, or Court order and shall be administered and paid from the PI/WD Trust as set | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | forth in the PI/WD Trust Documents, and (b) the Debtor's liability for all Allowed Channeled Indirect Claims that are Allowed Indirect GUC Claims shall be both incurred in full and assumed by the GUC Trust without further act, deed, or Court order and shall be administered and paid from the GUC Trust as set forth in the Plan and the GUC Trust Agreement.<br><br>Holders of Allowed Channeled Indirect Claims that are Allowed Indirect PI/WD Claims shall not receive any payment from the PI/WD Trust unless and until such Claims are resolved in accordance with the PI/WD Trust Documents.   The PI/WD Trust Distribution Procedures establish the method by with such Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid. Holders of Allowed Channeled Indirect Claims that are Allowed Indirect GUC Claims shall not receive any payment from the GUC Trust unless and until such Claims are resolved in accordance with the Plan and the GUC Trust Agreement.  Except as provided in the Plan, Holders of Channeled Indirect Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court. | | |
| 10 | Opt-Out Indirect Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out Indirect Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its Indirect Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action.  Except for the foregoing, Holders of an Opt-Out Indirect Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan.  Consistent with the foregoing, each Holder of an Opt-Out Indirect Claim may elect to pursue recovery on account of its Indirect Claim from any of the Released Parties. | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | Holders of Opt-Out Indirect Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust or the GUC Trust. | | |
| 11 | Interests in the Debtor | On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive or retain any property on account of such Interests. | Impaired | Not Entitled to Vote (Deemed to Reject) |

## RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN PLAN

Please be advised that the Plan contains certain release, injunction, and exculpation provisions, which will become effective if the Plan is approved, and are set forth in Article IX of the Plan and described in Article IV.C of the Disclosure Statement.  Such provisions include the following:[3]

A. *Estate Release*

**As of the Final Payment Date, except for the claims or theories of recover or remedies distributed to or retained by Holders of Opt-Out GUC Claims, Holders of Opt-Out PI/WD Claims, and Holders of Opt-Out Indirect Claims, and except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns, including the Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property**

---

[3]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect Your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  The Plan Proponents urge all Holders to read through the entire Plan and Disclosure Statement, plus any additional and related documentation.

under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in the Plan shall not be construed to release any Insurance Actions or any post-Effective Date obligations under the Estate Party Settlement or any document, instrument, or agreement executed to implement the Estate Party Settlement.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.C shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Estate Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

## B.    *Consensual Claimant Release*

As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.D shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the

**Trust Documents.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.D shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.**

**C.      *Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9***

**As of the Final Payment Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Channeled GUC Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.E shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.**

### D.   *Exculpation*

As of the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.  The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code.  Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

### E.   *Channeling Injunction*

Subject to the terms of Article IX.I.5, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, (a) the sole recourse of any Holder of a Channeled PI/WD Trust Claim that is eligible for compensation under the PI/WD Trust Distribution Procedures on account of such Channeled PI/WD Trust Claim shall be to and against the PI/WD Trust pursuant to the PI/WD Trust Documents, and such Holder shall have no right to assert such Channeled PI/WD Trust Claim or any Claim against the Debtor against any Released Party, and (b) the sole recourse of any Holder of a Channeled GUC Trust Claim that is eligible for compensation under the Plan and the GUC Trust Agreement on account of such Channeled GUC Trust Claim shall be to and against the GUC Trust, and such Holder shall have no right to assert such Channeled GUC Trust Claim or any Claim against the Debtor against any Released Party.  Accordingly, on or after the Effective Date, and subject to the terms of Article IX.I.5, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:

> (a)   commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;

(b)      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;

(c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;

(d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or

(e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or any Plan Document or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Trusts, except in conformity and compliance with the Plan and any Plan Document with respect to any such Channeled Claim.

## F.      *Channeling Injunction (Reservations)*

Notwithstanding anything to the contrary in this <u>Article IX.I</u>, this Channeling Injunction shall not enjoin:

(a)      the rights of Holders of Channeled PI/WD Trust Claims to assert such Claims against the PI/WD Trust in accordance with the PI/WD Trust Distribution Procedures;

(b)      the rights of Holders of Channeled GUC Trust Claims to assert such Claims against the GUC Trust in accordance with the Plan and the GUC Trust Agreement;

(c)      the rights of Holders of Channeled Claims to assert such Claims against any Released Party if the Channeling Injunction is terminated under Article IX.I.5;

(d)      the Trusts from enforcing their rights under the Plan and the Confirmation Order;

(e)     the rights of the Trusts to prosecute any action against an Insurance Company based on or arising from a PI/WD Insurance Policy or a GUC Insurance Policy;

(f)     the rights of the Trusts to prosecute any Retained Estate Causes of Action; and

(g)     the rights of Holders of Channeled Claims to seek recovery from any Person, Entity, or Governmental Unit that is not a Released Party on account of their Channeled Claims or any other claim or Cause of Action.

## G.     *Channeling Injunction (Enforcement)*

Any Released Party may enforce the Channeling Injunction before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

## H.     *Channeling Injunction (Termination)*

The Channeling Injunction and all protections afforded to the Released Parties set forth in this Article IX.I shall terminate automatically (or not take effect) as to the Holder of any Channeled Claims if a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by both the PI/WD Trustee and GUC Trustee in accord with Article IV.B.2, or if the Estate Release or Consensual Claimant Release become void under Article IV.B.7, Article IV.B.9 or Article IV.B.12.

## I.     *Channeling Injunction (Tolling of Statute of Limitations)*

While the Channeling Injunction is in effect as to any Channeled Claim, and for ninety (90) days following the termination of the Channeling Injunction under Article IX.I.5, the running of any relevant Statute of Limitations shall be tolled as to any Channeled Claim.  Upon the termination of the Channeling Injunction, the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.

## COPIES OF PLAN AND DISCLOSURE STATEMENT

If You would like additional copies of the Plan, the Disclosure Statement, or the Solicitation Procedures Order, You can obtain those documents in the following manner: by (a) telephoning the Solicitation Agent at (866) 967-0491 (U.S. / Canada, Toll-Free) or +1 (310) 751-2691 (International); (b) visiting https://veritaglobal.net/tehum; (c) submitting an inquiry at http://www.veritaglobal.net/tehum/inquiry;   (d)   emailing   Your   request   to tehuminfo@veritaglobal.com; or (e) writing to Tehum Care Services, Inc., Ballot Processing Center, c/o Verita Global, 222 N Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245.  The

Disclosure Statement, the Plan, and the Solicitation Procedures Order are on file with the Clerk of the Bankruptcy Court and may be examined by parties in interest by visiting the Office of the Clerk of Court during business hours or viewed on the Solicitation Agent's website (https://www.veritaglobal.net/Tehum).

