## EXHIBIT C

COOPERATION AGREEMENT

**COOPERATION AGREEMENT**

In connection with the *Joint Chapter 11 Plan of The Tort Claimants' Committee, Official Committee of Unsecured Creditors and the Debtor*, dated as of November 13, 2024, as the same may from time to time be amended or modified and as confirmed by order of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Plan**[1]"), this agreement ("**Agreement**"[2]) is made, effective as of the Effective Date of the Plan, by and among (i) the GUC Trust (the "**GUC Trust**") and personal injury or wrongful death trust (the "**PI/WD Trust**") (each a "**Party**" or collectively the "**Parties**" or the "**Trusts**").   Consistent with the Trust Distribution Procedures, the Parties hereby execute this Agreement which governs the Retained Causes of Action and other joint assets to be received by and administered by the Trusts under the Plan.

**RECITALS**

**WHEREAS**, the GUC Trust's purpose is to assume responsibility for Channeled GUC Trust Claims and, among other things: (1) to hold, preserve, maximize, and administer the GUC Trust Assets, (2) to liquidate the GUC Trust Assets, and (3) to administer, process, settle, resolve, liquidate, satisfy, and pay all Allowed Channeled GUC Trust Claims in a fair, consistent, and equitable manner in accordance with the terms of the GUC Trust Documents and the Plan.  The GUC Trust shall also have responsibility for the Retained Causes of Action (on behalf of itself and its beneficiaries as well as on behalf of the PI/WD Trust and its beneficiaries), subject to the provisions and consent rights of the PI/WD Trust, as set forth in in Article IV, subsection J of the Plan, with the net proceeds of such Retained Causes of Action to be split between the PI/WD Trust and the GUC Trust on a 50/50 basis.

**WHEREAS**, the PI/WD Trust's purpose is to assume responsibility for Channeled PI/WD Trust Claims, maximize the value of the PI/WD Insurance Action Recoveries, pursue the Retained PI/WD Trust Causes of Action, and, among other things:  (1) to hold, preserve, maximize, and administer the PI/WD Trust Assets, (2) to liquidate the PI/WD Trust Assets, and (3) to administer, process, settle, resolve, liquidate, satisfy, and pay all Allowed Channeled PI/WD Trust Claims in a fair, consistent, and equitable manner in accordance with the terms of the PI/WD Trust Documents and the Plan.  The PI/WD Trust shall also have rights with respect to the Retained Causes of Action, subject to the provisions and consent rights of the PI/WD Trust, as set forth in Article IV, subsection J of the Plan, with the net proceeds of such Retained Causes of Action to be split between the PI/WD Trust and the GUC Trust on a 50/50 basis.

**WHEREAS**, Article IV, subsection J of the Plan contemplates that a Cooperation Agreement will be executed by and between the GUC Trust and the PI/WD Trust to provide for the process whereby (i) the GUC Trustee (in its own capacity and as agent for the GUC Trust) may pursue Retained Causes of Action on behalf of the GUC Trust and the PI/WD Trust, and (ii) Retained Causes of Action may be commenced, prosecuted, and settled by the GUC Trust, with the prior written consent of the PI/WD trust; and (iii) the net proceeds of such Retained Causes of Action will be split between the PI/WD Trust and the GUC Trust on a 50/50 basis.  Subject to the Plan, and this Agreement, the GUC Trust shall retain and shall have, including through its authorized agents or

---

[1]   *See* D.I. 1815.

