## EXHIBIT H

GUC TRUST AGREEMENT

**TEHUM GUC LIQUIDATING TRUST AGREEMENT**

**Dated as of \_\_\_, 2024**

**PURSUANT TO THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF THE TORT CLAIMANTS' COMMITTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR FOR TEHUM CARE SERVICES, INC.**

**TABLE OF CONTENTS**

**Page**

ARTICLE I AGREEMENT OF TRUST ...................................................................2

    1.1        Creation and Name .....................................................2
    1.2        Purposes......................................................................2
    1.3        Transfer of Assets.......................................................2
    1.4        Acceptance of Assets and Assumption of Liabilities. ................................3
    1.5        Receipt of Proceeds ...................................................3
    1.6        Beneficiaries. .............................................................3
    1.7        Jurisdiction ................................................................4

ARTICLE II POWERS, TRUST ADMINISTRATION, AND REPORTING ..............4

    2.1        Powers. .......................................................................4
    2.2        General Administration. ............................................6
    2.3        Claims Administration. .............................................6
    2.4        Reporting. ...................................................................6

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS ...........................7

    3.1        Accounts. ....................................................................7
    3.2        Investment Guidelines. ..............................................7
    3.3        Payment of Operating Expenses.................................8

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE.................................................9

    4.1        Number ......................................................................9
    4.2        Term of Service. ........................................................9
    4.3        Compensation and Expenses of the Trustee...............10
    4.4        Standard of Care; Exculpation. ................................11
    4.5        Protective Provisions.................................................11
    4.6        Indemnification. .......................................................12
    4.7        Trustee Independence ...............................................13
    4.8        No Bond .....................................................................13
    4.9        Reliance by the Trustee .............................................13
    4.12       Delaware Trustee.......................................................14
    4.13       Trust Meetings...........................................................16
    4.14       Matters Requiring Consultation with TAC ................17
    4.15       Matters Requiring Consent of TAC ..........................17
    4.16       Trustee's and TAC's Employment of Professionals. ..................................17

ARTICLE V TAX MATTERS ..............................................................................18

    5.1        Treatment of Aggregate Settlement Consideration Transfer ......................18
    5.2        Income Tax Status. ....................................................18
    5.3        Tax Returns. ..............................................................18
    5.4        Withholding of Taxes and Reporting Related to GUC Trust Operations ...19
    5.5        Valuation ...................................................................19
    5.6        Expedited Determination of Taxes............................20

i

ARTICLE VI ..........................................................................................................................20

    6.1        Members; Action by Members. ..................................................................20
    6.2        Duties. .........................................................................................................20
    6.3        TAC Information Rights .............................................................................20
    6.4        [Reserved.] .................................................................................................20
    6.5        Term of Office. ...........................................................................................20
    6.6        Appointment of Successor. .........................................................................21
    6.7        Compensation and Expenses of the TAC. ...................................................21
    6.8        Procedures for Consultation with and Obtaining the Consent of the TAC. 21

ARTICLE VII GENERAL PROVISIONS ..........................................................................23

    7.1        Irrevocability .............................................................................................23
    7.2        Term; Termination. ....................................................................................23
    7.3        Amendments. ..............................................................................................23
    7.4        Severability. ...............................................................................................24
    7.5        Notices. .......................................................................................................24
    7.6        Successors and Assigns ..............................................................................25
    7.7        Limitation on GUC Trust Interests for Securities Laws Purposes ..............25
    7.8        Exemption from Registration .....................................................................25
    7.9        Entire Agreement; No Waiver .....................................................................25
    7.10      Headings. ....................................................................................................25
    7.11      Governing Law ...........................................................................................25
    7.12      Dispute Resolution .....................................................................................26
    7.13      Effectiveness .............................................................................................27
    7.14      Counterpart Signatures ...............................................................................27

## TEHUM GUC LIQUIDATING TRUST AGREEMENT

This Tehum GUC Liquidating Trust Agreement (this "**Trust Agreement**"), dated as of [  ], 2024, and effective as of the Effective Date, is entered into pursuant to the *Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors and Debtor for Tehum Care Services, Inc.,* dated [    ], 2024 (as may be further amended or modified, the "**Plan**"),[1] by Tehum Care Services, Inc., (the "**Debtor**"), Matthew J. Dundon of Dundon Advisers LLC as trustee (together with any successor serving in such capacity, the "**Trustee**"); Wilmington Trust, National Association (the "**Delaware Trustee**"); and the members of the Trust Advisory Committee who are the individuals further identified on the signature pages hereto (together with any successors serving in such capacity, the "**TAC**").

## RECITALS

(A)    Contemporaneously with the execution of this Trust Agreement, Debtor will have reorganized under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the United States Bankruptcy Court for the Southern District of Texas ("**Bankruptcy Court**"), administered and known as *In re: Tehum Care Services, Inc.*, Case No. 23-90086 (CML) (the "**Chapter 11 Case**").

(B)    Debtor is executing this Trust Agreement in its capacity as Settlor to implement the Plan and to create the GUC Trust (the "**Trust**") for the benefit of the holders of Channeled GUC Claims and Channeled Indirect GUC Claims (collectively, the "**GUC Trust Claims**").

(C)    The Confirmation Order has been entered by the Bankruptcy Court and is in full force and effect.

(D)    The Plan and Confirmation Order provide, among other things, for the creation of the GUC Trust to satisfy the GUC Trust Claims in accordance with this Trust Agreement, the Plan and the Confirmation Order.

(E)    The Bankruptcy Court held in the Confirmation Order that all the prerequisites for the Channeling Injunction have been satisfied, and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the GUC Trust Claims.

(F)    The Plan and Confirmation Order provide that, on the Effective Date and continuing thereafter until fully funded in accordance with the Plan, the Aggregate Settlement Consideration (as defined in Section 1.3), as described in **Exhibit 1** shall be transferred to and vested in the Trust free and clear of all liens, encumbrances, charges, claims, interests or other

---

[1]    All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

liabilities of any kind of the Debtor or its affiliates, any creditor or any other entity, other than as provided in the Channeling Injunction with respect to the GUC Trust Claims.

(G) The Trustee shall also serve in the capacity of Wind-Down Officer of the Debtor in accordance with the terms of the Confirmation Order, the Plan, and the terms set forth in **Exhibit 2.**

**NOW, THEREFORE**, it is hereby agreed as follows:

## ARTICLE I
## AGREEMENT OF TRUST

**1.1** **Creation and Name.** There is hereby created a trust known as the "Tehum GUC Liquidating Trust." The Trustee of the GUC Trust may transact the business and affairs of the GUC Trust in the name of the GUC Trust, and references herein to the GUC Trust shall include the Trustee acting on behalf of the GUC Trust. It is the intention of the parties hereto that the Trust created hereby constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§ 3801 *et seq.* (the "**Act**") and that the Confirmation Order, the Plan and this Trust Agreement, including the Exhibits hereto (the Confirmation Order, the Plan and this Trust Agreement, including all Exhibits hereto, collectively, the "**Trust Documents**"), constitute the governing instruments of the Trust. It is the intention of the Parties that the GUC Trust qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations and that this Trust Agreement constitute the governing instrument of the GUC Trust, except with respect to any Disputed Ownership Fund. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 3**.

**1.2** **Purposes**. The purposes of the GUC Trust are to:

(a) hold, preserve, maximize, and administer the GUC Trust Assets,

(b) liquidate the GUC Trust Assets,

(c) administer, process, settle, resolve, liquidate, satisfy, and pay all Allowed Channeled GUC Trust Claims in a fair, consistent, and equitable manner in accordance with the terms of the GUC Trust Distribution Procedures attached hereto as **Exhibit 4** (the "**TDPs**"), and

(d) Be responsible for the Retained Causes of Action (on behalf of itself and its beneficiaries as well as on behalf of the PI/WD Trust and its beneficiaries, subject to the provisions and consent rights of the PI/WD Trust, as set forth in **Article IV.J** of the Plan, with the net proceeds of such Retained Causes of Action to be split between the PI/WD Trust and the GUC Trust on a 50/50 basis.

**1.3** **Transfer of Assets.** Pursuant to the Plan, on the Effective Date, the Trust will receive and hold all right, title and interest in and to the consideration described in Article IV.D of the Plan and set forth on **Exhibit 1** hereto (the "**Aggregate Settlement Consideration**" and together with any income or gain earned thereon and proceeds derived therefrom, collectively, the

2

"**Trust Assets**").[2]  The Aggregate Settlement Consideration shall be transferred to the Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates, any creditor or any other person or entity, other than as provided in the Channeling Injunction with respect to the GUC Trust Claims.  The Debtor shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and assign any assets comprising all or a portion of the Aggregate Settlement Consideration to the Trust.

        **1.4**      **Acceptance of Assets and Assumption of Liabilities.**

        (a)     In furtherance of the purposes of the GUC Trust, the GUC Trust hereby expressly accepts the transfer to the GUC Trust of the Aggregate Settlement Consideration in the time and manner as, and subject to the terms, contemplated in the Plan.

        (b)     In furtherance of the purposes of the GUC Trust, except as otherwise provided in this Trust Agreement or the Plan, the GUC Trust shall have and retain any and all rights and defenses the Debtor had with respect to any GUC Trust Claims immediately before the Effective Date to the extent necessary to administer such Claims in accordance with this Trust Agreement and the Plan.

        (c)     Notwithstanding anything to the contrary herein, no provision herein shall be construed or implemented in a manner that would cause the GUC Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund.

        (d)     In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

        **1.5**     **Receipt of Proceeds**.  The proceeds of any sale of Trust Assets or recoveries from any litigation or claims of the Trust will be deposited in the Trust's accounts and become the property of the Trust.

        **1.6**     **Beneficiaries.**

        (a)     The beneficial owners (within the meaning of the Act) of the Trust shall be the holders of allowable GUC Trust Claims (the "**GUC Trust Beneficiaries**").

        (b)     The GUC Trust Beneficiaries shall be subject to the terms of this Trust

---

[2]    **Exhibit 1** shall identify: All Assets and Estate Assets allocated to the GUC Trust pursuant to the GUC Trust Agreement and the Plan, as applicable, and in each case, as amended, supplemented, restated, or otherwise modified from time to time, including: (a) 50% of the Settlement Payments; (b) 50% of the ERC Fund; (c) 50% interest in the Retained Causes of Action and the proceeds thereof; (d) Retained GUC Trust Causes of Action; (e) the GUC Insurance Assignment; (f) the GUC Data Transfer; (g) 50% of the Debtor's remaining Assets, including Cash, (h) any other funds or Assets allocated to the GUC Trust under the Plan; and (i) any income, profits, gains, and proceeds realized, received, or derived from GUC Trust Assets.

Agreement and Trust Documents.

**1.7** **Jurisdiction**. The Bankruptcy Court shall have continuing jurisdiction over the GUC Trust, provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the GUC Trust.

