## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

---

In re:

TEHUM CARE SERVICES, INC.,

Debtor.

Chapter 11

Case No. 23-90086 (CML)

---

### CHS TX, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS OMNIBUS MOTION TO ENJOIN PLAINITFFS FROM PROSECUTING CASES AGAINST RELEASED PARTIES RELATING TO "EXHIBIT C" PARTIES

CHS TX, Inc. respectfully files this supplementary Memorandum of Law further to the Court's August 7, 2025 "Decision and Order on YesCare's Omnibus Motion to Enjoin Plainitffs From Prosecuting Cases Against Released Parties" (the "Order"). Exhibit C to the Order identified eighteen claimants who "who were served with an Opt-Out Release Form and a notice of Non-Voting Status instead of a ballot." The Court withheld ruling on these parties (the "Exhibit C Parties") pending a further hearing.

For the reasons stated herein, the Court should grant the Omnibus Motion to Enjoin as to each of the Exhibit C Parties because (1) they had adequate notice for Due Process purposes, (2) they had actual notice of the Consensual Claimant Release

1

and ability to opt out, but did not opt out, (3) the Opt-Out Release Form itself fully complied with the substance of any "ballot" or "notice" required by the Procedures For Complex Cases in the Southern District of Texas, Procedure O.40 (the "Procedures") because the Opt-Out Release Form provided a voting box indicating whether the recipient wanted to opt out, and (4) none of the Exhibit C Parties has ever argued lack of notice, including in response to the Omnibus Motion.

Moreover, Exhibit C Party Todd Nachtweih, 21-cv-00371 (USDC E.D. Mo.) also returned his Opt-Out Release Form (No. 479) on February 20, 2025, and elected not to opt out. (*See* Doc. 1993, Exhibit B, p. 2-3 ("Opt-Out Form Returned and did Not Elect to Opt-Out")). The Court should therefore grant the Omnibus Motion as to Mr. Nachtweih for that additional reason.

## I.    EXHIBIT C PARTIES HAD ACTUAL NOTICE OF THE BANKRUPTCY PROCEEDING, THE CONSENSUAL CLAIMANT RELEASE, AND THEIR ABILITY TO OPT OUT.

1.    All Exhibit C Parties received *at least* "the Opt Out Release Form, Notice of Non-Voting Status, Confirmation Hearing Notice, and Return Envelope." (Doc. 1852, Exhibit H).

2.    The Exhibit C Parties received additional actual notice of the bankruptcy proceeding as follows:

    a.  **Suggestion of Bankruptcy**: Akinola, Beach, Hefley, Jeter, Lyles, McNamara, Nachtweih, Perkins, Vela[1], Wichterman, Wolf, Young.

---

[1] Vela received a "Notice of Filing of Bankruptcy and Automatic Stay."

b. **Stay/Motion**: Clay, Glenn.

c. **Claims Bar Date Notice (Doc. 609, Ex. D):**   Akinola (p.125), Beach (p. 14), Clay (p. 122), Dennison (p. 7), Hefley (p. 42), Jeter (p. 36), Jones (p. 92), Lyles (p. 7), McNamara (p. 44), Nachtweih (p. 148), Nettles (p. 89), Perkins (p. 98), Vela (p. 5), Wichterman (p. 37), Wolf (p. 161), Young (p. 9).

d. Todd Nachtweih, 21-cv-00371 (USDC E.D. Mo.) also returned his Opt-Out Release Form (No. 479) on February 20, 2025, and elected not to opt out.  (*See* Doc. 1993, Exhibit B, p. 2-3 ("Opt-Out Form Returned and did Not Elect to Opt-Out")).

## II.   ALL EXHIBIT C PARTIES HAD ADEQUATE DUE PROCESS NOTICE FOR PURPOSES OF THE CONSENSUAL CLAIMANT RELEASE.

The Court should hold that all Exhibit C Parties consented to the Consensual Claimant Release for three reasons: (1) they all had requisite notice for Due Process purposes because they all had actual notice of the bankruptcy proceeding in time to protect their rights, (2) to the extent additional notice was required, the Court already held that the Opt-Out Release Form, which they all received, was "actual notice" of the Consensual Claimant Release and the ability to opt out, and (3) the Opt-Out Release Form was compliant with all substantive requirements of the Procedures. None of the Exhibit C Parties opted out or otherwise expressed objection to the Consensual Claimant Release.

