IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| **TEHUM CARE SERVICES, INC.** | § | |
| | § | |
| Debtor. | § | Case No. 23-90086 |

**EMERGENCY MOTION OF YESCARE CORP., ONE OF THE SETTLEMENT PARTIES UNDER LOCAL COMPLEX RULE K[1] (1) ENFORCING FORBEARANCE AGREEMENT; (2) EXTENDING CURE PERIOD FOR SETTLING PARTIES' PLAN DEFAULT; (3) PREVENTING TERMINATION OF CHANNELING INJUNCTION; AND (4) FOR RELATED RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES MUST ACT THROUGH THEIR ATTORNEY**

---

[1] Complex Rule K states as follows:

> Unless otherwise provided in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or Court Order, if a motion is filed that complies with these procedures to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or a confirmed plan, the time for taking the action is automatically extended until the Court rules on the motion. An automatic extension under this rule does not require the issuance or entry of an order extending the time.

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

YesCare Corp., one of the the Settlement Parties, (as defined in the Plan) file this Emergency Motion under Local Complex Rule K (1) enforcing the parties' forbearance agreement; (2) extending the cure period for Settlement Parties' Plan Default; (3) preventing termination of the Channeling Injunction; and (4) granting related relief, and respectfully state as follows:

**STATEMENT REGARDING REQUEST FOR EMERGENCY RELIEF**

1. On January 26, 2026, the Trusts (as defined below), notwithstanding their receipt of a $200,000.00 forbearance fee from the Settlement Parties, filed a *Notice of Settlement Payment Default and Settlement Payment Cure Notice* ("the "Default Notice", Dkt. 2591), pursuant to which the Channeling Injunction in the Plan and Confirmation Order will terminate on February 2, 2026. Emergency relief is requested prior to **February 2, 2026**, to enforce the parties' forbearance agreement. Immediate and irreparable harm will occur if the Channeling Injunction terminates on February 2, 2026:

   a. All Released Parties will lose protection from tort litigation;

   b. A 90-day window will open for potentially thousands of claimants to file lawsuits;

   c. The carefully structured Plan confirmed by this Court will be fundamentally undermined;

   d. The Settlement Parties will face unlimited liability exposure;

   e. The orderly claims resolution process established by the Plan will likely collapse; and

      f. Years of negotiation and confirmation proceedings will be rendered meaningless.

## PRELIMINARY STATEMENT

2. This Emergency Motion is necessitated by the PI/WD Trust's and GUC Trust's (together, the "Trusts") improper attempt to terminate the Channeling Injunction despite having accepted forbearance fees from the Settlement Parties without providing the promised forbearance agreement or period.

3. The Settlement Parties acted in good faith by paying a forbearance fee to the Trusts. The Trusts accepted this payment, creating an enforceable forbearance agreement and/or estopping the Trusts from declaring a default during the forbearance period.

4. The Default Notice improperly accelerates the default timeline and threatens to terminate the Channeling Injunction on February 2, 2026, despite the Trusts' acceptance of forbearance fees and failure to honor the forbearance terms.

5. Absent immediate relief from this Court, the Channeling Injunction will terminate automatically on February 2, 2026, exposing the Settlement Parties to unlimited tort litigation and fundamentally undermining the carefully negotiated Plan confirmed by this Court.

6. The Settlement Parties seek an order from this Court: (1) recognizing and enforcing the forbearance agreement created by the Trusts' acceptance of forbearance fees; (2) extending the cure period for a reasonable time to allow the parties to negotiate a formal written forbearance agreement and payment schedule; and (c) preventing termination of the Channeling Injunction.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. The Plan and Settlement Structure

9. On March 3, 2025, this Court entered its Confirmation Order confirming the First Modified Joint Chapter 11 Plan of Reorganization (the "Plan").

10. Under the Plan, the Settlement Parties agreed to make installment settlement payments totaling $50,000,000.00 over time, with specific payment dates and amounts. To date, the Settlement Parties have paid the Trusts $18,848,356.00, in addition to the $14,500,000.00 forgiveness of the DIP loan.

11. Article IV.B.2 of the Plan provides that if a Settlement Payment Default occurs and is not cured within five (5) Business Days of written notice (or waived by the Trustees), the Channeling Injunction and all protections afforded to the Settlement Parties terminate automatically.

12. The Plan defines Settlement Payment Default as failure to make an Installment Settlement Payment within the applicable payment date or within a grace period of five (5) Business Days from such date. *See* Plan at Art. IV.B.2.

13. The Settlement Parties committed a Settlement Payment Default by failing to make the September 15, 2025, Settlement Payment. The Settlement Payment Default was caused by the threat of and, ultimately, the U.S. Government shot down in October 2025.

