**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| TEHUM CARE SERVICES, INC.[1] | ) Chapter 11 |
| | ) |
| Debtor. | ) Case No. 23-90086 (CML) |
| | ) |
| | ) |
| | ) |
| MATTHEW J. DUNDON, solely in his capacity | ) |
| as the GUC TRUSTEE of the GUC TRUST, | ) |
| and the WIND-DOWN OFFICER of TEHUM | ) Adv. Pro. No. **Refer to Summons** |
| CARE SERVICES, INC., the POST- | ) |
| EFFECTIVE DATE DEBTOR, | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| UROLOGY CARE, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

Matthew J. Dundon, in his capacity as the GUC Trustee (the "GUC Trustee") of the Tehum

GUC Trust (the "GUC Trust"), and Matthew J. Dundon, in his capacity as the Wind-Down Officer

(the "Wind-Down Officer", and collectively with the GUC Trustee, the "Plaintiffs") for the Post-

Effective Date Debtor[2], formed and appointed pursuant to the *First Modified Joint Chapter 11*

*Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured*

---

[1]  The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service
address is:  205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]  The Plan and the Confirmation Order assign the Retained Causes of Action to the GUC Trust.
However, in an abundance of caution, and only to the extent that the Court determines any Estate Causes
of Action asserted herein were not assigned to the GUC Trust, the Wind-Down Officer files this
Complaint on behalf of the Post-Effective Date Debtor.

CORE/3533662.0002/243809521.1

*Creditors, and Debtor* [Bankruptcy Case (as defined below), Docket No. 2014, Ex. B] (the "Plan")[3] confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "Court") on March 3, 2025, in the above-captioned bankruptcy case (the "Bankruptcy Case"), by and through their undersigned counsel, for this Complaint against Defendant Urology Care, Inc. (the "Defendant"), allege as follows:

## NATURE OF ACTION

1.      The Plaintiffs seek to avoid and recover from the Defendant, or from any other person or entity for whose benefit the transfers were made, (a) all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of Tehum Care Services, Inc. (the "Debtor") pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code") and, (b) subject to proof, all transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2.      In addition, the Plaintiffs seek to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that the Defendant has filed or asserted against the Debtor or that has been scheduled for the Defendant.  The Plaintiffs do not waive but hereby reserve all the Plaintiffs' rights and the rights of the Debtor to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

---

[3]      Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan. While the Plaintiffs assume the Court's familiarity with the events before the Bankruptcy Court set forth herein, the Plaintiffs will review various of such background facts for context.

2

## JURISDICTION AND VENUE

3.      This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).  The Plaintiffs consent to entry of final orders and judgment by the Court.

4.      Venue of the Bankruptcy Case and this adversary proceeding are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

6.      On February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

7.      On March 3, 2025, the Court entered the *Order Confirming the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Bankruptcy Case, Docket No. 2014] (the "Confirmation Order"), confirming the Plan and the Plan Supplement, which incorporates the GUC Trust Agreement (the "GUC Trust Agreement").

8.      As confirmed, the Plan provided for the establishment of the GUC Trust, which holds certain GUC Trust Assets, including the Retained Causes of Action.  *See* Confirmation Order, ¶¶ 52-54.  The Retained Causes of Action include, without limitation—

> all avoidance actions pursuant to 11 U.S.C. § 544, actions to avoid preferences pursuant to 11 U.S.C. § 547, fraudulent transfer actions pursuant to 11 U.S.C. § 548, any actions for post-petition transfers pursuant to 11 U.S.C. § 549, all transfers described in Sections II.C-D of the Disclosure Statement, and all actions described in Article I.A.127 and Article IV.J of the Plan and Article III.A.9 of the Disclosure Statement, except to the extent such actions have been released pursuant to the Plan, subject to Article IV.B.9 of the Plan.

3

*See* Plan Supplement [Bankruptcy Case, Docket No. 1955-2 at 2).