Dated:  November [●], 2024                    Respectfully Submitted,

David J. Molton (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Meghan McCafferty (*pro hac vice*)
Amir Shachmurove (*pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email:  dmolton@brownrudnick.com
            egoodman@brownrudnick.com
            cmoxley@brownrudnick.com
            gcicero@brownrudnick.com
            mmccafferty@brownrudnick.com
            ashachmurove@brownrudnick.com

- and -

Michael W. Zimmerman
**BERRY RIDDELL LLC**
6750 E. Camelback Road, Suite #100
Scottsdale, AZ 85251
Telephone: (480) 385-2727
Email:  mz@berryriddell.com

*Counsel to the Tort Claimants' Committee*

Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
**STINSON LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:     (816) 842-8600

Facsimile:      (816) 691-3495
Email:  nicholas.zluticky@stinson.com
          zachary.hemenway@stinson.com

*Counsel to the Official Committee of*
*Unsecured Creditors*

---

Jason S. Brookner (TX Bar No. 24033684)
Micheal W. Bishop (TX Bar No. 02354860)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED LLP**
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:      (713) 986-7127
Facsimile:       (713) 986-5966
Email:  jbrookner@grayreed.com
          mbishop@grayreed.com
          akaufman@grayreed.com
          lwebb@grayreed.com
          acarson@grayreed.com

*Counsel to the Debtor and Debtor in*
*Possession*

16

**<u>Exhibit 4-4</u>**

**Contract/Lease Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**NOTICE OF CONTRACT AND LEASE COUNTERPARTIES**

**PLEASE TAKE NOTICE THAT** You are receiving this notice because You or one of Your affiliates is a counterparty to an Executory Contract or Unexpired Lease with the Debtor. Please read carefully the following notices regarding the proposed assumption or rejection of Executory Contracts and Unexpired Leases and related information regarding the Disclosure Statement and Plan.

**APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN**

**PLEASE TAKE NOTICE THAT** on October 2, 2024, the Official Committee of Tort Claimants appointed in the Debtor's Chapter 11 Case (the "**Tort Claimants' Committee**"), the Official Committee of Unsecured Creditors appointed in the Debtor's Chapter 11 Case (the "**Unsecured Creditors' Committee**"), and Tehum Care Services, Inc., the above-captioned debtor (the "**Debtor**" and, together with the Tort Claimants' Committee and the Unsecured Creditors' Committee, the "**Plan Proponents**") filed:

- the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Docket No. 1739] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**");[2] and

- the *Disclosure Statement for the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Docket No. 1740] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**").

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** on November 13, 2024 the Bankruptcy Court entered an order (the "**Solicitation Procedures Order**") approving the Disclosure Statement and procedures for soliciting votes to accept or reject the Plan (the "**Solicitation Procedures**").

**PLEASE TAKE FURTHER NOTICE THAT** the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") has scheduled a hearing on March 3, 2025, at 10:00 a.m. (Prevailing Central Time) (the "**Confirmation Hearing**") to consider whether to confirm the Plan.  The Confirmation Hearing will be held before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Texas, located at the Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002.  The Confirmation Hearing may be continued from time to time without further notice other than the announcement of the adjourned date(s) at the Confirmation Hearing or any continued hearing or as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court.  If the Confirmation Hearing is continued, the Tort Claimants' Committee will post the new date and time of the Confirmation Hearing at https://veritaglobal.net/Tehum.  The Plan may be modified, if necessary, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and other applicable law, before, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest.

## ENTITLEMENT TO VOTE ON THE PLAN

**PLEASE TAKE FURTHER NOTICE THAT** in accordance with the terms of the Plan and the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, or Priority Tax Claims (collectively, the "**Unclassified Claims**") are unclassified and are not entitled to vote on the Plan.  In addition, Holders of Claims in Claims in Classes 1 and 2 are Unimpaired and are presumed to have accepted the Plan, and Holders of Interests in Class 11 (Interests in the Debtor) shall not receive or retain any property under the Plan on account of such Interests and are presumed to not accept the Plan (collectively, the "**Non-Voting Classes**").

## OBJECTIONS TO CONFIRMATION OF PLAN

Notwithstanding the fact that You are not entitled to vote to accept or reject the Plan, You nevertheless may be a party in interest in the Chapter 11 Case and You, therefore, may be entitled to participate in the Chapter 11 Case, including by filing objections to confirmation of the Plan.  If You would like to object to the Plan, You may do so by filing Your objection no later than February 21, 2025, at 5:00 p.m. (Prevailing Central Time) (the "**Confirmation Objection Deadline**"). Objections, if any, to confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Equity Interest of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor in the form of declarations submitted on information and belief; and (d) be filed with the Bankruptcy Court, Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002, together with proof of service, and served so as to be **RECEIVED on or before the Objection Deadline**.  Objections not timely filed and served in such manner will not be considered and will be deemed overruled.

2

**OBJECTIONS NOT TIMELY FILED AND SERVED IN SUCH MANNER MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE**.

### ASSUMPTION AND REJECTION OF
### <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

**PLEASE TAKE NOTICE** that to facilitate the reorganization under the Plan, the Bankruptcy Court will be asked to approve of the assumption of certain of their Executory Contracts and Unexpired Leases (collectively, the "**<u>Assumed Contracts</u>**"). The Assumed Contracts that the Debtor may, but is not required to, seek to assume in connection with the Plan and the corresponding cure amount (each, a "**<u>Proposed Cure Cost</u>**"), if any, that the Debtor believes is required to be paid to the applicable counterparty (each, a "**<u>Counterparty</u>**") to each of the Assumed Contracts under sections 365(b)(1)(A) and (B) of the Bankruptcy Code are identified on **<u>Exhibit A</u>** attached hereto. The Plan Proponents reserve the right to alter, amend, modify, or supplement the list of Assumed Contracts at any time before the date that is fourteen days before the Confirmation Hearing.

**PLEASE TAKE FURTHER NOTICE** that each Counterparty will have until the earlier of (a) 5:00 p.m. (prevailing Central Time) on the date that is fourteen (14) days after the service to the Counterparty of this notice (the "**<u>Contract/Lease Notice</u>**"), and (b) the date that is two days prior to the Confirmation Hearing (the "**<u>Contract Objection Deadline</u>**") to object to the assumption of its Executory Contract or Unexpired Lease on any grounds, including, without limitation, the amount of the Proposed Cure Costs, and any objection as to adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code (each, a "**<u>Contract Objection</u>**"). Any such Contract Objection must be filed and served on the Notice Parties, so as to be actually received by the Contract Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that any unresolved Contract Objections will be heard at the Confirmation Hearing, unless otherwise agreed by the parties, or at such other date and time as may be fixed by the Bankruptcy Court.

---

**If no Contract Objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract will be deemed to have consented to the assumption of the Assumed Contract, and be forever barred from asserting any objection with regard to such assumption (including, without limitation, with respect to adequate assurance of future performance); (ii) any and all defaults under the Assumed Contract and any and all pecuniary losses related thereto will be deemed cured and compensated pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Proposed Cure Cost set forth in this Contract/Lease Notice for such Assumed Contract, as may be amended; and (iii) the Proposed Cure Cost set forth in this Contract/Lease Notice for such Assumed Contract, as may be amended, will be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty will be deemed to have consented to the Proposed Cure Cost and will be forever barred from asserting any other claims related to such Assumed Contract against**

---

> the Debtor, the Estate, the Trusts, or any other person or entity specified in the Plan that existed prior to the entry of the order resolving the Contract Objection.