[2]   All capitalized terms not defined herein shall have their respective meanings as set forth in the Plan. *See* D.I. 1815.  For the avoidance of doubt, any provision herein that conflicts with the Plan, the meaning set forth in the Plan shall control.  *Id*.

representatives, the right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**WHEREAS**, in consideration of the above-stated premises, the mutual covenants contained herein, and for good and valuable consideration, the Parties agree as follows:

### ARTICLE I
### DUTIES OF THE TRUST

Section 1.1.    On and after the Effective Date, the GUC Trustee (in its own capacity and as agent for the PI/WD Trust), may pursue Retained Causes of Action on behalf of the GUC Trust and the PI/WD Trust.  Retained Causes of Action may be commenced, prosecuted, and settled by the GUC Trust, with the prior written consent of the PI/WD Trust, with the net proceeds of such Retained Causes of Action be split between the PI/WD Trust and the GUC Trust on a 50/50 basis.  The GUC Trust shall be required to obtain the written consent of the PI/WD Trust for any material matter, including the filing, prosecution, enforcement, abandonment, settlement, compromise, release, withdrawal, or litigation to judgment of the Retained Causes of Action which could affect the PI/WD Trust.

Section 1.2.    The PI/WD Trustee and the GUC Trustee shall confer in good faith regarding (i) the retention of professionals to represent the GUC Trust (in its own capacity and as agent for the PI/WD Trust) with respect to the Retained Causes of Action on behalf of the Trusts, and (ii) all matters relating to the administration of the Retained Causes of Action; *provided*, *however*, notwithstanding the foregoing, the GUC Trust shall be required to obtain the written consent of the PI/WD Trust for any material matter, including the filing, prosecution, enforcement, abandonment, settlement, compromise, release, withdrawal or litigation to judgment of the Retained Causes of Action, which could affect the PI/WD Trust.

### ARTICLE II
### MUTUAL EXCHANGE OF DOCUMENTS

Section 2.1.    On or before the date that is ninety (90) days after the Effective Date, which may be extended by agreement of the Trusts (the period ending on such date, the "**Transfer Period**"), the PI/WD Trust agrees to use commercially reasonable efforts to collect, copy, transfer, and/or assign to the GUC Trust in an agreed upon format, following a reasonable search, all documents, in its possession, custody and control (the "**PI/WD Documents**") requested by the GUC Trustee needed to effectuate the GUC Trust and  to prosecute the Retained Causes of Action.  On or before Transfer Date the GUC Trust agrees to use commercially reasonable efforts to collect, copy, transfer, and/or assign to the PI/WD Trust in an agreed upon format, following a reasonable search, all documents, in its possession, custody and control (the "**GUC Documents**") requested by the PI/WD Trustee needed to effectuate the PI/WD Trust.

Section 2.2.    On or before thirty (30) days after the Transfer Period (the "**Notice Date**"), the Trustees shall identify any PI/WD Documents and GUC Documents reasonably necessary for the prosecution of the Retained Causes of Action (collectively the "**Documents**").  The Documents shall be collected and preserved by the respective custodian, the GUC Trustee and the PI/WD Trustee prior

to the Effective Date, *provided however*, that if the PI/WD Trustee determines that the PI/WD Documents are no longer necessary to be preserved for any purpose other than the prosecution of the Retained Causes of Action, the PI/WD Trustee shall have the option to transfer the PI/WD Documents to the GUC Trustee and will have no further obligation to preserve such documents.   As soon as practicable after the Effective Date, the GUC Trustee and the PI/WD Trustee shall use commercially reasonable efforts to enter into written agreements to pay the reasonable expenses related to the review, production and/or storage of the Documents with each Trust bearing the cost of its own Documents.    To the extent that the GUC Trustee and the PI/WD Trustee are unable to reach agreement, the Trustees will work together to select an alternative custodian or custodians to maintain the Documents.   In the interim, all the Documents will be preserved.

Section 2.3.    Until the transfer of the Documents from the PI/WD Trust to the GUC Trust is complete and vice versa (for the avoidance of doubt this means the PI/WD Trust to the GUC Trust), the Trusts shall preserve, or cause to be preserved, the Documents.    After the transfer of the Documents from the GUC Trust to the PI/WD Trust and vice versa (for the avoidance of doubt this means the PI/WD Trust to the GUC Trust), the Trusts are no longer obligated to preserve the Documents.