## ARTICLE II
## POWERS, TRUST ADMINISTRATION, AND REPORTING

**2.1** **Powers.**

(a)     The Trustee is and shall act as a fiduciary to the GUC Trust in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order. The Trustee shall, at all times, administer the GUC Trust in accordance with the purposes set forth in Section 1.2 above and the Plan. Subject to the limitations set forth in this Trust Agreement and the Plan, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the GUC Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2 below, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law or as otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) above, and except as limited below or by the Plan, the Trustee shall have the power to:

(i)     receive and hold the Aggregate Settlement Consideration and exercise all rights with respect thereto;

(ii)     invest the monies held from time to time by the GUC Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(iii)     incur expenses and other obligations of the GUC Trust necessary to carry out the purposes of the GUC Trust in accordance with the Plan, and pay or satisfy such obligations from the GUC Trust as set forth in the Plan;

(iv)     establish such funds, reserves, and accounts within the GUC Trust, as the Trustee deems useful in carrying out the purposes of the GUC Trust including the establishment and administration of the UCC Professional Fee Escrow Account in accordance with **Exhibit 5**;

(v)     sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding, as required to reconcile, administer, or defend against the GUC Trust Claims;

4

(vi)    establish, supervise, and administer the GUC Trust and make distributions to GUC Trust Beneficiaries pursuant to the terms of this Trust Agreement, the TDPs, and the Plan;

(vii)    appoint such officers and retain such consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the GUC Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(viii)    pay reasonable compensation from the GUC Trust for any of the GUC Trust's consultants, advisors, independent contractors, experts, and agents for legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the GUC Trust requires;

(ix)    pay reasonable compensation from the GUC Trust for the Trustee, the Delaware Trustee, and their employees, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee, the Delaware Trustee, and the TAC for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(x)    compensate the Trustee, and any professionals with whom the Trustee has consulted prior to the Effective Date, for services, costs and expenses incurred prior to the Effective Date;

(xi)    enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the GUC Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement or the Plan;

(xii)    in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives. No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xiii)    commence and pursue the Retained Preference Actions, and manage and administer any proceeds thereof in accordance with the Plan; and

(xiv)    exercise any and all other rights, and take any and all other actions as are permitted, of the Trustee in accordance with the terms of this Trust Agreement and the Plan.

(d)    The GUC Trust shall not have the power to guarantee any debt of other persons.

5

(e)        The Trustee shall endeavor to make timely distributions and not unduly prolong the duration of the GUC Trust.

(f)        The Trustee shall consult with the TAC on the matters set forth in Section 4.14 below.  The Trustee shall obtain the consent of the TAC prior to taking action with respect to the matters as set forth in Section 4.15 below, as and to the extent set forth therein.

**2.2        General Administration.**

(a)        The Trustee shall act in accordance with the Trust Documents. In the event of a conflict between the terms of this Trust Agreement and the Plan, the terms of the Plan shall control. For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)        The Trustee shall (i) timely file such tax returns and pay any taxes imposed on the GUC Trust in accordance with Section 5.3, (ii) comply with all applicable reporting and withholding obligations in accordance with Section 5.4, (iii) satisfy all requirements necessary to qualify and maintain qualification of the GUC Trust as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund, and (iv) take no action that could cause the GUC Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund.

(c)        Other than the obligations of the Trustee specifically set forth in this Trust Agreement, the Plan, or the Confirmation Order, the Trustee shall have no obligations of any kind or nature with respect to his position as such.

**2.3        Claims Administration**.  In accordance with the terms set forth in the TDPs, the Trustee shall administer, dispute, object to, compromise, or otherwise resolve all GUC Trust Claims.

**2.4        Reporting.**

(a)        The Trustee shall timely prepare, file and distribute such statements, reports and submissions to the extent required by applicable law.

(b)        The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event no later than one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the GUC Trust (including, without limitation, a special-purpose statement of assets, liabilities and net claimants' equity, a special-purpose statement of changes in net claimants' equity and a special-purpose statement of cash flows). The Trustee shall not be required to obtain an audit of the Annual Report by a firm of independent certified public accountants.  The Annual Report shall be made available to the GUC Trust Beneficiaries by means of actual notice, provided, however, the Trustee may post the Annual Report on a website maintained by the GUC Trust in lieu of actual notice to each GUC Trust Beneficiary (unless otherwise required by law) (the "**Website**").

**ARTICLE III**
**ACCOUNTS, INVESTMENTS, AND PAYMENTS**

    **3.1**    **Accounts.**

    (a)    The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the GUC Trust with one or more financial depository institutions (each a "**Financial Institution**").

    (b)    Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in or relationship with the Debtor or its affiliated persons. Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting a Financial Institution.

    (c)    The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a) above.

    (d)    The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the GUC Trust Beneficiaries and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and, except as specifically designated as such in accordance with the provisions of Section 5.3(c) below, are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the IRC or Treasury Regulations.

    (e)    The Trustee shall establish a separate subaccount of the Trust to receive funds designated under the Plan for the UCC Professional Fee Escrow Account, which shall be administered exclusively in accordance with the terms set forth on Exhibit 5 hereto.

    **3.2**    **Investment Guidelines.**

    (a)    The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as **Exhibit 6** (the "**Investment Guidelines**").

    (b)    In the event the GUC Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Trust Documents. This Section 3.2(b) is intended to modify the application to the GUC Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

    (c)    Cash proceeds received by the GUC Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the GUC Trust as set forth in Section 1.2 above.

### 3.3 **Payment of Operating Expenses.**

All operating expenses of the GUC Trust shall be paid from the GUC Trust as provided in the Plan.  None of the Trustee, Delaware Trustee, the TAC, the GUC Trust Beneficiaries, nor any of their officers, agents, advisors, professionals, or employees shall be personally liable for the payment of any operating expense or other liability of the GUC Trust. Distributions to GUC Trust Beneficiaries.

(a)     The Trustee will make distributions to GUC Trust Beneficiaries in a fair, consistent and equitable manner in accordance with this Trust Agreement, the TDPs, the Plan and the Confirmation Order.

(b)     Distributions to GUC Trust Beneficiaries shall be made, as determined by the Trustee in his or her discretion subject to the terms of the Plan, provided, however, the GUC Trust must distribute at least annually to the GUC Trust Beneficiaries its net income plus all net proceeds from the sale of assets, except that the GUC Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet claims and contingent liabilities (including disputed claims).

(c)     The GUC Trust may withhold or deduct from amounts distributable to any Person any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement (including, without limitation, tax withholding in accordance with Section 5.4 below). Any Trust Assets which are undistributable in accordance with this Section 3.3 as of the termination of the GUC Trust shall (i) revert to the GUC Trust (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary); (ii) the GUC Trust Claim with respect to such undistributable amount shall be released, settled, compromised and forever barred, and (iii) the undistributable amount shall be reallocated to the other GUC Trust Claims, in accordance with provisions of the Plan and this Trust Agreement.

(d)     The Trustee may retain a distribution agent for the effective administration and distribution of amounts payable to GUC Trust Beneficiaries; provided, however, that such distribution agent shall have no greater authority than, and shall be subject to the same restrictions as, the Trustee under this Trust Agreement.

(e)     Subject to Bankruptcy Rule 9010, any distribution to a GUC Trust Beneficiary shall be made: (1) at the addresses set forth on the respective proofs of Claim filed by such holders; (2) at the address set forth in any written notices of address changes delivered to the Trustee after the date of any related proof of Claim; or (3) at the address reflected in the schedules if no proof of Claim is filed with the Trustee (as to GUC Trust Claims administered by the GUC Trust) and the Trustee has not received a written notice of a change of address.  Except as set forth in the TDPs, if any GUC Trust Distribution or other communication from the GUC Trust is returned as undeliverable, no further GUC Trust Distribution shall be made to such holder unless the Trustee is notified in writing of such holder's then current address.  Undeliverable GUC Trust Distributions shall remain in the possession of the Trustee until the earlier of (i) such time as a GUC Trust Distribution becomes deliverable or (ii) such undeliverable GUC Trust Distribution becomes an Unclaimed Distribution pursuant to the provisions of the Plan, the TDPs, and this

Trust Agreement.  Except as required by law, the Trustee (or its duly authorized agent) shall have no obligation to locate any GUC Trust Beneficiary.

(f)      After final GUC Trust Distributions have been made in accordance with the Plan, the TDPs, the Confirmation Order and this Trust Agreement, and adequate provision has been made for all final obligations of the GUC Trust, the Trustee shall have the authority to direct the remaining Trust Assets to a tax-exempt organization as selected by the Trustee in his or her discretion.

(g)      Checks issued to GUC Trust Beneficiaries shall be null and void if not negotiated within one hundred eighty (180) calendar days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Trustee by the GUC Trust Beneficiary to whom such check was originally issued.  Any GUC Trust Claim in respect of such a voided check shall be made within one hundred eighty (180) calendar days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, the check shall be deemed undistributable and shall be subject to the provisions of Section 3.3(c).

(h)      Cash payments to foreign GUC Trust Beneficiaries may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in the foreign jurisdiction of such foreign holder.

(i)      The Trustee shall have the discretion to determine the timing of GUC Trust Distributions in the most efficient and cost-effective manner possible; provided, however, that the Trustee's discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

(j)      Notwithstanding any provision in the Trust Agreement, the TDPs, the Plan or the Confirmation Order to the contrary, the Trustee, in the Trustee's sole discretion, may decline to make any distribution of $100 or less, due to the economic inefficiency of making a distribution of such a *de minimis* amount.

## ARTICLE IV
## TRUSTEE; DELAWARE TRUSTEE

**4.1**     **Number**.  In addition to the Delaware Trustee appointed pursuant to Section 4.12 below, there shall be one (1) Trustee who shall be the person named on the signature pages hereof.

**4.2**     **Term of Service.**

(a)      The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the GUC Trust pursuant to Section 7.2 below.

(b)      The Trustee may resign at any time upon written notice filed with the Bankruptcy Court and delivered to the TAC. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     The Trustee may be removed by the consent of the TAC in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard. Other good cause shall mean (i) fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony, in each case whether or not connected to the GUC Trust, or (ii) a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder. For the avoidance of doubt, any removal of the Trustee pursuant to this Section 4.2(c) shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

(d)     In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, such vacancy shall be filled by the TAC as set forth herein. The TAC will nominate an individual to serve as successor Trustee.  If the majority of the TAC then in office agree upon a successor Trustee, then, subject to the approval of the Bankruptcy Court, such individual shall become the Trustee.  In the event that a majority of the TAC then in office cannot agree on a successor Trustee, the matter will be resolved pursuant to Section 7.12 below.

(e)     Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)     Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, and (iv) the termination of the GUC Trust pursuant to Section 7.2 below.

**4.3     Compensation and Expenses of the Trustee.**

(a)     The Trustee shall be compensated for his or her service as Trustee in the amount of $750 per hour for services in 2024 (subject to annual increases consistent with the Trustee's practice and subject to the consent of the TAC, which consent shall not be unreasonably withheld or delayed), paid monthly.

(b)     The GUC Trust will promptly reimburse the Trustee for all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of his or her duties hereunder. The GUC Trust will reimburse the Trustee for fees and expenses incurred prior to the Effective Date in connection with this Trust Agreement and effectuating a timely, orderly, and efficient transition of duties and obligations to the Trustee as of the Effective Date, (such amount not to exceed $50,000), which shall be paid promptly after the Effective Date.

(c)     The GUC Trust shall include in the Annual Report a description of the amounts paid under this Section 4.3.

**4.4     Standard of Care; Exculpation.**

(a)      As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee, (ii) the Delaware Trustee, (iii) the TAC and (iv) the officers, employees, consultants, advisors, and agents of each of the GUC Trust, the Trustee, and the TAC.

(b)      To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the GUC Trust, except those acts found by a final order of a court of competent jurisdiction ("**Final Order**") to be arising out of their willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the GUC Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or this Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the GUC Trust.

(c)      To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the GUC Trust or the GUC Trust Beneficiaries, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties; provided, however, that with respect to the Trust Indemnified Parties other than the Delaware Trustee the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

(d)      The GUC Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

**4.5     Protective Provisions.**

(a)      Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)      In the event the Trustee retains counsel (including at the expense of the GUC Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. Such attorney-client privilege shall be vested solely in the Trustee, on behalf of the Trust, and not in the TAC, or any other person, committee or subcomponent of the Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a GUC Trust Claim. A successor Trustee shall succeed to and hold

11

the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)     No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own willful misconduct, bad faith, gross negligence or fraud as determined by a Final Order.

(d)     No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)     In the exercise or administration of the GUC Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

## 4.6     Indemnification.

(a)     To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs but excluding taxes in the nature of income taxes imposed on compensation paid to the Trust Indemnified Parties) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the GUC Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust Assets.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the GUC Trust shall be paid by the GUC Trust from the GUC Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the GUC Trust. The Trustee may, in his or her discretion, authorize an advance of reasonable expenses, costs and fees (including attorneys' fees and costs) to be incurred by or on behalf of the Trust Indemnified Parties, as set forth herein.