### A.   Notice That Satisfies Due Process.

The notice that due process requires is:

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (citations omitted) (emphasis added).  "[D]ue process does not require actual notice." *Jones v. Flowers*, 547 U.S. 220, 225 (2006); *In re La Fuente Home Health Servs., Inc.,* No. 14-70265, 2017 WL 1173599, at *3 (Bankr. S.D. Tex. Mar. 28, 2017) ("More importantly, actual notice is not the standard that is required for due process to be satisfied."). Thus, in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010), the U.S. Supreme Court found that a deprivation of a procedural right to receive a summons and complaint under the Bankruptcy Rules might have been timely objected to prior to confirmation but "did not amount to a violation of [the] constitutional right to due process" when the claimant had actual notice.  *See also Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 210 (5th Cir. 2003) (noting "[P]rocedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack" based on Due Process).

In *Robbins v. Amoco Prod. Co.,* 952 F.2d 901, 908 (5th Cir. 1992), the Fifth Circuit held that a creditor with both actual and inquiry notice of the bankruptcy proceedings who failed to take any action to avoid discharge of her claims was bound by the Chapter 11 plan.  The Fifth Circuit endorsed the Ninth Circuit's rationale in

*Lawrence Tractor Co. v. Gregory (In re Gregory)*), 705 F.2d 1118, 1123 (9th Cir. 1983), which held "[w]hen the holder of a large, unsecured claim ... receives any notice ... that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril."  Thus, "[w]hatever is notice enough to excite attention and put the party on his guard and call for inquiry, ***is notice of everything to which such inquiry may have led***."  *Robbins*, 52 F2d at 98.  (emphasis added). In *Robbins*, the Fifth Circuit held that a letter to the creditor from a Magistrate Judge was "sufficient to 'excite [her] attention' and put her on guard to inquire about any actions necessary to avoid discharge of her claims against [the debtor]."  *Robbins*, 952 F.2d at 908.

In *In the Matter of Sam*, 894 F.2d 778 (5th Cir. 1990), the Fifth Circuit held that a creditor who first learned of the bankruptcy case through notice of the automatic stay eighteen days prior to the bar date, but had actual notice of the bar date after the bar date had passed, was put on notice with sufficient time to present his objections for the constitutional due process purposes.  *Id*. at 782.  The Court found that the burden upon a creditor with notice of the bankruptcy petition to determine the bar date was not "so burdensome as to outweigh the need for expeditious administration of bankruptcy cases."  *Id*. at 781, *citing In re Price*, 79 B.R. 888, 892–93 (9th Cir. BAP 1987).  The Fifth Circuit further found that the

policy behind the notice rules was "satisfied when the creditor has actual knowledge of the case in time to permit him to take steps to protect his rights." *Id*. The Fifth Circuit imposed a two-part test to determine if due process would be satisfied: (1) whether the notice apprised the claimant of the pendency of the action, and (2) whether the notice was sufficiently timely to permit the claimant to act. *Id*. at 782.

The Fifth Circuit applied this two-part test in *In the Matter of Christopher*, 28 F.3d 512 (5th Cir. 1994) to determine if notice complied with due process. The Court recognized: "[w]e have concluded that it does not offend due process to view actual notice of a debtor's bankruptcy to a prepetition creditor as placing a burden on the creditor to come forward with his claim." *Id*. at 517. The Court held that a claimant who had actual notice of the bankruptcy prior to its claim arising was "sufficient to satisfy the dictates of due process and *Mullane*" and "due process is not offended…by requiring postpetition claimants…to come forward and protect their enhanced rights under the Code or else lose their rights through the sweeping discharge of Chapter 11." *Id*. at 519. The Court rejected the argument that the creditor was entitled to formal notice of the confirmation hearing date because "due process requires only notice that is both adequate to apprise a party of the pendency of an action affecting its rights and timely enough to allow the party to present its objections." *Id.*

The Fifth Circuit has continued to apply these principals to require claimants with timely knowledge of a bankruptcy to act to protect their rights.  In *Matter v. German Pellets Louisiana, L.L.C.*, 91 F. 4th 802 (5th Cir. 2024), for example, the Court recently rejected an argument from a creditor that it could not have known that filing a proof of claim was required to protect its rights when those rights arose pre-petition and the creditor had actual knowledge of the bankruptcy but never asserted its rights or objected to the plan.