### B. The Forbearance Fee Payments and Agreement

14. Immediately following the Settlement Payment Default, the Settlement Parties reached out to counsel for the Trusts to address the issue.

15. On November 19, 2025, after extensive discussions with counsel for the Trusts, the parties agreed to a forbearance, provided that the Settlement Parties pay a $200,000.00 forbearance fee (the "Forbearance Fee"). Pursuant to this agreement, the Settlement Parties made two separate Forbearance Fee payments totaling $200,000.00 to both Trusts. *See* Exhibits A and B (Wire Confirmations).

16. The explicit designation of both payments—totaling $200,000—as "forbearance" payments demonstrates the parties' clear and mutual understanding that this substantial sum was consideration for forbearance of the Trusts' default remedies.

17. The Settlement Parties paid the Forbearance Fee in good faith reliance upon receiving a written forbearance agreement from the Trusts that would provide additional time to make the outstanding Settlement Payments.

18. Both Trusts accepted and retained the Forbearance Fee payments.

19. The Forbearance Fee payments were made to both trustees (the PI/WD Trustee and the GUC Trustee), clearly indicating the parties' understanding that forbearance would be provided by both Trusts.

20. Despite accepting and retaining the Forbearance Fee explicitly labeled as such, the Trusts failed and refused to provide the Settlement Parties with a written forbearance agreement or to honor any forbearance period.

21. The Trusts' retention of the Forbearance Fee while simultaneously declaring defaults and threatening automatic termination of the Channeling Injunction constitutes bad faith and unjust enrichment.

**C. The Missed Payments and Default Notice**

22. Due to issues occasioned by the U.S. Government shutdown, the Settlement Parties were unable to make the following Installment Settlement Payments:

> September 15, 2025: $1,500,000
>
> October 15, 2025: $1,500,000
>
> November 15, 2025: $1,500,000
>
> December 15, 2025: $1,500,000
>
> January 15, 2026: $1,500,000

23. Notably, the Settlement Parties paid $200,000 in forbearance fees on November 19, 2025—just four days after missing the November 15, 2025, payment—demonstrating their good faith intent to work with the Trusts to cure the defaults under a forbearance arrangement. This payment was made specifically to both Trusts to secure forbearance.

24. On January 26, 2026, the Trusts filed their Default Notice (Dkt. No. 2591), triggering a five (5) Business Day cure period that expires on Monday, February 2, 2026.

25. The Default Notice states that if the default is not cured or waived by February 2, 2026, the Channeling Injunction will terminate automatically, exposing all Released Parties to massive tort litigation. *See* Default Notice at 1-2.

26. The Settlement Parties were actively working to cure the defaults and anticipated that the forbearance agreement—for which they paid $200,000—would provide the necessary time to do so.

27. The Trusts' acceptance and retention of the $200,000 Forbearance Fee while simultaneously refusing to honor forbearance terms and accelerating the default timeline constitutes bad faith and unjust enrichment.

**BASIS FOR RELIEF**

**A. The Trusts' Acceptance of the Forbearance Fee Created and Enforceable Agreement.**

28. Under basic contract principles, an agreement exists where there is: (i) an offer; (ii) acceptance; (iii) meeting of the minds; and (iv) consideration. *See* RESTATEMENT (SECOND) OF CONTRACTS § 17 (1981).

29. The Settlement Parties offered the Forbearance Fee in exchange for a forbearance period and agreement.

30. The Trusts accepted the Forbearance Fee, thereby accepting the offer and creating a binding agreement.

31. Consideration existed: the Settlement Parties paid the Forbearance Fee, and the Trusts received immediate payment in exchange for agreeing to forbear from exercising default remedies.

32. The parties had a meeting of the minds regarding the essential terms: payment of a fee in exchange for forbearance.

33. Even if certain terms remained to be negotiated in a formal written agreement, the payment and acceptance of a specifically designated "forbearance fee" created an enforceable agreement for forbearance of some reasonable duration. *See Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.,* 670 F. Supp. 491, 498 (S.D.N.Y. 1987) (it is important to enforce and preserve agreements that were intended to be binding despite a need for further documentation or negotiation).

34. At minimum, the Trusts' acceptance of forbearance fees created an implied-in-fact contract for a reasonable forbearance period.

**B. The Trusts are Estopped from Declaring a Default.**

35. Equitable estoppel prevents a party from taking a position inconsistent with its prior conduct where another party has relied to its detriment. *See Heckler v. Cmty. Health Servs.*, 467 U.S. 51 (1984).