9. On March 31, 2025 (the "Effective Date"), the GUC Trust was established and, pursuant to paragraph 52 of the Confirmation Order and Article IV.J of the Plan, the Retained Causes of Action, including all claims under chapter 5 of the Bankruptcy Code, were transferred to the GUC Trust.

## PARTIES

10. The GUC Trust is a Delaware statutory trust. It is one of the Trusts formed on the Effective Date of the Plan, and is the Debtor's estate representative pursuant to the Plan and sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with respect to any transfers on the Effective Date pertaining to the GUC Trust Assets, including the Retained Causes of Action.

11. The Wind-Down Officer brings this action on behalf of the Post-Effective Date Debtor. To the extent that the claim asserted herein is determined not to be a Retained Cause of Action, the Post-Effective Date Debtor brings these claims for the benefit of the GUC Trust and the PI/WD Trust.

12. Upon information and belief, the Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor.  Upon information and belief, the Defendant is a corporation organized under and subject to the laws of the State of Missouri.

## FACTUAL ALLEGATIONS

13. As more fully discussed in the *Disclosure Statement Regarding Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Bankruptcy Case, Docket No. 1815, Ex. B] (the "Disclosure Statement"), the Debtor, formerly known as Corizon Health, Inc., was itself and through subsidiaries a contracted outsourced provider of healthcare to persons incarcerated in multiple state and county correctional and

4

detention facilities nationwide. In the ordinary course of business, the Debtor entered into agreements with various (typically governmental) entities under which the Debtor would provide, or arrange for the provision of, healthcare services to certain inmates or detainees of the contract counterparty.

14. For most of its history, until the mid-2010s, the Debtor's business was financially successful. Near the end of the decade, however, the company began to witness the loss of key contracts and mounting liabilities, largely driven by claims asserted by incarcerated individuals alleging mistreatment or inadequate healthcare. By the end of 2021, the Debtor was facing dire financial conditions due to loss of major governmental contracts and significant litigation exposure.

15. In May 2022, the Debtor effectuated a divisional merger (the "Divisional Merger") under the laws of the State of Texas, wherein the Debtor caused the allocation of the Debtor's active contracts, employee assets, and other viable assets to CHS TX, Inc., who now operates as YesCare Corp. After the Divisional Merger, the Debtor no longer operated and retained only the Debtor's liabilities and a funding agreement from M2 Loan Co, LLC.[4] A summary of the Debtor's prepetition operations, debt structure, and factors that led to the Bankruptcy Case are set forth in Article II of the Disclosure Statement and are incorporated herein by reference.

16. As described in Article IV.B of the Disclosure Statement, Channeled Claims comprise of impaired classes of creditors and are not expected to be paid in full. *See also* Plan, Article III.F.

---

[4] A further discussion of the Divisional Merger is included in the *Disclosure Statement Regarding Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Bankruptcy Case, Docket No. 1815-2] (the "Disclosure Statement").

17.     Prior to the Petition Date, the Debtor, as a nationwide provider of correctional healthcare, maintained business relationships with various business entities, through which the Debtor regularly purchased, sold, received, and/or delivered goods and services.  The Debtor also regularly paid for services used to facilitate its business.

18.     During the ninety (90) days before and including the Petition Date, that is between November 16, 2022 and February 13, 2023 (the "Preference Period"), the Debtor continued to make payments, including the transfer of money either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

19.     Upon information and belief, during their relationship, the Defendant and the Debtor entered into agreements for the purchase of goods and/or services from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications, and/or other documents (collectively, the "Agreements").  The Agreements concerned and related to the goods and/or services provided by the Defendant to the Debtor. *See supra* ¶12.

20.     During the Preference Period, the Debtor made transfer(s) or caused transfer(s) (the "Transfer" or "Transfers") to be made of an interest in the Debtor's property to or for the benefit of the Defendant aggregating not less than the amount set forth on **Exhibit A**[5] attached hereto.

21.     The Plaintiffs are seeking to avoid all the Transfers made by the Debtor to the Defendant within the Preference Period.