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| 1 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Administrative and Priority Claims Reserve on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) such date on which the Holder of such Other Priority Claim and the Debtor or Trustees, as applicable, shall otherwise agree in writing. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or the GUC Trustee, as applicable, either: (i) payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the GUC Trustee, as applicable, shall otherwise agree in writing; (ii) the collateral securing such Allowed Other Secured Claim; or (iii) such other treatment that renders such Allowed Other Secured Claim Unimpaired. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Convenience Claims | On the first Business Day that is thirty (30) days following the Effective Date, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash. | Impaired | Entitled to Vote |
| 4 | Channeled GUC Claims | On the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Channeled GUC Claim agrees to less favorable treatment, each Holder of an Allowed Channeled GUC Claim shall receive, in full | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|-------|------------------|-------------------------------|--------|---------------|
| | | and final satisfaction of such Claim, a beneficial interest in the GUC Trust. Thereafter each such Holder shall receive Cash distributions from the GUC Trust in accordance with the terms and conditions set forth in the GUC Trust Documents. Distributions from the GUC Trust to Holders of Allowed Channeled GUC Claims shall be on a Pro Rata basis with all other holders of GUC Trust beneficial interests in accordance with the terms of the GUC Trust Agreement. Holders of Channeled GUC Claims shall not receive any payment from the GUC Trust unless and until such Claims are resolved in accordance with the GUC Trust Documents. The GUC Trust Agreement establishes the method by with the Channeled GUC Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid. Except as provided in the Plan, Holders of Channeled GUC Claims shall be enjoined from prosecuting or filing any Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.<br><br>Notwithstanding the above, each Holder of an Allowed Channeled GUC Claim shall have the option on the Ballot to elect for an Expedited GUC Distribution. Any Holder of a GUC Claim who elects for the Expedited GUC Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release. An election on the Ballot for an Expedited GUC Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot. An Expedited GUC Distribution shall be paid by the GUC Trustee on the later of (a) the Effective Date or (b) within ten (10) business days after such GUC Claim becomes an Allowed Claim by Final Order, provided, however, that the GUC Trustee shall not be required to pay such Expedited GUC Distribution until the first Business Day on which the GUC Trust has sufficient Cash on hand to make the Expedited GUC Distribution and satisfy the reserve requirements set forth in the GUC Trust Documents. | | |
| 5 | Opt-Out GUC Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out GUC Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|-------|------------------|-------------------------------|--------|---------------|
| | | or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its GUC Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action.  Except for the foregoing, Holders of Opt-Out GUC Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan.  Consistent with the foregoing, each Holder of an Opt-Out GUC Claim may elect to pursue recovery on account of its GUC Claim from any of the Released Parties.  Holders of Opt-Out GUC Claims shall not receive, and shall have no right to receive, a Distribution from the GUC Trust. | | |
| 6 | Channeled PI/WD Claims | Holders of Allowed Channeled PI/WD Claims shall be entitled to receive a distribution from the PI/WD Trust from the PI/WD Trust Assets.  As of the Effective Date, the Debtor's liability for all Channeled PI/WD Claims shall be both incurred in full and assumed by the PI/WD Trust without further act, deed, or Court order and shall be administered and paid from the PI/WD Trust as set forth in the PI/WD Trust Documents.  Holders of Channeled PI/WD Claims shall not receive any payment from the PI/WD Trust unless and until such Claims are resolved in accordance with the PI/WD Trust Documents.   The PI/WD Trust Distribution Procedures establish the method by with the Channeled PI/WD Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid.  Except as provided in the Plan, Holders of Channeled PI/WD Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.<br><br>Notwithstanding the above, and at all times subject to the requirements in Article III.B, each Holder of an Allowed Channeled PI/WD Claim shall have the option on the Ballot to elect for an Expedited PI/WD Claim Distribution.  Any Holder of a Channeled PI/WD Claim who elects for the Expedited PI/WD Claim Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release.  An election on the Ballot for an Expedited | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | PI/WD Claim Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot.   An Expedited PI/WD Claim Distribution shall be paid by the PI/WD Trustee within sixty (60) days following the Effective Date, subject to the terms of the PI/WD Trust Distribution Procedures, provided, however, that the PI/WD Trustee shall not be required to pay such Expedited PI/WD Distribution until the first Business Day on which the PI/WD Trust has sufficient Cash on hand to make the Expedited PI/WD Distribution and satisfy the reserve requirements set forth in the PI/WD Trust Documents. | Impaired | |
| 7 | Opt-Out PI/WD Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out PI/WD Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its PI/WD Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action.  Except for the foregoing, Holders of an Opt-Out PI/WD Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan.  Consistent with the foregoing, each Holder of an Opt-Out PI/WD Claim may elect to pursue recovery on account of its PI/WD Claim from any of the Released Parties.  Holders of Opt-Out PI/WD Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust. | Impaired | Entitled to Vote |
| 8 | Opt-Out Insured PI/WD Claim | The Holders of Opt-Out Insured PI/WD Claims shall be entitled to seek recovery on account of such Claims from any PI/WD Insurance Company.  Such Holders shall be entitled to name as a defendant in any proceeding commenced or continued in the Civil Justice System the Debtor, the PI/WD Trust, and any other person or entity to the extent permitted under | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | applicable law, provided, however, that such Holder may not name a Released Party as a defendant other than the Debtor. Claims that could have been asserted against the Debtor may be asserted against the PI/WD Trust, which will have the liabilities and defenses of the Debtor, subject to the limitations below on the Claimants' right to recover on any such Opt-Out Insured PI/WD Claim established through litigation. If such proceeding is commenced or continued, the PI/WD Trustee shall provide notice to and seek defense from each PI/WD Insurance Company that the PI/WD Trustee determines may have an obligation to provide coverage in accordance with the terms of each applicable PI/WD Insurance Policy. The PI/WD Trust shall have no obligation to appear and defend any lawsuit commenced against the PI/WD Trust if the applicable PI/WD Insurance Company refuses to cover any and/or all defense costs. The PI/WD Trust shall have no obligation to satisfy any Insurance Policy's deductible or self-insured retention per claim or in the aggregate. Holders of Opt-Out Insured PI/WD Claims shall not be entitled to receive any recovery from the PI/WD Trust or the Debtor on account of such Claim other than a recovery that is funded exclusively by an insurance recovery under a PI/WD Insurance Policy.<br><br>Each Holder of an Opt-Out Insured PI/WD Claim shall automatically be deemed to return to the PI/WD Trust on the ninetieth (90th) day following the Effective Date unless such Holder provides written notice to the PI/WD Trust that such Holder intends to remain an Opt-Out for purposes of pursuing insurance recoveries in the Civil Justice System. This deadline may be extended in accordance with the PI/WD Trust Documents. Holders of Opt-Out Insured PI/WD Claims who elect to remain in the Civil Justice System for the purpose of pursuing insurance recoveries after this deadline may elect to return to the PI/WD Trust in accordance with the PI/WD Trust Documents. Any Holder of an Opt-Out Insured PI/WD Claim that returns to the PI/WD Trust in accordance with the PI/WD Trust Documents shall be treated as the Holder of Channeled PI/WD Claim under the Plan and the PI/WD Trust Documents. | | |
| 9 | Channeled Indirect Claims | Any Channeled Indirect Claim shall be Disallowed to the extent provided by section 502(e) and shall be subordinated to the extent provided by section 509(c) of the Bankruptcy Code or applicable law. | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|-------|------------------|-------------------------------|--------|---------------|
| | | As of the Effective Date, (a) the Debtor's liability for all Allowed Channeled Indirect Claims that are Allowed Indirect PI/WD Claims shall be both incurred in full and assumed by the PI/WD Trust without further act, deed, or Court order and shall be administered and paid from the PI/WD Trust as set forth in the PI/WD Trust Documents, and (b) the Debtor's liability for all Allowed Channeled Indirect Claims that are Allowed Indirect GUC Claims shall be both incurred in full and assumed by the GUC Trust without further act, deed, or Court order and shall be administered and paid from the GUC Trust as set forth in the Plan and the GUC Trust Agreement.<br><br>Holders of Allowed Channeled Indirect Claims that are Allowed Indirect PI/WD Claims shall not receive any payment from the PI/WD Trust unless and until such Claims are resolved in accordance with the PI/WD Trust Documents.   The PI/WD Trust Distribution Procedures establish the method by with such Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid. Holders of Allowed Channeled Indirect Claims that are Allowed Indirect GUC Claims shall not receive any payment from the GUC Trust unless and until such Claims are resolved in accordance with the Plan and the GUC Trust Agreement.  Except as provided in the Plan, Holders of Channeled Indirect Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court. | | |
| 10 | Opt-Out Indirect Claims | On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out Indirect Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its Indirect Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action.  Except for the foregoing, Holders of an Opt-Out Indirect Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment of Claim / Interest | Status | Voting Rights |
|-------|------------------|-------------------------------|--------|---------------|
|       |                  | Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan.  Consistent with the foregoing, each Holder of an Opt-Out Indirect Claim may elect to pursue recovery on account of its Indirect Claim from any of the Released Parties. Holders of Opt-Out Indirect Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust or the GUC Trust. |        |               |
| 11    | Interests in the Debtor | On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive or retain any property on account of such Interests. | Impaired | Not Entitled to Vote (Deemed to Reject) |

## RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN PLAN

Please be advised that the Plan contains certain release, injunction, and exculpation provisions, which will become effective if the Plan is approved, and are set forth in Article IX of the Plan and described in Article IV.B of the Plan and Article IV.C of the Disclosure Statement. Such provisions include the following:[3]

### A.    *Estate Release*

**As of the Final Payment Date, except for the claims or theories of recover or remedies distributed to or retained by Holders of Opt-Out GUC Claims, Holders of Opt-Out PI/WD Claims, and Holders of Opt-Out Indirect Claims, and except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns, including the Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during**

---

[3]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect Your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  The Plan Proponents urge all Holders to read through the entire Plan and Disclosure Statement, plus any additional and related documentation.

the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in the Plan shall not be construed to release any Insurance Actions or any post-Effective Date obligations under the Estate Party Settlement or any document, instrument, or agreement executed to implement the Estate Party Settlement. If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.C shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts. Any Released Party may enforce the Estate Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose. The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

### B.    *Consensual Claimant Release*

As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in this Article IX.D shall not, and shall not be construed to:

11

(a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.D shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

### C.     *Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9*

As of the Final Payment Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Channeled GUC Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.E shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.

D.    *Exculpation*

As of the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

E.    *Channeling Injunction*

Subject to the terms of <u>Article IX.I.5</u>, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, (a) the sole recourse of any Holder of a Channeled PI/WD Trust Claim that is eligible for compensation under the PI/WD Trust Distribution Procedures on account of such Channeled PI/WD Trust Claim shall be to and against the PI/WD Trust pursuant to the PI/WD Trust Documents, and such Holder shall have no right to assert such Channeled PI/WD Trust Claim or any Claim against the Debtor against any Released Party, and (b) the sole recourse of any Holder of a Channeled GUC Trust Claim that is eligible for compensation under the Plan and the GUC Trust Agreement on account of such Channeled GUC Trust Claim shall be to and against the GUC Trust, and such Holder shall have no right to assert such Channeled GUC Trust Claim or any Claim against the Debtor against any Released Party. Accordingly, on or after the Effective Date, and subject to the terms of <u>Article IX.I.5</u>, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:

    (a)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;

13

(b)      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;

(c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;

(d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or

(e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Trusts, except in conformity and compliance with the Plan Documents with respect to any such Channeled Claim.

F.      *Channeling Injunction (Reservations)*

Notwithstanding anything to the contrary in this <u>Article IX.I</u>, this Channeling Injunction shall not enjoin:

(a)      the rights of Holders of Channeled PI/WD Trust Claims to assert such Claims against the PI/WD Trust in accordance with the PI/WD Trust Distribution Procedures;

(b)      the rights of Holders of Channeled GUC Trust Claims to assert such Claims against the GUC Trust in accordance with the Plan and the GUC Trust Agreement;

(c)      the rights of Holders of Channeled Claims to assert such Claims against any Released Party if the Channeling Injunction is terminated under <u>Article IX.I.5</u>;

(d)      the Trusts from enforcing their rights under the Plan and the Confirmation Order;

     (e)     **the rights of the Trusts to prosecute any action against an Insurance Company based on or arising from a PI/WD Insurance Policy or a GUC Insurance Policy;**

     (f)     **the rights of the Trusts to prosecute any Retained Estate Causes of Action; and**

     (g)     **the rights of Holders of Channeled Claims to seek recovery from any Person, Entity, or Governmental Unit that is not a Released Party on account of their Channeled Claims or any other claim or Cause of Action.**

### G.    *Channeling Injunction (Enforcement)*

**Any Released Party may enforce the Channeling Injunction before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.**

### H.    *Channeling Injunction (Termination)*

**The Channeling Injunction and all protections afforded to the Released Parties set forth in this <u>Article IX.I</u> shall terminate automatically (or not take effect) as to the Holder of any Channeled Claims if a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by both the PI/WD Trustee and GUC Trustee in accord with <u>Article IV.B.2</u>, or if the Estate Release or the Consensual Claimant Release become void under <u>Article IV.B.7</u>, <u>Article IV.B.9</u> or <u>Article IV.B.12</u>.**

### I.    *Channeling Injunction (Tolling of Statute of Limitations)*

**While the Channeling Injunction is in effect as to any Channeled Claim, and for ninety (90) days following the termination of the Channeling Injunction under <u>Article IX.I.5</u>, the running of any relevant Statute of Limitations shall be tolled as to any Channeled Claim.  Upon the termination of the Channeling Injunction, the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.**

## <u>COPIES OF PLAN AND DISCLOSURE STATEMENT</u>

If You would like to review the Plan and Disclosure Statement or obtain a Solicitation Package or have questions regarding the procedures and requirements for objecting to the Plan, You may contact the Solicitation Agent, Verita Global, by:  (a) calling the Solicitation Agent at (866) 967-0491 (Toll-Free) or +1 (310) 751-2691 (International); (b) visiting https://veritaglobal.net/tehum; (c) submitting an inquiry at http://www.veritaglobal.net/tehm/inquiry; (d) emailing Your request to

tehuminfo@veritaglobal.com; or (e) writing to Tehum Care Services, Inc., Ballot Processing Center, c/o Verita Global, 222 N. Pacific Coast Hwy., Ste. 300, El Segundo, CA  90245.  The Disclosure Statement, the Plan, and the Solicitation Procedures Order are on file with the Clerk of the Bankruptcy Court, Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002, and may be examined by parties in interest by visiting the Office of the Clerk of the Bankruptcy Court during business hours or viewed on the Solicitation Agent's website (https://www.veritaglobal.net/Tehum).