Section 2.4.    Notwithstanding anything to the contrary herein, the GUC Trust, and PI/WD Trust, shall not be required, except by order of an appropriate court, to produce or make available for inspection:

    a.    any information that is subject to a valid privilege that is not shared by the each respective Trust; and

    b.    any information that the GUC Trustee and PI/WD Trustee are under a legal obligation, including due to personal privacy issues of an employee or contractual obligation, to refrain from providing to a third party absent subpoena or formal discovery request, whether or not privileged.

Section 2.5.    The GUC Trust shall use the Documents that are provided to the PI/WD Trust subject to any third-party confidentiality obligations, solely for the purposes of (a) commencing, prosecuting, and settling all Retained GUC Trust Causes of Action; (b) to administer, object to, and settle GUC Trust Claims; (c) dispose of GUC Trust Assets, (d) make distributions to Holders of Allowed GUC Trust Claims in accordance with the Plan and the GUC Trust Agreement, including the GUC Trust Distribution Procedures; and (d) carry out the provisions of the Plan relating to the GUC Trust and the GUC PI/WD Trust Claims.

The PI/WD Trust shall use the Documents that are provided to the GUC Trust subject to any third-party confidentiality obligations, solely for the purposes of the following:  the PI/WD Trust will have the exclusive authority and power to: among other things, (a) administer, object to, and settle Channeled PI/WD Trust Claims; (b) dispose of PI/WD Trust Assets, (c) make distributions to Holders of Allowed Channeled PI/WD Trust Claims in accordance with the Plan and the PI/WD Trust Agreement, including the PI/WD Trust Distribution Procedures; and (d) carry out the provisions of the Plan relating to the PI/WD Trust and the Channeled PI/WD Trust Claims, including commencing, prosecuting, and settling all Retained PI/WD Trust Causes of Action for the benefit Holders of Channeled PI/WD Trust Claims.

3

Section 2.7.    After the Effective Date, Documents shall be held by the respective Trusts. For the avoidance of doubt, the Trusts' possession of the Documents shall not result in the destruction or waiver of any applicable privileges.

Section 2.8.    In the event of a dispute between the Trusts during or after the Transfer Period regarding whether any document should be produced to the respective Trusts, or whether any information is subject to Section 1.4, such dispute shall be fully and finally resolved by a special discovery master mutually selected and agreed upon by the Trusts.   If the Parties cannot agree on the selection of a special discovery master, the Trusts shall petition the Bankruptcy Court or other court of competent jurisdiction to have one appointed with each Trust bearing its own costs.  If the dispute relates to the assertion of common interest privilege shared with a third-party, then the party asserting this privilege will notify the third-party of the dispute as soon as reasonably possible and the third-party will be permitted to join in defending the privilege as part of the dispute resolution process.   The special discovery master's fee and all costs incurred by a special discovery master in connection with resolving a dispute under this Section 1.8 shall be paid by the losing party with the losing party determined by the Court.

## ARTICLE III
## PRODUCTION OF DOCUMENTS
## IN RESPONSE TO A SUBPOENA OR COURT ORDER

Section 3.1.    To the extent a formal or informal document request, subpoena, or other demand for production of Documents related to a Retained Cause of Action and/or Estate Cause of Action is served upon the Debtor by any party in an action in which the Trust is a named party and the Trust is in possession, custody, or control of all or part of the responsive documents, the GUC Trust shall undertake to produce such documents instead of the Debtor upon written request to the GUC Trust by the Debtor, as applicable.  The GUC Trust shall bear the costs and expenses associated with such production.  Notwithstanding the foregoing, in the event that a Trustee requests production of documents from working files of Committee or Debtor professionals, the Trustee shall be responsible for reimbursing the responding professionals for reasonable and necessary fees and expenses incurred in responding to such request.

## ARTICLE IV
## MISCELLANEOUS

Section 4.1.    Preservation of Privileges and Defenses.

    a.    Any attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection, or privilege granted by joint defense, common interest, and/or other privilege or immunity of the Debtor relating, in whole or in part, to any Channeled GUC Trust Claim which was previously transferred to and vested in the GUC Trust shall remain effective. The transfers or assignment of any privileged information will vest solely in the GUC Trust and not the GUC TAC, any other Person, committee, or subcomponent of the GUC Trust, or any Person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Channeled GUC Trust Claim.