(c)      The Trustee is authorized, but not required, to purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)      The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)      The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

4.7      **Trustee Independence.**  The Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as an officer or as any other professional for the Debtor. The Trustee shall not act as an attorney, agent, or other professional for any GUC Trust Beneficiary or any holder of any GUC Trust Claim. For the avoidance of doubt, this Section 4.7 shall not be applicable to the Delaware Trustee.

4.8      **No Bond.**  Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.9      **Reliance by the Trustee**.  The Trustee may absolutely rely, and shall be fully protected in acting or refraining from acting if he or she relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that he or she has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of gross negligence, willful misconduct, or fraud in respect of the Trustee's duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Trust Agreement, the Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Trust Agreement, the Plan or any other document executed in connection therewith, and the Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

**4.12    Delaware Trustee.**

(a)        There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act. The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.12, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.12(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)        The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein. The Delaware Trustee shall be a trustee of the GUC Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of Chapter 38 of title 12 of the Delaware Code, 12 Del. C. Section 3801 *et seq.* (the "**Act**") and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the GUC Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the GUC Trust or the GUC Trust Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of any Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, bad faith, gross negligence or fraud. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may, at the expense of the GUC Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)        The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed

14

by the Trustee in accordance with the terms of Section 4.12(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.12(d) below; provided further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the GUC Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the GUC Trust in accordance with Section 3810 of the Act.

(e)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)     The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the GUC Trust and the Delaware Trustee, which compensation shall be paid by the GUC Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement. The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument or document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the

15

performance or any action of the GUC Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(h)     The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

### 4.13   Trust Meetings.

(a)     **Regular Meeting**.  The Trustee shall hold regular Trust meetings with the TAC not less than quarterly, which may be held at such times and at such places as may be determined from time to time by the Trustee.  For the avoidance of doubt, the Delaware Trustee shall not be required or permitted to attend any meetings of the Trustee contemplated by this Section 4.13.

(b)     **Special Meetings**.  Special meetings of the Trustee may be called by the Trustee by giving written notice to the TAC not less than one (1) Business Day prior to the date of the meeting.  Any such notice shall include the time, place, and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication.  Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice.  Notice by overnight courier shall be deemed to have been given one (1) Business Day after the time that written notice is provided to such overnight courier.  Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)     **Participation in Meetings by Telephone Conference**.  The Trustee may convene, and persons may participate in, a meeting by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 4.13(c) shall constitute presence in person at such meeting.

(d)     **Waiver of Notice**.  Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed

16

with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trust meeting need be specified in any waiver of notice.

(e)     **Adjournment**.  A meeting may be adjourned by the Trustee to another time and place.

**4.14**    **Matters Requiring Consultation with TAC**. The Trustee shall consult with the TAC on each of the following:

(a)     The form(s) of acceptance and release to be executed by a GUC Trust Beneficiary for an Expedited Distribution or Non-Expedited Distribution, as set forth on Exhibit 4; and

(b)     Any extraordinary circumstance which could have a material impact on the Trust.

**4.15**    **Matters Requiring Consent of TAC**. The Trustee shall obtain the consent of the TAC, or, otherwise, Bankruptcy Court approval in the event of a dispute in accordance with Section 7.12 hereof, for the items listed below:

(a)     Any proposed modification to the indemnification provisions of the Trust Agreement;

(b)     Any proposed sale, transfer or exchange of Trust Assets above $[    ] (any proposed sale of Trust Assets below such amount shall not require TAC consent);

(c)     Any proposed material modifications to the Trust Agreement, including Exhibit 4 thereto;

(d)     Any proposed removal of the Trustee in accordance with Section 4.2(c); and

(e)     Any proposed modification to the compensation of the Trustee after December 31, 2024.

The consent of the TAC shall not be unreasonably withheld, conditioned, or delayed.

**4.16**    **Trustee's and TAC's Employment of Professionals.**

(a)     The Trustee may, but is not required to, retain and/or consult accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed appropriate by the Trustee to assist in matters for the Trust within the Trustee's purview.

(b)     The TAC may, but is not required to, retain and/or consult, legal counsel and such other parties deemed appropriate by the TAC to assist in matters within the TAC's purview (the "**TAC Professionals**"), provided that no TAC Professionals may be retained to act on behalf of any holder of a GUC Trust Claim.  The Trust shall promptly reimburse, or pay directly if so requested, the TAC for all reasonable and documented fees and costs associated with the

17

TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder.

## ARTICLE V
## TAX MATTERS

**5.1** **Treatment of Aggregate Settlement Consideration Transfer.** For all United States federal income tax purposes, all Parties shall treat the transfer of the Settlement Consideration to the GUC Trust as (i) a transfer of the Aggregate Settlement Consideration (subject to any obligations related to those assets) directly to the GUC Trust Beneficiaries, followed by (ii) the transfer by such GUC Trust Beneficiaries of such Aggregate Settlement Consideration to the GUC Trust in exchange for an interest in the GUC Trust (a "**GUC Trust Interest**") (other than the Trust Assets allocable to Disputed Claims and held as a "disputed ownership fund" within the meaning of Section 1.468B-9 of the Treasury Regulations ("**Disputed Ownership Fund**")). Accordingly, the GUC Trust Beneficiaries shall be treated for United States federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors and owners of their respective shares of the Aggregate Settlement Consideration (other than the Trust Assets allocable to the Disputed Ownership Fund).

**5.2** **Income Tax Status.**

(a)     For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable) and other than as provided pursuant to Section 5.3(c), this GUC Trust shall be treated as a liquidating trust pursuant to Section 301.7701-4(d) of the Treasury Regulations and as a grantor trust pursuant to Sections 671-679 of the IRC. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Trust Agreement, this Trust Agreement shall be construed so as to satisfy the requirements for liquidating trust status.

(b)     The GUC Trust shall at all times to be administered so as to constitute a domestic trust for United States federal income tax purposes.

**5.3** **Tax Returns.**

(a)     In accordance with Section 6012 of the IRC and Section 1.671-4(a) of the Treasury Regulations, the Trustee shall file with the IRS annual tax returns for the GUC Trust on Form 1041 as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. In addition, the Trustee shall file in a timely manner for the GUC Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. The GUC Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items is respect of any assets allocable to, or retained on account of, the Disputed Ownership Fund) will be allocated to the GUC Trust Beneficiaries in accordance with their relative ownership of GUC Trust Interests. Within a reasonable time following the end of the taxable year, the GUC Trust shall send to each GUC Trust Beneficiary a separate statement setting forth such GUC Trust Beneficiary's items of income, gain, loss, deduction or credit and will instruct each such GUC Trust Beneficiary to report such items on his/her applicable income tax return.

18

(b)      The GUC Trust shall be responsible for payment, from the GUC Trust, of any taxes imposed on the GUC Trust (including any taxes imposed on the Disputed Ownership Fund) or the Trust Assets.  In accordance therewith, any taxes imposed on the Disputed Ownership Fund or its assets will be paid from the GUC Trust.

(c)      The Trustee may timely elect to treat any Trust Assets allocable to Disputed Claims to a Disputed Ownership Fund, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a Disputed Ownership Fund election is made, all parties (including the Trustee and the holders of GUC Trust Interests) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.  The GUC Trust shall file all income tax returns with respect to any income attributable to the Disputed Ownership Fund and shall pay from the GUC Trust all U.S. federal, state and local income taxes attributable to such Disputed Ownership Fund based on the items of income, deduction, credit, or loss allocable thereto.

**5.4      Withholding of Taxes and Reporting Related to GUC Trust Operations.**  The GUC Trust shall comply with all withholding, deduction and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the GUC Trust shall be subject to any applicable withholding, deduction and reporting requirements. The Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, deduction, payment, and reporting requirements. All amounts properly withheld or deducted from distributions to a GUC Trust Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such GUC Trust Beneficiary shall be treated as part of the GUC Trust Distribution to such GUC Trust Beneficiary. To the extent that the operation of the GUC Trust or the liquidation of the Trust Assets creates a tax liability imposed on the GUC Trust, the GUC Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the GUC Trust payable without Bankruptcy Court order. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All GUC Trust Beneficiaries shall be required to provide any information necessary to effect the withholding and reporting of such taxes. The Trustee may require each GUC Trust Beneficiary to furnish to the GUC Trust (or its designee) its social security number or employer or taxpayer identification number as assigned by the IRS and complete any related documentation (including but not limited to a Form W-8BEN, Form W-8BENE-E, or Form W-9) (the "**Tax Documents**"). The Trustee may condition any and all distributions to any GUC Trust Beneficiary upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan. [Notwithstanding any of the foregoing provisions of this Section 5.4, to the extent that any distributions to be made from the GUC Trust that constitute compensation as wages ("**Wage Distributions**"), the GUC Trust shall not bear any liability for the employer portion of any payroll taxes applicable to Wage Distributions, which shall be borne by the Post-Effective Date Debtor.]

**5.5      Valuation.**  Within 180 days after the Effective Date, the Trustee shall make a good faith valuation of the Trust Assets.  Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties for all United States federal income tax purposes. The Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the GUC Trust that are required by any governmental unit.

19

**5.6**     **Expedited Determination of Taxes**.  The Trustee may request an expedited determination of taxes of the GUC Trust, under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the GUC Trust for all taxable periods through the termination of the GUC Trust.

**ARTICLE VI**
**TRUST ADVISORY COMMITTEE**

**6.1**     **Members; Action by Members.** The TAC shall be composed of three members appointed to represent the interests of holders of GUC Trust Claims.  The initial TAC members shall be the following: David Barton, Denny Hamilton, and Stephanie Westermeier.  Except as otherwise set forth in the Trust Documents, the TAC shall act by majority vote of TAC members then serving, provided, however, the TAC may continue to act in the event of one or more vacancies on the TAC, in which case majority vote of the TAC members then serving shall be required for action by the TAC.

**6.2**     **Duties.** The members of the TAC shall serve in a fiduciary capacity representing holders of GUC Trust Claims.  The TAC shall not have any fiduciary duties or responsibilities to any party other than holders of GUC Trust Claims.  Except for the duties and obligations expressed in this Trust Agreement, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TAC.  To the extent that, at law or in equity, the TAC has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other parties hereto, or any Beneficiary, such duties and liabilities are replaced by the duties and liabilities of the TAC expressly set forth in this Trust Agreement.

**6.3**     **TAC Information Rights**. The TAC shall have reasonable access to the Trust's consultants and other advisors retained by the Trust and its staff (if any), and information available to the Trustee, which access shall be made available as determined by the Trustee in his or her discretion.

**6.4**     **[Reserved.]**

**6.5**     **Term of Office.**

(a)     Each member of the TAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) below, (iii) his or her removal pursuant to Section 6.5(c) below, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(b)     A member of the TAC may resign at any time by written notice to the other members of the TAC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)     A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the member of the TAC has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case

20

whether or not connected to the Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall require the majority vote of the other members of the TAC and such removal shall take effect only upon the approval of the Bankruptcy Court.

**6.6**    **Appointment of Successor.**

(a)    In the event of a TAC member vacancy, the remaining TAC members shall propose an individual as successor, subject to the approval of the Trustee, which approval may not be unreasonably withheld.  In the event a successor TAC member is not appointed within sixty (60) days following the occurrence of such vacancy, the Bankruptcy Court may appoint a successor TAC member upon motion of the Trustee.

(b)    Each successor member of the TAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) above, (iii) his or her removal pursuant to Section 6.5(c) above, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(c)    No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member.  No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member.  No TAC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**6.7**    **Compensation and Expenses of the TAC.** The members of the TAC shall not be entitled to compensation for their services but shall be reimbursed promptly for all reasonable and documented ordinary and customary out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder, subject to the limitation of Section 7.16 below.  The Trust shall include a description of the amounts paid under this Section 6.7 in the Annual Report to be filed with the Bankruptcy Court and posted on the Trust's Website.

**6.8**    **Procedures for Consultation with and Obtaining the Consent of the TAC.**

(a)    Consultation Process.