Thus, the policy in this Circuit is well-established that "[c]reditors should not be encouraged to sit on their hands during the bankruptcy process and then later pursue their claims in another forum after the debtor's plan has been confirmed."  *In re Texas Tamale, Co., Inc*., 219 B.R. 732, 740 (Bankr. S.D. Tex. 1998); *In re Schepps Food Stores, Inc.,* 152 B.R. 136, 138 (Bankr. S.D. Tex. 1993) ("[o]nce creditors know about the bankruptcy, then they must take steps to protect their rights.").  In *Texas Tamale,* for example, the court applied the *In re Sam* test to hold that a creditor who received sufficient notice of the bankruptcy case after the bar date had a duty to prosecute a motion to allow a late filed claim.  The Bankruptcy Court found that the creditor had "several months prior to confirmation in order to assert his claim, could have protected his rights with a motion to allow late filed claim, and that it would have been "highly improbable that such a motion would not be granted…."  Thus, "[w]ith the constitutional safeguards of notice met, [the creditor's] failure to

meet his duty to act is fatal to his claims." *Id*.; *Thornton v. Seadrill Ltd*., 626 B.R. 422, 430 (Bankr. S.D. Tex. 2021) (creditor with notice could have filed motion to file late proof of claim).

Bankruptcy Courts in the Fifth Circuit have employed a third-party consensual claimant release with an opt out mechanism in hundreds of cases. *See In re Robertshaw US Holding Corp*., 662 B.R. 200 (Bankr. S.D. Tex., 2024). Although the Order overlooked it, at least one Bankruptcy Court in this District, post-*Purdue*, held that a claimant was bound by a consensual claimant release even though (unlike every Exhibit C Party) the claimant did not receive an opt-out release form. *See In re Pipeline Health Systems, LLC*, 2025 WL 686080, *3-4 (Bankr. S.D. Tex. Mar. 3, 2025). In that case, the Bankruptcy Court found that the reason the claimant did not receive the opt-out release form was dispositive—he did not receive the opt out form "because he did not file a proof of claim." *Id*. Thus, how *In re Pipeline* treated consent for purposes of a consensual claimant release is consistent with Fifth Circuit precedent holding that a claimant with knowledge of a bankruptcy proceeding and time to assert their rights cannot benefit from sleeping on their rights. *See also In re CJ Holding Co*., 597 B.R. 597, 608-609 (S.D. Tex. 2019) (claimant with notice of

the proposed plan and hearing date who was not entitled to vote on plan confirmation was bound to a consensual claimant release by failing to object).[2]

## B.      All Exhibit C Parties Had Notice That Satisfies Due Process.

The Due Process question at issue here has already been answered.  The Court already held that the Opt Out Release Form provided claimants with "actual notice" of the Consensual Claimant Release and their ability to opt out.  (Doc. 2374 at 5).[3] This opt out procedure is consistent with longstanding Fifth Circuit precedent approving of consensual claimant releases with an opt out mechanism.  *See In re Robertshaw*, 662 B.R. 200 (Bankr. S.D. Tex. 2024) ("There is nothing improper with an opt-out feature for consensual third-party releases in a chapter 11 plan.").  Like the Exhibit A Parties that the Court enjoined, every one of the Exhibit C Parties received the Opt-Out Release Form and did not opt out.  Accordingly, there is no

---

[2]  Although every Claimant at issue in this brief had the opportunity to consent through how they dealt with the Opt-Out Release Form because they received it, it is also true that any claimant with timely knowledge of the bankruptcy proceeding had the *opportunity* to express consent or objection to the consensual claimant release *if they acted to protect their rights.*  The Consensual Claimant Release was *not* a nonconsensual release barred by *Purdue*—there was always an opportunity to opt out of it prior to confirmation, even if a claimant was not entitled to vote on the Plan

[3]  The adequacy of the Court-approved Publication Notice is not at issue with respect to any party discussed in this brief.

question that the Exhibit C Parties received "actual notice" for Due Process purposes.

Were it not enough that the Exhibit C Parties received the Opt-Out Release Form, all of them also received one or more other forms of timely, actual notice of the bankruptcy proceeding that was "sufficient to 'excite [their] attention' and put [them] on guard to inquire" about "everything to which such inquiry may have led." *Robbins*, 952 F.2d at 908. Most received actual notice of the bankruptcy proceeding early on through a Suggestion of Bankruptcy or similar filing in their lawsuit. Most received actual notice of the Claims Bar Date.[4] And they all received the Confirmation Hearing Notice, which also provided the full text of the Consensual Claimant Release and instructions for objecting to the Plan. (Doc. 1813, Ex. 4-1, ¶ 6, ¶ 7.B).