36. The Trusts accepted the Forbearance Fee, creating a reasonable expectation that forbearance would be provided.

37. The Settlement Parties relied on this expectation by:

   a. Paying the Forbearance Fee;

   b. Continuing to negotiate in good faith with the Trusts regarding a payment plan;

   c. Forgoing alternative uses of the $200,000; and

   d. Operating under the assumption that forbearance would be provided.

38. It would be inequitable and unjust to allow the Trusts to retain the Forbearance Fee while declaring defaults and terminating the Channeling Injunction.

39. The Trusts are estopped from taking a position inconsistent with their acceptance of the Forbearance Fee—namely, that no forbearance exists.

**C. Good Faith and Equity Require Forbearance.**

40. Bankruptcy courts have broad equitable powers to prevent unfairness and ensure the proper functioning of confirmed plans. *See* 11 U.S.C. § 105(a).

41. The Settlement Parties acted in good faith throughout this process:

   a. They paid $200,000 in Forbearance Fee within days of the first missed payment;

   b. They continued to negotiate with the Trusts;

   c. They demonstrated intent to cure the defaults; and

   d. They relied on the Trusts' acceptance of Forbearance Fee.

42. The Trusts, by contrast, have:

      a. Accepted $200,000 specifically labeled as "forbearance" fees;

      b. Failed to provide any written forbearance agreement;

      c. Refused to honor any forbearance period whatsoever;

      d. Accelerated the default timeline despite accepting Forbearance Fee; and

      e. Sought to terminate the Channeling Injunction.

43. The equities strongly favor the Settlement Parties and warrant this Court's intervention to prevent the Trusts' conduct from destroying the Plan.

44. The automatic termination of the Channeling Injunction would:

      a. Undermine the carefully negotiated Plan confirmed by this Court;

      b. Expose the Settlement Parties to potentially thousands of tort claims;

      c. Create chaos in the claims resolution process;

      d. Reward the Trusts' bad faith conduct; and

      e. Prejudice the Settlement Parties for their good faith payment of the Forbearance Fee.

## E. This Court has Authority to Extend the Cure Period

45. This Court retains jurisdiction to interpret and enforce its Confirmation Order and the Plan. *See* Plan, ¶128.

46. The Plan's automatic termination provision should not be enforced mechanically where doing so would reward the Trusts' conduct and undermine the Plan's fundamental purposes.

47. The circumstances here strongly warrant an extension:

      a. The Settlement Parties paid $200,000 in Forbearance Fee in good faith;

      b. The Trusts accepted these fees and are retaining them;

      c. The Trusts refuse to honor the forbearance for which they were paid;

      d. The automatic termination would fundamentally undermine the Plan; and

e. A reasonable extension would allow the parties to negotiate in good faith.

48. An extension of 60-90 days would provide sufficient time for the parties to either: (i) negotiate a formal forbearance agreement and revised payment schedule, or (ii) allow the Settlement Parties to arrange financing to cure the default.

## RELIEF REQUESTED

WHEREFORE, YesCare Corp, one of the Settlement Parties respectfully request that this Court enter an order (1) scheduling an emergency hearing on this Motion on an expedited basis before February 2, 2026; (2) recognizing and enforcing the forbearance agreement created by the Trusts' acceptance of the $200,000 in Forbearance Fee; (3) extending the cure period under Article IV.B.2 of the Plan for sixty (60) to ninety (90) days from the date of the Court's Order; and (4) granting such other and further relief as the Court deems just and proper.

Dated: January 29, 2026

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ Michael P. Ridulfo*
    Michael P. Ridulfo
    State Bar No. 16902020
    Federal Bar No. 27086
    mridulfo@krcl.com
    5151 San Felipe, Suite 800
    Houston, Texas 77056
    Phone: (713) 425-7400
    Fax: (713) 425-7700
    ***Counsel for YesCare Corp.***

## CERTIFICATE OF CONFERENCE

Prior to filing this Motion, the undersigned conferred with Eric Gordan and Nick Zluticky, counsel for the Trusts. No agreement could be reached.

*/s/ Michael P. Ridulfo*
Michael P. Ridulfo

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, a true and correct copy of the foregoing Emergency Motion was served via the Court's CM/ECF system on all parties who have consented to electronic notice, and via electronic mail on:

David J. Molton
Eric R. Goodman
D. Cameron Moxley
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
Email: dmolton@brownrudnick.com
egoodman@brownrudnick.com
cmoxley@brownrudnick.com

Nicholas Zluticky
Zachary Hemenway
STINSON LLP
1201 Walnut, Suite 2900
Kansas City, MO 64106
Email: nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

*/s/ Michael P. Ridulfo*
Michael P. Ridulfo