22.     The Plaintiffs also performed the Plaintiffs' own due diligence evaluation of the reasonably knowable affirmative defenses available to the Defendant.  Prior to initiating this lawsuit, the Plaintiffs reviewed the Debtor's general ledger in the Plaintiffs' possession and did

---

[5]     Exhibit A provides the details of each Transfer, of which are incorporated by reference.  Such details include the payee's name, address, transfer date, transfer amount and transfer reason.

6

not identify invoices relating to the Defendant that could potentially qualify for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code.

23.     Moreover, the subsequent new value defense is an affirmative defense, for which the Defendant bears the burden of proof under section 547(g).  Additionally, section 547(c)(4)(B) provides that any potential new value must not be paid for by "an otherwise unavoidable transfer." To the extent that (i) there are any prepayments in the Preference Period paying such new value that are not subject to avoidance by the Plaintiffs, or (ii) the Defendant successfully asserts affirmative defenses, including but not limited to, the ordinary course of business defense or the contemporaneous exchange for new value defense, certain invoices may no longer be available for new value and the new value amount may be subject to reduction.  Accordingly, the Plaintiffs put the Defendant to its burden of proof to establish it is entitled to this new value.

24.     The Plaintiffs also reviewed the Debtor's general ledger in the Plaintiff's possession to examine whether historical payment records exist that may be used to analyze whether, and to what extent, the Defendant may be able to assert the subjective ordinary course of business affirmative defense.  However, the subjective ordinary course of business defense is an inherently factual endeavor, and payment history is only one factor.  The presence of collection pressure, tightening of credit terms, a creditor's loss of credit insurance, and/or threats to stop shipments of goods or service of services without payment, can make even ordinary payments unordinary. Certain information related to these factors may only be in the Defendant's possession, which the Plaintiffs are entitled to request during discovery.  Accordingly, the Plaintiffs put the Defendant to its burden of proof to establish it is entitled to the ordinary course of business affirmative defense.

CORE/3533662.0002/243809521.1

25.     Based upon the Plaintiffs' review of the information, if any, provided by the Defendant prior to filing this Complaint, and after performing the Plaintiffs' own due diligence evaluation of the reasonably knowable affirmative defenses, including the review and evaluation described in the two immediately preceding paragraphs, the Plaintiffs have determined that the Plaintiffs may avoid some or all of the Transfers after taking into account the Defendant's alleged affirmative defenses.

26.     During this proceeding, the Plaintiffs may learn (through discovery or otherwise) of additional transfers made to the Defendant during the Preference Period or that may be avoidable under other provisions of the Bankruptcy Code.  It is the Plaintiffs' intention to avoid and recover all avoidable transfers of property made by the Debtor to or for the benefit of the Defendant or any other transferee in accordance with the Bankruptcy Code and for the benefit of all creditors of the Debtor's estates.

27.     Additionally, the Plaintiffs reserve their rights to amend this Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to the Defendant's name, (iv) additional defendants, and (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to the Plaintiffs at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

CORE/3533662.0002/243809521.1

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

28.     The Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

29.     During the Preference Period, the Debtor made each Transfer, as more particularly described in Exhibit A, to or for the benefit of the Defendant in an aggregate amount not less than $56,000.00.

30.     Each Transfer was made from the Debtor and constituted a transfer of an interest in property of the Debtor.

31.     The Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor the goods and/or services identified in this Complaint and in the Agreements for which the Debtor was obligated to pay following delivery and/or performance in accordance with the Agreements.

32.     Each Transfer was to or for the benefit of a creditor because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to the Defendant.

33.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to the Defendant before such Transfers were made, as asserted by the Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of the Defendant prior to being paid by the Debtor.

34.     Each Transfer was made while the Debtor was insolvent.  The Plaintiffs are entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

35.     Each Transfer was made during the Preference Period, as set forth on Exhibit A.

9

CORE/3533662.0002/243809521.1

36.     As a result of each Transfer, the Defendant received more than the Defendant would have received if: (a) the Bankruptcy Case was a case under chapter 7 of the Bankruptcy Code; (b) the Transfers had not been made; and (c) the Defendant received distributions on account of its debts under the provisions of the Bankruptcy Code.