> **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT AT THE NUMBER OR ADDRESS SPECIFIED ABOVE**.

Dated:  November [●], 2024

Respectfully Submitted,

David J. Molton (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Meghan McCafferty (*pro hac vice*)
Amir Shachmurove (*pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email:  dmolton@brownrudnick.com
egoodman@brownrudnick.com
cmoxley@brownrudnick.com
gcicero@brownrudnick.com
mmccafferty@brownrudnick.com
ashachmurove@brownrudnick.com

- and -

Michael W. Zimmerman
**BERRY RIDDELL LLC**
6750 E. Camelback Road, Suite #100
Scottsdale, AZ 85251
Telephone: (480) 385-2727
Email:  mz@berryriddell.com

*Counsel to the Tort Claimants' Committee*

Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
**STINSON LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:     (816) 842-8600
Facsimile:      (816) 691-3495
Email:  nicholas.zluticky@stinson.com
          zachary.hemenway@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

Jason S. Brookner (TX Bar No. 24033684)
Micheal W. Bishop (TX Bar No. 02354860)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED LLP**
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:     (713) 986-7127
Facsimile:      (713) 986-5966
Email:  jbrookner@grayreed.com
          mbishop@grayreed.com
          akaufman@grayreed.com
          lwebb@grayreed.com
          acarson@grayreed.com

*Counsel to the Debtor and Debtor in Possession*

**<u>Exhibit A</u>**

**Assumed and Assigned Contracts**

**Exhibit 4-5**

**Cover Letter and Recommendation of the Official Committee of Tort Claimants**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**COVER LETTER AND RECOMMENDATION**
**OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**

You are receiving this letter because You are, or may be, a holder of a Personal Injury or Wrongful Death Claim or a PI/WD Claim. As such, You are entitled to vote to accept or reject the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (as it may be amended, modified, or supplemented from time to time, the "**Plan**").[2] You should read this letter and the enclosed materials carefully and discuss them with Your legal, financial, and tax advisors. If You do not have an attorney, You may wish to consult with one.

The Official Committee of Tort Claimants or the "**TCC**" was appointed in the above-captioned chapter 11 case to represent the interests of tort claimants. As a threshold matter, the TCC acknowledges that no form of monetary compensation can adequately compensate someone for the loss of a father, a mother, a son, or a daughter. Many of the tort claimants in this case suffered serious and devastating injuries while incarcerated.

As You may know, after the TCC was appointed, the TCC fought for the dismissal of this Chapter 11 Case. *See* Docket Nos. 1260 & 1404. Many *pro se* claimants joined the TCC's motion, as did the American Civil Liberties Union, the Center for Constitutional Rights, Public Justice, Rights Behind Bars, The Human Rights Defense Center, and the UC Berkeley Center for Consumer Law & Economic Justice (*see* Docket No. 1393). The TCC's advocacy was recognized by United States Senator Elizabeth Warren. *See* Docket No. 1386-15. The TCC also opposed the Rule 9019 settlement proposed by the Debtor and the UCC. *See* Docket No. 1386.

The Bankruptcy Court, after hearing testimony from various parties, denied the motion to approve the Rule 9019 settlement (*see* Docket No. 1505), and the Bankruptcy Court also denied the TCC's motion to dismiss this case (*see* Docket No. 1506). After the Bankruptcy Court ruled,

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

the TCC asked the United States District Court for the Southern District of Texas to intervene and hear its appeal, but that request was denied on June 21, 2024.

Given the Bankruptcy Court's and the District Court's rulings, the TCC reached the conclusion that dismissal does not appear to be an option. The TCC, therefore, had to find a path forward in this case that does not involve dismissal. The TCC agreed to participate in a mediation with the Debtor and the UCC, but the TCC had several requirements for any settlement.

**First**, the TCC would not and does not support a chapter 11 plan or settlement conditioned on the approval of non-consensual third-party releases or their equivalent. Such releases are unlawful. Thus, any settlement conditioned upon the approval of such releases would be illusory and would only accomplish delay. For the TCC to support any plan, it would have to avoid the delay that would result from years of appeals so that plan payments can begin in 2025. The TCC places a premium on time and, therefore, prefers a plan structure that is designed to deliver compensation claimants in the near term. The proposed Plan that You are being asked to consider does not include nonconsensual third-party releases or their equivalent and is intended to expedited payments to Holders of allowed claims.

**Second**, the TCC would not and does not support a chapter 11 plan or settlement predicated on a "bankruptcy discount." The Debtor in this case was created through a divisional merger and has no operating assets. But Corizon Health Services, Inc., the Debtor's predecessor in interest, did have operating assets and meaningful operations prior to the divisional merger. While Corizon Health Services, Inc. was not a Fortune 50 company—*i.e.*, a company that by all accounts can easily pay all its debts in full as they arise in the ordinary course of business—the TCC was unwilling to give any credit to the use of the so-called "Texas Two-Step." The settlement proposed here must be considered "fair and reasonable" on its own terms and based on the willingness of claimants to support it and not because the settlement is taking place in a bankruptcy case.

The plan architecture created by the TCC facilitates a consensual resolution of this case consistent with the foregoing objectives. Under the Plan, Holders of personal injury or wrongful death claims (referred to herein as "**PI/WD Claims**") will be afforded three options for liquidating their claims against the Debtor. If any one of these three options is acceptable to You, then You should vote to **ACCEPT** the Plan on Your Ballot.

**The Settlement Trust Payment Option**

**First**, Holders of PI/WD Claims or "**PI/WD Claimants**" may elect to participate in the plan settlement negotiated by the TCC. The Plan provides for the creation of a settlement trust for PI/WD Claimants (the "**PI/WD Trust**"). The PI/WD Trust will assume the Debtor's obligation to pay the PI/WD Claims asserted by PI/WD Claimants who consent to the Consensual Claimant Release under the Plan. Claimants who do **not** consent to this release will not be eligible to receive a distribution from the PI/WD Trust on account of their PI/WD Claims.

The PI/WD Trust will be funded with cash payments totaling $25 million, plus interest, a 50/50 allocation of the Debtor's Employee Retention Credits, and a 50/50 allocation of the Debtor's remaining assets (collectively, the "**PI/WD Trust Assets**"). The TCC calculates that this represents roughly a **_300%_** increase in funding to pay PI/WD Claims relative to prior iterations of

the chapter 11 plan and settlement proposed in this case that the TCC did not support.  The cash payments will be contributed to the PI/WD Trust over thirty (30) months following the Effective Date.