4

b.    Any attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection, or privilege granted by joint defense, common interest, and/or other privilege or immunity of the Debtor relating, in whole or in part, to any Channeled PI/WD Trust Claim which was previously transferred to and vested in the PI/WD Trust shall remain effective. The transfers or assignment of any privileged information will vest solely in the PI/WD Trust and not the TAC, any other Person, committee, or subcomponent of the PI/WD Trust, or any Person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Channeled PI/WD Trust Claim.

c.    Any privilege held by either Trust or Trustee] shall not be waived without the prior written consent of the other Party.

d.    The transfer or assignment of any privileged information to the Trustees shall not result in the destruction or waiver of any applicable privileges pertaining thereto. Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the Trustee to perform his or her duties to administer the Trust; (b) they are vested solely in the Trustee, on behalf of the Trust, and not in the TAC, or any other person, committee or subcomponent of the Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Trust Claim; and (c) the Trustee shall keep, handle and maintain such privileged information. Notwithstanding the foregoing, nothing shall preclude the Trustee from providing privileged information to any insurance company as necessary to preserve, secure, or obtain the benefit of any rights under any insurance policy.

e.    To the extent the Parties inadvertently transfer to the Trusts any documents to which a privilege or immunity attaches or which the Parties contend are exempted from being provided pursuant to Article I of this Agreement (an "**Inadvertently Provided Document**"), the Parties may, in writing following actual discovery of such inadvertent production, request the return of any Inadvertently Provided Document. A request for the return of an Inadvertently Provided Document shall identify the document inadvertently provided and the basis for withholding such document from production. If the Parties request the return, pursuant to this paragraph, of any Inadvertently Provided Document then in the custody of the Trust, the Trust shall within ten (10) business days (a) return or destroy the Inadvertently Provided Document and all copies thereof; (b) undertake reasonable measures to obtain or confirm the destruction of any copies it produced to other parties, and (c) destroy all notes or other work product reflecting the content of such Inadvertently Provided Document. The Trust may challenge such request in accordance with Section 1.8, but shall not contend that the provision of the document constituted a waiver of any applicable privilege or immunity.

Section 4.2.    Confidentiality. Documents submitted to the Trusts by a Claimant are for the sole benefit of the Trusts and not third parties or defendants. The Trusts will preserve the

5

confidentiality of such Claimant submissions and shall be governed by the confidentiality obligations of their respective Trust Agreements and TDPs as to any documents submitted by a Claimant.

Section 4.3.    Prohibition of Document Creation.  Nothing in this Agreement shall require any Party or any third party to create any new documents or to compile or organize any data contained in existing documents into any new documents.

Section 4.4.    Duty to Cooperate.  The Parties agree to cooperate reasonably and share information as necessary and appropriate to facilitate insurance billing by any of the Parties hereto, or the resolution of any insurance-related dispute, subject to appropriate protections for confidential information.   The Party seeking such information shall pay the other Party's (or Parties') reasonable expenses; *provided, however*, that if any other provision of this Agreement requires any other party to provide such information at their own expense, then such other provision shall control.

Section 4.5.    Expenses and Net Proceeds for Retained Causes of Action.  The PI/WD Trust shall not be required to advance any expenses associated with the GUC Trustee's pursuit of Retained Causes of Action without prior written consent of the PI/WD Trustee or the PI/WD TAC.  The proceeds of Retained Causes of Action shall, before being distributed to the GUC Trust and the PI/WD Trust, be allocated towards any and all fees, expenses, and any other costs associated with the pursuit, commencement, prosecution, or settlement of any Retained Causes of Action incurred by the GUC Trust and any professionals retained by the GUC Trust in connection with pursuit of such Retained Causes of Action, including legal fees and expenses (the **"Retained Causes of Action Professional Costs"**). Any proceeds of Retained Causes of Action, after having fully paid any and all Retained Causes of Action Professional Costs (the "**Net Proceeds**"), shall be distributed to the GUC Trust and the PI/WD Trust equally and on a 50/50 basis pursuant to the provisions of the Plan, and such Net Proceeds shall constitute the 50% interest in the proceeds of the Retained Causes of Action that is an asset allocated to the GUC Trust and the PI/WD Trust pursuant to the Plan.