(i)    In the event the Trustee is required to consult with the TAC pursuant to Section 4.14 above, the Trustee shall provide the TAC with written advance notice of the matter under consideration, to the extent practicable, and with all relevant information and documents concerning the matter as is reasonably practicable under the circumstances.  The Trustee shall also provide the TAC with such reasonable access to the consultants and other advisors retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustee is considering such matter, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee, to the extent practicable.

(ii)    In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 6.8(a), the Trustee shall take into consideration the time required for the TAC to meet and consult as to such matter.  In any event,

21

the Trustee shall not take definitive action on any such matter until at least five (5) Business Days after providing the TAC with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived in writing by the TAC or at a meeting where the TAC and Trustee are present, or the Trustee determines in his reasonable discretion that definitive action is required earlier.

(b)     Consent Process.

(i)     In the event the Trustee is required to obtain the consent of the TAC pursuant to the Trust Documents, the Trustee shall provide the TAC with a written notice stating that its consent is being sought, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action. The Trustee shall provide the TAC as much relevant additional information concerning the proposed action as is requested by the TAC and as is reasonably practicable under the circumstances.  The Trustee shall also provide the TAC with such reasonable access to the Trust consultants and other advisors retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii)    For matters requiring the consent of the TAC:

(A)     The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee, in writing, of its consent or its objection to the proposed action within five (5) Business Days of receiving the original request for consent from the Trustee, unless the Trustee extends the time for such response. The TAC may not withhold its consent unreasonably.  If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action.  If the TAC does not advise the Trustee, in writing, of its consent or its objections to the action within five (5) Business Days of receiving notice regarding such request (or within such additional time as may be granted by the Trustee in his or her discretion), the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(B)     If, after following the procedures specified in this Section 6.8(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the TAC shall resolve their dispute pursuant to Section 7.15 below, provided, however in that event the TAC shall have the burden of proof to show the validity of the TAC's objection.

22

## ARTICLE VII
## GENERAL PROVISIONS

**7.1**     **Irrevocability**.  To the fullest extent permitted by applicable law, the GUC Trust is irrevocable.

**7.2**     **Term; Termination.**

(a)     The term for which the GUC Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of this Section 7.2.

(b)     The Trustee shall make continuing efforts to monetize any non-liquid Trust Assets.

(c)     The Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, at such time as (a) the Trustee determines that the pursuit of additional Retained Preference Actions is not likely to yield sufficient additional Cash to justify further pursuit of such claims, or (b) all distributions of Cash and other Trust Assets required to be made by the Trustee under the Plan and this Trust Agreement have been made in accordance with provisions of the Plan and this Trust Agreement, provided, however, that in no event shall the GUC Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the Trust Assets (the "**Dissolution Date**").

(d)     On the Dissolution Date or as soon as reasonably practicable thereafter, after the wind-up of the affairs of the GUC Trust by the Trustee and payment of all of the liabilities have been provided for as required by applicable law including Section 3808 of the Act, all monies remaining in the GUC Trust shall be distributed or disbursed in accordance with Section 3.3 and Section 5.3(c) above.

(e)     Following the dissolution and distribution of the assets of the GUC Trust, the GUC Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the GUC Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the GUC Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

**7.3**     **Amendments**.  Any amendment to or modification of this Trust Agreement may be made in writing and only with the consent of the Trustee, the TAC (which consent in each case shall not be unreasonably withheld, conditioned or delayed) and subject to the approval Bankruptcy Court; provided, however, the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make: (i) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; or (ii) modifications to satisfy any

23

requirements, conditions or guidelines contained in any opinion, directive, order, statute, ruling or regulation of any federal, state or foreign governmental entity. Notwithstanding the foregoing, no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement.  Notwithstanding the foregoing, neither this Trust Agreement, nor any Exhibit to this Trust Agreement, shall be modified or amended in any way that could jeopardize, impair, or modify the GUC Trust's "liquidating trust" status.  Any amendment affecting the rights, duties, immunities, or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent.  Notwithstanding any other provision of this Trust Agreement, no material modifications may be made to this Section 7.5 of this Trust Agreement without the consent of the Trustee, the unanimous consent of the TAC, and subject to the approval of the Bankruptcy Court.

       **7.4**     **Severability**. Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

       **7.5**     **Notices.**

       (a)     Notices to GUC Trust Beneficiaries shall be given in accordance with such person's claims form submitted to the GUC Trust.

       (b)     Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the GUC Trust:

       Matthew J. Dundon
       Dundon Advisers LLC
       10 Bank Street, Suite 1100
       White Plains, New York 10606

With a copy (which shall not constitute notice) to:

To the Delaware Trustee:

With a copy (which shall not constitute notice) to:

To the TAC:

       David Barton

Denny Hamilton

Stephanie Westermeier

(c)      All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

7.6      **Successors and Assigns**.  The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the GUC Trust, the Delaware Trustee, the Trustee, the TAC, and their respective successors and assigns, except that neither the GUC Trust, the Delaware Trustee, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Delaware Trustee in accordance with Section 4.12 (d), and in the case of the Trustee in accordance with Section 4.2(d) above.

7.7      **Limitation on GUC Trust Interests for Securities Laws Purposes**.  GUC Trust Interest (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution or otherwise by operation of law; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

7.8      **Exemption from Registration**.  The Parties hereto intend that the interests of the GUC Trust Beneficiaries under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the GUC Trust Interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

7.9      **Entire Agreement; No Waiver**.  The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein, and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

7.10     **Headings.**  The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

7.11     **Governing Law**.  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed

25

according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the GUC Trust, the Trustee, the Delaware Trustee, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the TAC, or the Delaware Trustee set forth or referenced in this Trust Agreement. Section 3540 of the Act shall not apply to the GUC Trust.

**7.12** **Dispute Resolution**.

(a) Unless otherwise expressly provided for herein, the dispute resolution procedures of this Section 7.12 shall be the exclusive mechanism to resolve any dispute arising under or with respect to this Trust Agreement. For the avoidance of doubt, this Section 7.12 shall not apply to the Delaware Trustee in any respect.

(b) **Informal Dispute Resolution**. Any dispute under this Trust Agreement shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**"). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties. If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(c) **Formal Dispute Resolution**. The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**"). The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position and any supporting documentation and legal authorities relied upon by the disputing party. Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position and any supporting documentation and legal authorities relied upon by the counterparty. If the disputing party and the counterparty or

counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 7.12(d) below.

(d)     **Judicial Review**.  The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over such dispute, such court as has jurisdiction pursuant to Section 1.7 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute.  The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph.  The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the GUC Trust.  Each counterparty shall respond to the motion within the time period allowed by the rules of the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court. Notwithstanding anything to the contrary in this Trust Agreement, the Trust shall bear the reasonable costs and expenses of the TAC in connection with any dispute that arises under this Trust Agreement.

7.13     **Effectiveness**.  This Trust Agreement shall become effective on the Effective Date.

7.14     **Counterpart Signatures**. This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

27

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

**TRUSTEE**

_____

[Signature Page to GUC Trust Agreement]

**DELAWARE TRUSTEE**

By:

[Signature Page to GUC Trust Agreement]

**TAC MEMBER**

By:_____

**TAC MEMBER**

By:_____

**TAC MEMBER**

By:_____

[Signature Page to GUC Trust Agreement]

**EXHIBIT 1.**
**AGGREGATE SETTLEMENT CONSIDERATION**

Exhibit 1-1

**EXHIBIT 2.**
**DEBTOR WIND-DOWN ADMINISTRATION**

The individual designated as the Trustee under this Trust Agreement shall also perform duties related to the Wind-Down of the Debtor, in his capacity as a Wind-Down Officer. The Wind-Down Officer shall be named as an insured in connection with his role as Wind-Down Officer during the wind down period of the Debtor's Estate or until the termination of the Debtor's corporate or other existence, with such insurance to provide a tail period thereafter for the Wind-Down Officer. In furtherance of the Plan, on the Effective Date, Trustee, in his capacity as Wind-Down Officer, shall periodically consult with the Trustee of the PI/WD Trust, on matters the Wind-Down Officer deems necessary or desirable, on matters concerning the winding down of the Debtor's Estates and upon the request of the PI/WD Trustee.

A.      **Administration of the Wind-Down**. Post-Effective Date the Trustee, in his capacity as Wind-Down Officer, shall administer the responsibilities of the Debtor, including, but not limited to:

(i)      effectuating the process to wind down, dissolve and liquidate the Estates and distribute any remaining assets in accordance with the Plan, including taking any steps to dissolve, liquidate, bankrupt or take other similar action with respect to the Debtor and any direct or indirect subsidiary of a Debtor, if and to the extent necessary, including by terminating the corporate or organizational existence of the Debtor and each such subsidiary.

(ii)     implementing, enforcing, complying with and effectuate, as applicable, all provisions of the Plan and the obligations under the Plan.

(iii)    preparing and filing appropriate tax returns and other reports on behalf of the Debtor and pay taxes or other obligations owed by the Debtor (including, without limitation, any Allowed Administrative Expense Claims and Allowed Priority Tax Claims).

(iv)     entering into and consummating any transactions for the purpose of dissolving the Debtor.

(v)      winding down the affairs of the Debtor, if and to the extent necessary, including establishing any administrative reserves necessary, and taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to the Debtor, including by terminating the corporate or organizational existence of the Debtor.

(vi)     taking such actions as are necessary or appropriate to close any of the Debtor's Chapter 11 Cases.

(vii)    maintaining the books and records and accounts of the Debtor and resolving issues pertaining to the retention or disposal of the books and records of the Debtor.

Exhibit 2-1

(viii)   providing periodic reports and updates to the GUC Trust and the PI/WD Trust, no less than quarterly, regarding the status of the administration of the Wind-Down of the Debtor.

(ix)   to the extent not made on or prior to the Effective Date, making distributions on behalf of the Debtor, including through the disbursing agents, to parties that are not GUC Trust Beneficiaries or PI/WD Trust Beneficiaries (including, without limitation, the holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims), pursuant to the Plan from funds of the Debtor on the Effective Date to make such distributions.

(x)   paying the expenses of the Wind-Down from the Debtor's assets, including insurance for the Wind-Down Officer.

(xi)   funding the GUC Trust and the PI/WD Trust on a 50/50 basis any net assets or net proceeds of the Debtor in anticipation of the dissolution of the Debtor.

B.   **Books and Records of Wind-Down**. The Trustee, in his capacity as Wind-Down Officer, shall maintain, in respect of the Wind-Down of the Debtor Estates, all books and records of the Debtor, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.

C.   **Tax Reporting and Payments for Wind-Down**. The Trustee, in his capacity as Wind-Down Officer, may request an expedited determination of taxes of the Debtor, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtor for all taxable periods through dissolution.

D.   **ERC Credits**.  The Trustee, in his capacity as Wind-Down Officer, shall pursue the benefits of the ERC Credits of the Debtor for all taxable periods through dissolution and the proceeds thereof shall be paid over to the GUC Trust and the PI/WD Trust on a 50/50 basis promptly upon receipt.

Exhibit 2-2

**EXHIBIT 3.**
**CERTIFICATE OF TRUST OF THE**
**TEHUM GUC LIQUIDATING TRUST**

This Certificate of Trust of the TEHUM GUC LIQUIDATING TRUST (the "*Trust*") is being duly executed and filed by the undersigned Trustees of the Trust, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. Code § 3801 *et seq.*) (the "*Act*").

Name. The name of the statutory trust formed hereby is:

**TEHUM GUC LIQUIDATING TRUST**

Delaware Trustee. The name and business address of the Delaware Trustee of the Trust in the State of Delaware is:

Effective Date. This Certificate of Trust shall be effective on [   ], 2024.