Despite receiving these forms of actual notice, none of the Exhibit C Parties expressed lack of consent by returning the Opt-Out Release Form or by objecting at the Confirmation Hearing, which means none expressed lack of consent to the Consensual Claimant Release when they had opportunities to do so.[5] Notably, none

---

[4] The Exhibit C Parties had more protections here than the creditor at issue in *In re Pipeline* because their failure to file a Proof of Claim did not mean that they did not receive an Opt-Out Release Form.

[5] Exhibit B Party Lisa Brown, listed on Doc. 1852 Ex. R, also received the Confirmation Hearing Notice. Brown had adequate notice for due process purposes because she had actual notice of the bankruptcy proceeding, actual notice of the

of the Exhibit C Parties filed an objection to the Omnibus Motion that argued lack of actual notice.[6]

Accordingly, the Court should hold that all Exhibit C Parties are bound by the Consensual Claimant Release because they all had adequate notice for due process purposes and did not opt out.

### C.    The Opt-Out Release Form Complied With The Procedures

The Supreme Court recognized in *Espinosa* that a party who does not receive certain documents provided for in the Bankruptcy Rules may be able to make a timely procedural objection prior to confirmation, but they cannot argue lack of Due Process after confirmation if they had timely notice of the bankruptcy proceeding.

---

Consensual Claimant Release, and actual notice of her opportunity to object to the Plan. Brown never expressed lack of consent to the Consensual Claimant Release or the Plan in general in any way.

Exhibit B Party Jesse Dean, listed on Doc. 1852, Ex. O and Q, received a USB, Plan, Disclosure Statement, TCC Letter, UCC Letter, Solicitation Procedures Order, Solicitation Procedures, and Confirmation Hearing Notice. Dean had adequate notice for due process purposes because he had actual notice of the bankruptcy proceeding, actual notice of the Consensual Claimant Release, and actual notice of his opportunity to object to the Plan. Dean never expressed lack of consent to the Consensual Claimant Release or the Plan in general in any way.

The Court should amend its Order to hold that Lisa Brown and Jesse Dean are also enjoined for the reasons set forth herein.

[6]  The only Exhibit C Party to object to the Omnibus Motion was Andrew Lyles. Lyles contends that the sole defendant in his lawsuit is not a "Released Party." Lyles is wrong. CHS TX will demonstrate that in a separate motion relating to his case.

Here, all Exhibit C Parties not only had the actual notice provided by the Opt-Out Release Form, but they were also provided the Confirmation Hearing Notice.  None of the Exhibit C parties objected prior to confirmation that they did not receive a particular document under the Procedures.[7]  ***None of them made that argument in response to the Omnibus Motion either.***  As such, the Exhibit C Parties waived any argument that they did not receive a document potentially required by the Procedures.  As discussed below, however, the Opt-Out Release Form they all received itself complied with the Procedures.

The Court's Order withheld ruling on the Exhibit C Parties because they were served "with an Opt-Out Release Form and a notice of Non-Voting Status *instead of a ballot*."  It is not clear what the Court meant by "instead of."  The Order found that the *Opt-Out Release Form* was intended to be the document used to obtain consent. (Doc. 2374 at 5, n. 28).  As the Court stated:

> There was a separate procedure approved in the Solicitation Order that required parties to receive an Opt-Out Release Form, which gave them the right to check a box and opt out of the releases. Every party asked for a third-party release had to receive an Opt-Out Release Form.

---

[7]  The Confirmation Hearing Notice, which all Exhibit C Parties received, provided: "If You have not received a Ballot and are entitled to vote on the Plan, You may request a Ballot and voting instructions from the Solicitation Agent by e-mail at tehuminfo@veritaglobal.com and submit Your Ballot as set forth above by the Voting Deadline." (Doc. 1813, Ex. 4, ¶ 5).  Accordingly, to the extent any Exhibit C Party believed they were entitled to vote on the Plan, they had the opportunity to obtain a ballot, or object to not receiving one, prior to confirmation.

(Doc. 2374 at 5).  All the Exhibit C Parties received the "required" Opt-Out Release Form.[8]

The Court appears to be focused on the word "ballot" because it is mentioned in Procedure O.40, which states:

> If a proposed plan seeks consensual pre- or post-petition releases with respect to claims that creditors may hold against non-debtor parties, then a ballot must be sent to creditors ***entitled to vote on the proposed plan*** and notices must be sent to non-voting creditors and parties in-interest. ***The ballot and the notice must inform the creditors of such releases and provide a box to check to indicate assent or opposition to such consensual releases together with a method for returning the ballot or notice.***

Thus, there are two considerations in the Procedure: (1) was the party entitled to receive a "ballot" or "notice" and, (2) regardless of the label appended to the document received, did it contain the substance required by the Procedure?  As discussed below, the Court should find that the Procedure was met with regard to all Exhibit C Parties because (1) the content of the Court-approved Opt-Out Release Form complied with all substantive requirements of the Procedures for both "ballot" and "notice" recipients, and (2) none of the Exhibit C Parties were entitled to a "ballot" for purposes of the Procedure because they were not "entitled to vote on the proposed plan."