37.     As evidenced by the Debtor's schedules filed in the Bankruptcy Case, as well as the proofs of claim that have been received to date, and as described in the Plan and Disclosure Statement, the Debtor's liabilities exceed its assets such that the Debtor's unsecured creditors will not receive payment of their claims in full from the Debtor's bankruptcy estate.

38.     In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

39.     The Plaintiffs hereby incorporates all previous allegations as though fully set forth herein to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

40.     To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or made by the Debtor without a corresponding transfer into the payment account by the Debtor, the Plaintiffs plead in the alternative that the Debtor, in making such Transfer(s), did not receive reasonably equivalent value in exchange for such Transfer(s) (the "Potentially Fraudulent Transfers"); and

a.     The Debtor was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s);

CORE/3533662.0002/243809521.1

b.      The Debtor was engaged, or about to engage, in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

c.      The Debtor intended to incur, or believed it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

41.      Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT III
## (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42.      The Plaintiffs incorporates all preceding paragraphs as if fully re-alleged herein to the extent they are not inconsistent with the allegations contained in this Third Claim for Relief.

43.      The Plaintiffs are entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code, and any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

44.      The Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45.      Accordingly, pursuant to section 550(a) of the Bankruptcy Code, the Plaintiffs are entitled to recover the Avoidable Transfer(s) from Defendant, plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
## (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

46.      The Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein to the extent they are not inconsistent with allegations contained in this Fourth Claim for Relief.

47.     The Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

48.     The Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which the Defendant is liable under section 550 of the Bankruptcy Code.

49.     Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of the Defendant and/or its assignee, against the Plaintiffs or the Debtor must be disallowed until such time as the Defendant pays to the Plaintiffs an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

50.     Pursuant to section 502(j) of the Bankruptcy Code, any and all claims of the Defendant, and/or its assignee, against the Debtor's chapter 11 estates or the Plaintiffs previously allowed by the Debtor or by the Plaintiffs, must be reconsidered and disallowed until such time as the Defendant pays to the Plaintiffs an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

## RESERVATION OF RIGHTS

51.     The Plaintiffs reserve all rights to amend this Complaint as new facts develop or are discovered.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that the Court grant the following relief against the Defendant:

A.      On the Plaintiffs' First, Second and Third Claims for Relief, judgment in favor of the Plaintiffs and against the Defendant avoiding all of the Avoidable Transfers and directing the Defendant to return to the Plaintiffs the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of judgment at the

12

maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.      On the Plaintiffs' Fourth Claim for Relief, judgment in favor of the Plaintiffs and against the Defendant disallowing any claims held or filed by the Defendant against the Debtor or the Plaintiffs until the Defendant returns the Avoidable Transfers to the Plaintiffs pursuant to section 502(d) and (j) of the Bankruptcy Code; and

C.      Such other and further relief as this Court may deem just and proper.


Dated:  June 3, 2026                    Respectfully submitted,

                                        **STINSON LLP**

                                        */s/ Nicholas J. Zluticky*
                                        Nicholas J. Zluticky (SDTX Bar No. 3845893)
                                        Zachary H. Hemenway (SDTX Bar No. 3856801)
                                        1201 Walnut Street, Suite 2900
                                        Kansas City, MO 64106
                                        Telephone: (816) 842-8600
                                        Facsimile: (816) 691-3495
                                        Email:  nicholas.zluticky@stinson.com
                                                zachary.hemenway@stinson.com

                                        Eric M. Van Horn (SDTX Bar No. 1830565)
                                        2200 Ross Avenue, Suite 2900
                                        Dallas, TX 75201
                                        Telephone: (214) 560-2201
                                        eric.vanhorn@stinson.com

                                        *Counsel for the GUC Trustee and Wind-Down Officer*

CORE/3533662.0002/243809521.1