The PI/WD Trust Assets will be allocated among the Holders of allowed PI/WD Claims using trust distribution procedures (the "**PI/WD Trust Distribution Procedures**" or "**TDPs**").  The TDPs, which are set forth in the Disclosure Statement and are attached to the Plan, include a claims matrix and scaling factors that will be used to assign claim values to each eligible PI/WD Claim.  For example, a PI/WD Claim based on wrongful death will be assigned a dollar value between $1.2 million and $1.597 million.

The PI/WD Trust Assets will be allocated on a *pro rata* basis to the Holders of allowed claims.  For example, if the total amount of all allowed claims is $90 million, and the PI/WD Trust Assets available for distribution are worth $30 million, then each claimant would receive distributions equal to 33.3% of the value of his or her claim ($30 million / $90 million = 33.3%).  The trust assets are the numerator and the total amount of allowed claims is the denominator.  In this scenario (*i.e.*, assuming a payment percentage of 33.3%), the Holder of an allowed PI/WD Claim for wrongful death valued at $1.2 million would receive payments totaling $400,000.

Only claimants who have timely filed individual proofs of claim in the Chapter 11 Case will be eligible to participate in the PI/WD Trust.  No additional trust funding is contemplated—*i.e.*, the PI/WD is a limited fund.  If the universe of eligible claims unexpectedly expands after the Disclosure Statement is approved, then claimants who timely filed proofs of claim would see their recoveries diluted.  The PI/WD Trust guardrails and eligibility criteria are intended to avoid such an outcome and ensure that expectations are consistent with actual outcomes.

The Disclosure Statement includes a range of possible payment percentages so that claimants will understand what their likely recoveries will be from the PI/WD Trust.  Until all claims are allowed, and all trust assets are liquidated, the TCC cannot offer an amount certain for any individual claim.  However, since at least $25 million of the PI/WD Trust Assets are cash contributions, the TCC can offer a "high" and a "low" with some degree of certainty given the current claimant population.  One of the reasons why the TCC insisted on cash funding for the PI/WD Trust was so that the TCC could offer PI/WD Claimants a fair sense of their likely recoveries from the PI/WD Trust prior to plan voting and, more importantly, before PI/WD Claimants agree to the Consensual Claimant Release.

PI/WD Claimants who elect to participate in the PI/WD Trust can pursue recoveries from other co-liable parties, including governmental claimants.  Participating in the PI/WD Trust does not cut off or limit a PI/WD Claimant's ability to pursue such recoveries.  Participating in the PI/WD Trust is akin to entering into a good faith settlement with one of several defendants in the tort system.  The plaintiff can continue to pursue co-liable defendants that do not settle.

However, PI/WD Claimants **cannot** "Opt Out" of the Consensual Claimant Release under the Plan and participate in the PI/WD Trust.  Participating in the PI/WD Trust is akin to entering into a voluntary settlement with the Settling Parties and their insiders and affiliates.  The Settling Parties and their non-debtor insiders and affiliates will **not** fund the settlement payments unless they receive a release similar in scope to the release that a claimant would be required to sign as a

3

condition to entering into a voluntary settlement outside of bankruptcy.  The Consensual Claimant Release mirrors this type of release.

The TCC anticipates that most PI/WD Claimants will elect to participate in the PI/WD Trust and will not "Opt Out."  This will afford such claimants with the ability to recover meaningful compensation from the Debtor in the near term and, if available, leave open the possibility of recovering additional amounts from other potentially liable parties.  PI/WD Claimants that are considering this option should carefully review the Disclosure Statement and the TDPs and consult with their legal counsel before making any decisions.

### The Insurance Opt Out Option

**Second**, Holders of PI/WD Claims may elect to pursue insurance recoveries in the tort system.  This is referred to herein as the "**Insurance Opt Out**" and is further describe in Article IV.C of the Plan.  Claimants who make this election may be entitled to seek a recovery on account of their PI/WD Claims from available insurance coverage in the tort system and may name the PI/WD Trust as a defendant in that litigation, *provided*, *however*, that these claimants may not name a Released Party as a defendant and these claimants will not receive a distribution from the PI/WD Trust so long as they remain "Insurance Opt Outs."

Claimants who make this election will still be deemed to provide the Consensual Claimant Release and are not *true* "Opt Outs" in this respect.  Rather, their recoveries will be limited to available insurance coverage, if any, unless they elect to return or are deemed to return to the PI/WD Trust in accordance with the TDPs.  By providing the Consensual Claimant Release, these claimants will have the ability to test the waters in the civil justice system to pursue insurance recoveries while, at the same time, retaining an ability to return to the PI/WD Trust under certain circumstances.

The TCC anticipates that PI/WD Claimants who make this election will promptly enter into mediation with potentially responsible insurers and other parties that may be co-liable for the applicable PI/WD Claims and that are also insureds under the policies.  PI/WD Claimants that are considering this option should carefully review the Disclosure Statement and the TDPs and consult with their legal counsel before making any decisions.

The inclusion of the Insurance Opt Out was important to the TCC because it should provide PI/WD Claimants who have access to significant insurance recoveries with the ability to obtain those recoveries in a manner similar to what could happen if this Chapter 11 Case were converted to chapter 7 and no plan is confirmed.  Thus, the Plan supported by the TCC and the UCC should satisfy the so-called "best interests" test under the Bankruptcy Code.

### The True "Opt Out" to the Civil Justice System

**Third**, Holders of PI/WD Claims may elect to "Opt Out" entirely of the settlement and pursue claims against the Released Parties in the tort system.  These claims are referred to as "**Opt-Out PI/WD Claims**" or *true* "Opt Outs."  Holders of Opt Out PI/WD Claims will *not* receive any portion of the PI/WD Trust Assets.

Holders of Opt Out PI/WD Claims will have the ability to assert claims against YesCare, Corp., CHS TX, Inc., and other alleged successor entities based on the doctrine of successor liability.  This is set forth in Article III.D and Article IX.K of Plan and the Disclosure Statement so that there is no ambiguity on this issue.  Holders of Opt Out PI/WD Claims, however, will **not** have the ability to assert avoidance actions, including fraudulent transfer claims, against the Released Parties because those causes of action will be settled under the Estate Party Settlement.

Holders of Opt-Out PI/WD Claims will **not** have their recoveries capped by the TDPs. Instead, they will have to litigate their claims on the merits and prevail in the civil justice system and then seek to collect.  Claimants who make this election may face years of litigation and appeals and will **not** have the ability to return to the PI/WD Trust under any circumstances.  The inclusion of this option in the plan architecture ensures that like any settlement offer made outside of bankruptcy, claimants can reject the proposed settlement and pursue their claims in the tort system.

Because the Plan contains a true "Opt Out," the Consensual Claimant Release is, from the TCC's perspective, consensual.  PI/WD Claimants that are considering this option should carefully review the Disclosure Statement and the TDPs and consult with their legal counsel before making any decisions.

Whether the Plan will be confirmed and whether the settlement negotiated by the TCC and the UCC will go into effect will depend on the level of participation in the settlement itself.  For example, if all PI/WD Claimants elect to "Opt Out" and do not provide the Consensual Claimant Release, there would be no point to YesCare and its non-debtor insiders and affiliates funding the settlement.  Only PI/WD Claimants who provide the Consensual Claimant Release can recover from the PI/WD Trust.  The Settling Parties and their non-debtor insiders and affiliates could not reasonably be expected to fund a settlement trust if there are no beneficiaries.