Section 4.6.    [RESERVED]

Section 4.7.    Consultation & Consent.

    a.    The GUC Trustee shall consult with the PI/WD Trustee on decisions involving the pursuit of Retained Causes of Action, provide the PI/WD Trustee with at least quarterly updates and respond to reasonable inquiries and requests for information from the PI/WD Trustee.

    b.    The GUC Trustee shall obtain the written consent of the PI/WD Trustee prior to: (i) filing a complaint with respect to the Retained Cause of Action; (ii) abandoning a Retained Cause of Action; or (iii) entering into a settlement of a Retained Cause of Action.

Section 4.8.    Notices.  All notices, requests, or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be effective when either served by hand delivery, electronic mail, electronic facsimile transmission, express overnight courier service, or by registered or certified mail, return receipt requested, addressed to the parties at their respective addresses set forth below, or to such other address or addresses as any Party may later specify by written notice to the other Parties:

       a.       To TAC (PI/WD Trust):

       b.       To the GUC Trustee (GUC Trust):

Section 4.9.   Effectiveness.   This Agreement shall become effective on the Effective Date of the Plan.

Section 4.10.   Counterparts.   This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

Section 4.11.   Governing Law.   This Agreement shall be construed in accordance with the laws of the State of Delaware, without regard to any Delaware conflict of law principles that would result in the application of laws of any other jurisdiction.

Section 4.12.   Consent to Jurisdiction.   The Parties mutually agree that, as relates to the Parties' obligations under this Agreement, the Bankruptcy Court, or the District Court after all of the Debtors' chapter 11 cases are closed, shall retain jurisdiction over all matters regarding the interpretation, implementation, and enforcement of this Agreement and the Parties consent to personal jurisdiction and venue in the Bankruptcy Court, or the District Court after all of the Debtors' chapter 11 cases are closed.

Section 4.13.   Severability; Validity.   Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but to the extent that any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless doing so would alter the fundamental agreements expressed in this Agreement, and to such end, the provisions of this Agreement are agreed to be severable.

Section 4.14.   No Partnership Agreement.   Nothing contained in this Agreement shall create or be deemed to create an employment, agency, fiduciary, joint venture, or partnership relationship between any of the Parties, on the one hand, or any of such other Parties' employees, on the other hand.

Section 4.15.   No Waiver.   The Parties agree that no failure or delay by any Party in exercising any right, power, or privilege hereunder will operate as a waiver thereof, and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power, and privilege hereunder.

Section 4.16.   Entire Agreement.   This Agreement and the Plan contain the entire agreement of the Parties concerning the subject matter hereof and supersede all prior representations and agreements between or among the Parties as to such subject matter.   No modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the Parties unless approved in writing by the Parties.

Section 4.17.   Authorization.   Each of the undersigned individuals represents and warrants that he/she has the power and authority to enter into this Agreement and bind their respective companies or trust as its authorized representatives.

Section 4.18.   <u>Titles</u>.   The section titles used herein are for convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement.

Section 4.19.   <u>Binding Effect</u>.   The Parties agree that this Agreement is for the benefit of and shall be binding upon the Parties and their respective representatives, transferees, successors, and assigns.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective representatives thereunto duly authorized as of the Effective Date of the Plan.

**TRUSTEE:**

**DELAWARE TRUSTEE:**

**TAC MEMBER:**

**TAC MEMBER:**

**TAC MEMBER:**

**TAC MEMBER:**

**TAC MEMBER:**

**TAC MEMBER:**

8