Exhibit 3-1

IN WITNESS WHEREOF, the undersigned, being all of the trustees of the Trust, have duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

TRUSTEE:                                          DELAWARE TRUSTEE:

By: _____                      By: _____

Exhibit 3-2

## EXHIBIT 4.
## GUC TRUST DISTRIBUTION PROCEDURES

Exhibit 4-1

**TEHUM CARE SERVICES, INC.**

**TRUST DISTRIBUTION PROCEDURES FOR GUC CLAIMS**

**ARTICLE I**
**PURPOSE AND GENERAL GUIDELINES**

A.      **Purpose.**  The purpose of the GUC Trust (or the "**Trust**") is to, among other things, (i) assume legal liability for Channeled GUC Trust Claims—*i.e.*, Channeled GUC Claims, which are referred to herein as "**GUC Claims**" and Channeled Indirect GUC Claims, which are referred to herein as "**Indirect Claims**"—pursuant to the terms of the Plan, (ii) prosecute and assert the Retained GUC Trust Causes of Action, (iii) to hold, preserve, maximize, liquidate, and administer the GUC Trust Assets (the "**Trust Assets**") for the benefit of the beneficiaries of the Trust, (iv) liquidate the Trust Assets, (v) employ procedures to allow valid Channeled GUC Trust Claims (as further set forth herein) in accordance with section 502 of the Bankruptcy Code and/or applicable law (each, an "**Allowed GUC Claim**" or an "**Allowed Indirect Claim**"), (vi) determine an allowed liability amount for each Allowed Channeled GUC Claim or Allowed Indirect Claim (the "**Allowed Claim Amount**"), and (vii) process and direct payment of all Allowed Channeled GUC Trust Claims.  These Trust Distribution Procedures (the "**TDPs**") are adopted pursuant to the GUC Trust Agreement (the "**Trust Agreement**") and have been approved as fair, equitable, and reasonable by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").  The TDPs are designed to provide fair, equitable, and substantially similar treatment for Allowed Channeled GUC Trust Claims.  The TDPs provide the means for resolving all Channeled GUC Trust Claims ("**Trust Claims**") that were assumed by the Trust and for which the Debtor had or is alleged to have legal responsibility.  As set forth in the Trust Agreement, the GUC Trustee (the "**Trustee**") will implement and administer the TDPs, with the goals of securing the just, speedy, fair, reasonable, and cost-efficient determination of every Trust Claim, providing substantially similar treatment to holders of similar, legally valid and supported Allowed Trust Claims as set forth herein, and obtaining and maximizing the benefits of the Trust Assets.

B.      **General Principles.**  To achieve maximum fairness and efficiency, and recoveries for holders of Allowed Trust Claims, the TDPs are founded on the following principles:

1.      objective claim eligibility criteria;

2.      clear and reliable proof requirements;

3.      administrative transparency;

4.      a rigorous review and evidentiary process that requires the Trustee to determine and reach final determinations and to achieve Allowed Claim Amounts that are fair and reasonable;

5.      robust audit procedures to verify the submission and payment of valid Trust Claims; and

6.      independence of the Trust and the Trustee.

**C.**      **Payment of Allowed GUC Claims.**  Pursuant to the Plan, the Trust has assumed the legal liability for, and obligation to pay, Trust Claims to the extent such Claims are Allowed GUC Claims or Allowed Indirect Claims.  The Trust Assets shall be used to fund distributions to Claimants who are determined by the Trustee to hold Allowed GUC Claims or Allowed Indirect Claims under the TDPs.  The amounts that certain Claimants who are determined by the Trustee to hold Allowed GUC Claims or Allowed Indirect Claims will be paid on account of their Trust Claims will depend on, among other things, the Trust's ability to liquidate and recover the proceeds of the assigned insurance rights and other causes of action.  The amount of any installment payments, initial payments, or payment percentages established under the TDPs or the Trust Agreement will be calculated based on (i) any Claimant's Allowed Claim Amount or (ii) the right to payment that the holder of a Trust Claim has against the Debtor, as assumed by the Trust.

**D.**      **Interpretation.**  In the event of any ambiguity or conflict between the terms of these TDPs, the Trust Agreement, the Plan and the Confirmation Order, each document shall have controlling effect in the following order of priority: (1) the Confirmation Order, (2) the Plan, (3) the Trust Agreement, and (4) the TDPs.

## ARTICLE II
## DEFINITIONS AND RULES OF INTERPRETATION

**A.**      **Incorporation of Plan Definitions.**  Capitalized terms used but not defined in the TDPs have the meanings ascribed to them in the Plan or the Trust Agreement and such definitions are incorporated in the TDPs by reference.

**B.**      **Definitions.**  The following terms have the respective meanings set forth below:

1.      "**Acceptance and Release**" shall have the meaning set forth in ARTICLE VIII.D.

2.      "**ADR Procedures**" shall have the meaning set forth in ARTICLE IV.K.

3.      "**Allowed Claim Amount**" shall have the meaning set forth in ARTICLE I.A.

4.      "**Allowed Claim Notice**" shall have the meaning set forth in ARTICLE IV.I.

5.      "**Allowed GUC Claim**" shall have the meaning set forth in ARTICLE I.A.

6.      "**Basic Claim Submission**" shall mean the submission of Identifying Information to the Trust and the election to make or not make the Expedited Distribution Election.

7.      "**Channeled Indirect GUC Claim**" shall have the meaning ascribed to it in the Plan.

8.      "**Channeled GUC Claim**" shall have the meaning ascribed to it in the Plan.

2

9.      "**Channeled GUC Trust Claim**" shall have the meaning ascribed to it in the Plan.

10.     "**Claim Notice**" shall have the meaning set forth in ARTICLE IV.I.

11.     "**Claimant**" shall mean the holder of a GUC Claim or the holder of an Indirect Claim.

12.     "**Claims Audit Program**" shall have the meaning set forth in ARTICLE IV.L.

13.     "**Disallowed Claim**" shall have the meaning set forth in ARTICLE IV.F.

14.     "**Disallowed Claim Notice**" shall have the meaning set forth in ARTICLE IV.H.

15.     "**Exigent Hardship Claim**" shall mean a GUC Claim that is compensable hereunder, for which the Trustee, in his or her sole discretion, determines that the claimant needs immediate financial assistance based on the claimant's expenses and all sources of available income.

16.     "**Expedited Distribution**" shall have the meaning set forth in ARTICLE V.A.

17.     "**Expedited Distribution Election**" shall mean an irrevocable election made by an individual to receive an Expedited Distribution on account of a GUC Claim.

18.     "**FIFO**" shall mean "first-in-first-out" and refers to the impartial basis for establishing a sequence pursuant to which GUC Claims shall be initially reviewed by the Trust.

19.     "**FIFO Processing Queue**" shall mean the FIFO line-up on which the Trust initially reviews Trust Claims Submissions.

20.     "**Final Determination**" shall have the meaning set forth in ARTICLE IV.J.

21.     "**GUC Claim**" shall be a Channeled GUC Claim.

22.     "**GUC Claimant**" shall mean the holder of a GUC Claim.

23.     "**GUC Claim Criteria**" shall have the meaning set forth in ARTICLE VI.A.

24.     "**Identifying Information**" shall mean, with respect to the holder of a Trust Claim, the holder's: (a) name; (b) address; (c) social security number or employer identification number (if the holder has one); and (d) counsel serving as the holder's representative (if any) and such counsel's address.

25.     "**Indirect Claim**" means a Channeled Indirect GUC Claim.

26.      "**Indirect Claimant**" shall mean the holder of an Indirect Claim.

27.      "**Indirect Claim Criteria**" shall have the meaning set forth in ARTICLE VII.A.

28.      "**Initial Claims Filing Date**" shall mean the date on which the Trust first provides notice that it is able to accept Trust Claim Submissions.

29.      "**Initial Payment Percentage**" shall have the meaning set forth in ARTICLE VIII.B.

30.      "**Opt Out Return Election**" shall have the meaning set forth in ARTICLE IX.C.

31.      "**GUC Types**" shall have the meaning set forth in ARTICLE VI.C.

32.      "**Potentially Liable Party**" means any party that is potentially co-liable with the Trust for a Trust Claim, including governmental entities.  Potentially Liable Parties shall not include any Released Party.

33.      "**Proposed Allowed Claim Amount**" shall have the meaning set forth in ARTICLE IV.I.

34.      "**Reconsideration Request**" shall have the meaning set forth in ARTICLE IV.K.

35.      "**Reconsideration Deadline**" shall have the meaning set forth in ARTICLE IV.K.

36.      "**Released Parties**" shall have the meaning ascribed to it in the Plan.

37.      "**Supplemental Payment Percentage**" shall have the meaning set forth in ARTICLE VIII.C.

38.      "**TAC**" shall mean the Trust Advisory Committee that represents the interests of holders of GUC Claims pursuant to the Plan and Trust Agreement.

39.      "**Threshold Criteria**" shall have the meaning set forth in ARTICLE IV.D.

40.      "**Trust Claim**" means a Channeled GUC Trust Claim.

41.      "**Trust Claim Submission**" shall have the meaning set forth in ARTICLE IV.E.

42.      "**Trust Claim Submission Date**" shall have the meaning set forth in ARTICLE IV.E.

**C.**      **Interpretation; Application of Definitions and Rules of Construction.**  For purposes of the TDPs, unless otherwise provided herein:  (1) whenever from the context it is

4

appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference to a person as a holder of a Claim includes that person's estate, successors, and assigns; (3) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the TDPs as a whole and not to any particular article, section, subsection, or clause; (4) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (5) any effectuating provisions of the TDPs may be reasonably interpreted by the Trustee in such a manner that is consistent with the overall purpose and intent of the TDPs without further notice to or action, order, or approval of the Bankruptcy Court; (6) the headings in the TDPs are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (7) in computing any period of time prescribed or allowed by the TDP, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply; (8) "or" is not exclusive; and (9) all provisions requiring the consent of a person shall be deemed to mean that such consent shall not be unreasonably withheld.

## ARTICLE III
## TDP ADMINISTRATION

**A.** **Administration.**  Pursuant to the Plan and the Trust Agreement, the Trust and the TDPs shall be administered by the Trustee subject to the consultation and consent provisions applicable to the TAC.

**B.** **Powers and Obligations.**  The powers and obligations of the Trustee, and the consultation and consent provisions applicable to the TAC are set forth in the Trust Agreement. For the avoidance of doubt, the TAC shall have no authority or ability to modify, reject, or influence any claim review or Allowed Claim Amount determination under the TDPs.

**C.** **Consent Procedures.**  The Trustee shall obtain the consent of the TAC on any amendments to the TDPs pursuant to ARTICLE XI.A, and on such matters as are otherwise required below.  Such consent shall not be unreasonably withheld, conditioned or delayed.

**D.** **Extension of Deadlines.**  The Trustee with the consent of the TAC may extend any deadlines set forth in the TDPs.

## ARTICLE IV
## GENERAL TRUST PROVISIONS

**A.** **Confidentiality.**  Documents submitted to the Trust by a Claimant are for the sole benefit of the Trust and not third parties or defendants.  All submissions to the Trust by a Claimant, including Trust Claim Submission and any documents submitted therewith, shall be treated as made during settlement discussions between the Claimant and the Trust and are intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including those directly applicable to settlement discussions.  The Trust will preserve the confidentiality of such Claimant submissions and shall disclose the contents thereof only to such persons as authorized by the Claimant, the TDPs, or in response to a valid subpoena of such materials, seeking non-privileged, non-mediation protected materials, issued by the Bankruptcy Court, the United

5

States District Court for the Southern District of Texas, or any other court of competent jurisdiction.  The Trust shall provide counsel for the Claimant, or if the Claimant is unrepresented, the Claimant, with a copy of any such subpoena immediately upon being served.  In such a case, the Trust shall provide notice to counsel for the Claimant, or if the Claimant is unrepresented, the Claimant, to allow such party sufficient time to object to the production.  The Trust shall on its own initiative or upon request of the Claimant or Claimants in question take all necessary and appropriate steps to preserve all privileges.  Notwithstanding anything in the foregoing to the contrary, the Trust may disclose information, documents, or other materials reasonably necessary in the Trust's judgment to (i) one or more consultants and professionals (including a third party claims processing firm) retained by the Trust to assist in the administration of the Trust Claims, and (ii) preserve, obtain, litigate, resolve, or settle insurance coverage, or pursue any other claims transferred or assigned to the Trust by the holder of the Trust Claim or operation of the Plan; *provided*, *however*, that the Trust shall take all steps reasonably feasible to preserve the further confidentiality of such information, documents, and materials.