---

[8] Had they received a different document "instead of" it, upon a timely pre-confirmation objection the Court may have found that they did not have the right document.

***First***, the Opt-Out Release Form itself is both a "ballot" (literally, a mechanism for voting) and a "notice" that complies with the Procedures because it meets all three substantive requirements of Procedure O.40, namely, it:

(i)    "informs the creditors of such releases;"

(ii)    "provide[s] a box to check to indicate assent or opposition ***to such consensual releases***;***"***

(iii)    "together with a method for returning the ballot or notice."

(*See* Doc. 1813, Exhibit 2).

The Court-approved Opt-Out Release Form provides "actual notice" that goes into great detail to inform creditors about the Consensual Claimant Release, including identifying the purpose of the Opt-Out Release Form, why the recipient received it, reprinting the text of the entire Consensual Claimant Release, and providing instructions for returning it.  The Opt-Out Release Form also provides a litany of boldfaced and all-caps warnings about the consequences of election or non-election, including:

**IN MAKING THIS ELECTION, YOU ARE HEREBY ADVISED, AND ARE URGED TO KEEP THE FOLLOWING IN MIND:**

- **TO AVOID GRANTING THE CONSENSUAL CLAIMANT RELEASE AGAINST THE "RELEASED PARTIES" AS THAT TERM IS DEFINED IN THE PLAN, <u>YOU MUST AFFIRMATIVELY CHECK THE FIRST BOX ABOVE AND INDICATE THAT YOU ARE ELECTING NOT TO GRANT THE CONSENSUAL CLAIMANT RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN.</u>**

- **IF YOU AFFIRMATIVELY ELECT TO GRANT THE CONSENSUAL CLAIMANT RELEASE, IF YOU MAKE NO ELECTION AT ALL, OR IF YOU DO NOT COMPLETE THIS FORM, THEN YOU WILL BE DEEMED TO HAVE CONSENTED TO THE CONSENSUAL CLAIMANT RELEASE.**

- **THE CONSENSUAL CLAIMANT RELEASE TO WHICH THIS OPT-OUT RELEASE FORM APPLIES IS SEPARATE FROM AND INDEPENDENT OF THE OTHER RELEASES CONTAINED IN ARTICLES IX.C AND IX.E AND THE EXCULPATION, RECOUPMENT, AND INJUNCTION PROVISIONS IN ARTICLES IX.F-K, AMONG OTHER PROVISIONS. IF YOU OBJECT TO ANY ASPECT OF ARTICLE IX BESIDES THE CONSENSUAL CLAIMANT RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE SOLICITATION PROCEDURES ORDER.**

*Second*, the Opt-Out Release Form is *a literal ballot* that included a required "box to check to indicate assent or opposition":

**ITEM 3 — CONSENSUAL CLAIMANT RELEASE ELECTION.**

BY CHECKING THIS BOX, THE UNDERSIGNED HOLDER:

☐   ELECTS <u>NOT</u> TO GRANT THE CONSENSUAL CLAIMANT RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN.

☐   ELECTS TO GRANT THE CONSENSUAL CLAIMANT RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN.

**Third**, the Opt-Out Release Form included a "method for returning the ballot or notice":

**INSTRUCTIONS ON SUBMITTING THIS OPT-OUT RELEASE FORM**

IF YOU WISH TO OPT-OUT OF THE CONSENSUAL CLAIMANT RELEASE SET FORTH IN ARTICLE IX.D OF THE PLAN, PLEASE <u>EITHER</u>:

1. COMPLETE, SIGN, AND DATE THIS OPT-OUT RELEASE FORM AND RETURN IT TO VERITA GLOBAL IN THE RETURN ENVELOPE PROVIDED OR OTHERWISE BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:

> Tehum Care Services, Inc.
> Ballot Processing Center
> Verita Global
> 222 N. Pacific Coast Hwy., Ste. 300
> El Segundo, CA 90245

2. SUBMIT YOUR OPT-OUT RELEASE FORM VIA THE BALLOTING AGENT'S ONLINE PORTAL AT HTTPS://VERITAGLOBAL.NET/TEHUM. CLICK ON THE "<u>SUBMIT E-BALLOT</u>" SECTION OF THE WEBSITE AND IN ACCORDANCE WITH THE INSTRUCTIONS THERE PROVIDED TO SUBMIT YOUR OPT-OUT RELEASE FORM.