Likewise, if the Settling Parties and their non-debtor insiders and affiliates were not willing to fund the settlement, there would be no reason for any claimants to provide the Consensual Claimant Release as the PI/WD Trust would lack sufficient funding to pay claims.  If the PI/WD Trust had no funding and could not make any distributions, there would be no reason for any PI/WD Claimant to provide a release to be eligible to participate and become a beneficiary of the PI/WD Trust.  The TCC and the UCC designed the Plan so that the trust funding determines the level of participation.

To be fair to the Settling Parties and their non-debtor insiders and affiliates, if the level of participation in the PI/WD Trust is too low, the Settling Parties may elect to terminate the settlement prior to the hearing on the confirmation of the Plan.  This walk away right is set forth in Article IV.B.5 of the Plan and is triggered more than 5% in the number of current Holders of PI/WD Claims who are entitled to vote on the Plan elect to "Opt Out" of the Consensual Claimant Release.[3]

---

[3]  The Estate Party Settlement does **not** terminate automatically if more than 5% "Opt Out."  The Settling Parties could waive and elect to go forward with the settlement.  The Settling Parties, like the creditors here, will get to make an informed decision.

The election to "Opt Out" must be made **before** the voting deadline established by the Court. Thus, the Settling Parties will know the scope of the Consensual Claimant Release before the Confirmation Hearing and can make an informed decision based on the voting results. Claimants who do not "Opt Out" will be deemed to provide the Consensual Claimant Release. If the Settling Parties elect to terminate the settlement, then the Chapter 11 Case may be dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

Parties who want to "Opt Out" may still decide to vote in favor of and **ACCEPT** the Plan. Opting Out and voting in favor of the Plan are **two** separate things. Parties who elect to "Opt Out," which is their right, may support the confirmation of the Plan because it may present the fastest path to pursue claims in the tort system.

If the Plan is confirmed, "Opt Outs" will **not** face litigation over whether their claims against YesCare Corp., CHS TX, Inc. or any other alleged successor entity asserted under the doctrine of successor liability are estate causes of action that can be settled by the Debtor's estate. If the Plan is confirmed, "Opt Outs" will be free to pursue claims under the doctrine of successor liability. Parties who want the PI/WD Trust to be funded and go into effect may also want to vote in favor of and **ACCEPT** the Plan because if the Plan is not confirmed, then there will be no PI/WD Trust.

At the TCC's insistence, the Plan will be solicited using a 90-day solicitation period. This extended period is intended to ensure that claimants who are currently incarcerated have adequate time to receive and review the Disclosure Statement and TDPs and make an informed decision. The TCC can support the proposed settlement so long as the vast majority of the tort claimants in this case support it and do not fully "Opt Out" of the Consensual Claimant Release, and no one is having their rights taken from them on an involuntary basis.

The TCC has gone to considerable lengths to propose a Plan that is satisfactory to the tort claimants in this case. All claimants entitled to vote on the Plan should carefully review the Disclosure Statement and consult with their legal counsel before making any decisions.

This case is not what it once was. The Bankruptcy Court's denial of the Rule 9019 motion was a significant event and forced other parties to meaningfully engage with the TCC. Tort victims are represented by an official committee that includes former incarcerated individuals and the family members of incarcerated individuals who died in prison. And the TCC is represented by a group of highly skilled and passionate professionals who are deeply committed to doing what is right in this case. The TCC believes that the Plan presents the best possible outcome to this Chapter 11 Case and urges all claimants to vote to **ACCEPT** it.

Sincerely,

The Official Committee of Tort Claimants

**Exhibit 4-6**

**Cover Letter and Recommendation of the Official Unsecured Creditors' Committee**

**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**COVER LETTER AND RECOMMENDATION**
**OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

You are receiving this letter because You are, or may be, a holder of a General Unsecured Claim which is not a PI/WD Claim, an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, or an Other Priority Claim. As such, You are entitled to vote to accept or reject the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (as it may be amended, modified, or supplemented from time to time, the "**Plan**").[2] You should read this letter and the enclosed materials carefully and discuss them with Your legal, financial, and tax advisors. If You do not have an attorney, You may wish to consult with one.

The Official Committee of Unsecured Creditors or the "**UCC**" was appointed in the above-captioned chapter 11 case to represent the interests of all unsecured creditors in this case.

The UCC has been fighting on behalf of unsecured creditors since its appointment. The UCC's objections and arguments prevented insiders of the Debtor from receiving releases and other benefits in return for lending money to the Debtor during the pendency of this case. Most notably, the UCC was successful in convincing the Court that insiders of the Debtor should not receive an interest in the Debtor's potential claims against insiders, including potential claims against the very company that was seeking to make a loan to the Debtor.

Following that victory, the UCC gathered hundreds of thousands of documents in order to evaluate the Debtor's claims against its principals and affiliates. The investigation was a lengthy and arduous one, as the potential targets of the investigation fought the UCC's efforts throughout. However, the UCC was able to identify estate claims against these parties it believes have significant value for the Debtor.

The UCC believes the Plan represents the maximum value the estate can receive for those claims and the best opportunity to get money into the hands of unsecured creditors. We have reached this conclusion for multiple reasons.

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

**First**, the Plan is structured to address concerns of, and garner the full support of, the UCC, the Tort Claimant's Committee or the "**TCC**," and the Debtor.  This means our committee, which has a fiduciary obligation to act in the best interest of all creditors, the TCC, which has a similar obligation specific to tort creditors, and the Debtor all are behind the Plan and will work together to support its confirmation.  This alignment, which was reached after lengthy mediation, is significant because it not only shows the Plan is beneficial to creditors, it helps make confirmation more likely and less expensive to the estate.

**Second**, the UCC believes the terms of the settlement incorporated into the Plan represent a fair and reasonable value for the estate's causes of action.  Based on the UCC's calculations, the creditors in this case will receive as much as $80 million in settlement funds, retained assets, and forgiven loan obligations, in addition to the abandonment of millions in claims.  The UCC believes these amounts are a significant value for the estate's claims, especially considering the complex legal theories, cost of litigation, and other risks of proceeding.

**Third**, the Plan structure created by the UCC and the TCC helps to avoid delays associated with appeal or other legal complications that could make it impossible to begin plan payments in 2025.  Implementing the Plan in a timely manner was a priority for the committees, and the Plan structure, which does not include non-consensual third-party releases or otherwise implicate any concerns arising out of the Supreme Court's *Purdue* decision, will places the parties in the best position for those distributions to begin on the schedule the committees have fought to protect.

Under the Plan, Holders of General Unsecured Claims or "**GUC Claims**" will be afforded three options for liquidating their claims against the Debtor.  If any one of these three options is acceptable to You, then You should vote to **ACCEPT** the Plan on Your Ballot.

**The Settlement Trust Payment Option**

**First**, Holders of GUC Claims or "**GUC Claimants**" may elect to participate in the plan settlement negotiated by the UCC.  The Plan provides for the creation of a settlement trust for GUC Claimants (the "**GUC Trust**").  The GUC Trust will assume the Debtor's obligation to pay the GUC Claims asserted by GUC Claimants who consent to the Consensual Claimant Release under the Plan.  Claimants who do **not** consent to this release will not be eligible to receive a distribution from the GUC Trust.