**B.**      **FIFO Claims Process Queuing and Exigent Claims.**  Except as otherwise provided herein with respect to Exigent Hardship Claims, the Trust shall commence review of all Trust Claim Submissions for processing purposes on a FIFO basis, provided, however, that nothing herein shall require the Trust to complete the review of any Trust Claim prior to reviewing and paying any subsequently filed Trust Claims.  A Claimant's position in the FIFO Processing Queue shall be determined as of the Claimant's Trust Claim Submission Date.  A Claimant that seeks recovery on account of an Exigent Hardship Claim shall be moved in front of the FIFO Processing Queue no matter what the order of processing otherwise would have been under the TDPs.

**C.**      **Statute of Limitations or Repose.**  The statute of limitations and the choice of law determination applicable to claims against the Trust shall be determined by reference to the jurisdiction where a claim was pending on the Petition Date, or where such a claim could have been timely and properly filed as asserted by the Claimant.  To be considered timely submitted and eligible for compensation, all Trust Claims filed against the Trust must either (a) in the case of claims first filed against the Debtor prior to the Petition Date, have been filed prior to the applicable federal or state statute of limitations and repose that was in effect at the time of the filing of the claim, and such claim must not have been dismissed prior to the Petition Date; or (b) in the case of claims not filed against the Debtor prior to the Petition Date, have been filed with the Trust prior to the applicable federal or state statute of limitations and repose that was in effect at the time of the filing of a Basic Claim Submission with the Trust.  For the purpose of applying the TDPs, the running of the applicable statute of limitations or repose shall be tolled as of the earliest of:  (a) the actual filing of a claim against the Debtor prior to the Petition Date; (b) the date specified by agreement or otherwise among the Debtor and/or the Trust, on the one hand, and the applicable claimant, on the other hand, (or, if none, the date of the agreement) in the case of tolling prior to the Petition Date by an agreement or otherwise, provided such tolling was still in effect on the Petition Date; or (c) the Petition Date.  The tolling as of the Petition Date shall run and exhaust as of 30 days after the Effective Date of the Plan.  If a Trust Claim meets any of the tolling provisions in the foregoing sentence and the claim was not barred by the applicable federal or state statute of limitations or repose at the time of the relevant tolling event, it shall be treated as timely

filed if a Basic Claim Submission in respect of such claim is filed with the Trust within sixth (60) days after the Initial Claims Filing Date.

**D.**     **Threshold Eligibility.**  To be eligible to potentially receive compensation from the Trust on account of a Trust Claim, each Claimant must:

(1)     have timely filed, or have been deemed to have timely filed, a Proof of Claim with the Bankruptcy Court;

(2)     have signed the Proof of Claim attesting to the truth of its contents under penalty of perjury, or, if not, supplements the Proof of Claim to so provide such verification;

(3)     have filed a Proof of Claim that is free of material defect such that the Trustee is able to determine from the Proof of Claim that Trust Claim is *prima facie* valid and is not barred by any applicable federal or state statute of limitations or repose; and

(4)     have not previously had the Trust Claim dismissed on the merits or have received payments on the Trust Claim such that no recovery from the Trust would be permissible under the TDPs, including ARTICLE X.

Trust Claims asserted by Claimants who do not satisfy this threshold eligibility criteria (collectively, the "**Threshold Criteria**") shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H, and shall not be paid by the Trust.

**E.**     **Claims Evaluation.**  The Trust shall evaluate each GUC Claim individually and will follow the uniform procedures and guidelines set forth herein to determine, based on the evidence obtained by the Trust, whether a GUC Claim should be Allowed.  After a review of the documentation provided by the Claimant in his or her Trust Claim Submission and any follow-up materials, the Trust will determine the Trust Claim to be either (i) legally valid and an Allowed GUC Claim or an Allowed Indirect Claim or (ii) legally invalid and ineligible for compensation (a "**Disallowed Claim**").

**F.**     **Deficiency Notices.**  If the Trust Claim does not include evidence that is presumptively reliable, or the Trustee otherwise determines that additional evidence is reasonably required to establish the validity of a Trust Claim, the Trust may issue deficiency notices to Claimants identifying the information requested by the Trust to cure the deficiency.  The failure to provide information requested by the Trust shall be grounds for the Trustee to determine that a claim is a Disallowed Claim.

**G.**     **Disallowed Claims.**  If the Trustee determines that a Trust Claim is a Disallowed Claim, the Trustee shall provide written notice of his or her determination to the relevant Claimant (an "**Disallowed Claim Notice**").  If the Trustee determines that a Trust Claim is a Disallowed Claim, the Trustee will not perform the Allowed Trust Claim valuation analysis described herein.

**H.** **Allowed Trust Claims.** If the Trustee determines that a Trust Claim is an Allowed Trust Claim, the Trustee shall utilize the procedures described in ARTICLE VI.C to determine the value of Trust Claim and the procedures described in ARTICLE VII.C to determine the value for Indirect Claims (each, a "**Proposed Allowed Claim Amount**"), and provide written notice of allowance and the Proposed Allowed Claim Amount to the Claimant (an "**Allowed Claim Notice**" and together with the Disallowed Claim Notice, a "**Claim Notice**") as set forth in ARTICLE IV.J below. The Trustee shall have the right to develop additional procedures necessary to determine the value of any Trust Claims that are not subject to ARTICLE VI or ARTICLE VII so that they are valued in accordance with state law or, if applicable, other non-bankruptcy law and result in values consistent with values ascribed to other Trust Claims under the TDPs.

**I.** **Claims Determination.** If the Claimant accepts the Proposed Allowed Claim Amount in the Allowed Claim Notice or the reconsideration process set forth hereinafter in ARTICLE IV.K has been exhausted, the Proposed Allowed Claim Amount shall become the Allowed Claim Amount for such Trust Claim, operating as a final settlement for such Trust Claim and a determination of the Debtor's liability for such Trust Claim (a "**Final Determination**"), and the holder of such Allowed Trust Claim shall be approved for payment in accordance with ARTICLE VIII.A, subject to the Claimant executing the Acceptance and Release set forth in ARTICLE VIII.D.

**J.** **ADR Procedures for Reconsideration Requests.** A Claimant may make a request for reconsideration of (i) a determination that his or her Trust Claim is ineligible for compensation, or (ii) the valuation of the Trust Claim by the Trust (a "**Reconsideration Request**") within ninety (90) days of receiving a Disallowed Claim Notice or an Allowed Claim Notice (the "**Reconsideration Deadline**"). Any Claimant who fails to submit a Reconsideration Request to the Trust by the Reconsideration Deadline shall be deemed to accept the disallowance of the Trust Claim or the Proposed Allowed Claim Amount. The Trustee shall develop non-binding alternative dispute resolution procedures (the "**ADR Procedures**") to resolve Reconsideration Requests. Disputes over the validity of a Trust Claim shall be eligible for reconsideration and resolution under the ADR Procedures. The Claimant may submit further evidence in support of the Trust Claim with the Reconsideration Request. The neutral designated in the ADR Procedures will reconsider the Trust Claim—including all new information provided by the Claimant in the Reconsideration Request—and will have the discretion to maintain the prior determination or determine that the Trust Claim in question is an Allowed Trust Claim or should receive a new Proposed Allowed Claim Amount. If the neutral designated in the ADR Procedures determines upon reconsideration that a Trust Claim is an Allowed Trust Claim and/or should receive a new Proposed Allowed Claim Amount, the neutral designated in the ADR Procedures will deliver their recommendation to the Trustee.

Neither the Trustee nor the Claimant is bound by the neutral's determination. The Trustee may accept or reject the neutral's recommendation. If the Trustee accepts the neutral's recommendation in whole or in part, the Trustee will provide the Claimant a written notice containing a revised Proposed Allowed Claim Amount (a "**Revised Proposed Allowed Claim Notice**"). The Claimant may accept this revised Proposed Allowed Claim Amount, or reject it. If the Claimant rejects the revised Proposed Claim Amount, the Claimant will provide notice of such rejection to the Trustee within thirty (30) days of receiving a Revised Proposed Allowed Claim Notice (a "**Revised Proposed Allowed Claim Rejection**"). Any Claimant who fails to

8

submit a timely Revised Proposed Allowed Claim Rejection following receipt of a Revised Proposed Allowed Claim Notice shall be deemed to accept the Revised Proposed Allowed Claim Amount.   If the Trustee rejects the neutral's recommendation for any reason, then the Trustee shall provide a written notice of such rejection to the Claimant (the "**Rejection Notice**").  Within thirty (30) days of the submission of the Rejection Notice or the receipt of a Revised Proposed Allowed Claim Rejection, the Trustee shall file a written objection to the Trust Claim with the Bankruptcy Court (the "Claim Objection").  The Claim Objection creates a contested matter that shall proceed under Fed. R. Bankr. P. 9014 and the Trust Claim shall be allowed in such amount to be determined by entry of a final order of the Bankruptcy Court.

K.       **Claims Audit Program.**  The Trustee may institute procedures for auditing the reliability of evidence submitted to the Trust involving Trust Claims for which the Trust has legal responsibility (the "**Claims Audit Program**").  The Trustee may utilize the services of a third-party claims processing facility to assist in the evaluation of Trust Claims submitted to the Trust. The filing of any Trust Claim with the Trust, regardless of the treatment sought, shall constitute consent for the Trust to release to any entity overseeing the Claims Audit Program all information submitted to the Trust on behalf of the Claimant and to disclose the status of any such Trust Claim and the amount and date of any payments on account of such Trust Claim.  Any Claimant subject to the Claims Audit Program shall cooperate and provide the Trust with non-privileged information reasonably requested by the Trust and, if requested by the Trust, authorization to obtain information such Claimant has submitted to any other trusts or third parties relating to such Claimant's Trust Claim.  If an audit reveals that fraudulent information has been provided to the Trust, the Trust may penalize any claimant or claimant's attorney by disallowing the Trust Claim or by other means including requiring the return of any payments received from the Trust and requiring the claimant to pay the costs associated with the audit, as well as any other appropriate action or sanction.

## ARTICLE V
## EXPEDITED DISTRIBUTIONS

A.       **Expedited Payment Criteria.**  A Claimant who meets the following criteria may elect to resolve their GUC Claim for an expedited distribution of $5,000 (the "**Expedited Distribution**"):  (i) the Claimant is a GUC Claimant made an Expedited Distribution Election in accordance with the Plan and Confirmation Order; and (ii) the Claimant satisfies the Threshold Criteria.

B.       **Process and Payment of Expedited Distributions.**  GUC Claimants who have elected to receive the Expedited Distribution and who also have met the Threshold Criteria shall be entitled to receive their Expedited Payment upon executing an appropriate release.  A GUC Claimant who elects to receive the Expedited Distribution shall have no other remedies with respect to their GUC Claim against the Trust and will not be eligible to receive any further distribution on account of their GUC Claim from the Trust.

**ARTICLE VI**
**CLAIMS ALLOWANCE PROCESS FOR GUC CLAIMS**

A.    <u>**General Criteria for Evaluating Claims.**</u>  In addition to satisfying the Threshold Criteria, to be eligible to receive compensation from the Trust on account of a GUC Claim, each GUC Claimant must have a GUC Claim against the Debtor that is (i) valid under applicable state or federal law, and (ii) not subject to (y) disallowance under section 502 of the Bankruptcy Code, including subsection (b) thereof, or (z) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law.  The foregoing requirements are herein referred to as the "**GUC Claim Criteria**."  GUC Claims asserted by GUC Claimants who do not satisfy the GUC Claim Criteria shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H, and shall not be paid by the Trust.