As such, the Opt-Out Release Form complies will all substantive and procedural content in the Procedures. Research has not revealed any precedent indicating that the content of the Opt-Out Release Form here was inadequate for purposes of the Procedures.

Notably, the Procedures do not define the term "ballot" (or "notice" for that matter) as requiring provision of something different than a method of voting that enables the recipient to "check to indicate assent or opposition to such consensual releases," which is what the Opt-Out Release Form provided. The Procedure does

*not* require that anyone be sent a "ballot" for the purpose of voting on the Plan.  That is a different right entirely that was subject to a different procedure and several limitations discussed below.  Accordingly, that Exhibit C Parties were not sent a ballot to vote on the Plan is immaterial to the adequacy of consent to the Consensual Claimant Releases.  *See In re CJ Holding Co*., 597 B.R. 597, 608-609 (S.D. Tex. 2019) (claimant with notice of the proposed plan and hearing date *who was not entitled to vote on plan* confirmation was bound to a consensual claimant release by failing to object); *In re Pipeline,* 2025 WL 686080, *3-4 (Bankr. S.D. Tex. Mar. 3, 2025) (claimant who received notices but did not receive an opt out release form bound by consensual claimant release because he did not object).

### D.    Exhibit C Parties Were Not Entitled to Vote on the Proposed Plan

The Procedure only requires that "a ballot must be sent to creditors *entitled to vote on the proposed plan*."  Although the Order does not address it, the reason parties listed on Exhibit H to the Solicitation Certificate of Service received a Notice of Non-Voting Status is because they were *not* "entitled to vote on the proposed plan." (Doc. 1813 at 101-102).  As such, although the Opt-Out Release Form was a literal ballot, the Exhibit C Parties were not entitled to a "ballot."

As the Notice of Non-Voting Status states, Holders of a claim in Class 1 (Other Priority Claim), Class 2 (Secured Claims), or Class 11 (Interests in the Debtor) were part of a "Non-Voting Class," who, along with Unclassified Claims,

were either presumed to accept (Class 1 and 2) or not accept (Class 11) the Plan.[9]

Further, pursuant to the "Order (I) Setting Bar Dates For Filing Proofs of Claim…,"

any creditor who did not file a timely Proof of Claim was prohibited from voting to

accept or reject the Plan.  (Doc. 499, VI.14).  None of the parties listed on Exhibit C

has ever contended they were misclassified or maintained a viable right to vote on

the Plan.  Accordingly, the Exhibit C Parties were entitled to "notice" but not a

"ballot" under the Procedures.   As discussed, however, the Court should view this

as a distinction without a difference because the Opt-Out Release Form was an

adequate notice *and* ballot for purpose of the Procedure (i.e., voting "to indicate

assent or opposition" to the release).  The fact that the Exhibit C Parties did not

receive a ballot to vote on the Plan does not change the fact that they received an

adequate Court-approved Opt-Out Release Form and were informed that they had a

separate right to opt out if they so desired.

Notwithstanding their inability to vote on the Plan, those holding Non-Voting

Status were also provided the Confirmation Hearing Notice and expressly told that,

how, and by when, they could file an objection to confirmation of the Plan.  (Doc.

1813, Ex. 4-3, ¶ 2[10]; Ex. 4-1, ¶ 6).  The Notice of Non-Voting Status also expressly

---

[9]  The Plan's definition of "Ballot" does not include the form of ballot provided to
Holders of Claims in Classes 1, 2, or 11.  Plan, Art. I, ¶ 11.

[10]  "Notwithstanding the fact that You are not entitled to vote to accept or reject the
Plan, You nevertheless may be a party in interest in the Chapter 11 Case and You,

restated the full Consensual Claimant Release.  (Doc. 1813 at 110-111).  And the Opt-Out Release Form made it clear that the Opt-Out Release Form must be submitted "to avoid granting the Consensual Claimant Release" regardless of whether the claimant votes to accept or reject the plan and regardless of Non-Voting Status related to the Plan:

> Whether a Holder casts, chooses not to cast, or fails to cast (for whatever reason) a Ballot to accept or reject the Plan, a Holder must separately fill out and submit this Opt-Out Release Form to avoid granting the Consensual Claimant Release.