The GUC Trust will be funded with cash payments totaling $25 million, plus interest, a 50/50 allocation of the Debtor's Employee Retention Credits, and a 50/50 allocation of the Debtor's remaining assets (collectively, the "**GUC Trust Assets**").  The cash payments will be contributed to the GUC Trust over thirty (30) months following the Effective Date.

The GUC Trust Assets will be allocated among the Holders of allowed GUC Claims using trust distribution procedures (the "**GUC Trust Distribution Procedures**" or "**GUC TDPs**").  The GUC TDPs outline how GUC Claims will be allowed and paid.

The GUC Trust Assets will be allocated on a *pro rata* basis, net of costs to administer the trust, to the Holders of allowed claims.  For example, if the total amount of all allowed claims is $90 million, and the net GUC Trust Assets available for distribution are worth $30 million, then each claimant would receive distributions equal to 33.3% of the value of his or her claim ($30

million / $90 million = 33.3%). The trust assets are the numerator and the total amount of allowed claims is the denominator. In this hypothetical scenario (*i.e.*, assuming a payment percentage of 33.3%), the Holder of an allowed GUC Claim valued at $1.2 million would receive payments totaling $400,000.

Only claimants who have filed individual proofs of claim in the Chapter 11 Case will be eligible to participate in the GUC Trust. No additional trust funding is contemplated—*i.e.*, the GUC Trust is a limited fund. If the universe of eligible claims unexpectedly expands after the Disclosure Statement is approved, then claimants who timely filed proofs of claim would see their recoveries diluted. The GUC Trust guardrails and eligibility criteria are intended to avoid such an outcome and ensure that expectations are consistent with actual outcomes.

GUC Claimants who elect to participate in the GUC Trust can pursue recoveries from other co-liable parties, including governmental claimants, who are not released in the Consensual Claimant Release. Participating in the GUC Trust is akin to entering into a good faith settlement with one of several defendants in the tort system. The plaintiff can continue to pursue co-liable defendants that do not settle.

However, GUC Claimants **cannot** "Opt Out" of the Consensual Claimant Release under the Plan and participate in the GUC Trust. Participating in the GUC Trust is akin to entering into a voluntary settlement with YesCare and its insiders and affiliates. YesCare will **not** fund the settlement payments unless it and non-debtor insiders and affiliates receive a release similar in scope to the release that a claimant would be required to sign as a condition to entering into a voluntary settlement outside of bankruptcy. The Consensual Claimant Release mirrors this type of release.

The UCC anticipates that most GUC Claimants will elect to participate in the GUC Trust and will not "Opt Out." This will afford such claimants with the ability to recover meaningful compensation from the Debtor in the near term and, if available, leave open the possibility of recovering additional amounts from other potentially liable parties. GUC Claimants that are considering this option should carefully review the Disclosure Statement and the TDPs and consult with their legal counsel before making any decisions.

### The True "Opt Out" to the Civil Justice System

**Second**, Holders of GUC Claims may elect to "Opt Out" entirely of the settlement and pursue claims against the Released Parties in the tort system. These claims are referred to as "**Opt-Out GUC Claims**" or *true* "Opt Outs." Holders of Opt Out GUC Claims will *not* receive any portion of the GUC Trust Assets.

Holders of Opt Out GUC Claims will have the ability to assert claims against YesCare, CHS TX, and other parties based on the doctrine of successor liability. This is set forth in Article III.D and Article IX.K of Plan and the Disclosure Statement so that there is no ambiguity on this issue. Holders of Opt Out GUC Claims, however, will **not** have the ability to assert avoidance actions, including fraudulent transfer claims, against the Released Parties because those causes of action will be settled under the Estate Party Settlement.

Holders of Opt-Out GUC Claims will **not** have their recoveries determined by the terms of the Plan and GUC Trust Agreement.  Instead, they will have to litigate their claims on the merits and prevail in the civil justice system and then seek to collect.  Claimants who make this election will likely face years of litigation and appeals and will **not** have the ability to return to the GUC Trust under any circumstances.  The intent of this option is to treat the settlement incorporated into the Plan similar to any settlement offer made outside of bankruptcy, and allow claimants who so desire to reject the Plan Proponents' proposed settlement and pursue their claims in the tort system.

Because the Plan contains a true "Opt Out," the Consensual Claimant Release is, from the UCC's perspective, consensual.  GUC Claimants that are considering this option should carefully review the Disclosure Statement and the Plan and consult with their legal counsel before making any decisions.

Whether the Plan will be confirmed and whether the settlement negotiated by the TCC and the UCC will go into effect will depend on the level of participation in the settlement itself.  YesCare could not reasonably be expected to fund a settlement trust if there are no beneficiaries, and if YesCare was not willing to fund the settlement, there would be no reason for any claimants to provide the Consensual Claimant Release as the GUC Trust would lack sufficient funding to pay claims.

To be fair to YesCare, if the level of participation is too low, YesCare may elect to terminate the settlement prior to the hearing on the confirmation of the Plan.  This walk away right is set forth in Article IV.B.5 of the Plan and is triggered if more than 5% in the number of current Holders of PI/WD Claims elect to "Opt Out" of the Consensual Claimant Release.[3]  This 5% requirement does not apply to Opt-Out GUC Claims.

The election to "Opt Out" must be made *before* the voting deadline established by the Court.  Thus, YesCare will know the scope of the Consensual Claimant Release before the Confirmation Hearing and can make an informed decision based on the voting data.  Claimants who do not "Opt Out" will be deemed to provide the Consensual Claimant Release.  If YesCare elects to terminate the settlement, then the Chapter 11 Case may be dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

Parties who want to "Opt Out" may still decide to vote in favor of and **ACCEPT** the Plan.  Opting Out and voting in favor of the Plan are *two* separate things.  Parties who elect to "Opt Out," which is their right, may support the confirmation of the Plan because it may present the fastest path to pursue claims in the tort system.

If the Plan is confirmed, "Opt Outs" will **not** face litigation over whether their claims against YesCare, to the extent asserted under the doctrine of successor liability, are estate causes of action that can be settled by the Debtor's estate.  If the Plan is confirmed, "Opt Outs" will be free to pursue claims under the doctrine of successor liability.  Likewise, parties who want the

---

3  The Estate Party Settlement does **not** terminate automatically if more than this 5% "Opt Out."  YesCare could waive and elect to go forward with the settlement.  YesCare, like the creditors here, will get to make an informed decision.

GUC Trust to be funded and go into effect may also want to vote in favor of and **ACCEPT** the Plan because if the Plan is not confirmed, then there will be no GUC Trust.

The UCC understands that this case has been a difficult and lengthy process for all creditors.  The UCC and its professionals take their fiduciary obligations seriously, and have worked to achieve an outcome that provides a fair and reasonable settlement and a structure that best protects the interests of all claimants in this case.  <u>The UCC believes that the Plan presents the best possible outcome to this Chapter 11 Case and urges all claimants to vote to **ACCEPT** it.</u>

Sincerely,


The Official Committee of Unsecured Creditors