B.    <u>**Valuation of Allowed GUC Claims.**</u>  If a GUC Claimant has satisfied the GUC Claim Criteria, then it shall have an Allowed GUC Claim and such GUC Claim shall be valued by the Trust utilizing the following factors:  (i) the likelihood that the Claimant is able to show the Debtor was liable to the Claimant on the basis set forth in the Claimant's filed Proof of Claim; (ii) any defenses the Debtor had to the Allowed GUC Claim; (iii) the portion of the Allowed GUC Claim constituting interest, late charges, collection costs or attorneys' fees; (iv) any other factors bearing on the amount set forth in the Claimant's filed Proof of Claim. After analyzing the Allowed GUC Claim under these factors, the Trustee will determine a Proposed Allowed Claim Amount for each Allowed GUC Claim.  The Proposed Allowed Claim Amount for an Allowed GUC Claim shall be deemed to be the Debtor's liability for such GUC Claim (*i.e.*, the claimant's right to payment for his or her GUC Claim), irrespective of how much the holder of such GUC Claim receives from the Trust pursuant to the payment provisions set forth in ARTICLE VIII.  In no circumstance shall the amount of the Debtor's legal obligation to pay any GUC Claim be determined to be any payment percentages hereunder or under the Trust Agreement (rather than the liquidated value of such GUC Claim as determined under the TDP).

C.    <u>**Liquidated Judgments.**</u>  Notwithstanding the process of valuing Allowed GUC Claims set forth in this ARTICLE VI, if (1) prior to the Effective Date an Allowed GUC Claim was liquidated by a judgment of a court of competent jurisdiction that has not been reversed or vacated on appeal, (2) such judgment is not secured by a bond or other collateral such that the judgment can be satisfied by a source other than the Trust, and (3) the holder of such Allowed GUC Claim did not elect to Opt Out pursuant to the Plan, then the Trustee will adopt the judgment amount as the Proposed Allowed Claim Amount.

**ARTICLE VII**
**INDIRECT CLAIMS**

A.    <u>**Indirect Claim Eligibility Criteria.**</u> In addition to the threshold eligibility criteria for Trust Claims set forth in ARTICLE IV.A, to be eligible to receive compensation from the Trust on account of an Indirect Claim, each Indirect Claimant must:

(i)     have a valid Indirect Claim against the Debtor that is (a) valid under applicable state or federal law, and (b) not subject to (y) disallowance under

10

section 502 of the Bankruptcy Code, including subsection (b) thereof, or (z) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law; and

(ii)    must establish to the Trust's satisfaction that:

(a)    such Indirect Claimant has paid in full the liability and/or obligation of the Trust to a GUC Claimant to whom the Trust would otherwise have had a liability or obligation under the TDPs (and which has not been paid by the Trust);

(b)    the Indirect Claim is not otherwise subject to a valid defense; and

(c)    the GUC Claimant and the Indirect Claimant have or will have forever and fully released the Trust in respect of the Indirect Claim.

The foregoing requirements are herein referred to as the "**Indirect Claim Criteria**." Indirect Claims asserted by Indirect Claimants who do not satisfy the Indirect Claim Criteria shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H, and shall not be paid by the Trust.

B.    **Indirect Claimant Trust Claim Submission.**    To properly make a Trust Claim Submission, each submitting Indirect Claimant must, in addition to completing and filing a Basic Claim Submission with the Trust, submit documents sufficient to establish to the Trust's satisfaction that the Indirect Claimant satisfies the Indirect Claim Criteria. The Trust may develop any additional claim forms for Indirect Claimants so that appropriate documentation is provided by each Indirect Claimant to substantiate and pay Indirect Claims. The date on which the foregoing is submitted to the Trust by an Indirect Claimant shall be the Trust Claim Submission Date for the applicable Indirect Claim.

C.    **Allowance of Indirect Claims.**    If an Indirect Claimant has satisfied the Indirect Claim Criteria, then it shall have an Allowed GUC Claim and its Indirect Claim shall be valued by the Trust in accordance with applicable law; *provided*, *however*, no Indirect Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has paid to the related GUC Claimant in respect of such claim for which the Trust would have liability, and in no event shall any Indirect Claim exceed the Allowed Claim Amount of the related GUC Claim as determined under the TDPs. In any case where the Indirect Claimant has satisfied the claim of a GUC Claimant against the Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain a release for the benefit of the Trust substantially in the form and substance of the release provided in Exhibit 1-2. If the Indirect Claimant can show that it has paid such liability or obligation of the Trust to a GUC Claimant and the Trust has not already paid the GUC Claimant, and the Indirect Claimant provides a release of the Trust pursuant to a document substantially in the form and substance of the release provided in Exhibit 1-2 for the GUC Claim, then the Indirect Claim may be allowable pursuant to the procedures described herein. In no event shall any Indirect Claimant have any rights against the Trust superior to the rights that the GUC Claimant to whose claim the Indirect Claim relates would have against the Trust under applicable law and the TDPs, including any rights with respect to timing, amount, priority, or manner of payment.

11

**D.      Offset.**  The liquidated value of any Indirect Claim paid by the Trust shall be treated as an offset to or reduction of the Allowed Claim Amount of any related GUC Claim that has been or will be submitted to the Trust.

## ARTICLE VIII
## PAYMENT OF FINAL DETERMINATION

**A.      Payment Upon Final Determination.**  Only after the Trustee has established an Initial Payment Percentage in accordance with the Trust Agreement, then once there is a Final Determination of a Trust Claim pursuant to pursuant to ARTICLE IV.J (based on a final settlement reached or entry of a final order by the Bankruptcy Court in accordance with ARTICLE VI and/or ARTICLE VII), will the Claimant receive a payment of such Final Determination based on the Payment Percentage then in effect as described in ARTICLE VIII.B and ARTICLE VIII.C.

**B.      Initial Payment Percentage.**  After there is a Final Determination of the Trust Claim, the Trust shall pay an initial distribution (the "**Initial Distribution**") based on the Initial Payment Percentage established by the Trustee in accordance with the Trust Agreement.

**C.      Supplemental Payment Percentage.**  When the Trustee determines that the then-current estimates of the Trust's assets and its liabilities, as well as the then-estimated value of then-pending Trust Claims, warrant additional distributions on account of the Final Determinations, the Trustee shall set a supplemental payment percentage in accordance with the Trust Agreement (the "**Supplemental Payment Percentage**").  Such Supplemental Payment Percentages shall be applied to all Final Determinations that became final prior to the establishment of such Supplemental Payment Percentage.  Claimants whose Trust Claim becomes a Final Determination after a Supplemental Payment Percentage is set shall receive an Initial Distribution equal to the then-existing aggregate payment percentage.  For the avoidance of doubt, the Allowed Claim Amount of each Allowed Trust Claim after Final Determination shall be deemed to be the Debtor's liability for such Allowed Trust Claim irrespective of how much the holder of such Trust Claim actually receives from the Trust pursuant to the payment provisions set forth in this ARTICLE VIII.  For example, if the Allowed Claim Amount for an Allowed GUC Claim that has received a Final Determination is $600,000, even if the Trust distributes less than $600,000 to the GUC Claimant on account of such Allowed GUC Claim based on application of the Initial Payment Percentage and any Subsequent Payment Percentage(s), the Allowed Claim Amount for the GUC Claim is still $600,000.

**D.      Acceptance and Release.**  For an Allowed Trust Claim to receive payment from the Trust, the Claimant must submit, as a precondition to receiving such payment from the Trust, an executed acceptance and release (the "**Acceptance and Release**"), which shall include a release of the Trust, the Trustee, the TAC, and each of their respective Representatives.  The Acceptance and Release shall be in the form attached hereto as Exhibit 1-1 (Expedited Distributions), Exhibit 1-2 (GUC Claims), and Exhibit 1-3 (Indirect Claims).  The Acceptance and Release shall be available for completion electronically and may be executed by the Claimant or his or her representative through DocuSign or a similar authorized electronic signature program, or such other simplified and expedient means as the Trust may adopt.

12

## ARTICLE IX
## EXCESS RECOVERIES

A.   **Limitation on Trust Recovery.**   A Claimant may not recover more than the Allowed Claim Amount from the Trust when taking into consideration recoveries obtained from other Potentially Liable Parties or insurance recoveries.   The sole source of recovery for GUC Claimants who do not elect to "Opt Out" and who do not elect to pursue recoveries from Potentially Liable Parties is from the Trust.   GUC Claimants who elect to pursue recoveries from Potentially Liable Parties may obtain recoveries from sources other than the Trust on account of their GUC Claims.   If a GUC Claimant recovers on account of his or her GUC Claim an amount from a Potentially Liable Party, an insurer, or any source other than the Trust that results in such GUC Claimant recovering the Allowed Claim Amount of such GUC Claims as determined under the TDPs, then notwithstanding anything contained herein, such GUC Claimant shall not be entitled to receive an additional recovery from the Trust on account of such GUC Claim.   For example, if the Allowed Claim Amount for an Allowed GUC Claim is $600,000, and the GUC Claimant has received distributions from the Trust totaling $200,000, and the GUC Claimant then recovers $400,000 from a Potentially Liable Party or any source other than the Trust such that his or her total recovery is $600,000 on account of such GUC Claim, then such GUC Claimant shall not be entitled to receive any further recovery from the Trust, including in circumstances where the Supplemental Payment Percentage is over 33.3%.   The Trustee may ask GUC Claimants if they intend to pursue recoveries on account of their GUC Claims from sources other than the Trust and to provide the Trustee with updates regarding such pursuits.   GUC Claimants who obtain such recoveries shall immediately inform the Trust.

B.   **Excess Recovery.**   If a GUC Claimant were to receive a distribution from the Trust on account of his or her GUC Claim and then obtain a recovery from a Potentially Liable Party or any source other than the Trust on account of his or her GUC Claim such that the GUC Claimant is placed in a position where he or she has recovered more than the Allowed Claim Amount of such GUC Claim as determined under the TDPs, then such GUC Claimant shall be required to return or deliver to the Trust the portion of such recovery that causes such GUC Claimant's total recovery on account of such GUC Claim to exceed the Allowed Claim Amount, provided, however, that in no circumstance shall a GUC Claimant be required to return or deliver to the Trust an amount greater than the distributions received from the Trust on account of his or her GUC Claim.   For example, if the Allowed Claim Amount for an Allowed GUC Claim is $600,000, and the GUC Claimant has received distributions from the Trust totaling $200,000, and the GUC Claimant then recovers $500,000 from a Potentially Liable Party such that his or her total recovery is $700,000, then such GUC Claimant shall be required to return $100,000 to the Trust.   If the Allowed Claim Amount for an Allowed GUC Claim is $600,000, and the GUC Claimant has received distributions from the Trust totaling $200,000, and the GUC Claimant then recovers $2,000,000 from a Potentially Liable Party such that his or her total recovery is $2,200,000, then such GUC Claimant shall be required to return $200,000 to the Trust (*i.e.*, the distributions received from the Trust on account of his or her GUC Claim).

C.   **Potentially Liable Parties.**   Nothing in the TDPs, nor any action taken pursuant to the TDPs, shall determine, limit, reduce, or impact the liability of any Potentially Liable Party for a Trust Claim.   Potentially Liable Parties are not third-party beneficiaries, and their liability for any Trust Claim shall not be determined by, or by reference to, the TDPs.

13

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**A.**     **Amendments.**  Except as otherwise provided herein, the TDPs may be amended with the written consent of the Trustee and the TAC, as provided in the Trust Agreement.  The consent of the TAC shall not be unreasonably withheld.  Nothing herein is intended to preclude the TAC from proposing to the Trustee, in writing, amendments to the TDPs.  Notwithstanding the foregoing, absent Bankruptcy Court approval after appropriate notice and opportunity to be heard, the TDPs may not be modified or amended in a material manner that would have the effect of (i) providing for materially different treatment for Trust Claims or (ii) cause the TDPs to be otherwise inconsistent with the Trust Agreement, the Plan, or the Confirmation Order.