> Accordingly, You may fill out Opt-Out Form Release regardless of: (1) the Class in which Your Claim may be categorized under the Plan; (2) Your view as to the nature and proper classification of Your Claim; (3) the legal elements of Your Claim; (4) the non-classification of Your Claim; and (5) Your receipt of a Ballot to vote to accept or reject the Plan as the Holder of a Convenience Claim, General Unsecured Claim, PI/WD Claim, or an Indirect Claim a separate standalone document provided to the Holders of Claims in Class 3, 4, 5, 6, 7, 8, 9, or 10 along with this Opt-Out Release Form.

> For this Opt-Out Release Form to be effective, You **must** follow the instructions set forth in this Opt-Out Release Form.

As such, everyone who received the Opt-Out Release Form, Notice of Non-Voting Status, and the Confirmation Hearing Notice had *at least* (i) actual notice of the Consensual Claimant Release, (ii) actual notice of their ability to opt-out, (iii) an actual "ballot" enabling them to vote to opt-out, (iv) actual notice of their ability to object to the Plan, and (v) they were provided timely instructions for both opting out and objecting to the Plan if they so desired.  That notice was in addition to any other

---

therefore, may be entitled to participate in the Chapter 11 Case, including by filing objections to confirmation of the Plan.  If You would like to object to the Plan, You may do so by filing Your objection no later than February 21, 2025, at 5:00 p.m."

notice they had about the bankruptcy proceeding that triggered a duty to act to protect their rights.  The Court should therefore recognize the Exhibit C Parties as subject to the Consensual Claimant Release because they did not return an Opt-Out Release Form or otherwise indicate their desire to opt out.  *See In re CJ Holding*, 597 B.R. at 609 ("Allowing the bankruptcy court to approve the Plan releases, including construing [claimant's] silence as consent, serves the bankruptcy law's purpose of quick and efficient resolution of claims to permit a debtor's business to continue.").

The Order already held that parties who were served with an Opt-Out Release Form and did not opt out are "bound by the consensual third-party releases in the Plan."  For the foregoing reasons, the Exhibit C Parties should be treated no differently than anyone on Exhibit A who received the Opt-Out Release Form and did not return it.  The Court should therefore issue an Order enjoining all Exhibit C Parties from continuing to litigate against any specifically named Released Party as long as there is no uncured default.  (*See* Plan, Doc. 1815-1 at 14).

For the sake of completeness, the Court's Order should also clarify that:

(1) Todd Nachtweih, 21-cv-00371 (USDC E.D. Mo.), is enjoined for the additional reason that he returned an Opt-Out Release Form and elected not to opt out;

(2) Exhibit B Parties Lisa Brown and Jesse Dean are enjoined because both had adequate notice of the Consensual Claimant Release for Due Process purposes and did not opt out or otherwise object to the Plan.

## CONCLUSION

For the reasons stated in the Omnibus Motion to Enjoin, herein, and any exhibits thereto, the Court should enter an Order holding:

(1) The parties listed on Exhibit C to the Court's August 7, 2025, Order were served an Opt-Out Release Form, Notice of Non-Voting Status, and the Confirmation Hearing Notice and are bound by the consensual third-party releases in the Plan. These parties are restrained and enjoined from taking any action to prosecute any causes of action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party based on released Causes of Action (as such terms are defined in the Plan).

(2) Exhibit C Party Todd Nachtweih, 21-cv-00371 (USDC E.D. Mo.), is enjoined for the additional reason that he returned an Opt-Out Release Form and elected not to opt out.

(3) Lisa Brown and Jesse Dean, parties listed on Exhibit B to the Court's August 7, 2025 Order, were served the Confirmation Hearing Notice and are bound by the consensual third-party releases in the Plan because they did not object to the

Plan or the Consensual Claimant Release.  These parties are restrained and enjoined from taking any action to prosecute any causes of action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party based on released Causes of Action (as such terms are defined in the Plan).

Respectfully submitted,


By: */s/ Trevor W. Carolan*
  Trevor W. Carolan
  State Bar No.: 24128898
  Southern District No. 3794850
  **BOWMAN AND BROOKE LLP**
  5850 Granite Parkway, Suite 900
  Plano, TX  75024
  (972) 616-1700 (Telephone)
  Trevor.carolan@bowmanandbrooke.com

  Adam M. Masin
  *Admitted Pro Hac Vice*
  **BOWMAN AND BROOKE LLP**
  750 Lexington Avenue
  New York, NY 10022
  (646) 844-9252 (Telephone)
  Adam.masin@bowmanandbrooke.com