**B.**     **Severability.**  Should any provision contained in the TDPs be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the TDPs.

**C.**     **Governing Law.**  Each Trust Claim shall be evaluated under the laws of the jurisdiction in which the Trust Claim arose.

## EXHIBIT 1-1

FORM OF ACCEPTANCE AND RELEASE
(EXPEDITED DISTRIBUTION)

## ACCEPTANCE AND RELEASE (EXPEDITED DISTRIBUTION)

To receive an Expedited Distribution (as defined below) from the Trust (the "**Trust**") created pursuant to the Chapter 11 Plan of Reorganization for Tehum Care Services, Inc., dated as of [●], 2024 (the "**Plan**"), the holder of a GUC Claim must execute and submit to the Trust this acceptance and release (the "**Release**").  **This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below).  A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient**.

## DEFINITIONS

The definitions set forth above for the terms "**Trust**," "**Plan**," and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.  All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Plan.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, having subject matter jurisdiction over the Chapter 11 Case.

"**Chapter 11 Case**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and currently styled *In re Tehum Care Services, Inc..*, Bankruptcy Case No. 23-90086 (CML).

"**Debtor**" means Tehum Care Services, Inc., the debtor and debtor-in-possession in the Chapter 11 Case.

"**Expedited Distribution**" means the compensation a Claimant receives from the Trust on behalf of the Claimant's GUC Claim in the amount of $5,000.

"**GUC Claim**" means a GUC Claim asserted by an individual (or an individual's estate) against the Debtor for alleged personal injury, wrongful death, or other similar Claim or Cause of Action arising out of or relating to an injury or death allegedly caused by the Debtor.

"**GUC Claimant**" means the holder of a GUC Claim who (a) has satisfied the eligibility criteria section forth in the Trust Distribution Procedures, (b) has had his or her GUC Claim assumed by the Trust for evaluation, resolution, and payment pursuant to the Plan, and (c) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to execute this Release on behalf of the GUC Claimant.

"**Released Parties**" means the Trust, the Trustee, and the TAC and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, Trustee, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, and the TAC.

"**TAC**" means the Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**Trustee**" means Matthew Dundon of Dundon Advisors or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RECITALS

**A.**     **WHEREAS**, the Plan was confirmed by order of the Bankruptcy Court on [●] and became effective on [●].

**B.**     **WHEREAS**, the Plan provides for the assumption of GUC Claims against the Debtor by the Trust and for the treatment of GUC Claims against the Debtor through the Trust.

**C.**     **WHEREAS**, the Claimant has accepted an Expedited Distribution in the amount of $[_____] from the Trust on account of his or her GUC Claim and agrees to execute this Release in consideration of the benefit of such Expedited Distribution.

## RELEASE

Each of the foregoing Recitals is hereby incorporated into this Release by reference and is made apart of this Release as if fully restated herein.

In consideration of the benefit of an Expedited Distribution from the Trust, I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, Trustee, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably waive, release, remit, acquit, forever discharge, and covenant not to sue the Released Parties for my GUC Claim, whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") and fully discharge the Released Parties of their duties and responsibilities (to the extent applicable) under the Trust Documents, including any agreement, document, instrument or certification contemplated by the Trust Documents, from the beginning of time through the execution date of this Release. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Expedited Distribution or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Expedited Distribution, to the extent applicable.

Claimant or Legal Representative Printed Name:  _____

Claimant or Legal Representative Signature: _____

Date: _____

3

**EXHIBIT 1-2**

FORM OF ACCEPTANCE AND RELEASE
(GUC CLAIM)

## ACCEPTANCE AND RELEASE (GUC CLAIM)

To receive payment on account of an Award (as defined below) from the Trust (the "**Trust**") created pursuant to the Chapter 11 Plan of Reorganization for Tehum Care Services, Inc., dated as of [●], 2024 (the "**Plan**"), the holder of a GUC Claim must execute and submit to the Trust this acceptance and release (the "**Release**").  **This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below).  A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient**.

## DEFINITIONS

The definitions set forth above for the terms "**Trust**," "**Plan**," and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.  All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Plan.

"**Award**" means the compensation a Claimant receives from the Trust on behalf of the Claimant's GUC Claim.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, having subject matter jurisdiction over the Chapter 11 Case.

"**Chapter 11 Case**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and currently styled *In re Tehum Care Services, Inc..*, Bankruptcy Case No. 23-90086 (CML).

"**Debtor**" means Tehum Care Services, Inc., the debtor and debtor-in-possession in the Chapter 11 Case.

"**Governmental Payor**" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services.

"**GUC Claim**" means a GUC Claim asserted by an individual (or an individual's estate) against the Debtor for alleged personal injury, wrongful death, or other similar Claim or Cause of Action arising out of or relating to an injury or death allegedly caused by the Debtor.

"**GUC Claimant**" means the holder of a GUC Claim who (a) has satisfied the eligibility criteria section forth in the Trust Distribution Procedures, (b) has had his or her GUC Claim assumed by the Trust for evaluation, resolution, and payment pursuant to the Plan, and (c) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to execute this Release on behalf of the GUC Claimant.

"**Lien**" or "**Liens**" means (i) any statutory lien of a Governmental Payor or Medicare Part C or Part D Program sponsor, or (ii) any mortgage, lien, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any other payer or provider, where there is a legal obligation to withhold payment of an Award, or some portion thereof, to a GUC Claimant under applicable federal or state law or for the GUC Claimant to reimburse the Government Payor, other payer or provider for amounts paid on the GUC Claimant's behalf in connection with the Claimant's GUC Claim.

"**Lien Resolution Administrator**" means that person or entity, retained by the Trustee to resolve Medicare Program Part A and B liens, Medicaid Program liens, and Medicare Part C Program liens, using the information provided by the GUC Claimant.

"**Medicaid Program**" means the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1, *et seq.*

"**Medicare Part C or Part D Program**" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with Centers for Medicare & Medicaid Services ("**CMS**").

"**Medicare Program**" means the Medicare Parts A and B federal program administered by CMS under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.*

"**Released Parties**" means the Trust, the Trustee, and the TAC and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, Trustee, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, and the TAC.

"**TAC**" means the Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**Trustee**" means Matthew Dundon of Dundon Advisors or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RECITALS

A.      **WHEREAS**, the Plan was confirmed by order of the Bankruptcy Court on [●] and became effective on [●].

B.      **WHEREAS**, the Plan provides for the assumption of GUC Claims against the Debtor by the Trust and for the treatment of GUC Claims against the Debtor through the Trust.

C.      **WHEREAS**, the Claimant has received and accepted an Award in the amount of $[_____] from the Trust on account of his or her GUC Claim and agrees to execute this Release in consideration of the benefit of such Award.

2

## RELEASE

Each of the foregoing Recitals is hereby incorporated into this Release by reference and is made apart of this Release as if fully restated herein.

In consideration of the benefit of an Award from the Trust, I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, Trustee, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably waive, release, remit, acquit, forever discharge, and covenant not to sue the Released Parties for my GUC Claim against the Debtor, whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") and fully discharge the Released Parties of their duties and responsibilities (to the extent applicable) under the Trust Documents, including any agreement, document, instrument or certification contemplated by the Trust Documents, from the beginning of time through the execution date of this Release. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

I hereby acknowledge that I am solely and ultimately responsible for the satisfaction and discharge of all Liens. I shall use my best efforts to resolve all known Liens.

Notwithstanding my responsibilities to resolve all known Liens, I hereby authorize the Lien Resolution Administrator to resolve all Medicare Program liens, Medicaid Program liens, and Medicare Part C Program liens, as set forth in the definition of Lien Resolution Administrator above. The Lien Resolution Administrator shall use best efforts to resolve the Medicare Program liens, Medicaid Program liens, and Medicare Part C Program liens on my behalf.

In further consideration of the benefit of an Award, I do hereby release, forever discharge, hold harmless, and covenant not to sue the Released Parties from all Claims arising from, relating to, resulting from or in any way connected to, in whole or in part, any act, or failure to act, of the Lien Resolution Administrator. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action based upon, arising out of, or relating to any Claim released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

I hereby acknowledge and agree that to the extent my information is incorrect or incomplete to any substantial degree, after reasonable diligence by the Lien Resolution Administrator, which results in the Lien Resolution Administrator being unable to properly verify coverage or identify Liens for which the Lien Resolution Administrator is responsible, then the Lien Resolution Administrator shall have no further responsibility for such unknown/unresolved Liens.

3

I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Award, to the extent applicable.

Claimant or Legal Representative Printed Name: _____

Claimant or Legal Representative Signature: _____

Date: _____

# EXHIBIT 1-3

FORM OF ACCEPTANCE AND RELEASE
(INDIRECT CLAIM)

## ACCEPTANCE AND RELEASE (INDIRECT CLAIM)

To receive payment on account of an Award (as defined below) from the Trust (the "**Trust**") created pursuant to the Chapter 11 Plan of Reorganization for Tehum Care Services, Inc., dated as of [●], 2024 (the "**Plan**"), the holder of an Indirect Claim must execute and submit to the Trust this acceptance and release (the "**Release**").  **This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below).  A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient**.

## DEFINITIONS

The definitions set forth above for the terms "**Trust**," "**Plan**," and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.  All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Plan.

"**Award**" means the compensation a Claimant receives from the Trust on behalf of the Claimant's Indirect Claim.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, having subject matter jurisdiction over the Chapter 11 Case.

"**Chapter 11 Case**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and currently styled *In re Tehum Care Services, Inc..*, Bankruptcy Case No. 23-90086 (CML).

"**Debtor**" means Tehum Care Services, Inc., the debtor and debtor-in-possession in the Chapter 11 Case.

"**Indirect Claim**" means a liquidated or unliquidated, contingent or non-contingent GUC Claim against the Debtor for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction).

"**Indirect Claimant**" means the holder of an Indirect Claim who (a) has satisfied the eligibility criteria section forth in the Trust Distribution Procedures, (b) has had its Indirect Claim assumed by the Trust for evaluation, resolution, and payment pursuant to the Plan, and (c) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to execute this Release on behalf of the GUC Claimant.

"**Released Parties**" means the Trust, the Trustee, and the TAC and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, Trustee, insurers, beneficiaries,

administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, and the TAC.

"**TAC**" means the Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**Trustee**" means Matthew Dundon of Dundon Advisors or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RECITALS

**A.**      **WHEREAS**, the Plan was confirmed by order of the Bankruptcy Court on [●] and became effective on [●].

**B.**      **WHEREAS**, the Plan provides for the assumption of GUC Claims against the Debtor by the Trust and for the treatment of GUC Claims against the Debtor through the Trust.

**C.**      **WHEREAS**, the Claimant has received and accepted an Award in the amount of $[_____] from the Trust on account of its Indirect Claim and agrees to execute this Release in consideration of the benefit of such Award.

## RELEASE

Each of the foregoing Recitals is hereby incorporated into this Release by reference and is made apart of this Release as if fully restated herein.

In consideration of the benefit of an Award from the Trust, I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, Trustee, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably waive, release, remit, acquit, forever discharge, and covenant not to sue the Released Parties for my Indirect Claim, whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") and fully discharge the Released Parties of their duties and responsibilities (to the extent applicable) under the Trust Documents, including any agreement, document, instrument or certification contemplated by the Trust Documents, from the beginning of time through the execution date of this Release.  I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Award, to the extent applicable.

2

Claimant or Legal Representative Printed Name: _____

Claimant or Legal Representative Signature: _____

Date: _____

CORE/3527808.0002/192354561.2

**EXHIBIT 5.**
**UCC PROFESSIONAL FEE ESCROW ACCOUNT**

Exhibit 5-1

# EXHIBIT 6.
## INVESTMENT GUIDELINES

Consistent with the provisions of Rev. Proc. 94-45 and notwithstanding any other provision of the Trust Agreement, the investment powers of the Trustee, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the trust, must be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

CORE/3527808.0002/196107448.1

Exhibit 6-1