  ***Attorneys for Movants***
  ***CHS TX, INC. d/b/a YESCARE***

**CERTIFICATE OF SERVICE**

I do hereby certify that on the 27th day of August, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court and served using the CM/ECF system. In addition, a true and correct copy has been electronically mailed or mailed via first-class US mail to the following:

| | |
|---|---|
| Benjamin H. Beach<br>498111<br>Thumb Correctional Facility<br>3225 John Conley Dr,<br>Lapeer, MI 48446 | Randy Ladell Clay<br>957241-B/1083138<br>East Jersey State Prison<br>Lock Bag R<br>Rahway, NJ 07065 |
| Dante A. Jeter<br>562-634<br>Western Correctional Institution<br>13800 McMullen Hwy<br>Cumberland, MD 21502 | Keith Darnell Kelly #449315<br>SID#4050880<br>Western Correctional Institution<br>13800 McMullen Highway, SW<br>Cumberland, MD 21502 |
| Macking Nettles #271812, Jr.<br>Parnall (MSP)<br>Parnall Correctional Facility<br>1780 E Parnall<br>Jackson, MI 49201 | Michael Sean Perkins<br>197884<br>Macomb Correctional Facility<br>34625 26 Mile Road<br>Lenox Township, MI 48048 |
| Andrew J.J. Wolf<br>#35408<br>Idaho State Correctional Center<br>P.O. Box 70010<br>Boise, ID 83707 | Andre Dennison<br>ASPC - Eyman, Meadows Unit<br>P.O. Box 3300<br>Florence, AZ 85132 |
| Ardra Young<br>260575<br>Richard A. Handlon Correctional Facility<br>1728 Bluewater Highway<br>Ionia, MI 48846 | Daniel Randazzo<br>2731 South Adams Road, Suite 100<br>Rochester Hills, MI 48309<br>attyrandaz@aol.com |
| Kirk Edward MacKinnon Morrow<br>Zuckerman Spaeder LLP<br>100 East Pratt Street<br>Suite 2440<br>Baltimore, MD 21202<br>kmackinnonmorrow@zuckerman.com | Nathan A. Duncan<br>DOUGLAS HAUN PC - Bolivar<br>103 E. Broadway Street<br>Bolivar, MO 65613<br>nduncan@peckbaxter.com |

| | |
|---|---|
| Alison Ray Hershewe<br>Hershewe Law Firm, PC<br>431 S. Virginia Ave.<br>Joplin, MO 64801-2399<br>alison.hershewe@h-law.com | Ian T. Cross<br>Cross Law PLLC<br>402 W Liberty St.<br>Ann Arbor, MI 48103<br>ian@lawinannarbor.com |
| Jonathan H. Feinberg<br>Kairys Rudovsky Messing Feinberg & Lin LLP<br>The Cast Iron Bldg Ste 501 South<br>718 Arch Street<br>Philadelphia, PA 19106<br>jfeinberg@krlawphila.com | George B. Restovich<br>Restovich and Associates LLC<br>214 N. Clay Ave.<br>Suite 210<br>Kirkwood, MO 63122<br>george@restovichlawstl.com |
| Blake W Horwitz<br>The Blake Horwitz Law Firm Ltd<br>216 S Jefferson St Ste 101<br>Chicago, IL 60661<br>bhorwitz@bhlfattorneys.com | Jared S Kosoglad<br>The Blake Horwitz Law Firm Ltd<br>216 S Jefferson St Ste 101<br>Chicago, IL 60661<br>jared@jaredlaw.com |
| Martin S Himeles, Jr<br>Zuckerman Spaeder LLP<br>100 E Pratt St Ste 2440<br>Baltimore, MD 21202<br>14109491144<br>mhimeles@zuckerman.com | John Benjamin Jernigan<br>Zuckerman Spaeder LLP<br>2100 L Street NW<br>Suite 400<br>Washington, DC 20037-1525<br>bjernigan@zuckerman.com |
| Laurence H Margolis<br>Margolis Law Firm<br>214 South Main Street, Suite 202<br>Ann Arbor, MI 48104<br>assistant@lawinannarbor.com | Todd Schroeder<br>McKeen and Associates<br>645 Griswold Street<br>Suite 4200<br>Detroit, MI 48226<br>fmills@mckeenassociates.com |
| D. Michael Noonan<br>Shaheen & Gordon, P.A. (Dover)<br>353 Central Ave., 2nd Fl.<br>P.O. Box 977<br>Dover, NH 03821-0977<br>mnoonan@shaheengordon.com | |

By: */s/ Trevor W. Carolan*
Trevor W. Carolan